Ben F. Pierce Gore (SBN 128515)
PRATT & ASSOCIATES
1871 The Alameda, Suite 425
San Jose, CA  95126
Telephone:  (408) 429-6506
Fax:  (408) 369-0752
pgore@prattattorneys.com

Keith M. Fleischman (admitted *pro hac vice*)
Bradley F. Silverman (admitted *pro hac vice*)
THE FLEISCHMAN LAW FIRM, PLLC
565 Fifth Avenue, Seventh Floor
New York, New York 10017
Telephone: (212) 880-9571
Fax:  (917) 591-5245
keith@fleischmanlawfirm.com
bsilverman@fleischmanlawfirm.com

*Attorneys for Plaintiffs*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ALEX ANG and LYNN STREIT, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>BIMBO BAKERIES USA, INC.,<br><br>Defendant. | Case No.  13 Civ. 1196 (EMC)<br><br>**CLASS ACTION AND REPRESENTATIVE ACTION**<br><br>**AMENDED COMPLAINT**<br><br>**<u>JURY TRIAL DEMANDED</u>** |

Plaintiffs, Alex Ang and Lynn Streit (collectively, "Plaintiffs"), individually and on behalf of others similarly situated, through their undersigned attorneys, as and for their amended complaint against Bimbo Bakeries USA, Inc. ("Defendant"), allege as follows:

**INTRODUCTION**

1.      Defendant is the largest bakery company in the United States.  Defendant owns and distributes numerous leading bakery brands in the United States, including Arnold, Ball Park Bimbo, Boboli, Brownberry, Earthgrains, Entenmann's, Francisco, Freihofer's, Marinela, Mrs. Baird's, Oroweat, Sara Lee, Stroehmann, Thomas', and Tia Rosa.

2.      Defendant is aware of the desire of many of its consumers to eat a healthier diet. Recognizing that health claims drive sales, Defendant, as part of its overall marketing strategy, actively promotes the purported health benefits of its products on its product labels, in its advertising, and on its websites.

3.      Defendant is also aware that consumers desire certain attributes in the foods they purchase and thus falsely labels its products to appeal to these preferences.

4.      For example, Defendant makes the following misrepresentations regarding products produced by its various bakery brands:

- The label of Defendant's Thomas' Plain Bagel Thins bears an unlawful paid American Heart Association endorsement that has been determined by the FDA to be misleading to consumers when used in the manner in which it is used by Defendant;

- In violation of federal and state law, the label of Defendant's Thomas's Plain Bagel Thins claims that the product is an "excellent source of fiber";

- In violation of federal and state law, the label of Defendant's Sara Lee 100% Whole Wheat Bread claims that the bread is an "Excellent Source of Whole Grain";

- In violation of federal and state law, the labels of Defendant's Sara Lee Soft & Smooth Whole Grain White Bread and Sara Lee Classic 100% Whole Wheat Bread claim that each is a "Good Source of Whole Grains";

- In violation of federal and state law, the labels on Sara Lee Classic 100% Whole Wheat Bread and Sara Lee 100% Whole Wheat Bread say that the products are made of "100% Whole Wheat" when they are partially made with non-whole wheat flour.

- The label of Defendant's Entenmann's brand products indicate that the Entenmann's bakery goods are made fresh every day and delivered to

stores daily. Entenmann's brand products, however, are not baked fresh daily or delivered daily. Rather the products have a long shelf life and contain preservatives that belie any claim that they are "fresh"; and

- The label of Defendant's Bimbo Original Toasted Bread represents that product to be "bread" but, in fact, due to the presence of banned added coloring not allowed in bread, the product fails to satisfy the standard of identity for bread and cannot be labeled as "bread."

5.     Defendant actively promotes the false nutrient content claims and purported health benefits of its misbranded food products, notwithstanding the fact that such promotion violates California and federal law.

6.     If a manufacturer is going to make a claim on a food label, the label must meet certain legal requirements that help consumers make informed choices and ensure that they are not misled. Applicable laws recognize that reasonable consumers such as Plaintiffs are likely to choose products claiming to have a health or nutritional benefit over similar food products that do not claim such benefits. Under California law, which is co-extensive with federal law, a number of the Defendant's food labeling practices are unlawful because they are deceptive and misleading to consumers.

7.     The Food Drug & Cosmetic Act, 21 U.S.C. § 301 et seq. ("FDCA") and regulations promulgated thereunder set national requirements for the labeling of food products. In turn, those federal requirements are adopted and re-codified by the California Sherman Law. Under both the Sherman Law and FDCA section 403(a), food is "misbranded" if "its labeling is false or misleading in any particular," or if it does not contain certain information on its label or its labeling. 21 U.S.C. § 343(a); California Health & Safety Code § 110660.

8.     Where Defendant sells products in violation of the labeling requirements of the FDCA and regulations promulgated thereunder, Defendant simultaneously violates the Sherman Law.

9.     In turn, when Defendant violates the Sherman Law, Defendant also violates California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq*. ("UCL"); Cal. Bus. & Prof. Code § 17500, *et seq*.; and California's Consumers Legal Remedies Act, Cal. Civ. Code §

1   1750, *et seq*.

2         10.    Under California law, misbranded products have no economic value to consumers.

3   They cannot legally be manufactured, advertised, distributed, or sold.  Indeed, the sale of

4   misbranded food is a criminal act in California and misbranded products are subject to seizure by

5   state and federal officials.

6         11.    As set forth herein, each of the products sold by Defendant and purchased by

7   Plaintiffs are misbranded and misleading.

8         12.    Defendant knowingly and intentionally sold these unlawful, deceptive, and

9   misbranded to consumers, including Plaintiffs.

10         13.    Defendant did so with the intent to deceive and induce reliance on the part of

11   consumers, including Plaintiffs.

12         14.    Prior to purchase, Plaintiffs reviewed and reasonably relied upon the illegal

13   statements on the product labels.

14         15.    Had Defendants informed Plaintiffs of the misleading, deceptive, unfair, and

15   fraudulent nature of the labels, there would have been no purchases.

16         16.    Plaintiffs did not know, and had no reason to know, that the products sold by

17   Defendant and purchased by Plaintiffs were misbranded under the Sherman Law and contained

18   food labeling that failed to meet the requirements of the FDCA and Sherman Law.

19         17.    Similarly, Plaintiff did not know, and had no reason to know, that the labels of the

20   products they purchased were false and misleading.

21   **PARTIES**

22         18.    Plaintiff Alex Ang ("Ang") is a resident of San Francisco, California who purchased

23   misbranded products at issue during the four (4) years prior to the filing of the original complaint

24   in the above-captioned action (the "Class Period").

25         19.    Plaintiff Lynn Streit ("Streit") is a resident of San Jose, California who purchased

26   misbranded products at issue during the Class Period.

27

28

20.     Upon information and belief, defendant Bimbo Bakeries USA, Inc. is a Delaware corporation with its headquarters located at 255 Business Center Dr., Horsham, Pennsylvania, 19044.

21.     Defendant is a leading producer of retail bakery and other products, including all misbranded products at issue.

22.     Defendant operates over 70 bakeries and sells its food products to consumers through grocery and other retail stores throughout the United States.

## JURISDICTION AND VENUE

23.     This Court has original jurisdiction over this action under 28 U.S.C. § 1332(d) because this is a class action in which:  (1) there are over 100 members in the proposed class; (2) members of the proposed class are citizens of a State different from Defendant; and (3) the claims of the proposed class members exceed $5,000,000 in the aggregate, exclusive of interest and costs.

24.     The Court has jurisdiction over all claims alleged herein pursuant to 28 U.S.C. § 1332(a) because the matter in controversy exceeds the sum or value of $75,000, and is between citizens of different states.

25.     The Court has personal jurisdiction over Defendant because a substantial portion of the wrongdoing alleged herein occurred in California, Defendant has sufficient minimum contacts with California, and has otherwise intentionally availed itself of the markets in California through the promotion, marketing, and sale of products sufficient to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

26.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) and (3) because a substantial part of the events or omissions giving rise to these claims occurred in this District, a substantial part of the property that is the subject of this action is situated in this District, and Defendant is subject to the Court's personal jurisdiction with respect to this action.

# FACTUAL ALLEGATIONS

## Federal and State Regulatory Framework

27.    Food manufacturers are required to comply with identical state and federal laws and regulations that govern the labeling of food products.

28.    Pursuant to the Sherman Law, California has expressly adopted the federal labeling requirements as its own and indicated that "[a]ll food labeling regulations and any amendments to those regulations adopted pursuant to the federal act, in effect on January 1, 1993, or adopted on or after that date shall be the food regulations of this state."  California Health & Safety Code § 110100.  All Sherman Law requirements cited herein are identical to the FDCA.

