# EXHIBIT 33

77 FR 62122-01, 2012 WL 4808410 (F.R.)

RULES and REGULATIONS

FEDERAL TRADE COMMISSION

16 CFR Part 260

Guides for the Use of Environmental Marketing Claims

Thursday, October 11, 2012

AGENCY: Federal Trade Commission.

**\*62122** ACTION: Adoption of Revised Guides.

SUMMARY: The Federal Trade Commission ("FTC" or "Commission") adopts revised Guides for the Use of Environmental Marketing Claims ("Green Guides" or "Guides"). This document summarizes the Commission's revisions to the Guides and includes the final Guides.

DATES: Effective October 11, 2012.

ADDRESSES: Readers can find the Commission's complete analysis in the Statement of Basis and Purpose ("Statement") on the FTC's Web site at http://www.ftc.gov/os/fedreg/2012/10/greenguidesstatement.pdf.

FOR FURTHER INFORMATION CONTACT: Laura Koss, Attorney, Division of Enforcement, Bureau of Consumer Protection, Federal Trade Commission, 202-326-2890.

SUPPLEMENTARY INFORMATION: As part of its comprehensive review of its Green Guides,[FN1] the Commission reviewed public comments, public workshop transcripts, and consumer perception research.[FN2] The Commission now makes several modifications and additions to the 1998 Guides and adopts the resulting revised Guides as final.

> FN1 The FTC issued the Green Guides in 1992, with subsequent updates in 1996 and 1998. To avoid confusion, we refer to the current Guides as the "1998 Guides."

> FN2 In October 2010, the Commission proposed changes to the 1998 Guides. 75 FR 63552 (Oct. 15, 2010).

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

The Commission modifies sections for the following claims: General Environmental Benefit, Compostable, Degradable, Ozone, Recyclable, and Recycled Content.[FN3] Additionally, the Commission creates the following new sections: Carbon Offsets, Certifications and Seals of Approval, Free-of, Non-toxic, Made with Renewable Energy, and Made with Renewable Materials.[FN4] Finally, the Commission makes non-substantive changes throughout the Guides to make them easier to read and use, including simplifying language and reorganizing sections to make information easier to find. Industry guides, such as these, are administrative interpretations of law. Therefore, they do not have the force and effect of law and are not independently enforceable.

> FN3 The Commission additionally makes a minor change to an example in the Source Reduction section (16 CFR 260.17, Example 1) and retains the guidance on Refillable claims (16 CFR 260.14) without change.

> FN4 The final Guides do not include specific guidance for organic, natural, or sustainable claims.

I. General Environmental Benefit Claims

The final Guides caution marketers not to make unqualified general environmental benefit claims because "it is highly unlikely that marketers can substantiate all reasonable interpretations of these claims."[FN5] A new example illustrates how marketers may make general benefit claims through the combination of images and text.[FN6]

> FN5 16 CFR 260.4(b).

> FN6 16 CFR 260.4, Example 3. The Commission has moved many of the original examples to newly-created sections (see, e.g., Certifications and Seals of Approval, Free-Of, and Non-toxic).

The Guides further provide that marketers may be able to qualify general environmental benefit claims to focus consumers on the specific environmental benefits that they can substantiate.[FN7] In doing so, marketers should use clear and prominent qualifying language to convey that a general environmental claim refers only to a specific and limited environmental benefit(s). In addition, this section cautions marketers that explanations of specific attributes, even when true and substantiated, will not adequately qualify general environmental marketing claims if an advertisement's context implies other deceptive claims.[FN8] Moreover, the Guides advise marketers not to imply that any specific benefit is significant if it is, in fact, negligible.[FN9] Finally, the Guides state that if a qualified general claim conveys that a product is more environmentally beneficial overall because of the particular touted benefit, marketers should analyze trade-offs resulting from the benefit to substantiate this claim.[FN10]

> FN7 16 CFR 260.4(c).

> FN8 16 CFR 260.4(d).

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

FN9 16 CFR 260.4(c), Example 4.

FN10 16 CFR 260.4(c), Example 5.

II. Carbon Offsets

The final Guides include a new section on carbon offsets.[FN11] This section advises marketers to have competent and reliable scientific evidence to support their carbon offset claims, including using appropriate accounting methods to ensure they are properly quantifying emission reductions and not selling those reductions more than once. Additionally, the Guides advise marketers to disclose if consumers' offset purchases fund emission reductions that will not occur for two years or longer. Finally, the Guides caution marketers not to advertise a carbon offset if the activity that forms the basis of the offset is already required by law. More detailed guidance could quickly become obsolete given the rapidly changing nature of this market and consumers' minimal understanding of such issues. Moreover, such guidance might place the FTC in the inappropriate role of setting environmental policy.

FN11 16 CFR 260.5.

III. Certifications and Seals of Approval

This new section provides that it is deceptive to misrepresent that an item or service has been endorsed or certified by an independent third party.[FN12] It also emphasizes that certifications and seals may be endorsements covered by the Commission's Endorsement Guides.[FN13] Several examples illustrate application of the Endorsement Guides' advice that marketers disclose a "material connection" (i.e., a connection that might materially affect the weight or credibility of an endorsement).[FN14] For instance, Example 8 clarifies that marketers featuring certifications from third-party certifiers need not disclose their payment of a reasonable certification fee if that is their only connection to the certifier. In this situation, there is no need for disclosure because consumers likely expect that certifiers charge a reasonable fee for their services. As other examples demonstrate, whether a material connection exists depends on whether the ties between the marketer and certifier likely affect the weight or credibility of the certification. If, for example, an independent certifier administers an industry trade association certification program by objectively applying a voluntary consensus standard (i.e., a standard that has been developed and maintained by a voluntary consensus standard body), then the connection between the industry group and the marketer would not likely be material.[FN15]

FN12 16 CFR 260.6(a).

FN13 16 CFR 260.6(b), citing 16 CFR 255.

FN14 Examples 2, 3, 4, 8.

FN15 Voluntary consensus standard bodies are "organizations which plan, develop, establish, or coordinate voluntary consensus standards using agreed-upon procedures.

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

> * * * A voluntary consensus standards body is defined by the following attributes: (i) Openness, (ii) balance of interest, (iii) due process, (iv) an appeals process, (v) consensus, which is defined as general agreement, but not necessarily unanimity, and includes a process for attempting to resolve objections by interested parties, as long as all comments have been fairly considered, each objector is advised of the disposition of his or her objection(s) and the reasons why, and the consensus members are given an opportunity to change their votes after reviewing the comments."Circular No. A-119 Revised, Office of Management and Budget at http://www.whitehouse.gov/omb/circulars—a119.

**\*62123** The final Guides also advise that an environmental certification or seal likely conveys a general environmental benefit claim when it does not clearly convey, either through its name or other means, the basis for the certification.[FN16] Because it is highly unlikely that marketers can substantiate such a claim, they should not use environmental certifications or seals that do not convey the basis for the certification. The final Guides further state that marketers should accompany such seals or certifications with clear and prominent language that effectively conveys that the certification or seal refers only to specific and limited benefits. This may be particularly challenging with certifications based on comprehensive, multi-attribute standards. Therefore, a new example illustrates one way of qualifying such certifications.[FN17]

> FN16 16 CFR 260.6(d).

> FN17 16 CFR 260.6, Example 7.

Finally, the Guides clarify that third-party certification does not eliminate a marketer's obligation to have substantiation for all conveyed claims.[FN18]

> FN18 16 CFR 260.6(c).

## IV. Compostable

The final Guides adopt the 1998 guidance on compostable claims with one clarification. The 1998 Guides stated that marketers should possess competent and reliable scientific evidence showing that "all the materials in the product or package will break down into, or otherwise become a part of, usable compost (e.g., soil-conditioning material, mulch) in a safe and timely manner in an appropriate composting program or facility, or in a home compost pile or device."[FN19] The final Guides clarify that "timely manner" means "in approximately the same time as the materials with which it is composted."[FN20] The final Guides also reiterate the 1998 guidance that marketers clearly qualify compostable claims, if, for example, their product cannot be composted safely or in a timely manner at home, or if necessary large-scale facilities are not available to a substantial majority of the marketer's consumers.[FN21]

> FN19 16 CFR 260.7(c) (emphasis added) (1998 Guides).

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

FN20 16 CFR 260.7(b).

