Ben F. Pierce Gore (SBN 128515)
PRATT & ASSOCIATES
1871 The Alameda, Suite 425
San Jose, CA  95126
Telephone:  (408) 429-6506
Fax:  (408) 369-0752
pgore@prattattorneys.com

Keith M. Fleischman (admitted *pro hac vice*)
Bradley F. Silverman (admitted *pro hac vice*)
THE FLEISCHMAN LAW FIRM, PLLC
565 Fifth Avenue, Seventh Floor
New York, New York 10017
Telephone: (212) 880-9571
Fax:  (917) 591-5245
keith@fleischmanlawfirm.com
bsilverman@fleischmanlawfirm.com

*Attorneys for Plaintiffs*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ALEX ANG and LYNN STREIT, individually and on behalf of all others similarly situated, | Case No. 13 Civ. 1196 (WHO) |
| Plaintiffs, | **PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS** |
| v. | |
| BIMBO BAKERIES USA, INC., | **Date:  August 28, 2013** |
| Defendant. | **Time: 2:00 p.m.**<br>**Department: 2**<br>**Judge: Hon. William H. Orrick** |

1

## TABLE OF CONTENTS

2

TABLE OF AUTHORITIES……………………………………………………………....... iii

3

PRELIMINARY STATEMENT…………………………………………………….….... 1

4

FACTS………………………………………………………………………………….... 3

5

ARGUMENT……………………………………………………………………………. 6

6

     I.      PLAINTIFFS HAVE ADEQUATELY PLED CLAIMS UNDER THE

7

            UCL, FAL, AND CLRA…………………………………………………..6

8

           A.     Plaintiff Has Alleged Standing Under Article III, the

                  UCL, FAL, and CLRA…………………………………….……..7

9

           B.     Plaintiffs' Claims Are Plausible and They Have Alleged

10

                  Reasonable Reliance……………………………………………..9

11

           C.     The Amended Complaint Satisfies the Heightened Pleading

12

                  Requirements of Rule 9(b)……………………………………… 10

13

           D.     With Respect to Their Claim Under the UCL "Unlawful" Prong,

                  Plaintiffs Do Not Need to Allege Reliance or Meet the

14

                  Requirements of Rule 9(b)……………………………………… 11

15

     II.     PLAINTIFFS HAVE ADEQUATELY ALLEGED CAUSES OF

16

            ACTION WITH RESPECT TO ALL PRODUCTS AT ISSUE…………………..13

17

           A.     Bimbo Toasted Bread Violates the Sherman Law and FDA

                  Regulations Prohibitingthe Addition of Coloring to Bread

18

                  Product…………………………………………………………… 14

19

           B.     The Sara Lee Bread Products Cannot Claim to Be a "Good

20

                  Source" or "Excellent Source" of Whole Grain…………………………..15

21

           C.     Sara Lee Bread Products Labeled as "100% Whole Wheat"

                  Violate the Sherman Law and FDA Regulations Where They

22

                  Contain Non-Whole Wheat Flour Such as Soy Flour……………….......16

23

           D.     A Reasonable Consumer Would Be Misled by the "FRESH"

24

                  Claim on Entenmann's Soft'ees………………………………….……17

25

           E.     Products Bearing the American Heart Association "Heart-Check

26

                  Mark" Must Disclose that this Is a Paid Endorsement…………………… 18

27

           F.     Thomas' Bagel Thins Cannot Be Labeled as an "Excellent Source

28

                  of Fiber"………………………………………………………….. 21

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

III.   PLAINTIFFS' UNJUST ENRICHMENT CLAIM SHOULD
BE SUSTAINED…………………………………………………………….22

IV.   PLAINTIFFS HAVE STANDING TO ASSERT CLAIMS ON BEHALF
OF THE CLASS RELATING TO SUBSTANTIALLY SIMILAR
PRODUCTS……………………………………………………………….23

V.   PLAINTIFFS' CLAIMS ARE NOT PREEMPTED……………………….....24

VI.   NOTICE UNDER THE CLRA IS SUFFICIENT… ……………………….....25

CONCLUSION……………………………………………………………………………..25

1

## TABLE OF AUTHORITIES

2

**Cases**

3

*Abruzzi Foods, Inc. v. Pasta & Cheese, Inc.*,
    986 F.2d 605 (1st Cir. 1993) ........................................................................ 18

4

*Ackerman v. Coca-Cola Co.*,
    2010 WL 2925955 n.7 (E.D.N.Y. 2010) ...................................................... 16

5

6

*Arroyo v. Pfizer, Inc.*,
    2013 WL 415607 (N.D. Cal. 2013) .............................................................. 16

7

*Astiana v. Ben & Jerry's Homemade, Inc.*,
    2011 WL 2111796 (N.D. Cal. 2011) ...................................................... 11, 22

8

*Astiana v. Dreyer's Grand Ice Cream, Inc.*,
    2012 WL 2990766 (N.D. Cal. 2012) ...................................................... 10, 24

9

10

Bell Atlantic Corp. v. Twombly,
    550 U.S. 544 (2007) ........................................................................................ 6

11

*Brod v. Sioux Honey Ass'n, Co-op.*,
    2013 WL 752479 (N.D. Cal. 2013) .............................................................. 22

12

13

*Chin v. General Mills, Inc.*,
    2013 WL 2420455 (D. Minn. 2013) ........................................................ 8, 10

14

*Deligiannis v. Winterscheid*,
    2011 WL 2471272 (C.D. Cal. 2011) ............................................................ 21

15

16

*Dvora v. General Mills, Inc.*,
    2011 WL 1897349 (C.D. Cal. 2011) ............................................................ 10

17

*First Nationwide Savings v. Perry*,
    11 Cal. App. 4th 1657 (Cal. App. 6 Dist. 1992) .......................................... 22

18

19

*Garcia v. Sony Computer Entertainment America, LLC*,
    859 F. Supp. 2d 1056 (N.D. Cal. 2012) .......................................................... 8

20

*In re Apple In-App Purchase Litig.*,
    855 F. Supp. 2d 1030 (N.D. Cal. 2012) ........................................................ 25

21

22

*In re Ditropan XL Antitrust Litig.*,
    529 F. Supp. 2d 1098 (N.D. Cal. 2007) ........................................................ 13

23

*In re Ferrero Litig.*,
    794 F. Supp. 2d 1107 (S.D. Cal. 2011) .......................................................... 7

24

25

*In re Sony Grand Wega KDF-E A10/A20 Series Rear Projection HDTV Television Litig.*,
    758 F. Supp. 2d 1077 (S.D. Cal. 2010) ........................................................ 10

26

*In re Steroid Hormone Product Cases*,
    181 Cal.App.4th 145 (Cal. App. 2 Dist. 2010) ............................................ 22

27

28

*In re Toyota Motor Corp.*,
754 F. Supp. 2d 1145 (C.D. Cal. 2010) ................................................... 25

*In re WellPoint, Inc.*,
865 F. Supp. 2d 1002 (C.D. Cal. 2011) ............................................ 12, 13

*Ivie v. Kraft Foods Global, Inc.*,
2013 WL 3296616 (N.D. Cal. 2013) ................................................ 10, 24

*Jones v. ConAgra Foods, Inc.*,
912 F. Supp. 2d 889 (N.D. Cal. 2012) ......................................... passim

*Kasky v. Nike, Inc.*,
27 Cal.4th 939 (2002) ......................................................................... 7

Kelley v. Mortgage Electronic Registration Systems, Inc.,
642 F. Supp. 2d 1048 (N.D. Cal. 2009) ............................................... 8

*Khasin v. Hershey Co.*,
2012 WL 5471153 (N.D. Cal. 2012) ............................................. passim

*Khasin v. R.C. Bigelow, Inc.*,
2013 WL 2403579 (N.D. Cal. 2013) .............................................. 8, 24

*Koh v. S.C. Johnson & Son, Inc.*,
2010 WL 94265 (N.D. Cal. 2010) ....................................................... 24

*Kosta v. Del Monte Corp.*,
2013 WL 2147413 (N.D. Cal. 2013) .............................................. passim

*Kwikset Corp. v. Superior Court*,
51 Cal.4th 310 .................................................................................... 8

*Lanovaz v. Twinings North America, Inc.*,
2013 WL 2285221 (N.D. Cal. 2013) .............................................. 23, 24

*Larsen v. Trader Joe's Co.*,
2013 WL 132442 (N.D. Cal. 2013) .................................................... 25

*Lockwood v. Conagra Foods, Inc.*,
597 F. Supp. 2d 1028 (N.D. Cal. 2009) ................................................ 6

*Mason v. Coca-Cola Co.*,
774 F. Supp. 2d 699 (D.N.J. 2011) .................................................... 10

*Medrazo v. Honda of North Hollywood*,
205 Cal.App.4th 1 (Cal. App. 2 Dist. 2012) ...................................... 12

*Miller v. Ghirardelli Chocolate Co.*,
2012 WL 6096593 (N.D. Cal. 2012) .................................................. 23

*Olivera v. American Home Mortg. Servicing, Inc.*,
689 F. Supp. 2d 1218 (N.D. Cal. 2010) ............................................. 13

*Rooney v. Cumberland Packing Corp.*,
  2012 WL 1512106 (S.D. Cal. 2012) ........................................................................ 17

*Ross v. Sioux Honey Ass'n, Co-op.*,
  2013 WL 146367 (N.D. Cal. 2013) .......................................................................... 17

*Sanders v. Choice Mfg. Co., Inc.*,
  2011 WL 6002639 (N.D. Cal. 2011) ................................................................... 12, 13

*Sateriale v. R.J. Reynolds Tobacco Co.*,
  697 F.3d 777 (9th Cir. 2012) ...................................................................................... 6

*Stickrath v. Globalstar, Inc.*,
  527 F. Supp. 2d 992 (N.D .Cal. 2007) ...................................................................... 25

*Twinings North America, Inc.*,
  2013 WL 675929 (N.D. Cal. 2013) .......................................................................... 10

*Vess v. Ciba-Geigy Corp. USA*,
  317 F.3d 1097, 1104 (9th Cir. 2003) ........................................................................ 13

*Wehlage v. EmpRes Healthcare Inc.*,
  2012 WL 380364 (N.D. Cal. 2012) .......................................................................... 25

