Mark C. Goodman (Bar No. 154692)
Ethan A. Miller (Bar No. 155965)
HOGAN LOVELLS US LLP
3 Embarcadero Center, Suite 1500
San Francisco, California 94111
Telephone: (415) 374-2300
Facsimile: (415) 374-2499
mark.goodman@hoganlovells.com
ethan.miller@hoganlovells.com

Attorneys for Defendant
BIMBO BAKERIES USA, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ALEX ANG and LYNN STREIT, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>BIMBO BAKERIES USA, INC.,<br><br>Defendant. | Case No. 13 Civ. 1196 (WHO)<br><br>**REPLY IN SUPPORT OF MOTION TO DISMISS AMENDED COMPLAINT**<br><br>Hearing: August 28, 2013<br><br>Time: 2:00 p.m.<br><br>The Hon. William H. Orrick |

# **TABLE OF CONTENTS**

Page

I. INTRODUCTION ............................................................................................................1

II. DISCUSSION ..................................................................................................................2

    A. Plaintiffs Fail To Meet Their Basic Pleading Obligations ....................................2

        1. Plaintiffs' Claims are Subject to Rule 9(b) ................................................2

        2. Plaintiffs Fail to Meet the Rule 9(b) Standard ...........................................3

        3. Plaintiffs Fail to Plead Reasonable Reliance .............................................5

    B. Plaintiffs Fail To Adequately Plead Claims As To Each Product At Issue .............6

        1. The AHA's Heart Check Mark is not a Paid Endorsement ........................6

        2. Whole Grains are not Subject to Nutrient Claim Restrictions ....................8

        3. Plaintiffs' "Fresh" Claim Fails ..................................................................10

        4. Plaintiffs' "Excellent Source of Fiber" Claims Fail..................................11

        5. Toasted Bread does not Violate any Regulations .....................................11

        6. Plaintiffs' Soy Flour Claims Fail ..............................................................12

    C. Plaintiffs Do Not Have Standing As To Products They Never Purchased ............13

    D. Plaintiffs' CLRA Claims Must Be Dismissed ......................................................13

    E. Plaintiffs' Claims Remain Preempted..................................................................144

    F. Plaintiffs' Unjust Enrichment Claims Should Be Dismissed...............................14

III. CONCLUSION...............................................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Ackerman v. Coca-Cola Co.*,
    2010 WL 2925955 (E.D.N.Y. July 21, 2010) .......................................................................... 10

*Allen v. Simalson Corp.*,
    2013 WL 2120825 (S.D. Cal. May 14, 2013) .......................................................................... 4

*Arroyo v. Pfizer, Inc.*,
    2013 WL 415607 (N.D. Cal. 2013) ........................................................................................ 12

*Astiana v. Ben and Jerry's Homemade, Inc.*,
    2011 WL 2111796 (N.D. Cal. May 26, 2011) .................................................................. 3, 14

*Barocio v. Bank of Am.*,
    2012 WL 3945535 (N.D. Cal. Sept.10, 2012) ....................................................................... 14

*Brazil v. Dole Food Co., Inc.*,
    2013 WL 1209955 (N.D. Cal. Mar. 25, 2013) ...................................................................... 14

*Ecological Rights Foundation v. Pacific Gas and Elec. Co.*,
    713 F.3d 502 (9th Cir. 2013) .................................................................................................. 7

*Edmonson v. Proctor and Gamble Co.*,
    2011 WL 1897625 (S.D. Cal. May 17, 2011) ......................................................................... 4

*Freeman v. Time, Inc.*,
    68 F.3d 285 (9th Cir. 1995) .................................................................................................... 5

*In re Apple & AT & T iPad Unlimited Data Plan Litig.*,
    802 F.Supp.2d 1070 (N.D. Cal. 2011) .................................................................................. 13

*In re Silicon Graphics Secs. Litig.*,
    183 F.3d 970 (9th Cir. 1999) .................................................................................................. 7

*Ivie v. Kraft*,
    2013 WL 685372 (N.D. Cal. Feb. 25, 2013) ......................................................................... 13

*Janney v. General Mills*,
    2013 WL 1962360 (N.D. Cal May 10, 2013) ................................................................. 2, 3, 5

*Jones v. ConAgra Foods, Inc.*,
    912 F.Supp.2d 889 (N.D. Cal. 2012) ...................................................................................... 4

*Kearns v. Ford Motor Co.*,
    567 F.3d 1120 (9th Cir. 2009) ............................................................................................ 4, 5

*Khasin v. Hershey Co.*,
 2012 WL 5471153 (N.D. Cal. Nov. 9, 2012) ............................................................. 3, 14

*Kosta v. Del Monte Corp.*,
 2013 WL 2147413 (N.D. Cal. May 15, 2013) ........................................................... 3, 14

*Morrison v. TriVita, Inc.*,
 2013 WL 1148070 (S.D. Cal. Mar. 19, 2013) ................................................................. 3

*Pirozzi v. Apple, Inc.*,
 2012 WL 6652453 (N.D. Cal. Dec. 20, 2012) ................................................................. 3

*Pom Wonderful v. The Coca-Cola Co.*,
 679 F.3d 1170 (9th Cir. 2012) ....................................................................................... 14

