**United States District Court**
For the Northern District of California

1

2

3

4

5

6

7

8    UNITED STATES DISTRICT COURT

9    NORTHERN DISTRICT OF CALIFORNIA

10    SAN JOSE DIVISION

11

12   NATALIA BRUTON, individually and on behalf)    Case No.: 12-CV-02412-LHK
     of all others similarly situated,            )
13                                                )
                    Plaintiff,                    )
14                                                )    ORDER GRANTING-IN-PART AND
          v.                                      )    DENYING-IN-PART DEFENDANTS'
15                                                )    MOTION TO DISMISS
     GERBER PRODUCTS COMPANY and                  )
16   NESTLÉ U.S.A., INC.,                          )
                                                  )
17                  Defendants.                   )
                                                  )
18   _____)

19          Plaintiff Natalia Bruton ("Bruton") brings this putative class action against Gerber Products

20   Company ("Gerber") and Nestlé U.S.A., Inc. ("Nestlé U.S.A.") (collectively, "Defendants"),

21   alleging that Defendants violated federal and state law by making false and misleading claims on

22   their food labels.  Defendants move to dismiss Bruton's First Amended Complaint, ECF No. 28;

23   Bruton opposes, ECF No. 34, and Defendants replied, ECF No. 36.  Having considered the

24   submissions of the parties, the parties' oral arguments at the hearing on this motion, and the

25   relevant law, the Court hereby GRANTS IN PART and DENIES IN PART Defendants' Motion to

26   Dismiss the First Amended Complaint.

27

28

1

## I.    BACKGROUND

### A.    Factual Allegations

Gerber claims to be "the world's most trusted name in baby food," and reportedly controls between 70 and 80 percent of the baby food market in the United States. First Amended Complaint ("FAC") ¶ 8, ECF No. 26. Through the Gerber brand, Defendants produce, package, and sell retail food products intended to be consumed by infants and children under two years of age, such as puree baby food, snacks, yogurts, side dishes, and beverages for infants and young children. FAC ¶¶ 7, 9. Gerber organizes its products by "stages" including: "Birth+," "Supported Sitter," "Sitter," "Crawler," "Toddler," and "Preschooler." FAC ¶ 9. All of the Gerber product categories other than "Preschooler" describe children under two years of age. *Id*.

Bruton is a California consumer who is concerned about the nutritional content of the food that she purchases for her child's consumption. FAC ¶ 107. At various times within the past four years, she purchased many of Defendants' food products that are intended for children under the age of two. FAC ¶¶ 22, 108. Specifically, Bruton contends that she purchased the following products: (1) Gerber Nature Select 2nd Foods Fruit–Banana Plum Grape; (2) Gerber Nature Select 2nd Foods Fruit–Apples and Cherries; (3) Gerber Nature Select 2nd Foods Vegetables–Carrots; (4) Gerber Nature Select 2nd Foods Spoonable Smoothies–Mango; (5) Gerber Yogurt Blends Snack–Strawberry; (6) Graduates Lil' Crunchies–Mild Cheddar; (7) Graduates Fruit Puffs–Peach; (8) Graduates Wagon Wheels–Apple Harvest; (9) Graduates for Toddlers Animal Crackers–Cinnamon Graham; and (10) Graduates for Toddlers Fruit Strips–Strawberry. FAC ¶ 110.

Before purchasing Defendants' products for her child, Bruton allegedly read and relied on Defendants' labels, which she contends are "misbranded." FAC ¶¶ 10, 111. She also allegedly read and relied on Defendants' "unlawful and deceptive misrepresentations at Defendants' website, www.gerber.com." FAC ¶ 111. At the point of sale, Bruton contends that she "did not know, and had no reason to know, that Defendants' products were misbranded" and "would not have bought the products had she known the truth about them." FAC ¶ 113. The types of unlawful and deceptive claims that Defendants allegedly made—and continue to make—on the Gerber products include: (a) nutrient content claims, such as "Excellent Source," "Good Source," "As Healthy As

2

United States District Court
For the Northern District of California

Fresh," and "No Added Sugar," FAC ¶¶ 58-73; (b) "natural" claims, FAC ¶¶ 74-82; and (c) sugar-related claims, FAC ¶¶ 83-95.

### 1. Nutrient Content Claims

First, Bruton challenges Defendants' use of "nutrient content claims," which are claims about specific nutrients contained in a product that, pursuant to Section 403 of the Food, Drug, and Cosmetic Act ("FDCA") (codified at 21 U.S.C. § 343(r)), must be made in accordance with federal regulations. FAC ¶ 51; *see* 21 U.S.C. § 343(r)(1)(A) (defining "nutrition levels and health-related claims" as pertaining to "a food intended for human consumption which is offered for sale and for which a claim is made in the label or labeling of the food which expressly or by implication . . . characterizes the level of any nutrient"). California expressly adopted the requirements of Section 403 of the FDCA in Section 110670 of the Sherman Food, Drug, and Cosmetic Law (the "Sherman Law"). *See* Cal. Health & Safety Code § 110670 ("Any food is misbranded if its labeling does not conform with the requirements for nutrient content or health claims as set forth in Section 403(r) (21 U.S.C. Sec. 343(r)) of the federal act and the regulations adopted pursuant thereto.").

Bruton alleges that Defendants make nutrient content claims on virtually all of their Gerber food products, despite the fact that the Food and Drug Administration ("FDA") authorizes nutrient content claims on foods for adults that are not permitted for children under age two due to differing nutritional needs. *See* FAC ¶ 62 (alleging that the nutrient content claims on products intended to be consumed by young children are barred because their nutritional needs are different than those of adults, and therefore nutritional claims on infant and toddler food can be highly misleading); *see* 21 C.F.R. § 101.13(b)(3) ("Except for claims regarding [certain] vitamins and minerals . . . no nutrient content claims may be made on food intended specifically for use by infants and children less than 2 years of age unless the claim is specifically provided for" by particular regulations).

Bruton specifically asserts that Defendants make misbranded nutrient content claims that fall into three categories: (a) "Excellent Source" and "Good Source" claims; (b) "As Healthy As Fresh" claims; and (c) "No Added Sugar" claims.

- *"Excellent Source" and "Good Source" claims*: Bruton contends that "[a]ll . . . Gerber products" intended for children under two that claim to be an

"Excellent Source" of Iron, Vitamin A, and Vitamin C, and also claim to be a "Good Source" of Calcium, Iron, Zinc, and Vitamins A, D, and E, "among other things," are "misbranded within the meaning of the FDCA § 403(r)(1)(A) and 21 U.S.C. § 343(r)(1)(A) because their labeling includes unauthorized nutrient content claims." FAC ¶ 60(a).

- *"As Healthy As Fresh" claims*: Bruton also asserts that Gerber food products intended for children under two years of age that claim to be "As Healthy As Fresh" are misbranded because they bear the nutrient content claim "healthy" as part of the statement despite the fact that federal regulations do not allow the claim for products specifically intended for children under two years of age. FAC ¶ 60(b).

- *"No Added Sugar" claims*: Bruton further alleges that Gerber food products that claim to have "No Added Sugar" or "No Added Refined Sugar" are misbranded because "[s]uch nutrient content claims may not be made on food products intended for children under two." FAC ¶ 60(c).

### 2. Natural Claims

Second, Bruton asserts that Defendants misleadingly tout their products as being "made with 100% natural" ingredients when they contain artificial ingredients or added ingredients not normally expected to be in food. FAC ¶ 77. According to Bruton, "[a] reasonable consumer would expect that when Defendants label their products as being made with 100% natural ingredients, the product's ingredients are 'natural' as defined by the federal government and its agencies." FAC ¶ 80. In addition, Bruton contends that a reasonable consumer "would also expect products bearing such labels . . . [to be] made with natural ingredients under the common use of the word 'natural.'" *Id*. According to Bruton, "[a] reasonable consumer would understand that 'natural' products do not contain synthetic ingredients or ingredients not normally expected to be in food." *Id*.

### 3. Sugar-Related Claims

Finally, Bruton alleges that many of Defendants' products that are labeled with a "No Added Sugar" or similar sugar-related nutrient content claim contain disqualifying levels of calories that prohibit the claim from being made absent a mandated disclosure statement warning of the higher caloric level of the products and thus violate 21 C.F.R. § 101.60(c)(2). *See* FAC ¶ 83. Bruton asserts that, "[b]ecause consumers may reasonably be expected to regard terms that represent that the food contains 'no added sugar' or sweeteners as indicating a product which is

4

**United States District Court**
For the Northern District of California

low in calories or significantly reduced in calories, consumers are misled when foods that are not low-calorie as a matter of law are falsely represented." FAC ¶ 90.

**B.    Putative Class Claims**

Bruton now seeks to bring this putative class action, pursuant to Federal Rule of Civil Procedure 23(b)(2) and 23(b)(3), on behalf of a nationwide class consisting of all persons who, within the last four years, "purchased any of Defendants' food products intended specifically for use by infants and children less than 2 years of age." FAC ¶ 118 ("Nationwide Class"). Bruton also seeks to represent a California subclass of "[a]ll persons in the state of California who purchased any of Defendants' food products intended specifically for use by infants and children less than 2 years of age . . . within the last four years." *Id.* ("California Subclass").

Bruton contends that, by manufacturing, advertising, distributing, and selling misbranded products, Defendants have violated California Health & Safety Code Sections 109885, 110390, 110395, 110398, 110660, 110665, 110670, 110705, 110760, 110765, and 110770. *See* FAC ¶¶ 97-103. In addition, Bruton asserts that Defendants have violated the standards set by 21 C.F.R. §§ 101.2, 101.13, 101.54, and 101.65, which have been adopted by reference into the Sherman Law. *See* FAC ¶¶ 104, 105. Consequently, Bruton's First Amended Complaint alleges the following causes of action: (1) violation of California's Unfair Competition Law ("UCL"), California Business and Professions Code §§ 17200 *et seq.*, for unlawful, unfair, and fraudulent business acts and practices (claims 1, 2, and 3); (2) violation of California's False Advertising Law ("FAL"), California Business and Professions Code §§ 17500 *et seq.*, for misleading, deceptive, and untrue advertising (claims 4 and 5); (3) violation of the Consumers Legal Remedies Act ("CLRA"), California Civil Code §§ 1750 *et seq.* (claim 6); (4) restitution based on unjust enrichment/quasi-contract (claim 7); (5) violation of the Song-Beverly Consumer Warranty Act, California Civil Code §§ 1790 *et seq.* (claim 8); and (6) violation of the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301 *et seq.* (claim 9).

**C.    Procedural History**

Bruton filed a putative class action complaint against Defendants Gerber Products Company, Nestlé Holdings, Inc., and Nestlé USA, Inc. on May 11, 2012. ECF No. 1. On July 2,

Case No.: 12-CV-02412-LHK
ORDER GRANTING-IN-PART AND DENYING-IN-PART MOTION TO DISMISS

Case 5:12-cv-02412-EJK   Document 571   Filed 09/06/13   Page 6 of 42

1   2012, Bruton filed a Notice of Voluntary Dismissal of Defendant Nestlé Holdings, Inc.  ECF No. 9.

2   Defendants Gerber Products Company and Nestlé USA, Inc. then filed a Motion to Dismiss on

3   August 31, 2012.  ECF No. 18.  Rather than responding to Defendants' Motion to Dismiss, Bruton

4   filed an amended class action complaint on September 21, 2012.  ECF No. 26.

