UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ALEX ANG, et al.,

    Plaintiffs,

v.

BIMBO BAKERIES USA, INC.,

    Defendant.

Case No. 13-cv-01196-WHO

**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS**

Re: Dkt. Nos. 21, , 22

Defendant's motion to dismiss came on for hearing on September 11, 2013. For the following reasons, the Court GRANTS in part and DENIES in part that motion.

## BACKGROUND

Plaintiffs filed their class action complaint on March 1, 2013, asserting various causes of action based on defendant's alleged "misbranding" of baked goods. Specifically, plaintiffs allege that: (1) the label of defendant's Thomas' Plain Bagel Thins bears an unlawful and misleading American Heart Association endorsement; (2) in violation of federal and state law, the label of defendant's Thomas' Plain Bagel Thins claims that the product is an "excellent source of fiber"; (3) in violation of federal and state law, the label of defendant's Sara Lee 100% Whole Wheat Bread claims that the bread is an "Excellent Source of Whole Grain"; (4) in violation of federal and state law, the labels of defendant's Sara Lee Soft & Smooth Whole Grain White Bread and Sara Lee Classic 100% Whole Wheat Bread claim that each is a "Good Source of Whole Grains"; (5) in violation of federal and state law, the labels on Sara Lee Classic 100% Whole Wheat Bread and Sara Lee 100% Whole Wheat Bread say that the products are made of "100% Whole Wheat" when they are partially made with non-whole wheat flour; (6) the label of defendant's Entenmann's brand products indicate that the Entenmann's bakery goods are made fresh every day

and delivered to stores daily, but they are not and the products contain preservatives that belie any claim that they are "fresh"; and (7) the label of defendant's Bimbo Original Toasted Bread represents that product to be "bread" but due to added coloring, the product fails to satisfy the standard of identity for bread. Amended Complaint, ¶ 4.

Based on those allegations, plaintiffs assert causes of action for: (1) violation of the unlawful prong of California's Unfair Competition Law ("UCL," Cal. Bus. & Prof. Code § 17200, *et seq.*); (2) violation of the unfair prong of the UCL; (3) violation of the fraudulent prong of the UCL; (4) violation of California's False Advertising Law ("FAL," Cal. Bus. & Prof. Code § 17500 *et seq.*) by misleading and deceptive advertising; (5) violation of the FAL by untrue advertising; (6) violation of the California Consumers Legal Remedies Act ("CLRA," Cal Civ. Code § 1750 *et seq.*); (7) and for restitution based on unjust enrichment/quasi contract.

Defendant moves to dismiss the Amended Complaint arguing that plaintiffs fail to adequately plead their claims and have failed to meet the heightened Rule 9(b) standards for claims based in fraud, plaintiffs do not have standing as to products they did not purchase, plaintiffs' claims are preempted and the CLRA claim must be dismissed for lack of adequate notice.

For the reasons discussed below, the Court GRANTS in part and DENIES in part defendant's motion to dismiss.

**LEGAL STANDARD**

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). A claim is facially plausible when the plaintiff pleads facts that "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). There must be "more than a sheer possibility that a defendant has acted unlawfully." *Id*. While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 570.

2

In deciding whether the plaintiff has stated a claim upon which relief can be granted, the Court accepts the plaintiff's allegations as true and draws all reasonable inferences in favor of the plaintiff. *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). However, the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

If the court dismisses the complaint, it "should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000). In making this determination, the court should consider factors such as "the presence or absence of undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party and futility of the proposed amendment." *Moore v. Kayport Package Express*, 885 F.2d 531, 538 (9th Cir.1989).

## DISCUSSION

### I. ADEQUACY OF PLAINTIFFS' PLEADING

#### A. Rule 9(b)

Defendant argues that all of plaintiffs' claims are based on alleged fraud and misrepresentations, but the Amended Complaint fails to comply with Federal Rule of Civil Procedure 9(b). The purpose of Rule 9(b) is to give defendants sufficient notice of the alleged fraudulent conduct so that defendants can adequately defend against the allegations. *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009). Under Rule 9(b), a party must "state with particularity the circumstances constituting fraud or mistake," including "the who, what, when, where, and how of the misconduct charged." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (internal quotation marks omitted). Defendant argues that plaintiffs fail to allege with the required particularity: (1) which plaintiff bought each product; (2) where and when each product was purchased; and (3) what each plaintiff actually saw and relied on in each label. Defendant argues that the missing information is critical to allow it to defend this action because its labels changed over time and differed depending upon which market they were sold in. Motion

3

at 6-7; Reply Br. at 4-5.

Plaintiffs respond that the:

> "who" is Defendant (¶ 1); the "what" is Defendant's unlawful and deceptive claims in its labeling (¶¶ 56-141); the "when" is since March 18, 2008 and through the defined Class Period (¶¶ 18-19); and the "where" is Defendant's package labels (¶¶ 56, 83, 97, 11-12, 125-26, 135). With respect to "how" Defendant's statements were misleading, Plaintiffs allege that: (1) Defendant violated the Sherman Law, FDCA, and FDA regulations in nine specific ways (¶¶ 56-141; section II, infra); (2) Plaintiffs were deceived by Defendant's product labels (¶¶ 14, 64, 66, 162, 165, 276); (3) Plaintiffs purchased products while reasonably relying on Defendant's misrepresentations (id); (4) Plaintiffs were injured because they would not have purchased a product they knew to be either, illegal, misbranded, or without the qualities implied by a deceptive label (¶¶ 67, 69, 80-81, 94-95, 108-09, 122-24, 132-33, 139-40, 164); and (5) Plaintiffs paid money for products that were illegal, could not be lawfully resold, and were worth zero (¶¶ 169, 244, 253, 265, 278, 315)

