```
1                              PAGES 1 - 38

2                    UNITED STATES DISTRICT COURT

3                    NORTHERN DISTRICT OF CALIFORNIA

4              BEFORE THE HONORABLE WILLIAM H. ORRICK, JUDGE

5   ALEX ANG AND LYNN STREIT,          )
    INDIVIDUALLY AND ON BEHALF OF ALL  )
6   OTHERS SIMILARLY SITUATED,         )
                                       )
7                  PLAINTIFFS,         )
                                       )
8    VS.                               ) NO. C 13-1196 WHO
                                       )
9   BIMBO BAKERIES USA, INC.,          )
                                       )
10                                     )  SAN FRANCISCO, CALIFORNIA
                   DEFENDANTS.         )
11  _____)  SEPTEMBER 11, 2013
                                       )  2:03 O'CLOCK P.M.
12
```

13   **TRANSCRIPT OF PROCEEDINGS OF THE OFFICIAL ELECTRONIC SOUND**

14                          **RECORDINGS**

15   **APPEARANCES:**

16   **FOR PLAINTIFF**S:          **PRATT & ASSOCIATES**
                              1871 THE ALAMEDA, SUITE 425
17                            SAN JOSE, CALIFORNIA 95126
                         BY:  **BEN F. PIERCE GORE, ESQUIRE**
18   **AND**

19                            THE FLEISCHMAN LAW FIRM, PLLC

20                            **565 FIFTH AVENUE, SEVENTH FLOOR**
                              NEW YORK, NEW YORK 10017
21                       BY:  **BRADLEY F. SILVERMAN, ESQUIRE**

22

23   FURTHER APPEARANCES ON NEXT PAGE
     TRANSCRIBED BY:  KATHERINE WYATT, OFFICIAL REPORTER USDC
24                    WYATTKATHY994@GMAIL.COM
                      925-212-5224
25

1   **FURTHER APPEARANCES:**

2

3   **FOR THE DEFENDANT:**

4   **HOGAN LOVELLS US LLP**

5   3 EMBARCADERO CENTER, SUITE 1500

6   SAN FRANCISCO, CALIFORNIA 94111

7   **BY:  MARK C. GOODMAN, ESQUIRE**

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

SEPTEMBER 11, 2013                              2:03 O'CLOCK  P.M.


                         P R O C E E D I N G S

          **THE CLERK:**  CALLING CIVIL MATTER 13-1196, ANG VERSUS

BIMBO BAKERIES USA, INCORPORATED.

          COUNSEL, PLEASE COME FORWARD AND STATE YOUR

APPEARANCE.

          **MR. GORE:**  GOOD AFTERNOON, YOUR HONOR.  PIERCE GORE

FOR PLAINTIFFS.

          **THE COURT:**  AFTERNOON.

          **MR. SILVERMAN:**  GOOD AFTERNOON, YOUR HONOR, BRADLEY

SILVERMAN FOR PLAINTIFFS, AS WELL.

          **THE COURT:**  GOOD AFTERNOON.

          **MR. GOODMAN:**  GOOD AFTERNOON, YOUR HONOR.  MARK

GOODMAN FOR THE DEFENDANT.

          **THE COURT:**  GOOD AFTERNOON.  DON'T GET COMFORTABLE.

I'M ACTUALLY GOING TO CALL YOU LAST.  AND THE REASON THAT I

WANTED YOU TO COME UP IS TENTATIVELY I'M INTENDING TO DENY MOST

OF THE MOTION TO DISMISS.

          AND SO I WANT YOU TO TALK ABOUT A CASE MANAGEMENT

SCHEDULE THAT MIGHT MAKE SENSE.

          WE WILL ARGUE -- WELL, THERE'S A LOT TO GO THROUGH,

BUT I'D LIKE YOU TO -- I DON'T HAVE A SENSE FROM ANYBODY YET OF

WHAT YOU WANT THE SCHEDULE TO LOOK LIKE.  AND SO I THINK IT

WOULD BE GOOD FOR YOU TO SPEND A LITTLE TIME TO TALK ABOUT THAT,

```
 1   AND THEN WE'LL PICK THIS UP AT THE END OF LAW AND MOTION.

 2           MR. GORE:  ALL RIGHT, YOUR HONOR.  THANK YOU.

 3           THE COURT:  THANK YOU.

 4           MR. GOODMAN:  THANK YOU.

 5           (THEREUPON, THIS CASE WAS RECESSED.)

 6           THE CLERK:  RECALLING CASE NUMBER 13-1196, ANG, ET

 7   AL, VERSUS BIMBO BAKERIES USA, INCORPORATED.

 8           COUNSEL, PLEASE COME FORWARD, AND STATE YOUR

 9   APPEARANCES.

10           MR. GORE:  GOOD AFTERNOON, AGAIN, YOUR HONOR.  PIECE

11   GORE FOR PLAINTIFFS.

12           THE COURT:  MR. GORE.

13           MR. GOODMAN:  MARK GOODMAN FOR DEFENDANT.

14           MR. SILVERMAN:  AND BRADLEY SILVERMAN ALSO FOR THE

15   PLAINTIFF.

16           THE COURT:  WELCOME, AGAIN.  OKAY.  SO THERE ARE A

17   NUMBER OF ISSUES HERE.  AND LET ME JUST -- I'LL JUST TICK

18   THROUGH ALL OF THEM.  AND THEN, MR. GOODMAN, I'LL GIVE YOU THE

19   FIRST OPPORTUNITY TO RESPOND.

20           MY INTENT IS MOSTLY TO DENY THE MOTION TO DISMISS. I

21   DO INTEND TO GRANT IT ON SOFTIES LABEL UNDER 21 C.F.R. 101.95

22   WITH PREJUDICE.  I DON'T THINK "FRESH" IMPLIES NOT PROCESSED.

23           I'M GOING TO GRANT ON THE DEFECTIVE NOTICE UNDER THE

24   CLRA WITH RESPECT TO THE SUBSTANTIALLY SIMILAR PRODUCTS WITHOUT

25   PREJUDICE.
```

