1  Mark C. Goodman (Bar No. 154692)
   Ethan A. Miller (Bar No. 155965)
2  HOGAN LOVELLS US LLP
   3 Embarcadero Center, Suite 1500
3  San Francisco, California 94111
   Telephone: (415) 374-2300
4  Facsimile: (415) 374-2499
   mark.goodman@hoganlovells.com
5  ethan.miller@hoganlovells.com

6  Attorneys for Defendant
   BIMBO BAKERIES USA, INC.
7

8              UNITED STATES DISTRICT COURT

9              NORTHERN DISTRICT OF CALIFORNIA

10                 SAN FRANCISCO DIVISION

11

| | |
|---|---|
| ALEX ANG and LYNN STREIT, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>BIMBO BAKERIES USA, INC.,<br><br>Defendant. | Case No. 13 Civ. 1196 (WHO)<br><br>**NOTICE OF MOTION AND MOTION TO DISMISS SECOND AMENDED COMPLAINT**<br><br>Hearing: January 29, 2014<br><br>Time: 2:00 pm<br><br>The Hon. William H. Orrick |

## NOTICE OF MOTION AND MOTION

TO PLAINTIFFS AND THEIR ATTORNEYS OF RECORD:

**PLEASE TAKE NOTICE THAT** defendant Bimbo Bakeries USA, Inc., ("BBUSA") will and hereby does move to dismiss the plaintiffs' second amended complaint filed in this matter. Hearing on this motion will be held on January 29, 2014 at 2:00 pm.

BBUSA brings this motion on the ground that the plaintiffs lack standing to bring any claim with respect to the seventy-three (73) products that they concede they did not purchase because the plaintiffs have not pleaded facts sufficient to show that the products that they did not purchase are substantially similar to those that they did purchase as required by applicable law, including recent decisions of this Court.

BBUSA bases this motion on this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, all pleadings and papers filed in this action, the oral argument of counsel and any other matters that the Court may wish to consider.

Dated: December 5, 2013                    HOGAN LOVELLS US LLP


By: /s/ Mark C. Goodman
Mark C. Goodman
Attorneys for Defendant
Bimbo Bakeries USA, Inc.

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ................................................................................................................1

II. PROCEDURAL HISTORY..................................................................................................4

III. SUMMARY OF THE SAC'S ALLEGATIONS ..................................................................5

IV. DISCUSSION .......................................................................................................................5

    A. Legal Standard .........................................................................................................5

    B. The SAC Does Not Support Standing As To Non-Purchased Products ..................6

IV. CONCLUSION ...................................................................................................................11

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Astiana v. Dreyer's Grand Ice Cream, Inc.*,
2012 WL 2990766 (N.D. Cal. July 20, 2012) ................................................................. 9

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) ......................................................................................................... 4

*Bissessur v. Indiana Univ. Bd. of Trustees*,
582 F.3d 599 (7th Cir. 2009) ........................................................................................... 4

*Brazil v. Dole Foods Co.*,
2013 WL 5312418 (N.D. Cal. Sept. 23, 2013) ................................................................ 5

*Bruton v. Gerber Products Co.*,
2013 WL 4833413 (N.D. Cal. Sept. 6, 2013) .......................................................... passim

*Clapper v. Amnesty Int'l USA*,
133 S.Ct. 1138 (2013) ...................................................................................................... 5

*Colucci v. ZonePerfect Nutrition Co.*,
2012 WL 6737800 (N.D. Cal. Dec. 28, 2012) .......................................................... 2, 11

*Johns v. Bayer Corp.*,
2010 WL 476688 (S.D. Cal. 2010) ............................................................................. 1, 8

*Kane v. Chobani, Inc.*,
2013 WL 5289253 (N.D. Cal. Sept. 19, 2013) ...................................................... 5, 9, 11

*Lanovaz v. Twinings North America, Inc.*,
2013 WL 2285221 (N.D. Cal. May 23, 2013) ....................................................... 1, 9, 10

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992) ......................................................................................................... 6

*Miller v. Ghirardelli Chocolate Co.*,
912 F.Supp.2d 861 (N.D. Cal. 2012) .......................................................................... 1, 6

