1  Ben F. Pierce Gore (SBN 128515)
   PRATT & ASSOCIATES
2  1871 The Alameda, Suite 425
   San Jose, CA  95126
3  Telephone:  (408) 429-6506
   Fax:  (408) 369-0752
4  pgore@prattattorneys.com

5
   Keith M. Fleischman (admitted *pro hac vice*)
6  Bradley F. Silverman (admitted *pro hac vice*)
   THE FLEISCHMAN LAW FIRM, PLLC
7  565 Fifth Avenue, Seventh Floor
   New York, New York 10017
8  Telephone: (212) 880-9571
   Fax:  (917) 591-5245
9  keith@fleischmanlawfirm.com
   bsilverman@fleischmanlawfirm.com
10

11 *Attorneys for Plaintiffs*

12                    IN THE UNITED STATES DISTRICT COURT

13                   FOR THE NORTHERN DISTRICT OF CALIFORNIA

14                            SAN FRANCISCO DIVISION

15

16 ALEX ANG and LYNNE STREIT,              Case No. 13 Civ. 1196 (WHO)
   individually and on behalf of all others
17 similarly situated,
                          Plaintiffs,      **PLAINTIFFS' MEMORANDUM OF LAW**
18              v.                          **IN OPPOSITION TO DEFENDANT'S**
                                            **MOTION TO DISMISS THE SECOND**
19 BIMBO BAKERIES USA, INC.,                **AMENDED COMPLAINT**

20                        Defendant.
                                            **Judge:    Hon. William H. Orrick**
21                                          **Hearing: February 5, 2013 at 2:00 p.m.**

22

23

24

25

26

27

28

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................... ii

STATEMENT OF ISSUES ..................................................................................................... v

PRELIMINARY STATEMENT ............................................................................................. 1

FACTS ..................................................................................................................................... 4

ARGUMENT ........................................................................................................................... 6

    I.     DEFENDANT ENTIRELY IGNORES THE COURT'S ORDER ........................................... 6

    II.    THIS IS AN IMPROPER MOTION FOR RECONSIDERATION ............................................ 7

          A.    Defendant Does Not Meet the Standard for the Grant of a Motion for Reconsideration ........................................................................................ 8

               1.    There Are No New or Different Facts............................................. 9

               2.    There Was No Manifest Failure by the Court to Consider Material Facts or Dispositive Law........................................................... 9

               3.    There Has Been No Change in the Applicable Law ..................... 10

               4.    Defendant Does Not Argue that, At the Time of the Order, It Did Not Know of the Law Presented in Its Current Motion ................ 13

          B.    This Motion Should Be Denied Pursuant to Fed. R. Civ. P. 12(g)(2) ...... 13

    III.   TO BE SUFFICIENTLY SIMILAR, LEGAL CLAIMS RELATING TO PURCHASED PRODUCTS AND NON-PURCHASED PRODUCTS MUST ONLY IMPLICATE THE SAME SET OF CONCERNS.......................................................................................... 14

    IV.   THERE IS NO REQUIREMENT THAT NON-PURCHASED PRODUCTS BE VIRTUALLY IDENTICAL TO PURCHASED PRODUCTS .................................................... 17

    V.    THE SUBSTANTIALLY SIMILAR PRODUCTS ARE SUFFICIENTLY PHYSICALLY SIMILAR TO PURCHASED PRODUCTS.......................................................................... 21

    VI.   WHETHER A PRODUCT IS SUBSTANTIALLY SIMILAR IS A QUESTION OF FACT......... 24

CONCLUSION ...................................................................................................................... 25

# TABLE OF AUTHORITIES

## Cases

*Ang v. Bimbo Bakeries USA, Inc.*,
    Slip Op., Case No. CV13-01196-WHO (N.D. Cal. Sept. 25, 2013) ................................ *passim*

*Amaretto Ranch Breedables, LLC v. Ozimals, Inc.*,
    2011 WL 2690437 (N.D. Cal. July 8, 2011) ................................................................. 7

*Armstrong v. Davis*,
    275 F.3d 849 (9th Cir. 2001) ....................................................................................... 19

*Astiana v. Dreyer's Grand Ice Cream, Inc.*,
    2012 WL 2990766 (N.D. Cal. July 20, 2012) ................................................. 5, 6, 15

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007) ...................................................................................................... 9

*Brazil v. Dole Food Company, Inc.*,
    2013 WL 5312418 (N.D. Cal. Sept. 23, 2013) ............................... 12, 14, 15, 19, 20

*Bruton v. Gerber Products Co.*,
    2013 WL 4833413 (N.D. Cal. Sept. 6, 2013) ...................................................... 19, 20

*Chavez v. Blue Sky Natural Beverage Co.*,
    268 F.R.D. 365 (N.D. Cal. 2010) ................................................................................ 14

*Clancy v. The Bromley Tea Co.*,
    2013 WL 4081632 (N.D. Cal. Aug. 9, 2013) .................................... 3, 5, 15, 16, 17

*Colucci v. ZonePerfect Nutrition Co.*,
    2012 WL 6737800 (N.D. Cal. Dec. 28, 2012) ............................................................ 19

*Donohue v. Apple, Inc.*,
    871 F. Supp. 2d 913 (N.D. Cal. 2012) ....................................................................... 11

*Dorroh v. Deerbrook Ins. Co.*,
    2013 WL 178136 (E.D. Cal. Jan. 16, 2013) ................................................................. 8

*Galvan v. KDI Distribution Inc.*,
    2011 WL 5116585 (C.D. Cal. Oct. 25, 2011) ............................................................ 21

*Gitson v. Trader Joe's Co.*,
    2013 WL 5513711 (N.D. Cal. Oct. 4, 2013) ............................................................... 21

*Gratz v. Bollinger*,
    539 U.S. 244 (2003) ......................................................................................... 3, 15, 16

*Gutierrez v. E. & J. Gallo Winery*,
    1975 WL 982 (N.D. Cal. Nov. 25, 1975) .................................................................... 17

*Harris v. Las Vegas Sands L.L.C.*,
    2013 WL 5291142 (C.D. Cal. Aug. 16, 2013) ........................................................... 15

*Herron v. Best Buy Stores, LP*,
　2013 WL 4432019 (E.D. Cal. Aug. 16, 2013) ........................................................................ 15

*Hinojos v. Kohl's Corp.*,
　718 F.3d 1098 (9th Cir. 2013)................................................................................................ 24

*In re Actimmune Marketing Litig.*,
　2010 WL 3463491 (N.D. Cal. Sept. 1, 2010), ...................................................................... 21

*Jadwin v. County of Kern*,
　767 F. Supp. 2d 1069 (E.D. Cal. 2011)................................................................................... 8

*Johns v. Bayer Corp.*,
　2010 WL 476688 (S.D. Cal. Feb. 9, 2010) ........................................................................... 15

*Johnson v. California*,
　543 U.S. 499 (2005)............................................................................................................... 19

*Kane v. Chobani, Inc.*,
　2013 WL 5289253 (N.D. Cal. Sept. 19, 2013) ................................................................ 15, 20

*Koh v. S.C. Johnson & Son, Inc.*,
　2010 WL 94265 (N.D. Cal. Jan. 6, 2010) ....................................................................... 14, 23

*Kosta v. Del Monte Corp.*,
　2013 WL 2147413 (N.D. Cal. May 15, 2013) ........................................................................ 5

*Lanovaz v. Twinings N. Am., Inc.*,
　2013 WL 2285221 (N.D. Cal. May 23, 2013) ........................................................... 5, 18, 19

*Lilly v. Jamba Juice Co.*,
　2013 WL 6070503 (N.D. Cal. Nov. 18, 2013).................................................................. 11, 24

*Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*,
　571 F.3d 873 (9th Cir. 2009)................................................................................................... 8

*Miller v. Ghirardelli Chocolate Co.*,
　912 F. Supp. 2d 861 ............................................................................................................... 14

*Morgan v. Wallaby Yogurt Company, Inc.*,
　2013 WL 5514563 (N.D. Cal. Oct. 4, 2013).......................................................................... 21

*Ogden v. Bumble Bee Foods, LLC*,
　292 F.R.D. 620 (N.D. Cal. 2013) ...................................................................................... 3, 14

*Sateriale v. R.J. Reynolds Tobacco Co.*,
　697 F.3d 777 (9th Cir. 2012).................................................................................................... 9

*Sowinski v. Wells Fargo Bank, N.A.*,
　2013 WL 2436229 (N.D. Cal. June 4, 2013) ......................................................................... 13

*U.S. Rubber Recycling, Inc. v. Encore Intern., Inc.*,
　2011 WL 311014 (C.D. Cal. Jan. 7, 2011) ....................................................................... 8, 13

*Werdebaugh v. Blue Diamond Growers*,
    2013 WL 5487236 (N.D. Cal. Oct. 2, 2013)..................................................... 11, 12, 20, 21, 22

*Wilson v. Frito-Lay North America, Inc.*,
    --- F. Supp. 2d ----, 2013 WL 5777920 (N.D. Cal. Oct. 24, 2013) ............................. 10, 11, 18

