| | |
|---|---|
| 1 | HOGAN LOVELLS US LLP |
| | Mark C. Goodman (Bar No. 154692) |
| 2 | Ethan A. Miller (Bar No. 155965) |
| | 3 Embarcadero Center, Suite 1500 |
| 3 | San Francisco, California 94111 |
| | Telephone:    (415) 374-2300 |
| 4 | Facsimile:    (415) 374-2499 |
| | mark.goodman@hoganlovells.com |
| 5 | ethan.miller@hoganlovells.com |
| 6 | Attorneys for Defendant |
| | BIMBO BAKERIES USA, INC. |
| 7 | |

HOGAN LOVELLS US LLP
Mark C. Goodman (Bar No. 154692)
Ethan A. Miller (Bar No. 155965)
3 Embarcadero Center, Suite 1500
San Francisco, California 94111
Telephone:    (415) 374-2300
Facsimile:    (415) 374-2499
mark.goodman@hoganlovells.com
ethan.miller@hoganlovells.com

Attorneys for Defendant
BIMBO BAKERIES USA, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ALEX ANG and LYNN STREIT, individually and on behalf of all others similarly situated,<br><br>                    Plaintiffs,<br><br>     v.<br><br>BIMBO BAKERIES USA, INC.,<br><br>                    Defendant. | Case No. 13-CV-1196 (WHO)<br><br>**REPLY IN SUPPORT OF MOTION TO DISMISS SECOND AMENDED COMPLAINT**<br><br>Date:        January 29, 2014<br>Time:       2:00 p.m.<br>Judge:      Hon. William H. Orrick |

## I. INTRODUCTION

Understanding the weakness of their claims relating to non-purchased products, the plaintiffs relegate to the end of their brief any attempt to face the merits of BBUSA's motion, instead focusing on inapposite procedural arguments in the hope that the Court will allow their overbroad and improper claims to proceed. Indeed, the plaintiffs expend great energy urging the Court to ignore the merits of the motion to dismiss, asserting that it is somehow an improper "motion for reconsideration," conveniently overlooking the facts that (1) the plaintiffs filed a Second Amended Complaint after the Court granted in part a motion to dismiss the First Amended Complaint, (2) BBUSA's motion is in response to that amended pleading and not to any issues on which the Court previously heard argument and, (3) in any event, BBUSA's motion is based almost entirely on new law that was decided since the Court's ruling on the prior motion to dismiss and that is directly on point with respect to the non-purchased product issues raised by BBUSA's pending motion. Thus, the plaintiff's procedural arguments cannot justify ignoring the merits of BBUSA's motion.

When the plaintiffs do finally address BBUSA's arguments, they misstate the law and their own pleadings. Initially, the plaintiffs argue -- in the face of numerous cases actually on point -- that the "substantially similar" test looks at only whether the non-purchased products amorphously "implicate the same set of concerns." While that may have been a starting point for determining standing in non-food cases, law recently created in this Court expressly holds that, specifically in the food context, ***both the misrepresentations and the products themselves must be "substantially similar."*** (*See, e.g.,* Dkt. 46 at 5-6, 9.) In the last eight pages of their Opposition, the plaintiffs appear finally to recognize this point, citing to numerous cases discussing the extent to which the law requires both the misrepresentations and the products to be similar. *See, e.g., Werdebaugh v. Blue Diamond Growers*, 2013 WL 5487236 at *13 (N.D. Cal. Oct. 2, 2013) and *Brazil v. Dole Foods Co., Inc.*, 2013 WL 5312418 at *7 (N.D. Cal. Sept. 23, 2013), both of which are cited by the plaintiffs, both of which were decided after the briefing on the last motion to dismiss and both of which require that "the products *and* alleged misrepresentations are substantially similar" (emphasis added).

- 1 -

REPLY OF DEFENDANT BIMBO
BAKERIES USA, INC. IN SUPPORT OF
MOTION TO DISMISS 13-CV-1196 (WHO)

HOGAN LOVELLS US LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Thus, it appears that the only real issue left for dispute on this motion is the extent to which the plaintiffs must allege facts establishing substantial similarity between the non-purchased products and the products purchased by the plaintiffs in order for the plaintiffs to have standing to assert claims relating to the non-purchased products. Plaintiffs repeatedly challenge BBUSA's characterization of the test as whether the products are "virtually physically identical" and assert that this position "has no basis in case law and is conceived out of thin air." (Opp. at 2, 17.) But this test is set out directly in *Lanovaz v. Twinings North America, Inc.*, 2013 WL 2285221, at *2, which BBUSA cited in its opening brief:

> In order to have concrete factual standing with self-interested parties, where the named plaintiff did not purchase the product, the claims related to the not purchased products must be ***nearly identical***. (Emphasis added.)

