UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALEX ANG, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>BIMBO BAKERIES USA, INC.,<br><br>    Defendant. | Case No. 13-cv-01196-WHO<br><br>**ORDER GRANTING IN PART MOTION TO DISMISS AMENDED COMPLAINT**<br>Re: Dkt. No. 42 |

In plaintiffs' Second Amended Complaint, filed in response to the Court's order granting in part and dismissing in part defendant Bimbo Bakeries USA, Inc.'s motion to dismiss, plaintiffs allege that Bimbo Bakeries misbranded a multitude of "substantially similar" baked good products in addition to ones they actually purchased in reliance on defendant's alleged misbranding. Bimbo Bakeries objects to plaintiffs' attempt to include the unpurchased products in this case. This Order considers the circumstances in which standing may exist for plaintiffs to allege that a defendant misbranded unpurchased "substantially similar products" in a putative class action. For the reasons discussed below, Bimbo Bakeries's motion to dismiss is GRANTED in part.

## BACKGROUND

Plaintiffs' lawsuit alleges that Bimbo Bakeries misbranded its baked goods in several ways. They assert that: (1) the label of Bimbo Bakeries's Thomas' Plain Bagel Thins bears an unlawful and misleading American Heart Association endorsement; (2) in violation of federal and state law, the label of Bimbo Bakeries's Thomas' Plain Bagel Thins claims that the product is an "excellent source of fiber"; (3) in violation of federal and state law, the label of Bimbo Bakeries's Sara Lee 100% Whole Wheat Bread claims that the bread is an "Excellent Source of Whole Grain"; (4) in violation of federal and state law, the labels of Bimbo Bakeries's Sara Lee Soft & Smooth Whole Grain White Bread and Sara Lee Classic 100% Whole Wheat Bread claim that

each is a "Good Source of Whole Grains"; (5) in violation of federal and state law, the labels on Sara Lee Classic 100% Whole Wheat Bread and Sara Lee 100% Whole Wheat Bread say that the products are made of "100% Whole Wheat" when they are partially made with non-whole wheat flour; (6) the label of Bimbo Bakeries's Entenmann's brand products indicate that the Entenmann's bakery goods are made fresh every day and delivered to stores daily, but they are not and the products contain preservatives that belie any claim that they are "fresh"; and (7) the label of Bimbo Bakeries's Bimbo Original Toasted Bread represents that product to be "bread" but due to added coloring, the product fails to satisfy the standard of identity for bread. Second Amended Complaint (SAC) ¶ 4.

Plaintiffs purchased Thomas' Plain Bagel Thins, Sara Lee 100% Whole Grain Bread, Sara Lee Soft & Smooth Whole Grain White Bread, Sara Lee Classic 100% Whole Wheat Bread, Entenmann's Soft'ees and Bimbo Original Toasted Bread, referred to collectively as "Purchased Products." SAC ¶¶ 50-51. They did not purchase the "Substantially Similar Products" listed below, which they claim Bimbo Bakeries misrepresented in the same way as the Purchased Products. Plaintiffs identify the claims and the Substantially Similar Products as follows:

- **Sara Lee Soft & Smooth 100% Whole Wheat Bread** – because like the purchased Sara Lee Soft & Smooth Whole Grain White Bread and Sara Lee Classic 100% Whole Wheat Bread, this product is misbranded as a "Good Source of Whole Grain" or an "Excellent Source of Whole Grain." SAC ¶¶ 188-195.
- **Arnold Marble Jewish Rye Bread, Arnold Pumpernickel Jewish Rye Bread, Bimbo Double Fiber Toasted Bread, Freihofer Wheat Bulkie Rolls, Orowheat Dark Rye Bread, Orowheat Sweet Hawaiian Bread, Stroehmann Deli Soft Rye - No Seeds, Stroehmann Deli Soft Rye – Seeds, Thomas'Cinnamon Raisin Swirl Toasting Bread and Thomas' Cranberry Swirl Toasting Bread** – because like purchased Bimbo Original Toasted Bread, these products are unlawfully misbranded as bread because they contain added coloring. SAC ¶¶ 196-200.
- **Arnold 100% Whole Wheat Pocket Thins Flatbread, Arnold Bakery Light - 100% Whole Wheat Bread, Bimbo 100% Whole Wheat Tortillas, Brownberry 100% Whole**

2

**Wheat Pocket Thins Flatbread, Mrs Baird's 100% Whole Wheat Bread, Mrs Baird's 100% Whole Wheat Country Rolls, Thomas's 100% Whole Wheat Bagels, Thomas' 100% Whole Wheat Bagel Thins, Thomas' 100% Whole Wheat Mini Bagels, Thomas' Sahara 100% Whole Wheat Pita Pockets, Thomas' Sahara 100% Whole Wheat Pita Pockets Mini Size, Thomas' 100% Whole Wheat English Muffins, Tia Rosa 100% Whole Wheat Tortillas** – because these products , like the purchased Sara Lee 100% Whole Wheat Bread and Sara Lee Classic 100% Whole Wheat Bread are unlawfully misbranded because they claim to be "100% Whole Wheat" but are made, in part, with soy flour.

