Ben F. Pierce Gore (SBN 128515)
PRATT & ASSOCIATES
1871 The Alameda, Suite 425
San Jose, CA 95126
Telephone: (408) 429-6506
pgore@prattattorneys.com

Keith M. Fleischman (admitted *pro hac vice*)
Bradley F. Silverman (admitted *pro hac vice*)
THE FLEISCHMAN LAW FIRM, PLLC
565 Fifth Avenue, Seventh Floor
New York, New York 10017
Telephone: (212) 880-9571
keith@fleischmanlawfirm.com
bsilverman@fleischmanlawfirm.com
*Attorneys for Plaintiffs*

Mark C. Goodman (Bar No. 154692)
Ethan A. Miller (Bar No. 155965)
David W. Skaar (Bar No. 265377)
HOGAN LOVELLS US LLP
3 Embarcadero Center, Suite 1500
San Francisco, California 94111
Telephone: + 1 (415) 374-2300
mark.goodman@hoganlovells.com
ethan.miller@hoganlovells.com
david.skaar@hoganlovells.com
*Attorneys for Defendant*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALEX ANG and LYNNE STREIT, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>BIMBO BAKERIES USA, INC.,<br><br>Defendant. | Case No. 13 Civ. 1196 (WHO) (NC)<br><br>**JOINT STATEMENT REGARDING DISCOVERY DISPUTES**<br><br>Judge:  Hon. Nathanael M. Cousins |

Plaintiffs Alex Ang and Lynne Streit (collectively, "Plaintiffs") and defendant Bimbo Bakeries USA, Inc. ("Defendant" or "BBUSA") respectfully submit this joint statement.

# PLAINTIFFS' POSITIONS[1]

**Pre-class period discovery**: The statute of limitations is only a limitation on liability and not on relevance. *See, e.g.*, *Ogden v. Bumble Bee Foods, LLC*, 292 F.R.D. 620, 628 (N.D. Cal. 2013).[2]  The relevant discovery period with respect to each of the six unlawful marks or representations at issue begins shortly before the time when Defendant first made the decision to incorporate that mark or representation on their products. That information is in Defendant's sole possession. However, it is known that each of these practices began prior to the class period. In an effort to focus discovery, Plaintiffs requested that Defendant identify when it first decided to incorporate these marks and representations on its products.

Defendant refused, arguing that efforts to determine these time periods would be unduly burdensome for the same reason it contends pre-class period discovery, in general, would be burdensome. Defendant applies a false logic, asserting that, a determination of when the marks or representations were first used would require review of every single label of every single product it has ever made. However, these marks and representations did not randomly appear on its products. Rather, persons with authority made a *decision* to use these marks and representations. Moreover, within this industry, these decisions are generally made only after review by regulatory or legal experts on food labelling. Determining the relevant time periods should only require inquiry to specific personnel regarding when the *decisions* were made to use the specific marks or representations at issue.[3]  Further, Defendant makes no other showing of undue burden.

In the absence of this basic information, Plaintiffs request that, at this time, Defendants produce responsive information going back eight years. Based on experience in other food misbranding cases, counsel has found this to be a good starting point for obtaining key information. The relevant periods can be adjusted as Plaintiffs obtain more specific information

---

[1]   Plaintiffs incorporate by reference their prior submissions to the Court (Dkt. ## 57, 65, 68).
[2]   Tellingly, Defendant claims that it has no documents created during the class period that are responsive to many of Plaintiffs' discovery requests, but does not dispute the existence of such documents created prior to the class period.
[3]   As an example, Defendant does not need to check every label of every product ever made to see if it contains an American Heart Association "Heart-Check Mark." It only needs to determine when the *decision* was made to include the Heart-Check Mark on its products.

about the timing of key decisions.

Defendant also inaccurately asserts that when and why these decisions were made is irrelevant because Plaintiffs supposedly previously argued that intent is not an element of any of its claims.  Plaintiffs have *never* argued that intent is not an element of all of its claims; only that it is not an element of one claim under the "unlawful prong" of the UCL.  *See* Dkt. # 27 at 11-13.[4]

**Sales information**:[5]  In order to calculate damages of the class, and to demonstrate that Defendant was able to charge higher prices or increase total sales when the unlawful representations or marks were added to product labels (Defendant's motive and intent), Plaintiffs require, and are entitled to, specific information relating to sales, pricing, and revenue.  *See Brazil v. Dole Packaged Foods, LLC*, No. C12-01831 LHK (HRL), Slip. Op. at 2 (N.D. Cal. Apr. 1, 2014) (Dkt. #123) (compelling production of the same type of information).

The hearing before the Court on April 16, 2014 was the first time Defendant asserted that it had no documents relating to retail pricing.  That assertion was not made in any discovery responses.  It is also difficult to believe that the largest baked goods company in the United States has no information on retail pricing.[6]  Food manufacturers of this size regularly deal with retailers on everything from preferred shelving locations to signage to competitive pricing.  Further, the prices Defendant charges retailers is directly tied to prices consumers are willing to pay.

