1   Mark C. Goodman (Bar No. 154692)
    Ethan A. Miller (Bar No. 155965)
2   David W. Skaar (Bar No. 265377)
    HOGAN LOVELLS US LLP
3   3 Embarcadero Center, Suite 1500
    San Francisco, California 94111
4   Telephone: + 1 (415) 374-2300
5   mark.goodman@hoganlovells.com
    ethan.miller@hoganlovells.com
6   david.skaar@hoganlovells.com
7   *Attorneys for Defendant*

8   Ben F. Pierce Gore (SBN 128515)
    PRATT & ASSOCIATES
9   1871 The Alameda, Suite 425
    San Jose, CA 95126
10  Telephone: (408) 429-6506
11  pgore@prattattorneys.com

12  Keith M. Fleischman (admitted *pro hac vice*)
    Bradley F. Silverman (admitted *pro hac vice*)
13  THE FLEISCHMAN LAW FIRM, PLLC
    565 Fifth Avenue, Seventh Floor
14  New York, New York 10017
15  Telephone: (212) 880-9571
    keith@fleischmanlawfirm.com
16  bsilverman@fleischmanlawfirm.com
    *Attorneys for Plaintiffs*

17

18              IN THE UNITED STATES DISTRICT COURT

19            FOR THE NORTHERN DISTRICT OF CALIFORNIA

20  ALEX ANG and LYNNE STREIT,
21  individually and on behalf of all others          Case No. 13 Civ. 1196 (WHO) (NC)
    similarly situated,
22                          Plaintiffs,              **JOINT STATEMENT REGARDING**
                        v.                            **DISCOVERY ISSUES**
23
    BIMBO BAKERIES USA, INC.,                         Judge:  Hon. Nathanael M. Cousins
24                                                    Hearing: June 11, 2014 at 1:00 p.m.
                            Defendant.                Courtroom: A, 15th Floor
25

26

27          Plaintiffs Alex Ang and Lynne Streit (collectively, "Plaintiffs") and defendant Bimbo

28  Bakeries USA, Inc. ("Defendant" or "BBUSA") respectfully submit this joint statement.

1
## DEFENDANT'S POSITION

2      BBUSA is diligently attempting to comply with every aspect of the Order, but it simply

3   needs more time to do so, for the following reasons.

4          A. **BBUSA's Compliance with Parts 1 and 3 of the Order**

5      The parties' prior briefing and argument regarding Parts 1 and 3 of the Order ("Pre-Class

6   Period Discovery" and "Non-California Products," respectively) were focused on the

7   discoverability of such information and did not address e-discovery issues, much less the amount

8   of time that it would take for BBUSA to actually produce responsive documents.  Nevertheless,

9   the Court set a 14-day deadline for BBUSA to produce all documents, and for the following

10  reasons BBUSA respectfully requests a reasonable extension of time to comply.

11     Almost every request within the scope of Parts 1 and 3 of the Order is subject to e-

12  discovery under Rule 26(b).[1]  Indeed, virtually all responsive information will exist within

13  BBUSA's electronic systems.  Accordingly, after the Court issued the Order, BBUSA drafted and

14  exchanged a proposed e-discovery protocol and search criteria, including the identity of

15  custodians, sources of data, and terms and connectors that are likely to yield responsive

16  information.  However, the parties have not yet reached an agreement on the protocol (much less

17  how the e-discovery costs will be shared).[2]  The meet and confer process is critical to the

18  effective production of e-discovery. *See generally*, *Moore v. Publicis Groupe & MSL Group*, 287

19  F.R.D. 182, 193 and *passim* (S.D. N.Y.  2012).  That process alone could take several weeks. *Yet*

20  *the plaintiffs have offered just one month to complete the entire process and produce all e-*

21  *discovery*.  Given the complexities of e-discovery, this deadline is simply not workable.[3]

22  _____

23  [1] Plaintiffs broadly seek, for example, "all documents relating to the labeling or packaging" of the
    products at issue (RFP No. 1), "all documents relating to food labeling requirements" that relate
24  to the products at issue (RFP No. 5), and "all documents relating to the difference in pricing"
    between the products at issue and competing products (RFP No. 73).  Even after this Court
25  dismissed from the litigation certain categories of products, this case still involves no less than 34
    products, some of which are sold throughout the nation.
26  [2] Any argument that BBUSA delayed drafting the e-discovery protocol is misplaced.  BBUSA
    could not have drafted the protocol and search terms before the Court ruled on these fundamental
27  questions regarding the scope of discovery in this case.
    [3] *Vasudevan Software, Inc. v. Microstrategy Inc.*, 2012 WL 5637611, *5 (N.D. Cal. Nov. 15,
28  2012) (simply agreeing on the e-discovery search protocol "is often no easy task"); *William A.
    Gross Const. Assocs. v. American Manufacturers Mut. Ins. Co.*, 256 F.R.D. 134, 135 (S.D. N.Y.

