Pierce Gore (SBN 128515)
PRATT & ASSOCIATES
1871 The Alameda, Suite 425
San Jose, CA 95126
Telephone: (408) 369 0800
Fax:  (408) 369-0752
pgore@prattattorneys.com

Keith M. Fleischman (admitted *pro hac vice*)
Bradley F. Silverman (admitted *pro hac vice*)
THE FLEISCHMAN LAW FIRM, PLLC
565 Fifth Avenue, Seventh Floor
New York, New York 10017
Telephone: (212) 880-9571
Fax:  (917) 591-5245
keith@fleischmanlawfirm.com
bsilverman@fleischmanlawfirm.com

*Attorneys for Plaintiffs*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ALEX ANG and LYNNE STREIT, individually and on behalf of all others similarly situated,<br><br>                    Plaintiffs,<br><br>          v.<br><br>BIMBO BAKERIES USA, INC.,<br><br>                    Defendant. | Case No.  CV13-01196-HSG (NC)<br><br>**PLAINTIFFS' MOTION FOR CLASS CERTIFICATION, FOR APPOINTMENT OF CLASS REPRESENTATIVES, AND FOR APPOINTMENT OF CLASS COUNSEL AND SUPPORTING MEMORANDUM**<br><br>Hearing Date:     April 23, 2015<br>Time:                 2:00 p.m.<br>Location:           Courtroom 15, 18th Floor<br>Judge:              Hon. Haywood S. Gilliam, Jr. |

## NOTICE OF MOTION

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE THAT** on April 23, 2015, at 2:00 p.m., or as soon thereafter as the matter may be heard, in Courtroom 15, 18th Floor of the above-entitled Court, located at 450 Golden Gate Avenue, San Francisco, California 94102, plaintiffs will move for an Order:

1.      Pursuant to Fed. R. Civ. P. 23(b)(2) and 23(b)(3), certifying the following four classes:

a.      All consumers in the State of California who, from March 18, 2009 to the present, purchased Thomas' Plain Bagel Thins, Thomas' 100% Whole Wheat Bagel Thins, Thomas' Everything Bagel Thins, Arnold's 100% Whole Wheat Bread, Arnold's 12 Grain Bread, or Arnold's Healthy Multi Grain Bread bearing the American Heart Association Heart-Check Mark on the label ("Heart-Check Class");

b.      All consumers in the State of California who, from March 18, 2009 to the present, purchased Sara Lee Classic 100% Whole Wheat Bread, Sara Lee 100% Whole Wheat Bread, Sara Lee Soft & Smooth Whole Grain White Bread, or Sara Lee Soft & Smooth 100% Whole Wheat Bread with labels containing the phrases "excellent source of whole grain" or "good source of whole grain" ("Whole Grain Class");

c.      All consumers in the State of California who, from March 18, 2009 to the present, purchased Bimbo Original Toasted Bread, Bimbo Double Fiber Toasted Bread, Arnold Marble Jewish Rye Bread, Arnold Pumpernickel Jewish Rye Bread, Oroweat Dark Rye Bread, Oroweat Sweet Hawaiian Bread, Stroehmann Deli Soft Rye - No Seeds, Stroehmann Deli Soft Rye – Seeds, Thomas' Cinnamon Raisin Swirl Toasting Bread, or Thomas' Cranberry Swirl Toasting Bread containing added coloring ("Added Coloring Class"); and

d.      All consumers in the State of California who, from March 18, 2009 to the present, purchased Sara Lee 100% Whole Wheat Bread, Sara Lee Classic 100% Whole Wheat Bread, Arnold 100% Whole Wheat Pocket Thins Flatbread, Arnold Bakery Light - 100% Whole Wheat Bread, Bimbo 100% Whole Wheat Tortillas, Brownberry 100% Whole Wheat Pocket Thins Flatbread, Thomas' 100% Whole Wheat Bagels, Thomas' 100% Whole Wheat Bagel Thins,

1    Thomas' 100% Whole Wheat Mini Bagels, Thomas' Sahara 100% Whole Wheat Pita Pockets,

2    Thomas' Sahara 100% Whole Wheat Pita Pockets Mini Size, Thomas' 100% Whole Wheat

3    English Muffins, or Tia Rosa 100% Whole Wheat Tortillas ("100% Whole Wheat Class").

4         The following persons are expressly excluded from the four classes: (i) defendant and its

5    subsidiaries and affiliates; (ii) governmental entities; and (iii) the Court to which this case is

6    assigned and its staff;

7         2.    Appointing plaintiffs Alex Ang and Lynne Streit as class representatives;

8         3.    Pursuant to Fed. R. Civ. P. 23(g), appointing the Fleischman Law Firm, PLLC and

9    Barrett Law Group, P.A. as counsel for the classes and Pratt & Associates as local counsel for the

10   classes;

11        4.    Directing the parties, within fifteen (15) days of an order granting class certification,

12   to meet and confer and present to this Court a proposed notice to the certified classes; and

13        5.    Such other and further relief as the Court deems just and proper.

14        This motion is based upon this Notice of Motion and Memorandum of Points and

15   Authorities, the accompanying Declarations of Dr. Donald M. May, Dr. Julie A. Caswell, Dr. F.

16   Edward Scarbrough, Keith M. Fleischman, Bradley F. Silverman, Brian Herrington, and Ben F.

17   Piece Gore, as well as the pleadings and papers on file in this action.

18

19

20

21

22

23

24

25

26

27

28

1

## <u>TABLE OF CONTENTS</u>

2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

TABLE OF AUTHORITIES ................................................................................................ v

STATEMENT OF ISSUES .............................................................................................. ix

MEMORANDUM OF POINTS AND AUTHORITIES .................................................. 1

RELEVANT FACTS AND PROCEDURAL HISTORY ............................................... 2

      American Heart Association Heart-Check Mark ............................................................ 2

      Excellent or Good Source of Whole Grain Claims ...................................................... 3

      Bread Products that Do Not Meet the FDA's Standard of Identity for Bread
      Because They Contain Added Coloring ......................................................................... 4

      Products with Non-Whole Wheat Flour that Are Labeled as "100% Whole Wheat" ......... 4

      Relevant Procedural History ........................................................................................... 5

ARGUMENT ..................................................................................................................... 6

    I.     A PRIMA FACIE SHOWING HAS BEEN MADE THAT THE PRODUCTS
            AT ISSUE VIOLATE THE SHERMAN LAW ................................................. 7

            A.     Food Products May Not Be Labeled as an Excellent or
                    Good Source of Whole Grain .......................................................... 8

            B.     Paid Endorsements Such as the AHA Heart-Check Mark
                    Must Be Disclosed ........................................................................... 8

            C.     Bread Products with Added Coloring Violate the Sherman Law ................. 9

            D.     Products that Contain Non-Whole Wheat Flour Cannot Be
                    Labeled as "100% Whole Wheat" .................................................. 10

    II.    PLAINTIFFS SATISFY THE REQUIREMENTS OF RULE 23(A) ....................... 10

            A.     The Requisite Numerosity Is Present ............................................. 10

             B.     Questions of Law and Fact Are Common to All Class Members ................. 11

            C.     Plaintiffs' Claims Are Typical of All Class Members ................................. 12

             D.     The Four Proposed Classes Are Ascertainable ............................. 14

E.     Plaintiffs and Their Counsel Will Adequately Represent the Classes ........ 14

III.    PLAINTIFFS SATISFY THE REQUIREMENTS OF RULE 23(B)(3) .................................. 15

A.     Common Questions of Law or Fact Predominate ........................................ 15

1.    Plaintiffs' UCL and FAL Claims ...................................................... 15

2.    Plaintiffs' CLRA Claims ................................................................. 17

B.     Monetary Relief Can Be Determined on a Class-wide Basis ..................... 18

1.    Alternatively, Class Members Would Be Entitled to
Statutory Minimum Damages and Nominal Damages.................... 21

C.     A Class Action Is the Superior Method for Resolving This Dispute .......... 22

1.    Class Members Would Have No Interest in Pursuing
Separate Individual Claims ............................................................. 22

2.    There Are No Other Related Actions Pending................................. 22

3.    This Court Is the Appropriate Forum for this Litigation ................. 22

4.    The Proposed Classes are Manageable ........................................... 23

IV.    PLAINTIFFS SATISFY THE REQUIREMENTS OF RULE 23(B)(2) .................................. 23

V.    PLAINTIFFS SHOULD BE APPOINTED AS CLASS REPRESENTATIVES........................... 24

VI.    PLAINTIFFS' COUNSEL SHOULD BE APPOINTED AS CLASS COUNSEL ....................... 24

CONCLUSION ............................................................................................................... 25

# TABLE OF AUTHORITIES

## Cases

*Allen v. Hyland's Inc.*,
   300 F.R.D. 643 (C.D. Cal. 2014)...................................................................... 16

*Amchem Prods., Inc. v. Windsor*,
   521 U.S. 591 (1997) ................................................................................. 7, 15

*Amgen Inc. v. Connecticut Ret. Plans & Trust Funds*,
   133 S. Ct. 1184 (2013)............................................................................. 7, 15

*Ang v. Bimbo Bakeries USA, Inc.*,
   2013 WL 5407039 (N.D. Cal. Sept. 25, 2013) ........................................ 5, 10

*Ang v. Bimbo Bakeries USA, Inc.*,
   2014 WL 1024182 (N.D. Cal. Mar. 13, 2014) ........................... 6, 12, 13, 24

*Armstrong v. Davis*,
   275 F.3d 869 (9th Cir. 2001) ..................................................................... 13

*Astiana v. Kashi Co.*,
   291 F.R.D. 493 (S.D. Cal. 2013) ........................................................ *passim*

*Avina v. Spurlock*,
   28 Cal. App. 3d 1086 (Cal. App. 1972) ..................................................... 21

*Ballard v. Equifax Check Servs., Inc.*,
   186 F.R.D. 589 (E.D. Cal. 1999).................................................................. 7

*Block v. eBay, Inc.*,
   747 F.3d 1135 (9th Cir. 2014) ................................................................... 16

*Cal. Rural Legal Assistance, Inc. v. Legal Servs. Corp.*,
   917 F.2d 1171 (9th Cir. 1990) ................................................................... 13

*Chavez v. Blue Sky Natural Beverage Co.*,
   268 F.R.D. 365 (N.D. Cal. 2010) ............................................................... 18

*Cummings v. Connell*,
   402 F.3d 936 (9th Cir. 2005) ..................................................................... 21

