HOGAN LOVELLS US LLP
Mark C. Goodman (Bar No. 154692)
Ethan A. Miller (Bar No. 155965)
David W. Skaar (Bar No. 265377)
3 Embarcadero Center, Suite 1500
San Francisco, California  94111
Telephone:      (415) 374-2300
Facsimile:      (415) 374-2499
mark.goodman@hoganlovells.com
ethan.miller@hoganlovells.com
david.skaar@hoganlovells.com

Attorneys for Defendant
Bimbo Bakeries USA, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| Alex Ang and Lynn Streit,<br><br>                    Plaintiffs,<br><br>          v.<br><br>Bimbo Bakeries USA, Inc.,<br><br>                    Defendant. | Case No.  13-CV-01196-HSG (NC)<br><br>**DEFENDANT'S OPPOSITION TO MOTION FOR CLASS CERTIFICATION, APPOINTMENT OF CLASS REPRESENTATIVES AND APPOINTMENT OF CLASS COUNSEL**<br><br>Date:      April 23, 2015<br>Time:      2:00 p.m.<br>Judge:    Hon. Haywood S. Gilliam, Jr. |

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ................................................................................................ 1

II.   DISCUSSION .................................................................................................... 3

      A.    The Plaintiffs Cannot Satisfy Each Requirement Of Rule 23 ................................... 3

      B.    The Plaintiffs Cannot Satisfy The Threshold Requirements of Rule 23(a) .............. 4

            1.    The Proposed Classes are not Ascertainable ...................................................... 4

            2.    The Plaintiffs have not Shown that their Claims are Typical ............................. 7

                  a.    The Whole Grains Statements did not Mislead these Plaintiffs.................... 8

                  b.    The Plaintiffs were not Misled by "100% Whole Wheat" ........................... 9

                  c.    Mr. Ang would have Bought Bimbo Toasted Bread Anyway ................... 10

                  d.    Mr. Ang was not Misled by the "Heart Check Mark" ............................... 11

                  e.    Data Confirm that the Plaintiffs are not Typical ......................................... 12

                  f.    The Plaintiffs are not Typical of those who Allegedly Bought Products
                        that the Plaintiffs did not ............................................................................... 13

      C.    Certification Under Rule 23(b)(3) Is Also Inappropriate ......................................... 15

            1.    The Claims Necessarily Raise Individual Issues of Proof ............................... 15

            2.    Individualized Purchasing Inquiries would be Required ................................. 18

            3.    There is no Classwide Method of Granting Relief ........................................... 18

                  a.    The Full Refund Model is Inappropriate ...................................................... 19

                  b.    "Restitutionary Disgorgement" is Inappropriate ......................................... 20

                  c.    The Value of the Allegedly False Statements cannot be Calculated ........... 21

                  d.    Statutory and Nominal Damages are Inappropriate ..................................... 23

            4.    Class Treatment is not Superior to other Methods of Adjudication.................. 23

      D.    Certification Under Rule 23(b)(2) Would Be Inappropriate .................................... 24

III.  CONCLUSION ................................................................................................. 25

HOGAN LOVELLS US
LLP
ATTORNEYS AT LAW
SAN FRANCISCO

i

DEFENDANT'S OPPOSITION TO MOTION FOR
CLASS CERTIFICATION 13-CV-01196-HSG(NC)

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**CASES**

4

*Algarin v. Maybelline, LLC,*
    300 F.R.D. 444 (S.D. Cal. 2014)........................................................................ 4, 24

5

*Allen v. Hyland's Inc.,*
6       300 F.R.D. 643 (C.D. Cal. 2014) ............................................................................. 8

7

*AmChem Products, Inc. v. Windsor,*
    521 U.S. 591 (1997)............................................................................................... 3, 4

8

9

*Astiana v. Ben & Jerry's Homemade, Inc.,*
    2014 WL 60097 (N.D. Cal. 2014).................................................................... passim

10

*Brazil v. Dole Packaged Foods, LLC,*
11      2014 WL 2466559 (N.D. Cal. 2014)................................................................ passim

12

*Bruton v. Gerber Prods. Co.,*
    2014 WL 2860995 (N.D. Cal. 2014)........................................................... 4, 5, 6, 7

13

14

*Comcast Corp. v. Behrend,*
    133 S. Ct. 1426 (2013) ........................................................................................ 3, 18

15

16

*Diacakis v. Comcast Corp.,*
    2013 WL 1878921 (N.D. Cal. 2013)......................................................................... 7

17

*Ellis v. Costco Wholesale Corp.,*
    657 F.3d 970 (9th Cir. 2011).................................................................................... 4

18

19

*Forcellati v. Hyland's, Inc.,*
    876 F.Supp.2d 1155 (C.D. Cal. 2012)..................................................................... 14

20

*General Tel. Co. v. Falcon,*
21      457 U.S. 147 (1982) .................................................................................................. 3

22

*Gonzalez v. Proctor & Gamble Co.,*
    247 F.R.D. 616 (S.D. Cal. 2007)............................................................................. 16

23

24

*Hanlon v. Chrysler Corp.,*
    150 F.3d 1011 (9th Cir. 1998).................................................................................. 7

25

*Hanon v. Dataproducts Corp.,*
26      976 F.2d 497 (9th Cir. 1992).................................................................................... 7

27

*Hodes v. Van's International Foods,*
    2009 WL 2424214 (C.D. Cal. 2009)....................................................................... 18

28

HOGAN LOVELLS US
LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- ii -

DEFENDANT'S OPPOSITION TO MOTION FOR
CLASS CERTIFICATION 13-CV-01196-HSG(NC)

*In re Google Adwords Litigation*,
    2012 WL 28068 (N.D. Cal. 2012) .................................................................................. 19

*In re POM Wonderful LLC*,
    2014 WL 1225184 ...................................................................................................... 20, 21

*In re Tobacco II Cases*,
    46 Cal.4th 298 (2009) ..................................................................................................... 15

*Jones v. ConAgra Foods, Inc.*,
    2014 WL 2702726 (N.D. Cal. 2014) ......................................................................... passim

*Khasin v. The Hershey Co.*,
    No. 5:12-cv-01862-EJD ................................................................................................... 19

*Knutson v. Schwan's Home Service, Inc.*,
    2013 WL 4774763 (S.D. Cal. 2013) ................................................................................ 24

*Lanovaz v. Twinings North America, Inc.*,
    2014 WL 1652338 ..................................................................................................... 19, 23

*Lilly v. Jamba Juice Co.*,
    2014 WL 4652283 (N.D. Cal. 2014) ................................................................................ 20

*Lozano v. AT&T Wireless Servs., Inc.*,
    504 F.3d 718 (9th Cir. 2007) ............................................................................................. 3

*Major v. Ocean Spray Cranberries, Inc.*,
    2013 WL 2558125 (N.D. Cal. 2013) ................................................................................ 13

*Mazur v. eBay, Inc.*,
    257 F.R.D. 563 (N.D. Cal. 2009) ...................................................................................... 7

*Ogden v. Bumble Bee Foods, LLC*,
    292 F.R.D. 620 (N.D. Cal. 2013) ............................................................................... 14, 20

*Picus v. Wal-Mart Stores, Inc.*,
    256 F.R.D. 651 (D. Nev. 2009) ........................................................................................ 24

*Red v. Kraft Foods, Inc.*,
    2012 WL 8019257 (C.D. Cal. 2012) ..................................................................... 20, 22, 23

*Sethavanish v. ZonePerfect Nutrition Co.*,
    2014 WL 580696 (N.D. Cal. 2014) ................................................................................ 5, 7

*Sprague v. General Motors Corp.*,
    133 F.3d 388 (6th Cir. 1998) ........................................................................................... 15

*Stearns v. Ticketmaster Corp.*,
    655 F.3d 1013 (9th Cir. 2011) ............................................................................... 8, 12, 16

HOGAN LOVELLS US
LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- iii -

DEFENDANT'S OPPOSITION TO MOTION FOR
CLASS CERTIFICATION 13-CV-01196-HSG(NC)

*Stuart v. Radioshack Corp.*,
2009 WL 281941 (N.D. Cal. 2009)........................................................................25

*Thurston v. Bear Naked, Inc.*,
2013 WL 5664985 (S.D. Cal. 2013) .........................................................................8

*Wal-Mart Stores, Inc. v. Dukes*,
131 S.Ct. 2541 (2011) ..............................................................................................8

*Webb v. Carter's Inc.*,
272 F.R.D. 489 (C.D. Cal. 2011) ...........................................................................16

*Werdebaugh v. Blue Diamond Growers*,
2014 WL 7148923 (N.D. Cal. 2014)......................................................3, 6, 19, 20

*Wilson v. Frito-Lay N. Am., Inc.*,
961 F.Supp.2d 1134 (N.D. Cal. 2013) ....................................................................14

*Xavier v. Philip Morris USA Inc.*,
787 F.Supp.2d 1075 (N.D. Cal. 2011) ..........................................................4, 5, 6, 7

