Pierce Gore (SBN 128515)
PRATT & ASSOCIATES
1871 The Alameda, Suite 425
San Jose, CA 95126
Telephone: (408) 369 0800
Fax:  (408) 369-0752
pgore@prattattorneys.com

Keith M. Fleischman (admitted *pro hac vice*)
Bradley F. Silverman (admitted *pro hac vice*)
THE FLEISCHMAN LAW FIRM, PLLC
565 Fifth Avenue, Seventh Floor
New York, New York 10017
Telephone: (212) 880-9571
Fax:  (917) 591-5245
keith@fleischmanlawfirm.com
bsilverman@fleischmanlawfirm.com

*Attorneys for Plaintiffs*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ALEX ANG and LYNNE STREIT, individually and on behalf of all others similarly situated,<br><br>        Plaintiffs,<br><br>        v.<br><br>BIMBO BAKERIES USA, INC.,<br><br>        Defendant. | Case No.  CV13-01196-HSG (NC)<br><br>**PLAINTIFFS' REPLY MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR CLASS  CERTIFICATION, FOR APPOINTMENT OF CLASS REPRESENTATIVES, AND FOR APPOINTMENT OF CLASS COUNSEL**<br><br>Hearing Date:   April 23, 2015<br>Time:           2:00 p.m.<br>Location:      Courtroom 15, 18th Floor<br>Judge:        Hon. Haywood S. Gilliam, Jr. |

## **TABLE OF CONTENTS**

I.      THE PROPOSED CLASSES ARE ASCERTAINABLE .................................................. 1

    A.      A Lack of Receipts Cannot Preclude Class Certification ........................................ 1

    B.      There Is No Admissible Evidence that Labels Were Not Uniform During
        the Class Period....................................................................................................... 2

II.     PLAINTIFFS ARE TYPICAL OF OTHER CLASS MEMBERS ..................................... 4

    A.      Good or Excellent Source of Whole Grain .............................................................. 5

    B.      100% Whole Wheat ................................................................................................. 6

    C.      Added Coloring in Bread Products .......................................................................... 7

    D.      Use of the Heart-Check Mark as a Paid Endorsement............................................. 7

    E.      Plaintiffs Are Also Typical Because They Relied on the Legality of the
        Products.................................................................................................................... 7

III.    MATERIALITY, CAUSATION, AND RELIANCE CAN BE PROVEN ON A
      CLASSWIDE BASIS ........................................................................................................ 8

IV.     MONETARY RELIEF CAN BE DETERMINED ON A CLASSWIDE BASIS ............. 11

V.      THE PROPOSED CLASSES MEET THE REQUIREMENTS OF RULE 23(B)(2) ....... 12

VI.     ALL OF DEFENDANTS' DECLARATIONS AND OBJECTIONS MUST BE
      EXCLUDED .................................................................................................................... 12

    A.      Evidentiary Objections to the Gore, Scarbrough, and Caswell Declarations ........ 12

    B.      The Strombom and Hanssens Declarations ........................................................... 13

CONCLUSION ........................................................................................................................... 16

1

**TABLE OF AUTHORITIES**

2

**Cases**

3

*Allen v. Hyland's Inc.*,
    300 F.R.D. 643 (C.D. Cal. 2014) ....................................................................................... 6

4

*Allen v. Similasan Corp.*,
    2015 U.S. Dist. LEXIS 43748 (S.D. Cal. Mar. 27, 2015)............................................. 2, 12

5

*Ang v. Bimbo Bakeries USA, Inc.*,
    2014 U.S. Dist. LEXIS 34443 (N.D. Cal. 2014)................................................................. 5

6

*Apple, Inc. v. Samsung Electronics Co., Ltd.*,
    2012 U.S. Dist. LEXIS 92314 (N.D. Cal. 2012)............................................................... 13

7

8

*Astiana v. Ben & Jerry's Homemade, Inc.*,
    2014 U.S. Dist. LEXIS 1640 (N.D. Cal. 2014)................................................................... 5

9

*Astiana v. Kashi Co.*,
    291 F.R.D. 493 (S.D. Cal. 2013)......................................................................................... 2

10

11

*Brazil v. Dole Packaged Foods, LLC*,
    2014 U.S. Dist. LEXIS 74234 (N.D. Cal. May 30, 2014) ............................................. 9, 10

12

13

*Chavez v. Blue Sky Natural Beverage Co.*,
    268 F.R.D. 365 (N.D. Cal. 2010) ....................................................................................... 1

14

*Delarosa v. Boiron, Inc.*,
    275 F.R.D. 582 (C.D. Cal. 2011) ....................................................................................... 1

15

*Forcellati v. Hyland's, Inc.*,
    2014 U.S. Dist. LEXIS 50600 (C.D. Cal. 2014).................................................................. 1

16

17

*Grange Ins. Assoc. v. Lintott*,
    2015 U.S. Dist. LEXIS 1136 (N.D. Cal. 2015).................................................................. 13

18

19

*Guido v. L'oreal USA Inc.*,
    284 F.R.D. 468 (C.D. Cal. 2012) .................................................................................. 14, 15

20

*Guido v. L'Oreal, USA, Inc.*,
    2013 U.S. Dist. LEXIS 94031 (C.D. Cal. July 1, 2013) ...................................................... 1

21

22

*Hinojos v. Kohl's Corp.*,
    718 F.3d 1098 (9th Cir. 2013).............................................................................................. 9

23

*In re ConAgra Foods, Inc.*,
    2015 U.S. Dist. LEXIS 24971 (C.D. Cal. 2015)............................................................. 1, 2

24

*In re Ethylene Propylene Diene Monomer (EPDM) Antitrust Litig.*,
    256 F.R.D. 82 (D. Conn. 2009).......................................................................................... 11

25

26

*In re High-Tech Employee Antitrust Litig.*,
    289 F.R.D. 555 (N.D. Cal. Apr. 5, 2013)........................................................................... 12

27

*In re Tobacco II Cases*,

28

207 P.3d 20 (Cal. 2009) ................................................................................... 9

*Johns v. Bayer Corp.*,
280 F.R.D. 551 (S.D. Cal. 2012) ...................................................................... 1

*Johnson v. Gen. Mills, Inc.*,
276 F.R.D. 519 (C.D. Cal. 2011) ...................................................................... 1

*Keilholtz v. Lennox Hearth Products Inc*,
268 F.R.D. 330 (N.D. Cal. 2010) ..................................................................... 9

*Kraft Foods Group Brands, LLC v. Cracker Barrel Old Country Store, Inc.*,
735 F.3d 735 (7th Cir. 2013) .......................................................................... 10