29.    In addition to its blanket adoption of federal labeling requirements, California has also enacted a number of laws and regulations that adopt and incorporate specific enumerated federal food laws and regulations, including, *inter alia*:

- California Health & Safety Code § 110660 (misbranding where labels are false and misleading);

- California Health & Safety Code § 110665 (misbranding where labels fail to conform to the requirements of 21 U.S.C. § 343(q));

- California Health & Safety Code § 110670 (misbranding where labels fail to conform with the requirements of 21 U.S.C. § 343(r));

- California Health & Safety Code § 110705 (misbranding where words, statements and other information required by the Sherman Law are missing or not sufficiently conspicuous); and

- California Health & Safety Code § 110740 (misbranding where labels fail to adequately disclose the presence of artificial flavoring, artificial coloring, and chemical preservatives).

## FDA Enforcement History

30.    In recent years, food manufacturers have been disregarding food labeling regulations.  As a result, the FDA has taken steps to inform the food industry of its legal

obligations and place members of the industry who disregard such obligations on notice that they will be subject to enforcement efforts.

31.     Among other things, in October 2009, the FDA issued the *Guidance For Industry: Letter regarding Point Of Purchase Food Labeling* to address its concerns about front of package labels ("2009 FOP Guidance").

32.     The 2009 FOP Guidance recommended that "manufacturers and distributors of food products that include FOP labeling ensure that the label statements are consistent with FDA law and regulations" and specifically advised the food industry that the FDA would "proceed with enforcement action where such FOP labeling or labeling systems are used in a manner that is false or misleading."

33.     Despite the issuance of the 2009 FOP Guidance, Defendant did not remove the unlawful and misleading food labeling from its products and continued to knowingly and intentionally sell misbranded products, including the products at issue herein.

34.     On March 3, 2010, the FDA issued an "Open Letter to Industry from [FDA Commissioner] Dr. Hamburg" (the "Open Letter").  The Open Letter reiterated the FDA's concern regarding false and misleading labeling by food manufacturers.  In stated, *inter alia*, that:

> At that time, we urged food manufacturers to examine their product labels in the context of the provisions of the Federal Food, Drug, and Cosmetic Act that prohibit false or misleading claims and restrict nutrient content claims to those defined in FDA regulations.  As a result, some manufacturers have revised their labels to bring them into line with the goals of the Nutrition Labeling and Education Act of 1990.  Unfortunately, however, we continue to see products marketed with labeling that violates established labeling standards.

> To address these concerns, FDA is notifying a number of manufacturers that their labels are in violation of the law and subject to legal proceedings to remove misbranded products from the marketplace.  While the warning letters that convey our regulatory intentions do not attempt to cover all products with violative labels, they do cover a range of concerns about how false or misleading labels can undermine the intention of Congress to provide consumers with labeling information that enables consumers to make informed and healthy food choices.

35.     Notwithstanding the Open Letter, and other efforts by the FDA to obtain compliance with misbranding laws, Defendant continued to knowingly and intentionally manufacture and sell misbranded products.

36.     In addition to its guidance and letters to industry, the FDA has sent publically disclosed warning letters to industry, including many of Defendant's peer food manufacturers for the same types of unlawful labeling claims at issue in this case.

37.     In these letters, the FDA indicated that, as a result of the same type of unlawful labeling utilized by Defendant, products were in "violation of the Federal Food, Drug, and Cosmetic Act … and the applicable regulations in Title 21, Code of Federal Regulations, Part 101 (21 CFR § 101)" and "misbranded within the meaning of section 403(r)(1)(A)"

38.     Those letters specifically refer to products, which, like many of Defendant's products at issue, contain label "bear[ing] a nutrient content claim but does not meet the requirements to make the claim."

39.     The warning letters were hardly isolated as the FDA has issued numerous warning letters to other companies for the same type of food labeling claims at issue in this case.

40.     The FDA stated that the agency not only expected companies that received warning letters to correct their labeling practices but also anticipated that other firms would examine their food labels to ensure that they are in full compliance with food labeling requirements and make changes where necessary.  Defendant did not change the labels on its products in response to these warning letters.

41.     Despite the FDA's numerous warnings to industry, Defendant has continued to sell products bearing unlawful food labeling claims without meeting the requirements to make them.

42.     Plaintiff did not know, and had no reason to know, that the Defendant's products were misbranded and contained food labeling claims for which the products did not meet the necessary requirements.

**Defendant's Violations of State and Federal Law**

43.     Pursuant to Section 403 of the FDCA, a claim that characterizes the level of a nutrient in a food is a "nutrient content claim" that must be made in accordance with the

1   regulations that authorize the use of such claims.  21 U.S.C. § 343(r)(1)(A).  The Sherman Law

2   expressly adopts the requirements of 21 U.S.C. § 343(r) in California Health & Safety Code §

3   110670.

4        44.   Nutrient content claims are claims about specific nutrients contained in a product.

5   Because these claims are relied upon by consumers when making purchasing decisions, the

6   regulations govern what claims can be made in order to prevent misleading claims.

7        45.   Section 403(r)(1)(A) of the FDCA governs the use of expressed and implied

8   nutrient content claims on labels of food products that are intended for sale for human

9   consumption.

10        46.   21 C.F.R. § 101.13 sets forth the general requirements for nutrient content claims.

11   These requirements have been adopted by California.  *See* California Health & Safety Code §

12   110100.

13        47.   In addition, 21 U.S.C. § 343(r)(2) prohibits the use of unauthorized undefined terms

14   and declares foods containing such undefined terms to be misbranded. The requirements of this

15   provision have been adopted by California

16        48.   Defendant knowingly and intentionally violated these statutes and regulations when

17   misbranding its products.

18        49.   Defendant did so to deceive and mislead consumers such as Plaintiffs.

19   **The Purchased Products**

20        50.   Within the Class Period, plaintiff Alex Ang purchased Sara Lee Classic 100%

21   Whole Wheat Bread, Sara Lee Soft & Smooth Whole Wheat White Bread, Bimbo Original

22   Toasted Bread, and Thomas' Plain Bagel Thins.

23        51.   Within the Class Period, plaintiff Lynn Streit purchased Sara Lee Classic 100%

24   Whole Wheat Bread, Sara Lee 100% Whole Wheat Bread, and Entenmann's Soft'ees.

25        52.   Collectively, the aforementioned products are the Purchased Products.

26        53.   The Purchased Products are misbranded, misleading, and illegal for the reasons set

27   forth below.

28

54.     Defendant knowingly and intentionally sold the Purchased Products, which Defendant knew to be unlawful, misbranded, and deceptive.

55.     Defendant did so to deceive and mislead consumers such as Plaintiffs.

**Thomas' Plain Bagel Thins**

56.     The label on Thomas' Plain Bagel Thins contains a "heart-check mark" endorsement from the American Heart Association.

57.     Defendant provided compensation to the American Heart Association in return for the use of the endorsement.

58.     The label does not disclose that this was a paid endorsement.

59.     In order to protect consumers from being misled, the laws regulating the labeling of food require that companies disclose any instance where they have paid to receive an endorsement that is placed on a product label.

60.     According to the FDA:

> The agency recognizes that endorsements made for compensation by private organizations or individuals may be misleading to consumers. The agency is advising that when such endorsements are made, a statement should be included in close proximity to the claim, informing consumers that the organization or individual was compensated for the endorsement. Failure to divulge this information on a label that bears a paid endorsement would cause the product to be misbranded under sections 403(a) and 201(n) of the act for failure to reveal a fact that is material.

61.     The failure to disclose that an endorsement was a paid endorsement also violates 21 C.F.R. § 1.21 which states that it is unlawful to fail to reveal a material fact on the label of a food product.

62.     The FDA has issued at least one warning letter for such an unlawful and misleading practice.

63.     In direct violation of the labeling laws and the FDA directive, Defendant paid to receive the "heart-check mark" from the American Heart Association and then placed the endorsement on product labels without disclosing that this was a paid endorsement of its products, including Thomas' Plain Bagel Thins.

64.     This mark was intended and did convey to Ang that an independent third party had certified the healthiness and heart-healthiness of the product in question.

65.     Ang were unaware of the fact that this heart-check mark was obtained only after the Defendant paid for its placement.

66.     Ang relied on this mark and it influenced the purchase decision.

67.     Had Defendant disclosed that the endorsement was a paid one, Ang would not have viewed the certification as independent and would not have viewed the product as being more healthy and beneficial than other alternatives.