FN21 16 CFR 260.7(c), 260.7(d).

V. Degradable

The 1998 Guides stated that a marketer should qualify a degradable claim unless it has competent and reliable scientific evidence that the "entire product or package will completely break down and return to nature, i.e., decompose into elements found in nature within a reasonably short period of time after customary disposal."[FN22] The final Guides state that marketers should not make unqualified degradable claims for items destined for landfills, incinerators, or recycling facilities because complete decomposition in those specific environments will not occur within one year.[FN23] The final Guides also clarify that a marketer making an unqualified degradable claim for solid items other than those destined for landfills, incinerators, or recycling facilities should substantiate that the entire item will fully decompose within one year after customary disposal.[FN24]

FN22 16 CFR 260.7(b) (emphasis added) (1998 Guides).

FN23 16 CFR 260.8(c).

FN24 Id.

VI. Free-Of Claims

The final Guides include a new section on claims that products or services have no, are free of, or do not contain certain substances ("free-of claims").[FN25] This new section advises that, even if true, claims that an item is free of a substance may be deceptive if: (1) The item contains substances that pose the same or similar environmental risk as the substance not present; or (2) the substance has not been associated with the product category.[FN26] This two-part analysis prevents deception resulting from two implied claims. The first prong addresses the implied claim that a product is free of negative attributes associated with that substance. Thus, a free-of claim would still be deceptive even if a product is free of a particular substance if it has another substance that causes the same or similar environmental harm. The second prong cautions that free-of claims may deceive consumers by falsely suggesting that competing products contain the substance or that the marketer has "improved" the product by removing the substance.

FN25 16 CFR 260.9. The 1998 Guides covered these claims only in examples. 16 CFR 260.6(c), Example 4; 16 CFR 260.7(h), Example 3.

FN26 16 CFR 260.9(b).

The final Guides also clarify that a free-of claim may, in some circumstances, be non-deceptive even though the product contains a "trace amount" of the substance. A marketer can make a claim for a product that still contains some amount of a substance only if: (1) The level of the specified substance is no more than that which would be found as an

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

acknowledged trace contaminant or background level; (2) the substance's presence does not cause material harm that consumers typically associate with that substance; and (3) the substance has not been added intentionally to the product.[FN27] The first prong of this test reflects consumers' likely expectations that products advertised as "free-of" a substance contain no more than trace amounts that occur naturally in the environment or in product ingredients. The second prong clarifies that it is deceptive to make a free-of claim if the product contains any amount of the substance that causes material harm that consumers typically associate with that substance, no matter how small. The third prong recognizes that, if added intentionally, reasonable consumers would not think that a product was free of that substance, even if that intentionally-added amount is less than a typical background level amount of that substance.

> FN27 16 CFR 260.9(c).

## VII. Non-Toxic Claims

The final Guides include a new section on non-toxic claims. This section includes the 1998 Guides' advice that it is deceptive to misrepresent that a product, package, or service is non-toxic.[FN28] Like the 1998 Guides, it also cautions that such claims likely convey that an item or service is non-toxic both for humans and for the environment.[FN29]

> FN28 16 CFR 260.10. The 1998 Guides did not include a non-toxic section but addressed these claims in an example in the General Environmental Benefit section.

> FN29 16 CFR 260.10, Example 1.

## VIII. Ozone-Safe and Ozone-Friendly Claims

The final Guides include the 1998 Guides' advice that it is deceptive to misrepresent that a product is safe for, or "friendly" to, the ozone layer or the atmosphere.[FN30] The Commission, however, eliminates Examples 3 and 4, which both referenced ozone-depleting chemicals that the EPA now bans.

> FN30 16 CFR 260.11.

## IX. Recyclable

The final Guides, like the 1998 Guides, advise marketers to qualify recyclable claims when recycling facilities are not available to a "substantial majority" of consumers or communities where a product is sold.[FN31] They clarify that "substantial majority," as used in this context, means at least 60 percent. They also emphasize that the lower the levels of access to appropriate facilities, the more strongly the marketer should emphasize the limited availability of recycling for the product.

> FN31 16 CFR 260.12(b).

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

**\*62124** X. Recycled Content

The final Guides include minor changes to the 1998 guidance for recycled content claims.[FN32] Like the 1998 Guides, they provide that marketers should make such claims only for materials that were recovered or otherwise diverted from the waste stream, either during the manufacturing process (pre-consumer) or after consumer use (post-consumer).[FN33] Additionally, the final Guides continue to advise marketers to qualify claims for products or packages only partially made from recycled material.[FN34] The Commission, however, slightly revises Examples 11 and 12 to recognize alternative auto recyclers.[FN35]

> FN32 16 CFR 260.7(e) (1998 Guides).

> FN33 16 CFR 260.13(b). The final Guides eliminate Example 2, which provided circular advice.

> FN34 16 CFR 260.13(c).

> FN35 These examples appeared in the 1998 Guides as Examples 12 and 13. The Commission makes this change because in the auto context, a recycled content claim for reused parts is true regardless of the type of recycler who sells them.

XI. Renewable Energy Claims

A new section on renewable energy claims advises marketers to avoid making unqualified renewable energy claims based on energy derived from fossil fuels.[FN36] This section clarifies that marketers may make such claims if they purchase renewable energy certificates ("RECs") to match their energy use.[FN37] Additionally, based on the Commission's study, the section cautions marketers that consumers likely interpret renewable energy claims differently than marketers may intend. Accordingly, unless marketers have substantiation for all their express and reasonably implied claims, they should clearly and prominently qualify their renewable energy claims. The Guides suggest that one way to minimize the risk of deception is to specify the renewable energy source (e.g., wind or solar energy).[FN38]

> FN36 16 CFR 260.15.

> FN37 16 CFR 260.15(a).

> FN38 16 CFR 260.15(b).

The Guides also advise against making unqualified claims unless all, or virtually all, of the significant manufacturing processes involved in making a product are powered with renewable energy or non-renewable energy matched with RECs. Finally, the Guides adopt the proposed advice that using the term "hosting" is deceptive when a marketer generates renewable power but has sold all of the renewable attributes of that power. An example, however, clarifies

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

that not all generation claims by such marketers are deceptive.[FN39]

      FN39 16 CFR 260.15(d), Example 5.

## XII. Renewable Materials Claims

The final Guides include a new section on renewable materials claims.[FN40] Similar to the renewable energy guidance, this section advises that consumers likely interpret renewable materials differently than marketers may intend. Accordingly, the final Guides advise that unless marketers have substantiation for all their express and reasonably implied claims, they should clearly and prominently qualify their renewable materials claims.[FN41] The final Guides provide an example of one way marketers can minimize the likelihood of unintended implied claims, such as recyclable, degradable, and made with recycled content. Specifically, they suggest that marketers specify the material used and why the material is renewable.[FN42] Additionally, the Guides state that marketers should further qualify these claims for products containing less than 100 percent renewable materials, excluding minor, incidental components.[FN43]

      FN40 16 CFR 260.16.

      FN41 16 CFR 260.16(b).

      FN42 Id., Example 1.

      FN43 16 CFR 260.16(c); Example 2.

## XIII. Areas Not Addressed by Final Guides

The final Guides do not address organic, sustainable, and natural claims. In the case of organic claims, the Commission wants to avoid providing advice that is duplicative or inconsistent with the USDA's National Organic Program ("NOP"), which provides a comprehensive regulatory framework governing organic claims for agricultural products. For organic claims outside the NOP's jurisdiction, and for sustainable and natural claims, the Commission lacks sufficient evidence on which to base general guidance.

## XIV. Conclusion

For a complete analysis of comments and the final guidance, please see the Statement on the FTC's Web site, available at http://www.ftc.gov/os/fedreg/2012/10/greenguidesstatement.pdf.

## XV. Revised Green Guides

List of Subjects in 16 CFR Part 260

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Advertising, Environmental protection, Labeling, Trade practices.

For the reasons stated above, the Federal Trade Commission revises 16 CFR part 260 to read as follows:

PART 260—GUIDES FOR THE USE OF ENVIRONMENTAL MARKETING CLAIMSSec.