*Williams v. Gerber Products Co.*,
  552 F.3d 934 (9th Cir. 2008) ......................................................................... 3, 4, 7, 9

*Young v. Johnson & Johnson*,
  2012 WL 1372286 (D.N.J. 2012) ............................................................................ 10

**Statutes**

21 U.S.C. § 301 ............................................................................................................. 6

21 U.S.C. § 331 ........................................................................................................ 6, 12

21 U.S.C. § 333 ...................................................................................................... 12, 22

21 U.S.C. § 343 .................................................................................................... passim

Cal. Bus. & Prof. Code § 17200. ......................................................................... 6, 7, 12

Cal. Bus. & Prof. Code § 17500 ........................................................................... 6, 7

Cal. Civ. Code § 1750 ................................................................................................ 6

Cal. Civ. Code § 1770 ................................................................................................ 7

Cal. Civ. Code § 1782 .............................................................................................. 25

Cal. Health & Safety Code § 110100 ........................................................................ 6

Cal. Health & Safety Code § 110660 ................................................................... 6, 14

Cal. Health & Safety Code § 110670 ................................................................. 15, 17, 22

Cal. Health & Safety Code § 110685 ...................................................................... 14, 17

Cal. Health & Safety Code § 110710 ...................................................................... 14, 17

Cal. Health & Safety Code §§ 111825 ..................................................................... 13, 22

**Rules**

Fed. R. Civ. P. 9 ............................................................................................................. 13

Fed. R. Civ. P. 11 ........................................................................................................... 23

**Regulations**

21 C.F.R. § 1.21 ........................................................................................................ 17, 19

21 C.F.R. § 101.9 .............................................................................................................. 16

21 C.F.R. § 101.13 ............................................................................................................ 16

21 C.F.R. § 101.14 ............................................................................................................ 19

21 C.F.R. § 101.54 ...................................................................................................... passim

21 C.F.R. § 101.95 .................................................................................... 5, 17, 18, 19

21 C.F.R. § 136.110 ................................................................................................. 5, 14, 15

21 C.F.R. § 136.180 ....................................................................................................... 5, 17

**Other Authorities**

*A Food Labeling Guide* (May 1997),
    (available at 1997 WL 33793842) ............................................................................ 15

*Draft Guidance for Industry and FDA Staff -Whole Grain Label Statements* (Feb. 17, 2006),
    (available at 2006 WL 477986) .............................................................................. 15

*FDA Final Rule on Food Labeling*,
    58 Fed. Reg. 2302 (Jan. 6, 1993) (available at 1993 WL 1540) ................................ 18

*FDA Final Rule: Food Labeling; General Requirements for Health Claims for Food*,
    58 Fed. Reg. 2478 (Jan. 6, 1993) (available at 1993 WL 1547) ..................... 19, 20, 21

*FDA Food Labeling Questions and Answers* (Aug. 1994),
    (available at 1994 WL 16188668) ......................................................................... 15

**PRELIMINARY STATEMENT**

Plaintiffs Alex Ang and Lynn Streit (collectively, "Plaintiffs") respectfully submit this memorandum of law in opposition to the motion of defendant Bimbo Bakeries, USA, Inc. ("Defendant") to dismiss Plaintiffs' amended complaint ("Amended Complaint").  For the reasons set forth herein, Plaintiffs respectfully request that the Court deny the motion in its entirety.

Defendant engaged in a scheme to deceive and defraud consumers by placing false, misleading, and deceptive labels on food products.  These labels illegally stated or implied that each of the products at issue had a quality that made it healthier than other products.  For example, certain bread products expressly stated that they were "100% Whole Wheat," when, in fact, they were not.  Plaintiffs now bring this action to seek redress for Defendant's violations of food labeling laws that have harmed consumers.  Indeed, these products, by themselves, are illegal to sell and manufacture, regardless of any fraudulent intent on the part of Defendant.  As a result, consumers have been injured by paying for products that are worthless.

Specifically, Plaintiffs' claims are based on Defendant's blatant violations of California's Sherman Law, which, *inter alia*, sets requirements for the labeling of food products, including health claims on those labels.  Significantly, the Sherman Law has adopted and incorporated the provisions of the Food, Drug, and Cosmetic Act ("FDCA") and Food and Drug Administration ("FDA") regulations.  Therefore, any violation of the FDCA or FDA regulations is automatically a violation of the Sherman Law.  Violations of the Sherman Law and FDCA are also strict liability crimes that do not require any fraudulent intent on the part of Defendant.  Further, each violation of the Sherman Law, in turn, constitutes a predicate act under the Unfair Competition Law, False Advertising Law, and California Legal Remedies Act.

The Sherman Law, FDCA and FDA regulations mandate that products meet specific requirements before their labels can make various health claims.  When labels on food products make such health claims without satisfying the mandated requirements for such claims, those food products are rendered misbranded and illegal to manufacture or sell.  Each of Defendant's products at issue violate the Sherman Law, FDCA and FDA regulations because they do not satisfy the necessary requirements for the health claims stated on their labels.

1    Defendant, a major international food manufacturer, is well aware of Sherman Law, FDCA

2    and FDA requirements.  Nevertheless, Defendant ignores these requirements and intentionally

3    makes illegal health claims on labels that cause consumers to believe that Defendant's products are

4    healthier than they really are.  This illegal practice boosts Defendants sales and injures consumers

5    who believe they are buying - - and often paying more for - - products that have specific health

6    qualities when, in fact, such products do not have such qualities.

7    Each of the products at issue is misbranded and illegal.  Some are misbranded in multiple

8    ways.  Among other things, the Sherman Law and FDA mandate that products meet specific

9    requirements before than can be labeled as a "good source" or "excellent source" of a nutrient.

10   Several of the products at issue claim to be a "good source" or "excellent source" of fiber or whole

11   grain when they simply do not satisfy the mandatory criteria for such claims.

12   Defendant also pays the American Heart Association ("AHA") significant amounts each

13   year in order to place the AHA's "Heart-Check Mark" logo on Defendant's products.  Defendant

14   does so because consumers - - mistakenly - - are likely to believe that products that bear this mark

15   are healthier than other products.  This drives sales.  For this reason, labels bearing such paid

16   endorsements are required to specifically disclose that those endorsements are paid.  Defendant,

17   however, does not make this mandated disclosure on its products.  Further, in violation of the

18   Sherman Law and FDCA, Defendant adds certain artificial colorings to its bread products.

19   Defendant also illegally labels products as "Fresh," despite the fact that they contain chemical

20   preservatives and sit on store shelves for extended period of times.

21   As a result of the foregoing, Plaintiffs have suffered a clear injury-in-fact.  Because they

22   are illegal, the products at issue are economically worthless and cannot be lawfully resold.

23   Believing them to be legal, Plaintiffs paid money for products that were worth zero.  In addition to

24   relying on the fact that these products were legal, Plaintiffs also relied on the misbranded labels

25   when purchasing these products.  Had Plaintiffs known that these products did not contain the

26   health qualities stated on their labels, or that that these labels violated federal and state law,

27   Plaintiffs would not have purchased these products.  Indeed, they paid a premium for these

28   purportedly healthy products.  Accordingly, Plaintiffs have adequately alleged both injury and

1  reliance.  To that end, because Plaintiffs have alleged fraudulent intent on the part of Defendant,

2  the Amended Complaint satisfies the heightened pleading requirements of Rule 9(b).

3  Further, despite Defendant's arguments to the contrary, a plaintiff can reasonably rely on

4  an unlawful statement on a product, even when an ingredient list on the back might refute the

5  offending statement.  Reasonable consumers should not be "expected to look beyond misleading

6  representations on the front of the box to discover the truth from the ingredient list in small print

7  on the side of the box." *Williams v. Gerber Products Co.*, 552 F.3d 934, 939-40 (9th Cir. 2008).

8  The courts of this Circuit have also made clear that a plaintiff need not have detailed knowledge of

9  FDA regulations in order to reasonably rely on statements that violate those regulations.

10  Plaintiffs satisfy the heightened pleading requirements of Rule 9(b), including allegations

11  of reasonable reliance, with respect to all asserted causes of action.  However, with respect to

12  Plaintiff's claim under the "unlawful" prong of the Unfair Competition Law, there is no need to

13  satisfy Rule 9(b) requirements or allege reliance.  Any violation of the Sherman Law or FDCA

14  necessarily constitutes an "unlawful" act under the Unfair Competition Law and, under both the

15  Sherman Law and FDCA, the manufacture or sale of misbranded food products is a strict liability

16  offense.  Therefore a violation occurs when the product is manufactured or sold, *regardless of*

17  *whether Defendant intended to deceive or defraud*.  Accordingly, the manufacture and sale of the

18  products at issue constitute "unlawful" acts, even if Defendant did not act with fraudulent intent.

19  To that end, with respect to claims under the "unlawful" prong that are premised upon the

20  unlawful act of selling illegal misbranded food products (without an intent to defraud), no

21  allegation of reliance is required other than the fact that Plaintiffs believed the products to be legal.

22  Plaintiffs suffered an injury as a result of the purchase of illegal products that were worth zero and

23  could not be lawfully resold.  This unlawful act and resulting injury occurred, regardless of

24  whether Plaintiffs relied on a misbranded label.  Therefore, allegations of reliance are unnecessary

25  for Plaintiffs to allege a claim under the UCL "unlawful" prong.

26  **FACTS**

27  Defendant is the largest bakery company in the United States.  ¶ 1. [1]  It engaged in a

28

---

[1]  References to the Amended Complaint are denominated as "¶ __."

1   scheme to sell products with false, misleading, or deceptive labeling in order to increase profits. ¶¶

2   5, 12, 13, 54, 167, 175-76, 252, 271-75, 277, 284-89.  Food products with such false, misleading,

3   or deceptive labeling are deemed misbranded and illegal under the FDCA and the Sherman Law.

4   ¶¶ 7-10.

5          Plaintiffs purchased products manufactured, distributed, or sold by Defendant that were

6   illegally misbranded.  ¶¶ 4, 11.  Plaintiffs believed these products to be legal.  ¶¶ 16, 113.  Had

7   Plaintiffs been aware that these products were misbranded and illegal, they would not have

8   purchased them.  ¶¶ 164, 69, 81, 95, 109, 123-24, 133, 140.  Indeed, Plaintiffs paid a premium for

9   these products when they could have purchased less expensive products that were not misbranded.