*Ries v. Hornell Brewing Co.*,
 2011 WL 1299286 (N.D. Cal. April 4, 2011) .................................................................. 5

*Rooney v. Cumberland Packing Corp.*,
 2012 WL 1512106 (S.D. Cal. 2012) .............................................................................. 12

*Ross v. Sioux Honey Assoc. Co-Op*,
 2013 WL 146367 (N.D. Cal. Jan. 14, 2013) .................................................................. 12

*Vess v. Ciba-Geigy Corp. USA*,
 317 F.3d 1097 (9th Cir. 2003) ......................................................................................... 3

*Williams v. Gerber Products Co.*,
 552 F.3d 934 (9th Cir. 2008) ................................................................................ 5, 6, 11

*Yumul v. Smart Balance, Inc.*,
 733 F.Supp.2d 1117 (C.D. Cal. 2010) ................................................................. 4, 5, 6, 14

**STATUTES**

21 U.S.C. § 343(g) ................................................................................................................ 12

Cal. Civil Code § 1782(a) ..................................................................................................... 13

**RULES**

21 C.F.R. § 101.12 .................................................................................................................... 9

21 C.F.R. § 101.54(c) ................................................................................................................ 9

21 C.F.R. § 101.65 .................................................................................................................... 9

21 C.F.R. § 101.95(a) .............................................................................................................. 10

Rule 8 ......................................................................................................................................... 5

Rule 9(b) .......................................................................................................................... 2, 3, 4, 5

## I. INTRODUCTION

In opposing BBUSA's motion to dismiss, plaintiffs duck the central issues, refusing to explain exactly what the labels at issue actually say and how those statements (1) misled plaintiffs and (2) caused them damages. Indeed, in 25 pages of opposition, plaintiffs repeat at length the allegations of the First Amended Complaint ("FAC") and their interpretation of the law set forth in that pleading, but their failure to actually identify the specific labels that they ostensibly relied on when they purchased specific products dooms the FAC. The FAC is devoid of any information that would allow BBUSA or the trier of fact to understand which specific products plaintiffs purchased and what labels and advertising they actually viewed, if they viewed any at all, and it is dispositive on this motion that every label for each product was not identical (which the Court may easily ascertain by simply reviewing the labels now before it). Quite simply, by not specifying where and when they purchased the allegedly illegal products, what exactly they purchased or what (if any) advertisements they viewed, plaintiffs fail to meet the most basic pleading requirements.

This failure is perhaps best highlighted by the plaintiffs themselves when they claim compliance with the "What" of the "Who, What, When, Where and How" pleading requirement by simply asserting in their opposition that "the 'What' is Defendant's . . . labeling." (Opp. at 11.) This ambiguous reference, following on the heels of their failure to put any labels before the Court through the FAC, illustrates the problem here: Even now, after BBUSA has moved to dismiss the FAC because of its vagueness, plaintiffs still do not specify *what* each specific label says. Plaintiffs all but concede their failure to place BBUSA on notice of the actual labels at issue when, in their Objections to BBUSA's Request for Judicial Notice, plaintiffs assert that "it is entirely unclear if [the labels attached] accurately reflect the . . . labels at issue in this action." (Objections at 1.) This is precisely BBUSA's point: If this case involved one product and one label -- instead of 100 or more variants that plaintiffs have tried to put at issue -- this may not be a problem but, having elected to cast an incredibly wide net, due process requires plaintiffs to actually identify each of the differently labeled products that they challenge.

Plaintiffs' refusal to tackle BBUSA's arguments on other issues is equally telling. For

1  example, instead of explaining how the FAC satisfies the requirements of Rule 9(b), which
2  governs their fraud allegations, plaintiffs argue that the FAC, which is replete with express fraud
3  allegations, actually does not allege fraud.  Plaintiffs make this argument despite, among other
4  things, labeling one of their UCL claims "Fraudulent Business Acts and Practices."  (FAC at 35.)
5  And instead of responding to the fact that the American Heart Association ("AHA") check mark
6  is not a paid endorsement, plaintiffs simply repeat their unsupported allegation that the heart
7  check mark is a paid endorsement and add that they know this because, once the mark is
8  approved, it can be renewed indefinitely by paying an annual fee.  This "argument" ignores the
9  fact that (1) a product still needs to meet the criteria set by the AHA to qualify for the mark and
10 (2) the AHA annually re-assesses every product receiving the mark to ensure that they continue to
11 meet those criteria.  Plaintiffs then completely ignore the fact that Sara Lee label statements
12 regarding whole grains are not nutrient claims because the regulations dictate that whole grains
13 are ingredients, not nutrients, and are not subject to nutrient regulations.  Plaintiffs instead simply
14 re-assert their allegation that the Sara Lee labels fail to meet nutrient regulations that do not apply
15 to them.

16     In sum, plaintiffs have failed (twice now) to meet the basic pleading requirements of the
17 federal rules and the substantive regulations upon which they base their claims.  Those failings
18 require dismissal of the FAC.