5           Consequently, on October 5, 2012, Defendants withdrew their Motion to Dismiss the

6   original complaint as moot, ECF No. 27, and filed a Motion to Dismiss the Amended Complaint,

7   ("Mot.") ECF No. 28, which is currently before this Court.  Defendants move to dismiss Bruton's

8   FAC on many different grounds, including: (1) lack of subject-matter jurisdiction as required by

9   Rule 12(b)(1) of the Federal Rules of Civil Procedure; (2) failure to state a claim upon which relief

10  may be granted, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure; and (3) failure

11  to plead claims grounded in fraud with sufficient particularity, as required by Rule 9(b) of the

12  Federal Rules of Civil Procedure.  In addition, Defendants filed a Request for Judicial Notice in

13  Support of the Motion to Dismiss.  ECF No. 29.[1]  Bruton filed an opposition to the Motion to

_____

[1]  While a district court generally may not consider any material beyond the pleadings in ruling on
a Rule 12(b)(6) motion, a court may take judicial notice of documents referenced in the complaint,
as well as matters in the public record, without converting a motion to dismiss into one for
summary judgment.  *See Lee v. City of L.A.*, 250 F.3d 668, 688-89 (9th Cir. 2001).  A matter may
be judicially noticed if it is either "generally known within the territorial jurisdiction of the trial
court" or "can be accurately and readily determined from sources whose accuracy cannot
reasonably be questioned."  Fed. R. Evid. 201(b).  In addition, under the "incorporation by
reference" doctrine, a district court may consider "documents whose contents are alleged in a
complaint and whose authenticity no party questions, but which are not physically attached to the
[plaintiff's] pleading."  *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) (alteration in
original) (internal quotation marks and citations omitted).  The Court finds Exhibits A, B, C, D, E,
F, G, H, I, and J to be appropriate for judicial notice as they are packaging labels for ten Gerber
products that the FAC specifically references, but which are not completely legible.  In addition,
the Court takes judicial notice of Exhibit K, which is an excerpt from the FDA's rule addressing
the use of the term "natural" on food labeling, 58 Fed. Reg. 2302, 2407 (Jan. 6, 1993), as well as
Exhibit N, which is an excerpt of the FDA's revisions to the Supplemental Nutrition Program for
Women, Infants and Children, 72 Fed. Reg. 68966 (Dec. 6, 2007).  Pursuant to 44 U.S.C. § 1507,
"[t]he contents of the Federal Register shall be judicially noticed."  However, the Court finds that
Exhibits L and M are not appropriate for judicial notice in consideration of a Rule 12(b)(6) motion.
Exhibit L is an FDA letter attached as an exhibit filed in support of a similar motion to dismiss in
*Jones v. ConAgra Foods, Inc.*, No. 12-CV-01633-CRB (N.D. Cal. filed Apr. 2, 2012).  ECF No.
29, at 3.  Exhibit M includes nutritional and dietary guidelines from websites including
www.choosemyplate.gov and the Center for Disease Control.  These exhibits are offered to dispute
the merits of Bruton's allegations rather than to establish whether Bruton has stated a claim or the
Court lacks jurisdiction.  Therefore, the Court finds that consideration of these documents is

Case No.: 12-CV-02412-LHK
ORDER GRANTING-IN-PART AND DENYING-IN-PART MOTION TO DISMISS

United States District Court
For the Northern District of California

Dismiss, ("Opp'n") ECF No. 34, to which Defendants filed a reply, ("Reply") ECF No. 36.  Bruton also filed four notices of new case law relevant to Defendants' Motion to Dismiss, ECF Nos. 37, 43, 50, 51, and Defendants filed two similar notices, ECF Nos. 40, 42.  Following the hearing on Defendants' Motion to Dismiss, the parties submitted supplemental briefing focused primarily on the Ninth Circuit's recent decision in *Perez v. Nidek Co.*, 711 F.3d 1109 (9th Cir. 2013).  ECF Nos. 47, 48.

## II.      LEGAL STANDARDS

### A.      Rule 12(b)(1)

A defendant may move to dismiss an action for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1).  A Rule 12(b)(1) motion to dismiss tests whether a complaint alleges grounds for federal subject matter jurisdiction.  A motion to dismiss for lack of subject matter jurisdiction will be granted if the Complaint on its face fails to allege facts sufficient to establish subject matter jurisdiction.  *See Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1039 n.2 (9th Cir. 2003).  In considering a Rule 12(b)(1) motion, the Court "is not restricted to the face of the pleadings, but may review any evidence, such as affidavits and testimony, to resolve factual disputes concerning the existence of jurisdiction." *McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988).  If the plaintiff lacks standing under Article III of the U.S. Constitution, then the court lacks subject matter jurisdiction, and the case must be dismissed.  *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101-02 (1998).  Once a party has moved to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), the opposing party bears the burden of establishing the court's jurisdiction.  *See Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010).

### B.      Rule 12(b)(6)

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss an action for failure to allege "enough facts to state a claim to relief that is plausible on its face." *Bell*

---

beyond the scope of the motion before the Court.  Accordingly, Defendants' Request for Judicial Notice of Exhibits A, B, C, D, E, F, G, H, I, J, K, and N is GRANTED.  Defendants' Request for Judicial Notice of Exhibits L and M is DENIED.

Case No.: 12-CV-02412-LHK
ORDER GRANTING-IN-PART AND DENYING-IN-PART MOTION TO DISMISS

**United States District Court**
For the Northern District of California

*Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (internal quotation marks omitted). For purposes of ruling on a Rule 12(b)(6) motion, a court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

However, a court need not accept as true allegations contradicted by judicially noticeable facts, *Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000), and the "[C]ourt may look beyond the plaintiff's complaint to matters of public record" without converting the Rule 12(b)(6) motion into one for summary judgment, *Shaw v. Hahn*, 56 F.3d 1128, 1129 n.1 (9th Cir. 1995). Nor is the court required to "'assume the truth of legal conclusions merely because they are cast in the form of factual allegations.'" *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (per curiam) (quoting *W. Min. Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981)). Mere "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004); *accord Iqbal*, 556 U.S. at 678. Furthermore, "a plaintiff may plead herself out of court" if she "plead[s] facts which establish that [s]he cannot prevail on h[er] . . . claim." *Weisbuch v. Cnty. of L.A.*, 119 F.3d 778, 783 n.1 (9th Cir. 1997) (internal quotation marks and citation omitted).

### C.    Rule 9(b)

Claims sounding in fraud or mistake are subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b), which requires that a plaintiff alleging fraud "must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b); *see Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009). To satisfy the heightened standard under Rule 9(b), the allegations must be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir.

8

1985).  Thus, claims sounding in fraud must allege "an account of the time, place, and specific

content of the false representations as well as the identities of the parties to the misrepresentations."

*Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (per curiam) (internal quotation marks

omitted).  The plaintiff must set forth what is false or misleading about a statement, and why it is

false."  *In re Glenfed, Inc. Sec. Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994) (en banc), *superseded by*

*statute on other grounds as stated in Ronconi v. Larkin*, 253 F.3d 423, 429 n.6 (9th Cir. 2001).

### D.     Leave to Amend

If the Court determines that the complaint should be dismissed, it must then decide whether

to grant leave to amend.  Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend

"should be freely granted when justice so requires," bearing in mind that "the underlying purpose

of Rule 15 . . . [is] to facilitate decision on the merits, rather than on the pleadings or

technicalities."  *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (internal quotation

marks omitted).  Nonetheless, a court "may exercise its discretion to deny leave to amend due to

'undue delay, bad faith or dilatory motive on part of the movant, repeated failure to cure

deficiencies by amendments previously allowed, undue prejudice to the opposing party. . . , [and]

futility of amendment.'"  *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 892-93 (9th Cir.

2010) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)) (alterations in original).

## III.     DISCUSSION

Despite the numerous assertions that Bruton makes in her 59-page complaint, Bruton

contends that her case essentially has two facets: (1) that Defendants' products are "misbranded,"

and (2) that the labels are "deceptive."  Opp'n at 1.  First, Bruton alleges that Defendants package,

label, and market food products that do not comply with certain provisions of the Sherman Law,

thereby "misbrand[ing]" their products.  Bruton maintains that such actions are "unlawful and

unfair," and thus gives rise to claims for relief under the unlawful and unfair prongs of California's

UCL (claims 1 and 2) and the CLRA (claim 6).

Second, Bruton alleges that Defendants' packaging and labels are misleading, deceptive,

fraudulent, and unlawful.  *See id.*  Bruton contends that she reasonably relied on Defendants'

misrepresentations, and was thereby deceived, in deciding to purchase Defendants' products.  *Id.*

Case No.: 12-CV-02412-LHK
ORDER GRANTING-IN-PART AND DENYING-IN-PART MOTION TO DISMISS

United States District Court
For the Northern District of California

1   Consequently, Bruton asserts that Defendants' deceptive packaging and labels give rise to claims

2   for relief due to violating the unfair and fraudulent prongs of the UCL (claims 2 and 3), engaging

3   in misleading, deceptive, and untrue advertising in violation of the FAL (claims 4 and 5), and

4   violating the CLRA (claim 6). Bruton also maintains that Defendants' deceptive practices give rise

5   to a claim for relief under the unlawful provision of the UCL (claim 1), by virtue of Defendants'

6   violations of the FAL and CLRA. *See* FAC ¶¶ 134, 135. In addition, Bruton brings claims for

7   restitution based on unjust enrichment/quasi-contract (claim 7), violation of the Song-Beverly

8   Consumer Warranty Act, Cal. Civ. Code §§ 1790 *et seq.* (claim 8), and violation of the Magnuson-

9   Moss Warranty Act, 15 U.S.C. §§ 2301 *et seq*.

10      Defendants challenge the viability of Bruton's FAC on several different grounds, which the

11   Court distills into four primary arguments: (1) failure to state a claim against Nestlé USA; (2)

12   preemption by the federal Food, Drug, and Cosmetics Act ("FDCA") and invocation of the

13   doctrine of Primary Jurisdiction; (3) lack of constitutional and statutory standing; and (4) failure to

14   state viable causes of action for other, claim-specific reasons. The Court discusses each in turn.

15      **A.      Claims Against Nestlé USA**

16      At the outset, Defendants contend that the claims against Nestlé USA should be dismissed

17   with prejudice because Gerber and Nestlé USA are separate entities and the FAC concerns only

18   Gerber products. *See* Mot. at 1; Reply at 2. Bruton argues that she sufficiently states a claim

19   against Nestlé USA because, in the FAC's first paragraph, she states that she is referring to Gerber

20   and Nestlé USA collectively as "Defendants." *See* Opp'n at 4 (citing to FAC at 1). Consequently,

21   Bruton maintains that all of the FAC's allegations include assertions against Nestlé USA.

22      Despite Bruton's introductory reference to Gerber and Nestlé USA together as

23   "Defendants," the rest of the FAC lacks sufficient factual allegations from which the Court may

24   infer more than a "sheer possibility" that Nestlé USA has acted unlawfully. *See Iqbal*, 556 U.S. at

25   678. Importantly, only Gerber products are at issue in this case. Moreover, aside from the first

26   paragraph, the FAC makes only two references to Nestlé USA throughout the entire complaint.

27      The first reference to Nestlé USA occurs in paragraph 25 of the FAC. In this paragraph,

28   Bruton alleges that Defendant *Nestlé USA* is a privately held Delaware corporation owned by

Case No.: 12-CV-02412-LHK
ORDER GRANTING-IN-PART AND DENYING-IN-PART MOTION TO DISMISS

**United States District Court**
For the Northern District of California

*Nestlé Holdings, Inc.* and that, "[d]uring the relevant period, *Nestlé USA* played an active role in the labeling, marketing, and sales of Gerber products . . . [which] included . . . activities involving through [*sic*] '*Nestlé Nutrition*' and '*Nestlé Nutrition USA*.'" FAC ¶ 25 (emphasis added). However, the FAC does not set forth the relationship between Nestlé USA and Nestlé Nutrition, or explain why Nestlé USA should be held liable for Gerber's misbranded products by virtue of Nestlé Nutrition's activities.[2]

The FAC's only other factual allegation specific to Nestlé USA is a reference to a warning letter from the FDA that concerns products not at issue in this case. *See* FAC ¶ 46; *see also* FAC, Ex. C (referring to Nestlé Juicy Juice products).[3] Bruton also alleges that the FDA sent a warning letter to Nestlé on February 22, 2010, yet this letter was addressed to Nestlé Nutrition not Nestlé USA. *See* FAC ¶ 45; FAC, Ex. B. Therefore, based on the FAC, it does not appear that Bruton has pled sufficient facts to support a reasonable inference that Nestlé USA is liable for the violations alleged. *See Iqbal*, 556 U.S. at 678.

In order to cure the deficiencies in the FAC, Bruton asserts new factual allegations regarding Nestlé USA in a footnote to her opposition. *See* Opp'n at 4 n.2. For example, Bruton contends that, for at least a portion of the class period, Nestlé USA operated and controlled the Gerber verybestbaby.com website. *Id*. Bruton's new factual allegations do not cure the defects in the FAC because, "[i]n determining the propriety of a Rule 12(b)(6) dismissal, a court *may not* look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a motion to dismiss." *Broam v. Bogan*, 320 F.3d 1023, 1026 n.2 (9th Cir. 2003) (internal quotation marks omitted). Yet, because "facts raised for the first time in plaintiff's opposition papers should be considered by the court in determining whether to grant leave to amend or to dismiss the

---

[2] The relationship among the Nestlé entities is particularly unclear as certain portions of the FAC refer simply to "Nestlé," *see, e.g.*, FAC ¶ 4, whereas other portions refer to the "Nestlé Group," *see, e.g.*, FAC ¶ 6, and other paragraphs distinguish between "Nestlé Holdings," "Nestlé USA," and "Nestlé Nutrition," *see, e.g.*, FAC ¶¶ 24-25, 28. Given that Bruton voluntarily dismissed Nestlé Holdings from this case before filing the FAC, the distinction among the entities appears significant. *See* ECF No. 9.

[3] For purposes of Defendants' Motion to Dismiss, the Court treats Bruton's exhibits that are attached to her FAC as part of the complaint. *See United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

11

complaint with or without prejudice," *id*, the Court takes note of these new allegations and finds
that Bruton has set forth sufficient information to demonstrate that amendment may not be futile.

Accordingly, the Court GRANTS Defendants' Motion to Dismiss Bruton's claims against
Nestlé USA with leave to amend.

### B.     Preemption

Next, Defendants contend that the federal Food, Drug, and Cosmetics Act preempts all of
Bruton's claims. *See* Mot. at 6. Pursuant to the Supremacy Clause of the United States
Constitution, "Congress has the power to preempt state law." *Crosby v. Nat'l Foreign Trade
Council*, 530 U.S. 363, 372 (2000) (citing U.S. CONST. art. VI, cl. 2). "Federal preemption occurs
when: (1) Congress enacts a statute that explicitly pre-empts state law; (2) state law actually
conflicts with federal law; or (3) federal law occupies a legislative field to such an extent that it is
reasonable to conclude that Congress left no room for state regulation in that field." *Chae v. SLM
Corp.*, 593 F.3d 936, 941 (9th Cir. 2010) (internal quotation marks omitted).