Opp. Br. at 11. Plaintiffs rely on decisions from this Court that have found similar allegations in food misbranding and mislabeling cases sufficient under Rule 9(b). *See Clancy v. The Bromley Tea Co.*, 12-CV-03003-JST, 2013 WL 4081632, *10-11 (N.D. Cal. Aug. 9, 2013) (Rule 9(b) satisfied where plaintiff alleged the who (company), what (nine discrete unlawful and deceptive claims on labeling and packaging of products, including two boxes of tea purchased by plaintiff, and defendant's website), when (since 2008 and throughout class period), where (defendant's "packaging and labels"), and how (reasonable reliance on deceptive statements made in violation of California law)); *Kosta v. Del Monte Corp.*, 12-CV-01722-YGR, 2013 WL 2147413, *14-15 (N.D. Cal. May 15, 2013) (same, with respect to five claims made regarding three categories fruit and vegetable products); *Khasin v. Hershey Co.*, 5:12-CV-01862 EJD, 2012 WL 5471153, *8 (N.D. Cal. Nov. 9, 2012) (same, with respect to seven claims made regarding "several products" on defendant's labels); *Astiana v. Ben & Jerry's Homemade, Inc.*, C 10-4387 PJH, 2011 WL 2111796, *5-6 (N.D. Cal. May 26, 2011) (same, as to claims of "all natural" on different brands of ice cream); *but see Janney v. Mills*, C 12-3919 PJH, 2013 WL 1962360, *10-11 (N.D. Cal. May 10, 2013) (Rule 9(b) satisfied for "natural" and "all natural" claims based on five specifically identified products, but not satisfied as to plaintiff's claim as to unidentified misrepresentations made in online sources and as to "unidentified products"); *Jones v. ConAgra Foods, Inc.*, 912 F.

4

Supp. 2d 889, 902-03 (N.D. Cal. 2012) (same as to nine claims across several different types of food products, *except* as to product whose label was recently changed and as to products "not specifically identified"); *Ries v. Hornell Brewing Co., Inc*., 5:10-CV-01139-JF/PSG, 2011 WL 1299286, *4 (N.D. Cal. Apr. 4, 2011) (Rule 9(b) satisfied for claims regarding deceptive "all natural" and ingredient claims for beverage products which plaintiffs had submitted labels, but dismissing with leave as to unidentified products based on "other advertisements and marketing or based upon other labels not before the Court").

The Court agrees with the approach taken by other Judges in this District.[1] Here, plaintiffs have identified "the who" as defendant and "the when" as the timeframe for the class allegations. Plaintiffs have also identified with specificity the *precise* representations alleged to be illegal, fraudulent and misleading, as well as the *specific* products on which that language is found.[2] This is not a case, like *Janney v. Mills*, *Jones v. ConAgra Foods, Inc.* or *Ries v. Hornell Brewing Co., Inc.* where the plaintiffs failed to identify each product they claimed was mislabeled or attempted to include unspecified misleading language.[3]

Defendant also asks the Court to take judicial notice of product labels from the products purchased by plaintiffs ("Purchased Products," Amended Complaint, ¶ 52). Defendant argues that this evidence shows that some of the labels for the Purchased Products do *not* contain the alleged illegal, fraudulent or misleading representations and, therefore, support defendant's argument that plaintiffs should be required to identify the exact version of the labels they relied on under Rule

---

[1] The Court will not follow the cases from other districts in California relied upon by defendant. *See Allen v. Similasan Corp*., 12CV0376-BTM-WMC, 2013 WL 2120825 (S.D. Cal. May 14, 2013) (dismissing claims under Rule 9(b) because plaintiffs failed to allege "when they bought Defendant's products"); *Edmunson v. Procter & Gamble Co*., 10-CV-2256-IEG NLS, 2011 WL 1897625, *5 (S.D. Cal. May 17, 2011) (dismissing UCL and CLRA claims under 9(b) because plaintiff did not specifically allege what packaging he saw and failed to allege when and how many times he purchased the product or was exposed to alleged misrepresentations); *Yumul v. Smart Balance, Inc*., 733 F. Supp. 2d 1117, 1124 (C.D. Cal. 2010) (dismissing UCL and FAL claims under Rule 9(b) because plaintiff failed to identify when during the decade period she purchased the product and failed to allege that the packaging remained the same during that period).

[2] To be clear, the only representations that the Court finds actionable at this juncture are those identified by plaintiffs in paragraph 4 of the Amended Complaint.

[3] Again, to be clear, the only products the Court considers sufficiently pleaded are the Purchased Products (Amended Complaint, ¶ 52) and those "Substantially Similar" products specifically identified in the Amended Complaint at ¶¶ 186, 190, 195, 208, 219.

9(b). *See* Motion at 6, Reply Br. at 4-5.

However, plaintiffs have identified the specific representations they claim were made by defendant and that they relied on. Amended Complaint, ¶ 4. That is sufficient at this juncture. Even if the Court were to take judicial notice of the labels submitted by defendant, the fact that *some* labels for Thomas' Plain Bagel Thins may not state that they are an "excellent source of fiber" does not undermine plaintiffs' reliance on a Thomas' Plain Bagel Thins label that did make that claim (as the Court must assume occurred at this juncture).[4]

The Court finds that plaintiffs have adequately alleged their claims under Rule 9(b).