 1          AND AT THE MOMENT I'M INCLINED TO DENY EVERYTHING

 2     ELSE. AND SO I'LL TELL YOU WHY.

 3          I THINK THAT THE DEFENDANTS HAVE RAISED SOME

 4     INTERESTING SUBSTANTIVE ARGUMENTS.  BUT MOSTLY I THINK THAT THE

 5     TIMING IS OFF ON THEM.  WITH RESPECT TO THE REQUEST FOR JUDICIAL

 6     NOTICE, I'M GOING TO TAKE IT WITH RESPECT TO THE AGENCY

 7     MATERIALS AND FOR TWO PAGES OF EXHIBIT 28, WHICH ARE REFERRED TO

 8     IN PLAINTIFFS' COMPLAINT.  BUT I DON'T THINK THE OTHER 28 ARE

 9     INCORPORATED BY REFERENCE INTO THE COMPLAINT.  AND THEY WEREN'T

10     OBVIOUSLY AUTHENTICATED OR A FOUNDATION LAID, SO I'M NOT

11     PLANNING TO TAKE JUDICIAL NOTICE OF THEM.

12          I THOUGHT THAT THE ALLEGATIONS OF THE WHO, WHAT,

13     WHEN, WHERE AND HOW WERE ADEQUATE.  THE ONLY ACTIONABLE

14     REPRESENTATIONS IN THIS COMPLAINT ARE THE ONES IN PARAGRAPH

15     FOUR.  AND THOSE ARE THE ONES THAT WE WILL BE LOOKING AT GOING

16     FORWARD.  ONLY SPECIFICALLY IDENTIFIED PRODUCTS WILL BE THE ONES

17     THAT WE'RE TALKING ABOUT IN THE CASE.

18          I THINK INJURY AND REASONABLE RELIANCE WERE

19     ADEQUATELY ALLEGED FOR THE CALIFORNIA CONSUMER STATUTES.  I

20     DON'T THINK THAT RIGHT NOW IS THE TIME TO DETERMINE WHAT A

21     REASONABLE CONSUMER WOULD BELIEVE OR WHETHER A PARTICULAR

22     BUSINESS PRACTICE IS DECEPTIVE.  I DON'T THINK THAT'S

23     APPROPRIATE FOR A MOTION TO DISMISS.

24          THERE ARE SOME SPECIFIC ISSUES ON WHOLE GRAINS.  THE

25     INGREDIENTS VERSUS NUTRIENTS ISSUE IS INTERESTING TO ME, BUT I

1    COULDN'T -- AND YOU CITED TO C.F.R. SECTIONS.  AND I COULDN'T

2    FIND WHAT WITHIN THEM WAS THE THING THAT YOU WERE POINTING OUT

3    TO ME AS TO WHY THIS WAS AN INGREDIENT RATHER THAN A NUTRIENT,

4    MR. GOODMAN.  SO MAYBE YOU CAN EXPLAIN THAT.

5              AND THE IMPLIED NUTRIENT ARGUMENT THAT THE PLAINTIFF

6    MADE ALSO SEEMS PLAUSIBLE, AT LEAST GOING FORWARD AT THIS POINT.

7    WHETHER TOASTED BREAD IS BREAD AS A MATTER OF LAW I DON'T THINK

8    I CAN FIGURE OUT RIGHT NOW.  THE GUIDANCE THAT YOU POINTED OUT

9    DISCUSSES HONEY BREAD.  AND I DON'T KNOW THAT THAT'S THE SAME AS

10   TOASTED BREAD.

11             SO I NEED MORE INFORMATION ON THAT.

12             THE SOY FLOUR VERSUS A HUNDRED PERCENT WHOLE WHEAT

13   BREAD, THAT ISSUE SEEMS DIFFERENT TO ME THAN POLLEN BEING

14   PRESENT IN HONEY.

15             AND SO, AGAIN, I THINK WITH RESPECT TO THE OTHER

16   DEFENSES ON STANDING, I THINK THE PLAINTIFFS IDENTIFIED THE

17   EXACT TERMS AND REPRESENTATIONS THAT THEY ARE GOING AFTER HERE.

18   AND IF THE LABEL ENDS UP -- TURNS OUT TO BE DIFFERENT WE CAN

19   DEAL WITH THAT ON CLASS CERTIFICATION.

20             I THINK IT'S -- THEY ARE GOING AFTER BAKED GOODS, AND

21   THEY HAVE CONSISTENT CLAIMS WITHIN EACH TYPE.  THAT I THINK IS

22   ENOUGH AT THIS POINT.  I DON'T THINK THIS IS PREEMPTED.  AND

23   WITH THE CLRA I THINK THE PROBLEM IS THAT THEY HAVEN'T GIVEN

24   NOTICE YET ON THE SUBSTANTIALLY SIMILAR PRODUCTS.

25             SO, WITH ALL OF THAT, PLEASE PROCEED.

1    **MR. GOODMAN:** THANK YOU, YOUR HONOR. MARK GOODMAN,

2    AGAIN, AS INSTRUCTED TO SAY MY NAME BEFORE I START SPEAKING. I

3    MIGHT BE THE FIRST PERSON THAT HAS DONE THAT ALL DAY. I DON'T

4    WANT TO BE DIFFERENT.

5        BUT, YOUR HONOR, MAYBE I SHOULD START WITH THE

6    IDEA -- AND IF I UNDERSTOOD YOUR TENTATIVE RULING CORRECTLY ON

7    THE REQUEST FOR JUDICIAL NOTICE IT WAS THAT YOUR HONOR DOES NOT

8    BELIEVE YOU CAN TAKE JUDICIAL NOTICE OF THE LABELS THAT WE HAVE

9    PUT BEFORE YOUR HONOR.

10       **THE COURT:** NOT THAT I CAN'T, BUT THE REPRESENTATIONS

11   THAT ARE IN THE COMPLAINT ARE VERY SPECIFIC. SO YOU THEN ASK ME

12   TO GO BEYOND WHAT'S IN THE COMPLAINT AND GO TO A BUNCH OF

13   LABELS. AND I DON'T THINK THAT I -- I DON'T THINK AT THIS POINT

14   THAT IT'S APPROPRIATE TO DO THAT. AND YOU CAN DO THAT ANOTHER

15   WAY AT ANOTHER TIME. BUT IT JUST DIDN'T SEEM TO ME THAT AT THIS

16   POINT THEY ARE FAIRLY IN.

17       **MR. GOODMAN:** I UNDERSTAND, YOUR HONOR. AND I THINK

18   YOU CAN LOOK AT THAT ISSUE NOW BECAUSE IT GOES TO SPECIFICITY OF

19   THE PLEADING, WHETHER THEY HAVE PLED SUFFICIENT FACTS TO STATE

20   CAUSES OF ACTION. AS YOUR HONOR KNOWS, IN THIS COMPLAINT WE

21   DISAGREE THAT THEY MADE SPECIFIC ALLEGATIONS.

22       THEY HAVE SAID THAT BBUSA -- THAT'S BIMBO BAKERIES,

23   USA. I'M GOING TO REFER TO THEM AS BBUSA, IF THAT'S OKAY WITH

24   YOUR HONOR -- HAS SOLD PRODUCT WITH LABELS THAT SAY -- MAKE

25   CERTAIN STATEMENTS. THE ONLY WAY THAT THEY HAVE CLAIMED TO BE

1    DAMAGED IN THIS CASE, THE ONLY LIABILITY THAT IS ALLEGED IN THIS

2    CASE IS THAT THOSE STATEMENTS VIOLATE FDA REGULATIONS, AND,

3    THEREFORE, CALIFORNIA LAW.

4            WHAT WE'RE SAYING IS YOUR HONOR CAN LOOK AT THE

5    LABELS TO SEE IF THERE IS A VIOLATION OF THE FDA REGULATIONS

6    AND, THEREFORE, CALIFORNIA LAW IN ORDER TO DETERMINE WHETHER

7    THEY HAVE STATED FACTS SUFFICIENT TO CONSTITUTE A CAUSE OF

8    ACTION.  BECAUSE IF THEY HAVEN'T ALLEGED FACTS TO CONSTITUTE A

9    VIOLATION OF THE FDA REGULATIONS, THEN THEY HAVEN'T STATED A

10   CLAIM.

11           AND WE WOULD ARGUE THEY HAVEN'T STATED A CLAIM,

12   ANYWAY.  AND AN EXAMPLE OF THAT, YOUR HONOR, IS THEY HAVE

13   ALLEGED IN THEIR COMPLAINT THAT THEY PURCHASED THOMAS' BAGEL

14   THINS.  AND THAT THOMAS' BAGEL THINS CLAIMS TO BE AN EXCELLENT

15   SOURCE OF FIBER.

16           WE PUT BEFORE YOUR HONOR LABELS FOR THOMAS' BAGEL

17   THINS THAT DON'T SAY THAT.  AND THEY DIDN'T SAY WHAT THEY BOUGHT

18   AS FAR AS THE SIZE OR THE FLAVOR OTHER THAN PLAIN.

19           THEY DIDN'T SAY WHEN THEY BOUGHT IT.  THEY DIDN'T SAY

20   WHERE THEY BOUGHT IT.

21           ALL THOSE TYPES OF ALLEGATIONS, YOUR HONOR, ARE

22   NECESSARY IN THIS TYPE OF CLAIM TO PUT THE DEFENDANT ON NOTICE

23   TO ALLOW THE COURT TO DETERMINE WHETHER -- WHAT PRODUCTS ARE

24   REALLY AT ISSUE AND WHETHER THOSE PRODUCTS AND THE LABELING OF

25   THOSE PRODUCTS REALLY VIOLATES FDA REGULATIONS.

1          NONE OF THE LABELS THAT WE HAVE PUT BEFORE YOUR

2    HONOR -- AND I'LL TELL YOU, YOUR HONOR, THOSE ARE THE ONLY

3    LABELS THAT WE COULD FIND FOR THAT PARTICULAR PRODUCT --

4    VIOLATED FDA REGULATIONS BECAUSE THEY DON'T SAY THAT IT'S AN

5    EXCELLENT SOURCE OF FIBER.

6          **THE COURT:**  BUT MY PROBLEM IS THAT ALL I KNOW FROM

7    THE COMPLAINT IS THE ALLEGATION THAT'S MADE, WHICH IS QUITE

8    SPECIFIC.  AND YOU'VE THEN GIVEN ME A SERIES OF OTHER LABELS

9    WHICH MAY OR MAY NOT BE EXHAUSTIVE.  AND YOU CAN'T -- I MEAN, IT

10   WOULDN'T HAVE BEEN PROPER TO TRY TO, YOU KNOW, PROVE THAT UP,

11   AND YOU DIDN'T.

12          **MR. GOODMAN:**  RIGHT.

13          **THE COURT:**  SO I THINK I'M -- I THINK THE DISTINCTION

14   IS WHERE WE ARE.  WE'RE JUST AT THE MOTION TO DISMISS STAGE.

15          **MR. GOODMAN:**  I UNDERSTAND.  AND JUST -- I'M NOT

16   GOING TO BEAT THIS HORSE THAT IS ALREADY DEAD, YOUR HONOR, BUT I

17   THINK THIS IS AN IMPORTANT POINT, AND I JUST WANT TO MAKE SURE

18   THAT YOUR HONOR UNDERSTANDS WHERE WE'RE COMING FROM.

19          WE PUT THOSE LABELS IN, AGAIN, NOT TO PROVE IT UP, AS

20   YOUR HONOR CORRECTLY NOTES, BUT TO SHOW YOUR HONOR THAT THEIR

21   PLEADING IS LACKING IN WHAT THEY NEEDED TO ALLEGE.

22          THEY NEEDED TO ALLEGE WHERE THEY BOUGHT THE PRODUCT,

23   WHAT SIZE, WHAT EXACT TYPE OF PRODUCT AND EXACTLY WHAT THE LABEL

24   SAID.

25          IN MANY, MANY YEARS OF DOING THESE TYPES OF CASES,

1    YOUR HONOR, THIS IS THE FIRST COMPLAINT I'VE SEEN THAT'S 38

2    PAGES LONG AND DOESN'T HAVE ANY ATTACHMENT THAT HAS THE LABELS

3    OR ANY VERBATIM STATEMENT OF WHAT THE LABEL SAYS.

4              THIS IS A CASE THEY DON'T SAY WHERE THE STATEMENT

5    SHOWS UP IN THE LABEL.  THEY DON'T SAY IF IT'S IN BIG PRINT OR

6    SMALL PRINT.  THEY DON'T SAY IF IT'S ON THE FRONT OR THE BACK.

7    THEY DON'T SAY ANY OF THOSE FACTS.

8              THEY DON'T SAY EVEN THAT THEY SOMEHOW RELIED ON IT

9    AND WERE DAMAGED BY IT, OTHER THAN SAYING THAT THEY BOUGHT A

10   PRODUCT THAT HAD THAT IT WAS AN EXCELLENT SOURCE OF FIBER, AND

11   IT REALLY ONLY HAD 16 PERCENT OF THE DAILY VALUE.

12             THEY DON'T SAY WHY THAT MATTERED TO THEM OR HOW THEY

13   WERE DAMAGED BY THAT.

14             THEY DON'T PLEAD THAT THERE WERE OTHER PRODUCTS THAT

15   THEY COULD HAVE BOUGHT THAT DON'T MAKE THAT CLAIM THAT WERE

16   CHEAPER, OR DO MAKE THAT CLAIM AND WERE, THEREFORE, BETTER.

17             THEY DON'T ALLEGE FACTS INDICATING THAT THERE WAS ANY

18   FRAUD IN THIS CASE.  ALL THE PLEADING STANDARDS OF THE FEDERAL

19   RULES FOR FRAUD ARE DEVOID IN THIS CASE.

20             THERE'S NO ALLEGATION THAT ANY OF THESE PRODUCTS WERE

21   BOUGHT IN CALIFORNIA.  THEY ARE ALLEGING VIOLATION OF CALIFORNIA

22   LAW, BUT THEY ARE NOT ALLEGING THAT ANY OF THE PRODUCTS WERE

23   PURCHASED -- THESE PARTICULAR PRODUCTS THAT THESE PLAINTIFFS

24   PURCHASED WERE IN CALIFORNIA.  THEY SAY THAT THEY ARE CALIFORNIA

25   PLAINTIFFS WHO RESIDE IN CALIFORNIA AND THEY PURCHASED PRODUCTS.

```
1               THEY DON'T ALLEGE, YOUR HONOR, THAT THERE WAS

2     ANY -- WITH RESPECT TO THE WHOLE GRAIN CLAIM, YOUR HONOR, AGAIN

3     WE PUT THAT IN FRONT OF YOUR HONOR TO SHOW THAT THERE'S NO

4     VIOLATION OF FDA LAW.

5               WHAT WE SHOWED YOUR HONOR IN THE REGULATIONS WAS THAT

6     ALL OF THE REGULATIONS DISCUSS WITH RESPECT TO SAYING "EXCELLENT

7     SOURCE" GOES TO NUTRIENT.  BUT IF THERE IS A DAILY RECOMMENDED

8     ALLOWANCE FOR THAT NUTRIENT THEN YOU CAN USE "EXCELLENT" OR

9     "GOOD SOURCE" DEPENDING ON WHAT THE LEVEL OF THE NUTRIENT IS.

10              BUT THERE IS NO STATEMENT IN ANY OF THE FEDERAL

11    REGULATIONS SAYING THAT YOU CAN'T DO THAT WITH RESPECT TO

12    INGREDIENTS THAT DOESN'T HAVE A NUTRIENT LEVEL.

13              WE'RE NOT SAYING THAT WHOLE GRAINS ARE NUTRIENTS.  AS

14    A MATTER OF FACT, WE'RE SAYING THEY ARE INGREDIENTS.  THEY

15    DIDN'T PLEAD -- YOUR HONOR SAYS THEY MADE AN IMPLIED NUTRIENT

16    CLAIM, BUT THEY DON'T PLEAD AN IMPLIED NUTRIENT CLAIM.

17              THEY SAY THAT IN THEIR OPPOSITION TO OUR MOTION.

18    THEY DON'T PLEAD ANYWHERE IN THEIR COMPLAINT ANY FACTS

19    INDICATING THAT THERE WAS SOME SORT OF IMPLIED NUTRIENT CLAIM BY

20    SAYING "100 PERCENT" OR "AN EXCELLENT SOURCE OF WHOLE GRAINS."

21              IN FACT, YOUR HONOR, THE REGULATIONS ALLOW PRODUCERS

22    TO SAY THAT SOMETHING IS AN EXCELLENT SOURCE OF AN INGREDIENT

23    AS LONG AS THAT'S NOT ANY SORT OF A NUTRIENT CLAIM.

24              AND THERE IS NO INDICATION IN ANY OF THE RESOURCES

25    THAT WE CAN FIND THAT WHOLE GRAINS, UNLIKE "AN EXCELLENT SOURCE
```