*Wilson v. Frito-Lay North America, Inc.*,
2013 WL 5777920 (N.D. Cal. Oct. 24, 2013) ......................................................... passim

**OTHER AUTHORITIES**

Article III of the United States Constitution ......................................................................... 5

21 C.F.R. § 101.9 ..................................................................................................................... 8

21 C.F.R. § 136 .................................................................................................................. 7

21 C.F.R. § 136.110(e)(1) ............................................................................................... 7, 8

Rule 8 of the Federal Rules of Civil Procedure ............................................................... 2, 3

Rule 9(b) of the Federal Rules of Civil Procedure ............................................................... 2

-iv-
NOTICE OF MOTION AND MOTION TO DISMISS SECOND AMENDED COMPLAINT
CASE NO. 13 Civ. 1196 (WHO)

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

The general rule in product liability cases is that a party has no standing to sue on products that he or she did not purchase. *See Johns v. Bayer Corp.*, 2010 WL 476688, at *5 (S.D. Cal. 2010) (plaintiff "cannot expand the scope of his claims to include a product he did not purchase"). The lone exception to this rule is where a plaintiff can show that the products that were not purchased are "substantially similar" to products that were purchased by that particular plaintiff. *See Miller v. Ghirardelli Chocolate Co.*, 912 F.Supp.2d 861, 869 (N.D. Cal. 2012). This is a high burden imposed on a plaintiff, requiring a factual showing that the purchased and non-purchased products are virtually identical. *See Lanovaz v. Twinings North Am., Inc.*, 2013 WL 2285221, at *2 (N.D. Cal. May 23, 2013). In fact, recent decisions in this Court have dismissed claims brought on non-purchased food products that involve disparate products and/or do not include detailed factual descriptions of exactly how the non-purchased products are substantially similar to the products that the plaintiffs actually purchased. *See, e.g., Wilson v. Frito-Lay North America, Inc.*, 2013 WL 5777920, at *4-5 (N.D. Cal. Oct. 24, 2013) (listing products by name but not providing specific ingredients and other characteristics to compare non-purchased products to purchased products requires dismissing claims arising out of the non-purchased products); *Bruton v. Gerber Products Co.*, 2013 WL 4833413, at *15-16 (N.D. Cal. Sept. 6, 2013) (dismissing claims all arising out of the same alleged statements but as to a variety of different products). The plaintiffs here do not meet their burden.

In their zeal to construct a class action much larger than merited by the facts, the plaintiffs in this case assert standing with regard to a large number of disparate products that they admittedly never purchased but they do not plead any facts that support such standing under California law. Instead, plaintiffs rely on threadbare allegations, constructed by adding a laundry list of products that they have not purchased (for example, products ranging from cookies to cakes to muffins to pies) to the category of products they allegedly did purchase (for example, "Entenmann's Soft'ees, which are in fact donut-like products, though plaintiffs do not bother to

allege what Soft'ees are) and claim that all of these products are "substantially similar." (*See and compare* Second Amended Complaint ("SAC") ¶ 215 *with* ¶ 91, *et seq.*) This tactic has been expressly disapproved in *Wilson, Bruton* and other recent decisions of this Court. While the plaintiffs may be able to meet part of their pleading burden -- alleging that there are similarities with regard to supposed statements on both products purchased by the plaintiffs and those not purchased by the plaintiffs -- they wholly fail to plead any facts as to how the products themselves are, in fact, similar. Indeed, they only plead facts demonstrating that the products are *not* "of a single kind."[1] How, for instance, is a pie (or a cake or a cookie) even remotely similar to a "Soft'ee"? This failure requires dismissing the claims relating to those non-purchased products.