**<u>Statutes</u>**

21 U.S.C. § 331 ......................................................................................................................... 20

21 U.S.C. § 333 ..................................................................................................................... 4, 20

21 U.S.C. § 343 ......................................................................................................................... 24

Cal. Bus. & Prof. Code § 17200, *et seq*. ..................................................................................... 4

Cal. Bus. & Prof. Code § 17500, *et seq*. ..................................................................................... 4

Cal. Civ. Code § 1750, *et seq* ...................................................................................................... 4

Cal. Health & Safety Code § 110760 .......................................................................................... 20

Cal. Health & Safety Code § 111825 ...................................................................................... 4, 20

**<u>Rules</u>**

Fed. R. Civ. P. 12 ....................................................................................................................... 13

Civil Local Rule 7-9 .................................................................................................................. 7, 8

**<u>Regulations</u>**

21 C.F.R. § 101.95 ...................................................................................................................... 5, 6

21 C.F.R. § 136.110 ............................................................................................................ 22, 23, 24

21 C.F.R. § 136.180 ...................................................................................................................... 22

**<u>Other Authorities</u>**

FDA Compliance Policy Guide § 505.350 ............................................................................... 23, 24

**STATEMENT OF ISSUES**

1.      Should the Court grant the relief sought by Defendant (the dismissal of claims relating to non-purchased "Substantially Similar Products" for lack of standing) where that identical relief was specifically denied in the Court's September 25, 2013 Order?

2.      Where the Court already denied the aforementioned relief, is the present motion, in substance, a motion for reconsideration?  If so, has Defendant met the standard for the grant of a motion for reconsideration where there has been no intervening change of fact or law?

3.      Was the Court correct when it previously ruled that Plaintiffs have standing to bring claims relating to the Substantially Similar Products where it is alleged that their "labels are illegal and misleading in materially identical ways to the labels on the Purchased Products?"

4.      When determining if standing exists for a plaintiff to bring claims on behalf of class members that are similar, but not identical, to claims that plaintiff brings individually, should the Court look to whether those similar, but not identical, claims "implicate a significantly different set of concerns," as set forth in the Supreme Court's decision in *Gratz v. Bollinger*, 539 U.S. 244, 265 (2003)?

5.      Despite the fact that there is no case law to support this legal argument, should the Court adopt Defendant's position that, in order for plaintiffs to have standing to assert claims on behalf of class members relating to non-purchased products, such non-purchased products must be physically "virtually identical" to purchased products on which claims are premised?

6.      To the extent there is any requirement that non-purchased products be physically similar to purchased products, do Plaintiffs have standing to bring claims relating to the Substantially Similar Products where they allege that the Substantially Similar Products have physical similarities that are relevant to the misrepresentations found on their labels?

7.      If any physical similarity of products is required, is the issue of whether products are sufficiently physically similar a question of fact?

1

**PRELIMINARY STATEMENT**

2

Plaintiffs Alex Ang and Lynne Streit (collectively, "Plaintiffs") respectfully submit this

3

memorandum of law in opposition to the motion of defendant Bimbo Bakeries, USA, Inc.

4

("Defendant") to dismiss portions of Plaintiffs' second amended complaint ("SAC").  Plaintiffs

5

respectfully request that the Court deny the motion in its entirety.  In this motion, Defendant

6

seeks relief that was previously denied in the Court's Order dated September 25, 2013[1]

7

pertaining to Defendant's motion to dismiss Plaintiffs' first amended complaint ("FAC").  Since

8

the issuance of that Order, neither the facts nor the law has changed.  Accordingly, this relief

9

should be denied, just as previously denied in the Court's Order.

10

Defendant, the world's largest manufacturer of bakery products, has engaged in a scheme

11

to deceive and defraud consumers by placing false and misleading labels on its products.  In

12

violation of federal and state law, these labels illegally misrepresent that each of the products at

13

issue has a quality that makes it healthier than other products.  Plaintiffs have brought claims

14

under California's consumer protection statutes pertaining to such products that they purchased.

15

On behalf of other class members, Plaintiffs have also brought claims relating to products that

16

Plaintiffs did not purchase, but that contain the exact same misrepresentations as the products

17

they did purchase (the "Substantially Similar Products").

18

In its prior Order, the Court denied that portion of Defendant's motion to dismiss the

19

FAC seeking dismissal of the claims relating to the Substantial Similar Products for lack of

20

standing.  Order at 16-17.  In the present motion, Defendant again seeks this exact same relief

21

that was previously denied by the Court.  Defendant's present motion entirely ignores the

22

Court's prior ruling.  In fact, Defendant does not even mention the Court's prior ruling and

23

argues as if the Court never considered the precise relief Defendant now seeks for a second time.

24

Although Defendant disregards the Court's prior ruling, the present motion, which seeks

25

the same relief that was previously denied in the Order, in substance, is a motion for

26

27

[1]     *See* Order Granting in Part and Denying in Part Motion To Dismiss dated September 25,

28

2013 (the "Order") at 16-17.  A copy of the Order is attached as Exhibit A to the Declaration of
Bradley F. Silverman dated January 3, 2013 ("Silverman Decl.").

1  reconsideration disguised as a motion to dismiss.  Because Defendant has failed to comply with

2  procedural requirements pertaining to motions for reconsideration, the Court has the discretion to

3  summarily deny the motion.  However, should the Court consider the motion, Defendant must

4  meet the standard for the grant of a motion to reconsider before the Court reaches the merits of

5  the motion.  Here, the facts alleged in the SAC pertaining to the Substantially Similar Products

6  are identical to those in the FAC.[2]  There has also been no intervening change of law since the

7  Court's September 25, 2013 ruling on Defendant's first motion to dismiss.  For these reasons,

8  Defendant does not meet the standard for the grant of a motion to reconsider.  Accordingly, the

9  Court need not reach the merits of Defendant's arguments pertaining to Plaintiffs' standing to

10  bring claims relating to the Substantially Similar Products.

11      Should the Court address the substance of Defendant's arguments, those arguments

12  should be rejected.  In its motion to dismiss the FAC, Defendant argued that these claims must

13  be dismissed because the FAC failed to allege that the misrepresentations on the labels of the

14  Substantially Similar Products were substantially similar to the misrepresentations on the labels

15  of the products that Plaintiffs did purchase.  In the Order, the Court rejected that argument,

16  finding that: "The Amended Complaint states exactly why plaintiffs contend the 'Substantially

17  Similar' product labels are illegal and misleading in materially identical ways to the labels on the

18  Purchased Products."  Order at 17.

19      In its present motion, Defendant asserts a new argument that has no basis in the law and

20  is conceived out of thin air.  In general, to have standing, claims relating to non-purchased

21  products must be "substantially similar" to claims relating to purchased products.  To that end,

22  this Court has already found that the claims pertaining to the Substantially Similar Products are

23  sufficiently similar to claims pertaining to products purchased by Plaintiffs to survive a motion to

24  dismiss.  Order at 17.  Nevertheless, Defendant now argues that, in order to be sufficiently

25  similar, the non-purchased products, themselves, must be physically "virtually identical" to the

26  purchased products and their labels.  Defendant contends that standing is only available where

27

---

28  [2]     The SAC (Dkt. # 40) is attached as Exhibit B to the Silverman Decl.  The FAC (Dkt. # 20) is attached as Exhibit C to the Silverman Decl.

non-purchased products are the exact same size and shape and made of the exact same ingredients as purchased products.

There is absolutely no such requirement under the law.  Although Defendant cites to a number of cases in support of this position, none of them require or suggest that non-purchased products must be physically virtually identical.  In actuality, the issue of substantial similarity turns on similarities between the *claims* asserted regarding purchased and non-purchased products.  Plaintiffs have standing where, as here, the complaint alleges that the same defendant placed labels on non-purchased products that contained similar misrepresentations and harmed class members in a similar way.[3]  Based on Supreme Court precedent regarding standing to bring similar, but not identical, claims on behalf of class members,[4] recent decisions demonstrate that substantial similarity is present where claims relating to non-purchased products implicate the same set of concerns as claims relating to purchased products.[5]

Moreover, despite Defendant's conclusory assertions to the contrary, the SAC does allege physical similarities between purchased products and the Substantially Similar Products that are relevant to the specific misrepresentations found on each product's label.  There is simply no rational basis for a requirement that products have physical similarities that have no relevance to the underlying claims asserted with respect to those products.  Further, whether products are

---

[3]    *See, e.g.*, *Ogden v. Bumble Bee Foods, LLC*, 292 F.R.D. 620, 626 (N.D. Cal. 2013) (finding substantial similarity where non-purchased products contain labels "with similar or identical claims about Omega–3 content, as those labels may have misled class members in the same way that they allegedly misled [plaintiff] *even if the products are not the same*.") (emphasis added).