If there were any question that "nearly identical" in that decision modifies the "product" and not (as the plaintiffs assert) simply the "claim," *Lanovaz* answers it in the very next paragraph of its opinion, where the Court dismisses claims concerning non-purchased tea where the claims are identical but the tea is not. *Id.* at *3. Thus, it cannot be genuinely disputed that the law requires virtual (or "near") identity between purchased and non-purchased products to afford standing to a class representative.

Here, because no such identity has been pled, BBUSA's motion to dismiss should be granted. *See Kane v. Chobani, Inc.*, 2013 WL 5289253 at *11 (N.D. Cal. Sept. 19, 2013) ("Although the alleged ***misrepresentations*** appear to be similar across all Defendant's products . . . Plaintiffs do not allege facts sufficient to show that the ***products*** Plaintiffs did not purchase are 'substantially similar' to those that they did") (original emphasis); *Bruton v. Gerber Products Co.*, 2013 WL 4833413 at *15-16 (N.D. Cal. Sept. 6, 2013) (granting a motion to dismiss because the Court could not determine from the complaint "whether all the products that Bruton seeks to include in her complaint are indeed substantially similar to the products that she did purchase"). Each of these cases (in addition to *Werdebaugh*, *Wilson* and *Brazil*) was decided after briefing and/or argument on BBUSA's prior motion to dismiss. In short, whether the test is that the products must be "nearly identical," "virtually identical" or have "similar size and shape," or some other physical comparison, the plaintiffs in this case cannot meet any such test, as they

do not plead *anything* about the products' actual similarities. Most fundamentally, the plaintiffs simply do not address their failure to plead, for instance, how a "Pop'em" is in any manner similar to cheese puffs, cookies, buns or pie cheese puffs, pies, cakes or cookies. (*See* SAC at § 215.) The plaintiffs simply lump these products together and make no effort whatsoever to plead that they are similar in any manner, other than that they are (assumedly) baked food products. If courts dismiss claims for non-purchased tea from different tea bushes than the purchased tea (and different baby foods, potato chips, corn chips and puffed corn products) because they are not pled to be "substantially similar," this Court should certainly dismiss the plaintiffs' claims here, where there are *no facts* pled whatsoever to allow the Court to determine that the over 70 non-purchased products are the same as those few products purchased by the plaintiffs.

## II. DISCUSSION

In the plaintiffs' limited discussion of the actual merits of this motion, which they do not even begin until the 21st page of their Opposition, they attempt to establish three basic points: (1) a plaintiff's standing to challenge non-purchased products depends on whether the claims related to those products implicate "the same set of concerns," rather than the straightforward "substantially similar" test that this Court applies in food labeling cases; (2) any physical similarity between the purchased and non-purchased products is essentially irrelevant, even though such similarity is what is required by this Court; and, (3) even if the purchased and non-purchased products must be physically similar, the plaintiffs have adequately alleged such similarities. Each argument is incorrect as a matter of law.

### A. "Same Set Of Concerns" Is Not The Applicable Standard

Interestingly, in their opposition to BBUSA's prior motion to dismiss, the plaintiffs cited and relied upon the same standard that they now seek to disclaim:

> The majority of the courts that have carefully analyzed the question holding that a plaintiff may have standing to assert claims for unnamed class members based on products he or she did not purchase *so long as the products and alleged misrepresentations are substantially similar*. (Dkt. 27 at 23 (internal citations omitted) (emphasis added).)

Plaintiffs cannot now simply ignore both their own prior assertions and this Court's numerous