- **Entenmann's 12 Frosted Devil's Food Mini Donuts, Entenmann's 5 Eclairs, Entenmann's 8 Devil's Food Crumb Donuts, Entenmann's 8 Glazed Donuts, Entenmann's 8 Rich Frosted Raspberry Donut, Entenmann's All Butter Loaf Cake, Entenmann's Apple Puffs, Entenmann's Banana Cake, Entenmann's Banana Crumb Loaf Cake, Entenmann's Banana Crunch Cake, Entenmann's Carrot Iced Cake, Entenmann's Cheese Danish Twist, Entenmann's Cheese Filled Crumb Coffee Cake, Entenmann's Chocolate Chip Crumb Loaf Cake, Entenmann's Chocolate Chip Iced Cake, Entenmann's Chocolate Crumb Cake, Entenmann's Chocolate Fudge Cake, Entenmann's Cinnamon Crunch Loaf Cake, Entenmann's Cinnamon Swirl Buns, Entenmann's Corn Muffins, Entenmann's Crumb Coffee Cake, Entenmann's Dark Chocolate Chunk Cookies, Entenmann's Deluxe French Cheese Cake, Entenmann's Guava Cheese Puffs, Entenmann's Homestyle Apple Pie, Entenmann's Iced Lemon Cake, Entenmann's Lemon Crunch Cake,  Entenmann's Lemon Loaf Cake, Entenmann's Louisiana Crunch Cake, Entenmann's Marble Loaf Cake, Entenmann's Marshmallow Iced Devil's Food Cake, Entenmann's Milk Chocolate Chip Cookies, Entenmann's New York Style Crumb Cake, Entenmann's Original Recipe Chocolate Chip Cookies, Entenmann's Party Cake, Entenmann's Rainbow Pop'ems,  Entenmann's Raisin Loaf Cake, Entenmann's Raspberry Danish Twist, Entenmann's Red Velvet Iced Cake, Entenmann's Sour Cream Loaf Cake,**

1 **Entenmann's Thick Fudge Iced Golden Cake, Entenmann's Vanilla Bean Square Cake, and Entenmann's Walnut Danish Ring** – because like the purchased Soft'ees, these products' labels say the product is "fresh" and "baked daily." Given the relative location of these words, the labels can be read as "baked fresh daily" which is false and misleading. The use of the word "fresh" on the labels also implies that the products are unprocessed and unpreserved when in fact the products contain chemical preservatives and are intended to remain on store shelves for weeks. As a result, the labels are false and misleading. SAC ¶¶ 205-217.

- **Thomas' 100% Whole Wheat Bagel Thins, Thomas' Everything Bagel Thins, Arnold's 100% Whole Wheat Bread, Arnold's 12 Grain Bread and Arnold's Healthy Multi Grain Bread** – because these products, like the purchased Thomas' Plain Bagel Thins use the American Heart Association "heart-check mark" which is an undisclosed paid endorsement and which the Food and Drug Administration has determined is an unlawful and misleading practice. SAC ¶¶ 218 – 227.

In the prior order on Bimbo Bakeries's motion to dismiss, I rejected the majority of Bimbo Bakeries's arguments, concluding that plaintiffs had adequately alleged with required particularity: (i) their claims sounding in fraud under 9(b); (ii) injury and reasonable reliance on Bimbo Bakeries's misrepresentations; (iii) the claim that the use of the AHA heart-check mark is misleading and illegal; (iv) the express or implied nutrient claims regarding "whole grains" as well as the "excellent" and "good" source of fiber claims; (v) the allegedly misleading "fresh" claim based on the use of preservatives and contemplated long-shelf life; (vi) that the use of coloring violated the standard of identity for bread; and (vii) that the use of soy-flour made the "100% Whole Wheat" representation illegal and misleading. *See* Docket No. 38, September 25, 2013 Order.

With respect to the Substantially Similar Products, Bimbo Bakeries challenged plaintiffs' ability to sue on products they had not purchased. Bimbo Bakeries argued that the labels from its various products differed over time and in geographic area and, therefore, plaintiffs could not demonstrate whether the labels on the Substantially Similar Products violated the law in similar

4

ways to the purchased products. Because plaintiffs identified the exact terms and representations they challenged in each of the products, I held that the allegations were sufficient for pleading purposes. I noted that whether a particular label for a Substantially Similar Product differed materially from one on the purchased product was more appropriately addressed on class certification. *Id*. at 16-17.