Even if this assertion is accurate, wholesale information is also relevant.  *See Johns v. Bayer Corp.*, 2012 WL 1520030, at *3-5 (S.D. Cal. 2012).  Among other things, wholesale pricing can also be used as a "floor" for calculating class damages.  Information on the number of wholesale units sold can be used as an indirect means of calculating total sales to the class.  Also, under Plaintiffs' statutory claims, restitutionary disgorgement is available.  *Id* at *5 ("[B]ecause [defendant's] profits for its [products] would seemingly have originated from the class members' purchases of the products, Plaintiffs' contention that they are seeking restitutionary disgorgement

---

[4]   Indeed, the word "intent" is in the first line of the False Advertising Law and Judge Orrick has applied Rule 9(b) to all of Plaintiffs' claims.  *See* Cal. Bus. & Prof. § 17500; Dkt. # 38 at 3-6.
[5]   Plaintiffs only seek sales information for the class period and not prior periods.
[6]   Defendant's brands include Sara Lee, Thomas', Arnold, Freihofer's, Boboli, Entenmann's, Orowheat, Stroehmann, Earthgrains, Ball Park, Tia Rosa, Francisco, and Mrs. Baird's.

1  of [defendant's] profits is arguably accurate [and] . . . Plaintiffs should not be precluded from
2  obtaining the evidence which supports a theory of restitutionary disgorgement . . .").
3      Additionally, production of this information should not be delayed. There has been no
4  bifurcation of discovery and this information is relevant to intent and motive. Plaintiffs will also
5  be required to comply with *Comcast Corp. v. Behrend*, 133 S. Ct. 1426 (2013) and make a
6  showing regarding damages in order for a class to be certified. Without this information, Plaintiffs
7  cannot show class damages or how they would calculate such damages.
8      **<u>Products not sold in California</u>**: Judge Orrick has expressly ruled on which products
9  remain at issue. Dkt. # 58. In neither of Defendant's two motions to dismiss, did it argue that
10 claims relating to certain products may not be asserted because they were not sold in California.
11 Now, Defendant is effectively asking the Court to dismiss claims relating to these products in
12 contradiction of Judge Orrick's prior Orders. Discovery relating to these products should not be
13 excluded. *First*, Defendant has made no factual showing that they were not sold in California.
14 *Second*, regardless, information relating to these products is still relevant. These products contain
15 the exact same unlawful marks and representations as the products sold in California. When and
16 why these marks and representations came to appear on the labels of these products is relevant.[7]

## DEFENDANT'S POSITIONS

**A. The Burden Of Pre-Class Period Discovery Far Outweighs Any Possible Benefit**

19     The Court has inherent authority to limit discovery where the burden or expense of the
20 discovery outweighs its likely benefit, "considering the needs of the case, the amount in
21 controversy, the parties' resources, the importance of the issues at stake, ***and the importance of***
22 ***the discovery in resolving the issues***." Fed. R. Civ. P. 26(b)(2)(C) (emphasis added). This case is
23 about alleged statutory violations of Business & Professions Code § 17200 *et seq*. (the "UCL"), §
24 17500 *et seq*. (the "FAL") and Civil Code § 1750 *et seq*. (the "CLRA") during a four-year "Class
25 Period." During that period, the labels at issue either violated those statutes or they did not. Thus,
26 aside from evidence of actual purchases of the products, the product labels during the Class Period

---
[7] The decisions to include these marks and representations on these products were likely made by the same persons making decisions regarding the products that were sold in California.

are the key pieces of evidence necessary to establish or refute Plaintiffs' claims. Those labels will be produced.

However, requiring BBUSA to comb records of myriad custodians over an 8 year period (long before the Class Period even began), in search of documents regarding *why* labels that may not even be used during the Class Period were written, would impose an extreme burden that far outweighs any likely benefit. *See Cholakyan v. Mercedes-Benz USA, LLC*, 2011 WL 7575379 at *5-6 (C.D. Cal. Dec. 20, 2011).[8] Because pre-Class Period information is really unnecessary to support any of Plaintiffs' claims, and the burden imposed by such discovery would be immense, the Court should limit Plaintiffs' discovery to the Class Period.

**B.  BBUSA Products Never Sold In California Are Irrelevant**

Discovery relating to products never sold in California must not be allowed. As a matter of law, none of Plaintiffs' six causes of action -- under the UCL, the FAL or the CLRA -- apply to sales or injuries that occur outside of California. *See, e.g., Wilson v. Frito-Lay N. Am., Inc.*, 961 F.Supp.2d 1134, 1147 (N.D. Cal. 2013) ("[w]ith regard to the UCL, FAL, and CLRA, non-California residents' claims are not supported where none of the alleged misconduct or injuries occurred in California"); *Koehler v. Litehouse, Inc.*, 2012 WL 6217635 at *7 (N.D. Cal. Dec. 13, 2012) (nonresidents who purchased products outside California "[did] not have the requisite contacts with California" to justify the extraterritorial application of the UCL, FAL or CLRA).[9] Because the California statutes under which the Plaintiffs have sued do not apply outside California, products that were never sold in California are irrelevant and discovery regarding those

---

[8] *See also Apple Inc. v. Samsung Elecs. Co., Ltd.*, 2012 WL 1511901 at *2, n.6 (N.D. Cal. Jan. 27, 2012) (granting motion for protective order); *MedImmune, LLC v. PDL Biopharma, Inc.*, 2010 WL 2382262 at *1 (N.D. Cal. June 10, 2010) ( "[t]he claimed relevance of this discovery is very attenuated and the likely benefit of the testimony is outweighed by the associated burden and expense").