1     Once the protocol is in place, an e-discovery vendor will likely need to (i) apply the search

2 criteria to certain BBUSA computers, and likely to its central servers and any back-up tapes

3 (which will likely result in hundreds of thousands of document "hits"), (ii) perform quality

4 control on the resulting data set, and (iii) prepare the data for outside counsel's review. *Moore*,

5 *supra*, *193. BBUSA then must review the data for responsiveness, privilege, duplication and

6 confidentiality[4] before processing and producing it. This is not simply an electronic exercise; at

7 various points attorneys and paralegals will need to ensure the search criteria are returning valid

8 results and will have to make final privilege determinations. BBUSA will complete this process

9 diligently and in strict compliance with the Order, but given the scope of the requests and the

10 varied sources of responsive information, the initial gathering and processing of the data alone

11 may take 6 to 8 weeks, and the review process is anticipated to take another 30 days.

12     Further complicating the timeline, during the parties' meet and confer it became apparent

13 that the parties dispute whether BBUSA must produce documents related to just the products at

14 issue in this case, or with respect to ***all*** BBUSA products and sub-products, which number in the

15 thousands. This issue obviously has major implications on the scope and timing of e-discovery if

16 BBUSA must search for, and review, for instance, any documents related to the use of "100%

17 Whole Wheat" or "good source of whole grains" across literally thousands of unique UPCs

18 ("Universal Product Codes"). If this issue is truly in dispute, and especially if it must be resolved

19 by the Court, it will further delay the parties' agreement on search terms, and will substantially

20 expand the volume of data that must be reviewed.

21     For all of these reasons, BBUSA respectfully requests that the Court set July 28, 2014 as

22 the deadline for BBUSA to report to the Court and the plaintiffs regarding the status of its

23 compliance with Parts 1 and 3 of the Order. In the alternative, BBUSA requests a 90-day

24 extension of the deadline to comply with Parts 1 and 3 of the Order, to August 28, 2014. This

25 modest extension will not prejudice the plaintiffs, particularly since just last month the plaintiffs

26

27 2009) (agreeing upon the protocol entails a "complexity" requiring that the parties "truly go
where angels fear to tread").

28 [4] The parties are also in the process (begun last week) of negotiating a protective order regarding
confidential and trade secret information.

1    obtained a six-month continuance of the trial in this action (now set for *November, 2015*).

2    ### B.  BBUSA's Compliance with Part 2 of the Order

3        Following a meet and confer, the parties have agreed that BBUSA may have until June 18,

4    2014, to produce documents in compliance with Part 2 of the Order regarding "Financial

5    Information."   BBUSA has three employees assigned to this project who have spent many hours

6    compiling responsive reports and conferring with BBUSA's counsel to ensure that the reports

7    cover every product at issue for the relevant geographies and timeframes.  The reports are

8    generated based on a set of UPCs, there can be over 5 unique UPCs for any given product named

9    in the complaint, and the product descriptions in BBUSA's systems do not necessarily match the

10   names in the complaint.   Nevertheless, BBUSA anticipates that it will be able to comply with

11   Part 2 of the Order by no later than June 18, 2014 (subject to the pending protective order), and

12   the plaintiffs have agreed to this extension.

13   ### C.  BBUSA's Supplemental Discovery Responses

14       The parties have agreed that BBUSA may serve its supplemental responses to the

15   plaintiffs' interrogatories and document requests by no later than June 10, 2014.

16   ## PLAINTIFFS' POSITION

17       In an effort to work with Defendant, and as a demonstration of their good faith, subject to

18   the Court's approval, Plaintiffs will consent to Defendant's request that the deadline by which

19   Defendant must produce requested financial information be extended until June 18, 2014.[5]

20   However, Plaintiffs do not agree to an additional extension of three months of the time by which

21   Defendant must produce all other responsive documents.  Plaintiffs should not have to wait a total

22   of seven months to first receive requested documents.  Plaintiffs will, however, agree to a one

23   month extension until June 30, 2014.

24       Plaintiffs first requested the documents at issue on January 24, 2014.  Since then,

25   Defendants have taken measures to frustrate and delay Plaintiffs' discovery efforts.  Because of

26

27   _____
     [5]      During a meet and confer held on June 3, 2014, Plaintiffs also agreed to extend to June 10,
28   2014, the time by which Defendant may serve amended responses to Plaintiffs' document
     requests and interrogatories.

1    Defendants' refusal to produce most of the requested documents, in order to compel production of

2    these documents, Plaintiffs had to make four submissions to the Court on March 13, 2014 (Dkt. #

3    57), April 2, 2014 (Dkt. # 65), April 9, 2014 (Dkt. # 68), and April 30, 2013 (Dkt. # 76).  Further,

4    at the hearing held on April 16, 2014, the Court explicitly ordered that: "If there are documents

5    that they [Defendant] are agreeing to produce and they are not in dispute, those documents should

6    be produced within 14 days." *See* Transcript (Dkt. # 81) at 8.  There are many responsive

7    documents that Defendant did initially agree to produce.  However, other than certain pictures of

8    packaging produced with Defendant's initial disclosures, no other documents were produced

9    within that 14-day period, or at any point thereafter.  Then, by Order dated May 14, 2014 (Dkt. #

10   80), the Court directed Defendant to produce almost all documents that Plaintiffs had sought by

11   no later than May 28, 2012.  There has been no stay of any discovery deadline imposed by the

12   Court.  While Defendant claims it was caught off guard by the Court's short deadlines,

13   Defendant's position necessarily begs the question of what they have been doing for the past four

14   and a half months with respect to actually producing documents requested in January.