*General Tel. Co. of Southwest v. Falcon*,
   457 U.S. 147 (1982) ................................................................. 12, 13, 14, 15

*Guido v. L'Oreal,*,
   2013 U.S. Dist. LEXIS 94031 (C.D. Cal. 2013) ...................................... 20

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) ......................................................... 7, 11, 12

*Harris v. Palm Springs Alpine Estates, Inc.*,
   329 F.2d 909 (9th Cir. 1964) ..................................................................... 10

*Haynes v. Logan Furniture Mart, Inc.,*
  503 F.2d 1161 (7th Cir. 1974) ............................................................................... 23

*Hinojos v. Kohl's Corp.,*
  718 F.3d 1098 (9th Cir. 2013) ........................................................... 13, 14, 16, 17

*Hutcherson v. Alexander,*
  264 Cal. App. 2d 126 (Cal. App. 1968) ................................................................ 21

*In re Facebook, Inc., PPC Adver. Litig.,*
  282 F.R.D. 446 (N.D. Cal. 2012) .......................................................................... 10

*In re High-Tech Employee Antitrust Litig.,*
  289 F.R.D. 555 (N.D. Cal. Apr. 5, 2013) ............................................................. 18

*In re IKO Roofing Shingle Products Liability Litig.,*
  757 F.3d 599 (7th Cir. 2014) (.............................................................................. 18

*In re Nexium Antitrust Litig.,*
  --- F.3d ----, 2015 WL 265548 (1st Cir. Jan. 21, 2015) ...................................... 18

*In re Steroid Hormone Prod. Cases,*
  181 Cal. App. 4th 145 (Cal. App. 2010) ............................................................... 17

*In re Tobacco II Cases,*
  46 Cal.4th 298 (2009) ...................................................................................... 15, 16

*In re Vioxx,*
  180 Cal. App. 4th 116 (Cal. App. 2009) ............................................................... 17

*Lavie v. Procter & Gamble Co.,*
  105 Cal. App .4th 496 (2003) ................................................................................ 15

*Leyva v. Medline Indust. Inc.,*
  716 F.3d 510 (9th Cir. 2013) ................................................................................ 18

*Lockwood v. Conagra Foods, Inc.,*
  597 F. Supp. 2d 1028 (N.D. Cal. 2009) .................................................................. 7

*Park v. Welch Foods, Inc.,*
  2014 WL 1231035 (N.D. Cal. 2014) ..................................................................... 19

*Pickman v. American Exp. Co.,*
  2012 WL 258842 (N.D. Cal. Jan. 27, 2012) ......................................................... 21

*ProMex, LLC v. Hernandez,*
  781 F. Supp. 2d 1013 (C.D. Cal. 2011) ................................................................ 21

*Rahman v. Mott's LLP,*
  2014 WL 6815779 (N.D. Cal. Dec. 3, 2014) .................................................... 11, 16

*Raiser v. Ventura College of Law,*
  488 Fed. Appx. 219 (9th Cir. 2012) ...................................................................... 21

*Ries v. Arizona Beverages USA LLC,*
   287 F.R.D. 523 (N.D. Cal. 2012) ................................................................. 13

*Roach v. T.L. Cannon Corp.,*
   --- F.3d ----, 2015 WL 528125 (2d Cir. Feb. 10, 2015) ................................ 18

*Rodriguez v. Hayes,*
   591 F.3d 1105 (9th Cir. 2010) ............................................................... 12, 23

*Scofield v. Critical Air Medicine, Inc.,*
   45 Cal. App. 4th 990 (Cal. App. 1996) ...................................................... 22

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.,*
   559 U.S. 393 (2010) ...................................................................................... 6

*Staton v. Boeing Co.,*
   327 F.3d 938 (9th Cir. 2003) ............................................................... 11, 14

*Stearns v. Ticketmaster Corp.,*
   655 F.3d 1013 (9th Cir. 2011) ............................................................. 15, 17

*U.S. v. Gonzalez-Alvarez,*
   277 F.3d 73 (1st Cir. 2002) ......................................................................... 19

*U.S. v. Milstein,*
   401 F.3d 53 (2d Cir. 2005) .......................................................................... 19

*U.S. v. Technic Services, Inc.,*
   314 F.3d 1031 (9th Cir. 2002), .................................................................. 16

*U.S. v. Bhutani,*
   266 F.3d 661 (7th Cir. 2001) ...................................................................... 19

*Wal-Mart Stores, Inc. v. Dukes,*
   131 S. Ct. 2541 (2011) ......................................................................... 11, 24

*Walters v. Reno,*
   145 F.3d 1032 (9th Cir. 1998) .................................................................... 23

*Williams v. Gerber Prods Co.,*
   552 F.3d 934 (9th Cir. 2008) ............................................................... 10, 15

*Yokoyama v. Midland Nat'l Life Ins. Co.,*
   74 Fed. R. Serv. 3d 459 (9th Cir. 2009) ....................................................... 6

*Zeisel v. Diamond Foods, Inc.,*
   2011 WL 2221113 (N.D. Cal. June 07, 2011) ........................................... 18

**<u>Statutes</u>**

21 U.S.C. § 331 ............................................................................... 7, 16, 19

21 U.S.C. § 333 ...................................................................................... 19

21 U.S.C. § 343 .................................................................................. 7, 10

Cal. Bus. & Prof. Code § 17200 ................................................................. 5, 15

Cal. Bus. & Prof. Code § 17500 ................................................................. 5, 15

Cal. Civ. Code § 1750 ...................................................................................... 5

Cal. Civ. Code § 1770 .................................................................................... 17

Cal. Civ. Code § 1780 .................................................................................... 21

Cal. Civ. Code § 3360 .................................................................................... 21

Cal. Health & Safety Code § 110100 .............................................................. 7

Cal. Health & Safety Code § 110660 ............................................................ 10

Cal. Health & Safety Code § 110685 ............................................................ 10

Cal. Health & Safety Code § 110710 ............................................................ 10

Cal. Health & Safety Code § 110760 ............................................................ 19

Cal. Health & Safety Code § 111825 ............................................................ 19

**Rules**

Fed. R. Civ. P. 23 .................................................................................... *passim*

**Regulations**

21 C.F.R. § 101.14 ......................................................................................... 9

21 C.F.R. § 101.54 ......................................................................................... 8

21 C.F.R. § 101.95 ......................................................................................... 5

21 C.F.R. § 136.110 ................................................................................... 9, 10

21 C.F.R. § 136.180 ...................................................................................... 10

**Other Authorities**

FDA, *A Food Labeling Guide* (May 1997) (available at 1997 WL 33793842) ................................ 8

*Food Labeling; General Requirements for Health Claims for Food*, 58 Fed. Reg. 2478 (Jan. 6, 1993) (available at 1993 WL 1547) ................................ 9

*Newberg on Class Actions* (4th ed. 2002) ............................................ 7, 13, 15

## <u>STATEMENT OF ISSUES</u>

1.    Whether the proposed classes should be certified under Rule 23(b)(2)?

2.    Whether the proposed classes should be certified under Rule 23(b)(3)?

3.    Whether plaintiffs should be appointed as representatives for the proposed classes?

4.    Whether plaintiffs' counsel should be appointed as counsel for the proposed classes?

1

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

2
Plaintiffs Alex Ang and Lynne Streit (collectively, "Plaintiffs") respectfully submit this

3
memorandum in support of their motion for certification of classes pursuant to both Rule 23(b)(2)

4
and Rule 23(b)(3), as well as for the appointment of Plaintiffs as class representatives and the

5
appointment of Plaintiffs' counsel as class counsel.

6
Defendant Bimbo Bakeries USA, Inc. ("Defendant") has engaged in a scheme to misbrand

7
food products that it manufactures and sells by placing misrepresentations on labels that are

8
explicitly barred under the Food, Drug and Cosmetic Act ("FDCA"), Food and Drug

9
Administration ("FDA") regulations, and California's Sherman Law.  These misrepresentations

10
falsely imply that its products are healthier or of better quality than competing products.

11
Defendant's own documents demonstrate that it is well aware that its actions are illegal, but

12
engages in such conduct anyway because it increases Defendant's sales and profits.

13
At issue are four specific misrepresentations that are barred under federal and California

14
law: 1) the use of the American Heart Association Heart-Check Mark on labels without disclosure

15
that it is a paid endorsement; 2) the labeling of products as a good or excellent source of whole

16
grain when the FDA and Sherman Law preclude the use of such representations; 3) the labeling of

17
products as "bread" that do not conform to the standard of identity for bread mandated under

18
federal and California law because they contain added coloring; and 4) the labeling of products as

19
"100% whole wheat," when, in fact, they are made with non-whole wheat flour.  Plaintiffs now

20
seek to certify separate classes consisting of consumers of Defendant's products that contained one

21
of these four misrepresentations.

22
Plaintiffs seek the certification of classes under Rule 23(b)(3) to recover monetary relief for

23
consumers who purchased these products, which, under federal and California law, are illegal and,

24
as a matter of law, without value.  Plaintiffs also seek the certification of classes under Rule

25
23(b)(2) in order to obtain declaratory relief that Defendant's four labeling practices are illegal,

26
and to obtain injunctive relief barring Defendant from engaging in these labeling practices.

27
Plaintiffs satisfy all the requirements of Rules 23(a), 23(b)(2), and 23(b)(3).  Therefore, the

28
proposed classes should be certified.  Further, Plaintiffs and their counsel have diligently

prosecuted this action and will adequately represent the interests of all class members.
Accordingly, Plaintiffs should be appointed as class representatives, and their counsel should be appointed as class counsel.

### RELEVANT FACTS AND PROCEDURAL HISTORY

Defendant is the largest bakery company in the United States.  *See* Exhibit 9.[1]  It sells products under the following brands:  Arnold, Ball Park. Bimbo, Boboli, Brownberry, Earthgrains, Entenmann's, Francisco, Freihofer's, Marinela, Mrs. Baird's, Oroweat, Sara Lee, Stroehman, Thomas', and Tia Rosa.  *Id.*  It has engaged in a scheme to sell its products with false, misleading, and deceptive labeling in order to increase sales and profits.  Many of its products are misbranded and illegal under the FDCA, FDA regulations, and California's Sherman Law.  Defendant specifically misbrands its products in four ways that are relevant to this action.