*Zinser v. Accufix Research Inst., Inc.*,
253 F.3d 1180 (9th Cir. 2001)...................................................................................3

*Zulewski v. Hershey Co.*,
2013 WL 1748054 (N.D. Cal. Apr. 23, 2014) ..........................................................3

**STATUTES**

Civil Code § 3360 ...........................................................................................................23

**OTHER AUTHORITIES**

Federal Rule of Civil Procedure 23............................................................................passim

HOGAN LOVELLS US LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANT'S OPPOSITION TO MOTION FOR
CLASS CERTIFICATION 13-CV-01196-HSG(NC)

1

## I.      INTRODUCTION

2          Over the last five years, California courts have been inundated with putative class action

3    lawsuits challenging food labels like those at issue here.  Over 60 of those cases have been filed

4    by the plaintiffs' attorney in this case, Pierce Gore, alone.  Yet, virtually none of these cases has

5    been certified as a class action, primarily because individual issues inevitably permeate issues of

6    reliance, causation and damages when it comes to food labels and consumers' purchasing

7    decisions.  This is especially true where -- as here -- the products bear unique labels that changed

8    throughout the alleged class period, the retail prices of the products varied depending on where

9    and when the products were purchased, the actual price paid varied from consumer to consumer

10   and consumers had various reasons for purchasing the products.  Common sense (and legal

11   precedent) tells us that people buy food products for a variety of reasons -- such as taste, texture,

12   price and familiarity -- that have nothing to do with the labels.  And damages, which would be the

13   difference between the actual price paid and the actual value received, cannot be calculated on a

14   classwide basis.  Under such circumstances, class treatment is simply inappropriate.

15         The two named plaintiffs purport to represent 4 classes consisting of all California

16   consumers who purchased certain Bimbo Bakeries USA, Inc. ("BBUSA") products since March

17   2009.  (Dkt. 102 at i-ii.)  Despite the fact that there are over 30 products (and numerous varieties

18   of such products) at issue *and* most of these products' labels have been substantially altered

19   during the class period so that they did not have the labeling claims at issue on them during the

20   entire class period *and* the labels include numerous statements on which consumers rely in

21   addition to those that are at issue *and* the plaintiffs testified that they did not necessarily rely on

22   the labeling statements about which they now complain, the plaintiffs still argue that this case

23   presents uniform issues.  This argument ignores both the nature of food buying decisions and the

24   plaintiffs' own deposition testimony, which only points up the individuality of food consumers.

25   For example, Alex Ang testified that he bought Bimbo Toasted Bread because it was familiar to

26   him, that he knew it was not bread and that he would have bought it even if he had known that it

27   contained artificial coloring.  Nor was Mr. Ang misled by the American Heart Association (AHA)

28   Heart-Check Mark, which he correctly understood (before his lawyer told him otherwise) meant

1

that the AHA certified that the product met certain nutritional guidelines. How could Mr. Ang represent a class of consumers who were supposedly misled when he testified that he was not?

The plaintiffs' testimony regarding the whole grain and 100% whole wheat claims further undermines their motion. While both plaintiffs testify in the abstract that they relied on these claims, neither can explain why or how they did so with respect to the specific products and labels at issue here, especially since they do not even know what whole grains are or what constitutes a good or excellent source of whole grains. They also testified that they bought bread for reasons that had nothing to do with whole wheat or whole grains and they did not always buy 100% whole wheat bread or bread that is a source of whole grains. Indeed, Mr. Ang testified that he did not believe there was any difference between "wheat bread" and "100% whole wheat bread," did not necessarily purchase the products at issue and did not rely on whole grains statements in making purchasing decisions. And while both plaintiffs understand that "soy flour" is not grain flour, they allege that it somehow detracts from the 100% whole wheat flour in BBUSA's products. Obviously, not all consumers feel this way. Indeed, Mr. Ang testified that he would have purchased the products even if soy flour were included as an ingredient.

Plaintiffs' paid consultants do not help (much less save) their motion. Dr. Caswell, who failed to survey a single California consumer, lacks foundation for her opinion that all labels are material to the putative California class members. Dr. Caswell has issued similar opinions in other cases and has been criticized for them. Dr. May, who insists that he could calculate average damages based on sales records, cannot identify any specific evidence of damages and cannot isolate the challenged labeling statements as a cause of any harm. There are simply too many variables unrelated to the challenged labels that influence consumers' purchasing decisions to treat these claims as uniform. The empirical data generated by BBUSA's expert Dr. Kent Van Liere validate this notion: California consumers buy food products for reasons that are unique to each consumer, most of which have nothing to do with a particular labeling claim. Food purchasers are inherently fickle; what is material to one person is not necessarily important to the thousands of other people who bought the same product, and preferences often change over time. Significantly, two purchasers of the same product often pay different amounts (even in the same

store on the same day) and necessarily derive varying levels of value from the product in terms of flavor, hydration or satiety.

Such individualized issues have prompted courts in this District to routinely refuse to certify cases just like this one. The plaintiffs have not given this Court any basis to break from this overwhelming trend. Accordingly, the plaintiffs' motion should be denied.

## II.    DISCUSSION

### A.    The Plaintiffs Cannot Satisfy Each Requirement Of Rule 23

Rule 23 dictates whether an action may be treated as a class action and it "does not set forth a mere pleading standard." *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1432 (2013). A plaintiff must "'be prepared to ***prove***'" that it can satisfy each element of Rule 23. *Id.* (emphasis added). The Court must conduct a rigorous analysis to determine whether the prerequisites of Rule 23 actually have been met. *General Tel. Co. v. Falcon*, 457 U.S. 147, 161 (1982); *Zinser v. Accufix Research Inst., Inc.,* 253 F.3d 1180, 1196 (9th Cir. 2001).[1]

To certify a class, the plaintiffs must first establish that: (1) the classes are so numerous that joinder of all members is impractical; (2) questions of law or fact implicated by the case are common to the class; (3) the plaintiffs' claims are typical of those of the class; and (4) the plaintiffs will fairly and adequately protect the interests of the class. *Lozano v. AT&T Wireless Servs., Inc.*, 504 F.3d 718, 724 (9th Cir. 2007). The class also must be "ascertainable." *Werdebaugh v. Blue Diamond Growers*, 2014 WL 7148923 at *5 (N.D. Cal. 2014) (citing *Bruton v. Gerber Prods. Co.*, 2014 WL 2860995 at *3 (N.D. Cal. 2014)).

If the plaintiffs were able to satisfy the requirements of Rule 23(a), they then would need to demonstrate that they satisfy Rule 23(b). *See AmChem Products, Inc. v. Windsor*, 521 U.S. 591, 611-13 (1997); *Werdebaugh,* 2014 WL 7148923 at *5 (Rule 23(b) requirements must be shown through "evidentiary proof"). Rule 23(b)(3) requires that "questions of law or fact

---

[1]  Although the plaintiffs' motion attempts to address the merits of their claims (*see* Motion at 2-10), and BBUSA certainly does not concede any of those arguments, it is improper to address the merits on a motion for class certification and BBUSA thus declines to do so. *See Zulewski v. Hershey Co.*, 2013 WL 1748054 at *1 (N.D. Cal. Apr. 23, 2014) (citing *Staton v. Boeing Co.*, 327 F.3d 938, 954 (9th Cir. 2003)). Suffice it to say that, if required, BBUSA will show that the plaintiffs' claims, like their class allegations, are without basis.

HOGAN LOVELLS US
LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- 3 -

DEFENDANT'S OPPOSITION TO MOTION FOR
CLASS CERTIFICATION 13-CV-01196-HSG(NC)

common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." "The Rule 23(b)(3) predominance inquiry 'tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation.'" *Astiana*, 2014 WL 60097 at *8 (quoting *AmChem Prods.*, 521 U.S. at 623). This analysis "focuses on the relationship between the common and individual issues" and requires that "common questions present a significant aspect of the case and [ ] can be resolved for all members of the class in a single adjudication." *Id.* at *9. If significant elements of the case require individual proof by putative class members, class certification is inappropriate as a matter of law. *AmChem Prods.*, 521 U.S. at 624-25; *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 986 (9th Cir. 2011) (citing *Zinser*, 253 F.3d at 1195). Rule 23(b)(2) also requires that the class action relates primarily to non-monetary relief: To the extent that monetary relief is sought, it "must be 'merely incidental to the primary claim' for injunctive relief." *Algarin v. Maybelline, LLC*, 300 F.R.D. 444, 458 (S.D. Cal. 2014). The plaintiffs cannot meet ***any*** of these legal requirements in this case.