*Krueger v. Wyeth, Inc.*,
2011 U.S. Dist. LEXIS 154472 (S.D. Cal. 2011) ........................................... 11

*Lanovaz v. Twinings N. Am., Inc.*,
2014 U.S. Dist. LEXIS 57535 (N.D. Cal. Apr. 24, 2014) ................................ 2

*Leyva v. Medline Indust. Inc.*,
716 F.3d 510 (9th Cir. 2013) .......................................................................... 15

*Major v. Ocean Spray Cranberries, Inc.*,
2013 U.S. Dist. LEXIS 81394 (N.D.Cal. 2013) ............................................... 5

*McCrary v. Elations Co., LLC*,
2014 U.S. Dist. LEXIS 8443 (C.D. Cal. 2014) ..................................... 1, 11, 12

*Ortega v. Natural Balance, Inc.*,
300 F.R.D. 422 (C.D. Cal. 2014) .................................................................... 11

*Pacific Gas and Elec. Co. v. Lynch*,
216 F. Supp. 2d 1016 (N.D. Cal. 2002) .......................................................... 13

*Park v. Cytodyne Technologies, Inc.*,
2003 WL 21283814 (Cal. Super. Ct. 2003) ...................................................... 9

*Park v. Welch Foods, Inc.*,
2014 U.S. Dist. LEXIS 37796 (N.D. Cal. Mar. 21, 2014) ................................ 8

*Rahman v. Mott's LLP*,
2014 U.S. Dist. LEXIS 167744 (N.D. Cal. 2014) ......................................... 2, 4

*Ries v. Arizona Beverages USA LLC*,
287 F.R.D. 523 (N.D. Cal. 2012) .............................................................. 1, 2, 11

*Rivera v. Bio Engineered Supplements & Nutrition, Inc.*,
2008 U.S. Dist. LEXIS 95083 (C.D. Cal. 2008) .............................................. 1

*Spann v. J.C. Penney Corp.*,
2015 WL 1526559 (C.D. Cal. 2015) ............................................................... 11

*U.S. v. Contreras*,
593 F.3d 1135 (9th Cir. 2010) .......................................................................... 8

*U.S. v. Gonzalez-Alvarez*,
    277 F.3d 73 (1st Cir. 2002) ................................................................................. 11

*U.S. v. Technic Services, Inc.*,
    314 F.3d 1031 (9th Cir. 2002) ............................................................................... 8

*Wagner v. Spire Vision LLC*,
    2015 WL 876514 (N.D. Cal. 2015) ...................................................................... 12

*Walmart v.Dukes*,
    131 S. Ct. 2541 (U.S. 2011) ................................................................................... 9

*Wong Lai v. Northwestern Mutual*,
    2014 U.S. Dist. LEXIS 137850 (N.D. Cal. 2014) ............................................... 14

*Yeti By Molly Ltd. v. Deckers Outdoor Corp.*,
    259 F.3d 1101 (9th Cir. 2001) .............................................................................. 14

**Statutes**

21 U.S.C. § 101.54 ....................................................................................................... 6

21 U.S.C. § 136.110 ..................................................................................................... 7

**Rules**

Fed. R. Civ. P. 26(a)(2)(D)(ii) ................................................................................... 14

Fed. R. Civ. P. 37(c)(1) .............................................................................................. 14

Fed. R. Civ. Pro. 23(a) ................................................................................................. 5

**Regulations**

21 C.F.R. § 136.180(a)(1) ............................................................................................ 6

Plaintiffs Alex Ang and Lynne Streit ('Plaintiffs") have established their entitlement to class certification.  Defendant Bimbo Bakeries USA, Inc.'s ("Defendant") arguments are based on faulty premises and are without merit. There is no requirement that Plaintiffs identify class members at the class certification stage.  Individualized issues of reliance, materiality, causation, and damages are irrelevant and cannot defeat a motion for class certification. Defendant has also presented no admissible evidence showing that labels were not uniform during the class period and, even if they were not uniform, it would be insufficient to defeat class certification.  Moreover, the declarations and objections submitted by Defendant should be excluded for a number of reasons, including the fact that they violate the Civil Local Rules and constitute an attempt to evade briefing page limits.

## I.  THE PROPOSED CLASSES ARE ASCERTAINABLE

### A.  A Lack of Receipts Cannot Preclude Class Certification

"In this Circuit, it is enough that the class definition describes a set of common characteristics sufficient to allow a prospective plaintiff to identify himself or herself as having a right to recover based on the description." *McCrary v. Elations Co., LLC*, 2014 U.S. Dist. LEXIS 8443, at *24-25 (C.D. Cal. 2014); *see also In re ConAgra Foods, Inc*., 2015 U.S. Dist. LEXIS 24971, at *86 (C.D. Cal. 2015) (certifying class); *Forcellati v. Hyland's, Inc*., 2014 U.S. Dist. LEXIS 50600, at *14-15 (C.D. Cal. 2014) (same).[1] Nevertheless, Defendant argues that the proposed classes are not ascertainable because it will be impossible for Plaintiffs to identify class members who purchased these products without the benefit of sales records or receipts.  "If Defendant's argument were correct, 'there would be no such thing as a consumer class action.'" *McCrary*, 2014 U.S. Dist. LEXIS 8443, at *22 (citation omitted). "There is no requirement that

---

[1]      In fact, courts in this Circuit routinely certify classes of purchasers of over-the-counter products where it would be impossible to identify and notice every member of the class.  *See, e.g., Chavez v. Blue Sky Natural Beverage Co.,* 268 F.R.D. 365, 377 (N.D. Cal. 2010) (beverages); *Guido v. L'Oreal, USA, Inc*., 2013 U.S. Dist. LEXIS 94031 (C.D. Cal. July 1, 2013) (hair products); *Johns v. Bayer Corp.,* 280 F.R.D. 551, 560 (S.D. Cal. 2012) (multivitamins); *Ries,* 287 F.R.D. at 536 (tea products); *Delarosa v. Boiron, Inc.,* 275 F.R.D. 582, 595 (C.D. Cal. 2011) (homeopathic products); *Johnson v. Gen. Mills, Inc.,* 276 F.R.D. 519, 524 (C.D. Cal. 2011) (yogurt products); *Rivera v. Bio Engineered Supplements & Nutrition, Inc.,* 2008 U.S. Dist. LEXIS 95083 (C.D. Cal. 2008) (nutritional supplements).

1   'the identity of the class members ... be known at the time of certification.'" *Astiana v. Kashi Co.*,

2   291 F.R.D. 493, 500 (S.D. Cal. 2013) (quoting *Ries v. Arizona Beverages USA LLC,* 287 F.R.D.