68.     This would have affected the Ang's purchase decisions.

69.     Had Ang known that the product was misbranded because of the failure to reveal such a material fact and that the product had not been labeled in accordance with the law, Ang would not have purchased the product.

70.     Ang's reliance was reasonable and a reasonable consumer would have been misled by the Defendant's actions.

71.     Indeed, promotional materials provided by the American Heart Association to companies interested in participating in the heart-check program confirm that controlled studies show that the mark increases sales by influencing consumers that an "independent" group has certified the healthiness and heart healthiness of products bearing the mark.

72.     According to these materials: "Shoppers want clear, simple purchase guidance from a trusted source. The American Heart Association heart-check mark increases product sales because seeing the mark on a package assures shoppers they are making a smart choice."

73.     Those materials also emphasize the benefits to a food company of placing the mark on their product and how such a mark will be perceived and used by consumers.

74.     According to the heart-check marketing materials: "More than half of shoppers prefer

food ratings from a third-party health organization, such as the American Heart Association's heart-check mark. The rise of new food icons has created confusion, but ultimately consumers rely on the independent symbol they have come to know and trust."

75.     Additionally, under FDCA and regulations promulgated thereunder, labels may not indicate that a product is an "excellent source" of fiber unless there is a specified amount of fiber in the product.

76.     The label on Thomas' Plain Bagel Thins states that the product is an "excellent source of fiber."

77.     This nutrient content claim is unlawful because it fails to comply with the nutrient content claim provisions in violation of 21 C.F.R. §§ 101.13 and 101.54, which have been incorporated in California's Sherman Law.  The nutritional thresholds required to label a product as an "excellent source" of a nutrient is the presence of at least 20% of the daily value of that nutrient.

78.     The Thomas' Plain Bagel Thins fail to reach the minimum 20% daily value threshold required for an excellent source nutrient content claim for fiber and in fact provide only 16% of the daily value of fiber.

79.     Therefore, Thomas' Plain Bagel Thins label violates federal and state law and the product is misbranded because of its unlawful "excellent source of fiber" claim.

80.     Had Ang known that Thomas' Plain Bagel Thins were not an "excellent source of fiber" Ang would not have purchased the product.

81.     Had Ang known that Thomas' Plain Bagel Thins were misbranded, he would not have purchased the product.

82.     Ang's  reliance was reasonable and a reasonable consumer would have been misled by the Defendant's actions.

**Entenmanns' Soft'ees**

83.     The label on Entenmanns' Soft'ees says they are "Fresh" and indicates they are "baked daily."

84.     Because of the relative locations of these words, the label can also be read as "baked fresh daily."

85.     Under either reading, the label is false, misleading, and unlawful.

86.     The term "fresh" suggests or implies that Entenmanns' Soft'ees are unprocessed and unpreserved.

87.     In fact, Entenmanns' Soft'ees are processed and preserved.

88.     21 C.F.R. 101.95 precludes the use of the term "fresh" where a product is subject to any form of preservation.

89.     Therefore, the label of Entenmanns' Soft'ees violates federal and state law and is misbranded.

90.     Even in the absence of any regulatory provision restricting the use of the term "fresh," the Defendant's use of the term "fresh" would still be unlawful.

91.     Seeking to mislead consumers into the erroneous belief that its products are freshly baked like a bakery's, Defendant has falsely claimed on its Entenmann's labels that a number of its Entenmann's products (including Soft'ees) are "fresh," "baked daily," and/or "baked fresh daily."

92.     Such representations are false as the chemically preserved products (including Soft'ees) are not baked fresh daily and were full of chemical preservatives designed to give the product an extended shelf-life.

93.     These products (including Soft'ees) are also not delivered daily and, in fact, sit in stores for weeks at a time until they reach their extended sell by date.

94.     Had Streit known that Entenmann's Soft'ees were not fresh and were not baked daily or delivered daily, Streit would not have purchased the product .

95.     Had Streit known that Entenmann's Soft'ees were misbranded, Streit would not have purchased the product.

96.     Streit's reliance was reasonable and a reasonable consumer would have been misled by the Defendant's actions.

**Sara Lee Classic 100% Whole Wheat Bread**

97.     The label on Sara Lee Classic 100% Whole Wheat Bread says that the product is made of "100% Whole Wheat."

98.     The label on Sara Lee Classic 100% Whole Wheat Bread says that the product is a "Good Source of Whole Grain."

99.     Sara Lee Classic 100% Whole Wheat Bread is made, in part, with soy flour.

100.    21 C.F.R. § 136.180 precludes the use of non-whole wheat flour in products labeled as "whole wheat."

101.    Further, under the FDCA and regulations promulgated thereunder, labels may not indicate that a product is a "good source" or "excellent source" of whole grain.

102.    There is no recognized daily value for whole grain and thus it is not possible to make a good or excellent source claim about whole grain.

103.    Therefore, this nutrient content claims are unlawful because they fail to comply with the nutrient content claim provisions in violation of 21 C.F.R. §§ 101.13 and 101.54, which have been incorporated in California's Sherman Law.

104.    Although food manufacturers are permitted under the law to make factual statements about whole grains on their food labels such as "10 grams of whole grains," the FDA has specifically ruled that they are only allowed to do so "provided that the statements are not false

or misleading under section 403(a) of the Act and do not imply a particular level of the ingredient, i.e., 'high' or 'excellent source.'"

105.   Defendant's labeling of its food products as a "Good Source of Whole Grains" or an "Excellent Source of Whole Grain" is specifically prohibited and specifically deemed to be false and misleading by the FDA.

106.   Therefore, the label of Sara Lee Classic 100% Whole Wheat Bread violates federal and state law and is misbranded because of the unlawful "Good Source of Whole Grain" claim on its label.

107.   Regardless of the regulatory framework, on its face, the label of Sara Lee Classic 100% Whole Wheat Bread misrepresents that it is made of "100% Whole Wheat," when it contains non-whole wheat ingredients such as soy flour.

108.   Had Plaintiffs known that Sara Lee Classic 100% Whole Wheat Bread was not "100% Whole Wheat" or a "Good Source of Whole Grain" Plaintiffs would not have purchased the product.

109.   Had Plaintiffs known that Sara Lee Classic 100% Whole Wheat Bread was misbranded, Plaintiffs would not have purchased the product.

110.   The Plaintiffs' reliance was reasonable and a reasonable consumer would have been misled by the Defendant's actions.

**Sara Lee 100% Whole Wheat Bread**

111.   The label on Sara Lee 100% Whole Wheat Bread says that the product is made of "100% Whole Wheat."

112.   The label on Sara Lee 100% Whole Wheat Bread says that the product in an "excellent source of whole grain."

113.   Sara Lee 100% Whole Wheat Bread is made, in part, with soy flour.

114.    21 C.F.R. § 136.180 precludes the use of non-whole wheat flour in products labeled as "whole wheat."

115.    Further, under the FDCA and regulations promulgated thereunder, labels may not indicate that a product is a "good source" or "excellent source" of whole grain.

116.    There is no recognized daily value for whole grain and thus it is not possible to make a good or excellent source claim about whole grain.

117.    Therefore, this nutrient content claims are unlawful because they fail to comply with the nutrient content claim provisions in violation of 21 C.F.R. §§ 101.13 and 101.54, which have been incorporated in California's Sherman Law.

118.    Although food manufacturers are permitted under the law to make factual statements about whole grains on their food labels such as "10 grams of whole grains," the FDA has specifically ruled that they are only allowed to do so "provided that the statements are not false or misleading under section 403(a) of the Act and do not imply a particular level of the ingredient, i.e., 'high' or 'excellent source.'"

119.    Defendant's labeling of its food products as a "Good Source of Whole Grains" or an "Excellent Source of Whole Grain" is specifically prohibited and specifically deemed to be false and misleading by the FDA.

120.    Therefore, the label of Sara Lee 100% Whole Wheat Bread violates federal and state law and is misbranded because of the unlawful "Excellent Source of Whole Grain" claim on its label.

121.    Regardless of the regulatory framework, on its face, the label of Sara Lee 100% Whole Wheat Bread misrepresents that it is made of "100% Whole Wheat," when it contains non-whole wheat ingredients such as soy flour.

122.    Had Streit known that Sara Lee 100% Whole Wheat Bread was not "100% Whole

Wheat" or a "Excellent Source of Whole Grain" Plaintiffs would not have purchased the product.

123.    Had Streit known that Sara Lee 100% Whole Wheat Bread was misbranded, Streit would not have purchased the product.