260.1 Purpose, scope, and structure of the guides.

260.2 Interpretation and substantiation of environmental marketing claims.

260.3 General principles.

260.4 General environmental benefit claims.

260.5 Carbon offsets.

260.6 Certifications and seals of approval.

260.7 Compostable claims.

260.8 Degradable claims.

260.9 Free-of claims.

260.10 Non-toxic claims.

260.11 Ozone-safe and ozone-friendly claims.

260.12 Recyclable claims.

260.13 Recycled content claims.

260.14 Refillable claims.

260.15 Renewable energy claims.

260.16 Renewable materials claims.

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

260.17 Source reduction claims.

Authority: 15 U.S.C. 41-58.

16 CFR § 260.1

§ 260.1 Purpose, scope, and structure of the guides.

(a) These guides set forth the Federal Trade Commission's current views about environmental claims. The guides help marketers avoid making environmental marketing claims that are unfair or deceptive under Section 5 of the FTC Act, 15 U.S.C. 45. They do not confer any rights on any person and do not operate to bind the FTC or the public. The Commission, however, can take action under the FTC Act if a marketer makes an environmental claim inconsistent with the guides. In any such enforcement action, the Commission must prove that the challenged act or practice is unfair or deceptive in violation of Section 5 of the FTC Act.

(b) These guides do not preempt federal, state, or local laws. Compliance with those laws, however, will not necessarily preclude Commission law enforcement action under the FTC Act.

(c) These guides apply to claims about the environmental attributes of a product, package, or service in connection with the marketing, offering for sale, or sale of such item or service to individuals. These guides also apply to business-to-business transactions. The guides apply to environmental claims in labeling, advertising, promotional materials, and all other forms of marketing in any medium, whether asserted directly or by implication, through words, symbols, logos, depictions, product brand names, or any other means.

(d) The guides consist of general principles, specific guidance on the use of particular environmental claims, and *62125 examples. Claims may raise issues that are addressed by more than one example and in more than one section of the guides. The examples provide the Commission's views on how reasonable consumers likely interpret certain claims. The guides are based on marketing to a general audience. However, when a marketer targets a particular segment of consumers, the Commission will examine how reasonable members of that group interpret the advertisement. Whether a particular claim is deceptive will depend on the net impression of the advertisement, label, or other promotional material at issue. In addition, although many examples present specific claims and options for qualifying claims, the examples do not illustrate all permissible claims or qualifications under Section 5 of the FTC Act. Nor do they illustrate the only ways to comply with the guides. Marketers can use an alternative approach if the approach satisfies the requirements of Section 5 of the FTC Act. All examples assume that the described claims otherwise comply with Section 5. Where particularly useful, the Guides incorporate a reminder to this effect.

16 CFR § 260.2

§ 260.2 Interpretation and substantiation of environmental marketing claims.

Section 5 of the FTC Act prohibits deceptive acts and practices in or affecting commerce. A representation, omission,

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

or practice is deceptive if it is likely to mislead consumers acting reasonably under the circumstances and is material to consumers' decisions. See FTC Policy Statement on Deception, 103 FTC 174 (1983). To determine if an advertisement is deceptive, marketers must identify all express and implied claims that the advertisement reasonably conveys. Marketers must ensure that all reasonable interpretations of their claims are truthful, not misleading, and supported by a reasonable basis before they make the claims. See FTC Policy Statement Regarding Advertising Substantiation, 104 FTC 839 (1984). In the context of environmental marketing claims, a reasonable basis often requires competent and reliable scientific evidence. Such evidence consists of tests, analyses, research, or studies that have been conducted and evaluated in an objective manner by qualified persons and are generally accepted in the profession to yield accurate and reliable results. Such evidence should be sufficient in quality and quantity based on standards generally accepted in the relevant scientific fields, when considered in light of the entire body of relevant and reliable scientific evidence, to substantiate that each of the marketing claims is true.

16 CFR § 260.3

§ 260.3 General principles.

The following general principles apply to all environmental marketing claims, including those described in §§ 260.4 through 240.16. Claims should comport with all relevant provisions of these guides.

(a) Qualifications and disclosures. To prevent deceptive claims, qualifications and disclosures should be clear, prominent, and understandable. To make disclosures clear and prominent, marketers should use plain language and sufficiently large type, should place disclosures in close proximity to the qualified claim, and should avoid making inconsistent statements or using distracting elements that could undercut or contradict the disclosure.

(b) Distinction between benefits of product, package, and service. Unless it is clear from the context, an environmental marketing claim should specify whether it refers to the product, the product's packaging, a service, or just to a portion of the product, package, or service. In general, if the environmental attribute applies to all but minor, incidental components of a product or package, the marketer need not qualify the claim to identify that fact. However, there may be exceptions to this general principle. For example, if a marketer makes an unqualified recyclable claim, and the presence of the incidental component significantly limits the ability to recycle the product, the claim would be deceptive.

Example 1: A plastic package containing a new shower curtain is labeled "recyclable" without further elaboration. Because the context of the claim does not make clear whether it refers to the plastic package or the shower curtain, the claim is deceptive if any part of either the package or the curtain, other than minor, incidental components, cannot be recycled.

Example 2: A soft drink bottle is labeled "recycled." The bottle is made entirely from recycled materials, but the bottle cap is not. Because the bottle cap is a minor, incidental component of the package, the claim is not deceptive.

(c) Overstatement of environmental attribute. An environmental marketing claim should not overstate, directly or by implication, an environmental attribute or benefit. Marketers should not state or imply environmental benefits if the

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

benefits are negligible.

Example 1: An area rug is labeled "50% more recycled content than before." The manufacturer increased the recycled content of its rug from 2% recycled fiber to 3%. Although the claim is technically true, it likely conveys the false impression that the manufacturer has increased significantly the use of recycled fiber.

Example 2: A trash bag is labeled "recyclable" without qualification. Because trash bags ordinarily are not separated from other trash at the landfill or incinerator for recycling, they are highly unlikely to be used again for any purpose. Even if the bag is technically capable of being recycled, the claim is deceptive since it asserts an environmental benefit where no meaningful benefit exists.

(d) Comparative claims. Comparative environmental marketing claims should be clear to avoid consumer confusion about the comparison. Marketers should have substantiation for the comparison.

Example 1: An advertiser notes that its glass bathroom tiles contain "20% more recycled content." Depending on the context, the claim could be a comparison either to the advertiser's immediately preceding product or to its competitors' products. The advertiser should have substantiation for both interpretations. Otherwise, the advertiser should make the basis for comparison clear, for example, by saying "20% more recycled content than our previous bathroom tiles."

Example 2: An advertiser claims that "our plastic diaper liner has the most recycled content." The diaper liner has more recycled content, calculated as a percentage of weight, than any other on the market, although it is still well under 100%. The claim likely conveys that the product contains a significant percentage of recycled content and has significantly more recycled content than its competitors. If the advertiser cannot substantiate these messages, the claim would be deceptive.

Example 3: An advertiser claims that its packaging creates "less waste than the leading national brand." The advertiser implemented the source reduction several years ago and supported the claim by calculating the relative solid waste contributions of the two packages. The advertiser should have substantiation that the comparison remains accurate.

Example 4: A product is advertised as "environmentally preferable." This claim likely conveys that the product is environmentally superior to other products. Because it is highly unlikely that the marketer can substantiate the messages conveyed by this statement, this claim is deceptive. The claim would not be deceptive if the marketer accompanied it with clear and prominent language limiting the environmental superiority representation to the particular attributes for which the marketer has substantiation, provided the advertisement's context does not imply other deceptive claims. For example, the claim "Environmentally preferable: contains 50% recycled content compared to 20% for the leading brand" would not be deceptive.

16 CFR § 260.4

§ 260.4 General environmental benefit claims.

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

(a) It is deceptive to misrepresent, directly or by implication, that a product, package, or service offers a general environmental benefit.

**\*62126** (b) Unqualified general environmental benefit claims are difficult to interpret and likely convey a wide range of meanings. In many cases, such claims likely convey that the product, package, or service has specific and far-reaching environmental benefits and may convey that the item or service has no negative environmental impact. Because it is highly unlikely that marketers can substantiate all reasonable interpretations of these claims, marketers should not make unqualified general environmental benefit claims.

(c) Marketers can qualify general environmental benefit claims to prevent deception about the nature of the environmental benefit being asserted. To avoid deception, marketers should use clear and prominent qualifying language that limits the claim to a specific benefit or benefits. Marketers should not imply that any specific benefit is significant if it is, in fact, negligible. If a qualified general claim conveys that a product is more environmentally beneficial overall because of the particular touted benefit(s), marketers should analyze trade-offs resulting from the benefit(s) to determine if they can substantiate this claim.