10  ¶¶ 170, 245, 254, 266, 279.  Further, Plaintiffs relied to the detriment on false and misleading

11  labels on these products and believed these products to have health qualities that they did not have.

12  ¶¶ 14, 64, 66, 162, 165, 276.  Had Plaintiffs known that these products did not have the specific

13  health qualities identified on their labels, Plaintiffs would not have purchased them.  ¶¶ 67, 80, 94,

14  108, 122, 132, 139.  Moreover, these products were illegal, worthless, and could not be lawfully

15  resold.  ¶¶ 169, 244, 253, 265, 278, 315.  Thus, Plaintiffs paid money for products that were worth

16  zero.  *Id*.  Plaintiffs purchased the following misbranded products:

17       **Sara Lee Classic 100% Whole Wheat Bread**, **Sara Lee 100% Whole Wheat Bread**, and

18  **Sara Lee Soft & Smooth Whole Wheat White Bread** – These three products have labels that

19  state that they are either a "good source" or "excellent source" of whole grain.  ¶¶ 98, 112, 125.

20  The FDA, however, has not determined a daily value for whole grain, and where there has been no

21  determination of a daily value of such a nutrient, under 21 C.F.R. § 101.54, a product may not

22  claim to be a "good source" or "excellent source" of that nutrient.  ¶¶ 101-07, 115-20, 125-31.

23  Further, a similar product, Sara Lee Soft & Smooth Whole Wheat Bread also claims to be an

24  "excellent source" of whole grain.  ¶¶ 186-87.

25       Also, Sara Lee Classic 100% Whole Wheat Bread and Sara Lee 100% Whole Wheat Bread

26  each claim to be made from "100% Whole Wheat." ¶¶ 97, 111.  In violation of 21 C.F.R. §

27  136.180, which precludes the use of non-whole wheat flour in products labeled as "whole wheat,"

28

1   these products contain non-whole wheat flour, namely soy flour.  ¶¶ 99-100.   Defendant also

2   makes other products labeled as "100% Whole Wheat" that contain soy flour.  ¶ 195.

3   **Thomas' Plain Bagel Thins** – In violation of 21 C.F.R. § 101.54, this product was labeled

4   as an "excellent source of fiber," despite the fact that it contained less than the required 20% of the

5   daily value of fiber, the minimum threshold permitted for products to claim to be an "excellent

6   source" of fiber.  ¶¶ 78-79.   Also, the label of this product contains an AHA "Heart-Check Mark,"

7   which is a paid endorsement.  ¶¶ 56-57.   The FDA requires that products disclose that such

8   endorsements are paid.  ¶¶ 59-62. This product makes no such disclosure.  ¶¶ 58, 63.   Plaintiffs

9   have also discovered that other products from Defendant contain this exact same Heart-Check

10  Mark and do not disclose that this is a paid endorsement. ¶ 219.

11  **Entenmann's Soft'ees** – This product contains a label with the large print word "FRESH"

12  between the words "BAKED" on top and "DAILY" on bottom, each of which is in a smaller font.

13  *See* Ex. 23;[2] ¶¶ 83-84.  In violation of 21 U.S.C. §§ 343(a) and (d) and 21 C.F.R. § 101.95,

14  Defendant labels this product as "fresh," despite the fact that it contains chemical preservatives.  ¶¶

15  87, 92.   Moreover, Entenmann's products are not baked and delivered daily, but sit on store

16  shelves until the end of their extended shelf-life.  ¶¶ 91-93.   Plaintiffs have also discovered other

17  products from Defendant contain the exact same label, despite the fact that they contain chemical

18  preservatives and are not fresh.  ¶¶ 197-98, 208, 210.

19  **Bimbo Original Toasted Bread** - Under 21 C.F.R. § 136.110(c)(17), a product containing

20  added coloring may not be labeled as "bread."  ¶¶ 135-36.   Nevertheless, this product, which is

21  labeled as "bread," contains Red 40 and Yellow 5.  ¶¶ 137-38.   Other bread products from

22  Defendant also contain added coloring.  ¶ 190.

23  On March 18, 2013, Plaintiff s initiated this action, alleging claims on behalf of themselves

24  and a class of similarly situated persons who purchased the products at issue.  On May 20, 2013,

25  Plaintiffs filed an amended complaint ("Amended Complaint").  Therein, Plaintiffs specifically

26  allege separate causes of action against Defendant under the "fraudulent," "unlawful," and "unfair"

27  _____

28  [2]   References to exhibits annexed to Defendant's Request for Judicial Notice are denominated
as "Ex. __."  Submitted herewith are objections to Defendant's application for judicial notice.

1   prongs of the Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq*. ("UCL"); separate

2   causes of action under the "misleading" and "untrue" prongs of the False Advertising Law, Cal.

3   Bus. & Prof. Code § 17500, *et seq*. ("FAL"); a cause of action under the California Legal

4   Remedies Act, Cal. Civ. Code § 1750, *et seq* ("CLRA"); and a common law cause of action for

5   unjust enrichment.

6   <u>**ARGUMENT**</u>

7   In considering a motion to dismiss, all allegations in the complaint must be taken as true

8   and construed in the light most favorable to plaintiff.  *Sateriale v. R.J. Reynolds Tobacco Co.*, 697

9   F.3d 777, 783 (9th Cir. 2012).  A complaint need only allege sufficient facts to show "a claim to

10  relief that is plausible on its face."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

11  Assessing plausibility, however, does not involve analysis of the merits. *Id* at 556-57.

12  **I.    <span style="font-variant:small-caps">Plaintiffs Have Adequately Pled Claims Under the UCL, FAL, and CLRA</span>**

13  The FDCA, 21 U.S.C. §§ 301 *et. seq*., "gives the FDA the responsibility to protect the

14  public health by ensuring that foods are safe, wholesome, sanitary, and properly labeled."

15  *Lockwood v. Conagra Foods, Inc.*, 597 F. Supp. 2d 1028, 1030 (N.D. Cal. 2009).  21 U.S.C. § 331

16  prohibits the misbranding of food in interstate commerce, and 21 U.S.C. § 343 sets forth

17  conditions under which food is considered "misbranded." In general, food is "misbranded" if its

18  labeling is "false or misleading in any particular." 21 U.S.C. § 343(a)(1).  Through the Sherman

19  Law, Cal. Health & Safety Code § 110660, *et seq*., California has expressly adopted the FDCA

20  labeling requirements as its own.  Cal. Health & Safety Code § 110100  ("All food labeling

21  regulations and any amendments to those regulations adopted pursuant to the federal act . . . shall

22  be the food regulations of this state.").[3] Any violation of the FDCA or FDA regulations is also a

23  violation of the Sherman Law.

24  _____

25  [3]     California has also enacted a number of laws and regulations (which have also been
     violated by Defendant) that adopt federal food laws and regulations.  *See, e.g.*, Cal. Health &
26  Safety Code § 110660 ("Any food is misbranded if its labeling is false or misleading in any
     particular."); § 110665 ("Any food is misbranded if its labeling does not conform with the
27  requirements for nutrition labeling as set forth in . . . 21 U.S.C. § 343(q)"); § 110670 ("Any food is
     misbranded if its labeling does not conform with the requirements for nutrient content or health
28  claims as set forth in . . . 21 U.S.C. § 343(r)"); § 110760 (unlawful to "manufacture, sell, deliver,
     hold, or offer for sale any food that is misbranded"); *see also* ¶¶ 145-60 (listing further provisions).

1    The UCL prohibits "unlawful, unfair or fraudulent business act or practice." Cal. Bus. and

2    Prof. Code § 17200. The FAL prohibits any "unfair, deceptive, untrue, or misleading advertising."

3    Cal. Bus. and Prof. Code § 17500.  "'[A]ny violation of the false advertising law ... necessarily

4    violates'" the UCL. *Williams*, 552 F.3d at 938 (quoting *Kasky v. Nike, Inc*. 27 Cal.4th 939, 950

5    (2002)). The CLRA prohibits "unfair methods of competition and unfair or deceptive acts or

6    practices." Cal. Civ. Code § 1770.  "The California Supreme Court has recognized that these laws

7    prohibit 'not only advertising which is false, but also advertising which[,] although true, is either

8    actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the

9    public.'"  *Williams*, 552 F.3d at 938 (quoting *Kasky*, 27 Cal.4th at 951).  Any violation of the

10   Sherman Law is sufficient to constitute a predicate act on which UCL, FAL, and CLRA claims

11   may be based.  *In re Ferrero Litigation*, 794 F. Supp. 2d at 1116.

12   These three statutes are governed by the "reasonable consumer" standard.  *Williams*, 552

13   F.3d at 938.  Under the reasonable consumer standard, Plaintiffs must "show that members of the

14   public are likely to be deceived." *Id*.  "[W]hether a business practice is deceptive will usually be a

15   question of fact not appropriate for decision on demurrer."  *Id*.  Therefore, it is only on "rare"

16   occasions that such a determination can be made at the pleadings stage.  *Id*.

17   **A.**        **Plaintiff Has Alleged Standing Under Article III, the UCL, FAL, and CLRA**

18   Plaintiffs have been injured.  To begin, regardless of any misrepresentations, Plaintiffs

19   purchased products that were actually worth zero and could not be lawfully resold.  Thus, they

20   were injured in the amount of the purchase price.  *Kosta v. Del Monte Corp.*, 2013 WL 2147413, at

21   *10 (N.D. Cal. 2013).  Further, "Under California law, '[a] consumer who relies on a product label

22   and challenges a misrepresentation contained therein can satisfy the standing requirement of [the

23   UCL] by alleging ... that he or she would not have bought the product but for the

24   misrepresentation.'"  *Kosta*, 2013 WL 2147413, at *11 (quoting *Kwikset Corp. v. Superior Court*,

25   51 Cal.4th 310, 329).  To allege an economic injury sufficient to establish standing under the UCL,

26   "it is sufficient if a plaintiff alleges that he or she would not have purchased the goods in question

27   absent the misrepresentations at issue."  *Khasin v. R.C. Bigelow, Inc.*, 2013 WL 2403579, at *3, 6-

28   7 (N.D. Cal. 2013).  *See also*, *Jones v. ConAgra Foods, Inc.*, 912 F. Supp. 2d 889, 901 (N.D. Cal.