19 **II.    DISCUSSION**
20     **A.    Plaintiffs Fail To Meet Their Basic Pleading Obligations**
21         **1.    Plaintiffs' Claims are Subject to Rule 9(b)**
22     In plaintiffs' view, because the UCL permits three different types of claims (for
23 "unlawful, unfair or fraudulent business act[s]"), simply stating that their UCL claims are for
24 "Unlawful business acts and practice" (as opposed to unfair or fraudulent acts) exempts those
25 claims from Rule 9(b).  Plaintiffs' argument ignores the language of their pleading and their
26 entire theory of this case.
27     "Regardless of whether fraud is a necessary element of a claim, where a plaintiff alleges a
28 uniform fraudulent course of conduct, and relies on that course of conduct as the basis for the

claims, the complaint must meet the requirements of Rule 9(b)." *Janney v. General Mills*, 2013 WL 1962360, at *9 (N.D. Cal May 10, 2013) (citing *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103 (9th Cir. 2003). In *Janney*, the plaintiff argued that, because its UCL food mislabeling claims did not include fraud as an element, its claims were not subject to Rule 9(b). *Id.* The *Janney* court recounted how the complaint alleged that the defendant falsely represented the contents of the products through mislabeling, that the labels were "deceptive," and that the defendant "intentionally misrepresented its products for financial gain." *Id.* at *10. In light of these allegations, the court found "[w]hen claims under the CLRA, UCL, and FAL are based on a manufacturer's alleged misrepresentations about a product's characteristics, those claims sound in fraud and Rule 9(b) applies." *Id.* (citing *Morrison v. TriVita, Inc.*, 2013 WL 1148070, at *5 (S.D. Cal. Mar. 19, 2013); *Pirozzi v. Apple, Inc.*, 2012 WL 6652453, at *6 (N.D. Cal. Dec. 20, 2012)).

The pleading before this Court, which repeatedly alleges that BBUSA intentionally falsified its labels to drive sales (*see, e.g.*, FAC at ¶¶ 3, 5, 17, 85, 91, 119, 130, 166, 184) and that the labels were deceptive (*see, e.g.*, FAC at ¶¶ 6, 12, 15, 54, 210), is no different than the complaint in *Janney*. Plaintiffs specifically allege that BBUSA intentionally deceived consumers to drive more profit: "Defendant is also aware that consumers desire certain attributes in the foods they purchase and thus falsely labels its products to appeal to these preferences" (FAC at ¶ 3) and "Defendants' labeling as alleged herein is false and misleading and was designed to increase sales of the products at issue" (FAC at ¶ 166). Most telling is the fact that plaintiffs titled their third cause of action "Fraudulent Business Acts and Practices." Finally, plaintiffs' opposition asserts that "[t]he misbranding of these substantially similar products was part of the same over-arching scheme to deceive and defraud consumers with false, misleading, and deceptive food labels." (Opp. at 23.) Fraud allegations pervade the FAC and plaintiffs were required to plead their claims pursuant to Rule 9(b).

### 2. Plaintiffs Fail to Meet the Rule 9(b) Standard

Relying on *Kosta v. Del Monte Corp.*, 2013 WL 2147413 (N.D. Cal. May 15, 2013), *Khasin v. Hershey Co.*, 2012 WL 5471153 (N.D. Cal. Nov. 9, 2012), and *Astiana v. Ben and Jerry's Homemade, Inc.*, 2011 WL 2111796 (N.D. Cal. May 26, 2011), plaintiffs assert that they

satisfy the "when" and "where" prongs of the Rule 9(b) test by simply asserting that the offending statements were found on "Defendant's package labels" "since March 18, 2008 and through the defined Class Period." (Opp. at 10-11.) In the Ninth Circuit, "[a] party alleging fraud must 'set forth *more* than the neutral facts necessary to identify the transaction.'" *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (citation omitted). Rule 9(b) is supposed "to provide defendants with adequate notice to allow them to defend the charge and deter plaintiffs from the filing of complaints 'as a pretext for the discovery of unknown wrongs.'" *Id.* at 1125. Applying this standard, courts have held in mislabeling cases that Rule 9(b) is not met where a complaint fails to allege (1) when the plaintiff saw the misrepresentation, (2) the dates on which purchases were made, and (3) the geographic location of the purchases. *See, e.g.*, *Allen v. Simalson Corp.*, 2013 WL 2120825, at *7 (S.D. Cal. May 14, 2013); *Jones v. ConAgra Foods, Inc.*, 912 F.Supp.2d 889, 902-03 (N.D. Cal. 2012); *Edmonson v. Proctor and Gamble Co.*, 2011 WL 1897625, at * 4-5 (S.D. Cal. May 17, 2011); *Yumul v. Smart Balance, Inc.*, 733 F.Supp.2d 1117, 1124 (C.D. Cal. 2010).[1]

The claims here must be dismissed for the same reasons. The FAC does not identify where or when products were purchased (or what exact products were purchased) and, therefore, cannot allege *what* actual labels are at issue. Indeed, plaintiffs admit they do not know what labels they have placed at issue. (*See* BBUSA's Response to Objections to RJN at 1-2.) Without this information, one is left to guess as to which labels are at issue in this case and what they say. For example, the FAC alleges that plaintiffs purchased "Thomas' Plain Bagel Thins" with labels that violate the law. (*See* FAC at ¶ 4.) However, that product comes in different quantities with different labels. These differences are highlighted by the variety of labels for "Thomas' Plain Bagel Thins" provided in Exhibits 13 through 20 to BBUSA's Request for Judicial Notice