When analyzing the scope of a preemption statute, a court's analysis must "start with the
assumption that the historic police powers of the States [are] not to be superseded by the Federal
Act unless that was the clear and manifest purpose of Congress." *Medtronic, Inc. v. Lohr*, 518 U.S.
470, 485 (1996) (internal quotation marks omitted). This approach is "consistent with both
federalism concerns and the historic primacy of state regulation of matters of health and safety."
*Id*. Therefore, "[p]arties seeking to invalidate a state law based on preemption bear the
considerable burden of overcoming the starting presumption that Congress does not intend to
supplant state law." *Stengel v. Medtronic Inc.*, 704 F.3d 1224, 1227 (9th Cir. 2013) (en banc)
(internal quotation marks omitted).

Defendants argue that, to the extent that Bruton seeks to enforce labeling rules that are
different from the FDA regulations, they are expressly preempted. *See* Mot. at 9. In addition, to
the extent that Bruton seeks to enforce labeling rules that are identical to the FDA regulations,
Defendants contend that Bruton's claims are impliedly preempted because, pursuant to the FDCA,
private litigants are prohibited from suing to enforce compliance with the FDA regulations. *See*
Mot. at 6. For the reasons discussed herein, the Court is not persuaded that Defendants have

Case No.: 12-CV-02412-LHK
ORDER GRANTING-IN-PART AND DENYING-IN-PART MOTION TO DISMISS

*United States District Court*
For the Northern District of California

Case 5:12-cv-02412-LHK  Document 57  Filed 06/06/13  Page 13 of 42

1    overcome the "considerable burden" that "Congress d[id] not intend to supplant state law" in this

2    area.  *Stengel*, 704 F.3d at 1227.

3          **1.**      **Express Preemption**

4          The FDCA, codified at 21 U.S.C. §§ 301 *et seq.*, "gives the FDA the responsibility to

5    protect the public health by ensuring that 'foods are safe, wholesome, sanitary, and properly

6    labeled.'"  *Lockwood v. Conagra Foods, Inc.*, 597 F. Supp. 2d 1028, 1030 (N.D. Cal. 2009)

7    (quoting 21 U.S.C. § 393(b)(2)(A)).  Section 331 expressly prohibits the misbranding of food in

8    interstate commerce, 21 U.S.C. § 331(a)-(c), (k), while Section 343 sets forth conditions under

9    which food is considered "misbranded," 21 U.S.C. § 343.  In general, a food is "misbranded" if its

10   labeling is "false or misleading in any particular."  21 U.S.C. § 343(a)(1).

11         In 1990, Congress amended the FDCA with the Nutrition Labeling and Education Act of

12   1990 ("NLEA") to include additional food labeling requirements.  Nutritional Labeling and

13   Education Act of 1990, Pub. L. No. 101-535, 104 Stat. 2353 (1990); *see also* H.R. Rep. No. 101-

14   538 (1990), *reprinted in* 1990 U.S.C.C.A.N. 3336, 3337 (stating that the purpose behind the NLEA

15   was "to clarify and to strengthen the Food and Drug Administration's legal authority to require

16   nutrition labeling on foods, and to establish the circumstances under which claims may be made

17   about nutrients in foods").  Part of the NLEA's purpose was also to "create uniform national

18   standards regarding the labeling of food."  *In re Farm Raised Salmon Cases*, 42 Cal. 4th 1077,

19   1086 (2008) (citing 136 CONG. REC. 5840 (daily ed. July 30, 1990) (Remarks of Rep. Waxman)).

20         In furtherance of the NLEA's aim of promoting uniform national labeling standards, the

21   NLEA includes an explicit preemption provision which states, in part, that "no State . . . may

22   directly or indirectly establish . . . any requirement . . . made in the labeling of food that is *not*

23   *identical to*" certain FDA requirements, such as 21 U.S.C. § 343(r), which applies to nutrition

24   levels and health-related claims.  21 U.S.C § 343-1(a)(5) (emphasis added).  "'Not identical to' . . .

25   means that the State requirement directly or indirectly imposes obligations or contains provisions

26   concerning the composition or labeling of food, or concerning a food container, that: (i) Are not

27   imposed by or contained in the applicable provision . . .  or (ii) Differ from those specifically

28   imposed by or contained in the applicable provision . . . ."  21 C.F.R. § 100.1(c)(4).

United States District Court
For the Northern District of California

13

United States District Court
For the Northern District of California

The NLEA's preemption provision does not, however, prohibit states from enacting food labeling requirements that are identical to the FDA requirements. In fact, the NLEA explicitly states that "[t]he [NLEA] shall *not* be construed to preempt any provision of State law, unless such provision is expressly preempted under [21 U.S.C § 343-1(a)]." *See* § 6(c)(1), 104 Stat. at 2364.

Through the Sherman Law, California has expressly adopted the federal labeling requirements as its own. *See* Cal. Health & Safety Code § 110100 ("All food labeling regulations and any amendments to those regulations adopted pursuant to the federal act, in effect on January 1, 1993, or adopted on or after that date shall be the food labeling regulations of this state."). California has also enacted a number of laws and regulations that adopt and incorporate specific enumerated federal food laws and regulations. *See, e.g.*, Cal. Health & Safety Code § 110670 ("Any food is misbranded if its labeling does not conform with the requirements for nutrient content or health claims as set forth in . . . (21 U.S.C. § 343(r)) . . . .").

In this case, Defendants contend that the FDA has established requirements applicable to all of the alleged violations identified by Bruton, including the following: "nutrient content" claims, 21 U.S.C. § 343(r)(1)(A); the FDA's "natural" policy, *see* 21 C.F.R. § 101.22; 58 Fed. Reg. at 2407; the "health" claims, *see* 21 C.F.R. § 101.14; and the "sugar-related" claims, *see* 21 C.F.R. § 101.60. According to Defendants, "there is no label element Plaintiff challenges that FDA regulation or policy does not address." Mot. at 10. For her part, Bruton contends that she does not seek to impose labeling rules that differ from the FDA regulations. *See* Opp'n at 9. As both sides in this case assert that Bruton's claims fall within the scope of the FDA's requirements, the Court does not find that, for purposes of this Motion to Dismiss, the claims are subject to express preemption.[4]

### 2. Preemption and Private Rights of Action

Defendants also allege that all of Bruton's claims are preempted because there is no private right of action to enforce FDA regulations. *See* Mot. at 6-9. Specifically, the FDCA provides that, in general, "proceedings for the enforcement, or to restrain violations, of [the FDCA] shall be by and in the name of the *United States.*" 21 U.S.C. § 337(a) (emphasis added); *see Buckman Co. v.*

---

[4] *See infra* Part III.D.1 for further analysis regarding each of these claims.

Case No.: 12-CV-02412-LHK
ORDER GRANTING-IN-PART AND DENYING-IN-PART MOTION TO DISMISS

*Plaintiffs' Legal Comm.*, 531 U.S. 341, 349 n.4 (2001) (noting, in the context of the medical device provisions of the FDCA that, due to 21 U.S.C. § 337(a), "[t]he FDCA leaves no doubt that it is the Federal Government rather than private litigants who are authorized to file suit for noncompliance with the [FDCA]").

Bruton does not dispute that, under the FDCA, private litigants are expressly prohibited from suing to enforce compliance with the federal regulations. However, Bruton contends that she is not attempting to enforce the FDCA but rather to enforce California's legal requirements, pursuant to the Sherman Law, which are identical to FDA regulations. *See* Opp'n at 8.

According to Defendants, Bruton's claims are subject to implied preemption because they still amount to an attempt to privately enforce the FDCA. *See* Mot. at 8-9. In support of Defendants' position that the Sherman Law cannot be used to enforce FDA regulations, Defendants rely heavily on the Ninth Circuit's decision in *Pom Wonderful LLC v. Coca-Cola Co.*, 679 F.3d 1170 (9th Cir. 2012). In *Pom Wonderful*, the manufacturer of a pomegranate juice beverage sued Coca-Cola under the federal Lanham Act, alleging that Coca-Cola's competing product, "Pomegranate Blueberry," was false both in name and label because it consisted of 99.4% apple and grape juice. *Id.* at 1173-74. As in the instant case, the *Pom Wonderful* plaintiff also brought state-law claims under the Sherman Law, the UCL, and the FAL, alleging that those state laws incorporate the identical FDA labeling standards and prohibitions. *Id.* at 1174. The *Pom Wonderful* Court ultimately held that, based on the particular circumstances of the case, "the FDCA and its regulations bar pursuit of both the name and labeling aspects of [plaintiff's] Lanham Act claim." *Id.* at 1176 (citing with approval *PhotoMedex, Inc. v. Irwin*, 601 F.3d 919, 922 (9th Cir. 2010)).[5] In so doing, the Court reasoned that allowing a plaintiff to sue under the Lanham Act to enforce the FDCA or its regulations would, "undermine[] Congress's decision to limit enforcement of the FDCA to the federal government." *Pom Wonderful LLC*, 679 F.3d at 1176. In addition, the

---

[5] The Ninth Circuit based its *Pom Wonderful* decision, in part, on the fact that the FDCA and the Lanham Act—both broad federal statutes—may at times conflict. *Pom Wonderful*, 679 F.3d at 1175. Consequently, the Ninth Circuit observed that, to "try to give as much effect to both statutes as possible . . . . courts have focused on Congress's decision to entrust to the FDA the task of interpreting and enforcing the FDCA." *Id.* (internal quotation marks and citation omitted).

15

Case No.: 12-CV-02412-LHK
ORDER GRANTING-IN-PART AND DENYING-IN-PART MOTION TO DISMISS

United States District Court
For the Northern District of California

Court in *Pom Wonderful* stated that a plaintiff may not "maintain a Lanham Act claim that would require a court originally to interpret ambiguous FDA regulations, because rendering such an interpretation would usurp the FDA's interpretive authority." *Id.* Further, the Ninth Circuit held that, "[w]here the FDA has not concluded that particular conduct violates the FDCA, . . . a Lanham Act claim may not be pursued if the claim would require litigating whether that conduct violates the FDCA." *Id.* Defendants argue that the rationale underpinning the Ninth Circuit's decision in *Pom Wonderful* applies with equal force to this case. Mot. at 7.

As this Court already discussed in *Brazil v. Dole Food Co.*, --- F.Supp.2d ----, 2013 WL 1209955 (N.D. Cal. Mar. 25, 2013), the Court is "not persuaded that *Pom Wonderful* stands for the sweeping proposition Defendants set forth." *Id.* at *7. Importantly, in *Pom Wonderful*, the Ninth Circuit limited its ruling to the federal Lanham Act and explicitly declined to address whether plaintiff's state-law claims were also preempted. *See Pom Wonderful*, 679 F.3d at 1179 (vacating the summary judgment to the extent it ruled that plaintiff lacked statutory standing on its UCL and FAL claims and "remand[ing] so that the district court can rule on the state claims"). Consequently, the Ninth Circuit did not specifically address the impact of the FDCA on states' historic power to protect its people against fraud and deception in the sale of food products. Nor did it grapple with the presumption that Congress did not intend to supplant state law. *See Stengel*, 704 F.3d at 1227-28. Thus, the Court finds that *Pom Wonderful* is distinguishable from this case. *See also Delacruz v. Cytosport, Inc.*, No. 11-3532, 2012 WL 2563857, at *7 n.3 (N.D. Cal. June 28, 2012) ("The Ninth Circuit's preemption ruling [in *Pom Wonderful*] was limited to a finding that the FDCA preempted Pom's claims under the Lanham Act."); *accord Khasin v. Hershey Co.*, No. 12-1862, 2012 WL 5471153, at *5 (N.D. Cal. Nov. 9, 2012); *cf. Ivie v. Kraft Foods Global, Inc. (Ivie I),* No. 12-2554, 2013 WL 685372, at *6-7 (N.D. Cal. Feb. 25, 2013) (construing *Pom Wonderful* as "dismiss[ing] federal Lanham act claims implicitly on the basis of primary jurisdiction with the FDA," and subsequently finding that "where FDA policy is clearly established with respect to what constitutes an unlawful or misleading label, the primary jurisdiction doctrine is inapplicable because there is little risk that the courts will undermine the FDA's expertise.").

Case No.: 12-CV-02412-LHK
ORDER GRANTING-IN-PART AND DENYING-IN-PART MOTION TO DISMISS

Defendants also contend that the Ninth Circuit's recent decision in *Perez*, 711 F.3d 1109, as well as Judge Watford's concurrence in *Stengel*, 704 F.3d at 1234, require the dismissal of Bruton's claims. *See* ECF No. 47, at 1. Specifically, Defendants assert that, based on these decisions, "the test to determine whether claims alleging a violation of the FDCA are preempted [is the following]: 'The plaintiff must be suing for conduct that *violates* the FDCA (or else his claim is expressly preempted by § 360k(a)), but the plaintiff must not be suing *because* the conduct violates the FDCA (such a claim would be impliedly preempted under *Buckman*).'" *Id.* (citing *Perez*, 711 F.3d at 1120); *see also id.* (citing Judge Watford's concurrence in *Stengel*, 704 F.3d at 1235, for the proposition that state-law claims that exist "*solely* by virtue" of federal enactments are preempted). Underlying Defendants' arguments is an attempt to further expand the scope of the Supreme Court's decision in *Buckman*, 531 U.S. 341. The Court finds such an expansion to be unwarranted in this case.