## B. Injury and Reasonable Reliance

Defendant also argues that plaintiffs have failed to adequately allege "injury" caused by the labels and "reasonable reliance." Motion at 7-8; Reply Br. at 5-6. As defendant notes, under all three of the California consumer protection statutes at issue – the UCL, the FAL and CLRA – plaintiffs must satisfy the "reasonable consumer" standard. *Williams v. Gerber Products Co*., 552 F.3d 934, 938 (9th Cir. 2008). Under that standard, plaintiffs must show that consumers are "likely to be deceived" by the representations made by defendant. *Id*. The California Supreme Court has recognized that "these laws prohibit 'not only advertising which is false, but also advertising which [,] although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public.'" *Kasky v. Nike, Inc*., 27 Cal. 4th 939, 951 (2002) (quoting *Leoni v. State Bar*, 39 Cal.3d 609, 626 (1985)).

Defendant argues generally that plaintiffs "plead no facts establishing that a reasonable consumer would likely be deceived by any particular statements" on defendant's products.

---

[4] Defendant asks the Court to take Judicial Notice of various labels from some of the Purchased Products. *See* RJN [Docket No. 22], Exhs. 1-23. Defendant argues that judicial notice is appropriate because these labels are incorporated by reference into plaintiffs' Amended Complaint. RJN at 3. However, it is not clear that the labels defendant asks the Court to take notice of *are* the labels referred to in plaintiffs' Amended Complaint. For example, defendant admits that a representation plaintiffs complain about, "excellent source of fiber," is not found on *some* of the Thomas' Bagel Thins' labels submitted for judicial notice. Reply Br. at 4-5. Those labels, therefore, could not possibly be incorporated by reference. Moreover, defendant failed to lay a foundation and authenticate the labels they want the Court to judicially notice. Defendant provides no information or evidence showing that the labels submitted for judicial notice were used during the class period alleged or used in California where plaintiffs reside. As such, the Court DENIES the request for judicial notice of Exhibits 1-23.

6

Motion at 8. However, the Court finds that the Amended Complaint adequately alleges for each alleged representation facts as to how plaintiffs relied on the statements and why plaintiffs were misled by them. *See e.g.,* Amended Complaint ¶¶ 67, 69, 80-81, 94-95, 108-09, 122-24, 132-33, 139-140, 164.

In reply, defendant argues that plaintiffs fail to allege "reasonable" reliance based on two examples. First, defendant attacks the plausibility of plaintiffs' claim that the Entenmann Soft'ees labels are illegal because they include the word "fresh" on the package because (1) the ingredient list shows the use of preservatives; (2) the use of the word "fresh" is linked to the work "baked" which indicates the product is "processed;" and (3) the package has a highly visible sell by date, indicating the package is not intended to sit "fresh" on the shelf for one day. Reply Br. at 6. However, "whether a business practice is deceptive will usually be a question of fact not appropriate for decision" on a motion to dismiss. *Williams*, 552 F.3d at 938. As in *Gerber*, this case is not a "rare" one where the determination of what a reasonable consumer would believe is appropriately decided as a matter of law.

The same is true of defendant's second example, a sample label from a package of Thomas' Plain Bagel Thins where the statement "excellent source of fiber" is presented in the same panel and in smaller font than the non-actionable statement that the products are a "good source of fiber." Reply Br. at 6. As above, defendant's argument is not appropriately determined at this juncture.

The Court finds that plaintiffs have adequately alleged reasonable reliance on deceptive representations under the UCL, FAL and CLRA.

**C. AHA Heart Check**

Defendant argues that plaintiffs' claim regarding the use of the American Heart Association's (AHA) "heart check" mark on the label of the Bagel Thins (and other specified products, Amended Complaint, ¶ 219) is not actionable. Plaintiffs assert that use of the mark without disclosing that the heart check is a "paid endorsement" is misleading and illegal in light of guidance and a regulation issued by Food and Drug Administration (FDA). Amended Complaint, ¶¶ 56-63, 211-218. Defendant argues plaintiffs have failed to plead facts showing that the heart

7

check is actually an "endorsement made for compensation," and contends that it is not. To support its argument, defendant asks the Court to take judicial notice of materials from the AHA's website explaining how and when heart check marks are used and what fees are paid to AHA for use of the mark. Motion at 16-17; Reply Br. at 6-7.

Defendant argues these materials are appropriate for judicial review because the Amended Complaint incorporates AHA website material by reference at paragraphs 71-74, and because the AHA is a reputable organization and their website's accuracy cannot be reasonably questioned. Request for Judicial Notice [Docket No. 22] at 3-4 & Exhibit 28. Plaintiffs oppose the Request for Judicial Notice because the website pages relied on by defendant go beyond the two page brochure that plaintiffs mentioned in their Amended Complaint (which appears as the last two pages of Exhibit 28), and therefore were not incorporated by reference. Plaintiffs' Objections to Defendant's RJN [Docket No. 28] at 2-3.