1  OF WHOLE OATS," OR SOMETHING LIKE THAT, IS SOME SORT OF IMPLIED

2  NUTRIENT CLAIM.

3          AND, AGAIN, YOUR HONOR, WE SHOWED YOU IN OUR

4  STATEMENT, IN OUR BRIEF THAT EVEN IF IT WERE AN IMPLIED NUTRIENT

5  CLAIM WE STILL MEET IT PER THE LABEL.

6          SO IF THE DAILY ALLOWANCE IS AN EXCELLENT SOURCE OF

7  FIBER, IF YOU IMPLY WHOLE GRAINS TO BE FIBER, THEN THERE'S NO --

8  THEY HAVEN'T PLED A VIOLATION, AND, THEREFORE, CAN'T PLEAD A

9  CLAIM AS THEY TRIED TO DO IN THEIR COMPLAINT.

10          **THE COURT:**  SO -- AND I AM NEW TO THESE CASES -- ARE

11  YOU SAYING THAT AN INGREDIENT IS DEFINED AS SOMETHING THAT

12  DOESN'T HAVE A NUTRITIONAL VALUE ATTACHED TO IT?

13          **MR. GOODMAN:**  THAT'S WHAT WE'RE SAYING.  AN

14  INGREDIENT CAN OR CANNOT HAVE A NUTRITIONAL VALUE ATTACHED TO

15  IT.

16          **THE COURT:**  BUT THE DISTINCTION YOU'RE TRYING TO MAKE

17  IS THAT THERE IS NONE THAT IS EVER ATTACHED TO --

18          **MR. GOODMAN:**  TO WHOLE GRAINS.

19          **THE COURT:**  -- TO WHOLE GRAINS.

20          **MR. GOODMAN:**  CORRECT.  EXACTLY, YOUR HONOR.  AND

21  THAT'S EXACTLY WHAT WE'RE SAYING.  WE'RE SAYING FOR AN

22  INGREDIENT LIKE THAT, UNLIKE AN INGREDIENT THAT IS A NUTRIENT,

23  SUCH AS RIBOFLAVIN, FOR EXAMPLE, YOU SEE THAT IN BAKED GOODS ALL

24  THE TIME.  RIBOFLAVIN IS A VITAMIN B.  SO THAT IS A NUTRIENT.

25          SO YOU CAN SAY IT'S:

1          "AN EXCELLENT SOURCE OF VITAMIN B."

2               AND IF IT HAS RIBOFLAVIN, THAT INGREDIENT WOULD ALSO

3    BE AN EXCELLENT SOURCE OF RIBOFLAVIN.

4               THAT'S USING AN EXAMPLE.  THAT WOULD BE A NUTRIENT

5    CLAIM THAT WOULD COME WITHIN THE FEDERAL REGULATION.  BUT THERE

6    IS NO SUCH REGULATION FOR WHOLE GRAINS.  AND THEY CAN'T POINT TO

7    ANY.  THE BEST THEY CAN SAY IS:

8               "WELL, WHOLE GRAINS ARE INGREDIENTS AND SOME

9               INGREDIENTS ARE SUBJECT TO FEDERAL REGULATION FOR

10              THESE SOURCE CLAIMS.  SO, THEREFORE, THERE'S A

11              VIOLATION."

12              THEY HAVEN'T SHOWN, THEY HAVEN'T PLED THAT THESE --

13   AND WE'VE SHOWN YOUR HONOR THAT THIS PARTICULAR WHOLE GRAIN

14   ISSUE IS NOT SUBJECT TO FEDERAL REGULATION BECAUSE THERE IS NO

15   IMPLIED NUTRIENT ASSOCIATED WITH WHOLE GRAIN.

16              **THE COURT:**  I UNDERSTAND THAT'S YOUR ARGUMENT.