Plaintiffs' conclusory allegation in the SAC that the products are "substantially similar" does not plead the *facts* necessary to satisfy the "plausibility" requirement of Rule 8 of the Federal Rules of Civil Procedure (much less the heightened pleading requirement under Rule 9(b) for claims, such as these, sounding in fraud). Recent decisions of this Court, rendered after the Court issued its ruling on BBUSA's first motion to dismiss, require plaintiffs basing claims on products that they did not purchase to plead facts demonstrating that the ***products*** -- and not just the alleged statements on their labels -- are virtually identical to the products that the plaintiffs actually purchased. For example, in *Wilson*, the plaintiffs -- represented by the same lawyers representing the plaintiffs here -- alleged that the purchased and non-purchased products were all "potato chips, corn chips, and puffed corn products" and that all of the products contained the same ingredients (something the plaintiffs in this case, who identify various different kinds of products with obviously different ingredients, do not even try to allege). *Supra*, at *4-5. Despite

---

[1] Three months ago (after briefing on BBUSA's previous motion to dismiss was complete) this Court in *Bruton* dismissed claims for non-purchased baby food products citing, *inter alia*, Judge Conti's decision in *Colucci v. ZonePerfect Nutrition Co.*, 2012 WL 6737800 (N.D. Cal. Dec. 28, 2012) that the requirement of substantial similarity means the food products must be all of a "single kind" and "***share a uniform size and shape.***" *Bruton, supra*, at *15 (emphasis added). Needless to say, virtually none of the non-purchased products that the plaintiffs allege here, based on the face of the allegations, are of a single kind, much less share a uniform size and shape (and, in any event, plaintiffs do not allege anything about the actual products so it is impossible to determine (and compare) the size, shape, consistency, texture, or anything else about the kind of products the plaintiffs attempt to put at issue).

these allegations of "similarity," Judge Conti dismissed the claims as to the non-purchased products:

> In their SAC, Plaintiffs simply provide a list of Non-Purchased Products, attach barely legible labels . . . and assert that these labels are unlawful or misleading. This is not enough . . . . [¶] The Court will not assume that each of these subtly different Products is like all the others. To meet the plausibility standard of Rule 8, Plaintiffs have to say more, especially when they are asserting standing as to Products they did not purchase -- otherwise their pleadings amount to unacceptably bare legal conclusions. (*Id.* at *5.)

How are the pleadings before this Court any different? In fact, the plaintiffs in the case before this Court have pleaded even *less* specificity than that found woefully insufficient by Judge Conti (for example, they do not attach or otherwise quote the labels of the allegedly substantially similar products, plead any ingredients or even describe the type of product at issue, as the *Wilson* plaintiffs did in at least alleging that the products were all "potato chips, corn chips, and puffed corn products").

Thus, there can be no legitimate question that California law mandates that, to establish standing as to non-purchased products, there must be an actual nexus between ***both*** the ***labels*** of the purchased product and the labels of the non-purchased product, on one hand, ***and*** the purchased and non-purchased ***products themselves***, on the other hand. Indeed, when California courts have allowed standing as to non-purchased products, it has been where the products were identical or virtually identical, differing only in flavor or quantity. If the law were otherwise, any plaintiff could include in a class action any and all products allegedly containing the same labeling statements, even though that plaintiff did not purchase those products and even though the products were not virtually identical. Such a rule would do violence to the long-established procedures relating to standing in consumer product actions and would impermissibly expand the potential claims that a plaintiff could bring.[2]

---

[2] The problem is readily illustrated here, where the plaintiffs have allegedly purchased only six products but have included 73 additional products that they allege -- without any facts -- are "substantially similar" to those few products that they actually bought. If the "substantially similar" product claims are allowed to proceed, the additional burden in discovery alone may be enormous. In cases like these, plaintiffs typically try to seek extensive written discovery demanding information as disparate as every non-purchased product's ingredients and labels, how much product was sold nationwide, where it was sold, what the sales price and volume was, what the profit margin was, each of the numerous ways in which it was marketed and to whom, etc.

It simply cannot be disputed that no facts alleging such a nexus or virtual identity are alleged in this case. The plaintiffs do not share, for instance, how Orowheat Sweet Hawaiian Bread (an alleged "substantially similar product") is virtually identical to Bimbo Toasted Bread (a "purchased" product). (*See and compare* SAC ¶ 198f. *with* ¶ 141, *et seq.*) If potato chip products in different flavors are not substantially similar for purposes of conferring standing (*see Wilson*, *supra*, at *4), completely different bakery products (of different kinds and with different ingredients, different shapes and different sizes) are certainly not substantially similar solely because they are all "baked goods." The only similarity actually pled by the plaintiffs here is the alleged statements on the labels of these products and not what the product actually is. As Judge Conti found, "[t]his is not enough." Accordingly, the claims relating to those products that the plaintiffs did not purchase must be dismissed.