[4]    *See Gratz v. Bollinger*, 539 U.S. 244, 265 (2003) (permitting claims asserted on behalf of class members relating to use of race as a factor in college transfer admissions, even though named plaintiff's claims were premised on the use of race as a factor in college freshman admissions because "use of race in undergraduate transfer admissions *does not implicate a significantly different set of concerns* than does its use of race in undergraduate freshman admissions") (emphasis added).

[5]    *See, e.g.*, *Clancy v. The Bromley Tea Company*, 2013 WL 4081632, at *5 (N.D. Cal. Aug. 9, 2013) (if the plaintiff in *Gratz* had standing to bring claims on behalf of class members relating to the use of race as a factor in college transfer admissions, then purchasers of misbranded food products have standing to bring claims on behalf of class members relating to non-purchased food products that are misbranded in similar ways).

1  sufficiently similar is ultimately a question of fact that cannot be determined at the pleadings
2  stage.

3     For all these reasons, as this Court has previously held, Plaintiffs have standing to bring
4  claims relating to the Substantially Similar Products and Defendant's motion should be denied.

5                                          **FACTS**

6     Plaintiffs allege that they have been harmed as a result of their purchase of six specific
7  food products manufactured by Defendant, the world's largest manufacturer of bakery products.
8  SAC at ¶¶ 50-147.  Each of the six products is misbranded in violation of the Food, Drug and
9  Cosmetic Act ("FDCA"), regulations of the Food and Drug Administration ("FDA"), and
10 California's Sherman Law because each contains specific prohibited misrepresentations
11 regarding their nature or healthiness.  *Id*.  Indeed, these misrepresentations constitute strict
12 liability crimes under both federal and state law.  *See* 21 U.S.C. § 333(a); Cal. Health & Safety
13 Code § 111825.

14    These misrepresentations were part of a larger over-arching scheme by Defendant to
15 deceive and defraud consumers by placing those exact same misrepresentations on, not only
16 those six products, but many other products sold by Defendant (the Substantially Similar
17 Products).  SAC at ¶¶ 180-227.  Other consumers who purchased the Substantially Similar
18 Products suffered harm that is identical to that of Plaintiffs, resulting from identical
19 misrepresentations, made as part of the same scheme.  *Id*.  Therefore, claims relating to the
20 Substantially Similar Products implicate the same set of concerns as those implicated by
21 Plaintiffs' claims relating to the six purchased products.

22    On May 20, 2013, Plaintiffs filed the FAC.  Dkt. # 20.  Therein, with respect to both the
23 purchased products and the Substantially Similar Products, Plaintiffs alleged separate causes of
24 action against Defendant under the "fraudulent," "unlawful," and "unfair" prongs of the Unfair
25 Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq*. ("UCL"); separate causes of action
26 under the "misleading" and "untrue" prongs of the False Advertising Law, Cal. Bus. & Prof.
27 Code § 17500, *et seq*. ("FAL"); a cause of action under the California Legal Remedies Act, Cal.
28 Civ. Code § 1750, *et seq* ("CLRA"); and a common law cause of action for unjust enrichment.

1    On June 19, 2013, Defendant filed a motion to dismiss the FAC in its entirety.  Dkt. # 21.

2         On September 25, 2013, the Court issued the Order granting the motion in part and

3    denying the motion in part.  The Court dismissed with prejudice Plaintiffs' claim for unjust

4    enrichment and Plaintiffs' claims relating to the Entenmann's "BAKED FRESH DAILY" label,

5    but only to the extent they were premised on 21 C.F.R. § 101.95.  The Court also dismissed,

6    without prejudice, Plaintiffs' claim under CLRA as it relates to the Substantially Similar

7    Products because Plaintiffs' CLRA notice did not adequately place Defendant on notice of the

8    claims relating to those products.  Order at 20.  The Court granted Plaintiffs leave to amend that

9    claim after service of a new CLRA notice.[6]  In all other respects, the Court denied the motion to

10   dismiss.

11        In its motion to dismiss the FAC, Defendant specifically argued that Plaintiffs have no

12   standing to bring claims relating to the Substantially Similar Products.  Dkt. # 21 at 20-21.  The

13   Court rejected this argument.  Order at 16-17.  The Court specifically held:

14
15            Defendant challenges plaintiffs' standing to pursue claims on the
              products they did not purchase themselves; the "Substantially Similar" products
16            identified in the Amended Complaint at paragraphs 186, 190, 195, 208, 219.
              Defendant notes that courts in this District have allowed plaintiffs, at the motion
17            to dismiss stage, to pursue claims related to products that plaintiffs have not
              purchased where the "claims related to the not purchased products [are] nearly
18            identical to the claims for the purchased product." *Lanovaz v. Twinings N. Am.,
              Inc*., C-12-02646-RMW, 2013 WL 2285221 (N.D. Cal. May 23, 2013); *see also*
19            *Clancy v. The Bromley Tea Co*., 12-CV-03003-JST, 2013 WL 4081632 (N.D.
              Cal. Aug. 9, 2013) (allowing plaintiffs to pursue past motion to dismiss stage
20            claims on similar but non-purchased products); *Kosta v. Del Monte Corp*., 12-
              CV-01722-YGR, 2013 WL 2147413 (N.D. Cal. May 15, 2013) (same); *Astiana*
21            *v. Dreyer's Grand Ice Cream, Inc*., C-11-2910 EMC, 2012 WL 2990766 (N.D.
              Cal. July 20, 2012) (same).
22

23            Defendant argues that because plaintiffs have failed to identify the *exact*
              labels they relied upon in their Amended Complaint, and based on defendant's
24            assertions that labels changed over time and were used in different geographic
              locations, it is impossible for the Court to determine whether the non-purchased
25            Substantially Similar Products that plaintiffs allege violate the law are similar,
              much less nearly identical, to the Purchased Products. Reply Br. at 13.
26            However, as noted above, the labels that defendant attempts to rely on by way

27   _____

28   [6]    A corrective CLRA notice was served upon Defendant on October 3, 2013.  SAC at ¶¶
     304-05.  Defendant does not dispute the sufficiency of that notice.

1   of its request for judicial notice are submitted without appropriate foundation or
2   authentication. Plaintiffs have, however, identified the *exact terms* and
    representations they are challenging in the identified products. Only those terms
3   and representations are actionable. If the Substantially Similar baked products
    identified by plaintiffs in the Amended Complaint do not contain those exact
4   terms and representations, then plaintiff cannot pursue claims for those
    product/labels. Also, if a particular label for a Substantially Similar Product
5   differs materially from one on a Purchased Product, that issue is more
    appropriately addressed on class certification.
6
7           Finally, while defendant argues that plaintiffs have failed to plead facts
    showing the labels on the Substantially Similar Products are sufficiently similar
8   to the Purchased Products, that Court disagrees. Motion at 21. The Amended
    Complaint states exactly why plaintiffs contend the "Substantially Similar"
9   product labels are illegal and misleading in materially identical ways to the
    labels on the Purchased Products. Amended Complaint, ¶¶ 186, 190, 195, 208,
10  219.

11  *Id* (emphasis in the original).

12          In accordance with the Order, on November 4, 2013, Plaintiffs filed and served the SAC.

13  Dkt. # 40.  The allegations in the SAC are almost identical to those in the FAC, except the unjust

14  enrichment claim and references to 21 C.F.R. § 101.95 have been removed.  The allegations in

15  the SAC relating to the Substantially Similar Products are identical to those in the FAC.

16  *Compare*, FAC at ¶¶ 172-220 and SAC ¶¶ 180-227.

17          Defendant now brings a motion to dismiss these same claims relating to the Substantially

18  Similar Products, despite the fact that the Court has already ruled that Plaintiffs have standing to

19  assert these claims.

20                                    **ARGUMENT**

21  **I.      DEFENDANT ENTIRELY IGNORES THE COURT'S ORDER**

22          In Defendant's first motion to dismiss, it specifically asked the Court to dismiss all

23  claims relating to the Substantially Similar Products for lack of standing.  In the Order, the Court

24  denied that portion of the motion and explicitly held that Plaintiffs may assert these claims.

25  Order at 16-17.  In its second motion to dismiss, Defendant again asks the Court to dismiss these

26  exact same claims relating to the Substantially Similar Products for lack of standing.

27          Extraordinarily, nowhere in Defendant's papers does it even mention the Court's prior

28  ruling, much less discuss the substance of that ruling.  Indeed, the only mention of the Order in

1   Defendant's papers is on page 4 of its memorandum of law ("Def. Mem.") where Defendant

2   notes that: "On September 25, 2013, the Court issued an order granting in part and denying in

3   part BBUSA's motion to dismiss. (See Dkt. 38.) As part of the ruling, the Court permitted the

4   plaintiffs leave to amend the complaint to cure certain deficiencies identified by BBUSA's

5   motion to dismiss."  There is absolutely no other reference to the Order anywhere in Defendant's

6   papers.  Defendant wholly ignores the Court's ruling regarding the Substantially Similar

7   Products and argues as if the Court has never considered the precise relief Defendant now seeks

8   for the second time.