1   decisions over the past several months that apply the "substantially similar" standard simply
2   because they believe that a more generalized standard, such as "the same set of concerns" (which
3   developed in civil rights cases), may give them a better chance to survive this motion to dismiss.
4       As discussed in BBUSA's opening papers, the "substantially similar" doctrine did not
5   develop in a vacuum. The courts that have applied that rule, including this Court, have been
6   aware of decisions like *Gratz v. Bollinger*, 539 U.S. 244 (2003) for more than ten years.
7   Although *Gratz* and its progeny discuss the constitutional minimum for standing in class actions
8   in general, courts routinely apply more stringent tests to specific sets of facts, such as in food
9   labeling cases. Indeed, several product labeling opinions cite *Gratz* in support of their holdings.
10  *See, e.g., Clancy v. The Bromley Tea Co.*, 2013 WL 4081632 at *3 (N.D. Cal. Aug. 9, 2013);
11  *Lanovaz v. Twinings N. Am., Inc.*, 2013 WL 2285221 at *2; *Bruton v. Gerber Products Co.*, 2013
12  WL 4833413 at *15. In light of the Court's repeated and uninterrupted application of the
13  "substantially similar" test to standing challenges in cases analogous to this one, urging the Court
14  not to apply that test -- as the plaintiffs here do -- does not make much sense.
15      Tellingly, the primary cases that the plaintiffs cite in support of the "same set of concerns"
16  standard do not involve products at all.[1] And the few food labeling cases that they cite are either
17  not on point or support BBUSA's argument and do not support the plaintiffs' position. For
18  example, *Ogden v. Bumble Bee Foods, LLC*, 292 F.R.D. 620, 626 (N.D. Cal. 2013) denied a
19  plaintiff's motion to compel discovery regarding products not purchased by the plaintiff that did
20  not have "similar or identical claims" on the labels and did not have "essentially the same
21  ingredients" as the products that she purchased. Although *Ogden* did not involve a motion to
22  dismiss and was based on a typicality analysis under Rule 23(a), it is instructive because the
23  Court confirmed that products that do not have "nearly identical ingredients" would not satisfy
24  the "sufficiently similar" standard that the Court recognized as applicable to labeling-based
25  claims. *Id.* at 623, 627. Importantly, *Ogden* does not apply -- or even mention -- the "same set of
26  concerns" standard upon which these plaintiffs seek to rely. Even more critically, *Ogden*

---

[1] *See Gratz*, 539 U.S. 244 (2003) (addressing the use of race as a factor in college admissions); *Harris v. Las Vegas Sands LLC*, 2013 WL 5291142 (C.D. Cal. Aug. 16, 2013) (challenging a misleading application of a "resort fee").

HOGAN LOVELLS US LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- 4 -

REPLY OF DEFENDANT BIMBO
BAKERIES USA, INC. IN SUPPORT OF
MOTION TO DISMISS 13-CV-1196 (WHO)

supports one of the key policies behind the "substantial similarity" test; namely, preventing the extreme prejudice that would result if plaintiffs were allowed to conduct discovery concerning products that are not substantially similar to those they actually purchased.  *See also Clancy,* 2013 WL 4081632 at *6.  If this Court was unwilling in *Ogden* to allow a plaintiff to obtain discovery regarding dissimilar products that he or she did not purchase, why should a plaintiff's claims regarding those same dissimilar products be allowed to proceed at all?

The facts and rationale of *Chavez v. Blue Sky Natural Beverage Co.*, 268 F.R.D. 365 (N.D. Cal. 2010) are far afield and do not help resolve this dispute.  That opinion, cited in passing by the plaintiffs, did not deal at all with the "sufficient similarity standard," much less the purported "same set of concerns" test, because *Chavez* arose in the context of a motion for class certification, not a motion to dismiss.  *Id.* at 378.  In fact, the Opposition's citation to *Chavez* comes from the "typicality" analysis in that case and has nothing to do with the dispositive standing issues presented here.  *Id.*  Plaintiffs' reliance on *Koh v. S.C. Johnson & Son, Inc.*, 2010 WL 94265 (N.D. Cal. Jan. 6, 2010) is equally misplaced.  In *Koh*, the Court declined to conduct the sufficient similarity analysis in ruling on a motion to dismiss, instead deferring the issue to the class certification phase.  *Id.* at *3.  The expected consequences of that decision (*e.g.,* broad discovery into dissimilar products that the plaintiffs did not even purchase) were mitigated in that case by the fact that only two products were at issue in *Koh*; unlike here, where opening the door to discovery concerning **73 non-purchased products** would impose a substantial and unjustifiable burden on BBUSA.  Furthermore, the *Koh* decision, which is more than four years old, now appears to be an outlier and of questionable weight in light of the many more recent decisions from this Court requiring that plaintiffs demonstrate substantial similarity between purchased and non-purchased products at the pleading stage.

Similarly, *Clancy v. The Bromley Tea Co.*, 2013 WL 4081632 at *3 (N.D. Cal. Aug. 9, 2013) did not analyze the similarity between the products in the context of the defendant's motion for judgment on the pleadings, where the defendant simply argued that "you can't be injured by what you didn't buy."  *Clancy*, like *Ogden*, *Chavez* and *Koh*, ignored the "substantial similarity" standing analysis, instead focusing on the typicality of the named plaintiff's claims, an issue that

1  has not yet been raised in this case. *Id.* at *5, 6. In cases such as this one, where a motion to
2  dismiss raises serious doubts about the similarity of the products at issue for the purpose of
3  contesting standing, courts do not ignore those issues. *See, e.g., Lanovaz v. Twinings N. Am., Inc.*,
4  2013 WL 2285221 (dismissal for failure to adequately plead physical similarity between
5  purchased and non-purchased products); *Bruton v. Gerber Prods. Co.*, 2013 WL 4833413 (same);
6  *Kane v. Chobani, Inc.*, 2013 WL 5289253 (same).