I also dismissed with prejudice the unjust enrichment claim and dismissed with leave to amend the CLRA claim as to the Substantially Similar Products in order to allow plaintiffs to give adequate notice under the CLRA (Cal. Civ. Code § 1782(a)) of their intent to sue on those products. *Id*. at 19-20.

Plaintiffs filed the Second Amended Complaint after providing the CLRA notice on the Substantially Similar Products on November 4, 2013. Bimbo Bakeries filed a motion to dismiss, reasserting their argument that plaintiffs should not be able to pursue their claims on the Substantially Similar Products because the Substantially Similar Products are not identical to the Purchased Products.

## DISCUSSION

### I. WHETHER BIMBO BAKERIES'S MOTION IS PROCEDURALLY PROPER

Plaintiffs argue that Bimbo Bakeries's motion should be denied because it is an improper motion to reconsider not filed in compliance with Civil Local Rule 7-9.[1] As noted above, in my prior order I rejected Bimbo Bakeries's argument and held that plaintiffs could sue on the unpurchased "Substantially Similar Products." However, as the case law applicable to this and other numerous other food misbranding cases pending in the Northern District of California (the "District") is rapidly developing and Bimbo Bakeries relies on cases decided since the Court

---

[1] Under Civil Local Rule 7-9 leave of court is required before a motion for reconsideration is allowed, and leave is granted up on a showing that: (1) "a material difference in fact or law exists from that which was presented to the Court before entry of the interlocutory order for which reconsideration is sought. The party also must show that in the exercise of reasonable diligence the party applying for reconsideration did not know such fact or law at the time of the interlocutory order; or (2) The emergence of new material facts or a change of law occurring after the time of such order; or (3) A manifest failure by the Court to consider material facts or dispositive legal arguments which were presented to the Court before such interlocutory order."

5

issued its prior Order, the Court will review Bimbo Bakeries's motion on the merits.

## II. WHETHER PLAINTIFFS CAN PROCEED AGAINST THE SUBSTANTIALLY SIMILAR PRODUCTS

Bimbo Bakeries argues that plaintiffs do not have standing to pursue their claims for the unpurchased products because plaintiffs failed to show that the unpurchased products are *physically* sufficiently similar to the Purchased Products, which is the standard Bimbo Bakeries contends is required by the case law in this District. I disagree with the Bimbo Bakeries's analysis of the cases and the conclusion it reaches.

A bit of background is in order. The genesis for treating standing more expansively in the class action context arises from the Supreme Court's decision in *Gratz v. Bollinger,* 539 U.S. 244 (2003). There, in reviewing the certification of a class action challenging the use of race in admissions, the Court held that a student had standing to challenge race-based admissions criteria for both freshmen and transfer applicants even though he had only applied as a freshman. The Court found standing because "the University's use of race in undergraduate transfer admissions does not implicate a significantly different set of concerns than does its use of race in undergraduate freshman admissions." *Id.* at 265. Although the student alleged that he intended to apply to transfer if the discriminatory admissions system ended, the majority's analysis focused on the similarity of the admissions criteria for transfers and freshmen. *Id*. at 263-67, 283. Considering the purposes of the class action tool, the Court concluded that plaintiff's "personal stake, in view of both his past injury and the potential injury he faced at the time of certification, demonstrates that he may maintain this class-action." *Id*. at 268.

The Ninth Circuit, consistent with *Gratz*, has cautioned courts that when addressing standing in the context of a class action, in "determining what constitutes the same type of relief or the same kind of injury, we must be careful not to employ too narrow or technical an approach. Rather, we must examine the questions realistically: we must reject the temptation to parse too finely, and consider instead the context of the inquiry." *Armstrong v. Davis*, 275 F.3d 849, 867

(9th Cir. 2001) *abrogated on other grounds by Johnson v. California*, 543 U.S. 499, 504-05 (2005). In *Armstrong*, the court found that the named plaintiffs had standing to represent a class of disabled persons because they established the same injury—discrimination that resulted in the denial of a service—even though the absent class members' underlying disabilities and exact harms were different. *Id*.