[9] *See also Norwest Mortgage, Inc. v. The Superior Court of San Diego Cty.*, 72 Cal.App.4th 214 (1999) ("application of the UCL to the claims of Class III members [non-California residents/non-California conduct] would be arbitrary and unfair and transgress due process limitations"); *In re Toyota Motor Corp.*, 785 F.Supp.2d 883, 918 (C.D. Cal. 2011) ("the Court sees no reason to extend the protection of the FAL beyond the plain meaning of the statute to cover statements that are not made 'before the public of this state' and are not sufficiently alleged to be 'from this state'"); *Churchill Vill., LLC v. Gen. Elec. Co.*, 169 F.Supp.2d 1119, 1126-27 (N.D. Cal. 2000) ("with respect to the UCL specifically, section 17200 does not support claims by non-California residents where none of the alleged misconduct or injuries occurred in California").

1   products is unwarranted.

2   **C.   Requests Concerning Sales Information Are Overbroad And Irrelevant**

3   The retail and wholesale pricing, sales, revenues and profit data sought by Plaintiffs are
4   overbroad and irrelevant.  As a threshold matter, any wholesale-level sales are irrelevant because
5   this is not a disgorgement case.  "Two remedies are available to private litigants bringing claims
6   under §§ 17200 or 17500: injunction and restitution."  Stern, William L., BUS. & PROF. C. § 17200
7   PRACTICE (THE RUTTER GROUP), § 4:4 (2013 ed.).  The CLRA provides for various remedies
8   including injunction and restitution, but not disgorgement.  *See id.* at §§ 10:41-53.  It is well
9   established that restitution, if awarded, must be measured by Plaintiffs' loss, not BBUSA's gain.
10  *Madrid v. Perot Systems Corp.*, 130 Cal.App.4th 440, 454 (2005).

11  It follows that the only relevant consideration is what Plaintiffs paid for the products at issue
12  compared to any actual value they received.  *In re POM Wonderful LLC*, 2014 WL 1225184 at *3
13  (C.D. Cal. Mar. 25, 2014).  Since it is undisputed that BBUSA is not a retailer, BBUSA does not
14  realize any revenues or profits from retail sales and, as BBUSA has already told Plaintiffs, in
15  response to Document Request Nos. 30 and 31, during the hearing with the Court and during the
16  meet and confer process, it has no information regarding what the individual class members
17  actually paid for the products.  BBUSA notes that even the receipts produced by Plaintiffs in this
18  case -- apparently the only receipts in their possession -- ***do not reflect any purchases of BBUSA***
19  ***products***.  Moreover, even if, as Plaintiffs appear to contend, BBUSA could access generic retail
20  pricing data for its products, such data would not reflect what Plaintiffs actually paid; *e.g.*, whether
21  Plaintiffs used coupons or took advantage of promotional or discount offers extended by retail
22  establishments.  *See Astiana v. Ben & Jerry's Homemade, Inc.*, 2014 WL 60097 at *12 (N.D. Cal.
23  Jan. 7, 2014) ("prices in the retail market differ and are affected by the nature and location of the
24  outlet in which they are sold").  Since the financial information sought by Plaintiffs does not tend
25  to establish the proper measure of restitution or their actual damages, if any, the Court should deny
26  Plaintiffs' attempted discovery of pricing and sales data.

27

28

1 | Dated: April 30, 2014

Respectfully submitted,

3 |   */s/ Ben F. Pierce Gore*
Ben F. Pierce Gore (SBN 128515)
PRATT & ASSOCIATES
1871 The Alameda, Suite 425
San Jose, CA  95126
Telephone:  (408) 429-6506
Fax:  (408) 369-0752
pgore@prattattorneys.com

Keith M. Fleischman (admitted *pro hac vice*)
Bradley F. Silverman (admitted *pro hac vice*)
THE FLEISCHMAN LAW FIRM, PLLC
565 Fifth Avenue, Seventh Floor
New York, New York 10017
Telephone: (212) 880-9571
Fax:  (917) 591-5245
keith@fleischmanlawfirm.com
bsilverman@fleischmanlawfirm.com

*Attorneys for Plaintiffs*

  */s/ Mark C. Goodman*
Mark C. Goodman (Bar No. 154692)
Ethan A. Miller (Bar No. 155965)
David W. Skaar (Bar No. 265377)
HOGAN LOVELLS US LLP
3 Embarcadero Center, Suite 1500
San Francisco, California 94111
Telephone: + 1 (415) 374-2300
Facsimile: + 1 (415) 374-2499
mark.goodman@hoganlovells.com
ethan.miller@hoganlovells.com
david.skaar@hoganlovells.com

*Attorneys for Defendant*