15          Further, Defendant now finds itself in a trap of its own making.  Despite Plaintiffs'

16   position to the contrary, Defendant fought hard for the shortest possible discovery schedule it

17   could get.  Now, unless Defendant agrees to extend that discovery schedule, there is insufficient

18   time to afford Defendant an additional three months to first produce documents.  The parties have

19   a limited amount of time to conduct fact and expert discovery and prepare for class certification.

20   Defendant demanded that Plaintiffs complete discovery within this time frame and Defendant,

21   too, must operate within these finite parameters.

22          Discovery was originally scheduled to close on May 1, 2014.  Because of multiple

23   motions to dismiss brought by Defendant that were not resolved until April 2, 2014, and because

24   of the aforementioned discovery delays, Judge Orrick recognized a need to adjust the schedule

25   and directed the parties to address the issue in a joint case management statement.  *See* Dkt. # 59.

26   Plaintiffs recognized the potential complexities of discovery in this case and requested a twelve-

27   month extension of the schedule.  *See* Dkt. # 74 at 12-13.  Defendants opposed such an extension

28   and pushed hard for the shortest possible schedule.  *Id.*  Judge Orrick ultimately extended the

1    schedule by six months and Plaintiff's class certification motion is presently due January 28,

2    2015.  *See* Dkt. # 75.  There is simply no room to fit such a generous period of time to produce

3    this first set of documents.  Presumably, it will also take considerable time for responses to

4    subsequent document responses.  This will not work.

5          Additionally, to the extent Defendant complains of a lack of an e-discovery protocol or

6    protective order, Defendant claimed to have been drafting an e-discovery protocol since at least

7    April, but did not provide Plaintiffs with a draft until June 2, 2014.[6]  Defendant should not benefit

8    from its own tardiness.  As for a protective order, Plaintiffs encourage Defendant to execute the

9    form protective order of the Northern District of California, but the parties continue to negotiate

10   over terms.

11         Finally, Defendant alludes to another discovery dispute that Plaintiffs expect will have to

12   be resolved by the Court.  In a prior submission to the Court, Plaintiffs sought to compel

13   production of documents relating to the specific unlawful labelling practices alleged in the

14   complaint, even if those documents did not relate to a particular product at issue.  *See* Dkt. # 65 at

15   2:17-21.  For example, a document discussing Defendant's use of the American Heart

16   Association Heart-Check Mark generally and without respect to a particular product would be

17   relevant.  During a Court-ordered meet and confer, Defendant agreed to produce such documents

18   and Plaintiff did not include that request for relief in the parties' next joint statement to the Court.

19   *See* Dkt. # 68.  Defendant now asserts that it never agreed to produce such documents.  Plaintiffs

20   intend to request Court intervention with respect to this issue shortly.

21

22

23

24

25

26

27

28   [6]      Plaintiffs are reviewing that draft, however, it requires substantial revisions and the elimination of certain one-sided provisions.

JOINT STATEMENT REGARDING DISCOVERY ISSUES                                        5
Case No. CV13-01196-WHO (NC)

1

Dated:  June 4, 2014                                      Respectfully submitted,

2

3      */s/ Ben F. Pierce Gore*                           */s/ Mark C. Goodman*
       Ben F. Pierce Gore (SBN 128515)                    Mark C. Goodman (Bar No. 154692)
4      PRATT & ASSOCIATES                                 Ethan A. Miller (Bar No. 155965)
       1871 The Alameda, Suite 425                        David W. Skaar (Bar No. 265377)
5      San Jose, CA  95126                                HOGAN LOVELLS US LLP
       Telephone:  (408) 429-6506                         3 Embarcadero Center, Suite 1500
6      Fax:  (408) 369-0752                               San Francisco, California 94111
       pgore@prattattorneys.com                           Telephone: + 1 (415) 374-2300
7                                                         Facsimile: + 1 (415) 374-2499
8      Keith M. Fleischman (admitted *pro hac vice*)      mark.goodman@hoganlovells.com
       Bradley F. Silverman (admitted *pro hac vice*)     ethan.miller@hoganlovells.com
9      THE FLEISCHMAN LAW FIRM, PLLC                       david.skaar@hoganlovells.com
       565 Fifth Avenue, Seventh Floor
10     New York, New York 10017                           *Attorneys for Defendant*
11     Telephone: (212) 880-9571
       Fax:  (917) 591-5245
12     keith@fleischmanlawfirm.com
       bsilverman@fleischmanlawfirm.com
13

14     *Attorneys for Plaintiffs*

15

16

17

18

19

20

21

22

23

24

25

26

27

28