### American Heart Association Heart-Check Mark

Several of Defendant's products bear the American Heart Association ("AHA") Heart-Check Mark on their labels.  Exhibits 10-11; Declaration of Ben F. Pierce Gore dated February 18, 2015 ("Gore Decl.") Ex. B.  The Heart-Check Mark is a paid endorsement for which Defendant pays the AHA hundreds of thousands of dollars.  Answer (Exhibit 2) ¶ 64; Exhibits 10-11.  Defendant pays for this endorsement because it increases sales where consumers mistakenly believe that a product bearing the Heart-Check Mark is healthier than products that do not contain the mark.[2]  For this reason, under federal and state law, labels bearing the Heart-Check Mark must disclose that it is a paid endorsement.  *See* section I.B, *infra*.  None of Defendant's products with the Heart-Check Mark contain such a required disclosure.  Plaintiff Alex Ang purchased Thomas'

---

[1]     Unless stated otherwise, all citations to "Exhibits" are to exhibits annexed to the Declaration of Bradley F. Silverman dated February 18, 2015 ("Silverman Decl.").  Plaintiffs respectfully request that the Court take judicial notice of all these exhibits, which are either business records; sworn statements and testimony; or admissions of Defendant found in produced documents, Defendant's websites, and the labeling of Defendant's products.

[2]     *See* Exhibit 12 ("the heart-check mark is the packaging icon consumers trust most"); Exhibit 13 (AHA marketing "will drive moms and dads to seek out and purchase products" with the mark); Exhibit 14 at 5 ("consumers liked *Certified by the American Heart Association* the best"); Declaration of Dr. Julie A. Caswell dated Feb. 15, 2015 ("Caswell Decl.") (Exhibit 6) at ¶¶ 24-25; Transcript of Deposition of Lynne Streit dated Feb. 11, 2015 ("Streit Depo.") (Exhibit 3) at 123; *See* Transcript of Deposition of Alex Ang dated Feb. 13, 2015 ("Ang Depo.") (Exhibit 4) at 68, 73.

1  Plain Bagel Thins, which contains the Heart-Check Mark.  Ang Depo. at 195-96.  He did not know

2  that it was a paid endorsement, and thought he was purchasing a healthier product.  *Id* at 68, 196.[3]

3  **Excellent or Good Source of Whole Grain Claims**

4  The labels of several of Defendant's products state that they are either an "excellent source

5  of whole grain" or a "good source of whole grain."  Exhibit 21; Gore Decl. Exs. A,C, E-F.

6  However, those statements are barred under federal and state law.  *See* section I.A, *infra*.  Indeed,

7  Defendant's records demonstrate that throughout the entire class period, it was well aware that it

8  was illegal to use these statements on food products.[4]  It did so anyway because consumers

9  mistakenly believe that products that make such whole grain claims are healthier than other similar

10  products.  *See* Caswell Decl. ¶¶ 24-25; Streit Depo. at 90, 171; Ang Depo. at 98-99.   In reliance on

11  such illegal statements, Alex Ang purchased Sara Lee Classic 100% Whole Wheat Bread and Sara

12  Lee Soft & Smooth Whole Grain White Bread, both of which stated that they are a "good source of

13  whole grain."  Gore Decl. Exs. A, C; Ang Depo. at 191.  Ms. Streit purchased Sara Lee Classic

14  100% Whole Wheat Bread, which stated that it is a "good source of whole grain" and Sara Lee

15  100% Whole Wheat Bread, which stated that it is an "excellent source of whole grain."  Gore

16  Decl. Exs. E-F; Streit Depo. at 248-50; 253-54. Additionally, this misrepresentation also appears

17  on Sara Lee Soft & Smooth 100% Whole Wheat Bread.  Exhibit 21.  Based on these

18  misrepresentations, Plaintiffs believed the products they purchased had health benefits that similar

19

20  [3]     In addition to the Thomas' Plain Bagel Thins, the Heart-Check Mark also appears on the

21  following products manufactured and sold by Defendant: Thomas' 100% Whole Wheat Bagel Thins, Thomas' Everything Bagel Thins, Arnold's 100% Whole Wheat Bread, Arnold's 12 Grain

22  Bread, and Arnold's Healthy Multi Grain Bread.  Exhibits 10-11.

23  [4]     *See* Exhibit 15 (2009 e-mail from one of Defendant's regulatory managers stating, "We (highly) do not recommend using good and excellent source in conjunction with whole grains.

24  The FDA has not defined the recommended daily intake for whole grains as they have done with fiber, protein, etc."); Exhibit 16 (2010 e-mail from a regulatory manager stating, "Since there is no

25  official FDA recommended daily intake for whole grains, we can not [sic] claim GOOD SOURCE in conjunction with whole grains."); Exhibit 17 (2012 email from a regulatory manager stating,

26  "Whole grain content cannot be used in conjunction with 'good/excellent source'.").  *See also*, Exhibit 18 (2005 FDA letter (which was produced from Defendant's files) denying petition of

27  General Mills for FDA set a definition for "good source" and "excellent source" of whole grain and refusing to permit such claims on food labels); Exhibit 19 (2005 e-mail discussing and

28  forwarding *Wall Street Journal* article regarding FDA's denial of General Mills' petition).

products did not and this belief impacted their decisions to purchase these products. *See* Ang Depo. at 98-99, 190-91; Streit Depo. at 11, 171, 251, 255-56.

**Bread Products that Do Not Meet the FDA's Standard of
Identity for Bread Because They Contain Added Coloring**

Several of Defendant's bread products contain added coloring such as Yellow 5, Red 40, and caramel coloring. Answer ¶¶ 143, 199; Exhibit 22. However, under FDA regulations (which are incorporated into the Sherman Law), bread products cannot include such added coloring. *See* section I.C, *infra*. Defendant makes the misrepresentation that these products meet the standard of identity for bread to increase sales. Consumers mistakenly believe that they are purchasing bread products when, in actuality, they are purchasing illegally labeled products that do not meet the mandated standard of identity for bread. *Id.* They also mistakenly believe that these products derive their color from non-color additive ingredients and the baking process. Ang Depo. at 194. Defendant's own consumer surveys show that "25% of all respondents determine the nutritional value of a bread by its color." *See* Exhibit 20 at 9. In reliance upon this misrepresentation, Alex Ang purchased Bimbo Original Toasted Bread, which is labeled as "bread" in several places, but contains Yellow 5 and Red 40. Answer ¶ 143; Gore Decl. Ex. D; Ang Depo. at 193-94.[5]

**Products with Non-Whole Wheat Flour that Are Labeled as "100% Whole Wheat"**

Defendant makes several products that contain soy flour (a non-whole wheat flour), but are labeled as "100% whole wheat." Federal and state law preclude such products from being labeled as "100% whole wheat." *See* section I.D, *infra*. Consumers want 100% whole wheat products and mistakenly believe that these products are 100% whole wheat when they are not. *See* Caswell Decl. ¶¶ 24-25; Ang Depo. at 54, 190-91, 198; Streit Depo. at 80-81, 251, 255. In reliance of this misrepresentation, both Alex Ang and Lynne Streit purchased Sara Lee Classic 100% Whole Wheat Bread, and Ms. Streit also purchased Sara Lee 100% Whole Wheat Bread. Ang Depo. at 54, 190-91, 198; Streit Depo. at 248-50, 253. All of these products list soy flour as an ingredient

---

[5]   Coloring is also added to the following bread products manufactured and sold by Defendant: Bimbo Double Fiber Toasted Bread, Arnold Marble Jewish Rye Bread, Arnold Pumpernickel Jewish Rye Bread, Oroweat Dark Rye Bread, Oroweat Sweet Hawaiian Bread, Stroehmann Deli Soft Rye - No Seeds, Stroehmann Deli Soft Rye – Seeds, Thomas' Cinnamon Raisin Swirl Toasting Bread, and Thomas' Cranberry Swirl Toasting Bread. Answer ¶ 199; Exhibit 22.

1  on their labels.  Gore Decl. Exs. A, E-F.  Plaintiffs relied on the "100% whole wheat"

2  representation, believed that these products were 100% whole wheat, and that belief impacted their

3  decision to buy these products.  Ang Depo. at 54, 190-91, 198; Streit Depo. at 251-53, 255-56.[6]

4  **Relevant Procedural History**

5  On May 20, 2013, Plaintiffs filed their first amended complaint ("FAC").  Therein, with

6  respect to all the aforementioned products (regardless of whether a product was actually purchased

7  by Plaintiffs), Plaintiffs alleged separate causes of action against Defendant under the "fraudulent,"

8  "unlawful," and "unfair" prongs of the Unfair Competition Law, Cal. Bus. & Prof. Code § 17200,

9  *et seq.* ("UCL"); separate causes of action under the "misleading" and "untrue" prongs of the False

10  Advertising Law, Cal. Bus. & Prof. Code § 17500, *et seq.* ("FAL"); a cause of action under the

11  California Legal Remedies Act, Cal. Civ. Code § 1750, *et seq* ("CLRA"); and a common law

12  cause of action for unjust enrichment.  Defendant filed a motion to dismiss the FAC.

13  On September 25, 2013, Judge Orrick issued an Order granting the motion in part and

14  denying the motion in part.  The Court dismissed with prejudice Plaintiffs' claim for unjust

15  enrichment and Plaintiffs' claims relating to the Entenmann's "Baked Fresh Daily" label to the

16  extent they were premised on 21 C.F.R. § 101.95.  The Court also dismissed, without prejudice,

17  Plaintiffs' claim under the CLRA as it related to certain non-purchased products because Plaintiffs'

18  CLRA notice did not adequately place Defendant on notice of the claims relating to those

19  products.  The Court granted Plaintiffs leave to amend that claim after service of a new CLRA

20  notice.  In all other respects, the Court denied the motion to dismiss.  *See Ang v. Bimbo Bakeries*

21  *USA, Inc.*, 2013 WL 5407039 (N.D. Cal. Sept. 25, 2013).