### B.     The Plaintiffs Cannot Satisfy The Threshold Requirements Of Rule 23(a)

#### 1.     The Proposed Classes are not Ascertainable

"'As a threshold matter, and apart from the explicit requirements of Rule 23(a), the party seeking class certification must demonstrate that an identifiable and ascertainable class exists.'" *Bruton*, 2014 WL 2860995 at *4 (quoting *Sethavanish v. ZonePerfect Nutrition Co.*, 2014 WL 580696 at *4 (N.D. Cal. 2014)). "Without an objective, reliable way to ascertain class membership, the class quickly would become unmanageable, and the preclusive effect of final judgment would be easy to evade." *Xavier v. Philip Morris USA Inc.*, 787 F.Supp.2d 1075, 1089 (N.D. Cal. 2011). There is no such objectively reliable way to identify class members here.

Plaintiffs' motion tries to define classes by labeling claim but it ignores the fact that not all of the products that the plaintiffs seek to include bore the allegedly illegal statements during the entire "Class Period." The plaintiffs try to justify their overbroad class definitions by arguing that, "[b]y definition, consumers who purchased products outside the class period or purchased products without the alleged misrepresentations are excluded from the classes." (Motion at 14.)

Hogan Lovells US
LLP
Attorneys At Law
San Francisco

- 4 -

DEFENDANT'S OPPOSITION TO MOTION FOR
CLASS CERTIFICATION 13-CV-01196-HSG(NC)

1   But this argument has already been raised and rejected in at least one of Mr. Gore's prior cases:

2   "It is no answer that 'if certain varieties of PAM never bore a '100% natural' claim then those

3   products are not at issue.'"   *Jones v. ConAgra Foods, Inc.*, 2014 WL 2702726 at *11 (N.D. Cal.

4   2014).   The plaintiffs must show **how** they will identify consumers who bought products during

5   the class period with the challenged labels -- if they can be identified at all -- and their method for

6   doing so must be feasible.   The plaintiffs' failure to suggest **any** method for identifying class

7   members (let alone a feasible one) is fatal to their motion.   *Sethavanish*, 2014 WL 580696 at *6

8   (denying class certification because "Plaintiff has yet to present any method for determining class

9   membership, let alone an administratively feasible method").

10          Based on what Mr. Gore has tried to do in similar cases, BBUSA anticipates the argument

11  that the Court should allow putative class members to self-identify through sworn affidavits

12  regarding their purchases of these products.   But courts in this District have rejected that approach

13  because:  (1) consumers do not remember food purchasing history in sufficient detail; and (2) a

14  defendant should not be forced to accept a consumer's affidavit without the benefit of cross-

15  examination.   *See Jones*, 2014 WL 2702726 at *10 (discussing *Xavier*, 787 F.Supp.2d at 1090

16  (denying class certification)).   In *Jones*, which involved tomato products, cooking spray and

17  cocoa, Judge Breyer explained the inherent flaws in the plaintiffs' theory:

18              Even assuming that all proposed class members would be honest, it is hard to
                imagine that they would be able to remember which particular Hunt's
19              products they purchased from 2008 to the present, and whether those products
                bore the challenged label statements.… [W]hile named plaintiffs might make
20              a point of remembering in great detail their history with the products about
                which they have filed suit, regular class members might not. (*Id.* at *10.)
21
    The court expressed the same concerns regarding the proposed class of consumers who allegedly
22
    purchased seven varieties of cooking spray:
23
                The variety of products and labels, combined with the lack of receipts and the
24              low cost of the purchases, means that consumers are unlikely to accurately
                self-identify.  Plaintiffs have offered no verifiable means of identifying class
25              members.  And so the Court finds that the class is unascertainable. (*Id.* at
                *11.)
26
            Judge Koh reached the same conclusion in *Bruton* (where the plaintiff purchased 8 baby
27
    food products and challenged the labels on over 50 others) because, *inter alia*, the labels changed
28

1    during the class period:

2           The number of products at issue in this case, the varieties included and not
            included in the class definition, the changes in product labeling throughout the
3           class period, the varied and uncertain length of time it takes for products with
            new labels to appear on store shelves, and the fact that the same products were
4           sold with and without the challenged label statements simultaneously make
            Plaintiff's proposed class identification method administratively unfeasible.
5           (2014 WL 2860995 at *8.)

6    "While it may be reasonable to ask consumers to submit affidavits testifying that they purchased a

7    Gerber 2nd Foods product during the class period, asking consumers to remember whether or not

8    they purchased a qualifying flavor in a package that bore a challenged statement is unlikely to

9    produce reliable results." *Id.* *See also Astiana v. Ben & Jerry's Homemade, Inc.*, 2014 WL

10   60097 at *3 (N.D. Cal. 2014) (denying class certification where it was impossible to identify who

11   bought ice cream with alleged "non-natural" ingredient).[2]

12          Like the other cases that were not amenable to class treatment, there are no records in this

13   case that could identify retail purchasers of BBUSA products.  (Declaration of John C. Lee ("Lee

14   Decl.") at ¶ 3.)  Even the named plaintiffs have been unable to produce any receipts or other

15   documents establishing that they actually purchased BBUSA products with the challenged labels.

16   (Ang Dep., Ex. 13; Streit Dep. at 167:20-24.)[3]  Therefore, "proof" of purchase likely will depend

17   on consumers' memories, which, as other courts have found, is not enough to satisfy Rule 23.

18   Under the circumstances presented here, where labels and prices varied greatly, consumers would

19   need to know which products they purchased, exactly when and where they purchased them ***and***

20   whether the products that they purchased bore the allegedly false label.  (*See* Declaration of

21   Kenneth W. Gerhart ("Gerhart Decl.") at ¶¶ 3-8.)  As found in *Bruton* and *Jones*, this asks too

22

23   [2]  The two food cases in this District in which a class was certified are easily distinguishable
     because they involved products that all "contained the allegedly problematic statements
24   throughout the class period." *Bruton*, 2014 WL 2860995 at *9.  In both *Werdebaugh* and
     *Brazil v. Dole Packaged Foods, LLC*, 2014 WL 2466559 at *15 (N.D. Cal. 2014), "this Court []
25   placed significant weight on the fact that all products in the class definition contained the
     allegedly problematic statements throughout the class period." *Id.*  As Judge Koh noted in
26   *Bruton*, "the proposed classes in *Werdebaugh* and *Brazil* did not present ascertainability problems
     remotely as severe as exist in this case."  2014 WL 2860995 at *9.  The case before this Court is
27   almost identical to *Bruton* and the plaintiffs' motion should be denied for the same reasons cited
     by Judge Koh.
     [3]  The pertinent excerpts of the deposition of Alex Ang ("Ang Dep.") and deposition of Lynne
28   Streit ("Streit Dep.") are attached as Exhibits A and B, respectively, to the Declaration of David
     W. Skaar ("Skaar Decl.").

HOGAN LOVELLS US
LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- 6 -

DEFENDANT'S OPPOSITION TO MOTION FOR
CLASS CERTIFICATION 13-CV-01196-HSG(NC)

1  much of the Court.  It also violates BBUSA's due process right to contest the class membership of

2  each putative member and provides no means "to weed out inaccurate or fraudulent claims,"

3  which are both independent bases to deny class certification.  *Sethavanish*, 2014 WL 580696 at

4  *6.  *See also Xavier*, 787 F.Supp.2d at 1089 (relying on class members' affidavits "would not be

5  proper or just").  Since the same ascertainability defects that doomed the *Bruton* and *Jones* classes

6  exist here, the plaintiffs' proposed classes cannot be certified.

7        The proposed classes fail the ascertainability requirement for the additional reason that

8  they necessarily include people who were not injured.  Courts routinely deny class certification

9  where, as here, the class definition includes people who were not injured in the same manner as

10 the plaintiff or were not injured at all.  *See, e.g., Diacakis v. Comcast Corp.*, 2013 WL 1878921 at

11 *10 (N.D. Cal. 2013) (proposed class included people who were not deceived); *Mazur v. eBay,*

12 *Inc.*, 257 F.R.D. 563, 567-68 (N.D. Cal. 2009).  The proposed classes here necessarily include

13 those, like the plaintiffs, who bought BBUSA products:  (1) but did not see or rely on the labels at

14 issue for every purchase; (2) for reasons unrelated to the challenged labeling statements; (3) but

15 were not deceived by the labeling statements based on their understanding of the labels; and

16 (4) and would have purchased the product regardless of the challenged statements.  (*See infra,* at

17 pp. 8-12.)  Such consumers could not have suffered any injury and, because the plaintiffs'

18 proposed class would include them, the plaintiffs' motion fails on ascertainability grounds.[4]

19      **2.      The Plaintiffs have not Shown that their Claims are Typical**

20       Class representatives must "possess the same interest and suffer the same injury as the

21 class members."  *Astiana*, 2014 WL 60097 at *7; *see also Hanon v. Dataproducts Corp.*, 976

22 F.2d 497, 508 (9th Cir. 1992).  While "reasonably coextensive" claims with absent class members

23 will satisfy Rule 23(a)(3)'s typicality requirement (*Hanlon v. Chrysler Corp.*, 150 F.3d 1011,

24 _____

25 [4] "The plaintiff must present evidence to satisfy the numerosity requirement."  *Diacakis*, 2013
WL 1878921 at *5 (citing *Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541, 2551 (2011)).  While

26 they claim that BBUSA is a large bakery company, the plaintiffs do not cite any evidence that
"[d]efendant sold many thousands of units of the products at issue."  (Motion at 10.)  Of course,

27 such evidence does not exist for the 16 products that the plaintiffs include that were never sold in
California.  (Lee Decl. at ¶ 6.)  *See also Diacakis*, 2013 WL 1878921 at *5 ("The mere fact that

28 there are numerous Triple Play subscribers, standing alone, is insufficient to show numerosity").
Because the plaintiffs fail to present any evidence to establish numerosity, their motion for class
certification must be denied on that basis alone.