3   523, 536 (N.D. Cal. 2012)). Nor is there a requirement that Plaintiffs or class members retain

4   receipts. *Lanovaz v. Twinings N. Am., Inc.*, 2014 U.S. Dist. LEXIS 57535, at *7 (N.D. Cal. Apr.

5   24, 2014) ("[Defendant] argues that the proposed class lacks ascertainability because . . .

6   consumers did not keep receipts or product containers. This is not persuasive."); *Rahman v. Mott's*

7   *LLP*, 2014 U.S. Dist. LEXIS 167744, at *9-10 (N.D. Cal. 2014) (rejecting lack of receipts as basis

8   for denial of certification).

9        Further, the potential inclusion of uninjured class members does not make the class

10   unascertainable. *In re ConAgra Foods, Inc.*, 2015 U.S. Dist. LEXIS 24971, at *94-95 ("fact that

11   some class members may have not been injured by the '100% Natural' claim does not render the

12   class unascertainable"). Defendant's concern about due process can be addressed "when, and if,

13   that issue [arises]." *Allen v. Similasan Corp.*, 2015 U.S. Dist. LEXIS 43748, at *17 (S.D. Cal. Mar.

14   27, 2015).

15        **B.**     **There Is No Admissible Evidence that Labels Were Not Uniform**
16                **During the Class Period**

17        Defendant also argues that the classes are not ascertainable because the challenged label

18   statements did not appear on the products throughout the class period.[2] But Defendant presents no

19   admissible evidence that supports this assertion. Instead, Defendant relies entirely on charts in the

20   Declaration of Kenneth W. Gerhart ("Gerhart Decl."). Mr. Gerhart purports to have attempted to

21   determine the dates on which the unlawful labeling was on products at issue by reviewing artwork

22   files. Gerhart Decl. ¶ 5. However, he admittedly did not look at all relevant documents to get any

23   kind of definitive answer, but merely looked at a "representative sample" of the documents in

24   Defendant's possession. Gerhart Decl. ¶¶ 6-7.  He does not explain how this "representative

25   sample" was chosen, or whether other documents not included within the sample would have

26   provided additional or different information about when labels appeared on products.  Therefore,

27

28      [2]     To evade page limits, most of this legal argument is impermissibly set forth in the expert
report of Dr. Hanssens.  *See* Hanssens Decl. ¶¶ 15-33; section V, *infra*.

the Gerhart Decl. is unreliable.[3]  Also, there has been no authentication of the underlying data and there is no foundation for admission of the chart.

Of greater significance, Defendant admits that, from the artwork on which Mr. Gerhart's charts are purportedly based, it is impossible to determine when a depicted label appeared on a product, or if the depicted label *ever* appeared on a product.  In responses to interrogatories, Defendant previously produced the same information contained in the Gerhart Decl.  Reply Decl. Ex. A.[4]  Defendant represented that those responses were based on 287 documents (annexed as Reply Decl. Ex. B) containing depictions of labels that were produced on March 26, 2015.  *See* Reply Decl. Ex. C. Those documents were shown to Defendant's Rule 30(b)(6) witness. Boehm Depo. (Reply Decl. Ex.D) at 60-61, 66-67.  The witness testified that ███████████████████████████████████████████████████████████████████████.  *Id*.  This further demonstrates that the Gerhart charts are inadmissible because they are based on documents that do not convey the information set forth in the charts.

Still, further, Defendant has recently stated that the interrogatory responses that provide the information set forth in the Gerhart charts are also based on additional documents that have never been produced.  *See* Reply Decl. Ex. E, Response # 26.  Charts are inadmissible if based on documents that are not produced.  *See* Fed. R. Evid. 1006.[5]

Additionally, the information set forth in the Gerhart Decl. is directly refuted by information on Defendant's own websites.  As examples, those websites state that products in the Added Coloring Class continue to contain coloring and that products in the 100% Whole Wheat

---

[3]     The information on the chart also lacks specificity.  In many instances, the start or end date of a label is not specified beyond the year in which the event supposedly occurred.

[4]     The Declaration of Bradley F. Silverman dated April 17, 2015 is referred to herein as "Reply Decl."  To distinguish between the two, the Declaration of Bradley F. Silverman dated Feb. 18, 2015 is referred to herein as "Silverman Decl.," as it was in Plaintiffs' opening brief.

[5]     Additionally, Defendant is precluded from arguing that product labels have not been uniform throughout the class period.  This precise information was sought in interrogatories to which responses were due on the date of filing for Plaintiffs' motion for class certification.  *See* Reply Decl. ¶ 9.  Yet, Defendant waited until after Plaintiffs filed their motion to serve untimely responses.  *Id*.  Plaintiffs did not have the benefit of this information when seeking class certification.  Additionally, the underlying documents were responsive to a number of Plaintiffs' document requests, but were first produced on March 26, 2015, months after they were required to be produced.  *See* Reply Decl. Exs. F and G.

1    Class continue to contain soy flour.  *See* Silverman Decl. Exs. 22-23.[6]  Based on all this, at best,

2    even if it was admissible, questions of fact exist as to the accuracy of the Gerhart Decl.[7]

3         Even if, *arguendo*, the Gerhart Decl. was accurate, the information contained therein does

4    not preclude class certification.  To the extent necessary, certain class definitions can be trimmed

5    to omit certain products, or class periods can be limited to time periods in which all of the class

6    products contain the unlawful labeling.  *See Rahman*, 2014 U.S. Dist. LEXIS 167744, at *11-12

7    ("these issues can be cured by redefining the class to exclude any individuals who purchased

8    Mott's between dates when 'No Sugar Added' certainly did not appear on the label, and by

9    defining the class as only those persons who bought the juice with the challenged statement").  For

10   example, assuming the Gerhart Decl. is accurate, the Heart-Check Class period could be limited to

11   January 2012 to the present, a period in which Defendant concedes all class products have the

12   offending label.[8]  Gerhart Decl. ¶ 7(a).

13   **II.       PLAINTIFFS ARE TYPICAL OF OTHER CLASS MEMBERS[9]**

14        Defendant's typicality arguments are unpersuasive.[10]  Plaintiffs read and relied on the

---

15   [6]     Further, Plaintiffs have specifically asked that Defendant identify all changes to the labels

16   of the products at issue during the class period, however, Defendant refuses to provide this
     information.  *See* Reply Decl. Ex. H, Response # 19.