124.    Streit's reliance was reasonable and a reasonable consumer would have been misled by the Defendant's actions.

**Sara Lee Soft & Smooth Whole Wheat White Bread**

125.    The label on Sara Lee Soft & Smooth Whole Wheat White Bread says that the product is a "Good Source of Whole Grain."

126.    Under the FDCA and regulations promulgated thereunder, labels may not indicate that a product is a "good source" or "excellent source" of whole grain.

127.    There is no recognized daily value for whole grain and thus it is not possible to make a good or excellent source claim about whole grain.

128.    Therefore, this nutrient content claims are unlawful because they fail to comply with the nutrient content claim provisions in violation of 21 C.F.R. §§ 101.13 and 101.54, which have been incorporated in California's Sherman Law.

129.    Although food manufacturers are permitted under the law to make factual statements about whole grains on their food labels such as "10 grams of whole grains," the FDA has specifically ruled that they are only allowed to do so "provided that the statements are not false or misleading under section 403(a) of the Act and do not imply a particular level of the ingredient, i.e., 'high' or 'excellent source.'"

130.    Defendant's labeling of its food products as a "Good Source of Whole Grains" or an "Excellent Source of Whole Grain" is specifically prohibited and specifically deemed to be false and misleading by the FDA.

131.    Therefore, the label of Sara Lee Soft & Smooth Whole Wheat White Bread violates

federal and state law and is misbranded because of the unlawful "Good Source of Whole Grain" claim on its label.

132.    Had Ang known that Sara Lee Soft & Smooth Whole Wheat White Bread was not a "Good Source of Whole Grain," Ang would not have purchased the product.

133.    Had Ang known that Sara Lee Soft & Smooth Whole Wheat White Bread was misbranded, Ang would not have purchased the product.

134.    Ang's reliance was reasonable and a reasonable consumer would have been misled by the Defendant's actions.

### Bimbo Original Toasted Bread

135.    Bimbo Original Toasted Bread is labeled as "Bread."

136.    21 C.F.R. § 136.110(c)(17) precludes products containing added coloring from being labeled as "bread."

137.    Bimbo Original Toasted Bread, however, contain added Red 40 and Yellow 5.

138.    Therefore, the label of Bimbo Original Toasted Bread violates federal and state law and is misbranded.

139.    Had Ang known that Bimbo Original Toasted Bread contained added coloring and thus not capable of being legally represented as bread, Ang would not have purchased the product.

140.    Had Ang known that Bimbo Original Toasted Bread was misbranded, Ang would not have purchased the product.

141.    Ang's reliance was reasonable and a reasonable consumer would have been misled by the Defendant's actions.

### Defendant Has Violated the Sherman Law

142.    With respect to each of the aforementioned misbranded products, Defendant has violated the FDCA and regulations promulgated thereunder.

143.    As a result, Defendant has violated, *inter alia*, the Sherman Law, which adopts the provisions of the FDCA and regulations promulgated thereunder.

144.    Defendant has specifically violated the Sherman Law provisions discussed below.

145.    Defendant has violated California Health & Safety Code § 110390, which makes it unlawful to disseminate false or misleading food advertisements that include statements on products and product packaging or labeling or any other medium used to directly or indirectly induce the purchase of a food product.

146.    Defendant has violated California Health & Safety Code § 110395, which makes it unlawful to manufacture, sell, deliver, hold, or offer to sell any falsely advertised food.

147.    Defendant has violated California Health & Safety Code §§ 110398 and 110400, which makes it unlawful to advertise misbranded food or to deliver or proffer for delivery any food that has been falsely advertised.

148.    Defendant has violated California Health & Safety Code § 110403, which prohibits the advertisement of products that are represented to have any effect on enumerated conditions, disorders, and diseases.

149.    Defendant has violated California Health & Safety Code § 110660 because its labeling is false and misleading in one or more ways.

150.    Defendant has violated California Health & Safety Code § 110665 because its labeling fails to conform to the requirements for nutrient labeling set forth in 21 U.S.C. § 343(q) and the regulations promulgated thereunder.

151.    Defendant has violated California Health & Safety Code § 110670 because its labeling fails to conform to the requirements for nutrient content and health claims set forth in 21 U.S.C. § 343(r) and the regulations promulgated thereunder.

152.    Defendant has violated California Health & Safety Code § 110740 because its products contain artificial coloring and chemical preservatives but fail to adequately disclose that fact on their labeling.

153.    Defendant has violated California Health & Safety Code § 110760, which makes it unlawful for any person to manufacture, sell, deliver, hold, or offer for sale any food that is misbranded.

154.    Defendant has violated California Health & Safety Code § 110765, which makes it unlawful for any person to misbrand any food.

155.    Defendant has violated California Health & Safety Code § 110770, which makes it unlawful for any person to receive in commerce any food that is misbranded or to deliver or proffer any such food for delivery.

156.    Defendant has violated California Health & Safety Code § 110710, which makes it unlawful to misrepresent that a food conforms to an established definition or standard of identity.

157.    Defendant has violated California Health & Safety Code § 110685, which makes it unlawful to offer for sale a product denominated as a different food when the product fails to conform to the established definition or standard of identity of that other food.

158.    Defendant has violated the standards set forth in 21 CFR §§ 101.13, 101.14, and 101.54 which have been adopted and incorporated by reference in the Sherman Law, by including unauthorized nutrient content claims on its products.

159.    Defendant has violated the standards set forth in 21 CFR §§ 101.14, and 101.65, which have been adopted and incorporated by reference in the Sherman Law, by including unauthorized health and healthy claims on it products.

160.    Defendant has violated the standards set forth in 21 CFR § 101.95, which have been adopted and incorporated by reference in the Sherman Law, by improperly labeling products as fresh.

**Purchasers of Misbranded Products Have Been Injured**

161.    Plaintiffs care about the nutritional content of food and seek to maintain a healthy diet. Plaintiffs read and reasonably relied on the labels as described herein when buying Defendant's products.

162.    Plaintiffs relied on Defendants' labeling and based and justified the decision to purchase Defendant's products, in substantial part, on these labels.

163.   At point of sale, Plaintiffs did not know, and had no reason to know, that the Purchased Products did not contain the beneficial nutrients represented on the labels and, in fact, were unlawful and misbranded.

164.   Had Plaintiffs been aware if these material facts, they would not have bought the Purchased Products.

165.   As a result of Defendant's unlawful misrepresentations, Plaintiffs and thousands of others in California and throughout the United States purchased the Purchased Products at issue.

166.   Defendants' labeling as alleged herein is false and misleading and was designed to increase sales of the products at issue.

167.   Defendant's misrepresentations are part of its systematic labeling practice and a reasonable person would attach importance to Defendant's misrepresentations in determining whether to purchase the products at issue.

168.   A reasonable person would also attach importance to whether Defendant's products were misbranded.

169.   Plaintiffs' purchase of the Purchased Products damaged them because misbranded products cannot be legally sold or possessed, and have no economic value.

170.   In addition, Plaintiff had cheaper alternatives available and paid an unwarranted premium for the Purchased Products.

171.   All purchasers of these Purchased Products were injured.

**Substantially Similar Products**

172.   Defendant also sells other products that are misbranded, misleading, and illegal for the same reasons that the Purchased Products are misbranded, misleading, and illegal.

173.   Many of these additional products are substantially similar to the Purchased Products.

174.   Class members that have purchased these substantially similar illegal products have been injured in precisely the same way that Plaintiffs have been injured.

175.    The sale of these substantially similar illegal products is part of Defendant's intentional overarching unlawful and fraudulent scheme to sell misbranded, misleading, and illegal products to purchasers throughout California and the United States.

176.    Defendant did so to deceive, mislead, and induce reliance of consumers of Defendant's products, including the Purchased Products and these substantially similar products.

177.    Purchasers of these substantially similar products have been injured as a result of the same unlawful course of action by Defendant that injured Plaintiffs and other purchasers of Purchased Products.

178.    For this reason, persons injured by the purchase of these substantially similar products should be included as class members.

179.    The following are substantially similar products that are misbranded, misleading, and illegal for the same reasons that the Purchased Products are misbranded, misleading, and illegal.  They are collectively referred hereafter as the "Substantially Similar Products." Plaintiffs reserve the right to amend, modify, or supplement this list of Substantially Similar Products.

**Substantially Similar Products that Unlawfully Claim to Be a "Good Source" or "Excellent Source" of Whole Grain**

180.    Under the FDCA and regulations promulgated thereunder, labels may not indicate that a product is a "good source" or "excellent source" of whole grain.

181.    There is no recognized daily value for whole grain and thus it is not possible to make a good or excellent source claim about whole grain.