(d) Even if a marketer explains, and has substantiation for, the product's specific environmental attributes, this explanation will not adequately qualify a general environmental benefit claim if the advertisement otherwise implies deceptive claims. Therefore, marketers should ensure that the advertisement's context does not imply deceptive environmental claims.

Example 1: The brand name "Eco-friendly" likely conveys that the product has far-reaching environmental benefits and may convey that the product has no negative environmental impact. Because it is highly unlikely that the marketer can substantiate these claims, the use of such a brand name is deceptive. A claim, such as "Eco-friendly: made with recycled materials," would not be deceptive if: (1) The statement "made with recycled materials" is clear and prominent; (2) the marketer can substantiate that the entire product or package, excluding minor, incidental components, is made from recycled material; (3) making the product with recycled materials makes the product more environmentally beneficial overall; and (4) the advertisement's context does not imply other deceptive claims.

Example 2: A marketer states that its packaging is now "Greener than our previous packaging." The packaging weighs 15% less than previous packaging, but it is not recyclable nor has it been improved in any other material respect. The claim is deceptive because reasonable consumers likely would interpret "Greener" in this context to mean that other significant environmental aspects of the packaging also are improved over previous packaging. A claim stating "Greener than our previous packaging" accompanied by clear and prominent language such as, "We've reduced the weight of our packaging by 15%," would not be deceptive, provided that reducing the packaging's weight makes the product more environmentally beneficial overall and the advertisement's context does not imply other deceptive claims.

Example 3: A marketer's advertisement features a picture of a laser printer in a bird's nest balancing on a tree branch, surrounded by a dense forest. In green type, the marketer states, "Buy our printer. Make a change."Although the advertisement does not expressly claim that the product has environmental benefits, the featured images, in combination with the text, likely convey that the product has far-reaching environmental benefits and may convey that the

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

product has no negative environmental impact. Because it is highly unlikely that the marketer can substantiate these claims, this advertisement is deceptive.

Example 4: A manufacturer's Web site states, "Eco-smart gas-powered lawn mower with improved fuel efficiency!" The manufacturer increased the fuel efficiency by 1/10 of a percent. Although the manufacturer's claim that it has improved its fuel efficiency technically is true, it likely conveys the false impression that the manufacturer has significantly increased the mower's fuel efficiency.

Example 5: A marketer reduces the weight of its plastic beverage bottles. The bottles' labels state: "Environmentally-friendly improvement. 25% less plastic than our previous packaging." The plastic bottles are 25 percent lighter but otherwise are no different. The advertisement conveys that the bottles are more environmentally beneficial overall because of the source reduction. To substantiate this claim, the marketer likely can analyze the impacts of the source reduction without evaluating environmental impacts throughout the packaging's life cycle. If, however, manufacturing the new bottles significantly alters environmental attributes earlier or later in the bottles' life cycle, i.e., manufacturing the bottles requires more energy or a different kind of plastic, then a more comprehensive analysis may be appropriate.

<u>16 CFR § 260.5</u>

<u>§ 260.5</u> Carbon offsets.

(a) Given the complexities of carbon offsets, sellers should employ competent and reliable scientific and accounting methods to properly quantify claimed emission reductions and to ensure that they do not sell the same reduction more than one time.

(b) It is deceptive to misrepresent, directly or by implication, that a carbon offset represents emission reductions that have already occurred or will occur in the immediate future. To avoid deception, marketers should clearly and prominently disclose if the carbon offset represents emission reductions that will not occur for two years or longer.

(c) It is deceptive to claim, directly or by implication, that a carbon offset represents an emission reduction if the reduction, or the activity that caused the reduction, was required by law.

Example 1: On its Web site, an online travel agency invites consumers to purchase offsets to "neutralize the carbon emissions from your flight." The proceeds from the offset sales fund futu'e projects that will not reduce greenhouse gas emissions for two years. The claim likely conveys that the emission reductions either already have occurred or will occur in the near future. Therefore, the advertisement is deceptive. It would not be deceptive if the agency's Web site stated "Offset the carbon emissions from your flight by funding new projects that will begin reducing emissions in two years."

Example 2: An offset provider claims that its product "will offset your own 'dirty' driving habits." The offset is based on methane capture at a landfill facility. State law requires this facility to capture all methane emitted from the landfill. The claim is deceptive because the emission reduction would have occurred regardless of whether consumers pur-

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

chased the offsets.

<u>16 CFR § 260.6</u>

§ 260.6 Certifications and seals of approval.

(a) It is deceptive to misrepresent, directly or by implication, that a product, package, or service has been endorsed or certified by an independent third party.

(b) A marketer's use of the name, logo, or seal of approval of a third-party certifier or organization may be an endorsement, which should meet the criteria for endorsements provided in the FTC's Endorsement Guides, 16 CFR part 255, including Definitions (§ 255.0), General Considerations (§ 255.1), Expert Endorsements (§ 255.3), Endorsements by Organizations (§ 255.4), and Disclosure of Material Connections (§ 255.5).[FN44]

> FN44 The examples in this section assume that the certifiers' endorsements meet the criteria provided in the Expert Endorsements (§ 255.3) and Endorsements by Organizations (§ 255.4) sections of the Endorsement Guides.

(c) Third-party certification does not eliminate a marketer's obligation to ensure that it has substantiation for all claims reasonably communicated by the certification.

(d) A marketer's use of an environmental certification or seal of approval likely conveys that the product offers a general environmental benefit (see § 260.4) if the certification or seal does not convey the basis for the certification or seal, either through the name or some other means. Because it is highly unlikely that marketers can substantiate general environmental benefit claims, marketers should not use environmental certifications or seals that do not convey the basis for the certification.

*62127 (e) Marketers can qualify general environmental benefit claims conveyed by environmental certifications and seals of approval to prevent deception about the nature of the environmental benefit being asserted. To avoid deception, marketers should use clear and prominent qualifying language that clearly conveys that the certification or seal refers only to specific and limited benefits.

Example 1: An advertisement for paint features a "GreenLogo" seal and the statement "GreenLogo for Environmental Excellence." This advertisement likely conveys that: (1) the GreenLogo seal is awarded by an independent, third-party certifier with appropriate expertise in evaluating the environmental attributes of paint; and (2) the product has far-reaching environmental benefits. If the paint manufacturer awarded the seal to its own product, and no independent, third-party certifier objectively evaluated the paint using independent standards, the claim would be deceptive. The claim would not be deceptive if the marketer accompanied the seal with clear and prominent language: (1) indicating that the marketer awarded the GreenLogo seal to its own product; and (2) clearly conveying that the award refers only to specific and limited benefits.

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Example 2: A manufacturer advertises its product as "certified by the American Institute of Degradable Materials."Because the advertisement does not mention that the American Institute of Degradable Materials ("AIDM") is an industry trade association, the certification likely conveys that it was awarded by an independent certifier. To be certified, marketers must meet standards that have been developed and maintained by a voluntary consensus standard body.[FN45] An independent auditor applies these standards objectively. This advertisement likely is not deceptive if the manufacturer complies with § 260.8 of the Guides (Degradable Claims) because the certification is based on independently-developed and -maintained standards and an independent auditor applies the standards objectively.

> FN45 Voluntary consensus standard bodies are "organizations which plan, develop, establish, or coordinate voluntary consensus standards using agreed-upon procedures. * * * A voluntary consensus standards body is defined by the following attributes: (i) Openness, (ii) balance of interest, (iii) due process, (iv) an appeals process, (v) consensus, which is defined as general agreement, but not necessarily unanimity, and includes a process for attempting to resolve objections by interested parties, as long as all comments have been fairly considered, each objector is advised of the disposition of his or her objection(s) and the reasons why, and the consensus members are given an opportunity to change their votes after reviewing the comments."Memorandum for Heads of Executive Departments and Agencies on Federal Participation in the Development and Use of Voluntary Consensus Assessment Activities, February 10, 1998, Circular No. A-119 Revised, Office of Management and Budget at http://www.whitehouse.gov/omb/circulars—a119.