1    2012) (it is sufficient to allege that, "had [Plaintiffs] been aware that the labeling was inaccurate,

2    they would not have purchased Defendant's products").  Specifically with respect to Article III,

3    where "Plaintiffs allege that their injury stems from the purchase of the products at issue, or the

4    added premium which costs they would not have incurred absent [Defendant's] unlawful claims

5    and misrepresentations [and that Defendant] benefitted from its misrepresentations while Plaintiffs

6    suffered economic loss . . . . [such] allegations are sufficient to plead a pecuniary injury and thus a

7    basis for Article III standing." *Kosta*, 2013 WL 2147413, at *11 (internal citations omitted).

8    *Accord*, *Khasin v. Hershey Co.*, 2012 WL 5471153, at *6 (N.D. Cal. 2012) (Article III standing

9    found where plaintiff alleged he would not have purchased products "had he known the truth about

10   these products and had they been properly labeled in compliance with the labeling regulations").

11        It is also sufficient to allege that plaintiffs "paid a premium for [defendant's] products

12   which they otherwise would not have paid but for [defendant's] misrepresentations" *Kosta*, 2013

13   WL 2147413, at *12.  *See also*, *Hershey*, 2012 WL 5471153, at *6 (injury-in-fact pled where

14   plaintiff "alleges that he had cheaper product alternatives for purchase at his disposal"). [4]

15        Plaintiffs allege that they: (1) would not have purchased the products at issue had they

16   know these products were illegal or in violation of Sherman Law and FDA requirements (¶¶ 69,

17   81, 95, 109, 123-24, 133, 140, 164) (2) would not have purchased the products had they known

18   they the products did not possess the qualities identified on their labels (¶¶ 67, 80, 94, 108, 122,

19   132, 139); (3) paid a premium for these products when they could have purchased less expensive

20   products that were not misbranded (¶¶ 170, 245, 254, 266, 279); and (4) paid money for products

21   that were illegal, could not be lawfully resold, and were worth zero (¶¶ 119, 244, 253, 265, 278,

22   _____

23   [4]      Cases cited by Defendant are inapposite.  In *Chin v. General Mills, Inc.*, 2013 WL 2420455
     (D. Minn. 2013), a Minnesota case, no product in question violated the FDCA or any similar state
24   statute.  In *Garcia v. Sony Computer Entertainment America, LLC*, 859 F. Supp. 2d 1056, 1063
     (N.D. Cal. 2012), plaintiff merely alleged that fraudulent conduct occurred under the UCL where
25   defendant knew or should have known, but failed to disclose, that video games and video game
     systems made in 2006 might not be compatible with new and different video games and video
26   game systems that might be made in the future.  The holding in *Kelley v. Mortgage Electronic
     Registration Systems, Inc.*, 642 F. Supp. 2d 1048, 1054 (N.D. Cal. 2009), is readily distinguishable
27   where all other allegedly deceptive labeling was found to be to be in compliance with the FDCA,
     and the sole issue became whether the word "Froot" in Froot Loops brand cereal mislead plaintiff
28   to believe that the product contained real fruit.

1    315).  Such allegations are sufficient to allege claims under Article III, UCL, FAL, and CLRA.

2         **B.**      **Plaintiffs' Claims Are Plausible and They Have Alleged Reasonable Reliance**

3         Defendant argues that Plaintiffs' reliance could not be reasonable because, with respect to

4    certain products, Plaintiffs could have looked at information on the back of the package to see that

5    the false or misleading statement on the front was not accurate.  For example, while Sara Lee

6    Classic 100% Whole Wheat Bread explicitly states that it is "100% Whole Wheat" on the front of

7    the package, Defendant contends that reliance on such a statement cannot be reasonable because a

8    consumer could look at the list of ingredients on the back and see that these products contain non-

9    whole wheat flour.  In *Williams*, the Ninth Circuit rejected Defendant's position:

10            We disagree with the district court that reasonable consumers should be expected to
              look beyond misleading representations on the front of the box to discover the truth
11            from the ingredient list in small print on the side of the box. The ingredient list on the
              side of the box appears to comply with FDA regulations and certainly serves some
12            purpose. We do not think that the FDA requires an ingredient list so that
              manufacturers can mislead consumers and then rely on the ingredient list to correct
13            those misinterpretations and provide a shield for liability for the deception. Instead,
              reasonable consumers expect that the ingredient list contains more detailed
14            information about the product that confirms other representations on the packaging.

15         552 F.3d at 939-40.  *See also*, *Kosta*, 2013 WL 2147413, at *12 ("it is plausible that a

16    reasonable consumer, whose food purchases are influenced by nutritional content, would rely on

17    'front of the package' labeling claims like 'fresh'"); *ConAgra*, 912 F. Supp. 2d at 900-01 (rejecting

18    argument that plaintiff could not allege reliance on "natural" statement where allegedly unnatural

19    ingredients were disclosed in the ingredient list).  Even where "the label was not prominently

20    displayed, clearly it was intended to be seen by consumers or there would be no reason to include

21    it" and, thus, such "allegations are sufficient to establish materiality and reliance."  *Astiana v.*

22    *Dreyer's Grand Ice Cream, Inc.*, 2012 WL 2990766, at *7 (N.D. Cal. 2012).[5]

23         Defendant also asserts that, to satisfy Rule 8's plausibility requirement with respect to food

24   _____
     [5]     Defendant's assertion that, "[a] consumer relying on the term [] on a label should also be
25   deemed to have read and relied on the ingredient list on that same label" (Def. Mem. at 10) is
     wrong and the cases cited in support are inapposite.  In *Chin v.*, 2013 WL 2420455, a Minnesota
26   case, there was no allegation that a product violated the FDCA or similar state law.  In *Young v.*
     *Johnson & Johns*on, 2012 WL 1372286, at *3 (D.N.J. 2012), a New Jersey case, claims were
27   dismissed where no violation of the FDCA was alleged.  In *Dvora v. General Mills, Inc.*, 2011 WL
     1897349, at *6 (C.D. Cal. 2011), plaintiff's claims were found preempted where the contents of
28   the labels at issue were expressly permitted by the FDA.

misbranding claims, reasonable reliance is only possible if a consumer is "familiar with the minutiae of the Code of Federal Regulations."  Again, the courts have rejected such arguments. *See Ivie v. Kraft Foods Global, Inc.*, 2013 WL 3296616, at *8 (N.D. Cal. 2013) ("The court disagrees with defendants that a plaintiff would be required to know of the particular FDA or state law regulations in order for violations thereof to cause an economic injury."); *Kosta*, 2013 WL 2147413, at *12 (rejecting argument that, "to be deceived, [plaintiff] would have had to approach the canned goods aisle of a grocery store clutching Title 21 of the Code of Federal Regulations and armed with encyclopedic knowledge of FDA regulations"); *Hershey*, 2012 WL 5471153, at *7 (rejecting argument that for plaintiff to be plausibly misled, he would have had to "have been familiar with the FDA regulations regarding the use of phrases like 'excellent source' and 'good source'").[6]  Indeed, the plausibility requirement is met where plaintiffs simply allege that they "would not have bought [a misbranded product], or paid a premium for it, had [they] known that it did not meet the [FDA] requirements."  *Lanovaz v.Twinings North America, Inc.*, 2013 WL 675929, at *6 (N.D. Cal. 2013).

### C.      The Amended Complaint Satisfies the Heightened Pleading Requirements of Rule 9(b)

       Throughout their papers, Defendant makes the repeated refrain that Plaintiffs do not satisfy Rule 9(b)'s requirements by failing to allege "who, what, when, where, and how."  This is untrue. In *Kosta*, the court found the complaint satisfied Rule 9(b) by alleging that, "the 'who' is Del Monte Del Monte Corporation; the 'what' is Del Monte's allegedly unlawful and deceptive claims in its labeling, packaging and website; the 'when' is 'since 2008 and through the class period;' and the 'where' is Del Monte's package labels and website."  2013 WL 2147413, at *14.  "With respect to how Del Monte's statements were misleading, Plaintiffs point[ed] to allegations in the

---

[6]       The cases cited by Defendant on this point are unavailing.  *In re Sony Grand Wega KDF-E A10/A20 Series Rear Projection HDTV Television Litig.*, 758 F. Supp. 2d 1077, 1089 (S.D. Cal. 2010) involved representations that televisions were of a "high" or "superior" quality, which did not violate any statutory requirements.  Unlike televisions, statements that food products are a "good" or "excellent" source of a nutrient must comply with FDA requirements. *Mason v. Coca-Cola Co.*, 774 F. Supp. 2d 699 (D.N.J. 2011), involved a claim under a New Jersey consumer protection law that is materially different from the UCL.  Unlike the UCL, the New Jersey statute required actual falsity and the statement at issue was not literally false.  *Id* at 703.

1    [complaint] that: (1) Del Monte violated the Sherman law in nine specific ways; (2) Plaintiffs

2    purchased products while reasonably relying on Del Monte's misrepresentations; and (3) Plaintiffs

3    were deceived by Del Monte's product labels and website." *Id. Accord, Hershey*, 2012 WL

4    5471153, at *7 (similar allegations of who, what, when, where, and how sufficient); *Astiana v. Ben*

5    *& Jerry's Homemade, Inc.*, 2011 WL 2111796, at *6 (N.D. Cal. 2011) (same).

6         Here, just as in *Kosta*, *Hershey*, and *Ben & Jerry's*, Plaintiffs allege that the "who" is

7    Defendant (¶ 1); the "what" is Defendant's unlawful and deceptive claims in its labeling (¶¶ 56-

8    141); the "when" is since March 18, 2008 and through the defined Class Period (¶¶ 18-19); and the

9    "where" is Defendant's package labels (¶¶ 56, 83, 97, 11-12, 125-26, 135).  With respect to "how"

10   Defendant's statements were misleading, Plaintiffs allege that: (1) Defendant violated the Sherman

11   Law, FDCA, and FDA regulations in nine specific ways (¶¶ 56-141; section II, *infra*); (2) Plaintiffs

12   were deceived by Defendant's product labels (¶¶ 14, 64, 66, 162, 165, 276); (3) Plaintiffs

13   purchased products while reasonably relying on Defendant's misrepresentations (*id*); (4)  Plaintiffs

14   were injured because they would not have purchased a product they knew to be either, illegal,

15   misbranded, or without the qualities implied by a deceptive label (¶¶ 67, 69, 80-81, 94-95, 108-09,

16   122-24, 132-33, 139-40, 164); and (5) Plaintiffs paid money for products that were illegal, could

17   not be lawfully resold, and were worth zero (¶¶ 169, 244, 253, 265, 278, 315).