---

[1] The necessity for such specific allegations is obvious where, as here, the packaging used for the products subject to the litigation is not uniform. Under such circumstances, simply alleging that the offending statements were found on "Defendant's package labels" "since March 18, 2008 and through the defined Class Period" does not specify which packages and statements plaintiffs claim are illegal. *Yumul* dismissed a complaint that did not specify where in California the products were purchased and failed the "when" prong by not alleging that the packaging did not change over a ten year period. 733 F.Supp.2d at 1124. Similarly, in *ConAgra*, this Court held that the complaint did not provide notice of plaintiff's claims because it did not specify when and where the products were purchased. 912 F.Supp.2d at 902-03.

("RJN"), each of which includes different text (and the vast majority of which does not include the claim about which the plaintiffs complain). The Bagel Thins are but one example of the pleading deficiencies in the FAC, which does not place before the Court the content of any of the labels for the products on which plaintiffs are suing BBUSA. Because the FAC fails to identify the relevant packaging, it fails to allege "what" is at issue and, thus, fails to meet the requirements of Rule 9(b) (let alone the basic notice pleading requirements of Rule 8).

The extent of plaintiffs' pleading failure is revealed in their opposition where, in response to the argument that the FAC's allegations provide no notice of the packaging at issue, plaintiffs state "[t]o the extent Defendant argues that certain other packages of Thomas' Bagel Thins may not have contained an 'excellent source of fiber' claim, this only raises questions of fact." (Opp. at 21, n. 20). Which packages and statements are at issue in a mislabeling case is **not** an issue of fact; it is a ***fundamental element of plaintiffs' pleading burden***. *See Kearns*, 567 F.3d at 1124. To hold otherwise would permit a plaintiff to engage in what the Ninth Circuit calls a "pretext for the discovery of unknown wrongs" prohibited by Rule 9(b). *Id.* at 1125. Courts in this district have dismissed mislabeling claims where plaintiffs have made far greater attempts to comply with basic pleading requirements than have the plaintiffs here. *See Janney*, 2013 WL 1962360 at *11 (attaching a "selection of labels" at issue does not satisfy Rule 9(b)); *Ries v. Hornell Brewing Co.*, 2011 WL 1299286, at *4 (N.D. Cal. April 4, 2011) (dismissing claims based upon labels not submitted to the court). Here, plaintiffs attach *no* labels to their complaint, forcing BBUSA to attach representative (but by no means all) labels to a motion to dismiss to illustrate the breadth of labels conceivably -- but certainly not definitively -- at issue.

### 3. Plaintiffs Fail to Plead Reasonable Reliance

As if more were needed for dismissal of this action, plaintiffs must allege a probability of deception with respect to "consumers acting reasonably in the circumstances, not just any consumers" and they have not done so. *Freeman v. Time, Inc.*, 68 F.3d 285, 289 (9th Cir. 1995) (internal quotation and citations omitted); *see also Yumul*, 733 F.Supp.2d at 1125. Plaintiffs rely heavily on *Williams v. Gerber Products Co.*, 552 F.3d 934 (9th Cir. 2008) to justify their failure to plead that a reasonable consumer is likely to be deceived by any of the packaging at issue. (Opp.

at 9.) While it is true that, generally speaking, "*Williams* stands for the proposition that where product packaging contains an affirmative misrepresentation, the manufacturer cannot rely on the small-print nutritional label to contradict and cure that misrepresentation" (*Yumul*, 733 F.Supp.2d at 1129), BBUSA does not contend that plaintiffs' claims fail simply because small print somewhere on the package reveals the truth. For example, the plausibility of plaintiffs' allegations that Entenmann's Soft'ees labels are illegal because they include the word "fresh" on the package (*see* FAC at ¶¶ 83-94) is undermined not just by the list of ingredients that expressly includes preservatives but by the fact that (1) the packaging plainly says on the front, right next to the word "fresh," that the product is "baked" (and, thus, it is a processed product and wholly different from a "fresh" fruit or vegetable) and (2) it has a highly visible "sell by" date that connotes that it is not intended to sit on a shelf for only one day. (*See* RJN Ex. 23.) Similarly, plaintiffs allege that packaging for Thomas' Plain Bagel Thins wrongly asserts that the product is an excellent source of fiber but -- to the extent the statement exists on any Bagel Thins packaging at all -- the statement "excellent source of fiber" is in the same panel as and in *smaller* font than a statement that they are a "good source" of fiber, a statement about which plaintiffs do not and cannot complain. (*See* RJN Exs. 19-20.) This is the *opposite* circumstance than that at issue in *Williams*.