Initially, it bears emphasizing that *Buckman*,[6] as well as the Ninth Circuit's decisions in *Stengel v. Medtronic*,[7] and *Perez v. Nidek*,[8] are factually distinguishable from this case, because they arose in the context of "Class III medical devices" under the FDCA, as amended by the Medical Device Amendments of 1976 ("MDA"), 21 U.S.C. § 360c, *et seq.*. As the Supreme Court explained in *Buckman*, the MDA governs the regulation of medical devices, which it separates into three categories. 531 U.S. at 344. Class III devices are subject to the FDA's strictest regulation because they "presen[t] a potential unreasonable risk of illness or injury." *Id.* (internal quotation

---

[6] In *Buckman*, Plaintiffs claimed "injuries resulting from the use of orthopedic bone screws in the pedicles of their spines." 531 U.S. at 344. Plaintiffs claimed that Buckman made fraudulent representations to the FDA in the course of obtaining approval to market the screws and that such representations were at least a "but for" cause of the injuries that Plaintiffs sustained from the implantation of these devices. *Id.*

[7] In *Stengel*, Plaintiffs Richard and Mary Lou Stengel sued Medtronic under state law when a Class III medical device manufactured by Medtronic rendered Richard permanently paraplegic. 704 F.3d at 1226.

[8] In *Perez*, Plaintiffs "each sought and received Laser in Situ Keratomileusis ("LASIK") eye surgery with a Nidek EC-5000 Excimer Laser System," which qualifies as a Class III Medical Device, to correct farsightedness. 711 F.3d at 1112. Plaintiffs claimed that, at the time of their surgeries, they did not know the FDA had not approved the Laser for this use. *Id.*

17

marks omitted).[9]  Consequently, before a Class III device may be marketed, it must complete a "thorough" review process with the FDA.  *Id.*  This premarket approval ("PMA") process requires an applicant to "demonstrate a 'reasonable assurance' that the device is both 'safe . . . [and] effective under the conditions of use prescribed, recommended, or suggested in the proposed labeling thereof.'"  *Id.* (quoting 21 U.S.C. §§ 360e(d)(2)(A), (B)).  The parties here do not assert that misbranded food labeling is equivalent to the "unreasonable risk of illness or injury" presented by Class III medical devices, nor do they allege that food labeling is subjected to a comparably rigorous review process that requires premarket approval.  *Cf. id.* at 344-45 (noting that "[t]he PMA process is ordinarily quite time consuming because the FDA's review requires an average of 1,200 hours [for] each submission") (internal quotation marks omitted).  Thus, while the Court finds that the broad principles regarding preemption as espoused in *Stengel*, *Perez*, and *Buckman*, are relevant to the Court's analysis in this case, the Court bears in mind the distinct factual scenarios in which they arise.[10]

Next, in the context of food labeling, the Court finds it significant that Congress has not set forth a "clear and manifest" statement that it intended state food labeling claims to be subject to implied preemption.  *See Chae*, 593 F.3d at 944 ("We must be cautious about conflict preemption where a federal statute is urged to conflict with state law regulations within the traditional scope of the state's police powers.  When we deal with an area in which states have traditionally acted, the Supreme Court has told us to start with the assumption that a state's historic police powers will not be superseded absent a 'clear and manifest purpose of Congress.'") (quoting *Wyeth v. Levine*, 555

---

[9]  In contrast, Class I devices require only general manufacturing controls because they "present no unreasonable risk of illness or injury;" Class II devices require somewhat more stringent controls because they possess "a greater potential dangerousness."  *Buckman*, 531 U.S. at 344 (citing 21 U.S.C. § 360c(a)(1)(C)(ii)(II)).

[10]  Furthermore, *Buckman* is distinguishable from this case because it involved "fraud-on-the-FDA" claims to which the Supreme Court held that no presumption against preemption applied.  531 U.S. at 347-48.  In so doing, the Supreme Court emphasized that, because "the federal statutory scheme amply empowers the FDA to punish and deter fraud against the Administration" the "the balance of statutory objections . . . . sought by the Administration c[ould] be skewed by allowing fraud-on-the-FDA claims under state tort law."  *Id.* at 348.  Here, as noted previously, the presumption against preemption *does* apply absent a "clear and manifest purpose of Congress."  *Chae*, 593 F.3d at 944 (internal quotation marks omitted).

18

Case No.: 12-CV-02412-LHK
ORDER GRANTING-IN-PART AND DENYING-IN-PART MOTION TO DISMISS

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

U.S. 555, 565 (2009)).  Significantly, the NLEA explicitly states that the Act "shall *not* be construed to preempt any provision of State law, unless such provision is *expressly* preempted under [21 U.S.C. § 343-1]."  NLEA § 6(c)(1) (emphasis added).  The plain language of the statute, therefore, provides further evidence that Congress did not intend for the FDCA, as amended by the NLEA, to impliedly preempt state-law food labeling claims.  *See Wyeth*, 555 U.S. at 575 ("'The case for federal pre-emption is particularly weak where Congress has indicated its awareness of the operation of state law in a field of federal interest, and has nonetheless decided to stand by both concepts and to tolerate whatever tension there [is] between them.'") (alteration in original) (quoting *Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*, 489 U.S. 141, 166-67 (1989)).

Further, to the extent that Bruton must demonstrate that her state-law claims fit through a "narrow gap" to escape preemption under the FDCA—as described by the Eighth Circuit in *In re Medtronic Inc., Sprint Fidelis Leads Products Liability Litig.*, 623 F.3d 1200, 1204 (8th Cir. 2010), and cited in *Stengel* and *Perez*—it appears that Bruton has done so in this case.  First, Bruton notes that, because her claims are based on state laws that parallel the federal regulations, she is suing for conduct that also violates the FDCA.  Therefore, her claims are not expressly preempted.  *See supra* Part III.B.1.  Second, Bruton contends that she is not suing *because* the conduct violates the FDCA, but rather because Defendants' conduct allegedly violates California's Sherman Law, which could have imposed the exact same regulations even if the FDCA was never passed and which includes some provisions that are independent of the federal regulations that they mirror.  *See* ECF No. 48, at 4-5 & n.9 (citing, as an example, California Health & Safety Code § 110660, which states that "[a]ny food is misbranded if its labeling is false or misleading in any particular").[11]  Moreover, Bruton's claims pursuant to the UCL, the FAL, and the CLRA are

---

[11]  This case is also distinguishable from *Loreto v. Procter & Gamble Co.*, 515 F. App'x 576 (6th Cir. Feb. 22, 2013) (unpublished), a case involving the alleged mislabeling of products with Vitamin C upon which Defendants rely heavily.  In *Loreto*, the Sixth Circuit held that a claim brought under the New Jersey Consumer Fraud Act was impliedly preempted by federal law.  As there was no mention of any New Jersey counterpart to the Sherman Law adopting the federal regulations as state law, "the *only* reason [defendant's] products were allegedly 'illegal' was because they failed to comply with FDCA labeling requirements."  *Id.* at 579.  In contrast, Bruton alleges that the products at issue in this case are illegal because they fail to comply with various

19

grounded in traditional categories of state law that involve consumer protection, false advertising, and food labeling, all of which fall within the traditional scope of the state's police powers and predate the FDCA. *See, e.g.*, *Florida Lime & Avocado Growers, Inc. v. Paul*, 373 U.S. 132, 144 (1963) ("States have always possessed a legitimate interest in the protection of (their) people against fraud and deception in the sale of food products at retail markets within their borders.") (internal quotation marks omitted); *see generally Plumley v. Massachusetts*, 155 U.S. 461, 472 (1894) ("If there be any subject over which it would seem the states ought to have plenary control, and the power to legislate in respect to which . . . it is the protection of the people against fraud and deception in the sale of food products."); *accord Lohr*, 518 U.S. at 495 (FDCA does not deny states "the right to provide a traditional damages remedy for violations of common-law duties when those duties parallel federal requirements").

Thus, the Court is not persuaded that Defendants have overcome the presumption against preemption. *See Lohr*, 518 U.S. at 485; *Chavez v. Blue Sky Natural Beverage Co.*, 268 F.R.D. 365, 373 (N.D. Cal. 2010) ("In view of the Supreme Court's determination in *Wyeth* that Congress did not intend FDA oversight to be [the] exclusive means of ensuring drug safety and effectiveness, and in the absence of authority to the contrary in the food labeling regulatory scheme, defendants have not persuaded the court that plaintiff's state-law claims obstruct federal regulation of food labeling."). Accordingly, the Court DENIES Defendants' Motion to Dismiss Plaintiffs' FAC on the basis of preemption.

### 3. Primary Jurisdiction

Alternatively, Defendants argue that the Court may invoke the doctrine of primary jurisdiction. Specifically, Defendants argue that the fact that the "FDA has issued letters and industry guidance regarding the very labeling rules Bruton seeks to enforce privately . . . evidences FDA's invocation of its primary jurisdiction by undertaking enforcement actions and working to resolve labeling issues directly with food manufacturers." Mot. at 12. Defendants urge the Court

---

provisions of the Sherman Law. *See also Samet v. Proctor & Gamble Co.*, No. 12-1891, 2013 WL 3124647, at *6-7 (N.D. Cal. June 18, 2013).

Case No.: 12-CV-02412-LHK
ORDER GRANTING-IN-PART AND DENYING-IN-PART MOTION TO DISMISS

to dismiss this case and to "allow FDA to do its job," as opposed to "creat[ing] a patchwork of court-made labeling law." *Id.*

The primary jurisdiction doctrine "allows courts to stay proceedings or to dismiss a complaint without prejudice pending the resolution of an issue within the special competence of an administrative agency." *Clark v. Time Warner Cable*, 523 F.3d 1110, 1114 (9th Cir. 2008). The doctrine applies when: "(1) [there is a] need to resolve an issue that (2) has been placed by Congress within the jurisdiction of an administrative body having regulatory authority (3) pursuant to a statute that subjects an industry or activity to a comprehensive regulatory authority that (4) requires expertise or uniformity in administration." *Syntek Semiconductor Co. v. Microchip Tech., Inc.*, 307 F.3d 775, 781 (9th Cir. 2002) (amended). However, the doctrine of primary jurisdiction "does not require that all claims within an agency's purview be decided by the agency. Nor is it intended to secure expert advice for the courts from regulatory agencies every time a court is presented with an issue conceivably within the agency's ambit." *Brown v. MCI WorldCom Network Servs., Inc.*, 277 F.3d 1166, 1172 (9th Cir. 2002) (internal quotation marks omitted). Rather, "[p]rimary jurisdiction is properly invoked when a claim is cognizable in federal court but requires resolution of an issue of first impression, or of a particularly complicated issue that Congress has committed to a regulatory agency." *Id.*

Defendants urge that, in this case, the "FDA has 'regulatory authority pursuant to a statute that subjects an industry or activity to comprehensive regulatory authority,' and resolving the issue 'requires expertise or uniformity in administration.'" Mot. at 12 (quoting *Syntek*, 307 F.3d at 781). The Court is not persuaded. While this case does involve issues within the jurisdiction of the FDA, the Ninth Circuit has made clear that only those claims raising issues of first impression or particular complexity are appropriately dismissed or stayed based on primary jurisdiction. *See Brown*, 277 F.3d at 1172. Based on the information available at this stage, however, the issues in this case are neither novel nor especially complex. Defendants effectively concede that Bruton's claims are not ones of first impression, stating that "there is no label element Plaintiff challenges

Case No.: 12-CV-02412-LHK
ORDER GRANTING-IN-PART AND DENYING-IN-PART MOTION TO DISMISS

1    that FDA regulation or policy does not address." Mot. at 10.[12]  Likewise, Bruton's claims do not

2    appear to raise highly technical issues uniquely within the FDA's expertise.  As with so many of

3    the other food misbranding cases filed recently within this district, Bruton's case is "far less about

4    science than it is about whether a label is misleading."  *Jones v. ConAgra Foods, Inc.*, 912 F. Supp.

5    2d 889, 898 (N.D. Cal. 2012).  "'[E]very day courts decide whether conduct is misleading,'" and

6    the "'reasonable-consumer determination and other issues involved in Plaintiff's lawsuit are within

7    the expertise of the courts to resolve.'"  *Id.* at 899 (quoting *Lockwood*, 597 F. Supp. 2d at 1035, and

8    *Delacruz*, 2012 WL 2563857, at *10; *see also Chacanaca v. Quaker Oats Co.*, 752 F.Supp.2d

9    1111, 1124 (N.D. Cal. 2010) (stating that "plaintiffs advance a relatively straightforward claim:

10   they assert that defendant has violated FDA regulations and marketed a product that could mislead

11   a reasonable consumer. . . . [T]his is a question courts are well-equipped to handle").[13]  Therefore,

12   the Court DENIES Defendants' Motion to Dismiss Bruton's FAC based on the doctrine of primary

13   jurisdiction.