Other than the two page brochure at the end of Exhibit 28 – which plaintiffs agree is incorporated by reference into the Amended Complaint and appropriate for judicial notice – the Court DENIES defendant's request for judicial notice as to Exhibit 28. Under the "incorporation by reference" doctrine, a court may "consider materials incorporated into the complaint or matters of public record," including "documents in situations where the complaint necessarily relies upon a document or the contents of the document are alleged in a complaint, the document's authenticity is not in question and there are no disputed issues as to the document's relevance." *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010). This is to "[p]revent[] plaintiffs from surviving a Rule 12(b)(6) motion by deliberately omitting references to documents upon which their claims are based." *Parrino v. FHP, Inc*., 146 F.3d 699, 706 (9th Cir. 1998) (superseded by statute) (citation omitted). Here, the Amended Complaint does not reference or rely on the AHA materials, including the two page brochure, as a *basis* for their claim that use of the mark is illegal or misleading. They are not suing the AHA claiming AHA's promotional materials are misleading. Instead, the AHA promotional materials are cited to support the ancillary allegations about how companies benefit by use of the mark and how the AHA believes customers respond to the mark. Amended Complaint, ¶¶ 71-74. The "rule of completeness" does

8

not help defendant for two reasons. *See* Response to Plaintiffs' Objections to RJN [Docket No. 30] at 4. First, as noted above, the AHA two page brochure relied upon by plaintiffs in their complaint was not central to and did not form the "basis" of their allegations regarding the illegal use of the mark. Second, the document the Court can take judicial notice of – the two page brochure – is complete in itself.

Moreover, through its Request for Judicial Notice defendant is not simply asking the Court to take judicial notice of the AHA's website pages, but the truth of the contents of those pages. That is inappropriate under Federal Rule of Evidence 201. *See, e.g., Carter v. Deutsch Bank Nat. Trust Co.*, C09-3033 BZ, 2010 WL 424477, *1 (N.D. Cal. Jan. 27, 2010) (declining to take judicial notice of truth of statements from Delaware secretary of state's website).

Having reviewed the two page brochure at the end of Exhibit 28, there is nothing in that document that undermines plaintiffs' allegations that use of the heart check mark is misleading and illegal. How the AHA heart check mark actually works (how it is approved for use by a manufacturer on a particular product and for what fee) and whether in light of those facts the mark can be considered an impermissible paid endorsement, either under the FDA guidance or the guidance issued by the Federal Trade Commission (and relied on by defendant, *see* Motion at 17) are not questions appropriate for resolution on this motion.

**D. Whole Grains**

Defendant argues that plaintiffs have failed to plead facts supporting their "whole grain" claims; that products which defendant advertised as a "good" or "excellent" source of whole grains were false or likely to deceive consumers. In the Amended Complaint, plaintiffs allege that under the Food Drug and Cosmetic Act (FDCA) and regulations thereunder manufacturers are not allowed to make "nutrient" claims that a product is a "good" or "excellent" source of whole grains because the FDCA does not establish a recognized daily value for whole grains. Amended Complaint, ¶¶ 98-103. Plaintiffs also allege that the FDA prohibits manufacturers from implying that "high" or "excellent" levels of whole grains are present in their products. *Id*. ¶ 104. As such, plaintiffs argue, the "good source" and "excellent source" of whole grains claims are deemed by the FDA as misleading and illegal and, therefore, are likewise misleading and illegal under

9

California's Sherman Law, which incorporates standards and regulations set by the FDCA for food and nutrient labeling. *See* Cal. Health & Safety Code § 110660 *et seq*. Plaintiffs also allege that had they known the products were not a "good source" of whole grains and that they were misbranded, they would not have purchased them. Amended Complaint, ¶¶ 108-09.

Defendant argues these allegations are insufficient because whole grains are ingredients, not nutrients, and therefore the FDA regulations relied on by plaintiffs to support their misleading and misbranding claims are inapplicable. While defendant relies upon two regulations to support its argument that whole grains "ingredients" are not "nutrients," the detailed regulations that defendant relies on – *see* 21 C.F.R. §§ 101.9, 101.13; Motion at 10 – do not appear to define "nutrients" versus "ingredients," and defendant does not cite to any particular portion of those regulations that specifically support its argument.[5] At this juncture, defendant has failed to support the argument that claims about "whole grains" are not governed by the FDA's regulation on express nutrient claims. *See* 21 C.F.R. § 101.13(b).

Plaintiffs, in opposition, argue that even if not an express nutrient claim, a "good" or "excellent source" claim can be an implied nutrient claim under 21 C.F.R. section 101.13(b)(2)(i). That section prohibits a claim that "[d]escribes the food or an ingredient therein in a manner that suggests that a nutrient is absent or present in a certain amount (*e.g*., "high in oat bran")" when those claims do not comply with 21 C.F.R. §§ 101.9 and 101.36. Defendant argues that what this regulation actually covers are statements that imply a certain amount of a particular nutrient governed by the guidelines; in the case of the example used, "oat bran" implies a certain level of fiber. Reply Br. at 8-9. Defendant also asserts that in order to determine whether an implied nutrient claim has been made in violation of the regulations regarding nutrient claims, the claim must be analyzed in the context of all of the text on the label. *Id*. at 9.

As to the "Classic 100% Whole Wheat Bread," defendant argues that the amount of fiber in that product – as implied by the whole grains references – is in compliance with the nutrient

---

[5] Indeed, in the "background" section of draft guidance issued by the FDA in 2006, the FDA acknowledged that claims regarding "whole grains" were governed by 21 C.F.R. § 101.13. *See* RJN Ex. 31. While the Court does not rely on this draft guidance in ruling on defendant's motion to dismiss, the draft guidance sheds light on how the FDA might view "whole grain" claims.

standards. *Id*. In order to do that analysis, however, defendant relies on labels for the 100% Classic Whole Wheat Bread submitted with its Request for Judicial Notice [Docket No. 22], Exs. 5-8. Defendant asks the Court to take judicial notice of these labels under the theory of incorporation by reference. As discussed above, the Court has DENIED that request. Fundamentally, defendant's argument is akin to a summary judgment one; that in light of the actual nutrient levels in the challenged product, the implied nutrient claim regarding whole grains/fiber is in compliance with the applicable regulations and, therefore, plaintiffs' claim fails. That argument is not appropriately resolved on this motion to dismiss.[6]