17              **MR. GOODMAN:**  AND EVEN IF -- EVEN IF THERE WERE, WE

18   STILL MEET IT.

19              ON THE TOASTED BREAD CLAIM, YOUR HONOR, I UNDERSTAND

20   WHAT YOUR HONOR IS SAYING.  IT'S EARLY.  THERE'S QUESTIONS OF

21   FACT.  AGAIN, YOUR HONOR, WE GAVE YOU THE LABEL AND THE

22   PACKAGING TO SHOW, BECAUSE ESPECIALLY ON THAT ONE I THOUGHT THAT

23   WAS A VERY IMPORTANT THING FOR YOUR HONOR TO SEE, BECAUSE THAT

24   PACKAGE IS TRANSPARENT.  IT HAS A WINDOW WHERE YOU CAN SEE THE

25   PRODUCT.

1          THEY ALLEGE IN THEIR COMPLAINT THAT ONE OF THE

2     PLAINTIFFS -- I CAN'T REMEMBER WHICH ONE -- BOUGHT THIS PRODUCT

3     AND NOT KNOWING THAT IT CONTAINED ARTIFICIAL OR ADDED COLORING,

4     AND THEY NEVER WOULD HAVE BOUGHT IT HAD THEY KNOWN.

5          YOU CAN SEE THE PRODUCT THROUGH THE WINDOW.  THE

6     PRODUCT HAS A COLOR THAT'S CLEARLY NOT -- IT'S AN ORANGE COLOR

7     IT'S NOT NATURAL.  IT'S GOT A COLOR.  AND IT HAS ON THE

8     PACKAGING AN INGREDIENT THAT SAYS "ADDED COLOR."

9          AGAIN, WITHOUT THEM ALLEGING WHAT THE LABEL SAYS I

10    THINK IT'S IMPOSSIBLE FOR THEM TO ALLEGE A CLAIM THAT THIS

11    SOMEHOW VIOLATES FDA REGULATION.  AND I DON'T THINK YOUR HONOR

12    HAS TO WAIT FOR SUMMARY JUDGMENT TO MAKE THAT DETERMINATION.

13          **THE COURT:**  I WOULD KIND OF LIKE TO KNOW HOW THE FDA

14    DEALS WITH STANDARD AND NONSTANDARD BREAD PRODUCTS.

15          **MR. GOODMAN:**  ABSOLUTELY, YOUR HONOR.  AND WE ADDRESS

16    THAT IN OUR PAPERS.  AND I'D BE HAPPY TO ADDRESS THAT NOW.

17          THERE IS A STANDARD IDENTITY FOR BREAD.  THAT IF

18    SOMETHING IS CALLED "BREAD" IT HAS TO MEET CERTAIN STANDARDS.

19    IT HAS TO BE MADE UP OF FLOUR, WATER, YEAST, SALT.  IT CAN'T

20    HAVE CERTAIN THINGS LIKE COLOR OR OTHER ELEMENTS TO IT.

21          BUT AS WE SAID IN OUR PAPERS, YOUR HONOR, JUST LIKE

22    HONEY BREAD, IF YOU CALL SOMETHING OTHER THAN BREAD IT'S NOT

23    BREAD.  IT'S TOASTED BREAD.

24          NOW, THAT MIGHT SOUND LIKE A TRITE DIFFERENCE, BUT,

25    YOUR HONOR, IT ISN'T BECAUSE -- AND THIS IS WHAT IS RECOGNIZED

1    BY THE LAW.  UNLESS YOU'RE CALLING SOMETHING "BREAD" AND YOU'RE

2    TRYING TO CONVINCE A CONSUMER THAT THIS IS THE SAME KIND OF

3    BREAD THAT YOU WOULD MAKE A SANDWICH WITH, THEN IT'S NOT WITHIN

4    THE IDENTITY FOR BREAD.

5           THERE'S A VERY SPECIFIC IDENTITY.  IT HAS TO BE

6    SOMETHING CALLED "BREAD", JUST BREAD, YOUR HONOR, AS OPPOSED TO

7    TOASTED BREAD, HONEY BREAD, HAWAIIAN BREAD, SWEET BREAD,

8    SOMETHING LIKE THAT.

9           SO THE FACT THAT THIS IS TOASTED BREAD PUTS IT IN A

10   DIFFERENT STANDARD THAN IF IT WAS CALLED "BREAD."  AND THIS GOES

11   BACK TO, YOU KNOW, THE BEGINNING OF TIME WHEN OUR GOVERNMENT WAS

12   TRYING TO PROTECT CONSUMERS FROM BUYING SOMETHING THAT PEOPLE

13   WERE CALLING "BREAD" THAT HAD PAPER PULP IN IT OR SOMETHING THAT

14   WE DIDN'T WANT TO HAVE CONSUMERS BUYING THINKING THAT:

15              "OH, WELL, THIS IS MADE OUT OF YEAST AND FLOUR

16           AND WATER."

17          SO THIS IS A TOTALLY DIFFERENT SITUATION, YOUR HONOR.

18   THEY ARE GOING TO GET UP THERE AND SAY IT'S TOASTED BREAD.  THEY

19   ARE SAYING IT'S A DIFFERENT KIND OF BREAD.  IT LEAD EVERYBODY TO

20   BELIEVE IT WAS BREAD.

21          BUT, YOUR HONOR, THERE HAS TO BE A COMMON SENSE

22   APPROACH TO THESE KINDS OF CASES.  YOU HAVE TO LOOK AT WHAT IS A

23   REASONABLE CONSUMER GOING TO THINK WHEN THEY SEE THIS PACKAGING

24   WITH THIS PRODUCT CALLED "TOASTED BREAD" WITH ITS TEXTURE BEING

25   A VERY HARD TEXTURE, A COLOR THAT'S NOT THE SAME AS BREAD AND

1  IT'S NOT THE KIND OF BREAD THAT YOU GO HOME AND MAKE A SANDWICH

2  WITH.

3          THAT'S NOT WHY YOU BUY THIS PRODUCT.  SO I THINK --

4  AND THIS COMMON SENSE APPROACH APPLIES TO ALL OF THESE CASES FOR

5  ALL OF THESE PRODUCTS WHERE YOU HAVE TO LOOK AT:  WHAT WOULD A

6  REASONABLE CONSUMER REALLY BELIEVE WHEN THEY SAW "A HUNDRED

7  PERCENT WHOLE WHEAT BREAD," AND THEN IT HAS A TRACE AMOUNT OF

8  SOY FLOUR IN IT.

9          **THE COURT:**  BUT ISN'T IT THE EXTRAORDINARY CASE WHERE

10  I WOULD JUST DECIDE OFF THE BAT THAT I KNEW WHAT THE REASONABLE

11  CONSUMER WAS GOING TO THINK ABOUT A PARTICULAR PRODUCT?

12          **MR. GOODMAN:**  I THINK IT WOULD BE, YOUR HONOR.  BUT

13  THE OBLIGATION OF THE PLAINTIFFS IN THESE TYPES OF CASES IS TO

14  PLEAD WHAT A REASONABLE CONSUMER WOULD THINK OR A REASONABLE

15  CONSUMER WAS TOLD AND HOW A REASONABLE CONSUMER WOULD REACT.

16          AND SO HERE, YOUR HONOR, I THINK THEY HAVE TO PLEAD

17  WHY A TRACE AMOUNT OF SOY FLOUR IN BREAD WOULD MATTER TO THESE

18  PLAINTIFFS.  THERE'S NO ALLEGATION THAT THEY ARE ALLERGIC TO

19  SOY.

20          THIS IS NOT A CASE WHERE SOMEBODY GOT SICK BECAUSE

21  THEY ATE SOMETHING OR HAD SOME SORT OF REACTION.  THIS IS NOT

22  EVEN A CASE LIKE THESE HEALTH CASES THAT YOU SEE WHERE A PRODUCT

23  SAYS IT DOESN'T CONTAIN SUGAR, BUT IT DOES, OR IT'S LOW IN FAT,

24  BUT NOT REALLY.

25          THIS IS JUST PURELY A:  THIS SAID "A HUNDRED PERCENT

1    WHOLE WHEAT" AND ON THE LABEL IT ALSO SAYS IN THE VERY LAST

2    INGREDIENT "SOY FLOUR."   ON SOME OF THE LABELS.   NOT EVEN ON

3    ALL THE LABELS.   SOME OF THE LABELS DON'T EVEN -- OF THE SAME

4    PRODUCT, AGAIN, YOUR HONOR, DON'T EVEN HAVE SOY FLOUR IN THEM.

5             EXHIBIT FIVE, FOR EXAMPLE, ON SARA LEE WHOLE WHEAT

6    BREAD.  SO THIS ALL GOES -- WE'RE NOT ATTACKING THE MERITS OF

7    THEIR CLAIM, YOUR HONOR.  THAT'S FOR LATER, IF THEY SURVIVE.

8    WE'RE JUST SAYING THEY HAVEN'T MADE -- THEY HAVEN'T PLED THE

9    FACTS TO GET US TO WHERE WE NEED TO BE.

10            AT THIS POINT, YOUR HONOR, YOU ASKED US TO GO OUTSIDE

11   AND HAVE A DISCUSSION ABOUT A SCHEDULE FOR DISCOVERY AND THE

12   REST OF THIS CASE.  THE PROBLEM IS, YOUR HONOR, WITH THE

13   ALLEGATIONS AS THEY STAND NOW WITHOUT MORE SPECIFICITY, WITHOUT

14   KNOWING EXACTLY WHAT PRODUCTS ARE AT ISSUE AND WHAT LABELS ARE

15   AT ISSUE, BECAUSE THEY ARE GOING TO SAY:

16            "WELL, THE PRODUCTS THAT ARE AT ISSUE ARE THESE

17            PRODUCTS ON PARAGRAPH FOUR."

18            BUT THOSE PRODUCTS HAVE A VARIETY OF LABELS, A

19   VARIETY OF PERMUTATIONS THAT MAKE DISCOVERY SOMEWHAT UNWIELDILY,

20   YOUR HONOR.

21            IT WOULD BE MUCH MORE EFFICIENT FOR THE COURT, AND

22   CERTAINLY MORE EFFICIENT FOR MY CLIENT, IF THE PLAINTIFFS WERE

23   FORCED TO PLEAD THE FACTS THAT SUPPORT THESE ALLEGATIONS, NOT

24   JUST TO SAY:

25            "WELL, I BOUGHT THIS PRODUCT THAT HAD THIS

1        STATEMENT ON IT."

2        THERE NEEDS TO BE AN ALLEGATION IN THERE AS TO WHAT

3   THE STATEMENT WAS EXACTLY, WHEN THEY BOUGHT IT, HOW THEY RELIED

4   ON IT, HOW A REASONABLE CONSUMER WOULD HAVE RELIED ON IT, AND

5   HOW THAT RELIANCE WAS DETRIMENTAL TO THEM IN SOME RESPECT OTHER

6   THAN SAYING:

7        "WELL, I BOUGHT A PRODUCT THAT WAS WORTHLESS."

8        THE FACT THAT YOU CAN'T RESELL IT -- THESE PEOPLE ARE

9   NOT -- THEY DIDN'T ALLEGE THEY WERE IN THE BUSINESS OF RESELLING

10  BAKERY PRODUCTS.  THEY STILL GOT A LOAF OF BREAD.  APPARENTLY,

11  THEY STILL USED IT.  SO THEY WOULD HAVE TO SHOW YOUR HONOR THAT

12  THEY WERE ABLE TO PURCHASE SOME OTHER PRODUCT OF THE SAME OR

13  SIMILAR QUALITY FOR LESS, WHICH THEY HAVEN'T ALLEGED ANY FACTS

14  TO SHOW.

15       OR THEY HAVE TO ALLEGE FACTS TO SHOW THAT THEY COULD

16  HAVE PURCHASED A BETTER PRODUCT, A HUNDRED PERCENT WHOLE WHEAT

17  BREAD, THAT DIDN'T SAY -- THAT DIDN'T CONTAIN TRACE AMOUNTS OF

18  SOY FLOUR FOR THE SAME PRICE.

19       BUT IF THEY CAN'T ALLEGE THAT, THEY DON'T HAVE ANY

20  DAMAGES, BECAUSE THERE'S NO ALLEGATION AS TO WHY A TRACE AMOUNT

21  OF SOY FLOUR WOULD BE DETRIMENTAL TO THESE PARTICULAR PLAINTIFFS

22  OR TO ANY OF THE CLASS MEMBERS.

23       THE COURT:  OKAY.  DO YOU HAVE ANYTHING FURTHER,

24  MR. GOODMAN?

25       MR. GOODMAN:  ON THE AHA, AMERICAN HEART ASSOCIATION

```
 1   MARK, YOUR HONOR, JUST VERY BRIEFLY.  AS YOU KNOW FROM OUR
 2   PAPERS OUR POSITION ON THAT ISSUE IS THAT IT'S NOT AN
 3   ENDORSEMENT TO HAVE SOMETHING CERTIFIED BY THE AMERICAN HEART
 4   ASSOCIATION.  AND THERE'S NO PROHIBITION AGAINST HAVING THAT
 5   MARK ON YOUR PRODUCT WITHOUT SAYING THAT IT WAS PAID A
 6   CERTIFICATION FEE.
 7            IN FACT, YOUR HONOR, I CHALLENGE YOU TO GO TO A
 8   SUPERMARKET.  I TRIED TO FIND ANY PRODUCT WITH THAT MARK ON IT
 9   THAT SAID:
10                 "THIS WAS A PAID -- WE PAID FOR A CERTIFICATION
11                 FEE FOR THIS."
12            IT'S JUST A MATTER OF YOU HAVE TO PAY TO HAVE YOUR
13   PRODUCT EVALUATED BY THE AMERICAN HEART ASSOCIATION.  YOU STILL
14   HAVE TO -- YOUR PRODUCT STILL HAS TO MEET THE STANDARDS IN ORDER
15   TO BE CERTIFIED AND HAVE THAT MARK ON IT.
16            THIS IS NOT THE SAME AS HAVING SHAQUILLE O'NEAL SELL
17   A BUICK, AND YOU KNOW HAVE PEOPLE SAY:
18                 "OH, LOOK.  SHAQUILLE O'NEAL DRIVES THAT CAR"
19   AND BE FOOLED INTO THINKINK WITHOUT HAVING A STATEMENT ON IT
20   SAYING:
21                 "THIS IS A PAID ENDORSEMENT."
22            THESE ARE SOMETHING WHERE THESE PRODUCTS ACTUALLY MET
23   CRITERIA THAT ALLOWED THEM TO CARRY THE MARK.  THEY HAD TO PAY A
24   FEE TO HAVE THAT CERTIFICATION PROCESS UNDERTAKEN, BUT IF THEY
25   DON'T MEET THE CERTIFICATION REQUIREMENTS THEY ARE NOT
```

| | |
|---|---|
| 1 | CERTIFIED.  IT DOESN'T MATTER.  THEY DON'T GET THEIR MONEY BACK. |
| 2 | IT DOESN'T MATTER. |
| 3 | AND IN THEIR OPPOSITION THE PLAINTIFFS SAID: |
| 4 | "WELL, BUT THEY HAVE TO PAY A RENEWAL FEE EVERY |
| 5 | YEAR, AND THAT SHOWS THAT IT IS AN ENDORSEMENT." |
| 6 | BUT THAT RENEWAL FEE IS FOR RECERTIFICATION OF THE |
| 7 | PRODUCT.  THE PRODUCT IS RECERTIFIED EVERY YEAR, TESTED AND THEN |
| 8 | RECERTIFIED. |
| 9 | SO I THINK, YOUR HONOR, THAT'S A SIGNIFICANT |
| 10 | DISTINCTION BETWEEN AN ENDORSEMENT LIKE WE USUALLY THINK ABOUT |
| 11 | ENDORSEMENT WITH SOMEBODY SAYING, YOU KNOW: |
| 12 | "I'M MICHAEL JORDAN.  I LOVE THIS GATORADE," |
| 13 | VERSUS: |
| 14 | "THIS PRODUCT MEETS THE STANDARDS OF THE |
| 15 | AMERICAN HEART ASSOCIATION, AND, THEREFORE, GETS A |
| 16 | CHECKMARK." |
| 17 | **THE COURT:**  ALL RIGHT.  THANK YOU, MR. GOODMAN. |
| 18 | MR. -- NOT MR. GORE.  MR. SILVERMAN. |
| 19 | **MR. SILVERMAN:**  GOOD AFTERNOON, YOUR HONOR. |
| 20 | **THE COURT:**  GO AHEAD. |
| 21 | **MR. SILVERMAN:**  GOOD AFTERNOON, YOUR HONOR.  LET ME |
| 22 | BRIEFLY ADDRESS SOME OF THE POINTS THAT MR. GOODMAN MADE. |
| 23 | FIRST, LET ME START BY POINTING OUT THAT UNDER |
| 24 | CALIFORNIA LAW, AND SPECIFICALLY UNDER THE KWIKSET DECISION OF |
| 25 | THE CALIFORNIA SUPREME COURT, AND WHICH WAS MOST RECENTLY |