## II. PROCEDURAL HISTORY

Plaintiffs filed their first complaint on March 18, 2013. Over a month after filing that pleading, the plaintiffs served a notice letter pursuant to California's Consumer Legal Remedies Act (the "CLRA"). After an exchange of letters regarding deficiencies in the plaintiffs' pleading and CLRA notice, the plaintiffs agreed to file an amended complaint. (*See* Dkt. 16.) Plaintiffs filed their amended complaint on May 20, 2013 and BBUSA moved to dismiss that complaint on various grounds. (*See* Dkts. 20 and 21.) On September 25, 2013, the Court issued an order granting in part and denying in part BBUSA's motion to dismiss. (*See* Dkt. 38.) As part of the ruling, the Court permitted the plaintiffs leave to amend the complaint to cure certain deficiencies identified by BBUSA's motion to dismiss. Plaintiffs filed the SAC on November 4, 2013. (Dkt. 40.) Plaintiffs made various changes to the complaint, including with respect to claims on which leave to amend was granted. (*See, e.g.*, SAC at ¶¶ 56-63, 99, 175-76, 210, 251-52.) BBUSA now

---

While BBUSA certainly does not believe that such discovery would be appropriate here, at the very least it will be required to respond and engage in motion practice. One of the purposes of a motion to dismiss is to avoid precisely such circumstances. In discussing the Supreme Court's decision in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), the court in *Bissessur v. Indiana Univ. Bd. of Trustees*, 582 F.3d 599, 603 (7th Cir. 2009), stated that *Twombly* "teaches that a defendant should not be forced to undergo costly discovery unless the complaint contains enough detail . . . to indicate that the plaintiff has a substantial case."

1 moves to dismiss a portion of the SAC.

## III. SUMMARY OF THE SAC'S ALLEGATIONS

Plaintiffs' SAC challenges labeling statements on six products from four distinct brands that they supposedly purchased (the "Purchased Products"). The labels of these Purchased Products form the basis of each of the plaintiffs' claims under California's Unfair Competition Law ("UCL"), California's False Advertising Law ("FAL") and the CLRA. (SAC at ¶¶ 244-321.) In addition, the plaintiffs purport to bring claims relating to products that they did not purchase, products that the plaintiffs baldly claim are "substantially similar" to the Purchased Products. Plaintiffs identify seventy-three (73) such products in the SAC (the "Non-Purchased Products"). (*See* SAC at ¶¶ 194, 198, 203, 215, 226.) However, other than listing the names of the 73 Non-Purchased Products (some of which provide little clue as to exactly what the product is and of what it is made and many of which demonstrate that the products are not of the same type, ingredients, shape or size as either other Non-Purchased Products or the Purchased Products) and claiming that their labels suffer from the same alleged infirmities as the Purchased Products, the SAC contains no allegations pertaining to the Non-Purchased Products or how they are at all identical to the Purchased Products.

## IV. DISCUSSION

### A. Legal Standard

To sue BBUSA in this putative class action, the plaintiffs must satisfy the "case or controversy" requirement of Article III of the United States Constitution, an essential element of which is whether the plaintiffs have standing to sue. *See Clapper v. Amnesty Int'l USA*, 133 S.Ct. 1138, 1146 (2013). Standing is imparted to those who have purchased a product and suffered damages: "Article III's standing requirements may be satisfied by allegations that a plaintiff purchased a product he otherwise would not have purchased, or spent more on such product, in reliance on the defendant's misrepresentations." *Kane v. Chobani, Inc.*, 2013 WL 5289253, at *5 (N.D. Cal. Sept. 19, 2013). In certain, very limited, circumstances, a plaintiff may bring claims on behalf of a putative class relating to products that the plaintiff never purchased. *See, e.g., Brazil v. Dole Foods Co.*, 2013 WL 5312418, at *7-8 (N.D. Cal. Sept. 23, 2013). But to do so,

*both* the purchased and non-purchased products *and* their labels must be virtually identical. *Id.* at 7 (citing *Miller*, 912 F.Supp.2d at 869). It is the plaintiffs' burden to demonstrate that they have standing to bring their claims. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).