9        The Court's Order is binding upon Defendant and cannot be discarded as irrelevant to the

10   sufficiency of the allegations in the SAC pertaining to the Substantially Similar Products.  Where

11   a party shows such disregard for an order of the Court, it should not be heard to seek the same

12   relief that order previously denied.  The Court has already found that Plaintiffs have standing to

13   bring claims relating to the Substantially Similar Products.  Defendant does not provide any

14   adequate reason why the Court should now rule differently.

15        **II.      THIS IS AN IMPROPER MOTION FOR RECONSIDERATION**

16        There is no difference between the Substantially Similar Product claims in the FAC and

17   in the SAC.  Nevertheless, Defendant asks for the same relief that was previously denied in the

18   Order.  For that reason, this "motion to dismiss" is nothing more than an improper motion for

19   reconsideration.  It should be treated as such.

20        Prior to bringing a motion for reconsideration, a party must comply with the requirements

21   of Local Rule 7-9.  This rule mandates that, "[n]o party may notice a motion for reconsideration

22   without first obtaining leave of Court to file the motion."  Local Rule 7-9(a).  Defendant has not

23   complied with this requirement.  When a party attempts to bring a motion for reconsideration

24   disguised as a motion for other relief and fails to comply with procedural requirements, the

25   motion should be automatically denied.  *See Amaretto Ranch Breedables, LLC v. Ozimals, Inc.*,

26   2011 WL 2690437, at *2 (N.D. Cal. July 8, 2011) (defendant's "Motion to Dismiss the UCL

27

28

1    claim from the SAC is really an unauthorized motion for reconsideration and is DENIED").[7]

2
         A.    **Defendant Does Not Meet the Standard for**
3              **the Grant of a Motion for Reconsideration**

4            Should the Court not summarily deny this motion, the standard by which the Court must

5    consider the motion is determined by its substance, and not by its form.  Accordingly, this

6    motion is subject to the standard for the grant of a motion for reconsideration, regardless of

7    whether it is denominated as a motion to dismiss.  *See Dorroh v. Deerbrook Ins. Co.*, 2013 WL

8    178136, at *2 (E.D. Cal. Jan. 16, 2013) (a "thinly-disguised motion for reconsideration" should

9    be treated as such); *accord, U.S. Rubber Recycling, Inc. v. Encore Intern., Inc.*, 2011 WL

10   311014, at *12 (C.D. Cal. Jan. 7, 2011).

11           "[A] motion for reconsideration should not be granted, absent highly unusual

12   circumstances, unless the district court is presented with newly discovered evidence, committed

13   clear error, or if there is an intervening change in the controlling law."  *Marlyn Nutraceuticals,*

14   *Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 880 (9th Cir. 2009) (citation omitted).  Under

15   Local Rule 7-9(b), a party must specifically show:

16           (1)  That at the time of the motion for leave, a material difference in fact or law
             exists from that which was presented to the Court before entry of the
17           interlocutory order for which reconsideration is sought. The party also must
             show that in the exercise of reasonable diligence the party applying for
18           reconsideration did not know such fact or law at the time of the interlocutory
19           order; or

20           (2)  The emergence of new material facts or a change of law occurring after the
             time of such order; or
21

22           (3)  A manifest failure by the Court to consider material facts or dispositive
             legal arguments which were presented to the Court before such interlocutory
23           order.

24   Defendant does not demonstrate any of the above.  Therefore, the Court need not address the

25

26   _____

27   [7]      The party that brings such a motion is also subject to any further adverse consequences
     the Court deems appropriate.  *See Jadwin v. County of Kern*, 767 F. Supp. 2d 1069, 1109 (E.D.
28   Cal. 2011) ("Any party who violates this restriction [against repetition of argument] shall be
     subject to appropriate sanctions."); *see also* Local Rule 7-9(c).

merits of the new legal arguments made in support of Defendant's present motion.[8]

### 1.      There Are No New or Different Facts

There are no new material facts and there is no material difference in fact that exists from that which was presented to the Court before entry of the Order.  The factual allegations in the FAC and SAC relating to the Substantially Similar Products are identical.  *Compare*, FAC at ¶¶ 172-220 and SAC at ¶¶ 180-227.  Therefore, the facts before the Court have not changed.

### 2.      There Was No Manifest Failure by the Court to Consider Material Facts or Dispositive Law

Defendant cannot establish that the Court committed a manifest failure to consider material facts when deciding Defendant's first motion.  In the present motion, Defendant raises new factual issues regarding the physical similarities of the Substantially Similar Products to the products purchased by Plaintiffs.  However, in Defendant's prior motion to dismiss the FAC, it did not argue that the products must be physically similar (or identical); only that the labels must be similar.  *See* Dkt. # 29 at 13 (claims relating to non-purchased products "are permitted only where the label in the non-purchased product is the same as the label on the purchased product").  Therefore, there was no manifest failure on the part of the Court to consider facts pertaining to the physical qualities of the products.

There was also no manifest failure on the part of the Court to consider dispositive law.  Judges within the Ninth Circuit have not come to a uniform consensus on claims brought on behalf of class members relating to products not purchased by plaintiffs.  *See, e.g.*, *Donohue v. Apple, Inc.*, 871 F. Supp. 2d 913, 921-22 (N.D. Cal. 2012) (discussing cases).  Nor has Defendant cited controlling precedent from the Ninth Circuit or the Supreme Court supporting its new-found position that the Court could have considered.

---

[8]      Should the Court determine that Defendant has satisfied the standard for the grant of a motion for reconsideration, or should the Court otherwise reach the merits of Defendant's motion, the well-established standard for a motion to dismiss would be applicable.  All allegations in the SAC must be taken as true and construed in the light most favorable to Plaintiffs.  *Sateriale v. R.J. Reynolds Tobacco Co.*, 697 F.3d 777, 783 (9th Cir. 2012).  A complaint need only allege sufficient facts to show "a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Assessing plausibility does not involve analysis of the merits.  *Id* at 556-57.

### 3.     There Has Been No Change in the Applicable Law

The Order was issued on September 25, 2013.  In the intervening three months, there has been no change of law regarding claims pertaining to non-purchased products.  Defendant cannot cite to any new decision of the Ninth Circuit or the Supreme Court on this issue.  Therefore, there has been no change in the law that is binding on the Court.

In support of its argument that the law has evolved since the Order, Defendant cites only one case issued subsequent to the Order, *Wilson v. Frito-Lay North America, Inc.*, --- F. Supp. 2d ----, 2013 WL 5777920, at *4 (N.D. Cal. Oct. 24, 2013).  This case is cited throughout Defendant's papers and is relied upon by Defendant more than any other authority.  *Wilson*, however, does not support Defendant's new argument.

In *Wilson*, the court's analysis focused on similarities between the labels of purchased and non-purchased products.  *Id* at *4-5.  Nowhere in *Wilson* did the court hold that non-purchased products must be physically similar or identical to purchased products.  Indeed, there, the court dismissed plaintiffs' claims relating to non-purchased products because the pleadings failed to adequately allege that those non-purchased products were mislabeled in the same way as purchased products.  *Id.*  Instead of alleging how the non-purchased products were mislabeled:

> Plaintiffs have taken lists of snack foods, appended them to paragraphs of their SAC, and asserted in their briefs—not in their pleadings—that they are all basically the same. The Court is not convinced, and the exhibits Plaintiffs provide do not help. Plaintiffs take no time to explain how each of the eighty-five new Products are actionably mislabeled, and the Court is not inclined to pore over each ingredient list and guess.

*Id* at *4.  Further:

> In their SAC, Plaintiffs simply provide a list of Non–Purchased Products, attach barely-legible labels (purportedly as they appeared during the Class Period), and assert that these labels are unlawful or misleading. See SAC ¶¶ 42, 62, 84. This is not enough—the Court cannot just assume that every one of the Non–Purchased Products' labels is actionable in the same way as the more fully described Purchased Products' labels are. For example, the label on the purportedly actionable "Lay's Balsamic Sweet Onion" package, SAC Ex. 8 at 25, has a stamp that, unlike any other product, reads "Made With All Natural Potatoes and Seasonings," which is not the same as the labels discussed in the Court's Order on the FAC, which state "Made With All Natural Ingredients." Similarly, the "Miss Vickie's Sea Salt & Vinegar" package, SAC Ex. 8 at 35, has a stamped ribbon that

1   reads only "All Natural."

2   *Id* at *5.

3       Clearly, the insufficient factual allegations in *Wilson* regarding labels of non-purchased

4   products are nothing like the allegations made in the present action regarding the labels on the

5   Substantially Similar Products.  As previously held by this Court:

6           Finally, while defendant argues that plaintiffs have failed to plead facts
           showing the labels on the Substantially Similar Products are sufficiently similar

7           to the Purchased Products, that Court disagrees. Motion at 21. The Amended
           Complaint states exactly why plaintiffs contend the "Substantially Similar"

8           product labels are illegal and misleading in materially identical ways to the
           labels on the Purchased Products. Amended Complaint, ¶¶ 186, 190, 195, 208,

9           219.