7  In view of the foregoing, the cases cited by the plaintiffs do not support the argument that
8  a vague "same set of concerns" standard should apply here and the plaintiffs cannot simply ignore
9  the numerous decisions from this District analyzing at the pleading stage whether purchased and
10 non-purchased products are sufficiently similar in **both** label and product identity.

**B.   The Numerous Recent Dismissals Of Non-Purchased Product Claims Are Directly On Point**

13 Plaintiffs' attempts to distinguish the most salient cases cited in support of BBUSA's
14 motion fail. For instance, they claim that *Wilson v. Frito-Lay N. Am., Inc.*, 2013 WL 5777920
15 (N.D. Cal. Oct. 24, 2013) does not support the proposition that non-purchased products must be
16 substantially similar to purchased products. (Opp. at 10.) Nonsense. In deciding *Wilson*, the
17 Court was plainly concerned about the physical dissimilarity of the products, separate and apart
18 from its concerns about the labels. *Wilson*, 2013 WL 5777920 at *4 (relevant factors considered
19 by the Court included "whether the challenged products are of the same kind" and "whether they
20 are comprised of largely the same ingredients"). That decision reinforces that a plaintiff must
21 allege sufficiently detailed facts regarding how the purchased and non-purchased products are
22 substantially similar. *Id.* at *4. Moreover, a plaintiff cannot survive a motion to dismiss by
23 asserting in an opposition brief -- but not in a pleading -- uncorroborated (and, frankly, incorrect)
24 statements that the products at issue are made by the same manufacturer, contain the same
25 ingredients and implicate the same concerns. *Id.* at *4.

26 Further, the plaintiffs' discussion of *Lanovaz v. Twinings N. Am., Inc.*, 2013 WL 2285221
27 illustrates their unfortunate willingness to present a quote out of context while ignoring the
28 balance of the Court's analysis. Plaintiffs argue, for example, that *Lanovaz* requires only that

"*claims* related to the not purchased products must be nearly identical to the claims for the purchased product." (Opp. at 18 (emphasis added).)  As presented by the plaintiffs, one may be led to believe that *Lanovaz* was not at all concerned with product similarity.  Yet, *Lanovaz* specifically held that "[t]he deciding factor [on a motion to dismiss] is whether the products are sufficiently similar."  2013 WL 2285221 at *1.  Significantly, immediately after making the general statement quoted by the plaintiffs, the Court went on to discuss the importance of the similarity between the purchased and non-purchased products.  In doing so, the Court cited two decisions that support BBUSA's position here:  (i) *Ivie v. Kraft*, 2013 WL 685372 (N.D. Cal. Feb. 25, 2013), where the plaintiff was not allowed to pursue claims related to non-purchased products that "were different," and (ii) *Donohue v. Apple, Inc.*, 871 F.Supp.2d 913, 922 (N.D. Cal. 2012), where the plaintiff was allowed to proceed only after the defendant admitted that all of its products had the exact same defect.  2013 WL 2285221 at *2.

Even more to the point, *Lanovaz* dismissed the plaintiff's claims regarding two tea varieties that she did not purchase, but that contained the same label as those she did purchase, only because they were derived from different tea plants: "Twinings makes 51 of the teas from the same plant, camellia sinensis. . . . Red tea, on the other hand, is made from a different plant and is thus a significantly different product." *Id.* at *3.  Therefore, to suggest that *Lanovaz* was concerned only with the similarity of the "claims" divorced from the similarity of the products is disturbing, to say the least.  Certainly, if a non-purchased tea product is insufficiently similar to a purchased tea product because each comes from a different strain of tea bush, how can a donut (for instance) be sufficiently similar to a cheese puff or a pie or a cake?

Plaintiffs' effort to distinguish *Colucci* and *Bruton* fare no better.  The opinion in *Colucci v. Zoneperfect Nutrition Co.*, 2012 WL 6737800 at *4 (N.D. Cal. Dec. 28, 2012) establishes that the Court must consider, in addition to the similarity of the misrepresentations on the labels, "whether the challenged products are of the ***same kind*** [and] whether they are comprised of largely the ***same ingredients***." (Emphasis added.)  The various flavors of the same nutrition bar at issue in *Colucci* met that test.  *Id.* at *4, n.3.  *See also Astiana v. Dreyer's Grand Ice Cream, Inc.*, 2012 WL 2990766 at *13 (N.D. Cal. July 20, 2012) (different flavors of ice