Judges in this District have analyzed differently the questions of whether and under what circumstances in class actions plaintiffs should be allowed to pursue consumer protection claims for products they have not purchased. Some have found that plaintiffs are limited to pursuing consumer protection claims only for those products the name plaintiffs personally purchased. *See, e.g.*, *Ivie v. Kraft Foods Global, Inc.*, Case No. C-12-02554-RMW, 2013 U.S. Dist. LEXIS 25615 (N.D. Cal. Feb. 25, 2013); *Larsen v. Trader Joe's Co.*, No. C 11-05188 SI, 2012 U.S. Dist. LEXIS 162402 (N.D. Cal. June 14, 2012). Others have determined that the questions are more appropriately analyzed under Rule 23(a)'s requirements and not one of standing. *See, e.g.*, *Lilly v. Jamba Juice Co.*, Case No. 13-cv-02998-JST, 2013 U.S. Dist. LEXIS 163911 (N.D. Cal. Nov. 18, 2013); *Clancy v. Bromley Tea Co.*, Case No. 12-cv-03003-JST, 2013 U.S. Dist. LEXIS 112722 (N.D. Cal. Aug. 9, 2013). And still others have considered the questions as one of standing, which needs to be addressed at the inception of the case. *See, e.g.*, *Miller v. Ghirardelli Chocolate Co.*, Case No. C 12-04936 LB, 912 F. Supp. 2d 861 (N.D. Cal. 2012).

In both of the latter cases, the opinions identify various factors showing "substantial similarity" between the purchased and unpurchased products. "Substantial similarity" has been found when the products sued over are physically similar, *Colucci v. ZonePerfect Nutrition Co.*, Case No. 12-2907-SC, 2012 U.S. Dist. LEXIS 183050 (N.D. Cal. Dec. 28, 2012); where differences between the purchased products and the unpurchased products do not matter because the legal claim and injury to the consumer is the same, *Astiana v. Dreyer's Grand Ice Cream, Inc.*, Case Nos. C-11-2910 EMC; C-11-3164 EMC, 2012 U.S. Dist. LEXIS 101371 (N.D. Cal. July 20, 2012); and where *both* the legal claims/injury are similar and the products themselves are similar. *See, e.g.*, *Lanovaz v. Twinings N. Am., Inc.*, Case No. C-12-02646-RMW, 2013 U.S. Dist. LEXIS 74250, * 7 (N.D. Cal. May 23, 2013).

7

Plaintiffs argue here that they should be allowed to pursue their claims on the unpurchased products because the legal claim and resulting injury to consumers from Bimbo Bakeries's mislabeling are "substantially similar," even if there are physical differences between the purchased and unpurchased products in terms of appearance and composition. Bimbo Bakeries argues that there must be *physical* similarities between the products in order to confer standing on plaintiffs to challenge mislabeling claims on unpurchased products. In this regard, Bimbo Bakeries urges that the decisions in this District show, although they do not explicitly state, that cases involving the misbranding of food are different than other types of cases involving standing under *Gratz*, and require for standing purposes that the Substantially Similar Products be themselves identical to the Purchased Products.

Bimbo Bakeries relies heavily on the recent decision in *Wilson v. Frito-Lay N. Am.*, Case No. 12-1586 SC, 2013 U.S. Dist. LEXIS 153136 (N.D. Cal. Oct. 24, 2013). However *Wilson* recognizes that in order to determine substantial similarity, courts have considered "factors" including "whether the challenged products are of the same kind, whether they are comprised of largely the same ingredients, and whether each of the challenged products bears the same alleged mislabeling." *Id*. *11. *Wilson* did not require that the products be virtually identical in order to meet the "substantial similarity" test, or require that any of the specific factors identified be present in order for plaintiffs to pursue claims on unpurchased products.[2]

In *Miller v. Ghirardelli Chocolate Co.*, Case No. C 12-04936 LB, 912 F. Supp. 2d 861 (N.D. Cal. 2012), cited by the Bimbo Bakeries, the court found "persuasive" the approach that "considers whether there are substantial similarities in the accused products and whether there are similar misrepresentations across product lines." *Id*. at 870. The opinion notes that in cases

---

[2] The court in *Wilson* dismissed plaintiffs' claims not because the products were not physically similar, but because plaintiffs' failed to adequately plead substantial similarity between the labels on the potato chips, cheese puffs, and corn chips. "Plaintiffs take no time to explain how each of the eighty-five new Products are actionably mislabeled, and the Court is not inclined to pore over each ingredient list and guess. The Court instructed Plaintiffs to be clear about why any Non-Purchased Products were similar enough to the Purchased Products for standing purposes. . . . Plaintiffs fail to do so." *Id*., 2013 U.S. Dist. LEXIS 153136 at *13. The Court noted differences between the labels, particularly differences in the use of "natural," and refused to "assume that every one of the Non-Purchased Products' labels is actionable in the same way as the more fully described Purchased Products' labels are." *Id*.