22  In accordance with that Order, on November 4, 2013, Plaintiffs filed a second amended

23  complaint ("SAC") (Exhibit 1).  Thereafter, Defendant brought a motion to dismiss the claims in

24  _____

25  [6]  The following products that are manufactured and sold by Defendant are also labeled as
"100% whole wheat," but contain soy flour:  Arnold 100% Whole Wheat Pocket Thins Flatbread,
Arnold Bakery Light - 100% Whole Wheat Bread, Bimbo 100% Whole Wheat Tortillas,

26  Brownberry 100% Whole Wheat Pocket Thins Flatbread, Thomas' 100% Whole Wheat Bagels,

27  Thomas' 100% Whole Wheat Bagel Thins, Thomas' 100% Whole Wheat Mini Bagels, Thomas'
Sahara 100% Whole Wheat Pita Pockets, Thomas' Sahara 100% Whole Wheat Pita Pockets Mini

28  Size, Thomas' 100% Whole Wheat English Muffins, and Tia Rosa 100% Whole Wheat Tortillas.
All of these products list soy flour as an ingredient on their labels.  *See* Exhibit 23.

the SAC pertaining to products that were not actually purchased by Plaintiffs.  By Order dated March 13, 2014, with the exception of certain claims pertaining to Entenmann's brand products labeled as "Baked Fresh Daily," Judge Orrick denied the motion.  The Court specifically found that "[t]he injury allegedly suffered by plaintiffs is identical to the injury suffered by consumers who purchased the other products" that plaintiffs did not purchase.  *Ang v. Bimbo Bakeries USA, Inc.*, 2014 WL 1024182, at *8-9 (N.D. Cal. Mar. 13, 2014).  Thereafter, Defendant filed its Answer to the SAC (Exhibit 2).  The parties are presently engaged in discovery.[7]

## **ARGUMENT**

Rule 23 provides that, "'A class action may be maintained' if two conditions are met: The suit must satisfy the criteria set forth in subdivision (a) (*i.e.*, numerosity, commonality, typicality, and adequacy of representation), and it also must fit into one of the three categories described in subdivision (b)."  *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 394 (2010).  The decision to certify a class is committed to the discretion of the Court.  *See Yokoyama v. Midland Nat'l Life Ins. Co.*, 74 Fed. R. Serv. 3d 459 (9th Cir. 2009).  Although Plaintiffs bear the burden of satisfying the requirements of Rule 23, those requirements "should be liberally

---

[7]   Fact discovery is ongoing.  Indeed, on February 4, 2014 -- months after they were due -- Defendant produced over 40,000 additional documents.  Moreover, two months after it was obligated to do so, Defendant produced a privilege log containing approximately 15,000 entries.  However, a cursory review of the log showed that a majority of the listed documents were not sent to or from an attorney.  Defendant now represents that it intends to produce the non-privileged documents listed on the log (and a revised privilege log) at some point in the future.

In violation of Rule 26(g)(B), Defendant have made discovery as cumbersome as possible.  In addition to the aforementioned productions, Defendant has produced approximately 432,000 documents that encompass over 1.2 million pages.  *See* Dkt. # 97-1 at ¶ 6.  However, these documents were not reviewed for responsiveness before production.  Nevertheless, these documents were reviewed for privilege, for confidentiality, and for private information such as social security numbers.  In the course of its review, Defendant intentionally did not remove non-responsive documents from the production, while it did remove privileged documents and marked other documents as confidential.  *Id.*  As a result, a large percentage of the produced documents are irrelevant to this litigation.  Yet, Plaintiffs have been forced to waste time and resources searching through these documents.  Defendant attempted to further compound the difficulty in reviewing so many documents.  Pursuant to the confidentiality stipulation So Ordered by the Court, only attorneys of record, or who were otherwise employed by firms that have appeared, could review confidential documents.  Dkt. # 93 § 7.2.  For that reason, Jay Nelkin made a motion for admission *pro hac vice* so that he could assist in the review.  Dkt. # 96.  Nevertheless, Defendant opposed the motion solely to hinder Plaintiffs' review of its enormous "data dump." Dkt. # 98.

1   construed." *See* 3 Alba Conte & Newberg, *Newberg on Class Actions* § 7.20 (4th ed. 2002).

2   Further, "Rule 23 grants courts no license to engage in free-ranging merits inquiries at the

3   certification stage.  Merits questions may be considered to the extent — but only to the extent —

4   that they are relevant to determining whether the Rule 23 prerequisites for class certification are

5   satisfied." *Amgen Inc. v. Connecticut Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1194-95 (2013)

6   (internal quotes and citations omitted).

7          Class actions are particularly appropriate where, like the present case, individual damages

8   are small. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1023 (9th Cir. 1998) (class certification

9   appropriate where litigation costs would dwarf any recovery by individual members of class if

10   forced to separately pursue actions); *Ballard v. Equifax Check Servs., Inc.*, 186 F.R.D. 589, 600

11   (E.D. Cal. 1999) ("Class action certifications to enforce compliance with consumer protection laws

12   are desirable and should be encouraged.").  "The policy at the very core of the class action

13   mechanism is to overcome the problem that small recoveries do not provide the incentive for any

14   individual to bring a solo action prosecuting his or her rights. A class action solves this problem by

15   aggregating the relatively paltry potential recoveries into something worth someone's (usually an

16   attorney's) labor." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 617 (1997).

17   **I.      A *PRIMA FACIE* SHOWING HAS BEEN MADE THAT**
18   **THE PRODUCTS AT ISSUE VIOLATE THE SHERMAN LAW**

19          Plaintiffs have made a *prima facie* showing that the product labels at issue violate the

20   Sherman Law.  The FDCA "gives the FDA the responsibility to protect the public health by

21   ensuring that foods are safe, wholesome, sanitary, and properly labeled." *Lockwood v. Conagra*

22   *Foods, Inc.*, 597 F. Supp. 2d 1028, 1030 (N.D. Cal. 2009).  21 U.S.C. § 331 prohibits the

23   misbranding of food in interstate commerce, and 21 U.S.C. § 343 sets forth conditions under which

24   food is considered "misbranded."  The FDA promulgates food labeling regulations in accordance

25   with the FDCA.  California's Sherman Law expressly adopts the federal labeling requirements as

26   its own.  *See* Cal. Health & Safety Code § 110100 ("All food labeling regulations and any

27   amendments to those regulations adopted pursuant to the federal act . . . shall be the food

28   regulations of this state."). Therefore, any violation of the FDCA or FDA regulations is also a

1   violation of the Sherman Law.  As set forth below, each of Defendant's labeling practices at issue

2   violates both federal and California law (and therefore, the UCL, FAL, and CLRA).[8]

### A.   Food Products May Not Be Labeled as an Excellent or Good Source of Whole Grain

5   Pursuant to 21 C.F.R. § 101.54(a), "good source" and "excellent source" claims may not be

6   made with respect to anything for which the FDA has not determined a Reference Daily Intake

7   ("RDI") or Daily Reference Value ("DRV").[9]  *See* 21 C.F.R. § 101.54(a).  FDA "plain English"

8   guidance makes this clear.  *See* A Food Labeling Guide (May 1997) (available at 1997 WL

9   33793842) at Ch. VI, Question 21 ("nutrients that do not have an established DV are not covered

10  by the definition and may not make "high" or "good source" claims").

11  The FDA has not established a daily value for whole grain. Therefore, a product cannot be

12  lawfully labeled as being an excellent or good source of whole grain.  Indeed, Defendant's own

13  internal documents demonstrate that, throughout the entire class period, it has been aware that it

14  cannot lawfully use those terms on their products.  *See* Exhibits 15-19.  Nevertheless, all products

15  listed within the definition of the Whole Grain Class bear this misrepresentation.  *See* Exhibit 21;

16  Gore Decl. Exs. A, C, E-F.  Therefore, all of these products violate 21 C.F.R. § 101.54, as

17  incorporated into the Sherman Law.

### B.  Paid Endorsements Such as the AHA Heart-Check Mark Must Be Disclosed

19  All products listed within the definition of the Heart-Check Mark Class have the American

20  Heart Association Heart-Check Mark on their labels.  Exhibits 10-11; Gore Decl. Ex. B.  Plaintiffs

21  allege that it is a paid endorsement.  Indeed, produced documents show that Defendant has paid

22  hundreds of thousands of dollars to the American Heart Association for the use of the Heart-Check

23  Mark and that Defendant believes that it will increase sales.  *See, e.g*., Exhibits 10-14.  The FDA

---

[8]   *See also* Declaration of Dr. F. Edward Scarbrough dated February 18, 2015 (Exhibit 7) at ¶¶ 9-12 (former FDA director of food labeling opining on Defendant's labeling practices).

[9]   A "good source" claim can only be made when the product has 10 to 19 percent of the RDI or DRV of that which the product claims to be a "good source." 21 C.F.R. § 101.54(c).  An "excellent source" claim can only be made when the product has at least 20 percent of the RDI or the DRV.  21 C.F.R. § 101.54(b).  If there is no established RDI or DRV, it would impossible to accurately represent that a food product meets these objection numerical thresholds.

classifies the use of such a mark as "health claim":

> Health claim means any claim made on the label or in labeling of a food, including a dietary supplement, that expressly or by implication, ***including "third party" references, written statements (e.g., a brand name including a term such as "heart"), symbols (e.g., a heart symbol)***, or vignettes, characterizes the relationship of any substance to a disease or health-related condition. Implied health claims include those statements, symbols, vignettes, or other forms of communication that suggest, within the context in which they are presented, that a relationship exists between the presence or level of a substance in the food and a disease or health-related condition.

21 C.F.R. § 101.14(a)(1) (emphasis added). Further the FDA has promulgated a rule stating that:

> [T]he agency recognizes that endorsements made for compensation by private organizations or individuals may be misleading to consumers. The agency is advising that when such endorsements are made, ***a statement should be included in close proximity to the claim, informing consumers that the organization or individual was compensated for the endorsement. Failure to divulge this information on a label that bears a paid endorsement would cause the product to be misbranded*** under sections 403(a) and 201(n) of the act for failure to reveal a fact that is material.

*Final Rule: Food Labeling; General Requirements for Health Claims for Food*, 58 Fed. Reg. 2478, 2485 (Jan. 6, 1993) (available at 1993 WL 1547) (emphasis added).  Indeed the FDA explicitly cited endorsements from the American Heart Association as a concern:

> [A] third party endorsement would constitute an implied health claim if the endorsement references a particular food or substance, and the name of the endorsing organization references a particular disease (***e.g., American Heart Association***).

*Id* at 2485 (emphasis added).  For all these reasons, the products bearing the Heart-Check Mark are illegal under federal and California law because they do not disclose that it is a paid endorsement.

### C.    Bread Products with Added Coloring Violate the Sherman Law

21 C.F.R. § 136.110 sets the standard of identity for bread.  As part of this standard of identity, 21 C.F.R. § 136.110(c)(17) specifically provides that "coloring may not be added" to products labeled as "bread." All products listed within the class definition of the Added Coloring Class are purported to be bread, but contain added coloring.[10]  *See* Answer ¶ 141, 199; Exhibit 22.