- 7 -      DEFENDANT'S OPPOSITION TO MOTION FOR
CLASS CERTIFICATION 13-CV-01196-HSG(NC)

1    1019 (9th Cir. 1998)), the class must be limited to "those fairly encompassed by the named

2    plaintiff's claims." *Dukes*, 131 S. Ct. at 2550 (quoting *Falcon*, 457 U.S. at 156).  A proposed

3    class representative fails the typicality requirement if they cannot assert the claims sought to be

4    certified.  *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1019-20 (9th Cir. 2011).  Where claims

5    are asserted under the UCL, FAL and CLRA, as they are in this case, the plaintiffs must ***each***

6    establish reliance and causation as to ***each*** allegedly false label.  *Astiana*, 2014 WL 60097 at *11;

7    *Thurston v. Bear Naked, Inc.*, 2013 WL 5664985 at *7 (S.D. Cal. 2013).  "To the extent … a

8    named plaintiff did not read Defendants' statements on the product packaging of products

9    purchased or explicitly testified that she did not rely on packaging statements, such an individual

10   is ***not*** typical of the class she seeks to represent."  *Allen v. Hyland's Inc.*, 300 F.R.D. 643, 662

11   (C.D. Cal. 2014).  There is no evidence that the plaintiffs read and relied on each alleged

12   misstatement on each label of each of the dozens of BBUSA products at issue.

13                 a.       **The Whole Grains Statements did not Mislead these Plaintiffs**

14           Ms. Streit testified that she read and relied on the "good source of whole grain" and

15   "excellent source of whole grain" phrases when purchasing Sara Lee products (Streit Dep. at

16   280:10-281:24; 286:3-20) but she has no idea what a whole grain is (*id.* at 102:20-22), what

17   constitutes an excellent source of whole grain (*id.* at 100:19-21) or how much whole grain should

18   be in a loaf of bread or in her daily diet (*id.* at 100:22-101:12).  She simply thinks that the phrases

19   imply that the products are "healthier" (*id.* at 98:25-99:1) but she cannot explain how (*id.* at

20   99:2-3) and she does not contend that she bought Sara Lee products that were unhealthy or

21   somehow less healthy than she expected.  Perhaps most importantly, Ms. Streit admits that she

22   regularly buys other bread products that do not claim to be any kind of source of whole grains

23   (indeed, those are the ***only*** bread products that she currently buys).  (*See* Streit Dep. at 25:11-21;

24   101:13-19; 165:5-8, 18-21.)  She does not even claim that the Sara Lee products are not the

25   source of whole grains that they claim to be:

26                 Q:      Do you know whether this classic 100 percent whole wheat
                           bread provides whole grains that are a – less than good source?
27

28                 A:      Specific whole grain, no.

Hogan Lovells US
LLP
Attorneys At Law
San Francisco

- 8 -

DEFENDANT'S OPPOSITION TO MOTION FOR
CLASS CERTIFICATION 13-CV-01196-HSG(NC)

1    Q:    Do you know if this is a poor source of whole grains?

2    A:    I do not know.

3    Q:    Do you know if it's an excellent source of whole grains?

4    A:    Again, don't know.  (*Id.* at 197:4-17.)

5    Ms. Streit claims to have been deceived only because, years after supposedly buying these

6    products, her lawyer told her that she was.  (*Id.* at 163:10-16; 196:25-197:3.)

7            While Mr. Ang testified that a "source of whole grain" label may make him "lean" toward

8    purchasing that product (Ang Dep. at 116:3-7; 221:6-20), he admitted that:

9            •    He only relied on the fact that Sara Lee 100% Whole Wheat Bread said "Sara Lee"
     and "100% Whole Wheat" when he bought the product (*id.* at 185:7-11) and that the whole grain

10   content did not influence his buying decision (*id.* at 170:16-18 ("Q:  What about the whole grain,
     did that determine whether you bought it or not?  A:  No"));

11
             •    He bought Sara Lee Classic 100% Whole Wheat Bread because of taste, the fact
12   that it is wheat and had a lower price (*id.* at 172:15-19) and, although he supposedly looked at the
     entire front label, he did not rely on any particular statement (*id.* at 173:2-6).  Even when

13   questioned by his own attorney, Mr. Ang testified that he only relied upon the "Sara Lee brand
     and 100 percent whole wheat" in making his purchases (*id.* at 228:15-21);

14
             •    He bought Sara Lee Whole Grain White Bread because of taste and the lower price
15   point (*id.* at 179:23-180:7) and he admitted that ***he would have bought it even if it had zero***
     ***whole grains*** (*id.* at 183:13-15 ("Q:  If this didn't have any whole grain would you still have

16   bought it?  A:  For this, yes, I was looking for white bread")); and

17           •    He does not remember buying Sara Lee Soft & Smooth 100% Whole Wheat Bread
     with "excellent source of whole grain" on the package (*id.* at 194:19-22) or reading that particular

18   label (*id.* at 195:12-14 ("Q:  Do you have a specific recollection of looking at the label that we've
     marked as Exhibit 25?  A:  No")).

19

20   If the plaintiffs did not buy the products at issue, did not rely on the alleged misstatements and

21   were not deceived by them, their claims are not typical of the putative "Whole Grains Class" that

22   they seek to represent and a class cannot be certified in this case.

23           **b.    The Plaintiffs were not Misled by "100% Whole Wheat"**

24           Ms. Streit understands the "100% Whole Wheat" name to mean that those Sara Lee

25   products were "made from 100 percent whole wheat flour," as opposed to other ***grain*** flour.

26   (Streit Dep. at 281:3-9, 285:24-286:2.)  She also knows that "soy is not a whole grain," "[i]t's a

27   bean" (*id.* at 272:19-23), and that "soy flour" is not the type of flour that could detract from the

28   truthfulness of the "100% whole wheat" label under the standard identity for wheat bread.

HOGAN LOVELLS US
LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- 9 -

DEFENDANT'S OPPOSITION TO MOTION FOR
CLASS CERTIFICATION 13-CV-01196-HSG(NC)

1   Moreover, Ms. Streit does not have a soy allergy and does not avoid buying products with soy in

2   them.  (Streit Dep. at 140:1-3; 140:16-19.)  Thus, Ms. Streit was not deceived by the name of the

3   product and was not harmed by the possibility that the product contained trace amounts of soy.

4        Mr. Ang also understands that soy is not a grain.  (Ang Dep. at 182:14-19.)  But more

5   importantly, Mr. Ang testified that he would have bought Sara Lee 100% Whole Wheat Bread

6   even if he had known that it contained soy flour: "Q:  If you knew that this product had soy flour

7   in it would you have bought it?  A:  Yeah, that wouldn't have stopped me from buying it."  (*Id.* at

8   167:5-8; *see also id.* at 165:18-20 ("Q:  Did you care that it contained wheat, soy and milk at the

9   time you purchased this product?  A:  Not at the time").)  When Mr. Ang was shown two

10  packages for Sara Lee Classic 100% Whole Wheat Bread -- one with soy flour in the ingredients

11  and one without it -- he could not say whether he bought the product with "soy flour" on the label

12  or the one without soy flour.  (*Id.* at 188:1-12.)  If Mr. Ang did not buy the product with the

13  alleged false labeling statement, he certainly cannot recover for the claims alleged in the

14  complaint.

15       Both of these plaintiffs are pursuing "soy flour" claims simply because their attorney told

16  them to.  (Streit Dep. at 156:11-15; Ang Dep. at 206:14-16 ("Q:  And how do you know that the

17  characteristic was not true?  A:  I found that out through Mr. Gore").)  They were not deceived by

18  the label at the time that they purchased the product (if, in fact, they really did purchase the

19  product) nor do they care about the presence of soy in general or in these products specifically.