17   [7]     Defendant also inaccurately asserts that certain products are unavailable to consumers in

18   California.  However, at a minimum, all of those products are available for purchase over the
     internet.  *See* Reply Decl. Ex. I.  Defendant notes that it only has two "authorized third-party

19   internet seller[s]," which do not sell those products in California.  *See* Lee Decl. ¶ 7(c).  However,
     they are available to California consumers from other internet retailers.  *Id.*

20   [8]     Similarly, the Added Coloring Class definition could be cured by eliminating Oroweat

21   Dark Rye Bread and Oroweat Sweet Hawaiian Bread and limiting the class period to March 18,
     2009 to March 31, 2014.  The 100% Whole Wheat Class could be split in two, with one class

22   consisting of purchasers of Sara Lee 100% Whole Wheat Bread, Bimbo 100% Whole Wheat
     Tortillas, Thomas' 100% Whole Wheat English Muffins, and Tia Rosa 100% Whole Wheat

23   Tortillas from January 1, 2011 to December 31, 2013.  The other would consist of purchasers of all
     nine other products in the 100% Whole Wheat Class from March 18, 2009 to November 31, 2014.

24   The Whole Grain Class could be limited to purchasers of Sara Lee 100% Whole Wheat Bread
     from August 1, 2011 to September 30, 2013 and purchasers of Sara Lee Classic 100% Whole

25   Wheat Bread from March 18, 2009 to November 31, 2012.

26   [9]     Because Defendant alleges that certain products are not sold in California, Defendant

27   argues that Plaintiffs have failed to meet the numerosity requirement with respect to those
     products. However, numerosity simply requires that the members of the class be so numerous that
     joinder is impracticable. Fed. R. Civ. Pro. 23(a). Given Defendant's total sales of all subject

28   products, there is no question that the number of putative class members is sufficient to satisfy
     numerosity.

1  challenged statements and their claims rest on legal theories that are typical of other class members.

2       **A.     Good or Excellent Source of Whole Grain**

3       Ms. Streit believed that the phrase "excellent source of whole grain" indicated that the

4  products she purchased were healthier than others.  *See* Final Transcript of Deposition of Lynne

5  Streit ("Streit Depo.") (Reply Decl. Ex. J)[11] at 16, 20, 98-99, 192, 281.  She relied on that

6  statement when deciding to purchase the products.  *Id* at 98-99, 286.  Defendant criticizes her for

7  not knowing exactly what a whole grain is and for not knowing what constitutes an "excellent

8  source of whole grain."  However, that is precisely the reason why this health claim is banned by

9  the FDA.  Because there is no Reference Daily Intake or Daily Reference Value for whole grain,

10  the term "excellent source of whole grain" is meaningless. The FDA determined that it implies to

11  consumers that a product is healthier than others and, therefore, should not be used on food labels.

12  21 U.S.C. § 101.54; Scarbrough Decl. ¶ 9.

13       Defendant suggests that Mr. Ang may have purchased one or more products for reasons other

14  than the claim that it was a good or excellent source of whole grain. Defendant is incorrect. Mr.

15  Ang relied on these misrepresentations when he purchased all of the products at issue. *See* Final

16  Transcript of Deposition of Alex Ang ("Ang Depo.") (Reply Decl. Ex. M) at 116, 118, 162, 230.

17  _____

18  [10]     Defendant relies heavily on *Astiana v. Ben & Jerry's Homemade, Inc*., 2014 U.S. Dist.
LEXIS 1640 (N.D. Cal. 2014), which is distinguishable.  There, all products were labeled as "all

19  natural," but some may have contained cocoa that was alkalized in a synthetic manner.  Defendants
regularly used cocoa that was alkalized by both natural means and synthetic means, and it was

20  impossible to determine if any given package contained naturally or synthetically alkalized cocoa.
*Id* at *9-10.

21       Further, as Judge Orrick has already held, Plaintiffs may assert claims on behalf of class
members that purchased different products containing the same misrepresentations. *Ang v. Bimbo*

22  *Bakeries USA, Inc*., 2014 U.S. Dist. LEXIS 34443, at *28 (N.D. Cal. 2014).  The evidence shows
that the products in each proposed class contain the exact same unlawful labeling.  *See* Reply Decl.

23  Ex. K; Silverman Decl. Exs. 21-23.  *Major v. Ocean Spray Cranberries, Inc*., 2013 U.S. Dist.
LEXIS 81394 (N.D.Cal. 2013) is readily distinguishable.  It is one of a small minority of cases that

24  have held that claims cannot be brought with respect to products that were not purchased by named
plaintiffs.  *Id*. at *12.  Also, unlike here, in *Major*, the plaintiff attempted to certify a class that

25  included disparate products that were not alleged to be unlawfully labeled in the same way.  *Id*.
at*12-14.

26
[11]     Plaintiffs' opening papers cited to the rough transcripts of the depositions of Ms. Streit and

27  Mr. Ang because, at the time, final transcripts were not yet available.  For the Court's convenience,
Plaintiffs provide a chart showing the corresponding pages in the final transcripts of each citation

28  to the rough transcripts in their opening brief.  *See* Reply Decl. Ex. L.

1   Nevertheless, Mr. Ang need only have purchased one product in reliance upon this unlawful claim

2   in order to be typical of the class members. Further, the misrepresentation need not be the only the

3   reason for the purchase. *See Allen v. Hyland's Inc*., 300 F.R.D. 643, 666 (C.D. Cal. 2014).

4   Therefore, whether taste, cost, or other factors played a role is irrelevant.

5          **B.    100% Whole Wheat**

6          Ms. Streit testified that she relied on that the representation that her purchases were "100%

7   Whole Wheat." Streit Depo. at 155, 280, 281-82. However, Defendant argues she is not typical

8   because she believed that "100% Whole Wheat" meant the product was made from 100% whole

9   wheat flour, but knew that soy is not a grain. Streit Depo. at 272, 281, 285-86.  Whether soy is a

10  grain is irrelevant. Under 21 C.F.R. § 136.180(a)(1), dough used to make whole wheat bread must

11  be made from "wheat flour, bromated whole wheat flour, or a combination of these." The

12  regulation does not make an exception for soy flour or other non-grain flours. Nor does knowledge

13  that soy is not a grain render Ms. Streit not typical of other consumers.[12]  Further, the fact that Ms.

14  Streit is not allergic to soy is also irrelevant.  She does not allege that her health was endangered,

15  but that she relied on the false representation that the product was "100% Whole Wheat."