182.    Therefore, this nutrient content claims are unlawful because they fail to comply with the nutrient content claim provisions in violation of 21 C.F.R. §§ 101.13 and 101.54, which have been incorporated in California's Sherman Law.

183.    Although food manufacturers are permitted under the law to make factual statements about whole grains on their food labels such as "10 grams of whole grains," the FDA

has specifically ruled that they are only allowed to do so "provided that the statements are not false or misleading under section 403(a) of the Act and do not imply a particular level of the ingredient, i.e., 'high' or 'excellent source.'"

184.    Defendant's labeling of its food products as a "Good Source of Whole Grains" or an "Excellent Source of Whole Grain" is specifically prohibited and specifically deemed to be false and misleading by the FDA.

185.    As set forth above, the labels of Sara Lee Classic 100% Whole Wheat Bread,  Sara Lee 100% Whole Wheat Bread, and Sara Lee Soft & Smooth Whole Wheat White Bread violate federal and state law and are misbranded because of they contain unlawful claims as either a "Good Source of Whole Grain" or an "Excellent Source of Whole Grain."

186.    Additionally, Defendant knowingly and intentionally sells **Sara Lee Soft & Smooth 100% Whole Wheat Bread**, which has a label that states it is an "Excellent Source of Whole Grain."

187.    For the exact same reasons, Sara Lee Soft & Smooth 100% Whole Wheat Bread violates federal and state law and is misbranded.

**Substantially Similar Products that Unlawfully Claim to Be "Bread" Despite Containing Artificial Coloring**

188.    21 C.F.R. § 136.110(c)(17) precludes products containing added coloring from being labeled as "bread."

189.    As set forth above, Bimbo Original Toasted Bread is unlawfully misbranded because it contains added coloring.

190.    Additionally, Defendant knowingly and intentionally sells the following products labeled as "bread," despite the fact that they contain added coloring:

    a.  Arnold Marble Jewish Rye Bread

    b.  Arnold Pumpernickel Jewish Rye Bread

  c. Bimbo Double Fiber Toasted Bread

  d. Freihofer Wheat Bulkie Rolls

  e. Orowheat Dark Rye Bread

  f. Orowheat Sweet Hawaiian Bread

  g. Stroehmann Deli Soft Rye - No Seeds

  h. Stroehmann Deli Soft Rye – Seeds

  i. Thomas'Cinnamon Raisin Swirl Toasting Bread

  j. Thomas' Cranberry Swirl Toasting Bread

191. Thomas' Cranberry Swirl Toasting Bread contains added Blue 2.  All of the other aforementioned products contain added caramel color.

192. All of these products violate federal and state law and are misbranded.

**Substantially Similar Products that Unlawfully Claim to Be "Whole Wheat" Despite Containing Non-Whole Wheat Flour**

193. 21 C.F.R. § 136.180 precludes the use of non-whole wheat flour in products labeled as "whole wheat."

194. As set forth above, Sara Lee 100% Whole Wheat Bread and Sara Lee Classic 100% Whole Wheat Bread are unlawfully misbranded because they are made, in part, with soy flour.

195. Additionally, Defendant knowingly and intentionally sells the following products labeled as "whole wheat," despite the fact that they contain soy flour, which is a non-whole wheat flour:

  a. Arnold 100% Whole Wheat Pocket Thins Flatbread

  b. Arnold Bakery Light - 100% Whole Wheat Bread

  c. Bimbo 100% Whole Wheat Tortillas

  d. Brownberry 100% Whole Wheat Pocket Thins Flatbread

  e. Mrs Baird's 100% Whole Wheat Bread

f.  Mrs Baird's 100% Whole Wheat Country Rolls

g.  Thomas's 100% Whole Wheat Bagels

h.  Thomas' 100% Whole Wheat Bagel Thins

i.  Thomas' 100% Whole Wheat Mini Bagels

j.  Thomas' Sahara 100% Whole Wheat Pita Pockets

k.  Thomas' Sahara 100% Whole Wheat Pita Pockets Mini Size

l.  Thomas' 100% Whole Wheat English Muffins

m.  Tia Rosa 100% Whole Wheat Tortillas

196.    All of these products violate federal and state law and are misbranded.

**Substantially Similar Entenmanns' Brand Products that Are
Labeled "Baked Daily," "Fresh," and/or "Baked Fresh Daily"**

197.    The label on many Entenmanns' brand products say that the product is "fresh" and indicates that it is "baked daily."

198.    Because of the relative locations of these words, the label can also be read as "baked fresh daily."

199.    Under either reading, the label is false, misleading, and unlawful.

200.    The term "fresh" suggests or implies that these products are unprocessed and unpreserved.

201.    In fact, they products are processed and preserved.

202.    21 C.F.R. 101.95 precludes the use of the term "fresh" where a product is subject to any form of preservation.

203.    Even in the absence of any regulatory provision restricting the use of the term "fresh," the Defendant's use of the term "fresh" would still be unlawful.

204.    Seeking to mislead consumers into the erroneous belief that its products are freshly baked like a bakery's, Defendant has falsely claimed on its Entenmann's labels that its products are "fresh," "baked daily," and/or "baked fresh daily."

205.    Such representations are false as the chemically preserved products are not baked fresh daily.

206.    These products are also not delivered daily and, in fact, sit in stores for weeks at a time until they reach their extended sell by date.

207.    As set forth above, Entenmann's Soft'ees contains such a label that violates federal and state law and is misbranded.

208.    Additionally, Defendant knowingly and intentionally sells the following Entenmann's brand products that contain substantially the same unlawful label as Entenmann's Soft'ees, which indicates that these products are "fresh," "baked daily," and/or "baked fresh daily":

a.   Entenmann's 12 Frosted Devil's Food Mini Donuts

b.   Entenmann's 5 Eclairs

c.   Entenmann's 8 Devil's Food Crumb Donuts

d.   Entenmann's 8 Glazed Donuts

e.   Entenmann's 8 Rich Frosted Raspberry Donut

f.   Entenmann's All Butter Loaf Cake

g.   Entenmann's Apple Puffs

h.   Entenmann's Banana Cake

i.   Entenmann's Banana Crumb Loaf Cake

j.   Entenmann's Banana Crunch Cake

k.   Entenmann's Carrot Iced Cake

l.   Entenmann's Cheese Danish Twist

m.   Entenmann's Cheese Filled Crumb Coffee Cake

n.   Entenmann's Chocolate Chip Crumb Loaf Cake

o.   Entenmann's Chocolate Chip Iced Cake

p.   Entenmann's Chocolate Crumb Cake

q.   Entenmann's Chocolate Fudge Cake

r.   Entenmann's Cinnamon Crunch Loaf Cake

s.   Entenmann's Cinnamon Swirl Buns

t.   Entenmann's Corn Muffins

u.   Entenmann's Crumb Coffee Cake

v.   Entenmann's Dark Chocolate Chunk Cookies

w.   Entenmann's Deluxe French Cheese Cake

x.   Entenmann's Guava Cheese Puffs

y.   Entenmann's Homestyle Apple Pie

z.   Entenmann's Iced Lemon Cake

aa. Entenmann's Lemon Crunch Cake

bb. Entenmann's Lemon Loaf Cake

cc. Entenmann's Louisiana Crunch Cake

dd. Entenmann's Marble Loaf Cake

ee. Entenmann's Marshmallow Iced Devil's Food Cake

ff.  Entenmann's Milk Chocolate Chip Cookies

gg. Entenmann's New York Style Crumb Cake

hh. Entenmann's Original Recipe Chocolate Chip Cookies

ii.  Entenmann's Party Cake

jj.  Entenmann's Rainbow Pop'ems

kk. Entenmann's Raisin Loaf Cake

ll.  Entenmann's Raspberry Danish Twist

mm. Entenmann's Red Velvet Iced Cake

nn. Entenmann's Sour Cream Loaf Cake

oo. Entenmann's Thick Fudge Iced Golden Cake

1     pp. Entenmann's Vanilla Bean Square Cake

2     qq. Entenmann's Walnut Danish Ring

3     209.   These products contain preservatives and/or are not baked fresh daily or delivered

4  fresh daily.

5     210.   Just as Entenmann's Soft'ees, the aforementioned Entenmann's brand products

6  violate state and federal law, are misbranded, and are inherently deceptive in nature.

7     **Substantially Similar Products with Labels that Include a**

8     **Paid Endorsement from the American Heart Association**

9     211.   A number of Defendant's products contain a "heart-check mark" endorsement from

10  the American Heart Association.

11     212.   Defendant provided compensation to the American Heart Association in return for

12  the use of these endorsements.