Example 3: A product features a seal of approval from "The Forest Products Industry Association," an industry certifier with appropriate expertise in evaluating the environmental attributes of paper products. Because it is clear from the certifier's name that the product has been certified by an industry certifier, the certification likely does not convey that it was awarded by an independent certifier. The use of the seal likely is not deceptive provided that the advertisement does not imply other deceptive claims.

Example 4: A marketer's package features a seal of approval with the text "Certified Non-Toxic." The seal is awarded by a certifier with appropriate expertise in evaluating ingredient safety and potential toxicity. It applies standards developed by a voluntary consensus standard body. Although non-industry members comprise a majority of the certifier's board, an industry veto could override any proposed changes to the standards. This certification likely conveys that the product is certified by an independent organization. This claim would be deceptive because industry members can veto any proposed changes to the standards.

Example 5: A marketer's industry sales brochure for overhead lighting features a seal with the text "EcoFriendly Building Association" to show that the marketer is a member of that organization. Although the lighting manufacturer is, in fact, a member, this association has not evaluated the environmental attributes of the marketer's product. This advertisement would be deceptive because it likely conveys that the EcoFriendly Building Association evaluated the product through testing or other objective standards. It also is likely to convey that the lighting has far-reaching environmental benefits. The use of the seal would not be deceptive if the manufacturer accompanies it with clear and prominent qualifying language: (1) indicating that the seal refers to the company's membership only and that the

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

77 FR 62122-01, 2012 WL 4808410 (F.R.)

association did not evaluate the product's environmental attributes; and (2) limiting the general environmental benefit representations, both express and implied, to the particular product attributes for which the marketer has substantiation. For example, the marketer could state: "Although we are a member of the EcoFriendly Building Association, it has not evaluated this product. Our lighting is made from 100 percent recycled metal and uses energy efficient LED technology."

Example 6: A product label contains an environmental seal, either in the form of a globe icon or a globe icon with the text "EarthSmart." EarthSmart is an independent, third-party certifier with appropriate expertise in evaluating chemical emissions of products. While the marketer meets EarthSmart's standards for reduced chemical emissions during product usage, the product has no other specific environmental benefits. Either seal likely conveys that the product has far-reaching environmental benefits, and that EarthSmart certified the product for all of these benefits. If the marketer cannot substantiate these claims, the use of the seal would be deceptive. The seal would not be deceptive if the marketer accompanied it with clear and prominent language clearly conveying that the certification refers only to specific and limited benefits. For example, the marketer could state next to the globe icon: "EarthSmart certifies that this product meets EarthSmart standards for reduced chemical emissions during product usage."Alternatively, the claim would not be deceptive if the EarthSmart environmental seal itself stated: "EarthSmart Certified for reduced chemical emissions during product usage."

Example 7: A one-quart bottle of window cleaner features a seal with the text "Environment Approved," granted by an independent, third-party certifier with appropriate expertise. The certifier granted the seal after evaluating 35 environmental attributes. This seal likely conveys that the product has far-reaching environmental benefits and that Environment Approved certified the product for all of these benefits and therefore is likely deceptive. The seal would likely not be deceptive if the marketer accompanied it with clear and prominent language clearly conveying that the seal refers only to specific and limited benefits. For example, the seal could state: "Virtually all products impact the environment. For details on which attributes we evaluated, go to [a Web site that discusses this product]." The referenced Web page provides a detailed summary of the examined environmental attributes. A reference to a Web site is appropriate because the additional information provided on the Web site is not necessary to prevent the advertisement from being misleading. As always, the marketer also should ensure that the advertisement does not imply other deceptive claims, and that the certifier's criteria are sufficiently rigorous to substantiate all material claims reasonably communicated by the certification.

Example 8: Great Paper Company sells photocopy paper with packaging that has a seal of approval from the No Chlorine Products Association, a non-profit third-party association. Great Paper Company paid the No Chlorine Products Association a reasonable fee for the certification. Consumers would reasonably expect that marketers have to pay for certification. Therefore, there are no material connections between Great Paper Company and the No Chlorine Products Association. The claim would not be deceptive.

<u>16 CFR § 260.7</u>

<u>§ 260.7</u> Compostable Claims.

(a) It is deceptive to misrepresent, directly or by implication, that a product or package is compostable.

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

(b) A marketer claiming that an item is compostable should have competent and reliable scientific evidence that all the materials in the item will break down into, or otherwise become part of, usable compost (e.g., soil-conditioning material, mulch) in a safe and timely manner (i.e., in approximately the same time as the materials with which it is composted) in an appropriate composting facility, or in a home compost pile or device.

(c) A marketer should clearly and prominently qualify compostable claims *62128 to the extent necessary to avoid deception if:

(1) The item cannot be composted safely or in a timely manner in a home compost pile or device; or

(2) The claim misleads reasonable consumers about the environmental benefit provided when the item is disposed of in a landfill.

(d) To avoid deception about the limited availability of municipal or institutional composting facilities, a marketer should clearly and prominently qualify compostable claims if such facilities are not available to a substantial majority of consumers or communities where the item is sold.

Example 1: A manufacturer indicates that its unbleached coffee filter is compostable. The unqualified claim is not deceptive, provided the manufacturer has substantiation that the filter can be converted safely to usable compost in a timely manner in a home compost pile or device. If so, the extent of local municipal or institutional composting facilities is irrelevant.

Example 2: A garden center sells grass clipping bags labeled as "Compostable in California Municipal Yard Trimmings Composting Facilities." When the bags break down, however, they release toxins into the compost. The claim is deceptive if the presence of these toxins prevents the compost from being usable.

Example 3: A manufacturer makes an unqualified claim that its package is compostable. Although municipal or institutional composting facilities exist where the product is sold, the package will not break down into usable compost in a home compost pile or device. To avoid deception, the manufacturer should clearly and prominently disclose that the package is not suitable for home composting.

Example 4: Nationally marketed lawn and leaf bags state "compostable" on each bag. The bags also feature text disclosing that the bag is not designed for use in home compost piles. Yard trimmings programs in many communities compost these bags, but such programs are not available to a substantial majority of consumers or communities where the bag is sold. The claim is deceptive because it likely conveys that composting facilities are available to a substantial majority of consumers or communities. To avoid deception, the marketer should clearly and prominently indicate the limited availability of such programs. A marketer could state "Appropriate facilities may not exist in your area," or provide the approximate percentage of communities or consumers for which such programs are available.

Example 5: A manufacturer sells a disposable diaper that states, "This diaper can be composted if your community is

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

one of the 50 that have composting facilities."The claim is not deceptive if composting facilities are available as claimed and the manufacturer has substantiation that the diaper can be converted safely to usable compost in solid waste composting facilities.

Example 6: A manufacturer markets yard trimmings bags only to consumers residing in particular geographic areas served by county yard trimmings composting programs. The bags meet specifications for these programs and are labeled, "Compostable Yard Trimmings Bag for County Composting Programs."The claim is not deceptive. Because the bags are compostable where they are sold, a qualification is not needed to indicate the limited availability of composting facilities.

<u>16 CFR § 260.8</u>

§ 260.8 Degradable claims.

(a) It is deceptive to misrepresent, directly or by implication, that a product or package is degradable, biodegradable, oxo-degradable, oxo-biodegradable, or photodegradable. The following guidance for degradable claims also applies to biodegradable, oxo-degradable, oxo-biodegradable, and photodegradable claims.

(b) A marketer making an unqualified degradable claim should have competent and reliable scientific evidence that the entire item will completely break down and return to nature (i.e., decompose into elements found in nature) within a reasonably short period of time after customary disposal.

(c) It is deceptive to make an unqualified degradable claim for items entering the solid waste stream if the items do not completely decompose within one year after customary disposal. Unqualified degradable claims for items that are customarily disposed in landfills, incinerators, and recycling facilities are deceptive because these locations do not present conditions in which complete decomposition will occur within one year.

(d) Degradable claims should be qualified clearly and prominently to the extent necessary to avoid deception about:

(1) The product's or package's ability to degrade in the environment where it is customarily disposed; and

(2) The rate and extent of degradation.

Example 1: A marketer advertises its trash bags using an unqualified "degradable" claim. The marketer relies on soil burial tests to show that the product will decompose in the presence of water and oxygen. Consumers, however, place trash bags into the solid waste stream, which customarily terminates in incineration facilities or landfills where they will not degrade within one year. The claim is, therefore, deceptive.