18        **D.     With Respect to Their Claim Under the UCL "Unlawful" Prong, Plaintiffs**
19             **Do Not Need to Allege Reliance or Meet the Requirements of Rule 9(b)**

20        While Plaintiffs have pled fraud with sufficient particularity, Plaintiffs' claim under the

21   "unlawful" prong of the UCL is not subject to the pleading requirements of Rule 9(b).  This claim

22   is, in part, premised on unlawful conduct that is not fraudulent in nature.  Thus, this claim is only

23   subject to notice pleading.  Cal. Bus. & Prof. Code § 17200 provides for three separate causes of

24   action for "unlawful, unfair *or* fraudulent business act[s]" (emphasis added).  Claims under the

25   "unlawful" prong and under the "fraudulent" prong are distinct causes of action, with distinct

26   elements. *Medrazo v. Honda of North Hollywood*, 205 Cal.App.4th 1 (Cal. App. 2 Dist. 2012). A

27   claim under the "unlawful" prong that is based on unlawful, but not fraudulent, conduct is only

28   subject to Rule 8 notice pleading.  *Sanders v. Choice Mfg. Co., Inc.*, 2011 WL 6002639, at *9

1   (N.D. Cal. 2011); *In re WellPoint, Inc.*, 865 F. Supp. 2d 1002, 1048 (C.D. Cal. 2011).

2        While Defendant has engaged in fraudulent conduct, the "unlawful" claim is also premised

3   on unlawful conduct ***independent of fraud***.  Defendant is alleged to have violated the FDCA and

4   the Sherman Law by unlawfully misbranding its products.  Such misbranding constitutes unlawful

5   conduct, ***regardless of whether Defendant intended to deceive or defraud***.  *In re Actimmune*

6   *Marketing Litigation*, 2010 WL 3463491, at *9 (N.D. Cal. 2010), *aff'd*, 464 Fed. Appx. 651 (9th

7   Cir. 2011) is highly instructive.  In *Actimmune*, plaintiffs also alleged violations of the FDCA and

8   the Sherman Law.  The court held that, "because the FDCA and Sherman Laws impose strict

9   liability on those who [violate the FDCA and Sherman Law provisions at issue], plaintiffs would

10   be absolved from having to establish scienter and an intent to defraud, the two pivotal elements of

11   fraud."  *Id*.  As a result, such "claims do not 'sound in fraud,' and plaintiffs' averments that rely on

12   the FDCA and Sherman Laws need only satisfy Rule 8(a), not Rule 9(b)."  *Id*.

13        In *Actimmune*, the court found, "[c]ritically, in order to establish a misdemeanor

14   misbranding violation, the government need not adduce any evidence that the individual or entity

15   that [engaged in unlawful conduct] did so with an intent to defraud."  *Id* at *7.  The same is true in

16   the present case.  Under 21 U.S.C. § 333(a)(1), a person who violates 21 U.S.C. § 331, ***regardless***

17   ***of intent***, "shall be imprisoned for not more than one year or fined not more than $1,000, or both."

18   In contrast, 21 U.S.C. § 333(a)(2) provides that, if any person, "commits such a violation ***with the***

19   ***intent to defraud or mislead***, such person shall be imprisoned for not more than three years or

20   fined not more than $10,000, or both" (emphasis added).  The Sherman Law similarly sets

21   penalties for violations both with and without "intent to defraud or mislead."  *See* Cal. Health &

22   Safety Code §§ 111825(a) & (c).

23        For the exact same reasons, Plaintiffs should be able to assert a claim under the UCL

24   "unlawful" prong, even if they are unable to allege fraud with particularity.  *Sanders*, 2011 WL

25   6002639, at *9 (dismissing UCL claim to the extent based on fraud, but allowing claim "to the

26   extent the claim is based on Defendants' allegedly unlawful sale of insurance without a license");

27   *In re WellPoint*, 865 F. Supp. 2d at 1048 (allegation of antitrust violation sufficient to allege claim,

28

1  even where plaintiff is unable to plead fraud with particularity).[7]  To hold otherwise would render

2  the distinctions between the "unlawful" prong and "fraudulent" prong meaningless.

3      To that end, because the "unlawful" conduct is not fraudulent in nature, Plaintiffs do not

4  need to allege reliance with respect to the "unlawful" prong claim.  Because a violation of the

5  Sherman Law or FDCA does not require intent, where the violation is nothing more than the sale

6  of illegal products, no allegation of reliance is required other than the fact that Plaintiffs believed

7  the products to be legal.  Plaintiffs suffered injury as a result of the purchase of products that were

8  illegal, worthless, and could not be lawfully resold.  Under such circumstances, Plaintiffs need not

9  have relied on any label to suffer injury as a result of an "unlawful" act or practice.[8]

10  **II.   PLAINTIFFS HAVE ADEQUATELY ALLEGED CAUSES OF
         ACTION WITH RESPECT TO ALL PRODUCTS AT ISSUE**

11

12      Each of the products discussed below violates the FDCA and FDA violations.  As a result,

13  they necessary violate the Sherman Act and any violation of the Sherman Act constitutes a

14  predicate on which a claim can be alleged under the UCL, FAL, and CLRA. Moreover, each of

15  these products specifically violates Section 110660 of the Cal. Health & Safety Code, which

16  ───────────────────

17  [7]    *Accord, Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1104 (9th Cir. 2003) ("In other cases, however, a plaintiff may choose not to allege a unified course of fraudulent conduct in support of a claim, but rather to allege some fraudulent and some non-fraudulent conduct. In such cases, only the allegations of fraud are subject to Rule 9(b)'s heightened pleading requirements. The text of Rule 9(b) requires only that in "all averments of fraud ..., the circumstances constituting fraud ... shall be stated with particularity." Fed.R.Civ.P. 9(b) (emphasis added). The rule does not require that allegations supporting a claim be stated with particularity when those allegations describe non-fraudulent conduct.")

18

19

20

21  [8]    Where an "unlawful" act is not fraudulent in nature and not based on misrepresentations, reliance is not an element of a claim under the "unlawful" prong.  *See Olivera v. American Home Mortg. Servicing, Inc.*, 689 F. Supp. 2d 1218, 1224 (N.D. Cal. 2010) ("for claims based on the 'unfair' or 'unlawful' prong of the UCL claim . . . plaintiff need not allege reliance on misrepresentations"); *In re Ditropan XL Antitrust Litig.*, 529 F. Supp. 2d 1098, 1106 (N.D. Cal. 2007) (reliance not an element of claim under "unlawful" prong).   In this respect, the present case is distinct from *Actimmune*.  In that case, plaintiffs did not purchase an illegal product.  Rather, the alleged violation of the FDCA and Sherman Law was the unlawful providing of inadequate directions for use of a drug through the intentional marketing of legal drugs for off-label uses. That claim necessarily was based on misrepresentations (*i.e.*, the marketing at issue) upon which reliance was necessary to show a resulting injury.  2010 WL 3463491 at *9 n.2.  Here, the unlawful act and injury occurred when Defendant sold and Plaintiffs purchased products that were illegal and worthless.  That unlawful act and injury occurred regardless of whether Plaintiff relied on any labels.  Under these circumstances, other than the fact that the product was legal, no misrepresentations or reliance thereon is required to state a claim under the "unlawful" prong.

1    prohibits food labels that are "false or misleading in any particular," and Section 110760, which

2    prohibits the manufacture, sale, delivery, or holding of misbranded food.

3         **A.    Bimbo Toasted Bread Violates the Sherman Law and FDA**
              **Regulations Prohibiting the Addition of Coloring to Bread Products**

4         Under 21 C.F.R. § 136.110(c)(17), with respect to all products labeled as "bread,"

5    "coloring may not be added."  It is undisputed that Bimbo Toasted Bread contains such prohibited

6    coloring, Red 40 and Yellow 5.  ¶ 137; Ex. 23.  In response to this violation, Defendant makes the

7    extraordinary factual assertion that toasted bread is not "bread," but rather a "unique and

8    innovative melba toast-like product."  Bimbo Toasted Bread, however, is clearly labeled as

9    "bread."[9]  The product is called "Toasted *Bread*."  *See* Ex. 23 (emphasis added).  The packaging

10   says that "Toasted *Bread*" is "*Bread* Born Toasted," and that "Toasted *Bread* is an entirely

11   different *kind of bread*."  *Id* (emphasis added).  Yet, Defendant argues that Bimbo Toasted Bread

12   "is not simply 'bread' by another name."  The toasting of bread, however, does not render it

13   something other than bread.  Nor does Defendant explain how bread ceases to be subject to FDA

14   regulations and the Sherman Law when it is placed in a toaster.

15        Nothing in any FDA regulation or guidance suggests that toasted bread products should be

16   treated differently than non-toasted bread products.  In fact, the opposite is true.  21 C.F.R. §

17   136.110 sets the standard of identity for bread.  It defines products covered by this standard as:

18

19        "foods produced by baking mixed yeast-leavened dough prepared from one or more
          of the farinaceous ingredients listed in paragraph (c)(1) of this section [various
20        types of flour] and one or more of the moistening ingredients listed in paragraphs
          (c)(2), (6), (7), and (8) of this section [water, milk and/or other dairy products, egg
21        products, or nutritive carbohydrate sweeteners] and one or more of the leavening
          agents provided for by paragraph (c)(3) of this section [yeast]."

22   21 C.F.R. § 136.110(a).  Bimbo Toasted Bread falls within this standard as it contains wheat flour,

23   water, and yeast.[10]  *See* Ex. 23.  Therefore, the presence of added coloring is a violation of the

24   _____

25   [9]    Such conduct also violates Cal. Health & Safety Code §§ 110685 and 110710, which
         prohibit the labeling of product as a food for which a standard of identity has been set where the
26       product does not meet that standard of identity.