### B.   Plaintiffs Fail To Adequately Plead Claims As To Each Product At Issue

#### 1.   The AHA's Heart Check Mark is not a Paid Endorsement

In pressing their position that the "heart check" mark on packaging is illegal, plaintiffs entirely ignore the evidence presented on the motion to dismiss and continue to assert, with no support whatsoever, their allegation that the only way to obtain the heart check mark is to "pay off" the AHA. Plaintiffs' assertion, which not only contradicts the documents that they relied on in drafting the FAC but ascribes negative motivations to a respected health organization, is not enough to support their claim even at this early stage.

Plaintiffs assert that the Court may not consider all of the documents in Exhibit 28 to the RJN because they are not directly cited in the FAC and, even if BBUSA were correct that the only payment made to the AHA is an administrative fee, factual questions have been raised. Not

so. First, the Court is not limited to considering only documents directly cited in a complaint and may consider any matter "incorporated by reference," which includes not only the documents cited but those that "form[ ] the basis of the plaintiff's claim." *Ecological Rights Foundation v. Pacific Gas and Elec. Co.*, 713 F.3d 502, 511 (9th Cir. 2013) (citations omitted); *see also In re Silicon Graphics Secs. Litig.*, 183 F.3d 970, 986 (9th Cir. 1999), *superseded by statute on other grounds*. Here, Exhibit 28 is simply the surrounding webpages that plaintiffs would have reviewed when they selected the few AHA statements that are referenced in the FAC. Accordingly, BBUSA has merely provided the Court with the entire "document" relied on by plaintiffs in their heart check mark claims. Second, as set forth in the RJN, the Court may also take judicial notice of the contents of a reputable website such as that maintained by the AHA.

Third, other than trying to create this procedural smokescreen, plaintiffs completely ignore and do not address the merits. For example, plaintiffs assert that, even if it is true that BBUSA only paid a pre-assessment fee to the AHA, it is still necessary to know "how rigorous this endorsement process is, and how many products actually 'fail' this process." (Opp. at 20.) But the AHA's website, on which plaintiffs' relied in crafting their allegations, makes clear that a fee is paid only ***before*** any analysis of the product is undertaken, with no guarantee of receiving approval. (RJN Ex. 28.) A payment with no guarantee cannot be a paid endorsement and, because there is no guarantee of certification in exchange for payment, plaintiffs' asserted "factual issues" are irrelevant to their claim. Plaintiffs also ignore the crucial fact that no product can be certified by the AHA unless it meets the AHA criteria. Indeed, plaintiffs argue that, because manufacturers must pay the certification fee every year, any subsequent payment must be a paid endorsement because the certification process does not recur every year. This attempt to invent an issue ignores the AHA documentation that makes clear that ***the certification lasts only one year and must be redone each year to maintain the heart check mark.*** (*Id*.)

Perhaps in recognition of their pleading failure, plaintiffs attempt to salvage their claims by arguing that "Defendant can point to no FDA regulation or guidance that distinguishes certification fees from paid endorsements." (Opp. at 20.) BBUSA has no such burden. The FAC alleges that BBUSA illegally failed to disclose a paid endorsement. (*See, e.g.*, FAC at ¶¶ 4, 58,

-7-

59, 61, 63, 65, 67, 212, 213, 214, 217, 219.)  There are no allegations that plaintiffs were misled due to the non-disclosure of a certification fee that did not guarantee receipt of the heart check mark and plaintiffs' opposition is not an occasion to further amend the FAC.

### 2. Whole Grains are not Subject to Nutrient Claim Restrictions

Entirely ignoring the fact that BBUSA moved to dismiss their "nutrient claims" because they expressly do not pertain to nutrients, plaintiffs simply re-allege that Sara Lee label statements regarding whole grains are illegal nutrient claims.  Plaintiffs' argument boils down to an assertion that although whole grains are not nutrients they should be regulated as nutrients, an argument that is not supported by either their own allegations or the statutory scheme on which plaintiffs rely.  In their opposition, plaintiffs cite "FDA 'plain English' guidance" and "implied nutrient" regulations.  (Opp. at 15-16.)  In their zeal to salvage these claims, plaintiffs apparently failed to read the material they cited because the "FDA 'plain English' guidance" expressly applies only to nutrients:  "Therefore, *nutrients* that do not have an established DV … may not make 'high' or 'good source' claims."  (Opp. at 15 (emphasis added).)  Plaintiffs cannot seek relief on a purported technical violation while at the same time deflecting attention away from the plain and obvious meaning of the legal standard cited in the FAC.  As explained in the motion to dismiss, whole grains are ingredients, not nutrients, and are, therefore, not subject to nutrient regulation.

Conceding that whole grains are not nutrients, plaintiffs try to re-characterize their claims as implied nutrient claims by reciting the definition of an implied nutrient claim as one that "[d]escribes the food or an ingredient therein in a manner that suggests that a *nutrient* is absent or present in a certain amount."  (Opp. at 16 (emphasis added).)  While FDA has recognized that certain ingredient claims *may* also be nutrient content claims if they implicitly characterize a nutrient level (which plaintiffs do not even allege in their pleadings), no such characterization or association has been accredited to whole grains and plaintiffs do not plead any facts that would support such a conclusion.

In determining whether claims about ingredients are implied nutrient content claims, FDA does not consider the statements in isolation but analyzes them in the context of the entire label.