14       **C.    Constitutional and Statutory Standing**

15       Defendants also argue that Bruton lacks Article III standing, *see* Mot. at 17-18, as well as

16   standing to assert a claim under the UCL, the FAL, and the CLRA, *see id.* at 22-23.  Specifically,

17   Defendants contend that Bruton fails to plead either a cognizable legal injury or plausible reliance.

18   *See id.* at 15.

19       **1.    Legal Standard**

20   ─────────────────

21   [12]  This case is thus easily distinguishable from the recent decision in *Hood v. Wholesoy & Co*, No.
     12-5550, 2013 WL 3553979 (N.D. Cal. July 12, 2013).  The FDA's position on the labeling

22   practices in *Hood* was, at least in the *Hood* court's view, unclear and in flux, which militated in
     favor of deferring to the FDA to decide what the appropriate rules should be in the first instance.

23   *See id.* at *5-6.  Here, by contrast, there is no allegation that the FDA's stance is uncertain with
     respect to any of Bruton's claims.

24   [13]  Other courts in this district have similarly rejected arguments based on primary jurisdiction in
     the food labeling context, at least so long as the FDA has made its position on the labels at issue

25   reasonably clear and is not actively engaged in revising the applicable regulations or policy.  *See,
     e.g., Trazo v. Nestlé USA, Inc.*, No. 12-2272, 2013 WL 4083218, at *6 n.55 (N.D. Cal. Aug. 9,

26   2013); *Ivie v. Kraft Foods Global, Inc.* (*Ivie II*), No. 12-2554, 2013 WL 3296616, at *7-8 (June 28,
     2013); *Samet*, 2013 WL 3124647, at *7; *Janney v. Mills*, No. 12-3919, 2013 WL 1962360, at *6-7

27   (N.D. Cal. May 10, 2013) (same); *Ivie I*, 2013 WL 685372, at *5-7 (N.D. Cal. Feb. 25, 2013)
     (declining to apply primary jurisdiction, except as to one claim for which the FDA was in the

28   process of changing the applicable regulation).

Case No.: 12-CV-02412-LHK
ORDER GRANTING-IN-PART AND DENYING-IN-PART MOTION TO DISMISS

United States District Court
For the Northern District of California

### a.     Article III Standing

To have Article III standing, a plaintiff must plead and prove that he or she has suffered

sufficient injury to satisfy the "case or controversy" requirement of Article III of the United States

Constitution.  *See Clapper v. Amnesty Int'l*, --- U.S. ---, 133 S. Ct. 1138, 1146 (2013) ("'One

element of the case-or-controversy requirement' is that plaintiffs 'must establish that they have

standing to sue.'" (quoting *Raines v. Byrd*, 521 U.S. 811, 818 (1997))).  Therefore, for Article III

standing, a plaintiff must allege: (1) injury-in-fact that is concrete and particularized, as well as

actual and imminent; (2) wherein injury is fairly traceable to the challenged action of the

defendant; and (3) redressable by a favorable ruling.  *Monsanto Co. v. Geertson Seed Farms*, ---

U.S. ---, 130 S. Ct. 2743, 2752 (2010); *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC),

Inc.,* 528 U.S. 167, 180-81 (2000) (same).  "The party invoking federal jurisdiction bears the

burden of establishing these elements." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).

### b.     Statutory Standing

Bruton also must demonstrate standing under the UCL's unlawful, unfair, and fraudulent

prongs; the FAL; and the CLRA to bring causes of action for violations of these statutes. To have

standing under the FAL and the CLRA, a plaintiff must claim to have relied on the alleged

misrepresentation and economic injury.  *See* Cal. Bus. & Prof. Code § 17535 (providing that a

plaintiff must have "suffered injury in fact and have lost money or property as a result of a

violation of this chapter" to have standing); *Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350,

1367 (2010) (finding plaintiff's CLRA claim failed because plaintiff failed to allege facts showing

that he "relied on any representation by" defendant).

Under California's UCL and FAL, a private person has standing only if he or she "has

suffered injury in fact *and* has lost money or property as a result of the unfair competition."  Cal.

Bus. & Prof. Code § 17204 (emphasis added); *see also Kwikset Corp. v. Superior Court*, 51 Cal.

4th 310, 322 (2011) (noting that, to have standing to bring a claim under the UCL or FAL, a named

plaintiff must: "(1) establish a loss or deprivation of money or property sufficient to qualify as

injury in fact, i.e., *economic injury*, and (2) show that that economic injury was the result of, i.e.,

*caused by*, the unfair business practice or false advertising that is the gravamen of the claim").

1    Similarly, for the purpose of bringing a CLRA cause of action, "[a] plaintiff . . . must not only be

2    exposed to an unlawful practice but also have suffered some kind of damage." *Bower v. AT & T*

3    *Mobility, LLC*, 196 Cal. App. 4th 1545, 1556 (2011) (internal quotation marks omitted).

4              **2.       Analysis**

5              Defendants argue that Bruton cannot prove that she suffered a concrete harm because her

6    alleged injury arises from the allegation that the products she purchased are "legally worthless."

7    Mot. at 17 (citing to FAC ¶ 91). According to Defendants, Bruton's alleged injury is but a "legal

8    construct" rather than a "genuine or concrete harm." *Id*. Thus, "[e]ven if some technical

9    noncompliance with FDA rules existed . . . no cognizable harm has flowed to Plaintiff." *Id*.

10             In opposition, Bruton contends that her allegations are clearly sufficient to plead standing.

11   Specifically, Bruton alleges economic injury based on the fact that she paid a "premium" for

12   products that she would not have otherwise purchased had she known the truth about Defendants'

13   false and misleading labels. Opp'n at 13; *see, e.g.*, FAC ¶ 73 ("Because of these improper nutrient

14   content claims, Plaintiff purchased these products and paid a premium for them."); *see also* FAC

15   ¶ 106 ("Plaintiff would not have purchased the Defendants' Misbranded Food Products had she

16   known they were not capable of being legally sold or held."). Essentially, Bruton alleges that she

17   and class members "spent money that, absent defendants' actions, they would not have spent,"

18   *Maya v. Centex Corp.*, 658 F.3d 1060, 1069 (9th Cir. 2011), and she points out that the Ninth

19   Circuit has acknowledged that "[t]his is a quintessential injury-in-fact," *id*. *See also Sierra Club v.*

20   *Morton,* 405 U.S. 727, 733 (1972) ("[P]alpable economic injuries have long been recognized as

21   sufficient to lay the basis for standing.").

22             The Court finds that Bruton's allegations suffice—at this stage of the litigation—to confer

23   Article III standing for the products that she purchased that featured "Good Source," "Excellent

24   Source," "As Healthy As Fresh," and sugar-related claims.[14] Bruton alleges that she read the labels

---

[14]  However, as discussed in Part III.D.1.d, Bruton has failed to allege a plausible UCL, FAL, or
CLRA claim based on Defendants "all natural" labels. She also has not alleged why she personally
was misled by the "all natural labels" or why she did not receive the full value for these purchases,
given that the products she obtained were in fact made with 100% natural fruit, as advertised. As
such, Bruton cannot demonstrate economic injury or causation, and thus cannot demonstrate
standing under the UCL, the FAL, and the CLRA for her claims based on the "all natural" labels.

24

Case No.: 12-CV-02412-LHK
ORDER GRANTING-IN-PART AND DENYING-IN-PART MOTION TO DISMISS

of the products she purchased prior to purchasing them, that she did not know (and had no reason to know) that the labels' nutritional claims were untrue, and that she relied on Defendants' representations to select their products over others. *See* FAC ¶¶ 110-115. Thus, Bruton has adequately alleged injury-in-fact—namely, by claiming that she paid for products that she would not otherwise have purchased—that is traceable to Defendant's conduct—in that Bruton allegedly relied on Defendants' misrepresentations in making her purchasing decisions—and redressable by a ruling of this court.[15] *See also Brazil*, 2013 WL 1209955, at *11-13 (holding that plaintiff's allegations that he: (1) purchased products he would not have otherwise purchased had he known the truth about Defendants' "unlawful labeling practices and actions," and (2) paid an "unwarranted premium" due to Defendants' false and misleading labels, satisfied the injury-in-fact requirement for standing at the motion to dismiss stage); *Lanovaz v. Twinings N. Am., Inc.*, No. 12-02646, 2013 WL 675929, at *6 (N.D. Cal. Feb. 25, 2013) (holding, in the context of a similar putative class action lawsuit asserting claims based on defendant's alleged misbranding of green tea, that defendant's argument regarding injury based on "legally worthless" products "misses the mark" because plaintiff "would not have *purchased* the product if she had known that the label was unlawful"); *cf. Pirozzi v. Apple Inc.*, 913 F. Supp. 2d 840, 846-47 (N.D. Cal. 2012) ("Overpaying for goods or purchasing goods a person otherwise would not have purchased based upon alleged misrepresentations by the manufacturer would satisfy the injury-in-fact and causation requirements for Article III standing.").[16]

---

Because Bruton has not demonstrated statutory standing with regard to her "all natural" claims, the Court need not address Article III standing for these claims.

[15] Because Bruton alleges that she suffered actual economic injury as a result of Defendants' misrepresentations, the Court need not and will not address Bruton's alternative argument that she suffered an independent injury merely because she purchased a product that could not legally be sold. Opp'n at 19-20.

[16] Notably, several other courts within this district have found similar allegations sufficient for the purposes of alleging "injury in fact." *See, e.g.*, *Chacanaca*, 752 F. Supp. 2d at 1125 (finding injury in fact based on "the *purchase* of food products that contain an ingredient the plaintiffs find objectionable" and which they otherwise "would not have purchased"). As Judge Hamilton stated in *Astiana v. Ben & Jerry's Homemade, Inc.*, "[i]t may ultimately prove true, as defendants claim, that plaintiffs have no actionable claims. However, that is not the same as finding no standing." *Astiana v. Ben & Jerry's Homemade, Inc.*, No. 10-4387, 2011 WL 2111796, at *5 (N.D. Cal. May 26, 2011) ("*Ben & Jerry's Homemade, Inc.*").

25

United States District Court
For the Northern District of California

United States District Court

For the Northern District of California

The Court further finds that Bruton has plausibly alleged reliance and causation for the

purpose of statutory standing under the UCL, the FAL, and the CLRA based on the products that

she purchased that featured "Good Source," "Excellent Source," "As Healthy As Fresh," and

sugar-related claims. "A plaintiff may establish that the defendant's misrepresentation is an

'immediate cause' of the plaintiff's conduct by showing that in its absence the plaintiff 'in all

reasonable probability' would not have engaged in the injury-producing conduct." *In re Tobacco*

*II Cases*, 46 Cal. 4th 298, 326 (2009) (internal quotation marks omitted). In addition, "while a

plaintiff must allege that the defendant's misrepresentations were an immediate cause of the injury-

causing conduct, the plaintiff is not required to allege that those misrepresentations were the sole or

even the decisive cause of the injury-producing conduct." *Id*. at 328. Further, "a presumption, or

at least an inference, of reliance arises wherever there is a showing that a misrepresentation was

material." *Id*. at 327.

In this case, Bruton alleges that she "read and reasonably relied on" Defendants' labels,

"including labels with nutrient content claims," when making her decision to purchase Defendants'

products. FAC ¶ 111; *see also* FAC ¶ 10 ("Bruton relies on the representations made on product

labeling to make choices about what food to purchase for her child."). Notably, all of the products

that Bruton allegedly purchased include one or all of the "nutrient content" claims, "natural"

claims, and "sugar related" claims. *See, e.g.*, FAC ¶ 110 (showing that the Gerber Nature Select

2nd Foods Fruit–Banana Plum Grape label includes claims on the label that the product is "As

Healthy As Fresh," has "No Added Refined Sugar," and is "Made with 100% Natural Fruit").

In addition, Bruton contends that, "[b]ased on Defendants' [labeling] claims, Plaintiff

believed that the products were a better and healthier choice than other available products." FAC ¶

112; *see also* FAC ¶ 73 ("Because of these improper nutrient content claims, Plaintiff purchased

these products and paid a premium for them."). She further asserts that her reliance was reasonable

because "[c]onsumers rely on food labeling claims with the understanding that nutritional

information on product packaging is highly regulated and, therefore, should be trustworthy." FAC

¶ 15; *see also* FAC ¶ 16 ("Consumers often do not look beyond the nutrient content claims and

health claims made on the front of the food product packaging, and are less likely to check the

**United States District Court**
For the Northern District of California

1     Nutrition Facts panels contained on the back of packaging where front-of-packaging nutrient

2     content claims are present.").

3          While Defendants dispute that a reasonable consumer would actually be familiar with the

4     FDA's policy and regulations, rely on Defendants' allegedly misbranded labels, and then be

5     deceived by them, *see* Mot. at 15, the Court recognizes that whether a practice is "deceptive,

6     fraudulent, or unfair" is generally a question of fact that is not appropriate for resolution on the

7     pleadings. *See Williams v. Gerber Products Co.*, 552 F.3d 934, 938-39 (9th Cir. 2008) (citation

8     omitted); *see also Khasin*, 2012 WL 5471153, at *7 (rejecting a similar plausibility argument

9     because "the issues Defendant raise[s] ultimately involve questions of fact as to whether Plaintiff

10    was or was not deceived by the labeling; this argument is therefore beyond the scope of this Rule

11    12(b)(6) motion"). Therefore, the Court does not dismiss these claims due to implausibility.