As to the "Soft & Smooth Whole Grain White" bread and "100% Whole Wheat" bread claims, defendant argues that because the "good source of whole grain" representations are flanked by "good source of fiber" and "excellent source of calcium" claims, it would be nonsensical to argue that the "good source of whole grain" claim is an implied nutrient/fiber claim because the products expressly claim to be a "good source of fiber." Instead, those three claims taken together show that the "good source of whole grain" claim is instead an "ingredient" claim that is *not* regulated by the FDA. However, as noted above, on this record defendant has not shown that the FDA treats whole grain claims as ingredient, and not restricted nutrient, claims as defendant asserts. Moreover, even if there is a legally significant distinction between nutrient and ingredient claims, a manufacturer might want to bolster an express nutrient/fiber claim ("good source of fiber") by referring to other ingredients that falsely imply additional fiber ("excellent source of whole grains") and, therefore, rationally could include multiple references to fiber on a label.

In sum, at this motion to dismiss stage and on this record, the Court cannot say that plaintiffs' whole grain claims are not actionable as a matter of law.

---

[6] For the same reason that the Court rejects defendant's request to take judicial notice of sample labels from the "Classic 100% Whole Wheat Bread," so that defendant can purport to show that the claims made about whole grains are in compliance with regulations. Reply Br. at 9, n.2.

11

### E. Fresh Claim

Defendant argues that plaintiffs' "fresh" claims regarding the Entenmann's Soft'ees fail as a matter of law because the regulation plaintiffs rely on, 21 C.F.R. § 101.95 (Amended Complaint, ¶ 88) only prohibits the use of "fresh" in a manner to suggest or imply that a food is not "processed."[7] Here, the Soft'ees are baked and, therefore, processed as a matter of law. Therefore, defendant argues, the Soft'ees label cannot violate 21 C.F.R. section 101.95 because "fresh" on the label does not imply a product that is not processed. Plaintiffs do not address the express limitation of section 101.95 to products that imply no processing, except to argue that the regulation does not define "baking" as an excluded form of processing. Opp. Br. at 18. Instead, plaintiffs focus on two other bases for their "fresh" claim under 21 U.S.C. sections 343(a) and (d) (§ 403(a) of the FDCA) prohibitions on "false or misleading" labeling. Plaintiffs argue that calling a product "fresh" while also using preservatives is misleading. Plaintiffs also argue that the use of the word "fresh" on conjunction with "baked daily" (Amended Complaint, ¶¶ 83-84) implies that these products are baked fresh daily and not expected to have a long shelf-life when in reality, these products are placed on shelves for a prolonged period of time given the preservatives used in their manufacture. Opp. Br. at 17-18.

The Court agrees with defendant that plaintiffs cannot base their "fresh" claims on section 101.95 because the use of "fresh" on the label does not imply that Soft'ees donuts are not processed. However, the claim that the use of "fresh" is false or misleading in light of the addition of preservatives, as well the claim that the use of the term is false or misleading in conjunction with "baked daily" in light of the use of preservatives and contemplated long shelf-life are adequately pleaded. Defendant's rebuttal to these allegations (that the prominent use of a sell-by date and sealed packaging would have tipped a reasonable consumer off that the products were not "fresh" in the sense that they were made, delivered and sold on the same day), raise questions of

---

[7] That section provides that: "Uses of fresh not subject to this regulation will be governed by the provisions of 403(a) of the Federal Food, Drug, and Cosmetic Act (the act)" and "[t]he term "fresh," when used on the label or in labeling of a food in a manner that suggests or implies that the food is unprocessed, means that the food is in its raw state and has not been frozen or subjected to any form of thermal processing or any other form of preservation, except as provided in paragraph (c) of this section." 21 C.F.R. § 101.95.

fact not appropriate for resolution on this motion. *See, e.g., Jones v. ConAgra Foods, Inc.*, 912 F. Supp. 2d 889, 900 (N.D. Cal. 2012) "[w]hether a reasonable customer would in fact find [freshness claims] deceptive is a question not properly addressed on a motion to dismiss.").[8]

### F. Excellent Source of Fiber Claim

Defendant challenges plaintiffs' claim that "Excellent Source of Fiber" on the label of Thomas' Bagel Thins is unlawful and misleading because it fails to comply with the nutrient thresholds required under C.F.R. sections 101.13 and 101.54. Amended Complaint, ¶¶ 75-79. Defendant argues that this claim fails because it is at most a "typographical error," the amount of fiber in the product is plainly quantified elsewhere on the label, a reasonable consumer would not understand that the product violated the FDA's regulations regarding the requirements for claiming a product is an "excellent" source of a nutrient, and a reasonable consumer would see that the "Excellent Source" statement is adjacent to and in a smaller font size than a "corrective" "Good Source" statement on the same package. Motion at 18-19; Reply Br. at 11.

As an initial matter, defendant's argument about the "typographical" error and a reasonable consumer's ignorance of the FDA regulations do not undermine plaintiffs' claim that the label – not in compliance with the FDA regulations – is illegal under the Sherman Law, applicable here through the illegal prong of the UCL. Moreover, Courts in this district have denied motions to dismiss based on the argument that a reasonable consumer could not have been misled by a company's failure to comply with FDA regulations. *See, e.g., Khasin v. Hershey Co.*, 5:12-CV-01862 EJD, 2012 WL 5471153, *7 (N.D. Cal. Nov. 9, 2012) (rejecting defense argument that it is implausible that reasonable consumers would be aware of food labeling regulations); *Jones v. ConAgra Foods, Inc.*, 912 F. Supp. 2d 889, 901 (N.D. Cal. 2012) (same). As to the arguments that no reasonable consumer could be misled because the actual amount of fiber in the product was quantified elsewhere on the label and qualified by other statements on the label, those arguments raise questions not appropriate for resolution on this motion. *See, e.g., Williams v. Gerber*

---

[8] Defendant asks the Court to take Judicial Notice of Exhibit 23, which are photographs from a Soft'ees pack. The Court, as noted above, has denied that request. However, the Court notes that the allegations in plaintiffs' Amended Complaint about the Soft'ees label are consistent with defendant's representation about that label.