1   REAFFIRMED BY THE NINTH CIRCUIT IN THE ENOWEST V. KOHL'S

2   (PHONETIC) DECISION HANDED DOWN A COUPLE MONTHS AGO.  ALL YOU

3   HAVE TO DO TO ALLEGE STANDING AND INJURY IS THAT YOU PURCHASED A

4   PRODUCT BASED ON A STATEMENT, THAT THAT STATEMENT WAS FALSE AND

5   HAD YOU KNOWN THAT STATEMENT WAS FALSE YOU WOULD NOT HAVE

6   PURCHASED IT.

7           WE MORE THAN ALLEGE THAT WITH RESPECT TO EACH OF THE

8   SIX SPECIFIC PRODUCTS AT ISSUE HERE.

9           AND TO THE EXTENT THAT DEFENDANT IS RAISING QUESTIONS

10  AS TO WHETHER OR NOT AS A MATTER OF LAW A REASONABLE CONSUMER

11  WOULD FIND THESE REPRESENTATIONS TO BE MATERIAL, FIRST, THAT'S

12  INHERENTLY A QUESTION OF FACT.  THAT'S NOT APPROPRIATE ON A

13  MOTION TO DISMISS.

14          HOWEVER, I'D LIKE TO POINT OUT THAT IN ENOWEST

15  DECISION THE NINTH CIRCUIT RECENTLY POINTED OUT THAT ANY TIME AN

16  AGENCY OR A LEGISLATURE DETERMINES THAT A SPECIFIC STATEMENT IS

17  UNLAWFUL, JUST AS THE FDA HAS DONE HERE, THAT STATEMENT IS

18  INHERENTLY MATERIAL.  AND THE COURT SHOULD DEFER TO THE AGENCY

19  OR THE LEGISLATURE WITH RESPECT TO THAT DETERMINATION ON

20  MATERIALITY.

21          I WANT TO ADDRESS OUR PLEADINGS UNDER BOTH RULE 8 AND

22  RULE 9.  AS WE SET FORTH IN OUR PAPERS WE CLEARLY SATISFY THE

23  HEIGHTENED PLEADINGS STANDARD OF RULE 9 (B).

24          BEFORE I GET TO THAT SPECIFICALLY, I WOULD LIKE TO

25  POINT OUT THAT WITH RESPECT TO OUR UNLAWFUL CLAIM, UNDER THE

1    UNLAWFUL PRONG CLAIM UNDER THE UCL, WE DO NOT HAVE TO SATISFY

2    RULE 9 (B) IN THE FIRST PLACE.  IT'S SIMPLY SUBJECT TO RULE 8

3    NOTICE PLEADING.

4              THE UCL PROHIBITS THREE TYPES OF CONDUCT:  FRAUDULENT

5    PRACTICES AND ACTS; UNFAIR PRACTICES AND ACTS; AND UNLAWFUL

6    PRACTICES AND ACTS.  THREE DISTINCT AND SEPARATE TYPES OF

7    ACTIVITY.

8              WHILE WE DO ALLEGE THAT DEFENDANT ENGAGED IN

9    FRAUDULENT CONDUCT, WE ALSO SIMULTANEOUSLY ALLEGE THAT THEY

10   ENGAGED IN NONFRAUDULENT UNLAWFUL CONDUCT.

11             AND THE NINTH CIRCUIT HAS MADE CLEAR, PARTICULARLY IN

12   THE VESS V. CIBA-GEIGY CORP CASE THAT YOU CAN SIMULTANEOUSLY

13   ALLEGE BOTH FRAUDULENT CONDUCTS AND NONFRAUDULENT CONDUCT.  AND

14   RULE 9 (B) PLEADING REQUIREMENTS ONLY APPLIED TO THE FRAUDULENT

15   CONDUCT BUT NOT THE NONFRAUDULENT CONDUCT.  AND THAT'S EXACTLY

16   WHAT WE HAVE HERE.

17             WE HAVE INHERENTLY UNLAWFUL CONDUCT THAT IS NOT

18   FRAUDULENT IN NATURE.  VIOLATIONS OF THE SHERMAN LAW AND THE

19   FDCA ARE STRICT LIABILITY CRIMES.  THERE IS NO INTENT

20   REQUIREMENT.

21             THE SALE OR MANUFACTURE OF MISBRANDED PRODUCTS THAT

22   VIOLATE THE FDCA, THE SHERMAN LAW OR FDA REGS IS ILLEGAL

23   REGARDLESS OF WHETHER OR NOT THE DEFENDANT INTENDED TO DEFRAUD

24   OR DECEIVE.

25             THEREFORE, YOU HAVE AN UNLAWFUL ACT REGARDLESS OF

1   THEIR INTENT.  THERE'S NO MISREPRESENTATION AND NO RELIANCE ON

2   ANY MISREPRESENTATION REQUIRED TO HAVE THAT PREDICATE UNLAWFUL

3   ACT.  IT IS A STRICT LIABILITY CRIME.

4          NOW, UNDER THE UNLAWFUL PRONG ALL YOU HAVE TO SHOW IS

5   AN UNLAWFUL ACT RESULTING IN INJURY.  HERE, THE UNLAWFUL

6   PREDICATE ACT IS THE SALE OF A MISBRANDED PRODUCT WHICH IS DONE

7   REGARDLESS OF ANY MISREPRESENTATION AND REGARDLESS OF ANY

8   RELIANCE.  THE RESULTING INJURY IS THE PURCHASE.  BECAUSE IT'S

9   ILLEGAL, IT HAS NO LEGAL VALUE.  IT CANNOT BE LEGALLY RESOLD,

10  THEREFORE IT HAS A VALUE OF ZERO.

11         YET PLAINTIFFS AND OTHER CONSUMERS PAID PERFECTLY

12  GOOD MONEY FOR THIS PRODUCT WHEN, IN FACT, IT'S LEGALLY WORTH

13  ZERO, AND THAT WAS THE RESULTING INJURY.

14         SO YOU'VE SATISFIED ALL THE ELEMENTS OF A CLAIM UNDER

15  THE UCL WITHOUT ANY KIND OF MISREPRESENTATION OR RELIANCE.

16  THEREFORE, RULE 8 NOTICED PLEADINGS SOLELY APPLIES TO THE

17  UNLAWFUL PRONG CLAIMS.

18         NOW, WITH RESPECT TO OUR OTHER CLAIMS ADMITTEDLY RULE

19  9 (B) DOES APPLY, BUT WE HAVE ALLEGED THAT AS YOUR HONOR HAS

20  TENTATIVELY SUGGESTED.

21         **THE COURT:**  WHY DON'T YOU, IF YOU WOULD JUST TAKE UP

22  SPECIFICALLY THE ARGUMENTS THAT MR. GOODMAN WAS MAKING.  AND

23  LET'S TAKE THE LABELING ISSUE.  YOU HAVE ALLEGED IN PARAGRAPH

24  FOUR WHAT YOU ALLEGED.

25         MR. GOODMAN SAYS THAT'S NOT ENOUGH.  YOU NEED TO HAVE

1    THE WHERE AND THE WHAT ELSE IS ON THE LABEL, AND THE OTHER,

2    THOSE OTHER SPECIFICS THE COMPLAINT IS LACKING IN.

3              PICK THAT UP.

4          **MR. SILVERMAN:**  YES, YOUR HONOR.  THE ULTIMATE GOAL

5    OF RULE 9 (B) IS TO PLACE THE DEFENDANT ON NOTICE OF THE CLAIMS

6    AGAINST IT.

7              HERE WE IDENTIFY THE SIX SPECIFIC PRODUCTS.  WE

8    IDENTIFY THE SPECIFIC STATEMENTS OF EACH OF THESE PRODUCTS.  WE

9    IDENTIFY THAT THE PLAINTIFF PURCHASED THESE PRODUCTS WITH THESE

10   STATEMENTS ON THEM, AND THAT THEY WERE DECEIVED BY AND INJURED

11   BY THE PURCHASE OF THESE PRODUCTS AS A RESULT OF THESE SPECIFIC

12   STATEMENTS.

13             WITH RESPECT TO THE WHO, WHAT, WHERE, WHEN AND HOW,

14   THE WHO IS THE DEFENDANT.  THE WHAT IS THAT THEY VIOLATED STATE

15   AND FEDERAL LAW BY PLACING --

16         **THE COURT:**  NO.