### B.   The SAC Does Not Support Standing As To Non-Purchased Products

The SAC's allegations regarding the Non-Purchased Products are limited to the assertion that the alleged statements on the labels of the Purchased Products are substantially similar to statements made on the labels of the Non-Purchased Products. (*See* SAC at ¶¶ 188-192, 196-97, 201-02, 205-14, 218-24.) But the SAC includes no factual allegations as to the substantial similarity between the Non-Purchased Products and the Purchased Products themselves, as opposed to the alleged statements made on the labels of those products. Again, to establish standing for claims regarding products that were never purchased, the plaintiffs must plead *both* facts regarding the substantial similarity of the label statements *and* facts regarding the substantial similarity of the products. Because the SAC does not allege any facts whatsoever relating to the similarity between the Purchased Products and Non-Purchased Products, the plaintiffs have not met their pleading burden.

There are no factual allegations in the complaint relating to the ingredients or processing of the Non-Purchased Products, other than those revealed by the product names -- names that demonstrate that the Non-Purchased Products differ in ingredients (*e.g.*, rye flour versus wheat flour, chocolate versus carrot versus raspberry), in type of product (*e.g.*, country rolls versus bagels versus pita pockets versus English muffins versus tortillas) and in brand (*e.g.*, Thomas' versus Tia Rosa versus Mrs. Baird's versus Arnold). (*See* SAC at ¶¶ 198, 203, 215.) For instance, while the plaintiffs allege in conclusory fashion that non-purchased "Freihofer Wheat Bulkie Rolls," "Orowheat Sweet Hawaiian Bread," "Stroehmann Deli Soft Rye – No seeds," "Stroehmann Deli Soft Rye – Seeds" are all the same as the purchased "Toasted Bread" (SAC at ¶¶ 196-98), the names of these products do not at all indicate that they are similar to Toasted

Bread; in fact, they indicate that they are quite different.[3]

Another problem for the plaintiffs is that FDA regulations make clear that not all products using the word "bread" are regulated "bread" as the plaintiffs contend. *See* 21 C.F.R. § 136.110(e)(1); FDA Compliance Policy Guide § 505.350. These regulations are titled "Requirements for Specific *Standardized* Bakery Products" (21 C.F.R. § 136 – Bakery Products (emphasis added)) and are expressly limited to "bread, white bread, and rolls, white rolls, or buns, and white buns." *Id.* But the FDA Compliance Policy Guide expressly states that the FDA does not object, for instance, to the use of the word "honey" in the name of nonstandardized bread, buns or other bakery products if it does not purport to be a "standardized" food and contains a certain amount of the labeled ingredient. *Id.* Indeed, the Guide begins by stating that "no standard of identity has been established under the Federal Food, Drug and Cosmetic Act for 'honey bread.'" *Id.* Similarly, "Sweet Hawaiian Bread" does not violate the regulations to the extent that it does not purport to be "standardized" bread or includes stated ingredients at a certain level. But because the plaintiffs do not plead the ingredients (much less the level of those ingredients) in the Sweet Hawaiian Bread identified in their complaint or that Sweet Hawaiian Bread otherwise purports to be "standardized" bread, they have failed to plead that Sweet Hawaiian Bread falls within the standard of identity of bread and, therefore, is actionable under 21 C.F.R. § 136.[4] Further, while plaintiffs allege that the Soft Rye is "labeled as 'bread,'" no such word appears in the product name that the plaintiffs quote in their pleading and the plaintiffs do not allege where (if at all) the word "bread" appears on the label of that product. And since some of these products are, according to the plaintiffs' allegations, not even called "bread," those products cannot be "substantially similar" to -- or actionable in the same manner as -- what the

---

[3] And, of course, beyond their names, because plaintiffs have declined to plead what any of these products actually are (indeed, anything about their physical attributes), the Court is left to guess as to how they could possibly be similar. It is not the province of the Court to embark on a field trip to store after store to review each of the 73 supposedly similar products.