10   Order at 17.  Indeed, this Court found that, "Plaintiffs have, however, identified the *exact terms*

11   and representations they are challenging in the identified products."  *Id* (emphasis in the

12   original).

13       Defendant entirely ignores the Order and, when comparing the factual allegations in the

14   present case to those in *Wilson*, argues: "How are the pleadings before this Court any different?

15   In fact, the plaintiffs in the case before this Court have pleaded even less specificity than that

16   found woefully insufficient [in *Wilson*]."  Def. Mem. at 3.  This Court has already determined

17   that this argument is without merit.  Order at 17.

18       Given that *Wilson* is the only post-Order authority that Defendant identifies, there clearly

19   has been no change in the law since September 25, 2013.  Indeed, subsequent to the Order, at

20   least two decisions have been issued that demonstrate that Plaintiffs' allegations relating to the

21   Substantially Similar Products should survive a motion to dismiss.   In *Lilly v. Jamba Juice Co*.,

22   2013 WL 6070503, at *2 (N.D. Cal. Nov. 18, 2013), Judge Tigar determined that the sufficiency

23   of claims related to non-purchased products are to be determined at the class certification stage,

24   and named plaintiffs "may seek to represent a class of people who purchased those products [that

25   plaintiffs did not purchase], as long as all plaintiffs, named and absent, have standing in their

26   own right, and as long as the prerequisites to class certification are satisfied."

27       In *Werdebaugh v. Blue Diamond Growers*, 2013 WL 5487236, at *15 (N.D. Cal. Oct. 2,

28   2013), Judge Koh made clear that non-purchased products do not need to be physical identical to

1   purchased products.  There, purchased and non-purchased products were alleged to be labeled

2   "All Natural," despite containing artificial ingredients.  Judge Koh found that plaintiff did not

3   have to allege that all ingredients and physical attributes of the non-purchased products were

4   identical to those of the purchased products.  Rather, plaintiff only had to allege that the non-

5   purchased products contained the same type of "ingredients *at issue*" (*i.e.*, artificial ingredients)

6   that render the non-purchased products misbranded in the same way that the purchased products

7   are misbranded.  *Id* at *15 (emphasis added) ("identifying the ingredients at issue in the

8   Purchased Product, identifying the Substantially Similar Products bearing the 'All Natural'

9   claim, and alleging that the Substantially Similar Products make the same misrepresentations as

10  the Purchased Products—as [plaintiff] has done—is sufficient").  Moreover, in *Werdebaugh* , the

11  complaint "provide[d] a list of the allegedly artificial ingredients contained in the Purchased

12  Product, and states that the Substantially Similar Products 'make the same label

13  misrepresentations' and violate the same regulations of the Sherman Law ... as the Purchased

14  Product.  This is enough to satisfy Rule 9(b)'s requirement."  *Id* (ellipses in the original).[9]

15      Just as in *Werdebaugh*, here, Plaintiffs have alleged that the Substantially Similar

16  Products contain the same misrepresentations and are misbranded in the exact same way as the

17  purchased products.  Moreover, where improper ingredients are at issue,[10] both the purchased

18  products and the Substantially Similar Products are alleged to contain the same ingredients that

19  render them misbranded.  *See* section V, *infra*; SAC at ¶¶ 196-204.  As held in decisions of the

20  judges of this District issued both before and after the Order, such allegations are sufficient.

---

21  [9]      In *Werdebaugh*, Judge Koh further found that the issue of substantial similarity turns on

22  the similarity of alleged injuries and that this requirement is meant to "ensure that the plaintiff is seeking to represent only those individuals who have suffered essentially the same injury as the

23  plaintiff. The substantially similar approach therefore recognizes the need to limit a plaintiff's

24  standing to injury he has personally suffered. At the same time, however, the approach recognizes that the definition of the plaintiff's 'injury' is not so narrow as to encompass only the

25  exact set of circumstances that led to the plaintiff's suit."  2013 WL 5487236, at *13 (quoting *Brazil v. Dole Food Company, Inc.*, 2013 WL 5312418, at *7 (N.D. Cal. Sept. 23, 2013)).

26

27  [10]     This includes allegations that purchased products and Substantially Similar Products are labeled as "100% Whole Wheat," despite containing soy flour, which in a non-whole wheat

28  flour.  SAC at ¶¶ 201-04.  This also includes allegations that purchased and non-purchased bread products contain added coloring in violation of 21 C.F.R. § 136.110.  *Id* at ¶¶ 196-200.

4.      **Defendant Does Not Argue that, At the Time of the Order, It Did Not Know of the Law Presented in Its Current Motion**

Although Defendant did not argue in its first motion that non-purchased products must be physical similar to purchased products, it does not suggest that, at the time of the Order, in the exercise of reasonable diligence, it did not know of the law presented in its present motion.

For all these reasons, Defendant has not met the standard for the grant of a motion for reconsideration.  As set forth herein, the new legal arguments made in support of Defendant's present motion are without merit.  However, because Defendant has failed to satisfy this standard, the Court need not address the merits of these new legal arguments in Defendant's "motion to dismiss."  *U.S. Rubber Recycling*, 2011 WL 311014, at *12.

B.      **This Motion Should Be Denied Pursuant to Fed. R. Civ. P. 12(g)(2)**

To the extent Defendant maintains that this is not a motion for reconsideration because it is not seeking the same relief, or should the Court find that Defendant is now raising different defenses or objections, alternatively, this motion is barred under Fed. R. Civ. P. 12(g)(2).  This "Single Motion Rule" states that: "Except as provided in Rule 12(h)(2) or (3), a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion."  If the arguments raised in the present motion are found to be different defenses or objections than those in the first motion, they may not now be raised in a successive motion to dismiss because they were available to Defendant at the time of its first motion under Rule 12.  *See Sowinski v. Wells Fargo Bank, N.A.*, 2013 WL 2436229, at *3 (N.D. Cal. June 4, 2013) (denying successive motion to dismiss because "Defendant was required to consolidate all Rule 12 defenses in a single pre-answer motion to dismiss"); *Herron v. Best Buy Stores, LP*, 2013 WL 4432019, at *4 (E.D. Cal. Aug. 16, 2013) ("'a series of [Rule 12(b)(6)] motions should not be permitted because that results in delay and encourages dilatory tactics.'") (citation omitted).

1

2

### III.   TO BE SUFFICIENTLY SIMILAR, LEGAL CLAIMS RELATING TO PURCHASED PRODUCTS AND NON-PURCHASED PRODUCTS MUST ONLY IMPLICATE THE SAME SET OF CONCERNS

3   Should the Court reach the merits of Defendant's motion to dismiss the SAC, just as the

4   motion to dismiss claims relating to the Substantially Similar Products in the FAC was denied,

5   this motion should also be denied.  The Court was correct when it found that Plaintiffs have

6   standing to bring claims relating to the Substantially Similar Products where the

7   misrepresentations on their labels are alleged to be "materially identical" to the

8   misrepresentations on the labels of purchased products.  Order at 17.  This holding is consistent

9   with the decisions within this District that have repeatedly held that the issue of substantial

10   similarity relates to similarities between the *claims* asserted regarding purchased and non-

11   purchased products.  The issue is ultimately whether a complaint alleges that the same defendant

12   placed labels on non-purchased products that contained similar misrepresentations and harmed

13   class members in a similar way.  *See Ogden v. Bumble Bee Foods, LLC*, 292 F.R.D. 620, 626

14   (N.D. Cal. 2013) (finding substantial similarity where non-purchased products contain labels

15   "with similar or identical claims about Omega–3 content, as those labels may have misled class

16   members in the same way that they allegedly misled [plaintiff] *even if the products are not the*

17   *same*.") (emphasis added); *Chavez v. Blue Sky Natural Beverage Co*., 268 F.R.D. 365, 378 (N.D.

18   Cal. 2010) ("Plaintiff's claims here arise out of the allegedly false statement, worded in several

19   variations, made on every Blue Sky container indicating that the beverages are connected to Santa

20   Fe, New Mexico and therefore arise from the same facts and legal theory. . . . Although plaintiff

21   did not purchase each type of beverage carrying the misleading label, his claims are 'reasonably

22   coextensive with those of absent members.'") (citation omitted); *Koh v. S.C. Johnson & Son, Inc.*,

23   2010 WL 94265, at *3 (N.D. Cal. Jan. 6, 2010) (motion to dismiss denied where identical

24   misleading label appears on varying purchased and non-purchased products).[11]

25   ─────────────────

26   [11]     Other cases cited by Defendant are inapposite.  In *Miller v. Ghirardelli Chocolate Co.*, 912 F. Supp. 2d 861, 871 (N.D. Cal. 2012), unlike the present case, "the alleged

27   misrepresentations var[ied] widely" from product to product.  To that end, Defendant inaccurately asserts that *Brazil v. Dole Food Company, Inc.*, 2013 WL 5312418 (N.D. Cal. Sept.