- 7 -

1   cream were sufficiently similar to survive a motion to dismiss).  The products at issue here,
2   however, which constitute a broad range of baked goods (from cheese puffs to donuts to tortillas
3   to breads to rolls to pies and cookies) clearly do not meet the "same kind, same ingredients" test.
4       *Bruton v. Gerber Prods. Co.*, 2013 WL 4833413 at *15 also adopted the "substantially
5   similar" test applied in *Astiana* and *Colucci*, where the plaintiffs were permitted to pursue claims
6   only with respect to different flavors of the same product that they purchased (ice cream and
7   nutrition bars, respectively).  However, the complaint in *Bruton* failed because it did not allege
8   sufficient facts to establish that the products were sufficiently similar (in addition to failing to
9   adequately plead how the labels made similar misrepresentations).  *Id.* at *15-16.  As the Court
10  stated, "Bruton asserts claims involving many different food products, some of which are specific
11  to what Bruton allegedly purchased and some of which are so broad that they are practically
12  unidentifiable. . . . [T]he Court cannot determine whether all the products that Bruton seeks to
13  include in her complaint are indeed substantially similar to the products that she did purchase."
14  *Id*.  The complaint here suffers from a similar defect; the allegations of the SAC, on their face, do
15  not permit the Court to determine how, for example, a "bagel thin" is at all similar to bread (SAC
16  at ¶ 226) or how a donut is the same as a cheese puff or cookie or a pie (SAC at ¶ 215).
17      Plaintiffs' reliance upon *Brazil* and *Werdebaugh* is misplaced because those decisions
18  only reinforce the principles of the "substantially similar" test that support BBUSA's motion.  It
19  is misleading to argue, as plaintiffs do, that *Brazil v. Dole Food Co., Inc.*, 2013 WL 5312418 was
20  concerned only with the similarity of the plaintiffs' injuries and not with the products themselves.
21  (Opp. at 19-20.)  As *Brazil* explained, the products must as a threshold matter be "substantially
22  similar" before a court can even consider whether the injuries are the same: "***By limiting a***
23  ***plaintiff's ability to sue over products he did not purchase to situations involving claims and***
24  ***products that are substantially similar to those products he did purchase***, courts ensure that the
25  plaintiff is seeking to represent only those individuals who have suffered essentially the same
26  injury as the plaintiff."  2013 WL 5312418 at *7 (emphasis added).  "Same injury" is the end and
27  "substantially similar" is the means.
28      In *Brazil*, as in *Colucci* and *Astiana*, the plaintiff challenged different flavors (cherry,

HOGAN LOVELLS US LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- 8 -

REPLY OF DEFENDANT BIMBO
BAKERIES USA, INC. IN SUPPORT OF
MOTION TO DISMISS 13-CV-1196 (WHO)

1  black cherry, and peach) of the same "Dole Mixed Fruit" product. *Id.* at *7, 9 n.5. In a
2  transparent attempt to disguise the fact that *Brazil* did in fact involve substantially similar -- and
3  nearly identical -- products, our plaintiffs omit the product names when they characterize the
4  relevant section of the opinion:

> The original quote: "The approach acknowledges, for instance, that where, as here, a plaintiff claims that he was misled by the improper use of the term 'all natural' on **Dole Mixed Fruit in Cherry Gel** [], the injury he suffers as a result of that misrepresentation is not meaningfully distinguishable from the injury suffered by an individual who is misled by the use of the term 'all natural' on **Dole Mixed Fruit in Black Cherry or Peach Gel**." (*Id.* at *7.)[2]
>
> Plaintiffs' paraphrased quote: "The court found sufficient similarity because, there, plaintiff alleged that he was deceived by the illegal use of the term 'all natural' on **purchased products** and 'the injury he suffers as a result of that misrepresentation is not meaningfully distinguishable from the injury suffered by an individual who is misled by the use of the term "all natural" on **[non-purchased products]**.'" (Opp. at 20 (emphasis added).)

Just one week after the *Brazil* decision, Judge Koh issued an opinion in *Werdebaugh v. Blue Diamond Growers*, 2013 WL 5487236, which mirrors *Brazil* in many respects. Plaintiffs rely heavily upon *Werdebaugh* in their Opposition. Like *Brazil*, *Werdebaugh* involved "all natural claims" but, instead of flavors of mixed fruit, the *Werdebaugh* plaintiff sought to challenge different flavors of almond milk. *See id.* at *14. Applying the "substantially similar" standard, the Court concluded that the plaintiff had established standing. *Id.* Most would likely agree that it is uncontroversial to allow plaintiffs to proceed with claims where the *flavor* is the only meaningful variation between the purchased and non-purchased products, as this Court has found on a number of occasions. But that situation is a far cry from the allegations in the pleading at issue on this motion, which ask the Court to compare products as dissimilar as (for example) cheese puffs, donuts, cakes, cookies, English muffins, pita pockets and bread. Chocolate almond milk is not to plain almond milk (as in *Werdebaugh*) as donuts are to cheese