8

"[w]here product composition is less important, the cases turn on whether the alleged misrepresentations are sufficiently similar across product lines." *Id*. at 869. It finds that plaintiff (who purchased white baking chips) did not have standing to pursue claims over other white "chocolate" products (drink mix, wafers, flavorings) because not only were the products different but the labeling on the products was "very different" and the misrepresentations "vary widely." *Id*. at 870-71. It concludes that given the differences between the products, the differences between the labels on the products, and the differences between the claims regarding the various misrepresentations, standing did not exist to pursue claims based on the unpurchased products. *Miller,* in short, was not a case where "similar products *or* similar misrepresentations injured Miller in the same way as the unnamed plaintiffs." *Id*. at 872 (emphasis added).[3]

Bimbo Bakeries also relies on *Bruton v. Gerber Prods. Co.*, Case No.: 12-CV-02412-LHK, 2013 U.S. Dist. LEXIS 129241 (N.D. Cal. Sept. 6, 2013). That order dismissed claims for unpurchased products with leave to amend so that plaintiff could allege that the products she did not purchase are "substantially similar to those that she did purchase, and also that the two categories of products contained substantially similar misrepresentations." *Id*. at * 42 (emphasis added). In a subsequent January 2014 opinion, granting in part and denying in part the motion to dismiss plaintiff's Second Amended Complaint, the court dismissed claims regarding specific categories of unpurchased products that she determined were not "substantially similar to any of the Purchased Products." *See Bruton v. Gerber Prods. Co.*, 2014 U.S. Dist. LEXIS 5493, *30-32 (N.D. Cal. Jan. 15, 2014) (LHK).[4] That order did not analyze whether the claims asserted against the unpurchased and non-similar products were identical in terms of the injury suffered by plaintiff and other purchasers, and dismissed unpurchased products because of their physical differences

---

[3] In a subsequent case Judge Beeler distinguished *Miller* as a case where the plaintiff's "injury was not sufficiently similar to the injury suffered by purchasers of other products," and allowed plaintiff to pursue claims based on misrepresentations on unpurchased products where "[t]he misrepresentations across the product lines are identical . . . and those common misrepresentations are the crux of Plaintiffs' case." *Brown v. Hain Celestial Group, Inc.*, 913 F. Supp. 2d 881, 892 (N.D. Cal. 2012).

[4] In *Bruton*, plaintiff purchased baby food puree, smoothies, yogurt blends, crunchies snack, fruit puffs, wagon wheels, animal crackers and fruit strips and sought to pursue claims for unpurchased beverages, cut up pieces of fruits and vegetable, dehydrated fruits and vegetables, squeezable fruit products, other baby food purees, other cookies, cereal bars and yogurt melts.

9

from the purchased products.

Finally, in *Lanovaz v. Twinings N. Am., Inc.*, Case No. C-12-02646-RMW, 2013 U.S. Dist. LEXIS 74250 (N.D. Cal. May 23, 2013), also relied on heavily by Bimbo Bakeries, the plaintiff sought to pursue claims related a health and nutrient claim made on the labels of the 53 varieties of tea ("a natural source of antioxidants") and on defendant's website. The plaintiff had purchased six out of 51 varieties of black and green teas, and neither of the red teas. The court concluded that "the claims for 51 of the varieties of tea are based upon the exact same label describing the same product, camellia sinensis, the court finds that Lanovaz has standing to sue on behalf of the purchasers of these teas . . . . Red tea, on the other hand, is made from a different plant and is thus a significantly different product. Therefore, the court strikes Lanovaz's claims related to the two varieties of red tea because they are not sufficiently identical." *Id*. at *7.[5] In *Lanovaz*, the distinction between the products – tea plants on one hand and the non-tea plant on the other – was likely significant because of the nature of the claim; challenging the labels' antioxidant claims.

In other cases, not mentioned or not as heavily relied on by Bimbo Bakeries, judges in this District have continued to look at the same factors – similarity in products, similarity in claims, similarities in injury to consumers – to determine which unpurchased products can be included by plaintiffs in their in class actions.

In *Kane v. Chobani, Inc.*, Case No.: 12-CV-02425-LHK, 2013 U.S. Dist. LEXIS 134385 (N.D. Cal. Sept. 19, 2013), plaintiff purchased various flavors of Greek yogurt and challenged representations on defendant's labels regarding listing evaporated cane juice as well as "no sugar added" and "all natural" claims. The court dismissed allegations regarding substantially similar products because the complaint did not plead with specificity which products plaintiffs allegedly contained each representation and for which products the representations were false (*id*. at * 37),

---

[5] Defendant, on a motion for summary judgment, again challenged plaintiff's standing to pursue claims for packages of tea she did not purchased. The Court rejected that challenge, affirming that plaintiff had standing "to bring substantially identical claims on behalf of a class and that Lanovaz's claims related to the 45 varieties of tea she did not purchase were allegedly substantially identical," and concluding that since "Defendant has not presented any evidence to support changing this position and these issues are better resolved under Rule 23." *Lanovaz v. Twinings N. Am., Inc.*, 2014 U.S. Dist. LEXIS 1639, * 32-33 (N.D. Cal. Jan. 6, 2014) (RMW).