---

[10]    Defendant previously argued that Bimbo Original Toasted Bread is not bread and therefore not subject to this regulation. *See* Dkt. # 21 at 8-9.  Defendant appears to have withdrawn this position. In response to a discovery request seeking "[a]ll documents pertaining to the issue of whether Bimbo Original Toasted Bread is bread," Defendant responded that "there are no unprivileged documents in its possession, custody or control that are responsive to this Request." *See* Exhibit 8 at 23-24.  Moreover, the label of Bimbo Original Toasted Bread explicitly refers to

Therefore, these products violate 21 C.F.R. § 136.110, as incorporated into the Sherman Law.

### D. Products that Contain Non-Whole Wheat Flour Cannot Be Labeled as "100% Whole Wheat"

Under 21 C.F.R. § 136.180(a)(1), dough used to make whole wheat breads must be made from "wheat flour, bromated whole wheat flour, or a combination of these." *See* 21 C.F.R. § 136.180(a)(1). It may not contain non-whole wheat flour. All products listed in the definition of the 100% Whole Wheat Class contain soy flour (a non-whole wheat flour). It is undisputed that the ingredient lists on the labels of each of these products list "soy flour." *See* Exhibit 23; Gore Decl. Exs. A, E-F.

The FDCA and the Sherman Law also preclude product labels from being false in any particular. *See* 21 U.S.C. § 343(a)(1); Cal. Health & Safety Code § 110660.[11] The presence of soy flour in these products shows that the "100% whole wheat" representations are false in a material particular. *See Ang v. Bimbo Bakeries USA, Inc.*, 2013 WL 5407039, at *10 (N.D. Cal. Sept. 25, 2013) (Defendant's "arguments about what a reasonable consumer would think [about the '100% whole wheat' representation], at least on this record, are foreclosed by *Williams v. Gerber Prods Co.*, 552 F.3d 934 [(9th Cir. 2008)]"). Therefore, these products also violate federal and state law.

### II. PLAINTIFFS SATISFY THE REQUIREMENTS OF RULE 23(A)

### A. The Requisite Numerosity Is Present

Rule 23(a)(1) requires that the class be so numerous that joinder of all class members is "impracticable." Fed. R. Civ. P. 23(a)(1). "[I]mpracticability does not mean impossibility," but rather speaks to "the difficulty or inconvenience of joining all members of the class." *Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909, 913-14 (9th Cir. 1964). "[C]ourts generally find that the numerosity factor is satisfied if the class comprises 40 or more members." *In re Facebook, Inc.*, *PPC Adver. Litig.*, 282 F.R.D. 446, 452 (N.D. Cal. 2012). Defendant sold many thousands of units of the products at issue. Therefore, the numerosity requirement has been met.

---

the product as "bread" in multiple places. Gore Decl. Ex. D. Accordingly, Defendant can point to no documentary evidence or legal authority to support the proposition that Bimbo Original Toasted Bread is not subject to the requirements of 21 C.F.R. § 136.110.

[11] The products also violate Cal. Health & Safety Code §§ 110685 & 110710, which bar the labeling of a product as a food with a set standard of identity that it does not meet.

## B.   Questions of Law and Fact Are Common to All Class Members

Rule 23(a)(2) requires a showing of commonality that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2).  Like all Rule 23(a) requirements, this requirement is construed permissively.  *See Staton v. Boeing Co.*, 327 F.3d 938, 953 (9th Cir. 2003). "All questions of fact and law need not be common to satisfy the rule. The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." *Id.* (quoting *Hanlon*, 150 F.3d at 1019-20). "'Plaintiffs' claims 'must depend on a common contention,' and that common contention 'must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each other of the claims in one stroke.'" *Wal–Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011) (quoting *General Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 157 (1982)).

In largely denying Defendant's second motion to dismiss claims pertaining to products that Plaintiffs did not purchase, Judge Orrick found that the members of the proposed classes all share a common contention that turns on common issues and, in fact, "[t]he injury allegedly suffered by plaintiffs is identical to the injury suffered by consumers who purchased the other products":

### A.  Good Source and Excellent Source Nutrient Claims

Plaintiffs argue that Bimbo Bakeries' use of "good source" and "excellent source" of whole grains on the labels of certain products violates the FDA regulations for nutrient claims because the FDA has not recognized a daily value for whole grains. SAC ¶¶ 180–184. They purchased three varieties of whole wheat breads which had "good" or "excellent source claims" and seek to pursue claims for a fourth variety of bread (Sara Lee Soft & Smooth 100% Whole Wheat Bread) which they did not purchase. Id. ¶¶ 185–86. The injury allegedly suffered by the plaintiffs is identical to the injury suffered by consumers who purchased the other type of bread. Moreover, potential differences between the products' labels or compositions would not impact the legal analysis of the claim. Therefore, plaintiffs have standing to pursue this claim for the unpurchased product.

### B.  Added Coloring Claim

Plaintiffs allege that Bimbo Bakeries violates the FDA's standard of identity for bread by adding coloring to the purchased product, Bimbo Original Toasted Bread. SAC ¶¶ 188–89. Plaintiffs seek to pursue the identical claim for ten other products which they did not purchase, but like the Bimbo Original Toasted Bread are identified as "bread" and contain coloring. Id. ¶ 190. The injury allegedly suffered by plaintiffs is identical to the injury suffered by consumers who purchased the other

products. Differences in the products' labels or compositions do not sufficiently differentiate the claim with respect to the purchased product to the claims with respect to the unpurchased products. Determination of the result on the merits may well be different, but at the pleading stage plaintiffs have adequately alleged substantial similarity.

**C. 100% Whole Wheat/Soy Flour Claim**

Plaintiffs argue that it is illegal to use non-whole wheat flour in products labeled as "whole wheat." SAC ¶¶ 193–94. They purchased two types of whole wheat bread labeled as "100% Whole Wheat" but contain soy flour, and want to pursue claims for thirteen additional products that are likewise labeled as "100% Whole Wheat" which also contain soy flour. Again, the purported injury suffered by the plaintiffs is identical to the injury suffered by consumers who purchased the other "100% Whole Wheat" baked goods. Moreover, potential differences between the products' labels or compositions would not impact the legal analysis of the claim. Plaintiffs have standing for the unpurchased products.

**D. American Heart–Check Claim**

Plaintiffs allege that the use of the American Heart Association's "Heart–Check" mark without a disclosure that the mark is a paid "endorsement," is illegal and misleading as a matter of law because that mark is considered a paid endorsement under FDA authority. SAC ¶¶ 211–217. They purchased at least one product bearing the mark and seek to pursue claims for five other products which also bear the mark. Id. ¶¶ 218–219. The injury suffered by the plaintiffs is identical to the injury suffered by consumers who purchased the other goods with the Heart–Check mark. Moreover, potential differences between the products' labels or compositions would not impact the legal analysis of the claim. Plaintiffs may pursue claims concerning the unpurchased products.

*Ang v. Bimbo Bakeries USA, Inc*., 2014 WL 1024182, at *8-9 (N.D. Cal. Mar. 13, 2014).  For all these reasons, the commonality standard is met.

**C.    Plaintiffs' Claims Are Typical of All Class Members**

Rule 23(a)(3) requires that the "claims or defenses of the representative parties are typical of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3).  To satisfy this requirement, named plaintiffs must be members of the class and must "possess the same interest and suffer the same injury as the class members." *Falcon*, 457 U.S. at 156 (citation omitted). The typicality requirement "is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Rodriguez v. Hayes*, 591 F.3d 1105, 1124 (9th Cir. 2010) (citation omitted). Rule 23(a)(3) is "permissive" and only requires that the named plaintiffs' claims be "reasonably co-extensive with those of absent class members." *Hanlon*, 150 F.3d at 1020.

1    Rule 23 "does not require the named plaintiffs to be identically situated with all other class

2    members. It is enough if their situations share a 'common issue of law or fact' and are 'sufficiently

3    parallel to insure a vigorous and full presentation of all claims for relief.'" *Cal. Rural Legal*

4    *Assistance, Inc. v. Legal Servs. Corp.*, 917 F.2d 1171, 1175 (9th Cir. 1990) (citations omitted).

5    "The fact that Class Members must individually demonstrate their right to recover, or that they

6    may suffer varying degrees of injury, will not bar a class action, nor is a class action precluded by

7    the presence of individual defenses against class plaintiffs." 3 Alba Conte & Newberg, *Newberg*

8    *on Class Actions* § 3.12 (4th ed. 2002). Thus, the typicality requirement is satisfied even if there

9    are factual distinctions between the claims of the named plaintiff and those of other class members.

10   *Armstrong v. Davis,* 275 F.3d 869 (9th Cir. 2001).

11       Here, Plaintiffs' claims are typical of those of the class members in each of the four

12   proposed classes.  Like all members of the proposed classes, Plaintiffs purchased products that, in

13   violation of the Sherman Law, either: 1) contained the American Heart-Association Heart-Check

14   Mark without disclosing that it is a paid endorsement; 2) were labelled as an "excellent source of

15   whole grain" or a "good source of whole grain"; 3) were purported to be bread when they did not

16   meet the standard of identify for bread because they contained added coloring; or 4) were labeled

17   as "100% Whole Wheat," but contained non-whole wheat flour.  As set forth above, this Court has

18   already found that "[t]he injury allegedly suffered by plaintiffs is identical to the injury suffered by

19   consumers who purchased the other products."  *Ang*, 2014 WL 1024182, at *8-9.

20       Further, injury under California's consumer protection statutes is established by an objective

21   test and does not depend on a consumer's particular state of mind.  *Astiana*, 291 F.R.D. at 502;

22   *Ries v. Arizona Beverages USA LLC*, 287 F.R.D. 523, 539 (N.D. Cal. 2012). Specifically, under

23   this objective test, "injury is shown where the consumer has purchased a product that is marketed

24   with a material misrepresentation, that is, in a manner such that members of the public are likely to

25   be deceived." *Astiana*, 291 F.R.D. at 502 (internal quotation omitted). The four misrepresentations

26   are material and are likely to deceive.  *See Hinojos v. Kohl's Corp*., 718 F.3d 1098, 1107 (9th Cir.

27   2013) ("[T]he legislature's decision to prohibit a particular misleading advertising practice is

28   evidence that the legislature has deemed that the practice constitutes a 'material'

1    misrepresentation, and courts must defer to that determination."); section III.A, *infra*.