20  These facts make them atypical of the class that they seek to represent.

21              **c.    Mr. Ang would have Bought Bimbo Toasted Bread Anyway**

22       The entire premise of the plaintiffs' "added color" claim is that Mr. Ang was somehow

23  tricked into thinking that Bimbo Original Toasted Bread is actually bread when it allegedly

24  cannot be bread because it has added coloring.  (Dkt. 40 at 17.)  However, that claim fails because

25  Mr. Ang testified that he did not actually think that the product was bread and did not use it as

26  such.  Mr. Ang testified that Bimbo Original Toasted Bread is "more of a cracker, it's not really

27  toasted bread."  (Ang Dep. at 210:5-9.)  Mr. Ang not only "knew it wasn't toast" (*id.* at 210:20-

28  211:8), he and his roommates "would snack on it like crackers" (*id.* at 90:22-24) and would eat it

DEFENDANT'S OPPOSITION TO MOTION FOR
CLASS CERTIFICATION 13-CV-01196-HSG(NC)

1   "the way we eat crackers, eat them plain or if we had some kind of spread, use spread on it."  (*Id.*

2   at 89:3-7.)  He uses the same term, "crackers," to describe Saltines, which no-one would confuse

3   with "bread."  (*Id.* at 91:15-16.)  Despite the allegations in the complaint, Mr. Ang clearly knew

4   that Bimbo Toasted Bread was not "bread" and, in fact, he did not use it like bread.

5          This claim also fails because Mr. Ang testified that the presence of artificial coloring

6   would not have factored into his purchasing decision even if he knew it was in the product:

7   "Q:  If you had known it had artificial color you still would have bought [Toasted Bread]?

8   A:  Yes."  (*Id.* at 177:2-5.)  Without reliance and causation, there is no injury, and without injury

9   Mr. Ang lacks standing and cannot be typical of a class of consumers who were allegedly

10  deceived by the word "bread."  Under such circumstances, class certification must be denied.

11                 **d.      Mr. Ang was not Misled by the "Heart Check Mark"**

12         At the time that he allegedly purchased Thomas' Bagel Thins, Mr. Ang believed that the

13  AHA tested the product (Ang Dep. at 82:4-7), that AHA "looked at the bagel, looked at the

14  nutrition facts, and deemed them worthy of that label" (*id.* at 84:8-11) and he assumed that the

15  AHA had "reviewed the product and put a seal of approval on it."  (*Id.* at 209:4-10.)  Mr. Ang

16  admitted that if AHA tested and certified the product, it would not be misbranded.  (*Id.* at 242:12-

17  16.)

18         It is beyond dispute that a company cannot simply pay the AHA to have a Heart-Check

19  Mark on its label.  Even Dr. Caswell, the plaintiffs' paid consultant, agrees.  (Caswell Dep. at

20  76:14-22; 86:6-14.)[5]  The licensing agreement governing the use of the Heart-Check Mark plainly

21  states that BBUSA's products can display the mark only if they are "in compliance with the

22  applicable AHA nutritional criteria as set out in the then-current Program Application Packet."

23  (Skaar Decl., Ex. D.)  The AHA's documents, which were subpoenaed by the plaintiffs, show that

24  Thomas' Plain Bagel Thins met all applicable AHA criteria.  (Skaar Decl., Ex. E.)  This evidence,

25  which the plaintiffs fail to mention, much less rebut, demonstrates that products must meet

26  nutritional criteria to qualify for the Heart-Check Mark program, just as Mr. Ang believed when

27

28  ─────────────────────────
    [5]  Pertinent excerpts of the Deposition of Dr. Julie Caswell ("Caswell Dep.") are attached as
    Exhibit C to the Skaar Decl.

HOGAN LOVELLS US
LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANT'S OPPOSITION TO MOTION FOR
CLASS CERTIFICATION 13-CV-01196-HSG(NC)

1   he allegedly bought Thomas' Plain Bagel Thins.

2       Despite having done no research into the AHA's requirements (which are publicly

3   available), Mr. Ang says that he is now convinced that the Heart-Check Mark is "a paid

4   endorsement" and the BBUSA products "did not go through any sort of certification" (Ang Dep.

5   at 226: 17-21) simply because his attorney told him so.  (*Id.* at 241:16-20; *see also id.* at 86:5-6

6   ("Q:  You're just accepting what Mr. Gore told you?  A:  Yes").)  Aside from being inadmissible

7   hearsay, such bald and self-serving statements from plaintiffs' counsel (testifying through his

8   clients) cannot overcome the actual evidence to the contrary.

9       Because Mr. Ang, the only named plaintiff in this proposed class, cannot establish that he

10  was deceived by the challenged statements, he is atypical of the putative members of this class

11  and no class action can be maintained.  *See Jones*, 2014 WL 2702726 at *7; *see also Stearns*, 655

12  F.3d at 1019-20 (a class cannot be certified when the class representative did not see the

13  challenged statement and/or was not deceived by it).

14              **e.      Data Confirm that the Plaintiffs are not Typical**

15      The plaintiffs' motion offers no evidence that the plaintiffs' claims are typical of the

16  classes that they seek to represent; it merely argues that all proposed class members purchased the

17  same products and were exposed to the same labels.  (*See* Motion at 13.)  As found in *Astiana* (a

18  much better case for class certification than this one), such bare allegations are not enough:  "It is

19  true that all purchasers of Ben & Jerry's ice cream were exposed to the same package labeling,

20  but that alone is not sufficient to establish that plaintiff's claims of having been deceived are

21  typical of the claims of the class, given that the class is not sufficiently ascertainable."  2014 WL

22  60097 at *7.  Even if all of the purchasers of the products at issue here had been exposed to the

23  same labeling statements (and they undisputedly were not), the plaintiffs make no attempt to

24  show that class members considered the labels in their purchase decisions.

25      In fact, survey data show that ordinary consumers considering the labels at issue do not

26  share the purported views of the named plaintiffs.  *Id.* (discussing survey data generated by

27  Dr. Kent Van Liere).  Specifically, the data show that:

28      •      Only about 15% of consumers say that the presence of artificial coloring would

Hogan Lovells US
LLP
Attorneys At Law
San Francisco

- 12 -

DEFENDANT'S OPPOSITION TO MOTION FOR
CLASS CERTIFICATION 13-CV-01196-HSG(NC)

make them less likely to purchase Orowheat Dark Rye.  (Declaration of Dr. Kent D. Van Liere ("Van Liere Decl.") at ¶ 43.)

• Less than 10% of consumers report that soy flour would make them less likely to purchase Sara Lee Classic 100% Whole Wheat Bread.  (Van Liere Decl. at ¶ 51.)

• The phrase "good source of whole grain" has little impact on consumers' decisions to purchase Sara Lee Classic 100% Whole Wheat Bread.  (Van Liere Decl. at ¶ 58.)

• Most consumers think that the AHA Heart-Check Mark is a certification (*id.* at ¶ 63) and less than 5% of consumers say that they would be less likely to purchase the product even if they were to assume it was a paid endorsement.  (Van Liere Decl. at ¶¶ 65-67.)

These results confirm that the named plaintiffs are not typical of all, or even a majority of, the consumers that they seek to represent.

### f.     The Plaintiffs are not Typical of those who Allegedly Bought Products that the Plaintiffs did not

The plaintiffs claim to have purchased just 6 of the over 30 products named in the SAC, which just in the case of the proposed "100% Whole Wheat Class" range from wheat bread to tortillas to pita pockets to mini bagels and English muffins.  (Dkt. 102 at i-ii.)  "In the context of cases involving several products at issue -- like the one presently before the Court -- district courts have held that the typicality requirement has not been met where the 'named plaintiff . . . purchased a different product than that purchased by unnamed plaintiffs.'"  *Major v. Ocean Spray Cranberries, Inc.*, 2013 WL 2558125 at *3 (N.D. Cal. 2013).  In *Major*, the claims encompassed "a whole host of other products that Plaintiff had nothing to do with."  *Id.* at *4.  Like one of the proposed classes here, Major sought to include all "products 'represented to contain no artificial colors, flavors or preservatives but which contained artificial colors, flavors or preservatives.'" *Id.* The "primary reason" that the court denied class certification in that case was that the "proposed classes [were] so broad and indefinite that they encompass[ed] products that [the plaintiff] did not purchase."  *Id.* (citing *Wiener v. Dannon Co., Inc.*, 255 F.R.D. 658, 665 (C.D. Cal. 2009)).  This Court should likewise deny class certification here, where there is no dispute that the plaintiffs purchased fewer than 20% of the products named in the lawsuit.

The plaintiffs will undoubtedly claim that the Court already found that the products are "substantially similar" to each other and that class treatment is appropriate.  While the Court did

1   previously consider substantial similarity in the context of standing, that analysis was based

2   purely on the pleadings, where the plaintiffs' only burden was to *allege* facts sufficient to state a

3   claim.  (*See* Dkt. 58.)  Their burden is clearly much higher on this class certification motion,

4   where they must present *evidence* that their claims are typical of all consumers who bought the

5   "substantially similar" products.  *See Ogden v. Bumble Bee Foods, LLC*, 292 F.R.D. 620, 623

6   (N.D. Cal. 2013) ("an evaluation of whether [plaintiff] also may represent purchasers of products

7   she did not buy should be left to the class certification determination"); *Forcellati v. Hyland's,*

8   *Inc.*, 876 F.Supp.2d 1155, 1161 (C.D. Cal. 2012) (the question of whether plaintiff may bring suit

9   based on products not purchased "is better taken under the lens of typicality or adequacy of

10   representation, rather than standing").