16         Mr. Ang also explicitly testified that he relied on the representation that the product was

17  "100% Whole Wheat."  Ang. Depo. at 162, 190.  However, Defendant attempted to confuse him at

18  his deposition by showing him two almost identical packages, except one listed soy flour in the

19  ingredients and one did not.  Ang. Depo. at 187-88.  Just from a quick glance, Mr. Ang could not

20  be certain which was on the product he purchased.  Defendant suggests that this raises a question

21  of whether he purchased a product with the unlawful label at issue.  However, the evidence is clear

22  that Mr. Ang purchased a product labeled as "100% Whole Wheat" that listed soy flour as an

23  ingredient.[13]  Additionally, the issue is not Plaintiffs' views on soy, but on the misrepresentation

24  [12]    Defendants assert that Ms. Streit testified that she knows that "'soy flour' is not the type of
25  flour that could detract from the truthfulness of the '100% whole wheat' label under the standard
    of identity for wheat bread."  Def. Mem. at 9.  Ms. Streit never said any such thing at her
26  deposition and Defendant does not cite to any such testimony.

27  [13]    *See* Gore Decl. ( Exhibit K to Reply Decl.); Gore Reply Decl. ¶ 2 (Exhibit N to Reply
    Decl.); Ang Reply Decl. ¶ 2 (Exhibit O to Reply Decl.).  Further, Defendant does not dispute that,
28  during the time period in which Mr. Ang purchased the product, the label included soy flour in the
    ingredients.  *See* Gerhart Decl. ¶ 7d (Exhibit P to Reply Decl.).

1  that the products are "100% Whole Wheat."

2      **C.      Added Coloring in Bread Products**

3          Defendants argue that Mr. Ang was not deceived by the representation that Bimbo Toasted

4  Bread in "bread" because he ate the product like one would eat crackers. How he physically ate the

5  product is irrelevant to the legality of the labeling. Further, Mr. Ang believed that the product

6  originally started out soft and light colored and became hard and darker because it was toasted, as

7  opposed to the addition of coloring.  Ang Depo. at 210-11.  He believed this "[b]ecause it was

8  called toasted bread."  *Id* at 211.  Further, the issue is not Mr. Ang's views on added coloring, but

9  on the misrepresentation that this is a bread product.[14]

10      **D.      Use of the Heart-Check Mark as a Paid Endorsement**

11          Mr. Ang testified that, when making his purchase, he "believe[d] that [the American Heart

12  Association ("AHA")] endorse[d] the product and they believe it's healthier than other products

13  without the label." Ang Depo. at 81.  He relied on the Heart-Check mark, but did now know that

14  this was a paid endorsement.  *Id* at 82, 86.  Nevertheless, Defendant now argues that products

15  bearing the Heart-Check Mark without disclosure that it is a paid endorsement are, in fact, in

16  compliance with federal and state law because the AHA tests and certifies products.  Notably,

17  Defendant cannot cite to any legal authority for this proposition.  The undisputed evidence shows

18  that Defendant believed the Heart-Check Mark attracts consumers and that Defendant paid to have

19  the mark placed on its products.  *See* Silverman Decl. Exs. 10-15. The issue is whether Defendant

20  paid for this endorsement.  The fact that the AHA has minimum standards before it will make a

21  paid endorsement is irrelevant.  Nor is Mr. Ang's knowledge of these standards relevant.[15]

22      **E.      Plaintiffs Are Also Typical Because They Relied on the Legality of the
             Products**

23

24          Like any reasonable consumer, had Plaintiffs known that the products were illegal or in

25

26  [14]      Defendant's Rule 30(b)(6) witness, its Director of Regulatory Affairs, admitted that, ▮

27  ▮  *See* Boehm Depo. at 163-64.

28  [15]      Additionally, the documents produced by the AHA that are annexed as Exhibits D and E to
     Mr. Skaar's declaration have not been authenticated and are inadmissible hearsay.

1   violation of federal or state law, they would not have purchased the products. "[T]he public

2   expects everyone to comply with applicable health and safety regulations. This expectation is

3   codified in the substantive law that prohibits the violation of those regulations." *U.S. v. Technic*

4   *Services, Inc.*, 314 F.3d 1031, 1050 (9th Cir. 2002), *overruled on other grounds*, *U.S. v. Contreras*,

5   593 F.3d 1135 (9th Cir. 2010). *Accord, Park v. Welch Foods, Inc.,* 2014 U.S. Dist. LEXIS 37796,

6   at *6 (N.D. Cal. Mar. 21, 2014) ("Plaintiffs may have acted differently if they were aware of a way

7   to avoid it, thus making the liability relevant to this case. . . . Welch's argument that the allegations

8   should be struck because other consumers may opt not to buy Welch's products if they know of the

9   potential for criminal liability speaks to precisely that point."). Defendant does not address this

10  point.[16]

11  ## III.   MATERIALITY, CAUSATION, AND RELIANCE CAN BE PROVEN ON A
12  ## CLASSWIDE BASIS

13  Defendant argues that Plaintiffs cannot establish materiality, causation, and reliance

14  because their testimony that they purchased the products is "speculative" and that there is no other

15  evidence of purchases. This is simply not true. Plaintiffs purchased these products. Declaration of

16  Alex Ang (Reply Decl. Ex. O) at ¶ 2; Declaration of Lynne Streit (Reply Decl. Ex. Q) at ¶ 2. They

17  took the actual packaging of the products they purchased (which contain all the alleged

18  misrepresentations) and gave them to Mr. Gore. *Id.* Mr. Gore has securely retained those exact

19  same packages. Gore Reply Decl. at ¶ 2. Mr. Gore also photographed those exact same packages.

20  *Id.* Those photographs are annexed as Exhibits A-F to Mr. Gore's prior declaration dated February

21  18, 2015.[17] There can be no reasonable dispute as to whether Plaintiffs purchased the products at

22

23  [16]    Nor did Dr. Van Liere ask any survey participants if they believed a given product was
        legal or, if they were aware that a product was illegal, whether that would affect their decision to
24      purchase the product. Regardless, his declaration is inadmissible. *See* section V, *infra*.

        [17]    Notably, Defendant objects to Mr. Gore's first declaration in an attempt to eliminate
25      evidence that Plaintiffs actually purchased the products at issue with the misrepresentations at
        issue. *See* Dkt. # 122. There is no merit to Defendant's arguments and Plaintiffs now submit a
26      second declaration from Mr. Gore, as well as declarations from Plaintiffs in order to dispel any
        suggestion that the items in the photographs annexed to Mr. Gore's first declaration are anything
27      other than the products purchased by Plaintiffs. *See* Gore Reply at ¶ 2(Ex. N to Reply Decl.); Ang.
        Decl. at ¶ 2 (Exhibit O to Reply Decl.); Streit  Decl. at ¶ 2 (Exhibit Q to Reply Decl.).  Moreover,
28      Defendant's objections to Mr. Gore's first declaration, as well as objections to the declarations of

1    issue.