13     213.   The labels on these products do not disclose that this is a paid endorsement.

14     214.   In order to protect consumers from being misled, the laws regulating the labeling of

15  food require that companies disclose any instance where they have paid to receive an endorsement

16  that is placed on a product label.

17     215.   According to the FDA:

18
19     "[t]he agency recognizes that endorsements made for compensation by private
       organizations or individuals may be misleading to consumers. The agency is advising
20     that when such endorsements are made, a statement should be included in close
       proximity to the claim, informing consumers that the organization or individual was
21     compensated for the endorsement. Failure to divulge this information on a label that
       bears a paid endorsement would cause the product to be misbranded under sections
22     403(a) and 201(n) of the act for failure to reveal a fact that is material."

23     216.   The failure to disclose that an endorsement is actually a paid endorsement also

24  violates 21 C.F.R. § 1.21, which states that it is unlawful to fail to reveal a material fact on the

25  label of a food product. The FDA has issued at least one warning letter for such an unlawful and

26  misleading practice.

27

28

217.    In direct violation of the labeling laws and the FDA directive, Defendant paid to receive the "heart-check mark" from the American Heart Association and then placed the endorsement on product labels without disclosing that it paid for these endorsements.

218.    As set forth above, such products bearing the "heart-check mark" includes Thomas' Plain Bagel Thins.  As a result, the Thomas' Plain Bagel Thins label violates federal and state law and is misbranded.

219.    Additionally, Defendant knowingly and intentionally sells the following products which bear an American Heart Association "heart-check mark," but do not disclose that such mark was a paid endorsement:

  a.  Thomas' 100% Whole Wheat Bagel Thins

  b.  Thomas' Everything Bagel Thins

  c.  Arnold's 100% Whole Wheat Bread

  d.  Arnold's 12 Grain Bread

  e.  Arnold's Healthy Multi Grain Bread

220.    For the same reasons, these products violate state and federal law and are misbranded.

## CLASS ACTION ALLEGATIONS

221.    Plaintiffs bring this action as a class action pursuant to Federal Rule of Procedure 23(b)(2) and 23(b)(3) on behalf of the following class (the "Class"):

All persons in the United States who, within the last four years, purchased Purchased Products or Substantially Similar Products.

222.    Alternatively, Plaintiffs bring this action as a class action pursuant to Federal Rule of Procedure 23(b)(2) and 23(b)(3) on behalf of the following class:

All persons in the State of California who, within the last four years, purchased Purchased Product or Substantially Similar Products.

223.    The following persons are expressly excluded from the Class: 1) Defendant and its subsidiaries and affiliates; 2) all persons who make a timely election to be excluded from the proposed Class; 3) governmental entities; and 4) the Court and its staff.

224.    This action can be maintained as a class action because there is a well-defined community of interest in the litigation and the proposed Class is easily ascertainable.

225.    <u>Numerosity</u>:  Based upon Defendant's sales with respect to the misbranded products at issue, it is estimated that the number of Class members is in the thousands, and that joinder of all Class members is impracticable.

226.    <u>Common Questions Predominate</u>:  This action involves common questions of law and fact applicable to each Class member that predominate over questions that affect only individual Class members.  Thus, proof of a common set of facts will establish the right of each Class member to recover.  Questions of law and fact common to each Class member include, just for example:

a.    Whether Defendant engaged in unlawful, unfair or deceptive business practices by failing to properly package and label their products sold to consumers;

b.    Whether the food products at issue were misbranded as a matter of law;

c.    Whether Defendant made unlawful and misleading "Good Source" and "Excellent Source" and "fresh" claims with respect to their food products sold to consumers;

d.    Whether Defendant made unlawful and misleading "100% whole wheat" claims with respect to their food products sold to consumers;

e.    Whether Defendant made unlawful and misleading bread, rolls, and buns claims with respect to their food products sold to consumers;

f.    Whether Defendant violated California Bus. & Prof. Code § 17200, *et seq.*, California Bus. & Prof. Code § 17500, *et seq.*, the Consumers Legal Remedies Act, Cal. Civ. Code §1750, *et seq.*, California Civ. Code § 1790, *et seq.*, 15 U.S.C. § 2301, *et seq.*, and the Sherman Law;

g.    Whether Plaintiffs and the Class are entitled to equitable and injunctive relief; and

h.    Whether Defendant's unlawful, unfair and deceptive practices harmed Plaintiffs and the Class.

227.   <u>Typicality</u>:   Plaintiffs' claims are typical of the claims of the Class because Plaintiffs bought Defendant's misbranded food products during the Class Period.   Defendant's unlawful, unfair and fraudulent actions concern the same business practices described herein irrespective of where they occurred or were experienced.   The injuries of each member of the Class were caused directly by Defendant's wrongful conduct.   In addition, the factual underpinning of Defendant's misconduct is common to all Class members and represents a common thread of misconduct resulting in injury to all members of the Class.   Plaintiffs' claims arise from the same practices and course of conduct that give rise to the claims of the Class members and are based on the same legal theories.

228.   <u>Adequacy</u>:   Plaintiffs will fairly and adequately protect the interests of the Class. Neither Plaintiffs nor Plaintiffs' counsel have any interests that conflict with or are antagonistic to the interests of the Class members.   Plaintiffs have retained highly competent and experienced class action attorneys to represent Plaintiffs' interests and those of the members of the Class. Plaintiffs and Plaintiffs' counsel have the necessary resources to adequately and vigorously litigate this class action, and Plaintiffs and their counsel are aware of their fiduciary responsibilities to the Class members and will diligently discharge those duties by vigorously seeking the maximum possible recovery for the Class.

229.   <u>Superiority</u>:   There is no plain, speedy, or adequate remedy other than by maintenance of this class action.   The prosecution of individual remedies by members of the Class will tend to establish inconsistent standards of conduct for Defendant and result in the impairment of Class members' rights and the disposition of their interests through actions to which they are not parties.   Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of effort and expense that numerous individual actions would create. Further, as the damages suffered by individual members of the Class may be relatively small, the expense and burden of individual litigation would make it difficult or impossible for individual

1   members of the Class to redress the wrongs done to them, while an important public interest will

2   be served by addressing the matter as a class action.  Class treatment of common questions of law

3   and fact would also be superior to multiple individual actions or piecemeal litigation in that class

4   treatment will conserve the resources of the Court and the litigants, and will promote consistency

5   and efficiency of adjudication.

6        230.    The prerequisites to maintaining a class action for injunctive or equitable relief

7   pursuant to Fed. R. Civ. P. 23(b)(2) are met as Defendant has acted or refused to act on grounds

8   generally applicable to the Class, thereby making appropriate injunctive or equitable relief with

9   respect to the Class as a whole.

10        231.    The prerequisites to maintaining a class action pursuant to Fed. R. Civ. P. 23(b)(3)

11   are met as questions of law or fact common to class members predominate over any questions

12   affecting only individual members, and a class action is superior to other available methods for

13   fairly and efficiently adjudicating the controversy.

14        232.    Plaintiffs and Plaintiffs' counsel are unaware of any difficulties that are likely to be

15   encountered in the management of this action that would preclude its maintenance as a class

16   action.

17        233.    Plaintiffs are members of the Class they seek to represent.  Plaintiffs' claims are

18   typical of the Class members' claims.  Plaintiffs will fairly and adequately protect the interests of

19   the Class in that Plaintiffs' claims are typical and representative of the Class.

20        234.    There are no unique defenses which may be asserted against Plaintiffs individually,

21   as distinguished from the Class.  The claims of Plaintiffs are the same as those of the Class.

22        235.    No conflicts of interest exist between Plaintiffs and the other Class members.

23   Plaintiff has retained counsel that is competent and experienced in complex class action litigation.

24   Plaintiffs and their counsel will fairly and adequately represent and protect the interests of the

25   Class.

26        236.    This class action is superior to any other method for the fair and efficient

27   adjudication of this dispute.

28

1

## CAUSES OF ACTION

2

### FIRST CAUSE OF ACTION
3
**Business and Professions Code § 17200, *et seq.***
**Unlawful Business Acts and Practices**

4

5
237.    Plaintiffs repeat and reallege each of the above allegations as if fully set forth

herein.

6
238.    Defendant's conduct constitutes unlawful business acts and practices.

7

8
239.    Defendant sold the Purchased Products and Substantially Similar Products in

California and throughout the United States during the Class Period.

9

10
240.    Defendant is a corporation and, therefore, is a "person" within the meaning of the

Sherman Law.