Example 2: A marketer advertises a commercial agricultural plastic mulch film with the claim "Photodegradable," and clearly and prominently qualifies the term with the phrase "Will break down into small pieces if left uncovered in sunlight."The advertiser possesses competent and reliable scientific evidence that within one year, the product will

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

break down, after being exposed to sunlight, into sufficiently small pieces to become part of the soil. Thus, the qualified claim is not deceptive. Because the claim is qualified to indicate the limited extent of breakdown, the advertiser need not meet the consumer expectations for an unqualified photodegradable claim, i.e., that the product will not only break down, but also will decompose into elements found in nature.

Example 3: A marketer advertises its shampoo as "biodegradable" without qualification. The advertisement makes clear that only the shampoo, and not the bottle, is biodegradable. The marketer has competent and reliable scientific evidence demonstrating that the shampoo, which is customarily disposed in sewage systems, will break down and decompose into elements found in nature in a reasonably short period of time in the sewage system environment. Therefore, the claim is not deceptive.

Example 4: A plastic six-pack ring carrier is marked with a small diamond. Several state laws require that the carriers be marked with this symbol to indicate that they meet certain degradability standards if the carriers a e littered. The use of the diamond by itself, in an inconspicuous location, does not constitute a degradable claim. Consumers are unlikely to interpret an inconspicuous diamond symbol, without more, as an unqualified photodegradable claim.[FN46]

> FN46 The Guides' treatment of unqualified degradable claims is intended to help prevent deception and is not intended to establish performance standards to ensure the degradability of products when littered.

Example 5: A fiber pot containing a plant is labeled "biodegradable." The pot is customarily buried in the soil along with the plant. Once buried, the pot fully decomposes during the growing season, allowing the roots of the plant to grow into the surrounding soil. The unqualified claim is not deceptive.

16 CFR § 260.9

§ 260.9 Free-of claims.

(a) It is deceptive to misrepresent, directly or by implication, that a product, package, or service is free of, or does not contain or use, a substance. Such claims should be clearly and prominently qualified to the extent necessary to avoid deception.

(b) A truthful claim that a product, package, or service is free of, or does not contain or use, a substance may nevertheless be deceptive if:

(1) The product, package, or service contains or uses substances that pose the same or similar environmental risks as the substance that is not present; or

(2) The substance has not been associated with the product category.

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

(c) Depending on the context, a free-of or does-not-contain claim is appropriate even for a product, package, or service that contains or uses a trace amount of a substance if:

(1) The level of the specified substance is no more than that which would be found as an acknowledged trace contaminant or background level [FN47];

> FN47 "Trace contaminant" and "background level" are imprecise terms, although allowable manufacturing "trace contaminants" may be defined according to the product area concerned. What constitutes a trace amount or background level depends on the substance at issue, and requires a case-by-case analysis.

**\*62129** (2) The substance's presence does not cause material harm that consumers typically associate with that substance; and

(3) The substance has not been added intentionally to the product.

Example 1: A package of t-shirts is labeled "Shirts made with a chlorine-free bleaching process." The shirts, however, are bleached with a process that releases a reduced, but still significant, amount of the same harmful byproducts associated with chlorine bleaching. The claim overstates the product's benefits because reasonable consumers likely would interpret it to mean that the product's manufacture does not cause any of the environmental risks posed by chlorine bleaching. A substantiated claim, however, that the shirts were "bleached with a process that releases 50% less of the harmful byproducts associated with chlorine bleaching" would not be deceptive.

Example 2: A manufacturer advertises its insulation as "formaldehyde free." Although the manufacturer does not use formaldehyde as a binding agent to produce the insulation, tests show that the insulation still emits trace amounts of formaldehyde. The seller has substantiation that formaldehyde is present in trace amounts in virtually all indoor and (to a lesser extent) outdoor environments and that its insulation emits less formaldehyde than is typically present in outdoor environments. Further, the seller has substantiation that the trace amounts of formaldehyde emitted by the insulation do not cause material harm that consumers typically associate with formaldehyde. In this context, the trace levels of formaldehyde emissions likely are inconsequential to consumers. Therefore, the seller's free-of claim would not be deceptive.

16 CFR § 260.10

§ 260.10 Non-toxic claims.

(a) It is deceptive to misrepresent, directly or by implication, that a product, package, or service is non-toxic. Non-toxic claims should be clearly and prominently qualified to the extent necessary to avoid deception.

(b) A non-toxic claim likely conveys that a product, package, or service is non-toxic both for humans and for the environment generally. Therefore, marketers making non-toxic claims should have competent and reliable scientific

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

evidence that the product, package, or service is non-toxic for humans and for the environment or should clearly and prominently qualify their claims to avoid deception.

Example: A marketer advertises a cleaning product as "essentially non-toxic" and "practically non-toxic." The advertisement likely conveys that the product does not pose any risk to humans or the environment, including household pets. If the cleaning product poses no risk to humans but is toxic to the environment, the claims would be deceptive.

16 CFR § 260.11

§ 260.11 Ozone-safe and ozone-friendly claims.

It is deceptive to misrepresent, directly or by implication, that a product, package, or service is safe for, or friendly to, the ozone layer or the atmosphere.

Example 1: A product is labeled "ozone-friendly." The claim is deceptive if the product contains any ozone-depleting substance, including those substances listed as Class I or Class II chemicals in Title VI of the Clean Air Act Amendments of 1990, Public Law. 101-549, and others subsequently designated by EPA as ozone-depleting substances. These chemicals include chlorofluorocarbons (CFCs), halons, carbon tetrachloride, 1,1,1-trichloroethane, methyl bromide, hydrobromofluorocarbons, and hydrochlorofluorocarbons (HCFCs).

Example 2: An aerosol air freshener is labeled "ozone-friendly." Some of the product's ingredients are volatile organic compounds (VOCs) that may cause smog by contributing to ground-level ozone formation. The claim likely conveys that the product is safe for the atmosphere as a whole, and, therefore, is deceptive.

16 CFR § 260.12

§ 260.12 Recyclable claims.

(a) It is deceptive to misrepresent, directly or by implication, that a product or package is recyclable. A product or package should not be marketed as recyclable unless it can be collected, separated, or otherwise recovered from the waste stream through an established recycling program for reuse or use in manufacturing or assembling another item.

(b) Marketers should clearly and prominently qualify recyclable claims to the extent necessary to avoid deception about the availability of recycling programs and collection sites to consumers.

(1) When recycling facilities are available to a substantial majority of consumers or communities where the item is sold, marketers can make unqualified recyclable claims. The term "substantial majority," as used in this context, means at least 60 percent.

(2) When recycling facilities are available to less than a substantial majority of consumers or communities where the item is sold, marketers should qualify all recyclable claims. Marketers may always qualify recyclable claims by stating

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

the percentage of consumers or communities that have access to facilities that recycle the item. Alternatively, marketers may use qualifications that vary in strength depending on facility availability. The lower the level of access to an appropriate facility is, the more strongly the marketer should emphasize the limited availability of recycling for the product. For example, if recycling facilities are available to slightly less than a substantial majority of consumers or communities where the item is sold, a marketer may qualify a recyclable claim by stating: "This product [package] may not be recyclable in your area," or "Recycling facilities for this product [package] may not exist in your area."If recycling facilities are available only to a few consumers, marketers should use stronger clarifications. For example, a marketer in this situation may qualify its recyclable claim by stating: "This product [package] is recyclable only in the few communities that have appropriate recycling facilities."

(c) Marketers can make unqualified recyclable claims for a product or package if the entire product or package, excluding minor incidental components, is recyclable. For items that are partially made of recyclable components, marketers should clearly and prominently qualify the recyclable claim to avoid deception about which portions are recyclable.

(d) If any component significantly limits the ability to recycle the item, any recyclable claim would be deceptive. An item that is made from recyclable material, but, because of its shape, size, or some other attribute, is not accepted in recycling programs, should not be marketed as recyclable.[FN48]

> FN48 Batteries labeled in accordance with the Mercury-Containing and Rechargeable
> Battery Management Act, 42 U.S.C. 14322(b), are deemed to be in compliance with
> these Guides.

Example 1: A packaged product is labeled with an unqualified claim, "recyclable." It is unclear from the type of product and other context whether the claim refers to the product or its package. The unqualified claim likely conveys that both the product and its packaging, except for minor, incidental components, can be recycled. Unless the manufacturer has substantiation for both messages, it should clearly and prominently qualify the claim to indicate which portions are recyclable.