27   [10]   Defendant suggests that the FDA permits food manufacturers to exempt themselves from
         bread regulations by simply placing a modifying word such as "toasted" in front of the word
28       "bread" on labels.  In support of this erroneous position, Defendant cites FDA Compliance Policy
         Guide 505.350 (Ex. 29).  The CPG, however, only exempts certain types of honey breads from 21

1    regulation and renders this product illegally misbranded.  Even if there was merit to Defendant's

2    argument, at best, Defendant has only raised questions of fact regarding the nature of "toasted

3    bread" that cannot be resolved on a motion to dismiss.

4         **B.**       **The Sara Lee Bread Products Cannot Claim to Be a**
                        **"Good Source" or "Excellent Source" of Whole Grain**

5         The labels on Sara Lee Classic 100% Whole Wheat Bread, Sara Lee 100% Whole Wheat

6    Bread, and Sara Lee Soft & Smooth Whole Wheat White Bread claim that they are either a "Good

7    Source" or "Excellent Source" of whole grain.  ¶¶ 98, 112, 125.  A "good source" claim can only

8    be made when the product has 10 to 19 percent of the Reference Daily Intake ("RDI") or Daily

9    Reference Value ("DRV") of that which the product claims to be a "good source."  21 C.F.R. §

10   101.54(c).  An "excellent source" claim can only be made when the product has at least 20 percent

11   of the RDI or the DRV.  21 C.F.R. § 101.54(b).  However, "good source" claims and "excellent

12   source" claims may be made with respect to anything for which the FDA has not determined an

13   RDI or DRV.  *See* 21 C.F.R. § 101.54(a).[11]  FDA "plain English" guidance makes this clear.  *See*

14   A Food Labeling Guide (May 1997) (available at 1997 WL 33793842) at Ch. VI, Question 21:

15   
16        21. May a "high" or a "good source" claim be made for a nutrient that does not have
          an established daily value?

17        No. "High" and "good source" claims are defined as a percentage of the DV.
18        ***Therefore, nutrients that do not have an established DV are not covered by the***
          ***definition and may not make "high" or "good source" claims.*** (Emphasis added).[12]

19        The FDA has not established a daily value for whole grain. Therefore, because these

20   products are labeled as a "good source" or "excellent source" of whole grain, they are illegally

21   misbranded.[13]  Defendant, however, takes the position that this regulation is only applicable to

22   C.F.R. § 136.110 because of their content (and not because of their name).  Nothing in the CPG, or

23   any other FDA regulation or guidance, exempts "toasted bread" from this regulation.

24   [11]     This product also violates 21 U.S.C. § 343(r), which prohibits the characterization of levels
     of nutrients except as provided in the FDCA and FDA regulations and Cal. Health & Safety Code §
25   110670, which specifically makes a violation of 21 U.S.C. § 343(r) a violation of the Sherman Law.

26   [12]     *See also*, FDA Food Labeling Questions and Answers (Aug. 1994) (available at 1994 WL
     16188668) at Nutrient Content Claims, C22: ("nutrients that do not have an established daily value
27   are not covered by the definition and may not make "high" or "good source" claims.").

28   [13]     Indeed, the FDA has issued draft guidance in which it notes that *currently* "Manufacturers

1   "nutrients" and not "ingredients."  In actuality, the FDA regulations do not distinguish between

2   "nutrients" or "ingredients."[14]  Under 21 C.F.R. § 101.13(b)(2)(i), a "good source" or "excellent

3   source" claim is a an "implied nutrient content claim," which is defined as a claim that, *inter alia*,

4   "[d]escribes the food *or an ingredient* therein in a manner that suggests that a nutrient is absent or

5   present in a certain amount (e.g., 'high in oat bran'[15])" (emphasis added).  For all these reasons,

6   Plaintiffs have adequately alleged that these products are illegally misbranded.

7               **C.      Sara Lee Bread Products Labeled as "100% Whole Wheat"
                          Violate the Sherman Law and FDA Regulations Where They**
8                         **Contain Non-Whole Wheat Flour Such as Soy Flour**

9               In violation of the Sherman Law and FDA regulations, the labels on Sara Lee Classic 100%

10  Whole Wheat Bread and Sara Lee 100% Whole Wheat Bread state that they contain "100% Whole

11  Wheat."  ¶¶ 97, 111.  The ingredient lists on these products, however, state that they contain soy

12  flour, which is a non-whole wheat flour.  ¶¶ 99, 113.  Defendants do not dispute that the labels list

13  soy flour as an ingredient.  Def. Mem. at 13.  Dough used to make whole wheat breads must be

14  made from "wheat flour, bromated whole wheat flour, or a combination of these."  *See* 21 C.F.R. §

15  136.180(a)(1).  Any bread that contains non-whole wheat flour does not meet the standard of

16  identity of whole wheat bread and cannot be labeled as such.  Products labeled as whole wheat

17  bread that contain non-whole wheat flour are illegally misbranded.[16]

_____

18  can make factual statements about whole grains on the label of their products such as "100% whole

19  grain". . . or "10 grams of whole grains" . . . provided that the statements are not false or misleading
    under section 403(a) of the Federal Food, Drug, and Cosmetic Act (the Act) and ***do not imply a***

20  ***particular level of the ingredient, i.e., "high" or "excellent source."***  *See Draft Guidance for
    Industry and FDA Staff -Whole Grain Label Statements* (Feb. 17, 2006) (available at 2006 WL

21  477986) (emphasis added). Although just draft guidance, on a motion to dismiss, the FDA's
    pronouncements may still be relevant to the viability of claims. *See Ackerman v. Coca-Cola Co.*,

22  2010 WL 2925955, at *3 n.7 (E.D.N.Y. 2010).

23  [14]      In support of this erroneous argument, Defendant cites two long regulations (21 C.F.R. §§
    101.9 and 101.13).  Notably, Defendant fails to cite any specific section or paragraph within either

24  to support its position.  This is because nothing in either regulation implies that whole grain claims
    are not subject to the requirements of 21 C.F.R. § 101.54.

25

26  [15]      It should be noted that, under Defendant's definitions, oat bran would be an "ingredient,"
    and not a "nutrient."  Yet, it is clearly covered in regulations of "*nutrient* content claims."

27

28  [16]      This product violates 21 U.S.C. § 343(r) and Cal. Health & Safety Code § 110670, which
    prohibits the characterization of levels of nutrients except as provided in the FDCA.  It also violates
    Cal. Health & Safety Code §§ 110685 and 110710, which prohibit the labeling of product as a food

In its motion to dismiss, however, Defendant raises the factual argument that these products may not contain soy flour.  Defendant suggests that these products may only contain "trace amounts" of soy flour.  Even if true, nothing in 21 C.F.R. § 136.180 permits "trace amounts" of non-whole wheat flour.  At best, Defendant raises a question of fact as to the composition of these products, which cannot be determined on a motion to dismiss.[17]

### D.   A Reasonable Consumer Would Be Misled by the "FRESH" Claim on Entenmann's Soft'ees

Entenmann's Soft'ees package contains a label with the large print word "FRESH" between the words "BAKED" on top and "DAILY" on bottom, each of which is in a smaller font. *See* Ex. 23; ¶¶ 83-84.   This product, however, contains chemical preservatives and 21 C.F.R. § 101.95(a) precludes the use of the term "fresh" to describe food products containing chemical preservatives.  ¶¶ 87, 92.  Further 21 U.S.C. §§ 343(a) and (d) prohibit food products where "labeling is false or misleading in any particular," or where "its container is so made, formed, or filled as to be misleading,"  while 21 C.F.R. § 1.21 requires food products to reveal material facts. As a result of this product's label, reasonable consumers would be misled to believe that this product is without chemical preservatives, and, because of the inclusion of the words "baked" and "daily," recently baked, delivered daily, and placed on shelves for a relatively short period of time. ¶¶ 90-92.  In actuality, this product sits on store shelves for a prolonged period of time.  ¶ 93.

Defendant insists that it uses the term "fresh" "to tell the consumer that that product, unlike some other bakery products, is not frozen."  Def. Mem. at 15.  Defendant's assertion of what the term means to it, however, is irrelevant to what the term means to a reasonable consumer.  For example, in *ConAgra*, 912 F. Supp. 2d at 900, the court found a question of fact as to whether defendant's "freshness" claims would be misleading to a reasonable consumer.  "Whether a

---

with a set standard of identity where the product does not meet that standard of identity.

[17]   Cases cited by Defendant are of no help to it.  In *Ross v. Sioux Honey Ass'n, Co-op.*, 2013 WL 146367, at *10-11 (N.D. Cal. 2013), the court dismissed claims based on allegations that honey did not contain pollen because nothing in any federal or state law required honey to contain pollen.  *Id.*  Here, it is undisputed that federal regulations do preclude the use of soy flour in whole wheat bread products.  Further, in both *Rooney v. Cumberland Packing Corp.*, 2012 WL 1512106 (S.D. Cal. 2012) and *Arroyo v. Pfizer, Inc.*, 2013 WL 415607 (N.D. Cal. 2013) there were also no allegations that the products in question violated the FDCA or Sherman Law.

1   reasonable customer would in fact find this information deceptive is a question not properly

2   addressed on a motion to dismiss." *Id.  Accord*, *Kosta*, 2013 WL 2147413, at *12 ("it is plausible

3   that a reasonable consumer, whose food purchases are influenced by nutritional content, would

4   rely on "front of the package" labeling claims like 'fresh'").

5   Moreover, Defendant's argument does not explain the connected use of the words "baked"

6   and "daily."  These words do not connote that the product is merely "not frozen."  Rather, they

7   imply that this product is recently baked, delivered daily, and has not been sitting on shelves for

8   prolonged periods of time.  ¶¶ 90-92.  At best, Defendant raises a question of fact regarding the

9   interpretation of this term that cannot be determined on a motion to dismiss.[18]

10   Further, Defendant argues that, "[b]y its terms, the federal regulation cannot apply to

11   products where the challenged phrase refers to a method of processing such as baking."  Def.