*See Food Labeling: Nutrient Content Claims*, 58 Fed. Reg. 2302, 2372 (RJN Ex. 30.) When examined in the context in which they appear on the labels ostensibly before the Court, the three challenged ingredient claims would be appropriate under the regulatory framework even if plaintiffs *had* alleged that they are implied nutrient claims (which they did not) and even if there were some legal basis on which to make such allegations (and there is not):

- **Classic 100% Whole Wheat:** This product includes the statement "good source of whole grain," which appears in a banner below the product name. (RJN Exs. 5-8.) If this could constitute an implied nutrient content claim about fiber, it would comply with 21 C.F.R. § 101.65 if the product contains "10 to 19 percent of the RDI… per reference amount customarily consumed." 21 C.F.R. § 101.54(c). The Nutrition Facts panel shows that 28 grams of bread contains 8% of the RDI for dietary fiber. (RJN Exs. 5-8.) The "reference amount customarily consumed," which is the standard set forth in the nutrient content regulation, is 50 grams for bread products. 21 C.F.R. § 101.12. Because 8% of the fiber RDI for each 28 grams converts to 15% of the fiber RDI per 50 gram reference amount, the fiber level is within the 10%-19% range imposed by the nutrient content regulation to be called "good source." Thus, the challenged ingredient statement, even if it were deemed to be an implied nutrient content claim, would be appropriate.

- **Soft & Smooth Whole Grain White:** The "good source of whole grain" statement on this label is part of a three-part banner, flanked by the claims "good source of fiber" and "excellent source of calcium." (RJN Exs. 9-12.) Because the label expressly says that the product is a "good source" of fiber, it would be nonsensical to argue that the claim "good source of whole grain" also implies that the product is a "good source of fiber." Therefore, the challenged claim reasonably can be only read as an ingredient claim to which the regulations do not apply.[2]

---

[2] Even if the claim were deemed an implied nutrient content claim about fiber, it would be appropriate because the Nutrition Facts panel shows that the product contains 13% of the fiber RDI per two slices, which weigh 57 grams. (RJN Exs. 9-12.) Given the 50 grams reference amount, the product contains 11.5% of the fiber RDI, within the "good source" range.

-9-
REPLY IN SUPPORT OF MOTION TO DISMISS AMENDED COMPLAINT
CASE NO. 13 Civ. 1196 (WHO)

- **100% Whole Wheat:** The alleged "excellent source of whole grain" statement on this product also appears in a three-part banner, flanked by "good source of fiber" and "excellent source of calcium." (Exs. A-D.) Accordingly, it would be illogical to conclude that the "excellent source of whole grain" claim is an implied nutrient claim implying an "excellent source of fiber" when that statement would be inconsistent with the express claim on the label that it is a "good source of fiber." Thus, this claim can be understood only as an ingredient claim.

Plaintiffs' allegations fail because they cannot turn whole grains into nutrients when they are clearly ingredients under the law. Plaintiffs' only attempt to address this failure is a citation to FDA draft guidance. (Opp. at 15, n.13.) Of course, ***draft guidance*** is not regulation. Nonetheless, plaintiffs cite a footnote from *Ackerman v. Coca-Cola Co.*, 2010 WL 2925955, at *3 n. 7 (E.D.N.Y. July 21, 2010) to assert that, "on a motion to dismiss, the FDA's pronouncements may still be relevant to the viability of claims." *Ackerman* supports no such assertion.[3]

### 3. Plaintiffs' "Fresh" Claim Fails

Instead of addressing the regulations BBUSA cites, plaintiffs assert that: (1) the word "fresh" is not modified on the label; (2) a reasonable consumer might be misled notwithstanding the regulations; (3) if the term "fresh" were combined with "baked" and "daily" it would raise questions of fact; and (4) FDA would have authority to "take action on a case-by-case basis" against false or misleading labeling.[4] None of these arguments negates the reality that the regulation on which plaintiffs rely, 21 C.F.R. § 101.95(a), applies only when the term "fresh" is "used on the label or in labeling of a food in a manner that suggests or implies that the food is unprocessed." Nor can there be any controversy as to whether a reasonable consumer would

---

[3] In the footnote plaintiffs cite, *Ackerman* discussed whether the Vitaminwater at issue was food or a dietary supplement. The relevance of the discussion is disclaimed by the court since "neither party asserts that this distinction is significant to the present suit." (2010 WL 2925955, at *3 n.7.) Moreover, the court based its determination on an FDA final rule, not draft guidance. The draft guidance cited by the court was merely additional support for the proposition contained in the cited final rule, as evidenced by its placement after a "see also" signal. Draft guidance is just what its name says it is and cannot save plaintiffs' whole grain claims.

[4] It is frankly shocking that plaintiffs would now pretend that they read the Entenmann's label to state only that the product was "fresh" and not "baked fresh daily." In their original complaint, drafted before BBUSA ever raised this issue, plaintiffs alleged that they read the same label as saying only that the product was "baked fresh daily." (Original Complaint at ¶¶ 58-62.) Plaintiffs cannot plausibly claim now that they had a different understanding and they do not really allege that they do. (*See* FAC at ¶¶ 4, 93-94, 205-06.)

consider the Entenmann's product to be processed. The entire presentation of the product, including a prominent "sell by" date and sealed packaging, makes clear that this is a processed product, not necessarily produced and delivered the same day that it is sold.