12          Moreover, because Bruton has alleged what a reasonable consumer may find to be false and

13    misleading about the "good source," "excellent source," "As Healthy As Fresh," and sugar-related

14    claims, as discussed further in Part III.D.1., the Court finds that these claims also satisfy Rule

15    9(b)'s heightened pleading requirement. *See Yourish v. Cal. Amplifier*, 191 F.3d 983, 993 (9th Cir.

16    1999) (holding that, in addition to alleged the time, place, and content of an alleged

17    misrepresentation, a "plaintiff must set forth what is false or misleading about a statement, and why

18    it is false. In other words, [a] plaintiff must set forth an explanation as to why the statement or

19    omission complained of was false or misleading.") (internal quotation marks omitted).

20          Thus, the Court finds that Bruton has standing to assert claims, pursuant to the UCL, the

21    FAL, and the CLRA, which are predicated on the "Good Source," "Excellent Source," "As Healthy

22    As Fresh," and sugar-related claims that are featured on the products that she allegedly purchased.

23          **3.      Products that Bruton Did Not Purchase and Websites that Bruton Did
                      Not See**

24          Defendants also challenge Bruton's references to products that she did not allegedly

25    purchase. *See* Mot. at 13 (citing FAC ¶¶ 70, 77-78, and all products listed in Exhibit A to the FAC

26    that Bruton does not allege that she actually purchased). Defendants argue that such allegations

27

28

Case No.: 12-CV-02412-LHK
ORDER GRANTING-IN-PART AND DENYING-IN-PART MOTION TO DISMISS

may not form the basis of a valid claim. *Id.* In addition, Defendants contend that these claims fail to meet the more stringent pleading requirements of Rule 9(b). Mot. at 16-17.

Courts are split as to whether an actual purchase is required to establish the requisite injury-in-fact for the purpose of standing or whether this is an issue better resolved at the class certification stage. *Compare Granfield v. NVIDIA Corp.,* No. 11–05403, 2012 WL 2847575, at *6 (N.D. Cal. July 11, 2012) ("[W]hen a plaintiff asserts claims based both on products that she purchased and products that she did not purchase, claims relating to products not purchased must be dismissed for lack of standing."), *with Astiana v. Dreyer's Grand Ice Cream, Inc.,* No. 11-2910, 2012 WL 2990766, at *13 (N.D. Cal. July 20, 2012) (holding that "any concerns . . . about material differences are better addressed at the class certification stage rather than at the 12(b)(6) stage"). The Supreme Court has noted, without clearly resolving, this tension in the law. *See Gratz v. Bollinger,* 539 U.S. 244, 263 n.15 (2003) (declining to resolve whether variations in the factual circumstances underlying plaintiffs' and absent class members' injuries "is appropriately addressed under the rubric of standing or adequacy," and "not[ing] that there is tension in our prior cases in this regard").

Within this district, some courts have analyzed whether there is "sufficient similarity" between the products purchased by the plaintiff and those allegedly purchased by the absent class members. In *Astiana v. Dreyer's Grand Ice Cream, Inc.*, for example, Judge Chen found standing where Plaintiffs were "challenging the same kind of food products (*i.e.*, ice cream) as well as the same labels for all of the products—*i.e.*, 'All Natural Flavors' . . . and 'All Natural Ice Cream' . . . [because whether] the different ice creams may ultimately have different ingredients is not dispositive as Plaintiffs are challenging the same basic mislabeling practice across different product flavors." 2012 WL 2990766, at *13. Similarly, in *Colucci v. ZonePerfect Nutrition Co.*, No. 12-2907, 2012 WL 6737800 (N.D. Cal. Dec. 28, 2012), Judge Conti held that one plaintiff had standing for purchasing one type of nutrition bar, despite not purchasing the other nineteen varieties of nutrition bars because the accused products were "all of a single kind, that is, . . . nutrition bars" and "[t]hey share a uniform size and shape," such that "the only obvious difference between them is their flavor." *Id.* at *4.

28

Here, Bruton asserts claims involving many different food products, some of which are
specific to what Bruton allegedly purchased and some of which are so broad that they are
practically unidentifiable.  *Compare* FAC ¶ 110 (listing the ten products that that Plaintiff allegedly
purchased), *with* FAC ¶ 70 (listing mere "examples" of products that made "Good Source" and
"Excellent Source" claims); *see also* FAC ¶ 83 ("*Many* of the Defendants' products that are labeled
with a 'No Added Sugar' or similar sugar-related nutrient content claim contain disqualifying
levels of calories") (emphasis added).  In addition, Bruton asserts several different bases for
Defendants' alleged misbranding.  While Bruton does include as Exhibit A to her FAC a chart that
lists "Gerber Label Representations," this chart appears to include several inaccuracies.  *see* FAC,
Ex. A.[17]

In light of the vagueness of several of Bruton's allegations, as well as the apparent errors in
Bruton's chart of Gerber Label Misrepresentations, the Court cannot determine whether all the
products that Bruton seeks to include in her complaint are indeed substantially similar to the
products that she did purchase.  Thus, the Court GRANTS Defendants' Motion to Dismiss
Bruton's claims for products that she did not purchase, though it affords Bruton leave to amend.
Should Bruton decide to file a Second Amended Complaint, Bruton is ORDERED to revise the
table she attached as Exhibit A to her FAC to not just include "exemplar nutrient content claims"
for each product category and product flavor, but the exact nutrient content claims at issue for each
product category and product flavor, as well as the legal claims that correspond to each
representation.  Any amended complaint must also allege (if it is to survive a motion to dismiss)
that the products Bruton did not purchase are substantially similar to those that she did purchase,
and also that the two categories of products contained substantially similar misrepresentations.

Bruton also alleges that she "read and reasonably relied upon Defendants' unlawful and
deceptive misrepresentations at Defendants' website, www.gerber.com, before purchasing

---

[17]  For example, although Bruton's chart represents that the Graduates Wagon Wheels product
category involves the "Very Berry Blend" and "Truly Tropical Blend" products and includes
claims such as "Nutritional for Healthy Growth & Natural Immune Support" and "NutriProtect C,
A, E," the picture of this product included in Bruton's FAC does not make either of these alleged
nutrient claims.  *See* FAC ¶ 110 (showing, instead, that the Graduates Wagon Wheels claims to be
a "Good Source of Vitamin E, Iron, & Zinc").

Case No.: 12-CV-02412-LHK
ORDER GRANTING-IN-PART AND DENYING-IN-PART MOTION TO DISMISS

1   Defendants' Misbranded Food Products," because "Defendants' web address is printed on its

2   package labels, and by law Defendants' website misrepresentations are incorporated in its labels."

3   FAC ¶ 111.  However, Bruton does *not* allege that she ever actually viewed any of the alleged

4   misrepresentations at the Gerber website.  Bruton's theory of incorporation by reference does not

5   suffice to plead actual reliance on the statements on Gerber's website, and the Court therefore finds

6   that Bruton does not have standing to assert claims based on advertisements and websites that she

7   did not view personally.[18]  *See Kwikset*, 51 Cal. 4th at 326 (a plaintiff must "demonstrate actual

8   reliance on the allegedly deceptive or misleading statements"); *Durell v. Sharp Healthcare,* 183

9   Cal. App. 4th 1350, 1363 (2010) (holding that there was no reliance where "SAC [did] not allege

10  [plaintiff] ever visited [defendant's] Web site").

11      Thus, the Court DENIES Defendants' Motion to Dismiss Bruton's FAC on the basis of

12  Article III or statutory standing based on products that Bruton purchased (except with regard to the

13  "all-natural" labels).  The Court GRANTS without prejudice Defendants' Motion to Dismiss

14  Bruton's claims regarding based on products that Bruton does not allege that she purchased and

15  websites that she does not allege to have visited or seen.

16      **D.      Failure to State Viable Causes of Action**

17      Finally, Defendants argue that the Court must dismiss, pursuant to Rule 12(b)(6), Bruton's

18  claims for violation of the UCL for unlawful, unfair, and fraudulent business acts and practices

19  (claims 1, 2, and 3);[19] violation of the FAL for misleading, deceptive, and untrue advertising;[20]

20

21  ---

[18]  Defendants also argue that references to the Nestlé Annual Report in the FAC, *see* FAC ¶¶ 4-6,
22  are impermissible because Bruton never claims to have read or relied on the Annual Report.  Mot
    at 12-13.  Unlike Bruton's claims regarding statements on the Gerber website, however, Bruton's
23  references to the Annual Report serve only to provide background for the substantive issues raised
    in this case.  Consequently, the Court finds it unnecessary to dismiss any claims based on the
24  Annual Report, because the FAC makes no such claims.
[19]  The UCL's coverage has been described as "sweeping," and its standard for wrongful business
25  conduct is "intentionally broad."  *In re First Alliance Mortg. Co.*, 471 F.3d 977, 995 (9th Cir.
    2006) (citing *Cel-Tech Communs., Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999)).  In
26  order to state a cause of action under the fraud prong of the UCL, "a plaintiff need not show that he
    or others were actually deceived or confused by the conduct or business practice in question."
27  *Schnall v. Hertz Corp.*, 78 Cal. App. 4th 1144, 1167 (2000).  "Instead, it is only necessary to show
    that members of the public are likely to be deceived."  *Podolsky v. First Healthcare Corp.*, 50 Cal.
28  App. 4th 632, 648 (1996).

Case No.: 12-CV-02412-LHK
ORDER GRANTING-IN-PART AND DENYING-IN-PART MOTION TO DISMISS

violation of the CLRA (claim 6);[21] restitution based on unjust enrichment/quasi-contract (claim 7);

violation of the Song-Beverly Consumer Warranty Act (claim 8); and violation of the Magnuson-

Moss Warranty Act (claim 9).

### 1. Defendants' Asserted Compliance With FDA Regulations

First, Defendants argue that Bruton's claims must be dismissed because they are not

plausible and because Bruton cannot show that the statements on Defendants' labels violate FDA

regulations or policy. Mot. at 14, 18. In fact, Defendants maintain that the statements on Gerber's

labels are truthful, and therefore constitute commercial speech protected by the First Amendment.

Mot. at 18. As the Supreme Court stated in *Central Hudson Gas & Electric Corp. v. Public*

*Service Commission*, 447 U.S. 557 (1980), "[f]or commercial speech to come within [a limited

form of First Amendment protection], it at least must concern lawful activity and not be

misleading." *Id*. at 566; *see also Posadas de Puerto Rico Assocs. v. Tourism Co.*, 478 U.S. 328,

340 (1986) (same); *see also Cent. Hudson Gas & Elec. Corp.*, 447 U.S. at 563 ("The government

may ban forms of communication more likely to deceive the public than to inform it."). "Once it is

determined that the First Amendment applies to the particular kind of commercial speech at issue,

then the speech may be restricted only if the government's interest in doing so is substantial, the

restrictions directly advance the government's asserted interest, and the restrictions are no more

extensive than necessary to serve that interest." *Posadas de Puerto Rico Assocs.*, 478 U.S. at 340.

To the extent that Defendants attempt to dispute the merits of Bruton's allegations by virtue

of invoking a First Amendment defense, the Court finds such arguments inappropriate for a motion

---

[20] California's FAL makes it unlawful for a business to disseminate any statement "which is untrue
or misleading, and which is known, or which by the exercise of reasonable care should be known,
to be untrue or misleading." Cal. Bus. & Prof. Code § 17500. "In determining whether a statement
is misleading under the statute, the primary evidence in a false advertising case is the advertising
itself." *Colgan v. Leatherman Tool Grp.*, 135 Cal. App. 4th 663, 679 (2006) (internal quotation
marks omitted). Whether an advertisement is "misleading" must be judged by the effect it would
have on a reasonable consumer. *Williams*, 552 F.3d at 938.

[21] The CLRA prohibits "'unfair methods of competition and unfair or deceptive acts or practices'
in transactions for the sale or lease of goods to consumers." *Daugherty v. Am. Honda Motor Co.*,
144 Cal. App. 4th 824, 833 (2006) (citing Cal. Civ. Code § 1770(a)). "Conduct that is 'likely to
mislead a reasonable consumer' . . . violates the CLRA." *Colgan*, 135 Cal. App. 4th at 680
(quoting *Nagel v. Twin Labs., Inc.*, 109 Cal. App. 4th 39, 54 (2003)).

Case No.: 12-CV-02412-LHK
ORDER GRANTING-IN-PART AND DENYING-IN-PART MOTION TO DISMISS

to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6).  However, to the extent

Defendants challenge whether Bruton has sufficiently stated a claim, the Court considers

Defendants' contentions.

      For the reasons stated herein, the Court finds that Bruton has sufficiently stated a claim for

the nutrient content "Source" claims, "As Healthy As Fresh" claims, and sugar-related labels.  The

Court finds that Bruton has not plausibly alleged a claim based on the "100% Natural" labeling.