13

*Products Co.*, 552 F.3d at 939.

Defendant argues this case is distinguishable from *Williams*, where the Ninth Circuit disagreed "with the district court that reasonable consumers should be expected to look beyond misleading representations on the front of the box to discover the truth from the ingredient list in small print on the side of the box," 552 F.3d at 939-40, because here the corrective and qualifying language was present in larger font in close proximity to the "excellent source" claim. Reply Br. at 11. However, whether the language defendant relies on would correct the allegedly misleading "excellent claim" raises questions of fact not appropriately resolved on this motion. Reasonable consumers, for example, could treat the added use of "good source" and the disclosed amount of fiber as factors confirming their belief that the product was an "excellent source" of fiber.[9]

**G. Toasted Bread Claim**

Defendant challenges plaintiffs' claims regarding Bimbo's Toasted Bread. Plaintiffs allege that the product is labeled as "bread," but under 21 C.F.R. section 136.110(c)(17) products labeled as bread cannot contain added coloring, which Bimbo's Toasted Bread does. Amended Complaint, ¶¶ 135-138. According to defendant, Bimbo's Toasted Bread is not "bread" subject to the regulation prohibiting addition of coloring but "toasted bread," a unique melba toast like product. Defendant argues that there is no "standard of identity" for naming "toasted bread," and the simple fact that "bread" is used in the label does not mean "toasted bread" is covered by the standard of identity for normal bread governed by section 136.110. Finally, defendant argues that reasonable consumers would realize that toasted bread is not "bread" by looking at the list of ingredients on the packaging and viewing the product itself through the packaging, and that plaintiffs have failed to allege how consumers could be misled by the addition of coloring to Toasted Bread when they can see the color through the packaging.

With respect to whether "Toasted Bread" is governed by section 136.110, defendant relies

---

[9] Defendant's reliance on *Brod v. Sioux Honey Ass'n, Co-op.*, 927 F. Supp. 2d 811 (N.D. Cal. 2013) is misplaced. That case was one of the "rare" situations where the Court determined as a matter of law that consumers would not be deceived because the state law labeling requirement relied on by plaintiff (requiring disclosure if pollen was removed from honey) was preempted and the federal law requirement (allowing honey to be marked Grade A if pollen was removed) was complied with and effectively disclosed there was no pollen in the honey.

14

on FDA Compliance Policy Guide § 505.350, which allows the use of the label "honey bread" where the product does not purport to be "standardized foods" and a certain amount of honey is used.[10] Defendant relies on this sole piece of agency guidance to argue that any "non-standardized" bread, like its "Toasted Bread," is not subject to section 136.110(c)(17). However, defendant provides no definition or explanation of when the FDA would treat a product as standard or non-standard. Instead, defendant cites to 21 U.S.C. section 343(g), which prevents misbranding of foods "for which a definition and standard of identity has been prescribed by regulations." The question, therefore, boils down to whether or not "Toasted Bread" is subject to the "bread" standard of identity as a matter of law. Defendant's reliance on the guidance does not answer this question, as that guidance dealt with bread products to which significant amount of honey have been added, presumably for flavor, and which do not purport to be "standard" bread. The Court cannot answer this question, on the record before the Court, without further explanation of how the FDA categorizes standard and non-standard bread products. Similarly, there appears to be a question of fact as to whether the use of the word "toasted" conveys to the FDA or a reasonable consumer that the product is not standard bread or whether it is standard bread to which an additional processing step has been applied, *e.g.*, toasting.

On this record, the Court cannot grant defendant's motion to dismiss as to the Toasted Bread products.

**H. Soy Flour Claim**

Plaintiffs allege that because the "Classic 100% Whole Wheat Bread" and the "100% Whole Wheat Bread" actually contain soy-flour, these products' labels are illegal and misleading. Amended Complaint, ¶¶ 107, 121. Plaintiffs argue that the use of soy-flour violates 21 C.F.R. section 136.180(a)(1), which requires the "dough is made from the optional ingredient whole wheat flour, bromated whole wheat flour, or a combination of these."

---

[10] Defendant requests the Court take judicial notice of the FDA Compliance Policy Guide, attached as Exhibit 29 to the RJN. Docket No. 22. Plaintiffs do not object. Under Federal Rule of Evidence 201, the Court may take judicial notice of agency materials. *See, e.g., Report Cactus Corner, LLC v. U.S. Dep't of Agric.*, 346 F. Supp. 2d 1075, 1100 (E.D. Cal. 2004) *aff'd*, 450 F.3d 428 (9th Cir. 2006).

15

Defendant argues that because the soy flour is listed in the ingredient list consumers could not be misled, especially because the ingredient list for these products purport to include less than 2% of soy flour. Motion at 13. Defendant also argues that the disclosure of its use of "soy flour" is simply an effort to alert consumers who have soy allergies to the possibility of soy residue in the product from cross-contact with other grains. *Id*.