17         **MR. SILVERMAN:**    -- DECEPTIVE AND MISLEADING --

18         **THE COURT:**  I GOT THAT PART, MR. SILVERMAN.  BUT YOUR

19   COLLEAGUE IS SUGGESTING THAT MORE IS REQUIRED AT THIS STAGE.

20         **MR. SILVERMAN:**  NO, YOUR HONOR, FOR A NUMBER OF

21   REASONS.  FIRST OF ALL, BASED ON THEIR PAPERS THEY ARE

22   ABSOLUTELY ON NOTICE.  YOU KNOW PRECISELY WHAT THE PRODUCTS AND

23   STATEMENTS AT ISSUE ARE.  THEY ARE CLEARLY ON NOTICE.

24             WE SATISFIED THE UNDERLYING REQUIREMENTS OF 9 (B) IN

25   THAT RESPECT.

1          AND TO THE EXTENT THAT THEY ARE TRYING TO ARGUE THAT

2    WE HAVE TO GIVE A SPECIFIC DATE OR A SPECIFIC STORE THAT EACH OF

3    THESE PRODUCTS ARE PURCHASED, THERE'S NO SUCH REQUIREMENT.

4          NOW, AT LEAST SIX CASES HAVE RECENTLY DECIDED THAT

5    SAYING IT WAS PURCHASED IN THE CLASS PERIOD IS MORE THAN

6    SUFFICIENT.

7          CLANCY V. THE BROMLEY TEA COMPANY (PHONETIC), WHICH

8    WAS ONE OF THE CASES WE SUBMITTED TO THE COURT AS A NOTICE OF

9    RECENT DECISION, THE KOSTA V. DEL MONTE CORP MATTER, THE KHASIN

10   V. HERSHEY CASE, THE ASTIANA V. BEN & JERRY'S HOMEMADE, INC.,

11   ALL THREE OF WHICH WE CITED IN OUR PAPERS.

12         ADDITIONALLY, I POINTED THE COURT TO VON KONIG V.

13   SAMPLE BEVERAGE CORP, (PHONETIC) WHICH IS AN EASTERN DISTRICT

14   CASE, AND IN RE CONAGRA FOODS, WHICH IS A CENTRAL DISTRICT CASE.

15         ALL OF THOSE CASES MAKE CLEAR THAT IN FOODS

16   MISBRANDING CASES WHERE YOU IDENTIFY THE PRODUCT, YOU IDENTIFY

17   THE STATEMENT AT ISSUE, YOU DON'T HAVE TO IDENTIFY A SPECIFIC

18   DATE.

19         AND THAT MAKES A LOT OF SENSE.  EVERY WEEK I OR MY

20   WIFE GO TO THE GROCERY STORE, AND WE PURCHASE EVERYDAY PRODUCTS

21   LIKE LOAVES OF BREAD.

22         NOW, IF ONE WERE TO GO INTO MY REFRIGERATOR AND LOOK

23   AT THE THING OF HEINZ CATSUP AND ASK ME WHEN DID I PURCHASE

24   THAT, I COULDN'T TELL YOU THAT.  AND NO REASONABLE CONSUMER

25   COULD BE EXPECTED TO ANSWER THAT QUESTION.

1          BUT I CAN TELL YOU WITH ABSOLUTE CERTAINTY IT WAS

2   WITHIN THE LAST YEAR AND CERTAINLY WITHIN THE STATUTE OF

3   LIMITATIONS WITHIN THE CLASS PERIOD.  AND THAT'S ALL THAT

4   MATTERS HERE.

5          **THE COURT:**  DOES IT MATTER WHETHER IT WAS PURCHASED

6   IN CALIFORNIA OR NOT?

7          **MR. SILVERMAN:**  WELL, YOUR HONOR, WE'RE ALLEGING A

8   NATIONWIDE CLASS ACTION, AND WE DO ALLEGE THAT THESE ARE

9   CALIFORNIA RESIDENTS WHO PURCHASED THESE PRODUCTS WITH THESE

10  SPECIFIC STATEMENTS ON THEM.

11         NOW, TO THE EXTENT THAT DEFENDANTS RAISE THE ISSUE

12  THAT, WELL, MAYBE THERE WERE ALTERNATIVE PACKAGING FOR SOME OF

13  THESE PRODUCTS, SPECIFICALLY ON THE THOMAS' PLAIN BAGEL THINS

14  PRODUCT THAT MAY NOT HAVE SAID "EXCELLENT SOURCE OF FIBER" ON

15  THEM, THAT'S NOT AN ELEMENT OF OUR CASE.  THAT'S AN AFFIRMATIVE

16  DEFENSE THAT WE'RE NOT RESPONSIBLE TO ALLEGE IN OUR CLAIM.

17         WHAT WE HAVE ALLEGED IS THAT THE THOMAS' BAGEL THINS

18  THAT PLAINTIFFS DID PURCHASE, IN FACT, HAD THIS STATEMENT ON IT.

19  TO THE EXTENT THAT THEY WANT TO CHALLENGE THAT, THAT'S AN ISSUE

20  EITHER FOR CLASS CERTIFICATION OR FOR TRIAL.

21         IN FACT, THEY ADMIT THAT THEY SOLD AT LEAST SOME

22  THOMAS' PACKAGES THAT CONTAINED THE "EXCELLENT SOURCE OF FIBER."

23         NOW, TO THE EXTENT THAT THEY ARGUE THAT THAT WAS A

24  TYPOGRAPHICAL ERROR, WHICH IS A POINT THEY MAKE IN THEIR PAPERS,

25  BECAUSE WE ARE DEALING WITH STRICT LIABILITY CRIMES THAT DOESN'T

1   MATTER, AT LEAST UNDER THE UNLAWFUL CLAIM, UNDER THE UNLAWFUL

2   PRONG.

3              IT'S A STRICT LIABILITY CLAIM.  IT'S A STRICT

4   LIABILITY CRIME, THEREFORE IT DOESN'T MATTER IF IT WAS A

5   TYPOGRAPHICAL ERROR OR NOT.

6              NOW, I ALSO WANT TO QUICKLY POINT OUT WITH RESPECT TO

7   THOMAS' THAT ISSUE SOLELY IS WITH RESPECT TO THE "EXCELLENT

8   SOURCE OF FIBER."  THERE'S NO DISPUTE THAT EVERY SINGLE THOMAS'

9   PACKAGE IN THE ALTERNATIVE ONES CONTAIN THE HEART-CHECK MARK.

10  THEY ALL CONTAIN THE HEART-CHECK MARK.  THAT'S NOT AN ISSUE.

11             FURTHER, WITH RESPECT TO, YOU KNOW, THE PURPORTED

12  EVIDENCE THEY PURPORT OF THESE ALTERNATIVE PACKAGES, NOTHING IS

13  PROPERLY BEFORE THE COURT.

14             AS THE COURT HAS STATED, NONE OF THE LABELS HAVE BEEN

15  PROPERLY PLACED BEFORE THE COURT.  THEY HAVE NOT PROPERLY BEEN

16  ACKNOWLEDGED.  THERE'S BEEN NO AUTHENTICATION WHATSOEVER.

17  THERE'S NO SUGGESTION THAT THESE PRODUCTS WITH THESE LABELS WERE

18  EVEN SOLD DURING THE CLASS PERIOD OR SOLD IN CALIFORNIA OR SOLD

19  AT ALL, PLACED IN STREAM OF COMMERCE AT ALL.

20             THESE ARE JUST -- IT'S INADMISSIBLE EVIDENCE.  TO THE

21  EXTENT THEY HAVE REAL EVIDENCE, AGAIN, IT'S AN ISSUE FOR CLASS

22  CERT OR FOR TRIAL.

23             NOW, TO GET TO THE SPECIFIC LABELS, LET'S START OFF

24  WITH THE AMERICAN HEART ASSOCIATION HEART-CHECK MARK.  ON A

25  MOTION TO DISMISS, THE ALLEGATIONS IN THE COMPLAINT MUST BE

1    TREATED AS TRUE.

2         THEY ARE IGNORING THAT BASIC PRINCIPLE OF COMPLAINT

3    CONSTRUCTION.  INSTEAD, ASKING THE COURT TO IGNORE THE

4    ALLEGATIONS AND ACCEPT THEIR ALTERNATIVE FACTUAL ARGUMENTS,

5    AGAIN, BASED ON DOCUMENTS THAT ARE NOT PROPERLY AUTHENTICATED.

6         WHAT WE HAVE ALLEGED IS THAT THE AMERICAN HEART

7    ASSOCIATION BASICALLY SELLS ITS MARK AS A PROFIT CENTER.  IT

8    DOES IT FOR THE MUTUAL ECONOMIC BENEFIT OF BOTH THE AMERICAN

9    HEART ASSOCIATION AND FOOD MANUFACTURERS.

10        AND WITH RESPECT TO THE TWO PAGES THAT THE COURT HAS

11   FOUND IS PROPERLY IN THE RECORD, WHICH IS THE PAMPHLET WITH

12   RESPECT TO THE AMERICAN HEART ASSOCIATION WHOSE CERTIFICATION

13   PROGRAM, JUST THE COVER PAGE ALONE, SAYS:

14            "BOOSTING PRODUCT SALES.  HELPING SHOPPERS

15         CHOOSE.  SUPPORTING YOUR MARKETING STRATEGY."

16        THIS IS NOT SOME PROGRAM FOR THE GENERAL BENEFIT OF

17   CONSUMERS WHO ARE, YOU KNOW, GENERAL HEALTH.  THIS IS A

18   MARKETING PROGRAM FOR THE ECONOMIC BENEFIT OF THE AHA AND FOR

19   FOOD MANUFACTURERS, SUCH AS DEFENDANTS.

20        AND, IN FACT, THE FINAL RULE ENACTED BY THE FDA IN

21   1993 SPECIFICALLY TARGETS THE AMERICAN HEART ASSOCIATION.  THIS

22   RULE WAS MADE FOR THE AMERICAN HEART ASSOCIATION SO THAT PEOPLE

23   WOULD NOT BE FOOLED BY AMERICAN HEART ASSOCIATION ENDORSEMENTS

24   ON A PRODUCT THAT WAS PAID.

25        THE RULE SPECIFICALLY SAYS, AND I QUOTE:

1              "A THIRD-PARTY ENDORSEMENT WOULD CONSTITUTE AN

2         IMPLIED HEALTH CLAIM IF THE ENDORSEMENT REFERENCES

3         A PARTICULAR FOOD OR SUBSTANCE AND THE NAME OF THE

4         ENDORSING ORGANIZATION REFERENCES A PARTICULAR

5         DISEASE, E.G.: AMERICAN HEART ASSOCIATION."

6         THE FDA HAS DETERMINED THAT A REASONABLE CONSUMER

7    WOULD BE DECEIVED BY AN ENDORSEMENT FROM THE AMERICAN HEART

8    ASSOCIATION.  AND THAT IS WHY COMPANIES HAVE TO IDENTIFY IT AS A

9    PAID ENDORSEMENT.

10        THE FACT THAT OTHER COMPANIES ALSO VIOLATE THE LAW

11   WITH RESPECT TO THEIR PRODUCTS IS NOT A DEFENSE TO THAT.

12        AND MOREOVER, TO THE EXTENT THAT THEY ARE ASKING THE

13   COURT TO LOOK AT OTHER DOCUMENTATION FROM THE AMERICAN HEART

14   ASSOCIATION WEBSITE --

15        **THE COURT:**  I'M NOT GOING TO DO THAT.