[4] If "honey bread" can be a "non-standardized bread," it is difficult to understand how "Sweet Hawaiian Bread" would not also be "non-standardized." In any event, to force Sweet Hawaiian Bread into the standardized bread category, the plaintiffs at the very least would have to do so *through its ingredients*, which they have entirely failed to plead.

plaintiffs allegedly purchased (even if the plaintiffs had alleged their ingredients), which is all alleged to be called "bread."

As yet another example of their pleading deficiencies, the plaintiffs allege that products such as "Entenmann's Rainbow Pop'ems" or "Entenmann's Marshmallow Iced Devil's Food Cake" are substantially similar to the purchased "Entenmann's Soft'ees" (SAC at ¶ 215) but fail to plead *how* they are similar; for instance, do the products have the same ingredients, size, shape, consistency or packaging or were the products baked in the same manner? Plaintiffs do not even allege what a "pop'em" is so it is unclear how the Court can make the determination of substantial similarity that is required. Would the plaintiffs' desire to purchase these different products -- or reliance on the labeling in making the decision to purchase -- have been the same as the Purchased Products? Are they equally as "worthless" as plaintiffs claim? The plaintiffs do not address these questions or allege the facts to allow the Court to do so.[5] The mere fact that the products are all baked goods or allegedly contain preservatives is wholly insufficient to demonstrate the "substantially similar" exception to the general rule that a representative plaintiff cannot sue on non-purchased products. See *Johns, supra*, at *5.[6]

Several recent decisions from this Court are instructive. These cases, decided since this Court heard oral argument on BBUSA's motion to dismiss the first amended complaint, dismissed claims relating to alleged substantially similar food products under pleadings far more substantial than the SAC. In *Wilson v. Frito-Lay North America, Inc.*, Judge Conti denied

---

[5] These questions point up just some of the reasons that requiring such specificity is not simply an academic exercise. Plaintiffs must plead, for instance, that they relied on the packaging in purchasing the product and that the product did not match the packaging. They must show, for instance, that they valued one ingredient over another. Without substantially similar ingredients, the plaintiffs cannot make their case. Nor can they establish that products with different ingredients are "worthless" (or without substantial value) to them in the same manner that the Purchased Products are, as they have pled (SAC at ¶ 177) and must plead. See *Bruton, supra*, at *12-13.

[6] Even if differences in the alleged products were merely "subtle" (and, as revealed by their names alone, they are not), such "subtle differences" (like potato chip flavors) are enough to warrant dismissal of the claims. See *Wilson, supra*, at *4. This is all the more apparent in the context of food labeling cases that rely on very precise regulatory framework (such as, for instance, the definition of "bread" or whether claims about whole grains are nutrient or ingredient claims). See, e.g., 21 C.F.R. § 136.110(e)(1) (defining the standard of identify for "bread"); 21 C.F.R. § 101.9 (defining nutrients).

standing to plaintiffs as to eighty-five (85) products that they had not purchased but that they alleged to be substantially similar to products that they had purchased. *Supra*, at *4-5. Judge Conti summarized those plaintiffs' bare allegations about the non-purchased products in a manner that could easily describe the SAC here: "Plaintiffs have taken lists of snack foods, appended them to paragraphs of their SAC, and asserted ... that they are all basically the same." *Id.* The Court described these allegations as mere "boilerplate," despite the fact that the plaintiffs in that case had actually bothered to attach the labels of the non-purchased products to the complaint (something that the plaintiffs here fail to do), and dismissed the claims with prejudice. *Id.*

Likewise, in *Kane v. Chobani*, Judge Koh dismissed a number of claims relating to allegedly similar products that the plaintiffs had never purchased. *Supra*, at *10-11. In doing so, Judge Koh emphasized the plaintiffs' failure to allege facts demonstrating both the similarity of the unlawful statements and the products themselves: "Although the alleged ***misrepresentations*** appear to be similar across all Defendant's products . . . Plaintiffs do not allege facts sufficient to show that the ***products*** Plaintiffs did not purchase are 'substantially similar' to those that they did." *Id.* (emphasis in original). In other words, it is not enough to only plead similar statements on the labels of all the products; plaintiffs must plead facts showing that the products themselves are similar. *Id.* Plaintiffs here do no such thing.