28   23, 2013) cites *Miller* for the proposition that products and labels must be "virtually identical." Def. Mem. at 5-6.  Neither *Brazil* nor *Miller* say this.  In *Brazil*, the issue of substantial similarity

1    Such a focus on the nature of the claims (as opposed to the physical makeup of products)

2   is entirely consistent with controlling authority regarding similar, but not identical, claims

3   brought on behalf of class members in other contexts.  In *Gratz v. Bollinger*, 539 U.S. 244, 265

4   (2003), the Supreme Court permitted claims asserted on behalf of class members relating to the

5   use of race as a factor in college transfer admissions, despite the fact that the named plaintiff's

6   claims were premised on the use of race as a factor in college freshman admissions.  The

7   Supreme Court permitted such claims because "use of race in undergraduate transfer admissions

8   *does not implicate a significantly different set of concerns* than does its use of race in

9   undergraduate freshman admissions." *Id* at 265 (emphasis added).

10    In *Harris v. Las Vegas Sands L.L.C.*, 2013 WL 5291142, at *4-5 (C.D. Cal. Aug. 16,

11   2013), applying the reasoning of *Gratz*, standing was found for claims brought on behalf of class

12   members under the UCL, FAL, and CLRA relating to the same unlawful conduct occurring at

13   two separate hotels (which were operated by the same defendants), even though plaintiff had

14   only stayed at one of the hotels.  The court held that, in a putative class action, class standing

15   exists where the complaint plausibly alleges that the plaintiff "'personally has suffered some

16   actual ... injury as a result of the putatively illegal conduct of the defendant,'" and "'that such

17   conduct implicates "the same set of concerns" as the conduct alleged to have caused injury to

18   other members of the putative class by the same defendants.'" *Id* at *5 (citations omitted).

19    Recently, in *Clancy v. The Bromley Tea Company*, 2013 WL 4081632, at *5 (N.D. Cal.

20   Aug. 9, 2013), a case similar to the present one, Judge Tigar applied the reasoning of *Gratz* to

21   

22   was actually found to turn on whether the alleged legal *injuries* resulting from purchased and
non-purchased products are similar.  2013 WL 5312418, at *7; section IV, *infra*.

23    In *Astiana v. Dreyer's Grand Ice Cream, Inc*., 2012 WL 2990766, at *13 (N.D. Cal. July
20, 2012), the court found substantial similarity, noting that concerns "about material differences

24   are better addressed at the class certification stage rather than at the 12(b)(6) stage."  Moreover,
there, the court noted that the fact that products have "different ingredients is not dispositive"

25   where they are similarly mislabeled, and neither is the fact that they contain different brand
names, where they are manufactured by the same defendant. *Id* at *13.  In *Kane v. Chobani,

26   Inc*., 2013 WL 5289253, at *10 (N.D. Cal. Sept. 19, 2013), the court made no determination as to
the degree of similarity required to survive a motion to dismiss. In *Johns v. Bayer Corp*., 2010

27   WL 476688, at *5 (S.D. Cal. Feb. 9, 2010), an outlier decision, the court barred all claims

28   relating to non-purchased products, regardless of any similarities to purchased products.  That
decision is at odds with the bulk of authority in this District, as well as this Court's Order.

1   claims relating to non-purchased food products alleged to be misbranded in the same way as

2   purchased products.  Permitting those claims, which implicated the same set of concerns, the

3   court held that, if the named plaintiffs in *Gratz* had standing to seek prospective relief against a

4   school to which they were no longer applying, then plaintiff has standing to assert claims relating

5   to products plaintiff did not buy.  *Id* at *5.

6        Even if the Court determines that *Gratz* is not controlling authority, there is no reason to

7   apply a wholly different framework to resolve the same question that was before the Supreme

8   Court: when does standing exist to bring similar, but not identical, claims on behalf of class

9   members.  Indeed, the issue raised by judges within this District - - whether a non-purchased

10   product is "substantially similar" - - is actually no different than the issue raised by the Supreme

11   Court -- whether a claim brought on behalf of class members "implicate[s] a significantly

12   different set of concerns."  These issues are one and the same.  Both look to the similarity of the

13   substance of the alleged legal claims.  It is logical that, if the same defendant, as part of the same

14   scheme, places labels containing the same misrepresentations on multiple products, all such

15   unlawful conduct should be redressable as part of a single class action brought on behalf of class

16   members who have been harmed in the same way as the named plaintiffs.  Regardless of their

17   physical attributes, claims pertaining to such products implicate the same set of concerns where

18   the unlawful conduct and resulting harm relating to each product is substantially similar.

19        Here, the Court has already ruled that the Substantially Similar Products and the

20   purchased products are alleged to be unlawfully mislabeled in "materially identical ways."

21   Order at 17.  Therefore the claims relating to all the products identified in the SAC implicate the

22   same set of concerns and should survive a motion to dismiss.

23        Moreover, precluding substantially similar claims that implicate the same set of concerns

24   would have the effect of benefitting parties that engage in the same unlawful conduct on a large

25   scale by similarly misbranding a large number of products of varying physical appearance.  If

26   Defendant's argument were adopted, such parties would be able to continue operating their over-

27   arching unlawful schemes with respect to all but those products that are physically identical to

28   products purchased by plaintiffs.  Such a policy would provide no deterrent against the exact

1    same unlawful conduct committed with respect to all non-identical products.[12]

2          Defendant does not provide any public policy rationale supporting the need to split apart

3    substantially similar claims (as opposed to claims relating to physically similar products).[13]   As

4    an example, despite the fact that it placed the exact same unlawful label on multiple Entenmanns

5    products, and despite the fact that consumers who purchased any of those products have been

6    injured in the same way, Defendant asserts that it would be inherently improper to

7    simultaneously permit claims implicating the same concerns that relate to both doughnut

8    products and cake products.  Although Defendant erroneously purports to cite cases supporting

9    this position (*see* section IV, *infra*), nowhere in its papers does Defendant explain *why* the joint

10   prosecution of such claims is inherently improper.  When made by the same defendant, and

11   containing the same illegal label, there is no significantly different set of concerns implicated by

12   the issues of whether donuts are baked fresh daily and whether cakes are baked fresh daily.

13          **IV.   THERE IS NO REQUIREMENT THAT NON-PURCHASED PRODUCTS**
14                **BE VIRTUALLY IDENTICAL TO PURCHASED PRODUCTS**

15          Defendant now argues that, to adequately allege claims relating to non-purchased

16   products, those non-purchased products must be physically "virtually identical" to purchased

17   products.  Defendant contends that, not only must labels be "identical," but non-purchased

18   products must also: be physically identical to purchased products; be the exact same size and

19   shape; and be made of the exact same ingredients.  This argument, however, has absolutely no

20   basis in case law and is conceived out of thin air.  None of the authorities cited by Defendant

21   _____

22   [12]      The SAC specifically alleges that all purchased products and Substantially Similar
     Products were misbranded as part of a singular scheme to deceive and defraud consumers.  SAC
23   at ¶¶ 180-87.  Claims addressing this singular scheme should be permitted to be prosecuted
     together as part of a singular action.

24   [13]      At most, Defendant purports to raise concerns regarding the scope of discovery.
25   Discovery concerns, however, have no bearing on the issue of standing.  *See Gutierrez v. E. & J.
     Gallo Winery*, 1975 WL 982, at *1 (N.D. Cal. Nov. 25, 1975) (in class actions, the scope of
26   discovery is based on the extent of plaintiffs' standing and not the other way around).  To the
     extent Defendant believes that Plaintiff is engaging in improper discovery practice, it can seek
27   appropriate relief from the Court.  *See Clancy*, 2013 WL 4081632, at *6.  Moreover, the scope of
     discovery is partially a function of the scope of Defendant's own unlawful conduct.  Had
28   Defendant misbranded fewer products (or none at all), it might be less concerned.

1   supports the application of such a stringent standard.  In actuality, as discussed above, the

2   relevant case law demonstrates that the requisite degree of similarity is much lower and *claims*

3   relating to the non-purchased products need only implicate the same set of concerns as *claims*

4   relating to purchased products.

5         Defendant's current position is also at odds with the arguments it made in support of its

6   first motion to dismiss.  Defendant previously argued that Plaintiffs' claims relating to the

7   Substantially Similar Products must be dismissed because the FAC did not adequately allege that

8   their *labels* were substantially similar to those of the purchased products.  Defendant argued:

9
> Where, as in the cases cited by plaintiffs, courts permit claims for non-purchased
10  products to survive a motion to dismiss, they require that "where the named
    plaintiff did not purchase the product, the *claims* related to the not purchased
11  products must be nearly identical to the *claims* for the purchased product." Thus,
    such claims are permitted only where the *label* in the non-purchased product is
12  the same as the *label* on the purchased product.

13  Dkt. # 29 at 13 (citations omitted) (emphasis added).  The Court, however, found that the FAC

14  "states exactly why plaintiffs contend the 'Substantially Similar' product labels are illegal and

15  misleading in materially identical ways to the labels on the Purchased Products."  Order at 17.  It

16  is only after the Court's rejection of that argument that Defendant manufactured its new

17  argument premised on a non-existent "virtually identical" standard.  There is simply no

18  requirement that non-purchased products be virtually identical to purchased products.