---

[2] Judge Koh included the same quote in *Werdebaugh v. Blue Diamond Growers*, 2013 WL 5487236, which plaintiffs cite for the proposition that purchased and non-purchased products "only need to be physically similar in ways that are relevant to the alleged misrepresentations on their labels." (Opp. at 21.) However, *Werdebaugh* does not limit the substantially similar test. In fact, the plaintiffs' discussion of *Werdebaugh* is really a summary of the Court's analysis concerning whether the plaintiff in that case satisfied the particularity requirements of Rule 9(b) and has little to do with the "substantially similar" test for standing. (Opp. at 11-12, 21-22.)

1  puffs (as here). Plaintiffs' claims do not seek to address mere differences in flavor but wholesale
2  differences in the fundamental type or kind of product.
3        In all of the foregoing cases, most of which have been decided by this Court just in the
4  past few months, the physical similarity between the purchased and non-purchased products was
5  a key issue. None more so than the case of *Kane v. Chobani, Inc.*, 2013 WL 5289253, which
6  plaintiffs do not even attempt to distinguish. In *Chobani*, the plaintiffs allegedly purchased
7  various flavors of "Chobani Greek Yogurt" and attempted to challenge other flavors of the same
8  yogurt (as well as a different product, "Chobani Greek Yogurt Champions Yogurts"). *Id.* at *10.
9  Dismissing the plaintiffs' claims with respect to the non-purchased products, the Court noted that
10  the complaint "failed to adequately allege substantial similarity" because "[a]lthough the alleged
11  *misrepresentations* appear to be similar across all Defendant's products . . . Plaintiffs do not
12  allege facts sufficient to show that the *products* Plaintiffs did not purchase are 'substantially
13  similar' to those that they did." *Id.* at *11 (original emphasis). While the Court did not comment
14  on the degree of similarity that is required, it is clear that plaintiffs must do more than merely
15  provide a list of product names, even if those product names sound similar (which many of the
16  products in this case certainly do not in any event).
17        In light of *Chobani* and the other cases discussed above, it is difficult to imagine how the
18  plaintiffs can tell the Court that "*there is no requirement that the Substantially Similar Products*
19  *be physically similar*." (Opp. at 21.) In fact, that statement flies in the face of this Court's now
20  well-established framework for determining standing in food labeling class actions.

21        **C.    The Plaintiffs Do Not Adequately Plead Substantial Similarity**

22        After raising their procedural and legal framework challenges, the plaintiffs finally
23  attempt to address their actual pleading failures at page 21 of the Opposition. But even then, they
24  ignore BBUSA's arguments that the plaintiffs have failed to plead, for instance, (i) how
25  "Soft'ees" are substantially similar to "Cheese Puffs," "Donuts," "Apple Puffs," "Loaf Cake,"
26  "Danish Twist," "Swirl Buns," "Muffins," "Cookies," "Pie," or "Pop'ems" (SAC at ¶¶ 214-215);
27  or (ii) how "Wheat Bread" is substantially similar to "Pocket Thins Flatbread," "Tortillas,"
28  "Country Rolls," "Bagels," "Bagel Thins," "Pita Pockets" or "English Muffins" (SAC at ¶¶ 202-

HOGAN LOVELLS US LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- 10 -

REPLY OF DEFENDANT BIMBO
BAKERIES USA, INC. IN SUPPORT OF
MOTION TO DISMISS 13-CV-1196 (WHO)

203). As to the former, the Court need only review the *43* separate products listed in Paragraph 215 to see that there is no means by which the Court can accurately determine that they are virtually identical to a "Soft'ee." Indeed, despite arguing in conclusory fashion that they have alleged "physical similarities" between the purchased and non-purchased products, ***plaintiffs do not point the Court to any facts in the SAC that describe the physical appearance or make-up of the non-purchased products***. As this Court's recent decisions clearly demonstrate, the products must be substantially similar and it is not enough to merely have similar labels (or even both be a hot tea beverage). Perhaps the inadequacy of the SAC would be less significant if this case were like *Koh*, where the plaintiff challenged only two products. But, where plaintiffs seek to hold a defendant liable for almost *80 different* products and fail to allege how those products are similar to each other, the failure cannot be ignored.