and because they did not plead facts showing that "the *products* Plaintiffs did not purchase are 'substantially similar' to those that they did." *Id*. at * 38 (emphasis in original). A few days later in *Brazil v. Dole Food Co.*, 12-CV-01831-LHK, 2013 U.S. Dist. LEXIS 136921 (N.D. Cal. Sept. 23, 2013), the same judge recognized that the "point of the substantially similar approach" was to "ensure that the plaintiff is seeking to represent only those individuals who have suffered essentially the same injury as the plaintiff." *Id*. In *Brazil*, the purchased products included frozen berries, mixed berries, mixed fruit, mixed fruit in fruit juice, fruit smoothies, mixed fruit in gel, and fruit in light syrup. The thirty other substantially similar products included other frozen fruit, other fruit in fruit juice, other smoothies and other fruit in gel. Case No. 12-1831, Docket No. 60, ¶ 4. Denying the motion to dismiss the claims regarding the substantially similar products, the order recognized that the products themselves were substantially similar (as they are mostly different flavors or varieties of the purchased products), but focused on the fact that the injury plaintiff suffered when he purchased the various products "is not meaningfully distinguishable" from the injury suffered by an individual who is misled by defendant's labeling on other products. *Id*. at *25-26.

Similarly, in *Werdebaugh v. Blue Diamond Growers, Case No*.: 12-CV-02724-LHK, 2013 U.S. Dist. LEXIS 144178 (N.D. Cal. Oct. 2, 2013), the same court allowed a plaintiff who had purchased only chocolate almond milk, to pursue claims based on defendant's use of evaporated cane juice and "all natural" labels for unpurchased products, including flavored almonds, 16 other varieties of almond milk, and nut chips. In finding that plaintiff had standing to pursue claims on the unpurchased products, the opinion focused on the nature of plaintiff's alleged injuries as the result of defendant's mislabeled products, and that plaintiff sought only to represent other consumer with the same injuries that occurred as a result of defendant's same misrepresentations. *Id*. at * 13-14.[6]

Along the same lines, *Colucci v. ZonePerfect Nutrition Co.*, Case No. 12-2907-SC, 2012

---

[6] The court noted in a footnote that defendant had not challenged the adequacy of the allegations in the complaint regarding whether the unpurchased products were "substantially similar." *Id*. at 51, fn. 8.

11

U.S. Dist. LEXIS 183050 (N.D. Cal. Dec. 28, 2012), concluded that the "critical inquiry" is whether there is sufficient similarity between the products purchased and not purchased, but notes that other courts have considered additional factors, including "whether the challenged products are of the same kind, whether they are comprised of largely the same ingredients, and whether each of the challenged products bears the same alleged mislabeling." *Id.*, 2012 U.S. Dist. LEXIS 183050 at* 11. The court found that was "more than enough similarity" between the purchased nutrition bar and the 19 others not purchased because the "products are all of a single kind," they shared a uniform size and shape, and the differences in flavor and ingredients did not undermine the more striking similarities given that "six of the nine challenged ingredients appear in all twenty nutrition bar flavors." *Id*. *11. The opinion notes that "most importantly," the labels on all twenty of the bars had the same "All-Natural Nutrition Bars" representation that plaintiff challenged. *Id*.

*Astiana v. Dreyer's Grand Ice Cream, Inc.*, Case Nos. C-11-2910 EMC; C-11-3164 EMC, 2012 U.S. Dist. LEXIS 101371 (N.D. Cal. July 20, 2012) considered the "critical inquiry" to be "whether there is sufficient similarity between the products purchased and not purchased." *Id*. *33. The court looked to both similarities between the purchased and unpurchased products (noting that they were all types of ice cream) and the similarities between the labels on the products upon which their claims are based. *Id*. * 37 ("Plaintiffs are challenging the same kind of food products (i.e., ice cream) as well as the same labels for all of the products — i.e., 'All Natural Flavors' . . . and 'All Natural Ice Cream'. . . ."). In the end, the court determined that the fact that the products had different ingredients was "not dispositive as Plaintiffs are challenging the same basic mislabeling practice across different product flavors." *Id*.; *see also Koh v. S.C. Johnson & Son, Inc.*, No. C-09-0927 RMW, 2010 U.S. Dist. LEXIS 654 (N.D. Cal. Jan. 6, 2010) (allow plaintiff to sue for purchased product (Shout) and unpurchased product (Windex) because the challenged misrepresentation on the labels was the same on both products; also recognizing that "there is no brightline rule that different product lines cannot be covered by a single class.").