2              **D.      The Four Proposed Classes Are Ascertainable**

3          "A class is ascertainable if the class is defined with 'objective criteria' and if it is

4    'administratively feasible to determine whether a particular individual is a member of the class.'"

5    *Rahman v. Mott's LLP*, 2014 WL 6815779, at *4 (N.D. Cal. Dec. 3, 2014) (citations omitted).

6    Plaintiffs' proposed class definitions are sufficiently definite to identify putative class members.

7    Only those consumers who purchased Defendant's products with labels bearing the challenged

8    representations are included.  *See Astiana v. Kashi Co.*, 291 F.R.D. 493, 500 (S.D. Cal. 2013) ("As

9    long as the class definition is sufficiently definite to identify putative class members, '[t]he

10   challenges entailed in the administration of this class are not so burdensome as to defeat

11   certification.'") (internal citations omitted.)  As in *Astiana*, "the proposed class definition[s] simply

12   identif[y] purchasers of Defendant's products that included the allegedly material

13   misrepresentations.  Because the alleged misrepresentations appeared on the actual packages of the

14   products purchased, there is no concern that the class includes individuals who were not exposed

15   to the misrepresentation."  *Id*.  By definition, consumers who purchased products outside the class

16   period or purchased products without the alleged misrepresentations are excluded from the classes.

17   This leaves clear and ascertainable classes.

18              **E.      Plaintiffs and Their Counsel Will Adequately Represent the Classes**

19         Rule 23(a)(4) requires that the class representative "fairly and adequately protect the

20   interests of the class."  Fed. R. Civ. P. 23(a)(4). The Ninth Circuit has established a two-prong test

21   for this requirement: "(1) Do the representative plaintiffs and their counsel have any conflicts of

22   interest with other class members, and (2) will the representative plaintiffs and their counsel

23   prosecute the action vigorously on behalf of the class?" *Staton*, 327 F.3d at 957.

24         Because adequacy is closely related to typicality, where, as here, the claims of the class

25   members and the proposed class representatives are reasonably co-extensive, there is no conflict.

26   *See Falcon*, 457 U.S. at 157-58 n.13.  Moreover, if there are any doubts as to the adequacy of

27   representation or potential conflicts, they should be resolved in favor of upholding the class,

28   subject to later possible reconsideration. *See* 3 Alba Conte & Newberg, *Newberg on Class Actions*

1  § 7.24 (3d ed. 1992).  Here, the proposed class representatives have no interests that are in conflict

2  with the interests of the members of the proposed class.  Further, Plaintiffs and their counsel have,

3  and continue to, vigorously prosecute this case.  *See also* sections V and VI, *infra*.

4  ### III.   PLAINTIFFS SATISFY THE REQUIREMENTS OF RULE 23(B)(3)

5       Plaintiffs seek the certification of classes under both Rule 23(b)(2) and Rule 23(b)(3).  Rule

6  23(b)(3) provides that a class may be certified where: "the court finds that the questions of law or

7  fact common to class members predominate over any questions affecting only individual members,

8  and that a class action is superior to other available methods for fairly and efficiently adjudicating

9  the controversy."  This inquiry "tests whether proposed classes are sufficiently cohesive to warrant

10 adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997).

11 Moreover, "Rule 23(b)(3) requires a showing that *questions* common to the class predominate, not

12 that those questions will be answered, on the merits, in favor of the class." *Amgen, Inc.*, 133 S. Ct.

13 at 1191 (emphasis in original). The proposed classes meet this standard.

14      **A.**   <u>**Common Questions of Law or Fact Predominate**</u>

15      **1.**   **Plaintiffs' UCL and FAL Claims**

16      The UCL prohibits "any unlawful, unfair or fraudulent business act or practice." Cal. Bus. &

17 Prof. Code § 17200. The FAL prohibits any "unfair, deceptive, untrue, or misleading advertising."

18 Cal. Bus. & Prof. Code § 17500.  An FAL violation necessarily constitutes a violation of the UCL.

19 *Williams v. Gerber Prods. Co*., 552 F.3d 934, 938 (9th Cir. 2008).

20      Because the UCL is intended to deter unfair business practices expeditiously, "relief under

21 the UCL is available without individualized proof of deception, reliance and injury." *Stearns v.*

22 *Ticketmaster Corp*., 655 F.3d 1013, 1020 (9th Cir. 2011). To state a claim under the UCL, a

23 plaintiff need only "show that members of the public are likely to be deceived" by the defendant's

24 conduct. *In re Tobacco II Cases*, 46 Cal.4th 298, 312 (2009).  "'Likely to deceive' ... indicates

25 that the ad[vertisement] is such that it is probable that a significant portion of the general

26 consuming public or of targeted consumers, acting reasonably in the circumstances, could be

27 misled." *Lavie v. Procter & Gamble Co.*, 105 Cal.App.4th 496, 508 (2003). The FAL uses the

28 same standard as the UCL.  *See Block v. eBay, Inc*., 747 F.3d 1135, 1140 (9th Cir. 2014).

1    As set forth above, Plaintiffs have made a *prima facie* showing that Defendant's labeling

2    schemes at issue violate the Sherman Law.  *See* section I, *supra*.  Such violations are

3    independently actionable under the UCL.  *See Rahman v. Mott's LLP*, 2014 WL 6815779, at *7

4    (N.D. Cal. Dec. 3, 2014).  Such a showing also gives rise to a presumption of materiality.  *See*

5    *Hinojos*, 718 F.3d at 1107 ("[T]he legislature's decision to prohibit a particular misleading

6    advertising practice is evidence that the legislature has deemed that the practice constitutes a

7    'material' misrepresentation, and courts must defer to that determination.").[12]

8    Furthermore, "[a] presumption, or at least an inference, of reliance arises wherever there is a

9    showing that a misrepresentation was material."  *In re Tobacco II Cases*, 46 Cal.4th at 327. To

10   satisfy the reliance requirement, "the allegedly deceptive or misleading statement need not be the

11   only cause for the plaintiffs' purchase of the products, but it must be 'an immediate cause' of their

12   purchase."  *Allen v. Hyland's Inc*., 300 F.R.D. 643, 666 (C.D. Cal. 2014) (quoting *In re Tobacco II*

13   *Cases*, 46 Cal.4th at 326).  To that end, Plaintiffs have actually relied on the misrepresentations on

14   Defendants' products.  Ang Depo. at 190-200; Streit Depo. at 250-56.[13]

---

[12]   While Plaintiffs have established a presumption of materiality, the Caswell Declaration
further demonstrates that reasonable consumers would be misled by the misrepresentations on
Defendant's product labeling.  *See* Caswell Decl. ¶¶ 24-25.

[13]   In addition to the four specific misrepresentations at issues, Plaintiffs also relied on the
belief that the products they purchased at their local stores were legal to sell and possess in the first
place.  Had Plaintiffs known that the products at issue were illegal, they would not have purchased
them.  Ang Depo. at 190.  "To put it simply, the public expects everyone to comply with
applicable health and safety regulations. This expectation is codified in the substantive law that
prohibits the violation of those regulations."  *U.S. v. Technic Services, Inc*., 314 F.3d 1031, 1050
(9th Cir. 2002), *overruled on other grounds*, *U.S. v. Contreras*, 593 F.3d 1135 (9th Cir. 2010).
*Accord, Park v. Welch Foods, Inc.,* 2014 WL 1231035, at *2 (N.D. Cal. Mar. 21, 2014) ("Plaintiffs
may have acted differently if they were aware of a way to avoid it, thus making the liability
relevant to this case. This is true even if the contraband at issue is not illegal drugs, but the label on
a bottle of delicious grape juice. Ironically, Welch's argument that the allegations should be struck
because other consumers may opt not to buy Welch's products if they know of the potential for
criminal liability speaks to precisely that point.").  Under federal and state law it is illegal to
manufacture, sell, purchase, or possess misbranded food products.  *See* Cal Health & Safety Code
§ 110760; 21 U.S.C. § 331.  Indeed, under both federal and state law it is a strict liability crime.
*See* Cal. Health & Safety Code § 111825(a); 21 U.S.C. § 333(a)(1).  "The fact remains, however,
that in California, '[i]t is unlawful for any person to…hold or offer for sale any food that is
misbranded,' and the statute establishing that is subject to the punishments described above.  That
means that Plaintiffs could, in fact, be arrested and prosecuted for unlawful possession of
misbranded goods."  *Park*, 2014 WL 1231035, at *2.

1   Each member of the proposed classes purchased a misbranded product containing one of the

2   four misrepresentations relied upon by Plaintiffs.  The claims of all class members are based on the

3   same legal theories as those of Plaintiffs.  As examples, the claims of all members of the Heart-

4   Check Class turn on whether the Heart-Check Mark is a paid endorsement and the claims of all

5   members of the Whole Grain Class turn on whether the phrases "excellent source" or "good

6   source" of whole grain" are permissible under federal and state law (they are not).  If the label of a

7   product purchased by any class member is illegal, the labels of the products purchased by all

8   members of that class are illegal.  For all these reasons, common issues of fact and law

9   predominate with respect to all claims of the members of each class.

10                      **2.      Plaintiffs' CLRA Claims**

11   The CLRA prohibits "unfair methods of competition and unfair or deceptive acts or

12   practices." Cal. Civ. Code § 1770(a). To bring a CLRA claim, a plaintiff must "'show not only that

13   a defendant's conduct was deceptive but that the deception caused [him or her] harm.'" *Stearns*,

14   655 F.3d at 1022 (quoting *In re Vioxx*, 180 Cal.App.4th 116, 129 (Cal. App. 2009)).  While each

15   class member must have an injury caused by an unlawful practice, "[c]ausation, on a classwide

16   basis, may be established by materiality.  If a court finds that material misrepresentations have

17   been made to the entire class, an inference of reliance arises as to the class." *Id*.  For the same

18   reasons discussed above, there is a presumption of reliance and materiality because the California

19   legislature has deemed the alleged misrepresentations to be illegal.  *Hinojos*, 718 F.3d at 1107; *In*

20   *re Steroid Hormone Prod. Cases,* 181 Cal. App. 4th 145, 156-57 (Cal. App. 2010).

21   Absent a legislative or administrative determination, materiality is otherwise demonstrated

22   by showing that "a reasonable man would attach importance to its existence or nonexistence in

23   determining his choice of action in the transaction in question, and as such materiality is generally

24   a question of fact unless the fact misrepresented is so obviously unimportant that the jury could not

25   reasonably find that a reasonable man would have been influenced by it." *In re Steroid Hormone*

26   *Prod. Cases,* 181 Cal. App. 4th at 157.  That standard is also met.