11           Thus, notwithstanding what the Court found relating to the plaintiffs' standing, it cannot

12   be disputed that no evidence has been presented showing *how* their claims are typical of the

13   absent class members.  Plaintiffs merely argue that all of the products are misbranded in the same

14   way (Motion at 13), which does not address the fact that the challenged statements were not on all

15   of the labels for each of the products, were located in different places on the products and at

16   different times, and that consumers vary in how they rely upon such labeling claims or even if

17   they see them.  (Gerhart Decl. at ¶ 7; Declaration of Dr. Dominique M. Hanssens ("Hanssens

18   Decl.") at ¶ 12; Van Liere Decl. at ¶ 10.)  In light of the survey data showing substantial variation

19   among consumers of the products that the plaintiffs *did* allegedly purchase, there can be no doubt

20   that an even greater lack of typicality would exist between the named plaintiffs and the consumers

21   of over 30 different products.  (*E.g.,* Van Liere Decl. at ¶ 10.)  Because the plaintiffs' claims are

22   not typical of the class members they seek to represent, class certification must be denied.[6]

23

24

25   [6]  Plaintiffs have apparently abandoned the nationwide class allegations in the SAC and, thus,
     cannot pursue claims relating to products that were not sold in California.  As explained in the
26   attached Declaration of John Lee, 13 of the products named in the plaintiffs' motion have never
     been sold in California.  (Lee Decl. at ¶ 6.)  Because the plaintiffs are now seeking to certify
27   California-only classes based on alleged violations of California law, products that have never
     been sold here cannot be included in this motion.  *See Wilson v. Frito-Lay N. Am., Inc.*, 961
28   F.Supp.2d 1134, 1148 (N.D. Cal. 2013) (dismissing non-California claims where none of the out-
     of-state purchases were "directed from California or had anything to do with California").

DEFENDANT'S OPPOSITION TO MOTION FOR
CLASS CERTIFICATION 13-CV-01196-HSG(NC)

1

**C.      Certification Under Rule 23(b)(3) Is Also Inappropriate**

2

**1.      The Claims Necessarily Raise Individual Issues of Proof**

3       While the plaintiffs' motion for certification must fail because they cannot satisfy any of

4   the requirements of Rule 23(a), additional grounds for denial exist because they cannot satisfy

5   any of the requirements of Rule 23(b)(3).

6       The plaintiffs suggest that (1) their injuries are "identical" to the unnamed class members'

7   and (2) the products in the four proposed classes are misbranded in the same ways.  (Motion at

8   11-12.)  "At a sufficiently abstract level of generalization, almost any set of claims can be said to

9   display commonality" but much more is required under Rule 23.  *Sprague v. General Motors*

10  *Corp.*, 133 F.3d 388, 397 (6th Cir. 1998).  The plaintiffs' characterization of their claims ignores

11  all of the individual issues that would have to be addressed to litigate this case.  For example, the

12  plaintiffs incorrectly argue that all they need to show is that the challenged statements are illegal

13  because those statements are presumed to be "material" and, since they are material, it is

14  presumed that all members of the class relied upon them.  (*Id.* at 15-16.)  Accordingly, they seek

15  to avoid having to make any showing regarding materiality, reliance or damages.  This syllogism

16  (which would result in classes being certified in every food labeling case, which is diametrically

17  opposed to reality) is just not correct.

18      For one thing, even if the Court were to accept the "materiality presumption" (and it

19  should not), the named plaintiffs are required to ***show*** that they were ***actually injured*** and that

20  such injury was ***caused*** by their ***actual reliance*** on the challenged statements.  *Astiana*, 2014 WL

21  60097 at *11.[7]  Plaintiffs have failed to produce any evidence that they actually purchased

22  BBUSA's products.  They have no receipts (Ang Dep., Ex. 13; Streit Dep. at 167:20-24), no

23  packaging that they can establish they actually purchased before they filed this suit (Streit Dep. at

24  202:16-20; Ang Dep. at 142:1-6) and their testimony that the packaging they were shown at

25  deposition was the same packaging that they actually bought is speculative at best.  (Streit Dep. at

26  292:17-295:5; Ang Dep. at 236:10-24.)  In any event, materiality cannot be presumed here, as the

27

28

---

[7]   *See In re Tobacco II Cases*, 46 Cal.4th 298, 314 (2009) ("a private person has standing to sue only if he or she has suffered injury in fact and has lost money or property as a result of such unfair competition").

- 15 -

plaintiffs have not established that they relied on, or were deceived by, the specific labeling statements at issue in making their purchasing decisions.  Instead, the plaintiffs testified that the statements at issue were (at the very least) not always why they bought products.  (*See, e.g., supra* at 8-13.)  If the materiality of the challenged statements and the tendency of a consumer to rely upon them vary between the two named plaintiffs, there certainly will be substantial variation among the larger group of proposed class members, variation that precludes class treatment.

The Ninth Circuit, while recognizing that a materiality presumption may exist, held that "[i]f the misrepresentation or omission is not material as to all class members, the issue of reliance 'would vary from consumer to consumer' and the class should not be certified."  *Stearns*, 655 F.3d at 1022-23 (quoting *In re Vioxx Class Cases*, 180 Cal.App.4th 116, 129 (2009)).  Likewise, *Webb v. Carter's Inc.*, 272 F.R.D. 489, 502 (C.D. Cal. 2011) held that, "where individual issues as to materiality predominate, the record will not permit such an inference."  In *Webb*, the defendants "put forth persuasive evidence that materiality and reliance would vary from consumer to consumer, such that the reasonable consumer standard cannot be applied."  *Id.* at 502-03.  As a result, the court concluded that materiality and reliance were "not subject to common proof under the reasonable consumer standard and that individual issues predominate[d] with respect to the CLRA claims."  *Id.* at 503; *see also Gonzalez v. Proctor & Gamble Co.*, 247 F.R.D. 616, 626 (S.D. Cal. 2007).

*Jones* also declined to find predominance with respect to food mislabeling claims because "there [was] a lack of cohesion among the class members, both because consumers were exposed to label statements that varied by can size, variety, and time period (and the challenged ingredients also differed), but more importantly because 'even if the challenged statements were **facially** uniform, consumers' **understanding** of those representations would not be.'"  2014 WL 2702726 at *14.  *Jones* found that, although materiality is based on an objective standard, the plaintiffs still needed to provide some common method of proof that everyone relied on the labels in making their purchasing decisions.  *Id.* at *16 (citing *Badella v. Deniro Mktg. LLC*, 2011 WL 5358400 at *9 (N.D. Cal. 2011)).  The plaintiffs in that case failed to do so as their only evidence of materiality was based on the declaration of Julie Caswell, the same consultant retained by the

plaintiffs here.  The *Jones* court criticized Dr. Caswell's testimony:

> Caswell did not explain **how** the challenged statements, together or alone, were a factor in any consumer's purchasing decisions.  She did not survey any consumers to assess whether the challenged statements were in fact material to their purchases, as opposed to, or in addition to, price, promotions, retail positioning, taste, texture, or brand recognition.  (*Id.* at *15.)

Contrary to Dr. Caswell's declaration, and in direct contravention to what the plaintiffs in this case are asking this Court to presume, *Jones* found that there were "numerous reasons a customer might buy Hunt's tomatoes, and there [was] a lack of evidence demonstrating the impact of the challenged label statements." *Id.* at *16.  Because the plaintiffs lacked "common proof of materiality," *Jones* held that "individual issues predominate[d] over common ones" and a class could not be certified.  *Id.*

If a class could not be certified in *Jones*, one certainly cannot be certified here. Dr. Caswell, the plaintiffs' retained witness, concludes that "the statements [at issue] would be material to a reasonable consumer." (Dkt. 104-6 at 7.)  But, just like in *Jones*, Dr. Caswell failed to survey any consumers in this case or rely on any empirical data and, instead, asks the Court to accept her "experience with labeling statements and consumer choice" as adequate foundation for her opinion.  (*Id.*; Caswell Dep. at 41:19-21.)  As in *Jones*, this Court should decline the invitation.

Moreover, Dr. Caswell's definition of "material" is at odds with both common sense and the law.  According to Dr. Caswell, every piece of information about food products is material simply because it is available.  (Caswell Dep. at 93:10-16; 131:2-4.)  Dr. Caswell is not concerned with, and offers no opinion on, what consumers actually do when they make purchasing decisions.  (*Id.* at 96:21-24.)  To Dr. Caswell, labeling information is material simply if it exists.  (*Id.* at 93:23-94:8.)[8]  This approach is clearly not the standard in this Circuit:  Materiality means more than availability; **how** consumers perceive the label and **how** the label influences consumers are the relevant inquiries, and Dr. Caswell does nothing to advance that analysis.  Indeed, Dr. Caswell has not even seen all of the labels that she seeks to condemn.  In fact, she has seen only 4

---

[8] This explains why Dr. Caswell has **always** delivered the same opinion in **all** 24 cases in which she has testified regarding food labels.  (*Id.* at 131:8-12.)