2         Second, Defendant's argument fails as a matter of law. Materiality, causation, and reliance

3    do not raise individual issues precluding class certification. Materiality is a "question common to

4    the class, the resolution of which 'will resolve an issue that is central to the validity of each of the

5    claims in one stroke.'" *Brazil v. Dole Packaged Foods, LLC*, 2014 U.S. Dist. LEXIS 74234, at

6    *24-25 (N.D. Cal. May 30, 2014) (quoting *Walmart v.Dukes*, 131 S. Ct. 2541, 2545 (U.S. 2011)).

7    "Because 'an inference of reliance arises if a material false representation was made to persons

8    whose acts thereafter were consistent with reliance upon the representation,' should [the plaintiff]

9    prevail in proving that [the defendant']s label misstatements were material, he will have

10   established a presumption of reliance as to the entire class as well. *Id; see also In re Tobacco II*

11   *Cases*, 207 P.3d 20 (Cal. 2009).

12        "[T]he causation required by the [CLRA] does not make plaintiffs' claims unsuitable for

13   class treatment. Causation as to each class member is commonly proved more likely than not by

14   materiality. That showing will undoubtedly be conclusive as to most of the class." *Keilholtz v.*

15   *Lennox Hearth Products Inc*, 268 F.R.D. 330, 343 (N.D. Cal. 2010).  "A representation is

16   "material,"…if a reasonable consumer would attach importance to it or if "the maker of the

17   representation knows or has reason to know that its recipient regards or is likely to regard the

18   matter as important in determining his choice of action." *Hinojos v. Kohl's Corp.,* 718 F.3d 1098,

19   1107 (9th Cir. 2013).  "[T]he legislature's decision to prohibit a particular misleading advertising

20   practice is evidence that the legislature has deemed that the practice constitutes a 'material'

21   misrepresentation, and courts must defer to that determination."  *Id.* Therefore, Defendant's

22   violations of the Sherman Law are material.

23        Defendant attacks Plaintiffs' expert Dr. Caswell because she has conducted no consumer

24   surveys in support of her opinion that the label statements are material. This argument fails

25   because the UCL does not require a consumer survey to prove materiality or deception. *See Park v.*

26   *Cytodyne Technologies, Inc.*, 2003 WL 21283814 (Cal. Super. Ct. 2003) ("[T]o establish that

27

28   Drs. Scarbrough and Caswell violate Civil Local Rule 7-3(a) and constitute impermissible evasions
     of brief page limits.  They must be excluded.  *See* section V, *infra*.

1    advertising is misleading under a reasonable consumer test should not require the use of consumer

2    surveys. Considering that the advertisement speaks for itself, the judge is in a position to determine

3    whether it is misleading, i.e. likely to deceive, under a 'reasonable consumer' standard.").

4           Post-litigation consumer surveys, like the one Defendant proffers through Dr. Van Liere's

5    declaration, are dubious and viewed with skepticism. *See Kraft Foods Group Brands, LLC v.*

6    *Cracker Barrel Old Country Store, Inc.,* 735 F.3d 735, 741 (7th Cir. 2013) (discussing inherent

7    bias in post-litigation consumer surveys). Indeed, Dr. Van Liere's unscientific and skewed survey

8    is contradicted by Defendant's own reports and surveys. *See* Reply Decl. Ex. R at



; Reply Decl. Ex. S at

; Silverman Decl. Ex. 14 at

20   5 ("consumers liked *Certified by the American Heart Association* the best").  Additionally,

21   common sense dictates that the very reason why a food manufacturer would include such claims

22   and endorsements on its labels is because they do influence consumers.

23          Individual purchasing decisions do not create predominating individual issues because the

24   common question of whether the challenged label statements are material misrepresentations does

25   not depend on the "subjective motivations of individual purchasers, and the particular mix of

26   motivations that compelled each class member to purchase the products in the first place is

27   irrelevant." *Brazil*, 2014 U.S. Dist. LEXIS 74234, at *23-24. ("[V]ariation among class members

28   in their motivation for purchasing the product, the factual circumstances behind their purchase, or

1 the price that they paid does not defeat the relatively 'minimal' showing required to establish

2 commonality.") (quoting *Ries*, 287 F.R.D. at 537). The focus of the UCL and FAL is on

3 defendants' actions, *not on the subjective state of mind of the class members*. *McCrary*, 2014 U.S.

4 Dist. LEXIS 8443, at *44 (emphasis added.)

5 **IV.     MONETARY RELIEF CAN BE DETERMINED ON A CLASSWIDE BASIS**

6          Defendant argues that Plaintiffs' full refund model fails because monetary relief is

7 calculated as "the difference between the actual price and the actual value received." (Def.'s Mem.

8 at 1.) Plaintiffs' full refund model is entirely consistent with this premise. The products violate 21

9 U.S.C. § 331 and are illegal. As a matter of law, food products that violate this statute are worth

10 zero. *See, e.g., U.S. v. Gonzalez-Alvarez*, 277 F.3d 73, 78 (1st Cir. 2002) ("We accept this

11 argument, and hold that where a product cannot be sold lawfully it has a value of zero . . . ."").

12 Here, the difference between the purchase price and the value of the product received is the full

13 purchase price. Cases cited by Defendant to the contrary did not address how the illegality of

14 products could affect their value and presumed that the products at issue had some positive value.

15 Other courts have permitted restitution of the full purchase price. *See Ortega v. Natural Balance,*

16 *Inc.*, 300 F.R.D. 422, 429-30 (C.D. Cal. 2014) (certifying class and permitting recovery of full

17 purchase price where product is illegal); *Krueger v. Wyeth, Inc.*, 2011 U.S. Dist. LEXIS 154472, at

18 *39-40 (S.D. Cal. 2011) (certifying class); *Spann v. J.C. Penney Corp.*, 2015 WL 1526559, at *6

19 (C.D. Cal. 2015) (denying summary judgment).

20          Even assuming, *arguendo*, that the unlawful products did provide some value, this value

21 can be determined on a classwide basis. *See* May Decl. ¶¶ 3, 7, 10.  Should the Court determine

22 that class members are entitled to less than their full purchase price, Dr. May has set forth

23 methodologies by which the amount to which class members are entitled can be calculated.  As is

24 the case in almost all such class actions, Defendant has enlisted an expert to identify purported

25 faults with Dr. May's methodologies.  Those criticisms are addressed in Dr. May's rebuttal report

26 and are insufficient to preclude class certification. *In re Ethylene Propylene Diene Monomer*

27 *(EPDM) Antitrust Litig.*, 256 F.R.D. 82, 101 (D. Conn. 2009) ("It is unnecessary to delve further

28 into the merits by going point-by-point through each expert's theory to decide who has designed

the 'better' multiple regression equation.")) The theory need only be "plausible." *In re High-Tech Employee Antitrust Litig.*, 289 F.R.D. 555, 567 (N.D. Cal. Apr. 5, 2013).