11

12
241.    Defendant's business practices are unlawful under § 17200, *et seq.* by virtue of

Defendant's violations of the advertising provisions of Article 3 of the Sherman Law and the

13
misbranded food provisions of Article 6 of the Sherman Law.

14

15
242.    Defendants' business practices are unlawful under § 17200, *et seq.* by virtue of

Defendants' violations of § 17500, *et seq.*, which forbids untrue and misleading advertising.

16

17
243.    Defendants' business practices are unlawful under § 17200, *et seq.* by virtue of

Defendants' violations of the Consumers Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.*

18

19
244.    Defendant sold to Plaintiffs and the Class products that were not capable of being

sold or held legally, and which had no economic value and were legally worthless.

20

21
245.    Plaintiffs and the Class paid a premium price for these products.

22
246.    As a result of Defendant's illegal business practices, Plaintiffs and the Class,

pursuant to Business and Professions Code § 17203, are entitled to an order enjoining such future

23

24
conduct and such other orders and judgments which may be necessary to disgorge Defendants' ill-

gotten gains and to restore to any Class Member any money paid for the Purchased Products or

25
Substantially Similar Products.

26

27
247.    Defendant's unlawful business acts present a threat and reasonable continued

likelihood of injury to Plaintiff and the Class.

28

---

248.   As a result of Defendant's conduct and its violation of the "unlawful prong" of the § 17200, *et seq.*, Plaintiffs and the Class, pursuant to Business and Professions Code § 17203, are entitled to an order enjoining such future conduct by Defendant, and such other orders and judgments which may be necessary to disgorge Defendant's ill-gotten gains and restore any money paid for Defendant's Purchased Products and Substantially Similar Products by Plaintiffs and the Class.

### SECOND CAUSE OF ACTION
#### Business and Professions Code § 17200, *et seq.*
#### <u>Unfair Business Acts and Practices</u>

249.   Plaintiffs repeat and reallege each of the above allegations as if fully set forth herein.

250.   Defendant's conduct as set forth herein constitutes unfair business acts and practices.

251.   Plaintiffs and members of the Class suffered a substantial injury by virtue of buying Defendant's Purchased Products and Substantially Similar Products that they would not have purchased absent Defendant's illegal conduct.

252.   Defendant's deceptive marketing, advertising, packaging and labeling of their Purchased Products and Substantially Similar Products and their sale of unsalable misbranded products that were illegal to possess was of no benefit to consumers, and the harm to consumers and competition is substantial.

253.   Defendant sold Plaintiffs and the Class Purchased Products and Substantially Similar Products that were not capable of being legally sold or held and that had no economic value and were legally worthless.

254.   Plaintiffs and the Class paid a premium price for the Purchased Products and Substantially Similar Products.

255.   Plaintiffs and the Class who purchased Defendant's Purchased Products and Substantially Similar Products had no way of reasonably knowing that the products were misbranded and were not properly  marketed, advertised, packaged and labeled, and thus could not have reasonably avoided the injury each of them suffered.

256.     The consequences of Defendant's conduct as set forth herein outweigh any justification, motive or reason therefor.  Defendants' conduct is and continues to be immoral, unethical, unscrupulous, contrary to public policy, and is substantially injurious to Plaintiffs and the Class.

257.     As a result of Defendant's conduct, Plaintiff and the Class, pursuant to Business and Professions Code § 17203, are entitled to an order enjoining such future conduct by Defendant, and such other orders and judgments which may be necessary to disgorge Defendant's ill-gotten gains and restore any money paid for Defendant's Purchased Products and Substantially Similar Products by Plaintiffs and the Class.

### THIRD CAUSE OF ACTION
**Business and Professions Code § 17200, *et seq.***
**<u>Fraudulent Business Acts and Practices</u>**

258.     Plaintiffs repeat and reallege each of the above allegations as if fully set forth herein.

259.     Defendant's conduct as set forth herein constitutes fraudulent business practices under California Business and Professions Code sections § 17200, *et seq.*

260.     Defendant sold Purchased Products and Substantially Similar Products in California and throughout the United States during the Class Period.

261.     Defendant's misleading marketing, advertising, packaging and labeling of the Purchased Products and Substantially Similar Products and their misrepresentations that the products were salable, capable of legal possession, and not misbranded were likely to deceive reasonable consumers.

262.     Plaintiffs and members of the Class were deceived.

263.     Defendant has engaged in fraudulent business acts and practices.

264.     Defendant's fraud and deception caused Plaintiffs and the Class to purchase Defendant's Purchased Products and Substantially Similar Products that they would otherwise not have purchased had they known the true nature of those products.

265.   Defendant sold to Plaintiffs and the Class Purchased Products and Substantially Similar Products that were not capable of being sold or held legally and which had no economic value and were legally worthless.

266.   Plaintiffs and the Class paid a premium price for the Purchased Products and Substantially Similar Products.

267.   As a result of Defendant's conduct as set forth herein, Plaintiffs and the Class, pursuant to Business and Professions Code § 17203, are entitled to an order enjoining such future conduct by Defendant, and such other orders and judgments which may be necessary to disgorge Defendant's ill-gotten gains and restore any money paid for Defendant's Purchased Products and Substantially Similar Products by Plaintiff and the Class.

### FOURTH CAUSE OF ACTION
**Business and Professions Code § 17500,** *et seq.*
**<u>Misleading and Deceptive Advertising</u>**

268.   Plaintiffs repeat and reallege each of the above allegations as if fully set forth herein.

269.   Plaintiffs asserts this cause of action for violations of California Business and Professions Code § 17500*, et seq*. for misleading and deceptive advertising against Defendants.

270.   Defendant sold Purchased Products in California and throughout the United States during the Class Period.

271.   Defendant engaged in a scheme of offering Defendant's Purchased Products and Substantially Similar Products for sale to Plaintiffs and members of the Class by way of, *inter alia*, product packaging and labeling, and other promotional materials.

272.   These materials misrepresented and/or omitted the true contents and nature of Defendant's Purchased Products and Substantially Similar Products.

273.   Defendant's advertisements and inducements were made within California and throughout the United States and come within the definition of advertising as contained in Business and Professions Code §17500, *et seq.* in that such product packaging and labeling, and promotional materials were intended as inducements to purchase Defendant's Purchased Products

and Substantially Similar Products and are statements disseminated by Defendant to Plaintiffs and the Class that were intended to reach members of the Class.

274.   Defendant knew, or in the exercise of reasonable care, should have known, that these statements were misleading and deceptive as set forth herein.

275.   In furtherance of its plan and scheme, Defendants prepared and distributed within California and nationwide via product packaging and labeling, and other promotional materials, statements that misleadingly and deceptively represented the composition and the nature of Defendant's Purchased Products and Substantially Similar Products.

276.   Plaintiff and the Class necessarily and reasonably relied on Defendant's materials, and were the intended targets of such representations.

277.   Defendant's conduct in disseminating misleading and deceptive statements in California and nationwide to Plaintiffs and the Class was and is likely to deceive reasonable consumers by obscuring the true composition and nature of Defendant's Purchased Products and Substantially Similar Products in violation of the "misleading prong" of California Business and Professions Code § 17500, *et seq*.

278.   As a result of Defendant's violations of the "misleading prong" of California Business and Professions Code § 17500, *et seq.*, Defendant has been unjustly enriched at the expense of Plaintiff and the Class.  Misbranded products cannot be legally sold or held and had no economic value and are legally worthless.

279.   Plaintiffs and the Class paid a premium price for the Purchased Products and Substantially Similar Products.

280.   Plaintiffs and the Class, pursuant to Business and Professions Code § 17535, are entitled to an order enjoining such future conduct by Defendant, and such other orders and judgments which may be necessary to disgorge Defendant's ill-gotten gains and restore any money paid for Defendant's Purchased Products and Substantially Similar Products by Plaintiff and the Class.

**FIFTH CAUSE OF ACTION**
**Business and Professions Code § 17500, *et seq.***
**<u>Untrue Advertising</u>**

281.    Plaintiffs repeat and reallege each of the above allegations as if fully set forth herein.

282.    Plaintiffs assert this cause of action against Defendants for violations of California Business and Professions Code § 17500, *et seq.*, regarding untrue advertising.

283.    Defendant sold Purchased Products and Substantially Similar Products in California and throughout the United States during the Class Period.

284.    Defendant engaged in a scheme of offering Defendant's Purchased Products and Substantially Similar Products for sale to Plaintiff and the Class by way of product packaging and labeling, and other promotional materials.

285.    These materials misrepresented or omitted the true contents and nature of Defendant's Purchased Products and Substantially Similar Products.