Example 2: A nationally marketed plastic yogurt container displays the Resin Identification Code (RIC) [FN49] (which consists of a design of arrows in a triangular shape containing a number in the center and an abbreviation identifying the component plastic resin) on the front label of the container, in close proximity to the product name and logo. This conspicuous use of the RIC constitutes a recyclable claim. Unless recycling facilities for this container are available to a substantial majority of consumers or communities, the manufacturer should qualify the claim to disclose the *62130 limited availability of recycling programs. If the manufacturer places the RIC, without more, in an inconspicuous location on the container (e.g., embedded in the bottom of the container), it would not constitute a recyclable claim.

> FN49 The RIC, formerly known as the Society of the Plastics Industry, Inc. (SPI)
> code, is now covered by ASTM D 7611.

Example 3: A container can be burned in incinerator facilities to produce heat and power. It cannot, however, be

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

recycled into another product or package. Any claim that the container is recyclable would be deceptive.

Example 4: A paperboard package is marketed nationally and labeled either "Recyclable where facilities exist" or "Recyclable B Check to see if recycling facilities exist in your area."Recycling programs for these packages are available to some consumers, but not available to a substantial majority of consumers nationwide. Both claims are deceptive because they do not adequately disclose the limited availability of recycling programs. To avoid deception, the marketer should use a clearer qualification, such as one suggested in § 260.12(b)(2).

Example 5: Foam polystyrene cups are advertised as "Recyclable in the few communities with facilities for foam polystyrene cups."A half-dozen major metropolitan areas have established collection sites for recycling those cups. The claim is not deceptive because it clearly discloses the limited availability of recycling programs.

Example 6: A package is labeled "Includes some recyclable material." The package is composed of four layers of different materials, bonded together. One of the layers is made from recyclable material, but the others are not. While programs for recycling the 25 percent of the package that consists of recyclable material are available to a substantial majority of consumers, only a few of those programs have the capability to separate the recyclable layer from the non-recyclable layers. The claim is deceptive for two reasons. First, it does not specify the portion of the product that is recyclable. Second, it does not disclose the limited availability of facilities that can process multi-layer products or materials. An appropriately qualified claim would be "25 percent of the material in this package is recyclable in the few communities that can process multi-layer products."

Example 7: A product container is labeled "recyclable." The marketer advertises and distributes the product only in Missouri. Collection sites for recycling the container are available to a substantial majority of Missouri residents but are not yet available nationally. Because programs are available to a substantial majority of consumers where the product is sold, the unqualified claim is not deceptive.

Example 8: A manufacturer of one-time use cameras, with dealers in a substantial majority of communities, operates a take-back program that collects those cameras through all of its dealers. The manufacturer reconditions the cameras for resale and labels them "Recyclable through our dealership network." This claim is not deceptive, even though the cameras are not recyclable through conventional curbside or drop-off recycling programs.

Example 9: A manufacturer advertises its toner cartridges for computer printers as "Recyclable. Contact your local dealer for details."Although all of the company's dealers recycle cartridges, the dealers are not located in a substantial majority of communities where cartridges are sold. Therefore, the claim is deceptive. The manufacturer should qualify its claim consistent with § 260.11(b)(2).

Example 10: An aluminum can is labeled "Please Recycle." This statement likely conveys that the can is recyclable. If collection sites for recycling these cans are available to a substantial majority of consumers or communities, the marketer does not need to qualify the claim.

16 CFR § 260.13

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

§ 260.13 Recycled content claims.

(a) It is deceptive to misrepresent, directly or by implication, that a product or package is made of recycled content. Recycled content includes recycled raw material, as well as used,[FN50] reconditioned, and re-manufactured components.

> FN50 The term "used" refers to parts that are not new and that have not undergone any remanufacturing or reconditioning.

(b) It is deceptive to represent, directly or by implication, that an item contains recycled content unless it is composed of materials that have been recovered or otherwise diverted from the waste stream, either during the manufacturing process (pre-consumer), or after consumer use (post-consumer). If the source of recycled content includes pre-consumer material, the advertiser should have substantiation that the pre-consumer material would otherwise have entered the waste stream. Recycled content claims may—but do not have to—distinguish between pre-consumer and post-consumer materials. Where a marketer distinguishes between pre-consumer and post-consumer materials, it should have substantiation for any express or implied claim about the percentage of pre-consumer or post-consumer content in an item.

(c) Marketers can make unqualified claims of recycled content if the entire product or package, excluding minor, incidental components, is made from recycled material. For items that are partially made of recycled material, the marketer should clearly and prominently qualify the claim to avoid deception about the amount or percentage, by weight, of recycled content in the finished product or package.

(d) For products that contain used, reconditioned, or re-manufactured components, the marketer should clearly and prominently qualify the recycled content claim to avoid deception about the nature of such components. No such qualification is necessary where it is clear to reasonable consumers from context that a product's recycled content consists of used, reconditioned, or re-manufactured components.

Example 1: A manufacturer collects spilled raw material and scraps from the original manufacturing process. After a minimal amount of reprocessing, the manufacturer combines the spills and scraps with virgin material for use in production of the same product. A recycled content claim is deceptive since the spills and scraps are normally reused by industry within the original manufacturing process and would not normally have entered the waste stream.

Example 2: Fifty percent of a greeting card's fiber weight is composed from paper that was diverted from the waste stream. Of this material, 30% is post-consumer and 20% is pre-consumer. It would not be deceptive if the marketer claimed that the card either "contains 50% recycled fiber" or "contains 50% total recycled fiber, including 30% post-consumer fiber."

Example 3: A paperboard package with 20% recycled fiber by weight is labeled "20% post-consumer recycled fiber." The recycled content was composed of overrun newspaper stock never sold to customers. Because the newspapers

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

never reached consumers, the claim is deceptive.

Example 4: A product in a multi-component package, such as a paperboard box in a shrink-wrapped plastic cover, indicates that it has recycled packaging. The paperboard box is made entirely of recycled material, but the plastic cover is not. The claim is deceptive because, without qualification, it suggests that both components are recycled. A claim limited to the paperboard box would not be deceptive.

Example 5: A manufacturer makes a package from laminated layers of foil, plastic, and paper, although the layers are indistinguishable to consumers. The label claims that "one of the three layers of this package is made of recycled plastic."The plastic layer is made entirely of recycled plastic. The claim is not deceptive, provided the recycled plastic layer constitutes a significant component of the entire package.

Example 6: A frozen dinner package is composed of a plastic tray inside a cardboard box. It states "package made from 30% recycled material."Each packaging component is one-half the weight of the total package. The box is 20% recycled content by weight, while the plastic tray is 40% recycled content by weight. The claim is not deceptive, since the average amount of recycled material is 30%.

Example 7: A manufacturer labels a paper greeting card "50% recycled fiber." The manufacturer purchases paper stock from several sources, and the amount of recycled fiber in the stock provided by each source varies. If the 50% figure is based on the annual weighted average of recycled material purchased from the sources after accounting for fiber loss during the papermaking production process, the claim is not deceptive.

Example 8: A packaged food product is labeled with a three-chasing-arrows symbol **62131** (a M[ouml]bius loop) without explanation. By itself, the symbol likely conveys that the packaging is both recyclable and made entirely from recycled material. Unless the marketer has substantiation for both messages, the claim should be qualified. The claim may need to be further qualified, to the extent necessary, to disclose the limited availability of recycling programs and/or the percentage of recycled content used to make the package.

Example 9: In an office supply catalog, a manufacturer advertises its printer toner cartridges "65% recycled." The cartridges contain 25% recycled raw materials and 40% reconditioned parts. The claim is deceptive because reasonable consumers likely would not know or expect that a cartridge's recycled content consists of reconditioned parts. It would not be deceptive if the manufacturer claimed "65% recycled content; including 40% from reconditioned parts."

Example 10: A store sells both new and used sporting goods. One of the items for sale in the store is a baseball helmet that, although used, is no different in appearance than a brand new item. The helmet bears an unqualified "Recycled" label. This claim is deceptive because reasonable consumers likely would believe that the helmet is made of recycled raw materials, when it is, in fact, a used item. An acceptable claim would bear a disclosure clearly and prominently stating that the helmet is used.