12   Mem. at 15.  21 C.F.R. § 101.95 makes no reference to baking as being some kind of excluded

13   process.  Regardless, even if such an argument had merit and this product was not subject to the

14   requirements of 21 C.F.R. § 101.95, the FDA has made clear that use of the term "fresh" on food

15   products is still "subject to the requirements of 403(a) of the act [U.S.C. §§ 343(a)], the act's

16   prohibition of false or misleading labeling. Therefore, the agency has the authority to take action

17   on a case-by-case basis against foods that use the term 'fresh' on the label in a manner that is false

18   or misleading, even though the food may not be subject to new § 101.95(a)."  *See FDA Final Rule*

19   *on Food Labeling*, 58 Fed. Reg. 2302, 2403 (Jan. 6, 1993) (available at 1993 WL 1540).  Given the

20   interpretations a reasonable consumer may have of the term "fresh," as combined with the words

21   "baked" and "daily," a claim has been alleged relating to this product.

22   **E.     Products Bearing the American Heart Association "Heart-Check Mark"**
         **Must Disclose that this Is a Paid Endorsement**
23
       On the label of Thomas' Plain Bagel Thins is the American Heart Association ("AHA")
24
   "Heart-Check Mark."  ¶ 56.  Defendant pays the AHA for the right to include this endorsement on
25

26   [18]     Indeed, in support of its position, Defendant cites *Abruzzi Foods, Inc. v. Pasta & Cheese,*

27   *Inc.*, 986 F.2d 605, 606 (1st Cir. 1993). There, in affirming the grant of summary judgment after
     the close of discovery (and not a motion to dismiss), the First Circuit found that the meaning of the

28   term "fresh" on a food product to be an inherently factual issue.  *Id* ("common sense suggests that
     the answer to the question, 'Does calling this product "fresh" mislead?' is, 'It depends.'").

its products.  ¶ 57.  In violation of Sherman Law and FDA requirements, however, Defendant's products bearing the mark do not disclose that this is a paid endorsement.  ¶¶ 58, 63.  For that reason, these products are illegally misbranded. ¶ 61.

The necessary implication of this paid endorsement is that the product bearing a Heart-Check Mark is healthy and generally good for one's heart-health.  ¶¶ 60, 64.  For this reason, the FDA classifies the use of such a mark as "health claim."  21 C.F.R. § 101.14(a)(1) provides that:

> Health claim means any claim made on the label or in labeling of a food, including a dietary supplement, that expressly or by implication, ***including "third party" references***, written statements (e.g., a brand name including a term such as "heart"), ***symbols (e.g., a heart symbol)***, or vignettes, characterizes the relationship of any substance to a disease or health-related condition. Implied health claims include those statements, symbols, vignettes, or other forms of communication that suggest, within the context in which they are presented, that a relationship exists between the presence or level of a substance in the food and a disease or health-related condition.

Because consumers believe that products bearing the Heart-Check Mark are healthy and superior to products without such marks, the AHA markets this mark to food manufacturers as part of a profitable venture.  Manufacturers see increased sales though use of the mark, and the AHA receives substantial annual payments from the manufacturers for use of the mark.  ¶ 57.

21 C.F.R. § 1.21 requires food products to reveal material facts and 21 U.S.C. §§ 343(a) and (d) preclude misleading food products and containers.  In furtherance of the goal of these laws, in 1993, the FDA issued the *Final Rule: Food Labeling; General Requirements for Health Claims for Food*, 58 Fed. Reg. 2478, 2485 (Jan. 6, 1993) (available at 1993 WL 1547), which provides:

> [T]he agency recognizes that endorsements made for compensation by private organizations or individuals may be misleading to consumers. The agency is advising that when such endorsements are made, ***a statement should be included in close proximity to the claim, informing consumers that the organization or individual was compensated for the endorsement***. Failure to divulge this information on a label that bears a paid endorsement would cause the product to be misbranded under sections 403(a) and 201(n) of the act for failure to reveal a fact that is material.

(Emphasis added).  Despite the foregoing, Defendant's products containing the AHA Heart-Check Mark do not disclose that this is a paid endorsement and are therefore illegally misbranded. Defendant, however, makes the factual argument that products bearing this mark are not subject to the disclosure requirements because the mark is not paid endorsements.  Rather, Defendant insists that all monies paid to AHA by food product manufacturers are simply "fee[s]" relating to the

1    AHA certification process.  Notably, Defendant does not assert that these "fees" only cover the

2    AHA's actual costs or that the AHA does not profit from this certification process.   Nor could

3    Defendant have personal knowledge regarding the AHA's costs and revenues.

4           Defendant makes the factual assertions that the AHA applies objective evaluations of

5    products; only permits use of the Heart-Check Mark when a product passes the certification

6    process; and food manufacturers must pay the "fee" regardless of whether a product is ultimately

7    certified. Therefore, Defendant argues the Heart-Check Mark should not be considered a paid

8    endorsement.  Such assertions (even if they were true) necessarily raises questions of fact

9    regarding how rigorous this endorsement process is, and how many products actually "fail" this

10   process.  Notably, Defendant concedes that after "passing," the Heart-Check Mark may only be

11   used on a product for only one year.  Thereafter, food manufacturers must pay annual fees to

12   continue use of the mark, even though the product at issue has already been certified.  Such

13   subsequent annual payments would not be the cost of the prior certification process.

14          This argument, at most, only raises questions of fact regarding the nature of the AHA

15   certification process that cannot be decided on a motion to dismiss.  Nor can Defendant ask the

16   Court to accept the truth of the contents of the AHA materials attached as Ex. 28,[19] which would

17   be necessary for the Court to dismiss claims relating to the Heart-Check Mark at the pleadings

18   stage. *Deligiannis v. Winterscheid*, 2011 WL 2471272, at *5 (C.D. Cal. 2011).

19          Regardless, Defendant can point to no FDA regulation or guidance that distinguishes

20   certification fees from paid endorsements.  For this reason, Defendant makes the incredible

21   assertion that the "FDA has explained that it has no jurisdiction over claims of type at issue here"

22   (*i.e.* paid endorsements on food products from organizations such as the AHA).  Def. Mem. at 17.

23   In support of this assertion, Defendant cites the same FDA final rule discussed above relating to

24   misleading third-party paid endorsements on food products.  *See* 58 Fed. Reg. 2478.  In actuality,

25   this FDA final rule makes clear that that endorsements from the AHA fall squarely within the

26   FDA's jurisdiction.  Indeed, it explicitly discusses endorsements by the AHA:

27

28   [19]      *See* Plaintiffs' Objections to Defendant's Request for Judicial Notice at 2.  Ex. 28 consists
     of multiple documents from the AHA website.  Other than the brochure on the last two pages of
     the exhibit, none of these documents are referenced in the Amended Complaint.

1
2
3
4

[A] third party endorsement would constitute an implied health claim if the endorsement references a particular food or substance, and the name of the endorsing organization references a particular disease (*e.g., American Heart Association*). In such an endorsement, both basic elements would be present. As a result, a link would be created between the food/substance and the specific disease that could be reasonably understood by consumers as asserting that the product is useful in reducing the risk of developing that disease.

5      58 Fed. Reg. at 2485 (emphasis added).  Defendant then goes on to argue (without authority) that

6      regulation of third-party endorsements on food products instead falls under the jurisdiction of the

7      Federal Trade Commission.  This assertion, of course, is without merit.  For all these reasons,

8      Plaintiffs have adequately alleged a violation of the FDA's paid endorsement requirements.

9             **F.      Thomas' Bagel Thins Cannot Be Labeled as an "Excellent Source of Fiber"**

10             In violation of 21 C.F.R. § 101.54(b), Defendant labeled Thomas' Bagel Thins as an

11     "Excellent Source of Fiber," despite the fact that they contain less than 20 percent of the RDI or

12     DRV per reference amount customarily consumed.  ¶¶ 76-79.  Defendant concedes that labels of

13     Thomas' Plain Bagel Thins state that they contain only 16% of the RDI of dietary fiber, and admits

14     that certain packages of Thomas' Plain Bagel Thins state that they were an "excellent source of

15     fiber."[20] Def. Mem. at 18.  These admissions, alone, demonstrate that a violation of the FDCA and

16     Sherman Law has occurred and that this claim should not be dismissed.

17             Defendant, nevertheless, suggests that this is not in violation of the FDCA or the Sherman

18     Law because the "Excellent Source of Fiber" claim was merely a "typographical error."  Def.

19     Mem. at 18.  This factual assertion (even if true) is of no moment because intent is not required for

20     a violation of the FDCA or the Sherman Law.[21] *See* 21 U.S.C. § 333(a); Cal. Health & Safety Code

21
22

[20]     To the extent Defendant argues that certain other packages of Thomas' Bagel Thins may not have contained an "excellent source of fiber" claim, this only raises questions of fact.

23
24
25
26
27
28

[21]     Defendant also argues that this violation is not "material" by making irrelevant mathematic assertions.  To be called an "excellent source of fiber," Thomas' Plain Bagel Thins must have at least 20% of the DRV or RDI of fiber "*per reference amount customarily consumed.*" *See* 21 C.F.R. § 101.54(b) (emphasis added).  Consumers customarily do not consume more than one bagel, which is 46 grams, the amount by which the RDI was calculated.  Nevertheless, Defendant argues that if one calculates the amount of fiber that would be in 55 grams of Thomas' Plain Bagel Thins (approximately 1.2 bagel thins), one would get 19.1% of the RDI, which is still below the 20% minimum threshold, but an amount that Defendant asserts is not materially below the threshold.  Regardless, materiality is a question of fact.  *See In re Steroid Hormone Product Cases*, 181 Cal.App.4th 145, 157 (Cal. App. 2 Dist. 2010) (the legality of a product would be material to a reasonable consumer.)  Moreover, cases cited by Defendant are readily distinguishable.  *Brod v. Sioux Honey Ass'n, Co-op.*, 2013 WL 752479, at *9 (N.D. Cal. 2013) involved a food label that, in

1   §§ 111825(a).  Even if this was a "typographical error," it would still constitute a violation of the

2   Sherman Law and FDCA and this product would still be illegally misbranded and worthless.[22]

3   Therefore, Defendant has essentially admitted its liability under the Sherman Law and FDCA.

4          Because all of these products violate the FDCA and FDA regulations, they necessarily

5   violate the Sherman Act and constitute predicate acts under the UCL, FAL, and CLRA.