### 4. Plaintiffs' "Excellent Source of Fiber" Claims Fail

Plaintiffs' claims related to the "Excellent Source" statement on one of the Thomas' Plain Bagel Thins packages (which might be the basis of plaintiffs' claims but one cannot be certain due to plaintiffs' pleading failure discussed above) fail to pass the reasonable consumer test because the "Excellent Source" statement is adjacent to and in a smaller font size than a "Good Source" statement on the same package. (RJN Exs. 19-20.) Thus, contrary to plaintiffs' assertion, BBUSA is not arguing against liability on the basis of a mere typographical error. Here, the statement that plaintiffs challenge was not misleading on its face and the corrective statement was certainly not in small print on the opposite side of the package. Instead, the statements were in close proximity to one another and the statement that plaintiffs claim is correct was in *larger* font size. This factual situation is distinguishable from the one at issue in *Williams v. Gerber Products Co.*, 552 F.3d 934 on which plaintiffs rely.

### 5. Toasted Bread does not Violate any Regulations

Plaintiffs fail to explain how "Toasted Bread" is subject to the regulations of which plaintiffs argue the product runs afoul. As previously explained, FDA Compliance Policy Guide ("CPG") § 505.350 (RJN Ex. 29) provides that a product falls outside the "bread" standard of identity for purposes of FDA regulation when its name combines the word "bread" with another descriptive term that references characteristics of the product that distinguish it from "bread." While plaintiffs attack the notion that Toasted Bread is not "bread" as "extraordinary," the fact is that statement is correct as a matter of law. Plaintiffs' only subjective attempt to address this argument is relegated to a footnote (*see* Opp. at 14, n.10) and relies on misreading § 505.350: Plaintiffs assert that the CPG only applies to "honey bread." This is just not true. The language of § 505.350 states that any products that are not "standardized bread" are not subject to the "bread" regulations on which plaintiffs rely. The "Toasted Bread" at issue here is clearly not "standardized bread," as is obvious from even a cursory review of its packaging. (RJN Exs. 21-

-11-

22.) Moreover, because the packaging permits a consumer to view the actual product, through a clear panel on the front of the package (and a consumer need only touch the packaged product to feel its hard texture), the fact this is not "standardized bread" is readily obvious to any reasonable consumer. While plaintiffs try to expand the "bread" standard to any food that includes the word "bread" or includes water, flour and yeast, Congress established a far more commonsense and narrow approach: A food will only be misbranded if it is represented as *standardized* food that conforms to the standard and "its label bears the name of the food specified by the definition and standard." (21 U.S.C. § 343(g).) The regulation of traditional "bread" and like products, dating back to 1938, was intended to protect consumer expectations that "bread" is "bread" as defined by FDA. Plaintiffs do not allege, nor could they, that federal food standards fix in stone that any "bread-like" product cannot respond to ever-changing consumer tastes and preferences simply because the word "bread" is part of a product name or that water, flour and yeast are found in a non-standardized bread product. The fact is, Toasted Bread is not among the FDA bakery standards and is not represented as such. Thus, like the honey bread that the CPG refers to as an example, Toasted Bread is not "bread" subject to the regulations that apply to that standard of identity.

### 6. Plaintiffs' Soy Flour Claims Fail

Plaintiffs wholly fail to take on the fact that their soy claims are based on disclosures on the allegedly mislabeled packages and, thus, must fail as a matter of law. Plaintiffs' attempt in footnote 17 of the opposition to distinguish cases cited by BBUSA is unavailing. *Ross v. Sioux Honey Assoc. Co-Op*, 2013 WL 146367 (N.D. Cal. Jan. 14, 2013) is instructive here because of the Court's analysis that a reasonable consumer would not have been deceived. For the same reason, plaintiffs' assertion is simply wrong that *Rooney v. Cumberland Packing Corp.*, 2012 WL 1512106 (S.D. Cal. 2012) and *Arroyo v. Pfizer, Inc.*, 2013 WL 415607 (N.D. Cal. 2013) are irrelevant because there was no allegation of an FDCA or Sherman law violation. Plaintiffs have a burden of pleading that a reasonable consumer would be misled by labels and these cases speak directly to that point. Moreover, plaintiffs have entirely failed to allege that a material amount of soy flour is present in the products they identify.

### C. Plaintiffs Do Not Have Standing As To Products They Never Purchased

Where, as in the cases cited by plaintiffs, courts permit claims for non-purchased products to survive a motion to dismiss, they require that "where the named plaintiff did not purchase the product, the claims related to the not purchased products must be ***nearly identical*** to the claims for the purchased product." *Id.* (emphasis added.) Thus, such claims are permitted only where the label in the non-purchased product is the same as the label on the purchased product. *Id.* (citing *Ivie v. Kraft*, 2013 WL 685372, at *3-5 (N.D. Cal. Feb. 25, 2013)).