### a.      Nutrient Content "Source" Claims

      As noted in Part I.A.1, Bruton alleges that Gerber is precluded from making "nutrient

content" claims on products intended for children less than two years of age, and that some of the

products that she purchased included labels claiming that the products were an "excellent source"

or a "good source" of vitamins and minerals.  *See* FAC ¶ 60.  According to Bruton, "[e]xcept for

claims regarding the percentage of a vitamin or mineral for which there is an established Reference

Daily Intake (RDI), a nutrient content claim may not be made for a food intended specifically for

use by infants and children less than two years of age unless the claims are specifically provided

for in parts 101, 105, or 107 of FDA regulations."  FAC ¶ 60(a) (citing 21 C.F.R. § 101.13(b)(3)).

      However, pursuant to 21 C.F.R. § 101.13(q)(3)(i), claims regarding the percentage of a

vitamin or mineral for which there is an established Reference Daily Intake (as defined in 21

C.F.R. § 101.9)—including foods intended specifically for use by infants and children less than 2

years of after—"*may* be made on the [food] label . . . *unless* such claim is expressly prohibited by

regulation under section 403(r)(2)(A)(vi) of the act."  21 C.F.R. § 101.13 (q)(3)(i) (emphasis

added).[22]  Consequently, Defendants contend that their "good source" and "excellent source"

claims are simply statements that describe the percentage of a nutrient in a food relative to an RDI,

and therefore fall within the exception to 21 C.F.R. § 101.13(q)(3)(i).  Mot. at 19.  As Defendants

note, "'good source' is used to describe a food that has 10-19% of the RDI for a vitamin or a

mineral and 'excellent source' is used to describe a food that has 20% or more of the RDI."  *Id.*

---

[22]  Pursuant to 21 C.F.R. § 101.9(b)(1), "[w]hen [a] food is specially formulated or processed for
use by infants or by toddlers, a serving or serving size means an amount of food customarily
consumed per eating occasion by infants up to 12 months of age or by children 1 through 3 years of
age, respectively."

Case No.: 12-CV-02412-LHK
ORDER GRANTING-IN-PART AND DENYING-IN-PART MOTION TO DISMISS

(citing 21 C.F.R. § 101.54). Defendants contend that the Gerber products comply with these RDI values.

In response, Bruton cites a February 22, 2010 FDA warning letter sent to Gerber in which, among other things, the FDA informed Gerber that its Gerber Graduates Fruit Puffs were misbranded because, pursuant to 21 C.F.R. § 101.54, "[t]he labeling for these products includes nutrient content claim [*sic*] such as 'good source of iron, zinc, and vitamin E for infants and toddlers," which is not permitted for foods intended specifically for infants and children under age 2. FAC, Ex. B. As the Supreme Court stated in *Bowles v. Seminole Rock & Sand Co.*, 325 U.S. 410 (1945), "the ultimate criterion" in interpreting an administrative regulation "is the administrative interpretation, which becomes of controlling weight unless it is plainly erroneous or inconsistent with the regulation." *Id*. at 414. Notably, Section 101.54 states that "excellent source" and "good source" claims "may be used on the label and in the labeling of foods, *except meal products* as defined in § 101.13(l) and *main dish* products as defined in § 101.13(m)," provided that the food contains "20 percent or more of the RDI or the DRV per reference amount customarily consumed" for "excellent source" claims and "10 to 19 percent of the RDI or the DRV per reference amount customarily consumed" for "good source" claims. 21 C.F.R. § 101.54 (emphasis added).[23] Defendants do not contest that the products that Bruton allegedly purchased may constitute "main dish" or "meal products." Defendants' only direct response to this letter is that it reinforces their other arguments that: "(1) this case should be dismissed under the doctrine of primary jurisdiction; and (2) Plaintiff's personal enforcement scheme obstructs federal agency

---

[23] Pursuant to 21 C.F.R. § 101.13(l), meal products include those products that are "represented as, or [are] in a form commonly understood to be, a breakfast, lunch, dinner, or meal" and defined as a food that "makes a major contribution to the total diet by": "(i) Weighing at least 10 ounces (oz) per labeled serving; and (ii) Containing not less than three 40-g portions of food, or combinations of foods," from two or more food groups including the "Bread, cereal, rice, and pasta group," "Fruits and vegetables group," "Milk, yogurt, and cheese group," "Meat, poultry, fish, dry beans, eggs, and nuts group." In addition, pursuant to 21 C.F.R. § 101.13(m), a "main dish product" is defined as a food that is "represented as, or is in a form commonly understood to be, a main dish (e.g., not a beverage or a dessert)" and makes a major contribution to a meal by "[c]ontaining not less than 40 g of food, or combinations of foods," from at least two food groups out of the "Bread, cereal, rice, and pasta group," "Fruits and vegetables group," "Milk, yogurt, and cheese group," and "Meat, poultry, fish, dry beans, eggs, and nuts group."

33

United States District Court
For the Northern District of California

1    regulation and is thus preempted under *Buckman* and its progeny." Reply at 15. As discussed

2    *supra*, the Court is not persuaded by either argument.

3            Accordingly, the Court finds that Bruton has at least alleged a plausible claim that Gerber's

4    use of nutrient content "Source" claims are misbranded and deceptive for the purpose of surviving

5    a motion to dismiss.

6                           **b.    Nutrient Content "As Healthy As Fresh" Claims**

7            Bruton also contends that the trademark "As Healthy As Fresh" as it appears on Gerber's

8    food products is an unauthorized nutrient content claim in violation of FDCA 403(r)(1)(A) and 21

9    U.S.C. § 343(r)(1)(A). FAC ¶ 60(b). Of the ten products that Plaintiff allegedly purchased, three

10   of those products contained the "As Healthy As Fresh" label: (1) Gerber Nature Select 2nd Foods

11   Fruit–Banana Plum Grape; (2) Gerber Nature Select 2nd Foods Fruit–Apples and Cherries; and (3)

12   Gerber Nature Select 2nd Foods Vegetables–Carrots. FAC ¶ 110.

13           Bruton alleges that these products bear the nutrient content claim "healthy." The

14   circumstances under which "healthy" claims are permitted are defined in 21 C.F.R. § 101.65(d),

15   but these regulations do not allow the "healthy" claim for products specifically intended for

16   children under two years of age pursuant to 21 C.F.R. § 101.13(b)(3). In further support of

17   Bruton's claims, Bruton relies on the February 2010 FDA warning letter which states as follows:

18           The 2nd Foods Carrots product label bears the nutrient content claim "healthy" as
             part of the statement "As Healthy As Fresh" . . . [the] circumstances under which
19           such claims are permitted are defined in 21 CFR 101.65(d), 21 CFR 101.54(b), and
20           21 CFR 101.60(c). However, these regulations do not allow the claim for products
             specifically intended for children under two years of age.
21
     Opp'n at 21 (citing FAC, Ex. B).

22           Defendants do not specifically respond to Bruton's arguments regarding why Gerber's "As

23   Healthy As Fresh" claims may fail to comply with specific federal regulations. Rather, Defendants

24   merely claim that "As Healthy As Fresh" is not an unauthorized nutrient content claim but "a

25   dietary guidance statement that conveys the important message that processed vegetables and fruits

26   are as healthy for a child, or anyone for that matter, as fresh vegetables and fruits." Mot. at 19.

27

28

**United States District Court**
For the Northern District of California

34

1    Further, Defendants contend that this trademark slogan is, at most, "non-actionable opinion or

2    puffery," and therefore cannot serve as a basis for liability. Mot. at 20.

3          In order to state a claim under the UCL, the FAL, or the CLRA, a plaintiff must allege that

4    statements or other representations appearing on defendants' product labels are likely to deceive a

5    reasonable consumer. *Freeman v. Time, Inc.*, 68 F.3d 285, 289 (9th Cir. 1995). Statements that

6    amount to mere opinion or puffery are not actionable because no reasonable consumer relies on

7    mere "puffery." As the Ninth Circuit explained in *Cook, Perkiss and Liehe, Inc. v. Northern*

8    *California Collection Service Inc.*, 911 F.2d 242 (9th Cir. 1990), "[t]he common theme that seems

9    to run through cases considering puffery in a variety of contexts is that consumer reliance will be

10   induced by specific rather than general assertions." *Id.* at 246. Consequently, "[a]dvertising which

11   merely states in general terms that one product is superior is not actionable. However,

12   misdescriptions of specific or absolute characteristics of a product are actionable." *Id.* (internal

13   quotation marks omitted). For example, in *Consumer Advocates v. Echostar Satellite Corp.*, 113

14   Cal. App. 4th 1351 (2003), the California Court of Appeal found that the descriptions of a satellite

15   television system as possessing "crystal clear digital video" and "CD quality audio" were non-

16   actionable, as the representations were nothing more than "boasts, all-but-meaningless

17   superlatives," and "claim[s] which no reasonable consumer would take as anything more weighty

18   than an advertising slogan." *Id.* at 1361; *cf. Cook, Perkiss and Liehe, Inc.*, 911 F.2d at 246 (noting

19   that, while "an advertiser's statement that its lamps were far brighter than any lamp ever before

20   offered for home movies" was found to be puffery, allegations of superior brightness based on

21   statements such as "35,000 candle power and 10-hour life" did support a potential Lanham Act

22   claim) (internal quotation marks omitted).

23         Unlike in *Consumer Advocates* and *Cook, Perkiss and Liehe, Inc.*, however, the products at

24   issue here are covered by federal regulations which impose specific labeling requirements and

25   which appear to assume that consumers in fact *do* rely on health-related claims on labels. Indeed,

26   Congress passed the NLEA, in part, in response to "unfounded health claims" that companies were

27   making "in the marketplace." *See* H.R. Rep. No. 101-538 (1990), *reprinted in* 1990 U.S.C.C.A.N.

28   3336, 3339; *see also id.* ( "Health claims supported by a significant scientific agreement can

1   reinforce the Surgeon General recommendations and help Americans to maintain a balanced and

2   healthful diet . . . Therefore, legislation with respect to health claims is also both desirable and

3   necessary.").  Consequently, at the very least, there appears to be a question of fact regarding

4   whether a reasonable consumer would be likely to be misled by the meaning of the word "healthy"

5   on a food label.  *See Williams*, 552 F.3d at 939.

6          For purposes of a motion to dismiss, the Court finds that the "As Healthy As Fresh" claims

7   do not fall into the category of non-actionable puffery.  Bruton has alleged a plausible claim for the

8   purpose of surviving this motion to dismiss.

9                  **c.**     **Sugar-Related Claims**

10          Bruton also alleges that Gerber food products make unlawful sugar-related claims.  First,

11   Bruton contends that Gerber's claims that certain products contain "No Added Sugar" or "No

12   Added Refined Sugar" are unlawful because these nutrient claims may not be made on food

13   products intended for children under two years of age.  *See* 21 C.F.R. § 101.13(b)(3) (prohibiting

14   all nutrient content claims on products intended for children under two, except as specifically

15   provided for elsewhere); 21 C.F.R. § 101.60(c)(4) (allowing "No Added Sugar" claims only with

16   respect to dietary supplements or vitamins intended for children under two).  Second, Bruton

17   alleges that the "No Added Sugar" and "No Added Refined Sugar" claims are unlawful because

18   they contain "disqualifying levels of calories that prohibit the claim from being made absent a

19   mandated disclosure statement warning of the higher caloric level of the products" in violation of

20   21 C.F.R. § 101.60(c)(2).  FAC ¶ 83.

21          Defendants do not move to dismiss Bruton's FAC on the basis of her first sugar-related

22   claim, which pertains to nutrient claims that may not be made on food products intended for

23   children under two years of age.  In response to Bruton's second sugar-related claim, however,

24   Defendants dispute that a "low calorie" disclaimer is required for foods designed for young

25   children.  Mot. at 22.  Defendants further argue that certain products that Bruton allegedly

26   purchased, specifically Gerber 2nd Foods–Carrots, Gerber 2nd Foods Fruit–Apples & Cherries,

27   and Gerber Nature Select 2nd Foods Spoonable Smoothies–Mango, all meet the requirements for

28   low calorie foods as they are under 40 calories, and therefore do not trigger the requirement for a

Case No.: 12-CV-02412-LHK
ORDER GRANTING-IN-PART AND DENYING-IN-PART MOTION TO DISMISS

1    disclaimer. *Id.* (citing 21 C.F.R. § 101.60(c)(2)(v); 21 C.F.R. § 101.60(b)(2)). In addition,

2    Defendants contend that there is no recommendation by the FDA that foods designed for young

3    children require a "low calorie" disclaimer as this is not an age population for which the FDA

4    recommends caloric restrictions. *Id.*

5         Section 21 C.F.R. § 101.60(c)(2) states that "[t]he terms 'no added sugar,' 'without added

6    sugar,' or 'no sugar added' may be used only if . . . [t]he product bears a statement that the food is

7    not 'low calorie' or 'calorie reduced' (unless the food meets the requirements for a 'low' or

8    'reduced calorie' food) and that directs consumers' attention to the nutrition panel for further

9    information on sugar and calorie content." FDA regulations further define a low-calorie food, in

10   part, as one where "[t]he food has a reference amount customarily consumed greater than 30 grams

11   (g) or greater than 2 tablespoons and does not provide more than 40 calories per reference amount

12   customarily consumed." 21 C.F.R. § 101.60(b)(2)(i)(A).