These arguments about what a reasonable consumer would think, at least on this record, are foreclosed by *Williams v. Gerber Products Co*., 552 F.3d 934. Defendant's reliance on *Ross v. Sioux Honey Ass'n, Co-op*., C-12-1645 EMC, 2013 WL 146367 (N.D. Cal. Jan. 14, 2013) is misplaced. In that case, the Court found that plaintiffs had not adequately asserted a basis for the proposition that a reasonable consumer would expect pollen to be present in honey, when pollen was not mentioned on the label at issue there. *Id*. at *16-17. That is a markedly different situation than this one, where a product is labeled "100% Whole Wheat" but is allegedly not.[11]

## II. STANDING AS TO PRODUCTS NOT PURCHASED BY PLAINTIFFS

Defendant challenge plaintiffs' standing to pursue claims on the products they did not purchase themselves; the "Substantially Similar" products identified in the Amended Complaint at paragraphs 186, 190, 195, 208, 219. Defendant notes that courts in this District have allowed plaintiffs, at the motion to dismiss stage, to pursue claims related to products that plaintiffs have not purchased where the "claims related to the not purchased products [are] nearly identical to the claims for the purchased product." *Lanovaz v. Twinings N. Am., Inc*., C-12-02646-RMW, 2013 WL 2285221 (N.D. Cal. May 23, 2013); *see also Clancy v. The Bromley Tea Co*., 12-CV-03003-JST, 2013 WL 4081632 (N.D. Cal. Aug. 9, 2013) (allowing plaintiffs to pursue past motion to dismiss stage claims on similar but non-purchased products); *Kosta v. Del Monte Corp*., 12-CV-01722-YGR, 2013 WL 2147413 (N.D. Cal. May 15, 2013) (same); *Astiana v. Dreyer's Grand Ice*

---

[11] The other cases defendant relies on are similarly inapposite in light of the claim here; a label indicating "100% Whole Wheat Bread," when the ingredient list proves otherwise. *Arroyo v. Pfizer, Inc*., C-12-4030 EMC, 2013 WL 415607 (N.D. Cal. Jan. 31, 2013) (failure to plead "any underlying factual premise that would justify her factual conclusion that Pro Nutrients" does not perform as advertised); *Rooney v. Cumberland Packing Corp*., 12-CV-0033-H DHB, 2012 WL 1512106 (S.D. Cal. Apr. 16, 2012) (failure to allege facts that a reasonable consumer would expect "raw" sugar to exclude ingredients that were "repetitively and clearly" disclosed).

*Cream, Inc*., C-11-2910 EMC, 2012 WL 2990766 (N.D. Cal. July 20, 2012) (same).

Defendant argues that because plaintiffs have failed to identify the *exact* labels they relied upon in their Amended Complaint, and based on defendant's assertions that labels changed over time and were used in different geographic locations, it is impossible for the Court to determine whether the non-purchased Substantially Similar Products that plaintiffs allege violate the law are similar, much less nearly identical, to the Purchased Products. Reply Br. at 13. However, as noted above, the labels that defendant attempts to rely on by way of its request for judicial notice are submitted without appropriate foundation or authentication. Plaintiffs have, however, identified the *exact terms* and representations they are challenging in the identified products. Only those terms and representations are actionable. If the Substantially Similar baked products identified by plaintiffs in the Amended Complaint do not contain those exact terms and representations, then plaintiff cannot pursue claims for those product/labels. Also, if a particular label for a Substantially Similar Product differs materially from one on a Purchased Product, that issue is more appropriately addressed on class certification.

Finally, while defendant argues that plaintiffs have failed to plead facts showing the labels on the Substantially Similar Products are sufficiently similar to the Purchased Products, that Court disagrees. Motion at 21. The Amended Complaint states exactly why plaintiffs contend the "Substantially Similar" product labels are illegal and misleading in materially identical ways to the labels on the Purchased Products. Amended Complaint, ¶¶ 186, 190, 195, 208, 219.

## III. UNJUST ENRICHMENT CLAIM

Defendant moves to dismiss plaintiffs' "Restitution Based on Unjust Enrichment/Quasi-Contract" claim, Amended Complaint at 41-42, arguing that it is duplicative of plaintiffs' other claims. Reply Br. at 14-15. Courts in this District have treated standalone unjust enrichment claims differently. *See Bruton v. Gerber Products Co*., 12-CV-02412-LHK, 2013 WL 4833413, *22 (N.D. Cal. Sept. 6, 2013) (dismissing unjust enrichment/restitution claim because not an independent cause of action); *Clancy v. The Bromley Tea Co*., 12-CV-03003-JST, 2013 WL 4081632, *11 (N.D. Cal. Aug. 9, 2013) (dismissing unjust enrichment/restitution claim as duplicative and because not an independent cause of action); *Barocio v. Bank of Am., N.A.*, C 11-

17

5636 SBA, 2012 WL 3945535, *4 (N.D. Cal. Sept. 10, 2012) (dismissing "quasi contract" claim as disguised claim for unjust enrichment which is not an independent cause of action); *but see Kosta v. Del Monte Corp.*, 12-CV-01722-YGR, 2013 WL 2147413, *14 (N.D. Cal. May 15, 2013) (denying motion to dismiss unjust enrichment/restitution claims); *Khasin v. Hershey Co.*, 5:12-CV-01862 EJD, 2012 WL 5471153, *9 (N.D. Cal. Nov. 9, 2012) (rejecting motion to dismiss unjust enrichment claim); *Astiana v. Ben & Jerry's Homemade, Inc.*, C 10-4387 PJH, 2011 WL 2111796, *11 (N.D. Cal. May 26, 2011) (recognizing that unjust enrichment is not an independent cause of action under California law, but can be plead in the alternative as a form of remedy for restitution based on quasi-contract).