16        **MR. SILVERMAN:**  OKAY.  SO I WON'T GET INTO THAT

17   POINT.

18        **THE COURT:**  VERY STRONGLY IN YOUR FAVOR.  A LOT OF

19   WHAT YOU'RE SAYING HAS BEEN IN YOUR PAPERS.  SO IF THERE'S

20   ANYTHING THAT IS DIRECTLY RESPONSIVE TO MR. GOODMAN THAT YOU

21   THINK I OUGHT TO BE THINKING STRONGLY ABOUT, OR IF THERE'S

22   SOMETHING NEW I WOULD BE INTERESTED IN IT.

23        **MR. SILVERMAN:**  OKAY.  VERY BRIEFLY, I'LL MAKE TWO

24   POINTS, YOUR HONOR.  WITH RESPECT TO THE TOASTED BREAD -- AND,

25   AGAIN, THIS IS NOT -- I DON'T WANT TO BEAT A DEAD HORSE HERE.

1    BUT MR. GOODMAN SAID WORDS TO THE EFFECT THAT IF SOMETHING IS

2    CALLED "BREAD" IT MUST MEET CERTAIN REQUIREMENTS.

3              THAT IS ABSOLUTELY TRUE.  THEIR PRODUCT DOESN'T MEET

4    THE REQUIREMENTS, YET THEY CALL IT "BREAD."

5              **THE COURT:**  THEY CALL IT "TOASTED BREAD."  SO I GET

6    THIS ARGUMENT.

7              **MR. SILVERMAN:**  IT SAYS "BREAD."  THE PACKAGE SAYS

8    "TOASTED BREAD" AND, QUOTE, "BREAD TOASTED" AND, QUOTE, "TOASTED

9    BREAD IS AN ENTIRELY DIFFERENT KIND OF BREAD," UNQUOTE.

10             THEY ARE CALLING IT "BREAD."  NOW, WHEN YOU BUY WHITE

11   OR WHOLE WHEAT BREAD, FIRST OF ALL, THE "WHOLE WHEAT" MODIFYING

12   THE WORD "BREAD" DOES NOT TAKE IT OUTSIDE OF THE FDA REGULATION

13   NOR DOES THE WORD "TOASTED."

14             AND THERE'S NO EXEMPTION OR ANYTHING, ANY REG OR

15   ANYTHING ISSUED BY THE FDA SUGGESTING OTHERWISE, UNLESS IT'S

16   HONEY BREAD THAT MEETS CERTAIN SPECIFIC REQUIREMENTS.  AND NOT

17   BECAUSE OF THE NAME "HONEY" MODIFYING THE WORD "BREAD"; BECAUSE

18   OF THE CONTENT OF HONEY BREAD.

19             IF YOU WERE TO BUY WHOLE WHEAT BREAD AND PLACE IT IN

20   YOUR TOASTER, FIRST OF ALL WHEN YOU BUY THE WHOLE WHEAT BREAD

21   IT'S CLEARLY SUBJECT TO THE REGS.  WHEN YOU PLACE IT IN THE

22   TOASTER, IT'S TOASTED BREAD.  IT DOESN'T CEASE TO BE SUBJECT TO

23   FDA REGULATIONS IF YOU PLACE IT IN A TOASTER.  AND THEY

24   HAVE -- AND DEFENDANT HAS NOT SUGGESTED ANY REASON TO VIEW THE

25   REGULATIONS OTHERWISE.

1          AND THERE'S PROBABLY ONE POINT REGARDING THE CLRA.

2   MY UNDERSTANDING FROM YOUR HONOR'S INITIAL ASSESSMENT THAT I

3   TAKE IT THAT YOUR HONOR DOESN'T BELIEVE THAT THE CLRA NOTICE

4   PROPERLY COVERS THE SUBSTANTIALLY SIMILAR PRODUCTS?

5          AND IT'S A POINT WELL-TAKEN.  AND WE'RE PREPARED TO

6   RENOTICE IN ACCORDANCE WITH THE CLRA AND APPROPRIATELY AMEND THE

7   COMPLAINT, IF NECESSARY.

8          HOWEVER, I WOULD JUST BRIEFLY NOTE THAT I'M NOT

9   AWARE OF ANY DECISION THAT SPECIFICALLY REQUIRES THE CLRA TO

10  MENTION SUBSTANTIALLY SIMILAR PRODUCTS.  AND I DON'T BELIEVE

11  THAT DEFENDANT HAS CITED SUCH A CASE.  HOWEVER, TO THE EXTENT

12  THAT THE COURT STILL BELIEVES THAT THE CLRA REQUIRES NOTICE OF

13  SUBSTANTIALLY SIMILAR PRODUCTS, THEN, OF COURSE, WE WILL COMPLY

14  AND RENOTICE.

15          **THE COURT:**  THANK YOU VERY MUCH.

16          **MR. SILVERMAN:**  THANK YOU.