The plaintiffs' allegations in the SAC as to the Non-Purchased Products are certainly no better than the allegations in *Chobani* and *Wilson* that were dismissed. The SAC alleges nothing more than that the Non-Purchased Products include the same misrepresentations as the Purchased Products. There are no other facts alleged about the Non-Purchased Products or how they are identical to what the plaintiffs actually bought. Instead, all the plaintiffs do is restate their allegations regarding the unlawful statements on the Purchased Products (*see* SAC at ¶¶ 180-193, 195-197, 199-202, 204-214, 216-225, 227) and attach to each alleged misrepresentation a list of the names of products that the plaintiffs did not purchase but that they baldly claim are substantially similar. (*See* SAC at ¶¶ 194, 198, 203, 215, 226.) Simply because the products are all "baked goods" does not make them substantially similar. *See Astiana v. Dreyer's Grand Ice Cream, Inc.*, 2012 WL 2990766, at *13 (N.D. Cal. July 20, 2012) (finding that cookies, cinnamon


standing to plaintiffs as to eighty-five (85) products that they had not purchased but that they alleged to be substantially similar to products that they had purchased. *Supra*, at *4-5. Judge Conti summarized those plaintiffs' bare allegations about the non-purchased products in a manner that could easily describe the SAC here: "Plaintiffs have taken lists of snack foods, appended them to paragraphs of their SAC, and asserted ... that they are all basically the same." *Id.* The Court described these allegations as mere "boilerplate," despite the fact that the plaintiffs in that case had actually bothered to attach the labels of the non-purchased products to the complaint (something that the plaintiffs here fail to do), and dismissed the claims with prejudice. *Id.*

Likewise, in *Kane v. Chobani*, Judge Koh dismissed a number of claims relating to allegedly similar products that the plaintiffs had never purchased. *Supra*, at *10-11. In doing so, Judge Koh emphasized the plaintiffs' failure to allege facts demonstrating both the similarity of the unlawful statements and the products themselves: "Although the alleged ***misrepresentations*** appear to be similar across all Defendant's products . . . Plaintiffs do not allege facts sufficient to show that the ***products*** Plaintiffs did not purchase are 'substantially similar' to those that they did." *Id.* (emphasis in original). In other words, it is not enough to only plead similar statements on the labels of all the products; plaintiffs must plead facts showing that the products themselves are similar. *Id.* Plaintiffs here do no such thing.

The plaintiffs' allegations in the SAC as to the Non-Purchased Products are certainly no better than the allegations in *Chobani* and *Wilson* that were dismissed. The SAC alleges nothing more than that the Non-Purchased Products include the same misrepresentations as the Purchased Products. There are no other facts alleged about the Non-Purchased Products or how they are identical to what the plaintiffs actually bought. Instead, all the plaintiffs do is restate their allegations regarding the unlawful statements on the Purchased Products (*see* SAC at ¶¶ 180-193, 195-197, 199-202, 204-214, 216-225, 227) and attach to each alleged misrepresentation a list of the names of products that the plaintiffs did not purchase but that they baldly claim are substantially similar. (*See* SAC at ¶¶ 194, 198, 203, 215, 226.) Simply because the products are all "baked goods" does not make them substantially similar. *See Astiana v. Dreyer's Grand Ice Cream, Inc.*, 2012 WL 2990766, at *13 (N.D. Cal. July 20, 2012) (finding that cookies, cinnamon

1 | rolls, biscuits and crescent rolls "bear little similarity").