19        In support of this new-found argument that all products must be physically identical,

20  Defendant cites a number of cases that do not, in any way, require that non-purchased products

21  be physically identical.  In addition to *Wilson* (discussed above, *see* section II, *supra*) Defendant

22  erroneously cites *Lanovaz v. Twinings North America, Inc*. 2013 WL 2285221, at *2 (N.D. Cal.

23  May 23, 2013) for the proposition that the law "require[s] a factual showing that the purchased

24  and non-purchased products are virtually identical."  Def. Mem. at 1.  *Lanovaz*, however, does

25  not say that "products" must be virtually identical, but that "*claims* related to the not purchased

26  products must be nearly identical to the *claims* for the purchased product."  *Lanovaz*, 2013 WL

27  2285221, at *2 (emphasis added).  As this Court has already held, Plaintiffs' claims relating to

28  the Substantially Similar Products are nearly identical to claims relating to purchased products.

1    *See* Order at 17 ("The Amended Complaint states exactly why plaintiffs contend the

2    'Substantially Similar' product labels are illegal and misleading in materially identical ways to

3    the labels on the Purchased Products.").[14]

4        Defendant also inaccurately implies that *Bruton v. Gerber Products Co.*, 2013 WL

5    4833413 (N.D. Cal. Sept. 6, 2013) cites *Colucci v. ZonePerfect Nutrition Co.*, 2012 WL 6737800

6    (N.D. Cal. Dec. 28, 2012) for the proposition that "substantial similarity means the food products

7    must be all of a 'single kind' and 'share a uniform size and shape.'"  Def. Mem. at 2 n.1.  Neither

8    *Bruton* nor *Colucci* stand for this proposition and the aforementioned phrases are quoted entirely

9    out of context.  In *Bruton*, claims relating to non-purchased products were dismissed where the

10   complaint only purported to identify some, but not all, non-purchased products on which claims

11   were premised, and also included a chart of products and their misrepresentations that contained

12   obvious inaccuracies.  2013 WL 4833413, at *15-16.  Nowhere in *Bruton* did the court purport to

13   define "substantial similarity" or require that products be physically identical.

14       In *Colucci*, the non-purchased products were actually found to be sufficiently similar.

15   2012 WL 6737800, at *4.   There, the non-purchased products, in addition to having similar

16   labels, happened to be nutrition bars "of a single kind" that happened to "share a uniform size

17   and shape."  *Id.*  Nowhere in *Colucci*, did the court hold that non-purchased products *must* be "of

18   a single kind" or "share a uniform size and shape" in order to survive a motion to dismiss.  The

19   decision did, however, hold that the "most important[]" factor in finding sufficient similarity was

20   that the non-purchased products had the same label as purchased products.  *Id.*  Further, the court

21   expressly declined to determine what constitutes sufficient similarity to survive a motion to

22   dismiss.  *Id* at *4 n.3.

23       Defendant can also find no comfort in the *Brazil* decision.  There, Judge Koh held that

24

25   ———————————————
     [14]    *Lanovaz* also cautions that "[t]he Ninth Circuit advised that when determining whether a
26   plaintiff who suffered one type of injury has standing to sue on behalf of a class for a different
     although similar injury, courts 'must be careful not to employ too narrow or technical an
27   approach. Rather, [courts] must examine the questions realistically: [they] must reject the
     temptation to parse too finely, and consider instead the context of the inquiry.'" 2013 WL
28   2285221, at *2 (quoting *Armstrong v. Davis*, 275 F.3d 849, 867 (9th Cir. 2001), *abrogated on
     other grounds by Johnson v. California*, 543 U.S. 499, 504–05 (2005)).

1   the issue of substantial similarity turns on whether the alleged *injuries* resulting from purchased

2   and non-purchased products are similar.  2013 WL 5312418, at *7.  The court noted that the

3   substantial similarity requirement is meant to "ensure that the plaintiff is seeking to represent

4   only those individuals who have suffered essentially the same injury as the plaintiff. The

5   substantially similar approach therefore recognizes the need to limit a plaintiff's standing to

6   injury he has personally suffered. At the same time, however, the approach recognizes that the

7   definition of the plaintiff's 'injury' is not so narrow as to encompass only the exact set of

8   circumstances that led to the plaintiff's suit."  *Id*.  The court found sufficient similarity because,

9   there, plaintiff alleged that he was deceived by the illegal use of the term "all natural" on

10  purchased products and "the injury he suffers as a result of that misrepresentation is not

11  meaningfully distinguishable from the injury suffered by an individual who is misled by the use

12  of the term 'all natural' on [non-purchased products]."  *Id*.[15]

13       Despite the foregoing, based on these cases, Defendant erroneously declares that, "there

14  can be no legitimate question that California law mandates that" non-purchased products be

15  virtually identical to purchased products.[16]  Def. Mem. at 3.  In actuality, as discussed above, the

16

17  [15]     Judge Koh's decisions in *Werdebaugh* and *Brazil* were issued subsequent to her decisions
18  in *Bruton* and *Kane* (both of which are cited in Defendant's papers).  Unlike in *Werdebaugh* and
    *Brazil*, in *Bruton* and *Kane*, Judge Koh did not reach the issue of what constitutes sufficient
19  similarity to survive a motion to dismiss.

20  [16]     Significantly, Defendant misses another key aspect of Plaintiffs' allegations. Without
    elaboration, Defendant asserts that, without demonstrating the physical similarities between the
21  purchased and non-purchased products, Plaintiffs cannot establish that the non-purchased
    products are "worthless" in the same manner that Plaintiffs allege the purchased products are
22  "worthless."   The SAC does not allege that products are worthless because of their ingredients
    or other physical attributes.  Rather, it alleges that both the purchased and non-purchased
23  products are worthless because, under federal and state law, they are illegal products that may
24  not be lawfully sold or resold.  SAC at ¶¶ 10, 59, 63, 177, 252, 261, 273, 286, 299.
         These products are illegal because they are misbranded under the FDCA and the Sherman
25  Law. 21 U.S.C. § 331; Cal. Health & Safety Code § 110760.  Indeed, under both the FDCA and
    the Sherman Law, the manufacture, sale, or distribution of misbranded products is a *strict*
26  *liability crime*. 21 U.S.C. § 333(a); Cal. Health & Safety Code § 111825.  Because it is a strict
27  liability crime, it is unnecessary to establish Defendant's intent or Plaintiffs' reliance before
    establishing a predicate unlawful act under the unlawful prong of the UCL.  *See, e.g.*, Order at 13
28  ("defendant's argument about the [alleged misrepresentation being a] 'typographical' error and a
    reasonable consumer's ignorance of the FDA regulations do not undermine plaintiffs' claim that

1  law only mandates that the legal claims relating to the non-purchased products implicate the

2  same set of concerns as legal claims relating to purchased products.

3      ## V.   THE SUBSTANTIALLY SIMILAR PRODUCTS ARE SUFFICIENTLY
       PHYSICALLY SIMILAR TO PURCHASED PRODUCTS

4

5          Although there is no requirement that the Substantially Similar Products be physically

6  similar (much less identical), the SAC does, in fact, allege physical similarities between them

7  and the purchased products.  To begin, Sara Lee Soft & Smooth 100% Whole Wheat Bread is the

8  single Substantially Similar Product alleged to misrepresent that it is an "Excellent Source of

9  Whole Grain."  SAC at ¶¶ 188-95.  On a motion to dismiss, it is more than plausible that this

10  product is physically similar to the purchased products with this same misrepresentation, Sara

11  Lee Soft & Smooth Whole Wheat White Bread, Sara Lee Classic 100% Whole Wheat Bread,

12  and Sara Lee 100% Whole Wheat Bread.  *Id.*

13          Further, to the extent non-purchased products must be physically similar at all, they only

14  need to be physically similar in ways that are relevant to the alleged misrepresentations on their

15  labels.  For example, in *Werdebaugh v. Blue Diamond Growers*, 2013 WL 5487236, at *15

16  (N.D. Cal. Oct. 2, 2013), where purchased and non-purchased products were alleged to be

17  labeled "All Natural," despite containing artificial ingredients, Judge Koh found that plaintiff did

18  not have to allege that all ingredients and physical attributes of the non-purchased products are

19  identical to those of the purchased products.  Rather, plaintiff was only required to allege that the

20

21  the label—not in compliance with the FDA regulations—is illegal under the Sherman Law,
    applicable here through the illegal prong of the UCL."); *Gitson v. Trader Joe's Co.*, 2013 WL
    5513711, at *10 (N.D. Cal. Oct. 4, 2013) (Orrick, J.) (claim under UCL unlawful prong alleged

22  even where complaint fails to satisfy requirements of Rule 9(b) or the reasonable consumer test);
    *Morgan v. Wallaby Yogurt Company, Inc.*, 2013 WL 5514563, at *8 (N.D. Cal. Oct. 4, 2013)

23  (Orrick, J.) (same); *In re Actimmune Marketing Litig.*, 2010 WL 3463491, at *9 (N.D. Cal. Sept.