Apparently recognizing that they cannot meet the test, the plaintiffs argue that the products need to be physically similar only if the misrepresentations on the label pertain to the "physical appearance or ingredients" or "physical attributes" of the product. (Opp. at 23.) Again, not so. First, this argument is at odds with this Court's numerous decisions requiring similarity of both the product and the labels. Those opinions would make no sense if the physical appearance of the products were irrelevant. How can two food products be similar, if not physically? As discussed above, the plaintiffs cannot simply ignore that prong of the test and focus exclusively on the labels. Certainly, no court in this District has done so. Second, even if the plaintiffs' argument were correct (and it is not), they have failed to provide any explanation, by way of citation or otherwise, concerning what constitutes a product's physical attributes or how that standard has been applied that is in any way contrary to what BBUSA has asserted. In truth, the plaintiffs' arguments are contrary to both law and logic.

It is not enough for the plaintiffs to argue in the Opposition that the purchased and non-purchased products are "sufficiently physically similar." On a motion to dismiss, the only relevant facts are those in the operative complaint. Here, the SAC cannot reasonably be read to shed light on how the products are physically identical. As *Wilson* concluded,

> Plaintiffs have taken lists of snack foods, appended them to paragraphs of

> their SAC, and asserted in their briefs – not in their pleadings – that they are all basically the same. . . . Plaintiffs take no time to explain how each of the eighty-five new Products are actionably mislabeled, and the Court is not included to *pore over each ingredient list* and guess. The Court instructed Plaintiffs to be clear about why any Non-Purchased Products were similar enough to the Purchased Products for standing purposes. . . Plaintiffs failed to do so. (*Id.* at *4 (emphasis added).)

If failing to describe the physical similarities between purchased and non-purchased "potato chips, corn chips and puffed corn products" (as in *Wilson*) is insufficient, then certainly the same failure with respect to products as diverse as Pop'ems, cheese puffs, cakes, rolls, breads, pitas, donuts, Apple Puffs, cookies and rings must likewise be insufficient. The logic of this requirement is simple: A consumer's motive in purchasing a breakfast donut is undoubtedly entirely different from her motive in purchasing cheese puffs or dinner food. To be "actionable" in the same manner (to show reliance on the same alleged misrepresentation), a plaintiff must at least plead facts that could plausibly establish the same motive. These plaintiffs have failed to plead such facts.

### D. The Motion To Dismiss Is Procedurally Proper

Plaintiffs' argument that BBUSA's motion is an improper motion for reconsideration fails at inception. As the plaintiffs correctly point out, this motion does not attack, criticize or even discuss in any detail the Court's order on BBUSA's motion to dismiss the first amended complaint. (Opp. at 6.) BBUSA omitted such a discussion because it is unnecessary for several reasons. First, where the Court grants in part a motion to dismiss, and plaintiff files an amended complaint, the defendant is permitted to bring another motion to dismiss even if the key allegations in the amended complaint are unchanged and even if the defendant repeats several arguments that were already addressed by the Court. *Turner v. Tierney*, 2013 WL 2156264 at *1 (N.D. Cal. May 17, 2013). In *Turner*, the plaintiff brought a motion for sanctions, arguing (precisely as these plaintiffs do) that the defendant's motion to dismiss the amended complaint was really a motion for reconsideration of the prior motion to dismiss. *Id.* at *1. The Court rejected that argument because a "motion to dismiss [an amended complaint] is not a motion for reconsideration of the Court's prior order, but, rather, a new motion addressing a newly filed complaint." *Id.*

Second, and perhaps most significantly, the plaintiffs recognize that BBUSA may present this motion if there has been new law since the briefing on the first motion. Unfortunately, the plaintiffs egregiously mischaracterize the new cases that BBUSA cites. To the extent that the law was not previously clear that the product itself must be similar, *Wilson* (and *Werdebaugh*, *Brazil*, *Chobani* and *Bruton*) makes that clear. Plaintiffs argue, for instance, that "nowhere in *Wilson* did the court hold that non-purchased products must be physically similar or identical to purchased products." (Opp. at 10.) This is just incorrect:

> Defendant argues that because Plaintiffs allege no facts stating that the Non-Purchased **Products** are 'the same or similar' to the Purchased Products, Plaintiffs cannot – even in a putative class action – assert causes of action as to **products** that are not in fact substantially similar to the products they actually bought. . . . According to Plaintiffs, all of the **Products** are "potato chips, corn chips, and puffed corn products,' all of which they allege to be unlawfully or misleadingly labeled. Plaintiffs claim that all of the Products are made by the same manufacturer, and, with the exception of flavors, **contain the same ingredients** and implicate the same concerns. . . . Defendant is right. Plaintiffs have failed to allege substantial similarity among the Purchased Products and the Non-Purchased Products. . . . ***The Court will not assume that each of these subtly different Products is like all the others***. (*Wilson*, at *4-5 (emphasis added).)