The cases that treat the "substantially similar" products issue in a class action case as one more appropriately determined under Rule 23's requirements likewise consider whether the claims

12

with respect to purchased products are "reasonably co-extensive" with the claims regarding unpurchased products. *See, e.g., Clancy v. Bromley Tea Co.*, Case No. 12-cv-03003-JST, 2013 U.S. Dist. LEXIS 112722, * 18 (N.D. Cal. Aug. 9, 2013); *Chavez v. Blue Sky Natural Bev. Co*, Case No. C 06-6609 VRW, 268 F.R.D. 365, 378 (N.D. Cal. 2010) ("although plaintiff did not purchase each type of beverage carrying the misleading label, his claims are 'reasonably coextensive with those of absent members.'"). Whether a claim for purchased product is co-extensive with a claim for an unpurchased product does not necessarily turn on whether a product is physically similar to an unpurchased one. It also depends upon the nature of the claim at issue and the nature of the injury suffered by the consumers who purchased the allegedly mislabeled products. For example, *Ogden v. Bumble Bee Foods*, LLC, 292 F.R.D. 620 (N.D. Cal. 2013) considered what class certification discovery a plaintiff in a product mislabeling case was entitled to for products plaintiff did not purchase. The court concluded that plaintiff would be entitled to discovery for all products that used an Omega-3 label that was "identical" to the label on the products she purchased (in support of the claim regarding the Omega-3 representation) *and* she was entitled to discovery on products that had "nearly identical ingredients" to the products she purchased (in support of her less specific nutrient and health claims). *Id*. at 629. Contrary to defendant's characterization, the court did not find that products without nearly identical ingredients would not satisfy the substantially similar test.

Similarly, in determining whether to strike class action allegations regarding products the named plaintiffs did not buy in *Trazo v. Nestlé USA, Inc.*, Case No.: 5:12-CV-2272 PSG, 2013 U.S. Dist. LEXIS 113534 (N.D. Cal. Aug. 9, 2013), the same judge described the "sufficient similarity" test as one that "allows claims to proceed, even if the plaintiff did not actually buy the other products included in the class, if 'product composition is less important' and 'the alleged misrepresentations are sufficiently similar across product lines.' Sufficient similarity is satisfied when a combination of these factors are satisfied: the challenged products are of the same kind, they are comprised of largely the same ingredients, and they bear the same alleged mislabeling." *Id*. at 41 – 42. The court evaluated sufficient similarity with regard to each type of alleged mislabeling at issue and concluded that where the "determination of claims depend on [] context-

13

specific analysis, requiring information about the food composition or actual labels" that had not been presented to the court, those claims could not be pursued on behalf of unpurchased products. *Id*. at *44-45; *see also Stephenson v. Neutrogena Corp*., No. C 12-0426 PJH, 2012 U.S. Dist. LEXIS 105099, *3 (N.D. Cal. July 27, 2012) (characterizing the question as whether "the purchased product(s) were similar enough to the unpurchased products such that an individualized factual inquiry was not needed for each product").

Recognizing the varying analyses in this District regarding substantially similar products in class actions at the pleading stage, I conclude that the best approach is one which focuses on whether the type of claim and consumer injury is substantially similar as between the purchased and unpurchased products. That determination necessarily focuses on whether the resolution of the asserted claims will be identical between the purchased and unpurchased products. For example, a claim that products are illegally mislabeled as a matter of law because the labels fail to disclose something required by a statute or regulation can be resolved without a context-specific analysis of each product's label. The label is either illegal or it is not. That the products bearing the challenged label may be different – or that the labels themselves are different in other respects – is immaterial to the determination of whether the label is in fact illegal. On the other hand, a claim that a reasonable consumer would be misled by a representation on a label may well require a context-specific analysis of the appearance of the label, the misrepresentation's placement on the label, and other information contained on the label. In those circumstances, a consumer may only be allowed to pursue those claims for products with identical labels. Finally, where the actual composition or appearance of the product is legally significant to the claim at issue, the consumer may only be allowed to pursue claims for products with identical product composition and/or appearance.

In light of that approach, this Order will now review each of the five categories of claims at issue on this motion.

### A. Good Source and Excellent Source Nutrient Claims

Plaintiffs argue that Bimbo Bakeries's use of "good source" and "excellent source" of whole grains on the labels of certain products violates the FDA regulations for nutrient claims

14

because the FDA has not recognized a daily value for whole grains. SAC ¶¶ 180-184. They purchased three varieties of whole wheat breads which had "good" or "excellent source claims" and seek to pursue claims for a fourth variety of bread (Sara Lee Soft & Smooth 100% Whole Wheat Bread) which they did not purchase. *Id*. ¶¶ 185-86. The injury allegedly suffered by the plaintiffs is identical to the injury suffered by consumers who purchased the other type of bread. Moreover, potential differences between the products' labels or compositions would not impact the legal analysis of the claim. Therefore, plaintiffs have standing to pursue this claim for the unpurchased product.