27   The four misrepresentations at issue are material.  Indeed, the FDA made a determination

28   that they were material when regulations were promulgated to bar their use on food products.  The

1   California legislature made a determination that they were material when it chose to adopt the

2   FDA's regulations *in toto*.  Regardless, a reasonable consumer would attach significance to these

3   misrepresentations.  *See* Ang Depo. at 190-200; Streit Depo. at 250-56; Caswell Decl. ¶¶ 24-25.

4   Indeed, it is for this very reason that Defendant placed these misrepresentations on its labels in the

5   first place.  *See, e.g.,* Exhibits 12-14, 20.

6                   **B.      Monetary Relief Can Be Determined on a Class-wide Basis**

7         "At class certification, plaintiff[s] must present a likely method for determining class

8   damages, though it is not necessary to show that his method will work with certainty at this time."

9   *Astiana v. Kashi Co*., 291 F.R.D. 493, 506 (S.D. Cal. 2013) (quoting *Chavez v. Blue Sky Natural*

10  *Beverage Co*., 268 F.R.D. 365, 379 (N.D. Cal. 2010)).  Once the hurdle is overcome, while the

11  "amount of damages is invariably an individual question [it] does not defeat class action

12  treatment." *Leyva v. Medline Indust. Inc.*, 716 F.3d 510, 513-14 (9th Cir. 2013).  Moreover, that

13  hurdle can be easily met with the proper expert analysis.  *See, e.g., Astiana*, 291 F.R.D. at 506.  At

14  this time, Plaintiffs need only present a framework that is "executable."  *Zeisel v. Diamond Foods,*

15  *Inc*., 2011 WL 2221113, at *10 (N.D. Cal. June 07, 2011).  *See also In re High-Tech Employee*

16  *Antitrust Litig*., 289 F.R.D. 555, 567 (N.D. Cal. Apr. 5, 2013) (at the class certification stage,

17  plaintiffs' expert need not have performed any actual damage calculation, but need only propose a

18  "plausible" model for calculating damages).

19        Further, "*Comcast* does not mandate that certification pursuant to Rule 23(b)(3) requires a

20  finding that damages are capable of measurement on a classwide basis."  *Roach v. T.L. Cannon*

21  *Corp*., --- F.3d ----, 2015 WL 528125, at *1 (2d Cir. Feb. 10, 2015).  *Accord, In re Nexium*

22  *Antitrust Litig*. --- F.3d ----, 2015 WL 265548, at *10 (1st Cir. Jan. 21, 2015) ("*Comcast* did not

23  require that plaintiffs show that all members of the putative class had suffered injury at the class

24  certification stage—simply that at class certification, the damages calculation must reflect the

25  liability theory.").  Further, "the presence of individualized damages cannot, by itself, defeat class

26  certification under Rule 23(b)(3)."  *Leyva*, 716 F.3d at 514; *see also In re IKO Roofing Shingle*

27  *Products Liability Litig*., 757 F.3d 599, 602 (7th Cir. 2014) (vacating decision denying

28  certification, finding no requirement of a "commonality of damages" because if there were, "then

1    class actions about consumer products are impossible").

2          Here, monetary relief will be relatively easy to calculate because class members are entitled

3    to the full refund of their purchase price.  "It is unlawful for any person to manufacture, sell,

4    deliver, hold, or offer for sale any food that is misbranded."  California Health & Safety Code §

5    110760.[14]  *See also Park,* 2014 WL 1231035, at *2 ("The fact remains, however, that in

6    California, '[i]t is unlawful for any person to…hold or offer for sale any food that is misbranded,'

7    and the statute establishing that is subject to the punishments described above.  That means that

8    Plaintiffs could, in fact, be arrested and prosecuted for unlawful possession of misbranded

9    goods.").[15]  Indeed, a violation of the food misbranding laws is a strict liability crime.  *See* Cal.

10   Health & Safety Code § 111825(a); 21 U.S.C. § 333(a)(1).  Because the products at issue are

11   misbranded, they are illegal.  For that reason, they are worth zero.  Several Circuits have

12   determined that, as a matter of law, food products in violation of 21 U.S.C. § 331 are worth zero.

13   *See U.S. v. Gonzalez-Alvarez*, 277 F.3d 73, 78 (1st Cir. 2002) ("We accept this argument, and hold

14   that where a product cannot be sold lawfully it has a value of zero . . . ."); *accord*, *U.S. v. Milstein*,

15   401 F.3d 53, 74 (2d Cir. 2005); *U.S. v. Bhutani*, 266 F.3d 661, 669-70 (7th Cir. 2001).  In return

16   for their purchase price, class members received a product with no value.  Therefore, they are

17   entitled to the return of their full purchase price.

18         To that end, equity dictates that class members would also be entitled to restitutionary

19   _____

20   [14]     Under California law, persons who violate this statute are subject to "imprisonment for not
     more than one year in the county jail or a fine of not more than one thousand dollars ($1,000), or
21   both the imprisonment and fine." Cal. Health & Safety Code § 111825.

22   [15]     While, at first blush, this may seem to be an exaggeration of the seriousness of dealing in
     misbranded food products, both Congress and the California legislature determined that such
23   conduct should be a crime and, in fact, should be a strict liability crime.  Such a position is far
     from unreasonable given the importance of the safety of the country's food supply.  It is not a
24   coincidence that the same statute that makes it illegal to deal in misbranded food (21 U.S.C. § 331)
     also makes it illegal to deal in adulterated medical devices.  The same statute that makes it a strict
25   liability crime to deal in misbranded food (21 U.S.C. § 333) also makes it a strict liability crime to
     deal in adulterated medical devices.  It is not hard to understand why adulterated medical devices
26   are treated with such seriousness, and Congress and the California legislature have determined that
     misbranded food must be treated the same way.  While some might question the soundness of
27   these determinations of Congress and the California legislature, absent a constitutional infirmity,
     the Court must defer to those determinations.  The products at issue are illegal and may not be
28   lawfully sold, held, or resold, regardless of a party's knowledge or intent.

1   disgorgement of the revenues received as a result of the sale of the products at issue to class

2   members.  Here, the loss to class members (the retail price) is necessarily greater than revenues or

3   profits received by Defendant at the wholesale level.  Therefore, if class members are unable to

4   establish the full extent of their loss at the retail level, they can establish a "floor" for the relief to

5   which they are entitled because their actual retail loss is no less than the amount received by

6   Defendant at the wholesale level.  Such a method of calculating monetary relief also would not

7   prejudice Defendant because, using this method, class members would actually receive less than

8   the amount of their loss.[16]

9        Dr. Donald May, an expert in the type of economic analysis required in such consumer

10   product actions, sets forth how the purchase price of all class members can be determined.  *See*

11   Declaration of Dr. Donald M. May dated February 18, 2014 (Exhibit 5) at ¶¶ 18-20.  He also sets

12   forth how the amount of restitutionary disgorgement can be calculated.  *Id* at ¶¶ 21-24.

13        However, should the Court determine that class members are entitled to less than their full

14   purchase price, Dr. May sets forth several other ways in which monetary relief can be calculated

15   on a class-wide basis.  These are multiple regression analyses using both hedonic and before and

16   after approaches.  Specifically, they include the analysis of the value of product labeling

17   characteristics (which calibrates differences in prices and sales of products with and without the

18   labeling claims at issue); and the analysis of incremental sales revenues (which calibrates

19   differences in  prices and sales of the products at issue during the time in which they have been

20   labeled with the misrepresentations at issue and prices and sales of these products before the

21   misrepresentations were placed on the labels, or after they were removed).  *Id* at ¶¶ 25-55.  All the

22   means of calculation proposed by Dr. May are appropriate methods for determining class damages

23   that are both plausible and executable.

24   _____

[16]   Plaintiffs seek restitution under their UCL and FAL claims, and both restitution and

25   damages under their CLRA claims.  Restitutionary relief has two purposes: "returning money
    unjustly taken from the class, and deterring the defendant from engaging in future violations of the

26   law." *Guido v. L'Oreal*, 2013 U.S. Dist. LEXIS 94031, at *36 (C.D. Cal. 2013).  "A court
    awarding restitution under the California consumer protection laws has 'very broad' discretion to

27   determine an appropriate remedy award as long as it is supported by the evidence and is consistent
    with the purpose of restoring to the plaintiff the amount that the defendant wrongfully acquired.'"

28   *Astiana*, 291 F.R.D. at 506 (C.D. Cal. 2013) (citation omitted).

### 1. Alternatively, Class Members Are Entitled to Statutory Minimum Damages and Nominal Damages

Even if the actual relief to which class members are entitled cannot be sufficiently calculated, under the CLRA, "in no case shall the total award of damages in a class action be less than one thousand dollars ($1,000)."  Cal. Civ. Code § 1780(a)(1).  Therefore, if Defendant is found liable for violations of the CLRA, at a minimum, the classes would be entitled to damages of $1,000 for each violation.  *See Pickman v. American Exp. Co.*, 2012 WL 258842, at *2 (N.D. Cal. Jan. 27, 2012).  Class members would also be entitled to punitive damages.

Also, with respect to all claims of the classes, Cal. Civ. Code § 3360 provides that, "When a breach of duty has caused no appreciable detriment to the party affected, he may yet recover nominal damages."  To the extent the Court determines that relief cannot be determined on a class-wide basis based on the methods discussed in Dr. May's declaration, classes can still be certified.  Even if it is not possible to satisfactorily determine the actual damages of the classes, under Cal. Civ. Code § 3360, all class members would still be entitled to nominal damages.  *See Avina v. Spurlock*, 28 Cal. App. 3d 1086, 1088 (Cal. App. 1972) ("Nominal damages are properly awarded in two circumstances: (1) Where there is no loss or injury to be compensated but where the law still recognizes a technical invasion of a plaintiff's rights or a breach of a defendant's duty; and (2) although there have been, real, actual injury and damages suffered by a plaintiff, the extent of plaintiff's injury and damages cannot be determined from the evidence presented."); *ProMex, LLC v. Hernandez*, 781 F. Supp. 2d 1013, 1019 (C.D. Cal. 2011) (where no actual damages can be established, an award of nominal damages is appropriate); *Hutcherson v. Alexander*, 264 Cal. App. 2d 126, 135 (Cal. App. 1968) ("if the trial judge believed the evidence was completely speculative so that the amount of damages fixed would be entirely conjectural, he should have at least allowed plaintiffs nominal damages").  *See also Raiser v. Ventura College of Law*, 488 Fed. Appx. 219, 222 (9th Cir. 2012) (reversing dismissal of claim because, under California law, inability to show actual damages does not preclude recovery of nominal damages); *Cummings v. Connell*, 402 F.3d 936, 944 (9th Cir. 2005) (nominal damages available to all class members).  With an award of nominal damages, class members would also be entitled to punitive damages.  *See Scofield v.*

1    *Critical Air Medicine, Inc.*, 45 Cal. App. 4th 990, 1008 (Cal. App. 1996).