DEFENDANT'S OPPOSITION TO MOTION FOR CLASS CERTIFICATION 13-CV-01196-HSG(NC)

HOGAN LOVELLS US LLP
ATTORNEYS AT LAW
SAN FRANCISCO

of the over 30 products at issue.  (*Id.* at 155:15-24.)[9]  She has not reviewed the myriad other

labels that are potentially at issue, including other variations of the 4 products that she has seen.

(*Id.* at 155:15-24.)  She has never seen Bimbo Original Toasted Bread or its labels and has no idea

what it looks like or how it is used.  (*Id.* at 146:1-11.)  This lack of any basis for her opinions is

fatal to the plaintiffs' motion.

### 2.    Individualized Purchasing Inquiries would be Required

The *Jones* court cited *Hodes v. Van's International Foods*, 2009 WL 2424214 at *4 (C.D.

Cal. 2009), for the proposition that "individualized purchasing inquiries" would preclude finding

predominance.  *Hodes* sought to certify a class of consumers of allegedly mislabeled frozen

waffles and the court was "not convinced that the common questions of [] liability would

predominate over the individual questions of *who* purchased Van's frozen waffles during the

relevant class period, *which kind* of frozen waffles they purchased, *how many* they purchased,

and whether the kinds they purchased contained false nutritional information."  *Id.*  *Jones* was

also concerned that individualized purchasing inquiries would be required to "determine how

many and which kind of [the defendant's] products each class member bought," "when they

bought them, and what label they bore."  2014 WL 2702726 at *16, 17.  These concerns are

amplified here because the proposed classes each contain 4 to 13 products, offered in different

sizes and varieties at the same time, some of which contained the challenged labels and some of

which did not.  The Court would need to examine each consumer's purchasing history to

determine whether they actually bought BBUSA products and, if so, where and when, which

varieties and whether the product had the challenged label at the time of purchase.  These

"individualized purchasing inquiries" make class certification impossible.

### 3.    There is no Classwide Method of Granting Relief

The plaintiffs need to establish that no individualized issues of damages will be examined

here but they cannot make that showing, either.  "[U]nder *Comcast*, a court can certify a Rule

23(b)(3) class only if there is evidence demonstrating the existence of a classwide method of

---

[9]  The product photographs that Dr. Caswell relies upon are the subject of BBUSA's concurrently
filed objections to the Declaration of Ben F. Pierce Gore for lack of authenticity and foundation.

awarding relief that is consistent with the plaintiffs' theory of liability." *Astiana*, 2014 WL 60097 at *12. "Rule 23(b)(2) 'does not authorize class certification when each class member would be entitled to an individualized award of monetary damages.'" *Lanovaz v. Twinings North America, Inc.*, 2014 WL 1652338 at (N.D. Cal. 2014) (quoting *Dukes*, 131 S.Ct. at 2557).

The plaintiffs are seeking restitution under the UCL, FAL and CLRA, and damages under the CLRA. (*See* Motion at 20, n.16.) Any restitution must be a "quantifiable sum" "supported by substantial evidence" and "must correspond to a measurable amount representing the money that the defendant has acquired from each class member by virtue of its unlawful conduct." *Astiana*, 2014 WL 60097 at *11. Where restitution cannot be proven "with relative ease," the Court must deny class certification. *In re Google Adwords Litigation*, 2012 WL 28068 at *15 (N.D. Cal. 2012). Showing what each class member actually paid for the products with the allegedly improper labeling statements necessarily requires individual issues of proof establishing what each purchaser actually paid for products that actually included the labels at issue. Class treatment makes addressing such issues impossibly unwieldy.

### a.     The Full Refund Model is Inappropriate

The plaintiffs contend that quantifying the appropriate amount of restitution "will be relatively easy to calculate because class members are entitled to the full refund of their purchase price." (Motion at 19.) This is wishful thinking. Every court in this District to consider this model in a food mislabeling case has rejected it. *See, e.g., Khasin v. The Hershey Co.*, No. 5:12-cv-01862-EJD at Dkt. 185, p.10 (2015); *Werdebaugh*, 2014 WL 2191901 at *22 ("This is not the proper measure of damages"); *Jones*, 2014 WL 2702726 at *19 ("Return of the full retail or wholesale prices is not a proper measure of restitution"); *Brazil, supra* (same). Not only are the plaintiffs unable to prove what they actually paid for the products (the plaintiffs kept no receipts and testified that they have no idea how much they spent on any BBUSA product), they ignore the value that they actually obtained from ingesting the products, value for which courts require them to account: The "full refund model is deficient because it is based on the assumption that consumers receive no benefit whatsoever from purchasing the accused products," which "cannot be the case, as consumers received benefits in the form of calories, nutrition, vitamins, and

minerals." *Id.* (citing *In re POM Wonderful LLC*, 2014 WL 1225184 at *3 (rejecting the full

refund model)).  The plaintiffs in this case admit that they consumed the products that they

allegedly purchased (Streit Dep. at 126:13-21; Ang Dep. at 99:4-100:1), so they received *some*

value.  2014 WL 1225184 at *3 ("Plaintiffs do not cite, nor is the court aware of, any authority

for the proposition that a plaintiff seeking restitution may retain some unexpected boon, yet

obtain the windfall of a full refund and profit from a restitutionary award"); *see also Ogden*, 2014

WL 27527 at *13 ("the products had *some* value to Ogden apart from the statements on the

products' labels").[10]

### b.    "Restitutionary Disgorgement" is Inappropriate

The plaintiffs seek "disgorgement of the revenues received as a result of the sale of the

products at issue to class members" (Motion at 20) but this approach also fails to take into

account any value that the plaintiffs received from their consumption of BBUSA's products.

Therefore, this model fails for the same reasons that the full refund model fails.  *Werdebaugh*,

2014 WL 2191901 at *22, n.9 ("Dr. Capps also proposes an identical disgorgement model.  This

is rejected for the same reasons as the Full Refund Model"); *Brazil,* 2014 WL 2466559 at *15,

n.6; *see also Lilly v. Jamba Juice Co.*, 2014 WL 4652283 at *10 (N.D. Cal. 2014) ("While

Plaintiffs also seek disgorgement of Defendants' profits, they may have to demonstrate what

portion of those damages stem from the Defendants' purportedly unlawful conduct").  Full

disgorgement is also inappropriate because "there would be a large portion of the sales which

would not be tainted by any alleged misrepresentations due to customer loyalty and other factors

on which sales of the Products would be based." *Red v. Kraft Foods, Inc.*, 2012 WL 8019257 at

*11 (C.D. Cal. 2012).  Trying to parse the factors that led to each sale would obviously involve

individual inquiries that preclude class certification.

---

[10]  Because this damages model has been flatly rejected in this District, there is no need to burden
the Court with a lengthy discussion of the deficiencies in Dr. May's (the plaintiffs' retained
economist) proffered testimony on this point, other than to say that Dr. May agrees that some
value should ordinarily be accounted for when it comes to food products.  (Deposition of
Dr. Donald May ("May Dep.") at 102:6-11 (Skaar Decl., Ex. F).)  Dr. Caswell also agrees.
(Caswell Dep. at 37:21-38:16.)

HOGAN LOVELLS US
LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- 20 -

DEFENDANT'S OPPOSITION TO MOTION FOR
CLASS CERTIFICATION 13-CV-01196-HSG(NC)

c.     **The Value of the Allegedly False Statements cannot be Calculated**

In a food mislabeling case, the only appropriate measure of restitution is "'[t]he difference between what the plaintiff paid and the value of what the plaintiff received.'" *In re POM Wonderful LLC*, 2014 WL 1225184 (quoting *In re Vioxx Class Cases*, 180 Cal.App.4th at 131). "This calculation contemplates the production of evidence that attaches a dollar value to the 'consumer impact' caused by the unlawful business practices." *Brazil*, 2014 WL 5794873 at *5. "Restitution is then determined by taking the difference between the market price actually paid by consumers and the true market price that reflects the impact of the unlawful, unfair, or fraudulent business practices." *Id.*

Both models proposed by Dr. May, which he claims will allow him to calculate the value of the challenged statements, are fraught with individual issues.  The first model, which he calls the "Value of the Product Labeling Characteristic," seeks to determine how much individual consumers are willing to pay for products with and without the challenged statements.  (Dkt. 104-5 at 14-15.)  Dr. May claims that this model will isolate the value of the statements by "controlling for all other factors that may affect the price differentials, prices and/or volume sold."  (*Id.* at 11.)  But Dr. May is just proposing to compare the prices of products with and without the labeling statements, without a true control group.  (*Id.* at 12 ("to implement the hedonic regression approach, we must consider prices of the Defendant's products (with the labeling claim) as well as prices of comparable products (with or without the labeling claim)".)  Dr. May fails to explain how he will determine which of the hundreds of baked goods products on the market at any given time have particular labels with particular statements.  (Declaration of Dr. Bruce Strombom ("Strombom Decl.") at ¶¶ 38-41; 46-50.)  *See also Brazil*, 2014 WL 5794873 at *12 ("Dr. Capps' failure to adequately verify the labels of non-Dole products is fatal to his analysis").