Finally, Defendant argues that individual damages can never be calculated because class members will not be able to conclusively prove the amount of their purchases and because their memories may be faulty.  This is simply not the law.  *See, e.g., McCrary*, 2014 U.S. Dist. LEXIS 8443, at *24-25. For these same reasons, through sworn self-identification as a purchaser of a product within a class definition, class members can establish that they were harmed as a result of Defendant's actions and are entitled to a recovery, or, at a minimum, are entitled to nominal damages or statutory damages under the CLRA.[18] *Allen*, 2015 U.S. Dist. LEXIS 43748, at *17.

## V.      THE PROPOSED CLASSES MEET THE REQUIREMENTS OF RULE 23(B)(2)

Defendant's argument against certification of a Rule 23(b)(2) injunction class is a mishmash of concepts. Plaintiffs do not seek a (b)(2) injunction class so that they can recover monetary relief. Plaintiffs seeks (b)(2) certification to enjoin Defendant from continuing to mislabel the subject products. Plaintiffs seek (b)(3) certification of their monetary relief claims.

## VI.     ALL OF DEFENDANTS' DECLARATIONS AND OBJECTIONS MUST BE EXCLUDED

Defendant impermissibly submitted declarations and objections to Plaintiffs' declarations as separate documents in a blatant attempt to circumvent briefing page limits. Therefore, the documents are precluded by the Civil Local Rules and must be excluded.

### A.      Evidentiary Objections to the Gore, Scarbrough, and Caswell Declarations

Civil Local Rule 7-3(a) states that: "Any evidentiary and procedural objections to the motion must be contained within the brief or memorandum."  In violation of this rule, Defendant has submitted three sets of "evidentiary objections" collectively containing an additional twelve pages of legal argument.  They are not contained within the Defendant's brief and may not be considered.  *See Wagner v. Spire Vision LLC*, 2015 WL 876514, at *2 (N.D. Cal. 2015) (refusing to consider separate "Objections to Evidence"); *Grange Ins. Assoc. v. Lintott*, 2015 U.S. Dist.

---

[18]      Defendant also argues that, with respect to damages under Civ. Code § 3360, it has breached no duty.  The Sherman Law imposes a duty on Defendant to comply with federal food labeling laws. That duty is for the benefit of the public. Defendant has breached that duty.

1   LEXIS 1136, at *9-10 (N.D. Cal. 2015) (striking objections not within brief).[19]

2          **B.      The Strombom and Hanssens Declarations**

3          The Strombom and Hanssens Declarations may not be considered for a number of reasons.

4   *First*, virtually all of the Strombom Declaration and paragraphs 10, 13, 15-33, and 55-65 of the

5   Hanssens Declaration are nothing but legal argument in the guise of expert reports.  They make

6   arguments that appear to have been written by an attorney, rather than an expert.  Those arguments

7   are not based on, and do not require, any scientific expertise.  They do not satisfy the requirements

8   of Fed. R. Evid. 702.  For example in paragraphs 10 and 15-33 of his declaration, Dr. Hanssens

9   summarizes the information in the Gerhardt Declaration and argues that, based on that information,

10  labels on the products at issue were not uniform during the class period.[20]  That argument requires

11  no expertise and is nothing but an impermissible extension of Defendant's brief.   Similarly,

12  paragraphs 13 and 55-65 are just a summary of the contents of the Van Liere Declaration put in the

13  form of legal argument.  To the extent the Strombom and Hanssens Declarations are actually legal

14  argument, they cannot be considered.  *See Apple, Inc. v. Samsung Electronics Co., Ltd.*, 2012 U.S.

15  Dist. LEXIS 92314, at *19 (N.D. Cal. 2012) ("Expert declarations are to serve as evidence in

16  support of arguments raised in a party's brief, not as means for circumventing briefing page

17  limits."); *Pacific Gas and Elec. Co. v. Lynch*, 216 F. Supp. 2d 1016, 1027 (N.D. Cal. 2002) (expert

18  reports stricken).

19          *Second*, the entire Strombom Declaration is a rebuttal to the May Declaration and

20  paragraphs 14, 51-54, and 66-71 of the Hanssens Declaration are a rebuttal to both the May and

21  Caswell Declarations.  With respect to expert disclosures, Fed. R. Civ. P. 26(a)(2)(D)(ii) provides

22  that "the disclosures must be made: . . . if the evidence is intended solely to contradict or rebut

23  evidence on the same subject matter identified by another party under Rule 26(a)(2)(B) or (C),

24  _____

[19]      To the extent the Court does consider these objections, Plaintiffs respectfully request leave
25  to file supplemental submissions responding to those objections.  Plaintiffs dispute the arguments
    set forth in the objections.  However, within the fifteen page limit to which Plaintiffs are subject, it
26  is impossible to fully respond to those objections. For this reason, Plaintiffs have ben prejudiced by
    the violation of Civil Local Rule 7-3(a).
27  [20]      As set forth above, the Gerhart Declaration is inaccurate and based on documents that do
    not support Mr. Gerhart's conclusions. *See* section I.B, *supra*. For these same reasons, any analysis
28  of the Gerhart Declaration is not founded upon admissible or scientifically reliable evidence.

*within 30 days after the other party's disclosure*. (Emphasis added). Plaintiffs made their expert disclosures on February 18, 2015. Defendant did not make its disclosures until April 6, 2015. Defendant refused to even identify its experts prior to April 6, 2015, much less produce reports.

Fed. R. Civ. P. 37(c)(1) provides that, "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." "Rule 37(c)(1) gives teeth to these requirements by forbidding the use at trial of any information required to be disclosed by Rule 26(a) that is not properly disclosed." *See Yeti By Molly Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001) (affirming exclusion of expert witness). Exclusion of improperly disclosed expert witnesses is "self-executing . . . and automatic to provide a strong inducement for disclosure of material." *Id* (citations and internal quotation marks omitted). "Thus, the burden falls on the party facing the sanction to demonstrate that its expert witness should not be excluded under Rule 37(c)(1)." *Nehara v. California*, 2013 U.S. Dist. LEXIS 42993, at *17 (E.D. Cal. 2013) (excluding expert testimony where Rule 26(a)(2)(D) is violated). *Accord, Wong Lai v. Northwestern Mutual*, 2014 U.S. Dist. LEXIS 137850 (N.D. Cal. 2014) (striking rebuttal report that was 26 days late).