286.    Defendants' advertisements and inducements were made in California and throughout the United States and come within the definition of advertising contained in Business and Professions Code §17500, *et seq.* where the product packaging, labeling, and promotional materials were intended as inducements to purchase Defendant's Purchased Products and Substantially Similar Products, and are statements disseminated by Defendant to Plaintiffs and the Class.

287.    Defendant knew, or in the exercise of reasonable care, should have known, that these statements were untrue.

288.    In furtherance of its plan and scheme, Defendant prepared and distributed in California and nationwide via product packaging and labeling, and other promotional materials, statements that falsely advertise the composition of Defendant's Purchased Products and Substantially Similar Products, and falsely misrepresented the nature of those products.

289.    Purchasers like Plaintiffs and the Class were the intended targets of such representations and would reasonably be deceived by Defendant's materials.

290.    Defendant's conduct in disseminating untrue advertising throughout California deceived Plaintiffs and members of the Class by obfuscating the contents, nature and quality of Defendant's Purchased Products and Substantially Similar Products in violation of the "untrue prong" of California Business and Professions Code § 17500.

291.    As a result of Defendant's violations of the "untrue prong" of California Business and Professions Code § 17500, *et seq.*, Defendant has been unjustly enriched at the expense of Plaintiffs and the Class.  Misbranded products cannot be legally sold or held and had no economic value and are legally worthless.

292.    Plaintiffs and the Class paid a premium price for the Purchased Products and Substantially Similar Products.

293.    Plaintiffs and the Class, pursuant to Business and Professions Code § 17535, are entitled to an order enjoining such future conduct by Defendant, and such other orders and judgments which may be necessary to disgorge Defendant's ill-gotten gains and restore any money paid for Defendant's Purchased Products and Substantially Similar Products by Plaintiff and the Class.

**SIXTH CAUSE OF ACTION**
**Consumer Legal Remedies Act, Cal. Civ. Code §1750, *et seq.***

294.    Plaintiffs repeat and reallege each of the above allegations as if fully set forth herein.

295.    This cause of action is brought pursuant to the CLRA.

296.    On April 19, 2013, Plaintiffs' counsel served Defendant with notice of Defendant's violations of the CLRA.  As authorized by Defendant's counsel, Plaintiffs' counsel served Defendant by certified mail, return receipt requested, and email.

297.    Defendant failed to provide appropriate relief for its violations of the CLRA within 30 days of its receipt of the CLRA demand notice.

298.    Defendant's violations of the CLRA were and are willful, oppressive and fraudulent, thus supporting an award of punitive damages.

299.   Plaintiffs and the Class are entitled to actual and punitive damages against Defendant for its violations of the CLRA.

300.   In addition, pursuant to Cal. Civ. Code § 1782(a)(2), Plaintiffs and the Class are entitled to an order enjoining the above-described acts and practices, providing restitution to Plaintiffs and the Class, ordering payment of costs and attorneys' fees, and any other relief deemed appropriate and proper by the Court pursuant to Cal. Civ. Code § 1780.

301.   Defendant's actions, representations and conduct have violated, and continue to violate the CLRA, because they extend to transactions that are intended to result, or which have resulted, in the sale of goods or services to consumers.

302.   Defendant sold Purchased Products and Substantially Similar Products in California and the United States during the Class Period.

303.   Plaintiffs and members of the Class are "consumers" as that term is defined by the CLRA in Cal. Civ. Code §1761(d).

304.   Defendant's Purchased Products and Substantially Similar Products were and are "goods" within the meaning of Cal. Civ. Code §1761(a).

305.   By engaging in the conduct set forth herein, Defendant violated and continues to violate Section 1770(a)(5) of the CLRA because Defendant's conduct constitutes unfair methods of competition and unfair or fraudulent acts or practices because it misrepresents the particular ingredients, characteristics, uses, benefits and quantities of the goods.

306.   By engaging in the conduct set forth herein, Defendant violated and continues to violate Section 1770(a)(7) of the CLRA because Defendant's conduct constitutes unfair methods of competition and unfair or fraudulent acts or practices because it misrepresents the particular standard, quality, or grade of its goods.

307.   By engaging in the conduct set forth herein, Defendants violated and continue to violate Section 1770(a)(9) of the CLRA because Defendant's conduct constitutes unfair methods of competition and unfair or fraudulent acts or practices where it advertises goods with the intent not to sell the goods as advertised.

308.    By engaging in the conduct set forth herein, Defendant has violated and continues to violate Section 1770(a)(16) of the CLRA because Defendant's conduct constitutes unfair methods of competition and unfair or fraudulent acts or practices because it falsely represents that a subject of a transaction has been supplied in accordance with a previous representation.

309.    Plaintiffs request that the Court enjoin Defendant from continuing to employ the unlawful methods, acts and practices alleged herein pursuant to Cal. Civ. Code § 1780(a)(2).  If Defendants are not restrained from engaging in these practices in the future, Plaintiffs and the Class will continue to suffer harm.

310.    Defendant has failed to provide appropriate relief for its violations of the CLRA within 30 days of its receipt of the CLRA demand notice.  Accordingly, pursuant to Sections 1780 and 1782(b) of the CLRA, Plaintiffs are entitled to recover actual damages, punitive damages, attorneys' fees and costs, and any other relief the Court deems proper.

311.    The violations of the CLRA by Defendant were willful, oppressive and fraudulent, thus supporting an award of punitive damages.

312.    Plaintiffs and the Class will be entitled to actual and punitive damages against Defendant for its violations of the CLRA.  In addition, pursuant to Cal. Civ. Code § 1782(a)(2), Plaintiffs and the Class will be entitled to an order enjoining the above-described acts and practices, providing restitution to Plaintiff and the Class, ordering payment of costs and attorneys' fees, and any other relief deemed appropriate and proper by the Court pursuant to Cal. Civ. Code § 1780.

**SEVENTH CAUSE OF ACTION**
**Restitution Based on Unjust Enrichment/Quasi-Contract**

313.    Plaintiffs repeat and reallege each of the above allegations as if fully set forth herein.

314.    As a result of Defendant's fraudulent and misleading labeling, advertising, marketing and sales of Defendant's Purchased Products and Substantially Similar Products, Defendant was enriched at the expense of Plaintiff and the Class.

315.    Defendant sold Purchased Products and Substantially Similar Products to Plaintiff and the Class that were not capable of being sold or held legally and which had no economic value and were legally worthless.  It would be against equity and good conscience to permit Defendant to retain the ill-gotten benefits it received from Plaintiffs and the Class, in light of the fact that the products were not what Defendant purported them to be.  Thus, it would be unjust and inequitable for Defendant to retain the benefit without restitution to Plaintiffs and the Class of all monies paid to Defendant for the products at issue.

316.    As a direct and proximate result of Defendant's actions, Plaintiff and the Class have suffered damages in an amount to be proven at trial.

### JURY DEMAND

Plaintiff hereby demands a trial by jury of his claims.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, and on behalf of the general public, pray for judgment against Defendant as follows:

A.    An order certifying this case as a class action and appointing Plaintiffs and their counsel to represent the Class;

B.    An order awarding, as appropriate, damages, restitution, and disgorgement to Plaintiffs and the Class for all causes of action;

C.    An order requiring Defendant to immediately cease and desist from selling their Purchased Products and Substantially Similar Products listed in violation of law; enjoining Defendant from continuing to market, advertise, distribute, and sell these products in the unlawful manner described herein; and ordering Defendant to engage in corrective action;

D.    All remedies available pursuant to Cal. Civ. Code § 1780;

1         E.      An order awarding attorneys' fees and costs;

2         F.      An order awarding punitive damages;

3         G.      An order awarding pre-and post-judgment interest; and

4         H.      An order providing such further relief as this Court deems just and proper.

5

Dated:  May 20, 2013          Respectfully submitted,

 

                     */s/ Pierce Gore*
                     Ben F. Pierce Gore (SBN 128515)
                     PRATT & ASSOCIATES
                     1871 The Alameda, Suite 425
                     San Jose, CA  95126
                     Telephone:  (408) 429-6506
                     Fax:  (408) 369-0752
                     pgore@prattattorneys.com

                     Keith M. Fleischman (admitted *pro hac vice*)
                     Bradley F. Silverman (admitted *pro hac vice*)
                     THE FLEISCHMAN LAW FIRM, PLLC
                     565 Fifth Avenue, Seventh Floor
                     New York, New York 10017
                     Telephone: (212) 880-9571
                     Fax:  (917) 591-5245
                     keith@fleischmanlawfirm.com
                     bsilverman@fleischmanlawfirm.com

                     *Attorneys for Plaintiffs*