Example 11: An automotive dealer, automobile recycler, or other qualified entity recovers a serviceable engine from a wrecked vehicle. Without repairing, rebuilding, re-manufacturing, or in any way altering the engine or its components, the dealer attaches a "Recycled" label to the engine, and offers it for sale in its used auto parts store. In this situation, an

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

unqualified recycled content claim likely is not deceptive because reasonable consumers in the automotive context likely would understand that the engine is used and has not undergone any rebuilding.

Example 12: An automobile parts dealer, automobile recycler, or other qualified entity purchases a transmission that has been recovered from a salvaged or end-of-life vehicle. Eighty-five percent of the transmission, by weight, was rebuilt and 15% constitutes new materials. After rebuilding [FN51] the transmission in accordance with industry practices, the dealer packages it for resale in a box labeled "Rebuilt Transmission," or "Rebuilt Transmission (85% recycled content from rebuilt parts)," or "Recycled Transmission (85% recycled content from rebuilt parts)." Given consumer perception in the automotive context, these claims are not deceptive.

> FN51 The term "rebuilding" means that the dealer dismantled and reconstructed the transmission as necessary, cleaned all of its internal and external parts and eliminated rust and corrosion, restored all impaired, defective or substantially worn parts to a sound condition (or replaced them if necessary), and performed any operations required to put the transmission in sound working condition.

16 CFR § 260.14

§ 260.14 Refillable claims.

It is deceptive to misrepresent, directly or by implication, that a package is refillable. A marketer should not make an unqualified refillable claim unless the marketer provides the means for refilling the package. The marketer may either provide a system for the collection and refill of the package, or offer for sale a product that consumers can purchase to refill the original package.

Example 1: A container is labeled "refillable three times." The manufacturer has the capability to refill returned containers and can show that the container will withstand being refilled at least three times. The manufacturer, however, has established no collection program. The unqualified claim is deceptive because there is no means to return the container to the manufacturer for refill.

Example 2: A small bottle of fabric softener states that it is in a "handy refillable container." In the same market area, the manufacturer also sells a large-sized bottle that consumers use to refill the smaller bottles. The claim is not deceptive because there is a reasonable means for the consumer to refill the smaller container.

16 CFR § 260.15

§ 260.15 Renewable energy claims.

(a) It is deceptive to misrepresent, directly or by implication, that a product or package is made with renewable energy or that a service uses renewable energy. A marketer should not make unqualified renewable energy claims, directly or by implication, if fossil fuel, or electricity derived from fossil fuel, is used to manufacture any part of the advertised

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

item or is used to power any part of the advertised service, unless the marketer has matched such non-renewable energy use with renewable energy certificates.

(b) Research suggests that reasonable consumers may interpret renewable energy claims differently than marketers may intend. Unless marketers have substantiation for all their express and reasonably implied claims, they should clearly and prominently qualify their renewable energy claims. For instance, marketers may minimize the risk of deception by specifying the source of the renewable energy (e.g., wind or solar energy).

(c) It is deceptive to make an unqualified "made with renewable energy" claim unless all, or virtually all, of the significant manufacturing processes involved in making the product or package are powered with renewable energy or non-renewable energy matched by renewable energy certificates. When this is not the case, marketers should clearly and prominently specify the percentage of renewable energy that powered the significant manufacturing processes involved in making the product or package.

(d) If a marketer generates renewable electricity but sells renewable energy certificates for all of that electricity, it would be deceptive for the marketer to represent, directly or by implication, that it uses renewable energy.

Example 1: A marketer advertises its clothing line as "made with wind power." The marketer buys wind energy for 50% of the energy it uses to make the clothing in its line. The marketer's claim is deceptive because reasonable consumers likely interpret the claim to mean that the power was composed entirely of renewable energy. If the marketer stated, "We purchase wind energy for half of our manufacturing facilities," the claim would not be deceptive.

Example 2: A company purchases renewable energy from a portfolio of sources that includes a mix of solar, wind, and other renewable energy sources in combinations and proportions that vary over time. The company uses renewable energy from that portfolio to power all of the significant manufacturing processes involved in making its product. The company advertises its product as "made with renewable energy." The claim would not be deceptive if the marketer clearly and prominently disclosed all renewable energy sources. Alternatively, the claim would not be deceptive if the marketer clearly and prominently stated, "made from a mix of renewable energy sources," and specified the renewable source that makes up the greatest percentage of the portfolio. The company may calculate which renewable energy source makes up the greatest percentage of the portfolio on an annual basis.

Example 3: An automobile company uses 100% non-renewable energy to produce its cars. The company purchases renewable energy certificates to match the non-renewable energy that powers all of the significant manufacturing processes for the seats, but no other parts, of its cars. If the company states, "The seats of our cars are made with renewable energy," the claim would not be deceptive, as long as the company clearly and prominently qualifies the claim such as by specifying the renewable energy source.

Example 4: A company uses 100% non-renewable energy to manufacture all parts of its product, but powers the assembly process entirely with renewable energy. If the marketer advertised its product as "assembled using renewable energy," the claim would not be deceptive.

Example 5: A toy manufacturer places solar panels on the roof of its plant to generate power, and advertises that its

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

plant is "100% solar-powered." The manufacturer, however, sells renewable energy certificates based on the renewable attributes of all the power it generates. Even if the manufacturer uses the electricity generated by the solar panels, it has, by selling renewable energy certificates, transferred the right to characterize that electricity as renewable. The manufacturer's claim is therefore deceptive. It also would be deceptive for this manufacturer to advertise that it "hosts" a renewable power facility because reasonable consumers likely interpret this claim to mean **62132** that the manufacturer uses renewable energy. It would not be deceptive, however, for the manufacturer to advertise, "We generate renewable energy, but sell all of it to others."

16 CFR § 260.16

§ 260.16 Renewable materials claims.

(a) It is deceptive to misrepresent, directly or by implication, that a product or package is made with renewable materials.

(b) Research suggests that reasonable consumers may interpret renewable materials claims differently than marketers may intend. Unless marketers have substantiation for all their express and reasonably implied claims, they should clearly and prominently qualify their renewable materials claims. For example, marketers may minimize the risk of unintended implied claims by identifying the material used and explaining why the material is renewable.

(c) Marketers should also qualify any "made with renewable materials" claim unless the product or package (excluding minor, incidental components) is made entirely with renewable materials.

Example 1: A marketer makes the unqualified claim that its flooring is "made with renewable materials." Reasonable consumers likely interpret this claim to mean that the flooring also is made with recycled content, recyclable, and biodegradable. Unless the marketer has substantiation for these implied claims, the unqualified "made with renewable materials" claim is deceptive. The marketer could qualify the claim by stating, clearly and prominently, "Our flooring is made from 100 percent bamboo, which grows at the same rate, or faster, than we use it." The marketer still is responsible for substantiating all remaining express and reasonably implied claims.

Example 2: A marketer's packaging states that "Our packaging is made from 50% plant-based renewable materials. Because we turn fast-growing plants into bio-plastics, only half of our product is made from petroleum-based materials." By identifying the material used and explaining why the material is renewable, the marketer has minimized the risk of unintended claims that the product is made with recycled content, recyclable, and biodegradable. The marketer has adequately qualified the amount of renewable materials in the product.

16 CFR § 260.17

§ 260.17 Source reduction claims.

It is deceptive to misrepresent, directly or by implication, that a product or package has been reduced or is lower in

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

weight, volume, or toxicity. Marketers should clearly and prominently qualify source reduction claims to the extent necessary to avoid deception about the amount of the source reduction and the basis for any comparison.

Example: An advertiser claims that disposal of its product generates "10% less waste." The marketer does not accompany this claim with a general environmental benefit claim. Because this claim could be a comparison to the advertiser's immediately preceding product or to its competitors' products, the advertiser should have substantiation for both interpretations. Otherwise, the advertiser should clarify which comparison it intends and have substantiation for that comparison. A claim of "10% less waste than our previous product" would not be deceptive if the advertiser has substantiation that shows that the current product's disposal contributes 10% less waste by weight or volume to the solid waste stream when compared with the immediately preceding version of the product.

By direction of the Commission.

Donald S. Clark

Secretary.

[FR Doc. 2012-24713 Filed 10-10-12; 8:45 am]

BILLING CODE 6750-01-P

77 FR 62122-01, 2012 WL 4808410 (F.R.)
END OF DOCUMENT

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.