6   **III.    PLAINTIFFS' UNJUST ENRICHMENT CLAIM SHOULD BE SUSTAINED**

7          Defendant's motion to dismiss the unjust enrichment claim should be denied.  Despite

8   Defendant's suggestion to the contrary, California courts have allowed claims for unjust

9   enrichment.  *See First Nationwide Savings v. Perry*, 11 Cal. App. 4th 1657, 1669 (Cal. App. 6

10  Dist. 1992).  Indeed, a number of recent decisions have permitted unjust enrichment claims

11  relating to misbranded food products.  *See Kosta*, 2013 WL 2147413, at *14; *ConAgra*, 912 F.

12  Supp. 2d at 904; *Hershey*, 2012 WL 5471153, at *9; *Ben & Jerry's*, 2011 WL 2111796, at *11.

13         Defendant makes no argument as to why the Court should rule any differently.  Defendant

14  does, however, correctly recognize that other courts have dismissed similar claims.  Because of

15  these contrary decisions, Defendant implies that Plaintiffs have somehow run afoul of Rule 11 and

16  that Plaintiffs and their counsel may face "Rule 11 implications."  Def. Mem. at 22.  Attached to

17  Defendant's motion papers is an April 5, 2013 letter sent to Plaintiffs' counsel that contains

18  similarly threatening language.  *See* Ex. 24 ("[I]f Bimbo Bakeries is forced to file a motion to

19  dismiss, we will seek sanctions for having to do so.").  Given the multiple decisions from this

20  District Court permitting unjust enrichment claims relating to misbranded foods, it cannot be

21  reasonably asserted that this claim is not "warranted by existing law or by a nonfrivolous argument

22  for extending, modifying, or reversing existing law or for establishing new law."  Fed. R. Civ. P.

23  11(b)(2).  Threatening to seek Rule 11 sanctions as a litigation tactic against parties asserting

24  nonfrivolous claims, however, may be improper.  *See* Advisory Committee Notes to 1993

25  Amendments ("Nor should Rule 11 motions be prepared to . . . intimidate an adversary into

26

27  no way, violated federal or state law.

28  [22]    This product also violates 21 U.S.C. § 343(r) and Cal. Health & Safety Code § 110670, which prohibits the characterization of levels of nutrients except as provided in the FDCA.

withdrawing contentions that are fairly debatable . . . .").

## IV. PLAINTIFFS HAVE STANDING TO ASSERT CLAIMS ON BEHALF OF THE CLASS RELATING TO SUBSTANTIALLY SIMILAR PRODUCTS

Plaintiffs assert claims on behalf of the Class with respect to products that were not purchased by Plaintiffs, but were illegally misbranded for the exact same reasons as the purchased products.  ¶¶ 172-220.  The misbranding of these substantially similar products was part of the same over-arching scheme to deceive and defraud consumers with false, misleading, and deceptive food labels.  ¶¶ 174-78.  Purchasers of these products have been injured in the exact same manner as purchasers of the products purchased by Plaintiffs.  ¶¶ 177-78.  For these reasons, purchasers of these substantially similar products should be permitted to join the class and seek redress for the same harm, caused by the same defendant, in the same manner, as part of the same scheme.

Plaintiff does have standing to bring these claims.  "'The majority of the courts that have carefully analyzed the question hold that a plaintiff may have standing to assert claims for unnamed class members based on products he or she did not purchase so long as the products and alleged misrepresentations are substantially similar.'" *Lanovaz v. Twinings North America, Inc.*, 2013 WL 2285221, at *1 (N.D. Cal. 2013) (quoting *Miller v. Ghirardelli Chocolate Co.*, 2012 WL 6096593, at *6–7 (N.D. Cal. 2012)).  Several recent decisions have permitted claims relating to substantially similar misbranded food products.  *See Lanovaz*, 2013 WL 2285221, at *3; *R.C. Bigelow*, 2013 WL 2403579, at *4; *Ivie*, 2013 WL 3296616, at *9; *Astiana v. Dreyer's Grand Ice Cream, Inc.*, 2012 WL 2990766, at *13 (N.D. Cal. 2012).  *See also*, *Koh v. S.C. Johnson & Son, Inc.*, 2010 WL 94265, at *3 (N.D. Cal. 2010).

With respect to the substantially similar Entenmanns' brand products (*see* ¶ 208), each contains the exact same label in which the large print word "FRESH" appears between the words "BAKED" on top and "DAILY" on bottom, each of which is in a smaller font.  *See* Ex. 23; ¶¶ 197-98, 208-10.  In general, claims relating to non-purchased products with identical labels should be permitted.  *See Lanovaz*, 2013 WL 2285221, at *3.

Similarly, each of the non-purchased products listed in Amended Complaint ¶ 219 contain the same AHA Heart-Check Mark as Thomas' Plain Bagel Thins.  Therefore, claims relating to

1    those products are also appropriate.  Indeed, in *Koh*, the court permitted claims relating to non-

2    purchased products that, like purchased products, contained the "Greenlist label" that was alleged

3    to have been designed to look like a third party seal of approval.  2010 WL 94265, at *3.

4         Moreover, the label of the non-purchased product Sara Lee Soft & Smooth 100% Whole

5    Wheat Bread also states that it is an "Excellent Source of Whole Grain." ¶ 186.   This product and

6    its misbranding are virtually the same as Sara Lee Soft & Smooth Whole Wheat White Bread, Sara

7    Lee Classic 100% Whole Wheat Bread, and Sara Lee 100% Whole Wheat Bread.  ¶¶ 180-87.

8    Therefore, claims relating to this substantially similar product should be permitted.

9         Further, all non-purchased products listed in Paragraph 195 of the Amended Complaint are

10   illegally labeled as "100% Whole Wheat," just like Sara Lee Classic 100% Whole Wheat Bread

11   and Sara Lee 100% Whole Wheat Bread.  ¶¶ 193-96.  The fact that these products are sold under

12   brand names is of no moment. *See Astiana*, 2012 WL 2990766, at *13 (permitting claims for ice

13   cream products with different brand names that are all labeled "All Natural").  "That the different

14   ice creams may ultimately have different ingredients is not dispositive as Plaintiffs challenging

15   the same basic mislabeling practice across different product flavors." *Id.*

16        Finally, to the extent there are questions as to whether any of these non-purchased products

17   are, in fact, substantially similar to purchased products, such questions of fact should not be

18   determined on a motion to dismiss.  *Id.*

19   **V.    PLAINTIFFS' CLAIMS ARE NOT PREEMPTED**

20        The courts within the Ninth Circuit have repeatedly made clear that, where requirements of

21   the Sherman Law are identical to those of the FDCA, claims relating to violations of such Sherman

22   Law requirements are not preempted.  *See, e.g., Kosta*, 2013 WL 2147413, at *7-8 (listing

23   numerous decisions rejecting preemption arguments in food misbranding cases); *Larsen v. Trader*

24   *Joe's Co.*, 2013 WL 132442, at *3 (N.D. Cal. 2013) ("the FDCA and California law contain

25   identical prohibitions on false or misleading labeling"); *ConAgra*, 912 F. Supp. 2d at 897-98 (no

26   preemption); *Hershey*, 2012 WL 5471153, at *5-6 (same). Here, as discussed above, all claims are

27   premised on acts that violate both the Sherman Law and the FDCA.  *See section III, supra.*

28   Therefore, none of Plaintiffs' claims are preempted.  Defendant, however, asserts that the

1  Amended Complaint does not allege any violations of the FDCA, and therefore, any claim based

2  on an alleged violation of state law is preempted.  For all the reasons discussed above, Plaintiffs

3  have alleged numerous violations of the FDCA and this argument is without merit.

4  **VI.     NOTICE UNDER THE CLRA IS SUFFICIENT**

5          The notice requirements of Cal. Civ. Code § 1782 have been satisfied.  Not only did the

6  letter sent to Defendant provide sufficient notice, but it incorporated by reference the contents of

7  the original complaint (receipt of which had been acknowledged) that describes the CLRA

8  violations in great detail.  Between the letter and the original complaint, Defendants were given

9  more than sufficient notice.  *See In re Apple In-App Purchase Litig.*, 855 F. Supp. 2d 1030 (N.D.

10  Cal. 2012) ("When the demand letter was sent, Defendant was on notice that it was being sued by

11  a putative class, and thus the notice was sufficient 'to facilitate pre-complaint settlement,' which is

12  the purpose of the CLRA notice requirements.").  Indeed, the level of detail required under Section

13  1782 is minimal.  *Stickrath v. Globalstar, Inc.*, 527 F. Supp. 2d 992, 1001–02 (N.D .Cal. 2007); *In

14  re Toyota Motor Corp.*, 754 F. Supp. 2d 1145, 1175 (C.D. Cal. 2010). Further, "[t]he CLRA's

15  notice requirement is not jurisdictional" *Wehlage v. EmpRes Healthcare Inc.*, 2012 WL 380364, at

16  *7 (N.D. Cal. 2012).  Nevertheless, should the Court determine that notice was insufficient,

17  Plaintiffs respectfully request leave to re-notice and replead.  *Id* at *8.

18                                              **CONCLUSION**

19          For all the aforementioned reasons, Plaintiffs respectfully request that the Court: (1) deny

20  Defendant's motion in its entirety; (2) deny Defendant's request for judicial notice to the extent

21  objected to in Plaintiffs' accompanying opposition to that request; and (3) grant such other and

22  further relief as the Court deems just and proper.

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

1   Dated:    July 19, 2013                                 Respectfully submitted,

2

3

4                                                           /s/ Pierce Gore_____
                                                            Ben F. Pierce Gore (SBN 128515)
                                                            PRATT & ASSOCIATES
5                                                           1871 The Alameda, Suite 425
                                                            San Jose, CA  95126
6                                                           Telephone:  (408) 429-6506
                                                            Fax:  (408) 369-0752
7                                                           pgore@prattattorneys.com

8                                                           Keith M. Fleischman (*pro hac vice*)
                                                            Bradley F. Silverman (*pro hac vice*)
9                                                           THE FLEISCHMAN LAW FIRM, PLLC
                                                            565 Fifth Avenue, Seventh Floor
10                                                          New York, New York 10017
                                                            Telephone: (212) 880-9571
11                                                          Fax:  (917) 591-5245
                                                            keith@fleischmanlawfirm.com
12                                                          bsilverman@fleischmanlawfirm.com

13                                                          *Attorneys for Plaintiffs*

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28