As discussed above, plaintiffs' allegations regarding the products they purchased fail to meet basic pleading standards because they do not identify with any specificity the products purchased or labels relied on. The differences in the labels on products that plaintiffs potentially purchased are significant. As exemplified by RJN Exhibits 1-23, the FAC's minimal allegations about the products that they supposedly bought implicate a variety of packaging that varies in both appearance and content. As a result, it is impossible for this Court to determine whether the non-purchased products that plaintiffs allege violate the law are in any way similar (much less identical) to the purchased products. By failing to adequately identify the purchased products and their labels (much less the non-purchased products and labels for comparison), plaintiffs provide no baseline upon which the necessary analysis of identity could be completed to determine whether the claims related to non-purchased products may be maintained. Unless and until plaintiffs can show that the products and their labels are the same, no such claims can be alleged.

### D. Plaintiffs' CLRA Claims Must Be Dismissed

Plaintiffs assert that they satisfied CLRA notice requirements by a letter that incorporates their original complaint by reference. Not so. First, reference to a complaint that is no longer operative and was revised after its flaws were pointed out by BBUSA's counsel cannot possibly constitute proper notice of plaintiffs' claims. Second, plaintiffs did not send their Notice and Demand letter until almost a month after the original complaint was served.

The CLRA requires plaintiffs to provide notice of alleged violations before filing suit to allow a manufacturer to avoid litigation by remedying the purported wrongs raised by plaintiffs' letter. *See* Cal. Civil Code § 1782(a); *In re Apple & AT & T iPad Unlimited Data Plan Litig.*, 802

-13-

F.Supp.2d 1070, 1077 (N.D. Cal. 2011). Thus, the touchstones of the CLRA notice requirement are: (1) notice and (2) time to remedy any error prior to litigation. Plaintiffs' attempt to provide notice of now-superseded claims after filing suit plainly fails to meet these requirements and underlying rationale. Given the many opportunities plaintiffs had to provide proper CLRA notice, they should not now be permitted leave to re-notice and re-plead.

### E. Plaintiffs' Claims Remain Preempted

Plaintiffs do not dispute, as they cannot, that federal law "comprehensively regulates food and beverage labeling" (*Pom Wonderful v. The Coca-Cola Co.*, 679 F.3d 1170, 1175 (9th Cir. 2012)) and that where a challenged product "meets the conditions imposed by the FDCA and accompanying regulations, plaintiff's claims are expressly preempted by the FDCA and NLEA" (*Yumul*, 2011 WL 1045555, at *9). Therefore plaintiffs' only viable objection to preemption does not apply here because they have not alleged claims that violate the FDCA. Because the FAC fails to meet basic pleading standards or to allege any violations of the FDCA, plaintiffs' claims should be dismissed on preemption grounds.

### F. Plaintiffs' Unjust Enrichment Claims Should Be Dismissed

Plaintiffs try to re-cast BBUSA's argument regarding their unjust enrichment claim but BBUSA simply has not asserted that California courts do not allow claims for unjust enrichment. To the contrary, BBUSA's point is that such claims are not permitted where they are duplicative of the other tort claims plaintiffs assert. Thus, in *Lanovaz*, 2013 WL 675929, at *7, this Court dismissed unjust enrichment claims as "superfluous" where plaintiff's "claim for unjust enrichment is based on the same allegations as the UCL, FAL, and CLRA claims." *See also Brazil v. Dole Food Co., Inc.*, 2013 WL 1209955, at *18 (N.D. Cal. Mar. 25, 2013); *Barocio v. Bank of Am.,* 2012 WL 3945535, at *4 (N.D.Cal., Sept.10, 2012). *Del Monte*, 2013 WL 2147413, at *14 and *Hershey*, 2012 WL 5471153, at *9, are inapposite, as the defendants sought dismissal on the basis that unjust enrichment claims are not recognized in California, not that they are duplicative. Moreover, in *Astiana*, 2011 WL 2111796, at *11, the Court preserved plaintiff's unjust enrichment claim only because the operative complaint made clear it was pleaded in the alternative, and would therefore only be at issue if plaintiffs' substantive tort claims did not

-14-

1  survive.  However, here the FAC does not identify the unjust enrichment claim as pleaded in the
2  alternative but is duplicative of plaintiff's other claims and must be dismissed.

3  **III.    CONCLUSION**

4      Despite three opportunities to do so, plaintiffs still fail to provide adequate notice of their
5  allegations against BBUSA.  BBUSA is left to guess as to what actual products and associated
6  labels are being attacked here.  Instead of pleading the actual product labels ostensibly at issue,
7  plaintiffs chose to add pages of even less specific allegations about scores of additional products.
8  The role of the Court is not to speculate and a defendant should not be made to guess at what
9  claims it must defend.  Simply asserting that the regulations raise "issues of fact" -- as if this were
10 a summary judgment motion -- does not change plaintiffs' failure to properly plead causes of
11 action on which relief can be granted.  For all of these reasons, the FAC should be dismissed with
12 prejudice

13 Dated: August 2, 2013                                HOGAN LOVELLS US LLP

15                                                     By:  /s/ Mark C. Goodman
16                                                          Mark C. Goodman
                                                            Attorneys for Defendant
17                                                          Bimbo Bakeries USA, Inc.