13        In response, Bruton disputes that the calorie counts for these 2nd Foods products are as low

14   as Defendants claim; in support of her argument, she points to the labels embedded in the FAC.

15   *See* Opp'n at 22 (citing, as examples, Gerber Nature Select 2nd Foods Fruit–Banana Plum Grape,

16   which claims that it has "No Added Refined Sugar" and contains 90 calories, *see* FAC ¶ 110, and

17   Gerber Nature Select 2nd Foods Fruit–Apples and Cherries, which claims that it has "No Added

18   Sugar" and contains 50 calories, *id.*). Bruton also maintains that this is, in any event, a factual

19   dispute not subject to resolution on a 12(b)(6) motion. The Court agrees. The Court also notes

20   that, despite Defendants' arguments concerning the calorie counts of the 2nd Foods Vegetables–

21   Carrots and the 2nd Foods Spoonable Smoothies–Mango products, neither product's label even

22   contains sugar-related claims.

23        Thus, Bruton has alleged sufficient facts to state a plausible claim as to the sugar-related

24   labeling of Defendants' products.

### d.    "100% Natural" Claims

26        Bruton also contends that Defendants are prohibited from using labels that contain the term

27   "natural" because their products contain artificial ingredients and flavorings, artificial coloring, and

28   chemical preservatives. FAC ¶ 74. For example, Bruton asserts that some of the labels on

37

**United States District Court**
For the Northern District of California

1    Gerber's products advertise that they are "Made with 100% Natural Fruit" despite the fact that

2    these products use citric acid, ascorbic acid, and other ingredients that are not "natural" as defined

3    by the federal government and its agencies. *See* FAC ¶¶ 78, 80.[24] The only two products that

4    Bruton allegedly purchased which contain the "100% Natural" claims are: (1) Gerber Nature Select

5    2nd Foods Fruit–Banana Plum Grape, which states on the label that it is "Made with 100% Natural

6    Fruit" and lists "Citric Acid" as an ingredient; and (2) Gerber Nature Select 2nd Foods Fruit–

7    Apples and Cherries, which states on the label that it is "Made with 100% Natural Fruit" and lists

8    "Ascorbic Acid (Vitamin C)" as an ingredient. FAC ¶ 110.[25]

9    Defendants first dispute that they made any "100% Natural claims." Mot. at 20. Instead,

10   their labels state that the products are "Made with 100% natural fruit," which Defendants contend

11   is truthful and must be read in context. *Id.* Second, Defendants contend that, even though the two

12   products that Bruton purchased contain citric or ascorbic acid, neither of these ingredients renders

13   the "all natural" labels deceptive. *See id.* at 21. In particular, Defendants argue that FDCA

14   regulations confirm that "vitamin C" and "ascorbic acid" may be used interchangeably in nutrition

15   labeling, and meet the FDA's definition of a "chemical preservative." *Id.*; *see* 21 C.F.R.

16   § 101.9(c)(8)(v) (stating that synonyms such as "Vitamin C--Ascorbic acid" "may be added in

17   parentheses immediately following the name of the nutrient or dietary component").

18   Bruton replies by citing *Williams*, 552 F.3d 934, for the proposition that "reasonable

19   consumers expect that the ingredient list contains more detailed information about the product that

20   confirms other representations on the packaging." *Id.* at 939-40. According to Bruton, "[a]

21   reasonable consumer would expect that when Defendants label their products as being made with

22   100% natural ingredients, the product's ingredients are 'natural' as defined by the federal

23   government and its agencies." FAC ¶ 80. In addition, Bruton contends that a reasonable consumer

24

---

25   [24] Defendants claim that Bruton's inclusion of "alpha tocopheryl acetate" and "choline bitartrate"
     is improper since none of the products that she allegedly purchased involve these chemicals. Mot.
26   at 21; *see* FAC ¶¶ 77-78. The Court agrees.
     [25] "Ascorbic acid is a chemically modified form of vitamin C used in foods as a chemical
27   preservative. It is produced from corn or wheat starch being converted to glucose, then to sorbitol,
     through a series of chemical processes and purification steps." *Larsen v. Trader Joe's Co.*, --- F.
28   Supp. 2d ---, 2013 WL 132442, at *1 (N.D. Cal. 2013).

38

Case No.: 12-CV-02412-LHK
ORDER GRANTING-IN-PART AND DENYING-IN-PART MOTION TO DISMISS

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1    "would also expect products bearing such labels . . . [to be] made with natural ingredients under the

2    common use of the word 'natural.'"  *Id*.  Thus, "[a] reasonable consumer would understand that

3    'natural' products do not contain synthetic ingredients or ingredients not normally expected to be in

4    food."  *Id*.

5          The Court is not persuaded by Bruton's arguments.  If Defendants' labels claimed that the

6    products were "100% natural," Bruton's allegations might be sufficient.  However, Bruton fails to

7    explain why a label claiming that a product is "Made with 100% Natural *Fruit*" plausibly implies

8    that the *entire* product—which contains ingredients other than fruit—is free of synthetic

9    ingredients or ingredients not normally expected to be in food.  Thus, Bruton fails to set forth why

10   a reasonable consumer would find Defendants' labels to be false and misleading.  Bruton also fails

11   to set forth why she personally was misled by these labels.

12         Consequently, the Court finds that Bruton has failed to plausibly allege a claim under the

13   UCL, the FAL, and the CLRA based on the "all natural" labeling, and GRANTS Defendants'

14   Motion to Dismiss on this basis.  However, because Bruton may be able to cure the deficiencies in

15   these allegations, Bruton's UCL, FAL, and CLRA claims predicated on the "all natural" labeling

16   are dismissed without prejudice.  *See Lopez,* 203 F.3d at 1127 (holding that "a district court should

17   grant leave to amend . . . unless it determines that the pleading could not possibly be cured by the

18   allegation of other facts").[26]

19                          **2.    Magnuson-Moss Warranty Act**

20         In addition, Defendants seek to dismiss Bruton's claim under the Magnuson-Moss

21   Warranty Act ("MMWA").  *See* Mot. at 23-24.  The federal MMWA creates a civil cause of action

22   for consumers to enforce the terms of implied or express warranties.  *See* 15 U.S.C.

23   § 2310(d).  Under the MMWA, a "written warranty" means a "written affirmation of fact or written

24   promise made in connection with the sale of a consumer product by a supplier to a buyer which

25   ─────────────────────────

26   [26]  In light of the Court's analysis in this section, as well as the Court's analysis in Part III.C, the
     Court declines to address Defendants' additional arguments regarding why Bruton's FAC should

27   be dismissed for failure to comply with Rule 9(b)'s heightened pleading standard as none of
     Defendants' additional arguments warrants dismissal.  Similarly, the Court finds that Defendants'

28   arguments regarding plausible legal injury, reliance, and deception are incorporated in the Court's
     analysis in these previous sections.

Case No.: 12-CV-02412-LHK
ORDER GRANTING-IN-PART AND DENYING-IN-PART MOTION TO DISMISS

1    relates to the nature of the material . . . and affirms or promises that such material . . . is *defect free*

2    or will meet a specified level of performance over a specified period of time."  15 U.S.C.

3    § 2301(6)(A) (emphasis added).

4         Bruton's MMWA claim fails because the allegedly misbranded labels are not "warranties"

5    and thus do not fall within the coverage of the act.  As this Court recognized in *Brazil*, "'product

6    descriptions [such as 'As Healthy As Fresh' or 'all natural'] do not constitute warranties against a

7    product defect' for the purposes of a MMWA claim[]."  *See Brazil*, 2013 WL 1209955, at *17

8    (quoting *Astiana*, 2012 WL 2990766, at *3).  Other courts in this district have likewise concluded

9    that product descriptions do not constitute warranties against a product defect for the purposes of a

10   MMWA claim.  *See, e.g.*, *Astiana*, 2012 WL 2990766, at * 3; *Larsen v. Trader Joe's Co.*, 2012

11   WL 5458396, at *3 (N.D. Cal. June 14, 2012); *Littlehale v. Hain Celestial Group, Inc.*, No. 11-

12   6342, 2012 WL 5458400, at *1 (N.D. Cal. July 2, 2012); *Jones*, 912 F. Supp. 2d at 903-04.

13   Accordingly, the Court GRANTS Defendants' Motion to Dismiss Bruton's MMWA claim with

14   prejudice.[27]

15                   **3.       Song-Beverly Consumer Warranty Act**

16        Defendants also contend that Bruton has not stated a claim under the Song-Beverly

17   Consumer Warranty Act.  Mot. at 24 n.16.  The Song-Beverly Consumer Warranty Act provides

18   that "every sale of consumer goods that are sold at retail in [California] shall be accompanied by

19   the manufacturer's and the retail seller's implied warranty that the goods are merchantable."  Cal.

20   Civ. Code § 1792.  Under the Act, a "consumer good" is defined as "any new product or part

21   thereof that is used, bought, or leased for use primarily for personal, family, or household purposes,

22   *except for* clothing and *consumables*."  Cal. Civ. Code § 1791(a) (emphasis added).  Bruton does

23   not dispute that all of the products at issue in this case are consumables.  *See* Opp'n at 24.

24   Therefore, all of Defendants' products are excluded from the Act.

25        Since Bruton has not, and cannot, allege a breach of the Song-Beverly Consumer Warranty

26   Act, the Court GRANTS Defendants' Motion to Dismiss this cause of action with prejudice.

27   _____

28   [27]  Despite the fact that the Court has dismissed Bruton's only federal claim, the Court finds that it
     retains jurisdiction due to the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2).

### 4. Unjust Enrichment

Defendants' final argument is that Bruton's claim for restitution based on "unjust enrichment/quasi contract" must be dismissed because California does not recognize "unjust enrichment" as a separate cause of action. Mot. at 25. Despite some inconsistency in the law, several recent decisions by the California Court of Appeals have held that "[u]njust enrichment is not a cause of action, just a restitution claim." *See, e.g.*, *Hill v. Roll Int'l Corp.*, 195 Cal. App. 4th 1295, 1307 (2011); *accord Levine v. Blue Shield of Cal.*, 189 Cal. App. 4th 1117, 1138 (2010); *Durell*, 183 Cal. App. 4th at 1370; *Melchior v. New Line Prods., Inc.*, 106 Cal. App. 4th 779, 793 (2003). In light of this recent authority, this Court has previously determined that there is no distinct cause of action for unjust enrichment under California law. *See, e.g.*, *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1031 (N.D. Cal. 2012); *Fraley v. Facebook, Inc.*, 830 F. Supp. 2d 785, 814 (N.D. Cal. 2011); *accord Ferrington v. McAfee, Inc.*, No. 10-01455, 2010 WL 3910169, at *17 (N.D. Cal. Oct. 5, 2010) (citing *Durell*, 183 Cal. App. 4th at 1370).[28]

Accordingly, the Court GRANTS Defendants' Motion to Dismiss Bruton's claim for Restitution Based on Unjust Enrichment/Quasi Contract with prejudice.

## IV. CONCLUSION

For the foregoing reasons, the Court DISMISSES WITHOUT PREJUDICE: (1) Bruton's allegations against Nestlé USA; (2) Bruton's claims based on products that she did not purchase and websites that she did not visit; (3) Bruton's UCL, FAL, and CLRA claims based on the "all natural" labels. The Court DISMISSES WITH PREJUDICE Bruton's seventh, eighth, and ninth causes of action that are based on Unjust Enrichment/Quasi Contract , the Song-Beverly Act, and the Manguson-Moss Warranty Act.

---

[28] Other federal courts have similarly determined that there is no independent cause of action for unjust enrichment. *See, e.g.*, *Robinson v. HSBC Bank USA*, 732 F. Supp. 2d 976, 987 (N.D. Cal. 2010) (dismissing with prejudice plaintiffs' unjust enrichment claim brought in connection with claims of misappropriation and violation of the UCL because unjust enrichment does not exist as a stand-alone cause of action); *LaCourt v. Specific Media, Inc.*, No. 10-1256, 2011 WL 1661532, at *8 (C.D. Cal. Apr. 28, 2011) (dismissing unjust enrichment claim because it "cannot serve as an independent cause of action"); *In re DirecTV Early Cancellation Litig.*, 738 F. Supp. 2d 1062, 1091-92 (C.D. Cal. 2010) (same).

Case No.: 12-CV-02412-LHK
ORDER GRANTING-IN-PART AND DENYING-IN-PART MOTION TO DISMISS

Case 5:12-cv-02412-LHK   Document 57   Filed 09/06/13   Page 42 of 42

United States District Court
For the Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

          Should Bruton elect to file a Second Amended Complaint curing the deficiencies discussed

herein, she shall do so within thirty (30) days of the date of this Order.  Failure to meet the thirty-

day deadline to file an amended complaint or failure to cure the deficiencies identified in this Order

will result in a dismissal with prejudice.  Bruton may not add new causes of action or parties

without leave of the Court or stipulation of the parties pursuant to Federal Rule of Civil Procedure

15.

**IT IS SO ORDERED.**

Dated: September 6, 2013

_____
LUCY H. KOH
United States District Judge

Case No.: 12-CV-02412-LHK
ORDER GRANTING-IN-PART AND DENYING-IN-PART MOTION TO DISMISS