However, this Court finds the more persuasive approach is that "restitution based on unjust enrichment/quasi contract" does not state an independent cause of action that can stand on its own. *See e.g., Hill v. Roll Internat. Corp.*, 195 Cal. App. 4th 1295, 1307 (Cal. App. 2011) ("Unjust enrichment is not a cause of action, just a restitution claim."); *see also Bruton v. Gerber Products Co.*, 12-CV-02412-LHK, 2013 WL 4833413 (N.D. Cal. Sept. 6, 2013) ("there is no distinct cause of action for unjust enrichment under California law.").

As such, the Court DISMISSES the claim with prejudice.

## IV. PREEMPTION

Defendant argues that plaintiffs' misbranding claims are preempted under the FDCA. Motion at 22-23. Numerous courts in this District have rejected the same preemption arguments in similar food misbranding cases where the requirements under the Sherman Law (asserted here through the UCL) are identical to the requirements imposed under the FDCA. *See, e.g.*, *Clancy v. The Bromley Tea Co.*, 12-CV-03003-JST, 2013 WL 4081632, *7-10 (N.D. Cal. Aug. 9, 2013) (rejecting preemption where "[p]laintiff is suing for violations of the Sherman Law, not attempting to impose requirements greater than those imposed by the FDCA."); *Kosta v. Del Monte Corp.*, 12-CV-01722-YGR, 2013 WL 2147413, *5-9 (N.D. Cal. May 15, 2013) (same).

Plaintiffs contend that as in *Clancy* and *Kosta*, their claims are based on identical prohibitions on misbranding imposed by the FDCA and the Sherman Law (via the UCL). As such, those claims are not preempted. Defendant points to no claims or allegations in the

Amended Complaint that seek to impose standards in excess or otherwise in contravention to the requirements of the FDCA. Moreover while defendant argues that its labeling is in compliance with the FDCA (and therefore cannot be the basis of a state law claim), defendant's compliance or non-compliance with federal standards has yet to be determined.

As such, defendant's motion to dismiss based on preemption is DENIED.

## V. CLRA CLAIM

Under the CLRA, Cal. Civ. Code § 1782(a), plaintiffs must provide notice to the defendant of alleged violations of the CLRA before plaintiffs can bring an action seeking damages. "[T]he purpose of the requirement is clear: 'to give the manufacturer or vendor sufficient notice of alleged defects to permit appropriate corrections or replacements.'" *Stickrath v. Globalstar, Inc.*, 527 F. Supp. 2d 992, 1001-02 (N.D. Cal. 2007) (quoting *Outboard Marine Corp. v. Superior Court*, 52 Cal.App.3d 30, 40 (1975)). Plaintiffs assert they sent a letter providing notice to defendant on April 19, 2013. Amended Complaint, ¶ 296. Plaintiffs argue that this letter, in combination with its incorporation of the original complaint, gave defendant more than sufficient notice of the CLRA violations asserted in the Amended Complaint. Defendant responds that the CLRA notice was deficient because it failed to provide defendant the opportunity to cure alleged violations before the filing of an action for damages and because the notice did not identify the products or labels plaintiffs contend are illegal and misleading. Motion at 24. Defendant also argues that the notice was deficient because to the extent the notice incorporated the specific allegations of the original complaint, plaintiffs realized the deficiencies in the original complaint and agreed to amend.

It is true that plaintiffs' original complaint was not as detailed or as organized as the Amended Complaint. *Compare* Docket No. 1 *with* Docket No. 20. However, defendant does not explain or identify any particular CLRA violations raised in the Amended Complaint that they were not sufficiently notified of in the original complaint. In the original complaint, plaintiffs identified the same products as they identify as Purchased Products in the Amended Complaint. *See* Docket 1 at ¶ 77. Plaintiffs also identify substantially similar claims ("good source" and "excellent source" claims, representations of freshness, use of the heart-check endorsement,

19

1    description of products as bread, and 100% whole wheat) which form the basis of the allegations
2    in both the original and Amended Complaint. *Id*. at ¶¶ 3, 78-79. The one significant difference
3    the Court sees is that the Substantially Similar Products identified in the Amended Complaint are
4    not identified in the original complaint (and therefore could not have been incorporated into the
5    CLRA notice).

Therefore, the Court GRANTS the motion in part. The Court DISMISSES the CLRA damage claim based on the Substantially Similar Products identified in the Amended Complaint, as plaintiffs failed to provide adequate notice under Cal. Civ. Code § 1782(a). Dismissal is with leave to amend after plaintiffs provide adequate CLRA notice as to the specific products they contend have illegal and misleading labels under the CLRA.

## CONCLUSION

For the foregoing reasons, defendant's motion to dismiss is GRANTED in part and DENIED in part. Plaintiffs' claims regarding the Soft'ees label based on 21 C.F.R. section 101.95 are DISMISSED WITH PREJUDICE. Plaintiffs' Seventh Cause of Action for restitution based on unjust enrichment is DISMISSED WITH PREJUDICE. Plaintiffs' CLRA damages claim based on the Substantially Similar Products is DISMISSED WITH LEAVE TO AMEND. Plaintiffs may file an amended complaint seeking damages for the Substantially Similar Products within 10 days after the 30 day time period for cure provided in California Civil Code section 1782 expires, to seek damages under the CLRA. The Motion to Dismiss is DENIED as to the remaining claims.

**IT IS SO ORDERED**.

Dated: September 25, 2013

WILLIAM H. ORRICK
United States District Judge