17          **THE COURT:**  MR. GOODMAN, DO YOU HAVE ANYTHING NEW TO

18  ADD?

19          **MR. GOODMAN:**  I PROMISE I'LL TRY TO BE VERY BRIEF,

20  YOUR HONOR.  JUST ON THE TOASTED BREAD ISSUE, JUST VERY BRIEFLY.

21  YOU HEARD MR. SILVERMAN SAY -- READ THE LABEL TO YOU.  YOU CAN

22  READ THE LABEL YOURSELF, YOUR HONOR.  IT SAYS IT IS A DIFFERENT

23  KIND OF BREAD.  IT'S NOT SAYING IT IS BREAD.

24          ON THE FRAUD CLAIMS, YOUR HONOR, MR. SILVERMAN ADMITS

25  THAT THEY DON'T -- THAT THEY PLEAD FRAUD, BUT THEY DON'T ALLEGE

1   FRAUD, THE ELEMENTS OF FRAUD THAT ARE REQUIRED BY THE FEDERAL

2   RULES OR THE FEDERAL CASES, YOUR HONOR.

3            I THINK YOU NEED TO TAKE A HARD LOOK AT THE FRAUD

4   CLAIMS THAT THEY ALLEGE.  THEY HAVE A CAUSE OF ACTION FOR FRAUD,

5   JUST LIKE THEY HAVE CAUSES OF ACTION FOR UNTRUE AND UNFAIR

6   ADVERTISING.  AND THEY DON'T HAVE ANY ALLEGATIONS IN THEIR

7   COMPLAINT THAT THERE'S ANY ADVERTISEMENT GOING ON HERE OR THAT

8   THE PLAINTIFFS VIEWED ANY ADVERTISEMENT.

9            I THINK THAT'S A VERY IMPORTANT THING FOR YOUR HONOR

10  TO FOCUS ON TO DETERMINE WHETHER THEY HAVE ALLEGED SUFFICIENT

11  FACTS IN THIS CASE.

12           TO THE EXTENT THAT THEY ARE NOT PLEADING FRAUD, YOU

13  OBVIOUSLY DON'T LOOK AT THE FRAUD CLAIMS WITH A HEIGHTENED

14  STANDARD.  BUT THEY ADMIT THAT THEY PLED FRAUD HERE.  OUR

15  POSITION IS THAT THEY HAVEN'T MET THE HEIGHTENED STANDARD FOR

16  THOSE FRAUD PLEADINGS, AND THEY HAVEN'T ALLEGED ANY FACTS

17  RELATING TO ADVERTISING WHICH WOULD GET RID OF THOSE CLAIMS.

18           YOUR HONOR, ON THE CALIFORNIA RESIDENCE ISSUE, YES,

19  THEY ARE ALLEGING A NATIONWIDE CLASS.  BUT IT'S ALL UNDER

20  CALIFORNIA LAW.  SO IN ORDER TO HAVE STANDING TO BRING A CLAIM

21  UNDER THE CALIFORNIA BUSINESS AND PROFESSIONS CODE, THE

22  CALIFORNIA HEALTH AND SAFETY CODE, THE SHERMAN ACT YOU HAVE TO

23  BE A CALIFORNIA RESIDENT WHO PURCHASED THE PRODUCT IN

24  CALIFORNIA.

25           AGAIN, THERE'S NO ALLEGATION AS TO WHERE THESE

1    PRODUCTS WERE PURCHASED.  THAT'S WHY WE THINK THAT'S A

2    SIGNIFICANT ISSUE.

3            UNLIKE THE HEINZ CATSUP IN MR. SILVERMAN'S

4    REFRIGERATOR, WE ARE DEALING WITH A GREAT VARIETY OF PRODUCTS

5    HERE WITH LABELS THAT ARE DIFFERENT.  BETWEEN THE 24-PACK, THE

6    EIGHT-PACK, THE 16-PACK, WHETHER IT WAS BOUGHT IN SOUTHERN

7    CALIFORNIA, NORTHERN CALIFORNIA OR VIRGINIA AND OVER WHAT PERIOD

8    OF TIME IT WAS BOUGHT.

9            THEY DON'T EVEN ALLEGE THEY PURCHASED THE PRODUCT IN

10    THE LAST YEAR.  THEY SAID THEY HAD PURCHASED THE PRODUCTS IN THE

11    LAST FOUR YEARS.  THEIR CLASS SEEKS TO GO BACK FOUR YEARS.

12    THERE'S NO ALLEGATION AS TO WHEN WITHIN THOSE FOUR YEARS ANY OF

13    THESE PRODUCTS WERE PURCHASED.

14            THAT BECAUSE OF THE VARIETY HERE -- AND THAT'S WHY WE

15    PUT THESE LABELS BEFORE YOUR HONOR SO YOU COULD SEE THIS IS NOT

16    A CASE WHERE EVERY PRODUCT HAD EXACTLY THE SAME LABELING SO THEY

17    COULD JUST SAY:

18                "I BOUGHT THOMAS' BAGEL THINS, THEREFORE WE KNOW

19                EXACTLY WHAT LABEL YOU'RE TALKING ABOUT."

20            WE'RE NOT ON NOTICE, YOUR HONOR.  WE HAD TO GO

21    THROUGH THE EXERCISE OF FIGURING OUT GENERALLY WHAT THEY ARE

22    TALKING ABOUT, AND WE CAN'T SEE IT, AND BECAUSE THERE ARE NO

23    STATEMENTS IN THERE.  AND WHILE THAT MIGHT BE EXTREMELY

24    APPROPRIATE FOR SUMMARY JUDGMENT, WE ALSO THINK THAT MEANS THAT

25    THEY HAVEN'T PLED SUFFICIENT FACTS UNDER RULE 8 AND RULE 9.

1          AND JUST FINALLY, YOUR HONOR, ON THE ONE THING I

2   FORGOT TO MENTION AT THE BEGINNING, AND YOUR HONOR DIDN'T

3   MENTION IT IN YOUR TENTATIVE, THE UNJUST ENRICHMENT CLAIM WHICH

4   WE THINK IS REDUNDANT.  AND I THINK IF YOUR HONOR LOOKS AT THE

5   CASES THAT THEY HAVE SUBMITTED TO YOUR HONOR FOR CONSIDERATION,

6   INCLUDING THE ONE THEY JUST SUBMITTED THE OTHER DAY, THE GERBER

7   CASE, EVERY COURT IN THIS DISTRICT, AS A MATTER OF FACT IN THIS

8   STATE --

9          THE COURT:  I DID NOTICE THAT.

10          MR. GOODMAN:  -- HAS FOUND THAT THAT IS A REDUNDANT

11   CLAIM.

12          THE COURT:  RIGHT.  AND IT'S CERTAINLY SOMETHING THAT

13   I THINK THIS IS SORT OF A -- I AM GOING TO LOOK HARD AT THAT --

14          MR. GOODMAN:  THANK YOU, YOUR HONOR.

15          THE COURT:  -- TO MAKE A DETERMINATION.

16          MR. GOODMAN:  THANK YOU, YOUR HONOR.

17          THE COURT:  ALL RIGHT.  SUBMITTED?

18          MR. GOODMAN:  SUBMITTED.

19          THE COURT:  ALL RIGHT.  SO BRIEFLY LET'S DO THE CMC.

20          MR. GOODMAN, I HEARD YOU.  BUT WHAT DID YOU TALK

21   ABOUT WHILE YOU WERE OUT IN THE CORRIDOR?

22          MR. GORE:  WE HAVE WORKED OUT SOME PROPOSALS FOR OUR

23   CASE SCHEDULE.

24          THE COURT:  OKAY.

25          MR. GORE:  WITHOUT KNOWING EXACTLY WHEN WE WILL HAVE

1   THE COURT'S ORDER ON THIS MOTION, BUT ASSUMING THAT WE GET IT

2   WITHIN THE NEXT FEW WEEKS, THEN BIMBO WILL DECIDE WHETHER TO

3   ANSWER OR TO FILE ANOTHER MOTION.

4            OF COURSE, WE WOULD LIKE TO GET THE PLEADINGS SETTLED

5   AS SOON AS POSSIBLE SO WE CAN COMMENCE DISCOVERY.

6            AND ASSUMING WE'RE ABLE TO DO THAT AND TAKING INTO

7   CONSIDERATION THE UPCOMING HOLIDAYS, DISCOVERY IN MOST OF OUR

8   CASES CLASS DISCOVERY IS TAKING ABOUT SIX MONTHS.  SO WE ARE

9   PROPOSING TO FILE OUR CLASS CERT OPENING BRIEF ON MAY 1 OF 2014.

10           WITH DEFENDANT'S OPPOSITION 60 DAYS LATER ON JULY 1,

11  2014.

12           AND THEN, OUR REPLY 30 DAYS LATER ON AUGUST 1 OF

13  2014.  WITH POTENTIALLY, DEPENDING, OF COURSE, UPON THE COURT'S

14  SCHEDULE, A CLASS CERTIFICATION HEARING SEPTEMBER 1 NEXT YEAR IS

15  LABOR DAY.

16           SO WE'RE LOOKING AT SEPTEMBER 8TH FOR -- YOU KNOW,

17  THAT'S WHAT WE'RE PROPOSING FOR HEARING.  THEN WITH DISPOSITIVE

18  MOTIONS TO FOLLOW 90 DAYS AFTER THE COURT'S RULING ON CLASS

19  CERTIFICATION.

20           THEN, WITH THE CASE POTENTIALLY GOING TO, I THINK, A

21  FIVE TO SEVEN DAY JURY TRIAL IN APRIL OF 2015.

22           AND WE -- OF COURSE, WE CAN FILL IN ALL THE DETAILS

23  THERE, BUT WE'LL UNDOUBTEDLY HAVE ANOTHER CMC BEFORE WE GET

24  THROUGH ALL OF THAT.

25           **MR. GOODMAN:**  AND ONE OF THE THINGS WE TALKED ABOUT

```
1    OUTSIDE, YOUR HONOR, WAS THE IDEA OF AFTER CLASS CERTIFICATION

2    IS DECIDED, DEPENDING ON WHAT OBVIOUSLY THE OUTCOME OF THAT

3    DETERMINATION, MIGHT MAKE SENSE TO HAVE OTHER SCHEDULING

4    CONFERENCE AT THAT TIME TO FIGURE OUT WHAT THE REST OF THE CASE

5    SHOULD LOOK LIKE BASED ON WHAT THE CASE LOOKS LIKE THEN.

6              SO, I MEAN, WE'VE RUN OUT THESE DATES AS SORT OF A

7    ROUGH IDEA OF HOW LONG WE THINK IT WOULD TAKE TO DO THESE

8    THINGS.  BUT IT MIGHT MAKE SENSE FOR SUMMARY JUDGMENT PURPOSES

9    TO WAIT AND SEE WHAT YOU DO WITH CLASS CERTIFICATION.  AND THEN

10   SEE WHAT A REASONABLE SCHEDULE, TRIAL SCHEDULE LOOKS LIKE FROM

11   THERE.

12             THE COURT:  I HEAR THAT.  BUT I ALSO -- AND I WILL

13   REMEMBER THAT WE HAD THIS DISCUSSION.  BUT I DO THINK IT MAKES

14   SOME SENSE TO KEEP EVERYBODY FOCUSED ON THE ENTIRE GAME AT THE

15   OUTSET.

16             I DON'T -- I THINK THE SCHEDULE THAT YOU'VE PUT OUT

17   IS -- WILL CERTAINLY GIVE YOU AMPLE TIME TO BRING YOUR MOTION.

18   AND IF YOU FEEL LIKE BRINGING IT EARLIER, I WOULD ENCOURAGE

19   THAT.

20             MR. GORE:  THE REASON FOR -- WE'D LIKE TO MOVE FOR

21   CLASS CERTIFICATION TOMORROW, BUT WE'RE TRYING TO -- WE KNOW WE

22   HAVE GOT THANKSGIVING AND CHRISTMAS COMING UP.  AND WE'RE

23   JUST -- WE'RE JUST TRYING TO PROPOSE REASONABLE DEADLINES.  IN

24   ALL LIKELIHOOD -- WE'RE GETTING ALONG GREAT SO FAR -- WE'LL

25   BRING OUR MOTION EARLIER.
```

1          **THE COURT:**  WELL, I DO THINK -- I THINK GIVEN MR.

2    GOODMAN'S CONCERNS ABOUT FIGURING OUT, IF I LET THE COMPLAINT GO

3    FORWARD, FIGURING OUT HOW THE DISCOVERY IS GOING TO GO, I THINK

4    I'M INCLINED TO LET THIS HAPPEN LIKE THIS.

5          I HAVE LAW AND MOTION ON WEDNESDAYS, SO THE HEARING

6    FOR THE CLASS CERTIFICATION MOTION WOULD BE SEPTEMBER 3RD, 2014.

7    AND THEN, WE'D WORK THINGS BACKWARDS FROM THERE.

8          AND I WILL SCHEDULE IT WITH -- FOR TODAY WE WILL HAVE

9    IT -- SCHEDULE THE JURY TRIAL FOR -- DID YOU GIVE ME A DATE?

10          **MR. GOODMAN:**  HE GAVE YOU A MONTH.

11          **MR. GORE:**  APRIL, 2015, NO DATE.

12          **THE COURT:**  SO LET'S PUT IT DOWN FOR APRIL 20TH, THE

13    PRETRIAL ON APRIL 6.  AND WE CAN LOOK AT THIS AGAIN ONCE

14    WE -- AFTER THE CLASS CERTIFICATION.

15          **MR. GOODMAN:**  AND JUST, YOUR HONOR, WE ALSO DISCUSSED

16    ALL OF THIS IS WITHOUT PREJUDICE TO EITHER ONE OF US BRINGING

17    MOTIONS EARLIER, OTHER MOTIONS.

18          **THE COURT:**  OH, OF COURSE.  OF COURSE.

19          **MR. GOODMAN:**  JUST WANT TO MAKE SURE.

20          **THE COURT:**  AND I DO HAVE A ONE SUMMARY JUDGMENT

21    MOTION RULE.

22          **MR. GOODMAN:**  UNDERSTOOD.

23          **THE COURT:**  BUT ASIDE FROM THAT.  AND THEN, WHY DON'T

24    WE RECONVENE HERE -- I DON'T AT THE MOMENT SEE A REASON THAT WE

25    NEED TO DO THIS BEFORE NEXT MARCH UNLESS YOU DO.  I'M HAPPY TO

1    HOLD A CMC EARLIER, AND -- BUT IF YOU ARE GETTING ALONG IN

2    DISCOVERY AND THINGS ARE WORKING OUT I DON'T HAVE A NEED TO HAVE

3    YOU IN.

4              **MR. GOODMAN:**  SINCE WE HAVEN'T DONE ANYTHING YET,

5    REALLY, AS LONG AS IT'S OKAY WITH YOUR HONOR IF WE SEE THE NEED

6    TO ASK YOUR HONOR, TO SET A CONFERENCE BEFORE THAT --

7              **THE COURT:**  IF YOU DO THAT I WILL SET IT.

8              **MR. GOODMAN:**  -- I SEE NO REASON TO BOTHER YOUR HONOR

9    IF WE DON'T HAVE TO.

10             MY ONLY CONCERN IS MARCH MIGHT BE CLOSE TO WHEN WE'RE

11   TRYING TO AIM FOR COMPLETING DISCOVERY.  AND SO IF WE HAVE ANY

12   ISSUES BEFORE THAT --

13             **THE COURT:**  HOW ABOUT LET'S DO FEBRUARY?  LET'S DO

14   FEBRUARY 18.

15             **MR. GOODMAN:**  THAT'S FINE, YOUR HONOR.

16             **MR. GORE:**  FINE, YOUR HONOR.

17             **THE COURT:**  THANK YOU.

18             **MR. SILVERMAN:**  THANK YOU.

19             (THEREUPON, THIS HEARING WAS CONCLUDED.)

20

21

22

23

24

25

**CERTIFICATE OF TRANSCRIBER**


   I CERTIFY THAT THE FOREGOING IS A TRUE AND CORRECT

TRANSCRIPT, TO THE BEST OF MY ABILITY, OF THE ABOVE PAGES OF

THE OFFICIAL ELECTRONIC SOUND RECORDING PROVIDED TO ME BY THE

U.S. DISTRICT COURT, NORTHERN DISTRICT OF CALIFORNIA, OF THE

PROCEEDINGS TAKEN ON THE DATE AND TIME PREVIOUSLY STATED IN THE

ABOVE MATTER.

   I FURTHER CERTIFY THAT I AM NEITHER COUNSEL FOR, RELATED TO,

NOR EMPLOYED BY ANY OF THE PARTIES TO THE ACTIONS IN WHICH THIS

HEARING WAS TAKEN; AND, FURTHER, THAT I AM NOT FINANCIALLY NOR

OTHERWISE INTERESTED IN THE OUTCOME OF THE ACTION.

SIGNATURE OF TRANSCRIBER

*Kathy Wyatt*                    10-7-13 DATE