2 | In *Lanovaz v. Twinings North America, Inc.*, this Court found that simply because the
3 | non-purchased and purchased products were both "tea" did not mean that both products were
4 | "substantially similar." *Supra*, at *4. In fact, Judge Whyte dismissed claims as to non-purchased
5 | tea that was otherwise similar to the purchased product but came from ***different tea bushes***. *Id.*
6 | Likewise, in *Wilson*, different flavors of potato chips made by the same manufacturer were not
7 | enough to establish substantial similarity. *Supra*, at *4. Here, while "Rainbow Pop'ems" or
8 | chocolate chip cookies (for instance) are undoubtedly "baked goods" just like some of the
9 | actually purchased products, the plaintiffs do not allege to ***which*** purchased product they are
10 | substantially similar (but instead allege the only similarity being in the ***label*** (*i.e.*, that both
11 | contain the "baked fresh daily" claim)). (SAC at ¶ 215.) Thus, the Court cannot even begin the
12 | inquiry into whether both types of baked goods are substantially similar. Is a "Pop'em" a donut?
13 | A bagel? A bread? Plaintiffs do not say. Certainly a large number of other products named by
14 | the plaintiffs (cookies, cakes, danish and pie; tortillas, flatbread, pita, English muffins and bagels;
15 | rye bread, wheat bread, rolls and cinnamon swirl toasting bread) are not similar to one another
16 | (much less to a "Pop'em") or of the same "kind." If otherwise similar tea is not actionable only
17 | because it comes from different tea bushes, how can a cookie be deemed sufficiently similar to a
18 | donut or a tortilla be sufficiently similar to wheat bread where plaintiffs do not describe the
19 | product at all, much less with the specificity to determine whether they have the same ingredients,
20 | size or shape?

21 | If plaintiffs could establish standing by merely alleging that a product were substantially
22 | similar because it contained the same misrepresentation as a purchased product, class standing
23 | would be much more simple to establish: Plaintiffs could simply identify an alleged
24 | misrepresentation and sue a defendant for mislabeling claims as to all of that defendant's
25 | products, regardless of how dissimilar the actual products are and regardless of the relationship
26 | between the label and the product, as long as the alleged misstatements were made on each
27 | product. Such pleading would permit a plaintiff to escape having to demonstrate a nexus between
28 | products and would drastically expand standing in class action cases. That is not the law and is

1  not the intent of the law.

2  The cases in this district and throughout the Ninth Circuit uniformly require establishing that non-purchased products are essentially identical to those purchased by a plaintiff for standing to be afforded. *See, e.g., Chobani, supra,* at *11. Usually, this means that the products are of the same type or kind and share a uniform size and shape and all ingredients except, perhaps, flavor. *See Bruton, supra,* at *15; *Colucci, supra,* at *4. ***As pleaded, virtually none of the products that the plaintiffs contend are "substantially similar" share each of these attributes with the purchased products, and many share none of the attributes.*** It is routine to find that a failure to plead facts establishing essential identity renders plaintiffs' allegations implausible because they provide no facts to support their claim that the statements on the label are unlawful ***as to that specific product***. Neither the Court nor BBUSA is required to simply assume that differently named products (from different brands, with different ingredients and of different types) are the same or substantially similar and that, therefore, there can be liability to a plaintiff that did not purchase the products. *Wilson, supra,* at *4.

Like the plaintiffs in *Bruton*, *Chobani* and *Wilson*, who were represented by the same counsel who helped draft their pleadings, the plaintiffs here have failed to allege any facts regarding the substantial similarity of the products they did not purchase. While they have (barely) alleged that all of these products contained the same unlawful statements, the plaintiffs are required to do more to establish standing. Despite three attempts to plead these claims, the plaintiffs have failed to meet their burden. As a consequence, the SAC's claims regarding the Non-Purchased Products must be dismissed.

## IV. CONCLUSION

Plaintiffs' minimal allegations as to the claims of putative class members regarding products that the plaintiffs themselves did not purchase satisfy only part of their Constitutional burden to establish standing. The SAC does nothing more than list different product names in relation to the allegations that they have made about the allegedly unlawful statements on the products that they actually purchased. There are no actual facts alleged that the products themselves are substantially similar beyond the bare conclusion that they are "substantially

similar." Recent decisions of this Court confirm that a plaintiff must allege *facts* showing substantial similarity as to **both** the statements they challenge **and** the products on which those statements were made. Without factual allegations as to the essential identity of the Non-Purchased Products and the Purchased Products, the plaintiffs cannot demonstrate standing and those claims must be dismissed.

Dated: December 5, 2013              HOGAN LOVELLS US LLP


By: /s/ Mark C. Goodman
    Mark C. Goodman
    Attorneys for Defendant
    Bimbo Bakeries USA, Inc.