24  1, 2010), *aff'd*, 464 Fed. Appx. 651 (9th Cir. 2011) ("because the FDCA and Sherman Laws
    impose strict liability on those who [violate the FDCA and Sherman Law provisions at issue],

25  plaintiffs would be absolved from having to establish scienter and an intent to defraud, the two
    pivotal elements of fraud"); *Galvan v. KDI Distribution Inc.*, 2011 WL 5116585, at *7 (C.D. Cal.

26  Oct. 25, 2011) (UCL claim predicated on violation of strict liability crime does not require
    showing of reliance); *see also* Dkt. # 26 at 11-13.  Because the purchased products and the

27  Substantially Similar Products are worthless, the resulting injury from this predicate unlawful act

28  is the out-of-pocket cost to Plaintiffs and class members who purchased these illegal products
    that, in actuality, had a legal value of zero.

non-purchased products contained the same type of "ingredients *at issue*" (*i.e.*, artificial ingredients) that rendered the non-purchased products misbranded in the same way as the purchased products. *Id* at *15 (emphasis added). Judge Koh found that, a complaint "identifying the ingredients at issue in the Purchased Product, identifying the Substantially Similar Products bearing the 'All Natural' claim, and alleging that the Substantially Similar Products make the same misrepresentations as the Purchased Products—as [plaintiff] has done—is sufficient" *Id*.

Similarly, the SAC alleges that plaintiffs purchased Sara Lee Classic 100% Whole Wheat Bread and Sara Lee 100% Whole Wheat Bread, both of which claim to be made from "100% Whole Wheat," despite the fact that they contain soy flour, which is a non-whole wheat flour (a violation of 21 C.F.R. § 136.180(a)(1)). SAC at ¶¶ 103-06, 112-20, 126-30, 202. The SAC further alleges that the Substantially Similar Products identified in paragraph 203 also claim to be "100% Whole Wheat," despite the fact that they contain soy flour. SAC at ¶¶ 201-04. Just as in *Werdebaugh*, the complaint alleges that those Substantially Similar Products have the same label misrepresentations and contain the same ingredient at issue, soy flour.

The same is true for the Substantially Similar Products that, like Bimbo Toasted Bread, are bread products that unlawfully contain added coloring in violation of 21 C.F.R. § 136.110. The SAC alleges that all those purchased and non-purchased products are bread products and are represented as such.[17] SAC at ¶¶ 141-47, 196-200. Further, each is alleged to contain the same unlawful ingredient at issue, added coloring. *Id*. Just as in *Werdebaugh*, where Judge Koh found it sufficient to allege that purchased and non-purchased products all contained the ingredients at issue there (artificial ingredients), it is sufficient that the SAC alleges that all these bread products contain the same unlawful ingredient at issue here (added coloring).

With respect to products bearing the American Heart Association "Heart-Check Mark" on their packaging, the SAC alleges that all purchased and non-purchased products bear the exact same mark and unlawfully fail to disclose that this mark is a paid third-party endorsement.

---

[17]     Defendant suggests that the SAC fails to allege that certain rye bread products containing artificial coloring are, in fact, bread products. Tellingly, however, Defendant does not dispute that those products are bread products. Moreover, on a motion to dismiss, it is more than plausible that those rye bread products are bread products subject to 21 C.F.R. § 136.110.

SAC at ¶¶ 64-90, 218-27.  In such circumstances, the exact same mark renders products sufficiently similar to survive a motion to dismiss.  For example, in *Koh v. S.C. Johnson & Son, Inc.*, 2010 WL 94265, at *3 (N.D. Cal. 2010), varied purchased and non-purchased products contained the same "Greenlist label" that was alleged to have been designed to look like a third-party seal of approval.  That was sufficient to survive a motion to dismiss.  *Id* at *3.

Further, the Heart-Check Mark misrepresentation does not pertain in any way to the physical appearance or ingredients of the products at issue.  Rather, the misrepresentation pertains to the fact that a third-party was paid to permit Defendant to use this mark on its products.  SAC at ¶¶ 64-90, 218-27.  Therefore, there are no other relevant physical attributes at issue that purchased and non-purchased products should have in common.  The Heart-Check Mark, itself, is the only relevant physical similarity among those products identified and each is alleged to contain the exact same mark.  SAC at ¶¶ 225-26.

Similarly, the misrepresentation that purchased and non-purchased Entenmanns baked products are "BAKED FRESH DAILY" also does not pertain to the physical appearance or ingredients of those products.  Rather, this misrepresentation pertains to the fact that those products were not baked fresh daily, regardless of their physical appearance or attributes.  SAC at ¶¶ 91-102.  Moreover, like the products bearing the Heart-Check Mark, all identified purchased and non-purchased Entenmanns baked products contain the exact same label misrepresenting that they are "BAKED FRESH DAILY."  *Id* at ¶ 215.  That stylized circular label does not vary from product to product.  *Id.*  That label is the relevant physical similarity that consumers see on the front of the packages of those products.

Finally, with respect to non-purchased bread products identified in the SAC that unlawfully contain added coloring in violation of 21 C.F.R. § 136.110, Defendant argues that one or more of those products are "non-standardized" breads that fall outside the scope of 21 C.F.R. § 136.110.  Specifically, Defendant argues that, pursuant to FDA Compliance Policy Guide § 505.350, Orowheat Sweet Hawaiian Bread is such a non-standardized bread.  In its motion to dismiss the FAC, Defendant made this exact same argument with respect to Bimbo Toasted Bread.  The Court rejected this argument:

> With respect to whether "Toasted Bread" is governed by section 136.110, defendant relies on FDA Compliance Policy Guide § 505.350, which allows the use of the label "honey bread" where the product does not purport to be "standardized foods" and a certain amount of honey is used. Defendant relies on this sole piece of agency guidance to argue that any "non-standardized" bread, like its "Toasted Bread," is not subject to section 136.110(c)(17). However, defendant provides no definition or explanation of when the FDA would treat a product as standard or non-standard. Instead, defendant cites to 21 U.S.C. section 343(g), which prevents misbranding of foods "for which a definition and standard of identity has been prescribed by regulations." The question, therefore, boils down to whether or not "Toasted Bread" is subject to the "bread" standard of identity as a matter of law. Defendant's reliance on the guidance does not answer this question, as that guidance dealt with bread products to which significant amount of honey have been added, presumably for flavor, and which do not purport to be "standard" bread. The Court cannot answer this question, on the record before the Court, without further explanation of how the FDA categorizes standard and non-standard bread products.

Order at 14-15.  Again, Defendant entirely ignores the Court's Order.

## VI.   WHETHER A PRODUCT IS SUBSTANTIALLY SIMILAR IS A QUESTION OF FACT

Even if the Court were to hold that non-purchased products must be physically similar to purchased products, whether a particular product is substantially similar is a question of fact. Throughout its papers, Defendant repeatedly argues that particular non-purchased products are not sufficiently physically similar to purchased products.  However, those conclusory assertions of fact are an insufficient basis on which to dismiss any claim.  The Court may not decide issues of fact on a motion to dismiss.  *See Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1107 n.7 (9th Cir. 2013).  The Court has already held that, "if a particular label for a Substantially Similar Product differs materially from one on a Purchased Product, that issue is more appropriately addressed on class certification."  Order at 17.   Any material physical differences (to the extent relevant to the issue of standing[18]) are also more appropriately addressed on class certification.

---

[18]    Some decisions alternatively hold that whether plaintiffs may assert claims relating to non-purchased products is not a question of standing, but a question of typicality and adequacy to be determined at the class certification stage, and not the pleadings stage. *See, e.g.*, *Lilly v. Jamba Juice Company*, 2013 WL 6070503, at *2 (N.D. Cal. Nov. 18, 2013).  Under such reasoning, the present motion should also be denied.

1

## <u>CONCLUSION</u>

2

For all the aforementioned reasons, Plaintiffs respectfully request that the Court deny

3

Defendant's motion in its entirety and grant such other and further relief as the Court deems just

4

and proper.

5

Dated: January 3, 2013                              Respectfully submitted,

6

7

        _/s/ Ben F. Pierce Gore_

8

        Ben F. Pierce Gore (SBN 128515)
        PRATT & ASSOCIATES

9

        1871 The Alameda, Suite 425
        San Jose, CA  95126

10

        Telephone:  (408) 429-6506
        Fax:  (408) 369-0752

11

        pgore@prattattorneys.com

12

        Keith M. Fleischman (*admitted pro hac vice*)

13

        Bradley F. Silverman (*admitted pro hac vice*)
        THE FLEISCHMAN LAW FIRM, PLLC

14

        565 Fifth Avenue, Seventh Floor
        New York, New York 10017

15

        Telephone: (212) 880-9571
        Fax:  (917) 591-5245

16

        keith@fleischmanlawfirm.com
        bsilverman@fleischmanlawfirm.com

17

18

        *Attorneys for Plaintiffs*

19

20

21

22

23

24

25

26

27

28