Third, to the extent that the plaintiffs contend that arguments that the Court rejected in its prior order cannot be reasserted later in the litigation ("[t]he Court's Order is binding upon the Defendant" (Opp. at 7)), they are again mistaken. The doctrines of issue preclusion and collateral estoppel do not apply to a non-final decision on whether a pleading can survive a motion to dismiss. At the risk of stating the obvious, the law of the case doctrine does not apply to the Court's prior order because "such doctrine applies only to rulings made by an appellate court." *Turner*, 2013 WL 2156264 at *1. There is simply no legal basis for the plaintiffs' contention, to which they devote almost half of their 25-page Opposition, that the prior arguments on a motion to dismiss cannot be reasserted.

Finally, Rule 12(g)(2) of the Federal Rules of Civil Procedure does not prohibit BBUSA from filing this motion. (*See* Opp. at 13.) Courts in the Ninth Circuit have noted that "Rule 12(g) applies to situations where successive motions are filed for [the] 'sole purpose of delay.'" *In re Apple iPhone Antitrust Litigation*, 2013 WL 4425720 at *13 (N.D. Cal. Aug. 15, 2013) (internal

1 citations omitted). "Indeed, the only persons to whom Rule 12(g) presents a hazard are motion
2 minded lawyers who, from force of habit or lack of good faith, cannot close their pleading or
3 come to issue without attempting to make numerous motions." *Kilopass Technology Inc. v.*
4 *Sidense Corp.*, 2010 WL 5141843 at *3 (N.D. Cal. Dec. 13, 2010) (allowing motion in the
5 absence of improper motive) (internal quotation omitted). *See also Davidson v. Countrywide*
6 *Home Loans, Inc.*, 2011 WL 1157569 at *4 (S.D. Cal. Mar. 29, 2011) (successive motions not
7 brought for purpose of wasting time under Rule 12 where defendants responded to multiple
8 amended complaints). Here, it simply cannot be genuinely contended that BBUSA filed this
9 motion for the sole purpose of delaying the litigation of this matter. In addition, where a
10 defendant is responding to an amended complaint and raises subject matter jurisdiction issues that
11 could be asserted in a subsequent Rule 12(c) motion or at trial, "efficiency is served by addressing
12 the issues sooner." *In re Apple iPhone*, 2013 WL 4425720 at *13.[3]

13 Accordingly, despite the plaintiffs' desire that the Court not reach its merits, this motion is
14 entirely proper and should be addressed on those merits.

15 **III. CONCLUSION**

16 Plaintiffs must come to grips with the fact that this Court requires putative class
17 representatives to plead substantial similarity between both the labels ***and*** the products
18 themselves when they attempt to sue on products that they did not purchase. The virtual identity
19 of the products at issue is a threshold standing issue that plaintiffs cannot ignore. Yet, they spend
20 over half of their 25-page Opposition doing precisely that. When they finally attempt to address
21 the merits of the motion, the plaintiffs fail to point the Court to a single allegation in the SAC that
22 would shed light on how the purchased and non-purchased products are physically similar in any

---

[3] The cases cited by the plaintiffs in support of their procedural argument are inapposite. In *Amaretto Ranch Breedables, LLC v. Ozimals, Inc.*, 2011 WL 2690437 at *2 (N.D. Cal. July 8, 2011), the defendant's motion to dismiss openly attacked the Court's prior order and was thus deemed a motion for reconsideration; no such circumstances exist here. The other cases cited by the plaintiffs are even less helpful: (i) *Dorroh v. Deerbrook Ins. Co.*, 2013 WL 178136 at *2 (E.D. Cal. Jan. 16, 2013) involved a joint motion to substitute a plaintiff after the plaintiff's motion to substitute had been denied; (ii) *U.S. Rubber Recycling, Inc. v. Encore Intern., Inc.*, 2011 WL 311014 at *12 (C.D. Cal. Jan. 7, 2011) involved a motion for consolidation filed after a motion to transfer had been denied; and (iii) *Jadwin v. Cty. of Kern*, 767 F.Supp.2d 1069, 1109 (E.D. Cal. 2011) involved a dispute over the recovery of attorneys' fees following trial and the court reduced the recoverable fees associated with bringing repeated challenges to the same affirmative defense.

1  respect, beyond just what their labels say.  As this Court has held in numerous similar cases over
2  just the past 12 months, such vague and overbroad pleading compels granting BBUSA's motion
3  to dismiss.

Dated: January 17, 2014                    HOGAN LOVELLS US LLP


By:   /s/ Mark C. Goodman
    Mark C. Goodman
    Ethan A. Miller

    Attorneys for Defendant
    BIMBO BAKERIES USA, INC.