### B. Added Coloring Claim

Plaintiffs allege that Bimbo Bakeries violates the FDA's standard of identity for bread by adding coloring to the purchased product, Bimbo Original Toasted Bread. SAC ¶¶ 188-89. Plaintiffs seek to pursue the identical claim for ten other products which they did not purchase, but like the Bimbo Original Toasted Bread are identified as "bread" and contain coloring. *Id*. ¶ 190. The injury allegedly suffered by plaintiffs is identical to the injury suffered by consumers who purchased the other products. Differences in the products' labels or compositions do not sufficiently differentiate the claim with respect to the purchased product to the claims with respect to the unpurchased products. Determination of the result on the merits may well be different, but at the pleading stage plaintiffs have adequately alleged substantial similarity.

### C. 100% Whole Wheat/Soy Flour Claim

Plaintiffs argue that it is illegal to use non-whole wheat flour in products labeled as "whole wheat." SAC ¶¶ 193-94. They purchased two types of whole wheat bread labeled as "100% Whole Wheat" but contain soy flour, and want to pursue claims for thirteen additional products that are likewise labeled as "100% Whole Wheat" which also contain soy flour. Again, the purported injury suffered by the plaintiffs is identical to the injury suffered by consumers who purchased the other "100% Whole Wheat" baked goods. Moreover, potential differences between the products' labels or compositions would not impact the legal analysis of the claim. Plaintiffs have standing for the unpurchased products.

### D. American Heart-Check Claim

Plaintiffs allege that the use of the American Heart Association's "Heart-Check" mark without a disclosure that the mark is a paid "endorsement," is illegal and misleading as a matter of law because that mark is considered a paid endorsement under FDA authority. SAC ¶¶ 211-217. They purchased at least one product bearing the mark and seek to pursue claims for five other products which also bear the mark. *Id*. ¶¶ 218-219. The injury suffered by the plaintiffs is identical to the injury suffered by consumers who purchased the other goods with the Heart-Check mark. Moreover, potential differences between the products' labels or compositions would not impact the legal analysis of the claim. Plaintiffs may pursue claims concerning the unpurchased products.

### E. Fresh and Baked Daily Claims

Finally, plaintiffs purchased Bimbo Bakeries's "Soft'ees" product which bore a label of "fresh" and "baked daily." Plaintiffs argue that because of the "relative locations" of these words, the label can be read as "baked fresh daily," which is false, misleading and unlawful. SAC ¶¶ 197-199. Plaintiffs also claim that the term "fresh" implies the products are unprocessed and unpreserved, when they are processed and preserved. *Id*. ¶ 200-201. Plaintiffs assert the use of the work "fresh" where a product is subject to any form of preservation is illegal under an FDA regulation. *Id*. ¶ 202. Plaintiffs also argue that the use of the terms "fresh" and "baked daily" on the labels is misleading and hence unlawful because the products are not delivered daily and sit on store shelves for weeks until they reach their extended sell by date. *Id*. ¶ 206.

Plaintiffs seek to pursue these claims not only for the "Soft'ees," which are a form of donut, but also for 43 other products, including cakes, cream puffs, other pastries, pies and cookies. Here, I find a problem with plaintiffs' ability to pursue their various claims for the unpurchased products. First, consideration of each product's label is required because, according to the SAC, it is the "relative location" of the words "fresh" and "baked daily" that make the labels false, misleading, and unlawful. Yet the complaint does not plead that all labels for each of the unpurchased products has an identical "relative location" of the allegedly actionable terms and the labels are not attached. Second, fact-specific analyses of each product will be required; namely

16

determination of each product's ingredients and formation to determine whether each is in fact "processed and preserved" to such a level that the use of the term "fresh" becomes misleading. Finally, although these products are all "baked goods," differences in the products themselves (cake vs. pies, pastries vs. cookies) could impact whether a "reasonable consumer" would be misled by the labels' use of the terms "fresh" and "baked daily." In sum, the numerous contextual determinations needed regarding each product's label, ingredients, and appearance defeat plaintiffs' attempt to bring their "fresh" and "baked daily" claims with respect to the unpurchased products. Plaintiffs lack standing to pursue the "fresh" and "baked daily" claims regarding the unpurchased products.

## CONCLUSION

For the foregoing reasons, the plaintiffs may pursue their claims with respect to unpurchased products for their whole grain nutrient claim, added coloring claim, 100% Whole Wheat claim, and use of the Heart-Check mark claim. Plaintiffs may not pursue their "fresh" and "baked daily" claims for any produce other than the purchased Soft'ees. Bimbo Bakeries's motion to dismiss, therefore, is GRANTED in part and the "fresh" and "baked daily" claims are DISMISSED WITH PREJUDICE as to the unpurchased products. Bimbo Bakeries shall answer within 20 days.

**IT IS SO ORDERED**.

Dated: March 13, 2014

WILLIAM H. ORRICK
United States District Judge