2          For all these reasons, any limitations in proposed damages models (either at the class

3    certification stage or later) would not preclude this action from being pursued as a class action.

4                    **C.    A Class Action Is the Superior Method for Resolving This Dispute**

5          Rule 23(b)(3) requires "that a class action is superior to other available methods for fairly

6    and efficiently adjudicating the controversy."  The rule sets forth four pertinent factors for

7    determining whether a class is the superior method for resolving a dispute.  All those factors weigh

8    in favor of class certification.

9                              **1.    Class Members Would Have No Interest
                                       In Pursuing Separate Individual Claims**

10         The first factor looks to "the class members' interests in individually controlling the

11   prosecution or defense of separate actions."  Fed. R. Civ. P. 23(b)(3)(A).  In consumer class

12   actions such as this, the potential costs of individual actions would likely dwarf any recovery. *See*

13   *Astiana v. Kashi Co.*, 291 F.R.D. 493, 507 (S.D. Cal. 2013) ("it would not be economically

14   feasible to obtain relief for each class member given the small size of each class member's

15   claim").  Moreover, if the members of the proposed classes each individually brought an action, it

16   would clog courts.  Accordingly, this factor favors class certification.

17                             **2.    There Are No Other Related Actions Pending**

18         The second factor is "the extent and nature of any litigation concerning the controversy

19   already begun by or against class members."  Fed. R. Civ. P. 23(b)(3)(B). Plaintiffs are unaware of

20   any other pending cases involving claims against Defendant that are similar to the claims asserted

21   in this action. Therefore, this factor also weighs in favor of class certification.

22                             **3.    This Court Is the Appropriate Forum for this Litigation**

23         The third factor is "the desirability or undesirability of concentrating the litigation of the

24   claims in the particular forum."  Fed. R. Civ. P. 23(b)(3)(C).  Plaintiffs reside within this Judicial

25   District.  Virtually all class members reside in California.  Further, Defendant has never sought to

26   transfer this action and has never suggested that this is an unduly inconvenient forum.  For these

27   reasons, this factor also weighs in favor of class certification.

28

1    **4.     The Proposed Classes Are Manageable**

2         The fourth factor looks to "the likely difficulties in managing a class action."  The

3    prosecution of the asserted claims as a class action is far more manageability than thousands of

4    litigations brought by individual persons who would otherwise be class members.  Moreover, it is

5    appropriate for courts, in deciding the best available method, to consider the "inability of the poor

6    or uninformed to enforce their rights, and the improbability that large numbers of class members

7    would possess the initiative to litigate individually."  *Haynes v. Logan Furniture Mart, Inc.*, 503

8    F.2d 1161, 1165 (7th Cir. 1974). Because of the relatively small purchase prices of the products at

9    issue, class members would have no other practical means of enforcing their rights.  Further, here,

10   a determination that one label is misbranded is a determination that all such labels are misbranded.

11   Finally, the proposed classes would be no more unwieldy than any other consumer class action.

12   Indeed, any determination that such classes are unmanageable would be the death knell of

13   consumer class actions.  Accordingly, all four factors favor class certification.

14   **IV.    PLAINTIFFS SATISFY THE REQUIREMENTS OF RULE 23(B)(2)**

15        Plaintiffs also seek certification of classes under Rule 23(b)(2).  Specifically, they seek:

16   declaratory relief that Defendant's labeling practices at issue are illegal; injunctive relief barring

17   Defendant from engaging in these labeling practices in the future; and all available incidental

18   monetary relief to which class members are entitled.  To certify a Rule 23(b)(2) class, "the party

19   opposing the class [must have] acted or refused to act on grounds that apply generally to the class,

20   so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class

21   as a whole."  Fed. R. Civ. P. 23(b)(2).

22        Unlike Rule 23(b)(3), Plaintiffs do not need to show predominance of common issues or

23   superiority of class adjudication, but only that there is a cohesiveness of class claims. *Walters v.*

24   *Reno*, 145 F.3d 1032, 1047 (9th Cir. 1998). To certify a class under Rule 23(b)(2), it is generally

25   sufficient "that class members complain of a pattern or practice that is generally applicable to the

26   class as a whole." *Rodriguez v. Hayes*, 591 F.3d 1105, 1125 (9th. Cir. 2010).  "The key to [a Rule

27   23(b)(2)] class is ... the notion that the conduct is such that it can be enjoined or declared unlawful

28   only as to all of the class members or as to none of them." *Dukes*, 131 S. Ct. at 2557 (internal

1    quotation marks omitted).

2        Here, Defendant is certainly "act[ing] or refus[ing] to act on grounds that apply generally to

3    the class." Fed. R. Civ. P. 23(b)(2).  The claims of each member of each proposed class all relate

4    to one specific illegal labeling practice.  If one label on a product purchased by one class member

5    is illegal, then the labels on all products purchased by all class members are illegal.  *See Ang v.*

6    *Bimbo Bakeries USA, Inc*., 2014 WL 1024182, at *8-9 (N.D. Cal. Mar. 13, 2014).  The same issues

7    of law pertain to each class member and the same declaratory and injunctive relief is appropriate

8    with respect to all class members. Accordingly, each of the four classes should be separately

9    certified under both Rule 23(b)(2) and 23(b)(3).

10       **V.    PLAINTIFFS SHOULD BE APPOINTED AS CLASS REPRESENTATIVES**

11       As set forth above, Plaintiffs are typical of the other members of the proposed classes.  *See*

12   section II.C, *supra*.  They have been involved in this litigation from the very beginning and are

13   prepared to assume all responsibilities as representatives of the proposed classes.  Accordingly,

14   they should be appointed as class representatives.  Alex Ang has purchased products containing all

15   four illegal labeling practices and should be a class representative for all four proposed classes.

16   Lynne Streit only purchased products that were misrepresented to be a source of whole grain and

17   misrepresented to be 100% whole wheat.  Therefore, Ms. Streit would only be a class

18   representative for the Whole Grain Class and the 100% Whole Wheat Class.

19       **VI.   PLAINTIFFS' COUNSEL  SHOULD BE APPOINTED AS CLASS COUNSEL**

20       "[A] court that certifies a class must appoint class counsel." Fed. R. Civ. P. 23(g)(1).  In

21   doing so, the Court must consider: (i) the work counsel has done in identifying or investigating

22   potential claims in the action; (ii) counsel's experience in handling class actions, other complex

23   litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable

24   law; and (iv) the resources that counsel will commit to representing the class.  *Id*.  Also, "[c]lass

25   counsel must fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(4).

26       Plaintiffs respectfully request that the Fleischman Law Firm, PLLC and Barrett Law Group,

27   P.A. be appointed as class counsel and that Pratt & Associates be appointed as local class counsel.

28   As set forth in the declarations of Keith M. Fleischman, Brian Herrington, and Ben F. Pierce Gore,

1  these firms are well suited to represent the proposed classes.  They have extensive experience with

2  class actions and have been intimately involved in the identification and investigation of the claims

3  at issue and have spent hundreds of hours diligently prosecuting the case on behalf of Plaintiffs.

4       Mr. Fleischman is one of the most respected and qualified class action attorneys in the

5  country. *See* Declaration of Keith M. Fleischman dated February 18, 2015 ("Fleischman Decl.") ¶¶

6  3-14.  The Fleischman Law Firm and its attorneys have been involved in some of the largest and

7  most complex criminal and civil litigations in the United States. They have brought commercial

8  disputes and SEC investigations to successful conclusions; won major dismissals of lawsuits; and

9  successfully litigated complaints brought on behalf of individual and corporate clients in both state

10  and federal courts. They have achieved successful outcomes representing a broad range of

11  institutions, corporations, and individuals, both as defendants and plaintiffs. *Id* at ¶¶ 9-13.

12      The Barrett Law Group is one of the most accomplished plaintiffs' firms in the country and

13  Brian Herrington is a highly accomplished attorney.  *See* Declaration of Brian Herrington dated

14  February 18, 2015 ("Herrington Decl.") ¶¶ 4-5.  Both the Fleischman Law Firm and the Barrett

15  Law Group have specific experience with food misbranding class actions, as well as the resources

16  to successfully prosecute this action.  Fleischman Decl. ¶ 12; Herrington Decl. ¶¶ 5-6.

17      Mr. Gore and Pratt & Associates also have extensive class action experience, which is set

18  forth in Mr. Gore's declaration.  *See* Gore Decl. ¶¶ 3-4.  Of particular significance, Mr. Gore has

19  likely appeared in more food misbranding actions than any other attorney in California (if not the

20  country).  Indeed, he has appeared in approximately 58 food misbranding actions.  *Id* at ¶ 4.  He

21  has diligently represented Plaintiffs and he and his firm should be appointed as local class counsel.

22                                     **<u>CONCLUSION</u>**

23      For the foregoing reasons, Plaintiffs respectfully request that the Court grant their motion to

24  certify the four proposed classes under both Rule 23(b)(3) and Rule 23(b)(2); appoint Plaintiffs as

25  class representatives; and appoint Plaintiffs' counsel as class counsel.

26  Dated:  February 18, 2015.                         Respectfully submitted,

27                                           */s/ Bradley F. Silverman*

28                                           Keith M. Fleischman (*admitted pro hac vice*)
                                            Bradley F. Silverman (*admitted pro hac vice*)

THE FLEISCHMAN LAW FIRM, PLLC
565 Fifth Avenue, Seventh Floor
New York, New York 10017
Telephone: (212) 880-9571
Fax:  (917) 591-5245
keith@fleischmanlawfirm.com
bsilverman@fleischmanlawfirm.com

Ben F. Pierce Gore (SBN 128515)
PRATT & ASSOCIATES
1871 The Alameda, Suite 425
San Jose, CA  95126
Telephone:  (408) 429-6506
Fax:  (408) 369-0752
pgore@prattattorneys.com

*Attorneys for Plaintiffs*