Perhaps even more importantly, Dr. May fails to recognize that the challenged statements are not the only statements on the labels at issue in this case, and he admits that he has no idea how he would control for the effects of these other statements.  (Strombom Decl. at ¶¶ 51-58.)

Therefore, a consumer may be paying a premium for a statement completely unrelated to the statements in this case and Dr. May would not be able to account for that premium.  (*Id.* at ¶¶ 42, 45, 80.)  He also does not explain how he will control for factors such as consumer preference for certain packaging (*Brazil*, 2014 WL 5794873 at *12), BBUSA's advertising or the brands' historic significance to purchasing decisions (even Dr. May admits that he purchases BBUSA products because he recognizes the brands).  (Strombom Decl. at ¶¶ 53-57; May Dep. at 25:5-26:10.)  Where a regression model cannot control for such variables, it cannot satisfy the predominance requirement.  *Brazil* at *13.

Dr. May's "Incremental Sales Revenues" model depends on the assumption that BBUSA either charged more for or sold more of its products after the challenged statements were added to the labels, and presumably that sales or volume decreased when such statements were removed. (Dkt. 104-5 at 9-10.)  *Red v. Kraft Foods, Inc.*, 2012 WL 8019257 at *11.  However, Dr. May fails to explain how this model would work for the products that have had "Bread" or "100% Whole Wheat" in their names and have always had those names.  (Strombom Decl. at ¶ 68; May Dep. at 97:13-23.)  Despite the fact that BBUSA long ago produced records obtained from Information Resources, Inc. ("IRI"), Dr. May still cannot identify any evidence of pricing or sales changes that can be attributed to the labeling changes.  (May Dep. at 205:16-24.)  Indeed, it appears that Dr. May has not reviewed such data to determine if his model is even workable. (Dkt. 104-5 at 1 (only reviewed the SAC and BBUSA's website).)  In the end, Dr. May's entire theory of class damages fails because the facts are that the prices of BBUSA's products do not change based on labeling statements.  (*See* Strombom Decl. at ¶ 80.)  An additional insurmountable problem for the plaintiffs is that this model does not control for other changes that BBUSA may have made to its labels during the class period and does not account for whether such changes had any impact on price.  (*Id.* at ¶¶ 58, 64-65.)

Finally, even if Dr. May could establish that BBUSA charged a premium for products bearing the challenged statements, the plaintiffs, like those in *Red*, "cannot get around the fact that individual class members, to recover, would need to show, at a minimum, proof of how many purchases they made of the offending products, where and when, in order to discern how many

- 22 -

multiples of that premium they are owed." 2012 WL 8019257 at *11.  The inherent "memory issues as to what products were purchased where and in what quantities, as well as price differences at the vast array of retail establishments that sell the Products render th[e] Court unwilling to find that common questions of law or fact [would] predominate as to the resolution of class members' claims, due to the individualized nature of the damages calculations." *Id.* Variation among retailers that sell BBUSA's products and the fact that two consumers could buy the same product at the same store on the same day and pay different prices (because of coupons, club discounts, "day old" sales, etc.) amplify the individual issues of proof required in this case. Thus, the same reasons that precluded class certification in *Brazil* and *Red* preclude class certification here.

### d.    Statutory and Nominal Damages are Inappropriate

The plaintiffs have not cited any California food class actions where statutory or nominal damages were allowed and, apparently, there are none.  The CLRA sets $1,000 as the minimum damages "in a class action" but "it does not provide for an automatic award of $1,000 per individual class member" because each plaintiff ***still must show damage and causation***.  *Jones*, 2014 WL 2702726 at *23.  In addition, Civil Code § 3360 allows nominal damages only where the plaintiff has shown a "breach of duty."  *Id.*  In *Jones,* where the plaintiff alleged CLRA food mislabeling claims strikingly similar to those at issue here, the court found that "Plaintiffs' CLRA claims ha[d] nothing to do with a breach of duty."  *Id.  See also Brazil*, 2014 WL 5794873 at *14 ("Existing authority suggests that nominal damages are not even available in this case, where Brazil seeks damages only under the CLRA"); *Lanovaz*, 2014 WL 7204757 at *3 ("the court has found no authority for" "granting nominal damages in connection with the injunctive class").  Accordingly, this Court should reject the plaintiffs' request to certify the proposed classes based on nominal and statutory damages.

### 4.    Class Treatment is not Superior to other Methods of Adjudication

The plaintiffs identify the factors relevant to a superiority analysis under Rule 23(b)(3) but they fail to apply those factors correctly to this case.  For the reasons that the classes are not ascertainable (*supra* at pp.4-7), the case is also unmanageable.  *See Jones*, 2014 WL 2702726 at

*24. In particular, "the need to determine individual reliance and damages makes manageability of the action difficult" because "the Court would be forced to conduct mini-trials for each class member." *Picus v. Wal-Mart Stores, Inc.*, 256 F.R.D. 651, 660 (D. Nev. 2009) (even though "made in the USA" was on every label, individual issues of damages and reliance precluded class certification). Based on the lack of adequate means for identifying class members, which products they bought, how many they bought and how much they paid -- and due to the variation in the labels during the class period -- *Jones* found that the case was so "unwieldy" as to render it unmanageable. 2014 WL 2702726 at *24. The same factors render this case unmanageable as a class action.

### D. Certification Under Rule 23(b)(2) Would Be Inappropriate

Rule 23(b)(2) only applies to injunctive relief and is inappropriate here for several reasons. First, the plaintiffs' prayer for injunctive relief is clearly secondary to their damages claims. While their damages theory is unsupportable, the plaintiffs stress throughout their moving papers that ***they are seeking money*** in the form of restitution, nominal, statutory and punitive damages. (*E.g.* Dkt. 102 at 21.) As in *Algarin*, the plaintiffs' damages claims are clearly "not a mere 'mechanical step'" because the plaintiffs "seek individualized monetary relief that would require assessment of each class member's claim based on how many products she purchased, which products she purchased, where she purchased, if she used a coupon, and so forth." *See* 300 F.R.D. at 459. In such a case, "the request for injunctive and/or declaratory relief is merely a foundational step towards a damages award which requires follow-on individual inquiries to determine each class member's entitlement to damages." *Id.*; *see also Knutson v. Schwan's Home Service, Inc.*, 2013 WL 4774763 at *9 (S.D. Cal. 2013) ("Claims for individualized monetary relief do not satisfy Rule 23(b)(2)").

Second, many of the challenged statements have already been removed from the labels of the BBUSA products: Seven of the products in the proposed "Added Coloring Class" no longer contain artificial coloring; the phrases "good source of whole grain" or "excellent source of whole grain" have been removed from the labels of BBUSA products in the proposed "Whole Grain Class"; "soy flour" has been removed from the labels of 11 of the BBUSA products in the

1    proposed "100% Whole Wheat Class"; and one of the products in the proposed "Heart-Check

2    Class" no longer bears the Heart-Check Mark.  (Gerhart Decl. at ¶ 7.)  Because there is no

3    likelihood of future injury, the plaintiffs lack standing to pursue injunctive relief relative to such

4    products.  *See Jones*, 2014 WL 2702726 at *13-14; *Stuart v. Radioshack Corp.*, 2009 WL 281941

5    at *13 (N.D. Cal. 2009) ("Injunctive relief may be problematic if the practice under the old policy

6    differs from the current practice").  Thus, the Court should deny certification under Rule 23(b)(2),

7    too.

8    **III.    CONCLUSION**

9         Claims alleging food mislabeling historically have not been suitable for class certification

10   and the bases for those decisions are logical:  Consumers buy food products for numerous reasons

11   that are highly individual and largely have nothing to do with product labels.  So, in most cases it

12   is impossible, or in any event too unwieldy, for a plaintiff to prove issues like reliance, causation

13   and damages on a classwide basis.  Nowhere are these issues more prevalent than they are here,

14   where there are dozens of products at issue, most of which have unique labels that changed during

15   the course of the proposed class period, and where the plaintiffs admit that they bought the

16   products -- and competing products -- for numerous reasons unrelated to the labeling claims at

17   issue.  In this case, such individualized questions are unavoidable and they overwhelm any

18   common questions that may exist.  For these reasons, the Court should deny the plaintiffs' motion

19   for class certification as to each of their proposed classes.

20

21   Dated: April 6, 2015                              HOGAN LOVELLS US LLP

22

23                                                     By:  /S/ Mark C. Goodman

24                                                          Mark C. Goodman
                                                           Attorneys for Defendant
25                                                          Bimbo Bakeries USA, Inc.

26

27

28

DEFENDANT'S OPPOSITION TO MOTION FOR
CLASS CERTIFICATION 13-CV-01196-HSG(NC)