Here, the violation of Rule 26(a)(2)(D)(ii) was not harmless. Plaintiffs only had eleven days to reply to Defendant's opposition. It was not possible to adequately respond to these declarations, travel cross-country to depose Defendant's experts, and prepare proper reply papers in this limited amount of time. *See* Reply Decl. ¶ 22. For all these reasons, Defendant's rebuttal expert declarations may not be considered.

*Third*, Dr. Hanssens's declaration should also be disregarded because it is irrelevant to the issue of class certification. The substance of that portion of Dr. Hanssens's declaration that is based on expertise is that "[t]here are many factors affecting consumers' purchase decisions, these factors are weighted differently by different consumers." Hanssens Decl. ¶ 34. Dr. Hanssens submitted a similar declaration in *Guido v. L'oreal USA Inc.*, 284 F.R.D. 468, 475n.6 (C.D. Cal. 2012) that made essentially the same argument. *Guido* also involved UCL and CLRA claims pertaining to the labeling of a product. On class certification, Dr. Hanssens's declaration was excluded as irrelevant:

1

2

3

4

5

6

> The Court agrees that Hanssens's declaration is not relevant to the determination of class certification in this case. As discussed above, the materiality of defendants' alleged misrepresentations and omissions is established "if a reasonable man would attach importance to its existence or nonexistence in determining his choice of action in the transaction in question." Thus, whether the lack of a warning label may not have had the "same impact on all consumers" and may not have informed an individual's buying decision is not relevant, because the standard is an objective one. As set forth more fully herein, plaintiffs have testified that they would not have purchased, or would not have paid as much for, Serum had they known it was flammable. This is sufficient to raise a classwide inference of causation between the alleged wrongful conduct and alleged economic harm.

7

8

*Id.* at 475n.6 (internal citations omitted).  The declaration submitted by Dr. Hanssens in this action should also be disregarded for the same reasons.[21]

9

10

11

12

13

14

15

16

Similarly, those portions of Dr. Strombom's declaration that critique Dr. May's declaration for failing to make any individualized analysis of each class member's damages (Strombom Decl. ¶¶ 16-20, 72-79) are irrelevant because, to certify a class, individualized proof of damages is not required.  *Leyva v. Medline Indust. Inc*., 716 F.3d 510, 513-14 (9th Cir. 2013).  Those portions of Dr. Strombom's declaration that critique Dr. May's purchase price restitution analysis for failing to take into account any value received by class members from the products at issue (Strombom Decl. ¶¶ 21-28) are also irrelevant because, as a matter of law, food products that violate 21 U.S.C. § 331 have no value.  *See* Plaintiffs' Opening Memo of Law at 19.[22]

17

18

19

20

21

22

23

24

25

26

27

---

[21]     For those exact same reasons, the Van Liere Declaration should also be excluded as irrelevant.  His analysis regarding individualized consumer preferences have no bearing on the issue of class certification.  Dr. Van Liere's expert opinions have been rejected in other actions. *See Mary Kay Inc. v. Weber*, 601 F. Supp. 2d 839, 848-49 (N.D. Tex. 2009) (report partially not considered by court because of irrelevant findings designed to confuse the trier of fact).  Here too, Dr. Van Liere's study is designed to confuse the trier of fact.  For example, with respect to the false representation that products are "100% Whole Wheat," Dr. Van Liere asks survey participants about their views on soy flour, but does not ask their views on the term at issue, "100% Whole Wheat."  He does not ask survey participants their opinions on the meaning of "100% Whole Wheat," or whether they would be less interested in buying a product labeled as such that is really not 100% whole wheat.  Similarly, with respect to a products labeled as a "good source of whole grain," Dr. Van Liere asks survey participants if "the package indicates that the product HAS a <u>specific</u> level of whole grain" (emphasis in the original), but the issue is that "good source of whole grain" is an illegal health claim because it is a meaningless term that implies that the product has a particular health quality.  Notably, Dr. Van Liere does not ask survey participants if the phrase "good source of whole grain" implies that the product is healthier than other products or contains a health quality.  Indeed, the words "good source of whole grain" (or "100% Whole Wheat") do not appear in any of Dr. Van Liere's survey questions.

28

[22]     All declarations submitted by Defendant (with the exception of the Hanssens Declaration) are also defective and inadmissible for another reason. They are not notarized, but are expressly

1

**CONCLUSION**

2

    For the foregoing reasons, Plaintiffs respectfully request that the Court grant their motion.

3

Dated:  April 17, 2015.                    Respectfully submitted,

4

                       */s/ Brian Herrington*

5

                       Brian Herrington (admitted *pro hac vice*)
DON BARRETT, P.A.

6

                       P.O. Box 927
Lexington, MS 39095

7

                       Telephone: (662) 834-2488
Fax: (662) 834-2628

8

                       bherrington@barrettlawgroup.com

9

                       Keith M. Fleischman (*admitted pro hac vice*)

10

                       Bradley F. Silverman (*admitted pro hac vice*)
THE FLEISCHMAN LAW FIRM, PLLC

11

                       565 Fifth Avenue, Seventh Floor
New York, New York 10017

12

                       Telephone: (212) 880-9571
Fax:  (917) 591-5245

13

                       keith@fleischmanlawfirm.com

14

                       bsilverman@fleischmanlawfirm.com

15

                       Ben F. Pierce Gore (SBN 128515)
PRATT & ASSOCIATES

16

                       1871 The Alameda, Suite 425
San Jose, CA  95126

17

                       Telephone:  (408) 429-6506
Fax:  (408) 369-0752

18

                       pgore@prattattorneys.com

19

20

                       *Attorneys for Plaintiffs*

21

**CERTIFICATE OF SERVICE**

22

    I, Brian Herrington, hereby certify that a true and correct copy of the foregoing was served

23

via the Court's ECF system upon all counsel of record on this the 17th day of April, 2015.

24

25

26

limited to being sworn to under penalty of perjury "under the laws of the State of California."
This violates the requirements of 28 U.S.C. § 1746 because the declarants do not subject

27

themselves to the penalties for perjury under federal law. None of those declarations may be
considered. *Mejia v. City of San Bernardino*, 2012 WL 1079341, at *2 (C.D. Cal. 2012); *Sony*

28

*BMG Music Entert. v. Cody*, 2009 WL 3650923, at *1n.1 (E.D. Cal. 2009). Further, the Gerhart
Declaration was executed in Pennsylvania and the Lee Declaration was executed in Missouri.

1

/s/ *Brian Herrington*
Brian Herrington

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28