HOGAN LOVELLS US LLP
Mark C. Goodman (Bar No. 154692)
Ethan A. Miller (Bar No. 155965)
David W. Skaar (Bar No. 265377)
3 Embarcadero Center, Suite 1500
San Francisco, California  94111
Telephone:      (415) 374-2300
Facsimile:       (415) 374-2499
mark.goodman@hoganlovells.com
ethan.miller@hoganlovells.com
david.skaar@hoganlovells.com

Attorneys for Defendant
Bimbo Bakeries USA, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| Alex Ang and Lynn Streit,<br><br>　　　　　　　Plaintiffs,<br><br>　　v.<br><br>Bimbo Bakeries USA, Inc.,<br><br>　　　　　　　Defendant. | Case No. 13-CV-01196-HSG (NC)<br><br>**DEFENDANT'S NOTICE OF MOTION AND MOTION FOR SPOLIATION SANCTIONS; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date:　　　　August 20, 2015<br>Time:　　　　2:00 p.m.<br>Courtroom:　15<br>Judge:　　　Hon. Haywood S. Gilliam, Jr. |

TO THE COURT, ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE THAT, on August 20, 2015, at 2:00 p.m. or as soon thereafter as the matter may be heard in Courtroom 15 of the above-captioned Court, located on the 18th floor at 450 Golden Gate Avenue, San Francisco, California 94102, Defendant Bimbo Bakeries USA, Inc. ("BBUSA") will and hereby does move for an award of sanctions in the form of striking Plaintiff Alex Ang's ("Plaintiff") claims against BBUSA in their entirety or, in the alternative, for monetary sanctions in an amount sufficient to account for Plaintiff's and his counsel's failure to comply with the Federal Rules of Civil Procedure, which failure has prejudiced BBUSA in this litigation.

The motion is based upon this Notice of Motion and Motion, the supporting Memorandum of Points and Authorities, the accompanying Declaration of David W. Skaar and the exhibits thereto, all other pleadings, papers and evidence on file in this matter and any such matters as the Court may consider at the time of the hearing of this motion.

Dated: June 15, 2015                    HOGAN LOVELLS US LLP

                                        By: /S/ Mark C. Goodman
                                            Mark C. Goodman
                                            Attorneys for Defendant
                                            Bimbo Bakeries USA, Inc.

# **TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ........................................................................................................... 1

II. RELEVANT BACKGROUND ...................................................................................... 2

III. DISCUSSION ................................................................................................................. 6

    A. Plaintiff Had A Duty To Preserve Evidence At Least Since March 2013 ............... 7

    B. His Counsel Failed To Instruct Plaintiff To Preserve Evidence And Plaintiff Has Taken No Steps To Preserve Evidence ........................................................... 8

    C. Plaintiff Has Been Knowingly Destroying Relevant Evidence Since Filing This Case .................................................................................................................. 8

    D. Plaintiff Acted In Bad Faith, Making Termination An Appropriate Sanction ........ 9

    E. This Motion Is Timely .............................................................................................. 12

IV. CONCLUSION ............................................................................................................. 13

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Adriana Int'l Corp. v. Thoeren*,
   913 F.2d 1406 (9th Cir. 1990) ................................................................................................. 11

*Apple Inc. v. Samsung Elecs. Co., Ltd.*,
   888 F.Supp.2d 976 (N.D. Cal. 2012) .................................................................................. 7, 10

*Apple, Inc. v. Samsung Electronics Co., Ltd.*,
   881 F.Supp.2d 1132 (N.D. Cal. 2012) .................................................................................. 6, 7

*Arista Records, LLC v. Tschirhart*,
   241 F.R.D. 462 (W.D. Texas 2006) ........................................................................................ 11

*Chambers v. NASCO, Inc.*,
   501 U.S. 32 (1991) .................................................................................................................... 9

*Columbia Pictures, Inc. v. Bunnell*,
   2007 WL 4877701 (C.D. Cal. Dec. 13, 2007) ........................................................................ 11

*Connecticut Gen. Life Ins. Co. v. New Images of Beverly Hills*,
   482 F.3d 1091 (9th Cir. 2007) ................................................................................................. 11

*Glover v. BIC Corp.*,
   6 F.3d 1318 (9th Cir. 1993) ...................................................................................................... 9

*Hynix Semiconductor, Inc. v. Rambus, Inc.*,
   897 F.Supp.2d 939 (N.D. Cal. 2012) ....................................................................................... 9

*In re Napster, Inc. Copyright Litigation*,
   462 F.Supp.2d 1060 (N.D. Cal. 2006) ......................................................................... 6, 7, 9, 10

*Leon v. IDX Sys. Corp.*,
   464 F.3d 951 (9th Cir. 2006) ............................................................................................ 10, 12

*Perez v. Vezer Indus. Professionals, Inc.*,
   2011 WL 5975854 (E.D. Cal. Nov. 29, 2011) ................................................................. 12, 13

*RealNetworks, Inc. v. DVD Copy Control Ass'n, Inc.*,
   264 F.R.D. 517 (N.D. Cal. 2009) .............................................................................................. 7

*Rimkus Consulting Group, Inc. v. Cammarata*,
   688 F.Supp.2d 598, 641 (S.D. Tex. 2010) ................................................................................ 7

*Schmid v. Milwaukee Elec. Tool Corp.*,
   13 F.3d 76 (3d Cir. 1994) .......................................................................................................... 9

*Unigard Sec. Ins. Co. v. Lakewood Eng'g & Mfg. Corp.*,
　　982 F.2d 363 (9th Cir. 1992) ...................................................................................................... 7

*Zubulake v. UBS Warburg LLC*,
　　220 F.R.D. 212 (S.D.N.Y. 2003) ............................................................................................ 6, 7

**OTHER AUTHORITIES**

Fed. R. Civ. Proc. 26, cmt. notes ...................................................................................................... 12

Fed. R. Evid. 401 ................................................................................................................................ 8

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.     INTRODUCTION**

Plaintiff and his counsel were on notice of the potential for this litigation at least as early as March 2013, at which time they became obligated to preserve all evidence potentially relevant to this matter.  Unfortunately, counsel neglected to instruct their client regarding his obligations under the clear Federal Rules and, despite his prior litigation experience in this very Court, Plaintiff did not take any steps to attempt to preserve evidence relevant to this dispute.  Instead, Plaintiff and his counsel completely ignored both those rules and the evidence preservation letter that BBUSA issued in early April 2013 -- a document that outlined several categories of evidence that Plaintiff was expected to preserve, expressly including "all receipts, proofs of purchase and other documentation" relating to Plaintiff's purchase of BBUSA products and similar products from other manufacturers and all "existing grocery receipts" -- and systematically destroyed evidence pertaining to the claims in this litigation. (Declaration of David W. Skaar ("Skaar Decl."), Ex. A at 129:14-16, 129:22-130:7, 130:8-14, 130-23-131:1, 146:1-21, 159:15-22 and 161:7-12; *id.*, Ex. B.)

Plaintiff testified in February 2015 that, at all times since March 2013, he has destroyed his grocery and other food purchase receipts and food labels.  As a result, BBUSA has only been able to obtain a very limited number of documents from Plaintiff (those apparently that he chose to have BBUSA see) in this litigation and no receipts whatsoever indicating any purchase of any of BBUSA's products.  Plaintiff's documents, had they been properly preserved, certainly would have been relevant to liability and damages issues in this litigation, including (i) whether Plaintiff actually bought any BBUSA products and whether any of those products actually had the labeling statements on them about which Plaintiff complains in this action, (ii) whether Plaintiff really stopped buying BBUSA products or other products making similar labeling claims in March 2013, (iii) whether BBUSA's product labels were material to Plaintiff's purchasing decisions and, if so, how, and (iv) any alleged entitlement to monetary damages or injunctive relief.

Plaintiff's intentional destruction of this evidence and his lawyers' wholesale failure to do anything to attempt to preserve evidence in this case, and the resulting prejudice to BBUSA, is

attempted to be excused by Plaintiff's claim that BBUSA should have expected Plaintiff to destroy such documents. Indeed, during meet and confer efforts relating to Plaintiff's spoliation of documents, Plaintiff and his counsel dismissed BBUSA's concerns because they had previously written a letter stating that not all food purchase receipts would be retained. (Skaar Decl., Ex. F.) But that letter certainly does not excuse Plaintiff's willful destruction of evidence, does not explain his counsel's complete failure to comply with the Federal Rules and does not mitigate the damage done to BBUSA by precluding access to documents that likely would have adversely impacted Plaintiff's case and his claim for damages.

In light of the intentional destruction of evidence in this case, and counsel's failure to do anything to prevent it, BBUSA respectfully requests that the Court impose sanctions in the form of terminating Plaintiff's claims against BBUSA or, in the alternative, awarding a monetary sum in an amount sufficient to compensate BBUSA for the time and expense incurred due to Plaintiff's and his counsel's failure to comply with the Federal Rules and to deter such conduct in the future.

## II. RELEVANT BACKGROUND

This lawsuit was filed in March 2013 and relates to the alleged mislabeling of dozens of BBUSA products. (*See, e.g.,* Dkt. 40 at ¶ 4.) Plaintiff alleges that he reviewed and relied on the product labels in purchasing specific BBUSA products and that he would not have bought the products but for certain specific statements on those labels. (*Id.* at ¶¶14-17.) Plaintiff also claims that he stopped buying BBUSA products in or about March 2013, when he formed the belief that such products were mislabeled. (Skaar Decl., Ex. A at 221:21-24.) Plaintiff seeks monetary damages and injunctive relief. (Dkt. 40 at pp. 40-41.)

While it was assumed that Plaintiff had been preserving and maintaining all of his documents relevant to this lawsuit from well before it was filed, in early April 2013, BBUSA sent a "preservation notice" to Plaintiff's counsel, demanding that Plaintiff and his counsel "maintain and do not discard or destroy" evidence relevant to this lawsuit, including the following specific categories of documents:

- "Any and all receipts, proofs of purchase and other documentation supporting the

- purchase by your clients of all products at issue in the complaint in the above-referenced matter";

- "Any and all receipts, proofs of purchase and other documentation relating to the purchase by your clients of any brand of bagels, whole wheat bread, sweet bakery goods and/or prepared pizza crust that is a non-Bimbo Bakeries brand"; and

- "Your clients' existing grocery receipts for all foodstuffs they purchased during the putative 'class period' alleged in the complaint, including receipts for all such purchases made during the pendency of this litigation." (Skaar Decl., Ex. B.)

Plaintiff's counsel never responded to the preservation notice. (Skaar Decl. at ¶4.) BBUSA has since learned that Plaintiff's counsel never instructed Plaintiff to search for, preserve and not destroy documents related to his claims in this matter. (Skaar Decl., Ex. A at 232:3-14, 234:7-10 and 234:22-235:2.)

On October 23, 2013, BBUSA propounded its first set of document requests, which included specific requests for "purchase receipts, labels and packaging," "receipts for food purchases … from any retailer" and all documents that support Plaintiff's claim for damages. (Skaar Decl., Ex. C at Nos. 1-6, 9 and 22.) In his initial responses served in December 2013, Plaintiff made various objections to these requests but agreed to produce receipts relating to the products named in the complaint in this litigation. (Skaar Decl., Ex. D.) During the parties' meet and confer concerning Plaintiff's responses to BBUSA's discovery, Plaintiff's counsel took the position his clients "have no continuing obligation to produce documents relating to future purchases of food products throughout the course of this litigation" but again agreed to produce such documents relating to the products named in the complaint. (Skaar Decl., Ex. F.) BBUSA could not agree that Plaintiff's discovery obligations were limited to just the products named in the complaint, since Plaintiff's purchasing habits bore on a number of issues (such as causation, reliance and damages), and demanded that Plaintiff produce all of his information relating to all of his food purchases. (Skaar Decl., Ex. E.)

Following additional meet and confer, Plaintiff twice supplemented his discovery responses and, in April 2014, he finally represented that what he had previously produced constituted "all responsive, non-privileged documents in his possession, custody or control."

(Skaar Decl., Ex. G.) Those documents consisted of copies of a few grocery receipts from July, August and December 2013, months after Plaintiff had filed this lawsuit. (Skaar Decl., Ex. H.) None of these receipts reflect any purchases of BBUSA products and no BBUSA labels were produced by Plaintiff. (*Id.*) Based on Plaintiff's representation that he had produced all responsive documents in his custody, possession or control, BBUSA did not pursue the issue further. (Skaar Decl. at ¶11.)

Plaintiff appeared for deposition in February 2015, almost a year after representing that all of his documents had been produced. (Skaar Decl., Ex. A.) At his deposition, Plaintiff testified that, while he certainly could have done so, he had not been keeping his food purchase receipts and that no one had ever instructed him to do so:

**Q:** Do you keep your receipts when you make food purchases typically?

**A:** I'll keep them for a little while.

…

**Q:** Since you've filed this complaint have you saved any of your receipts?

**A:** Let's see, the ones I have now are from before, a few months ago. I don't think I would have anything from, you know, 2013 right now.

**Q:** You threw those away?

**A:** Yes.

**Q:** Why did you throw those away?

**A:** I'll usually keep them for a few months just in case there's a charge I need to dispute, and then get rid of them.

**Q:** Did anybody tell you to maintain your food purchase receipts after you filed your complaint?

**A:** No, that was something I was doing.

**Q:** Did anybody tell you at the time that you were thinking about filing this lawsuit to keep your receipts?

**A:** No.

…

**Q:** Do you recall your attorney asking, or anybody else asking, you for grocery receipts at any point after March 2013?

**A:** No.

...

**Q:** Other than the receipts that you sent to Mr. Gore, do you have any – have you ever looked for any other documents relating to this case?

**A:** Other than the receipts?

**Q:** Yes.

**A:** No.

...

**Q:** Do you recall looking for your own documents during the year 2014 in connection with this case?

**A:** No.

...

**Q:** Again, as you sit here today, you don't ever recall looking for any documents, in 2014, to provide information for discovery?

**A:** No.

**Q:** That's correct?

**A:** Yes, that's correct. (Skaar Decl., Ex. A at 129:14-16, 129:22-130:7, 130:8-14, 130:23-131:1, 146:1-21, 159:15-22 and 161:7-12.)

It became clear that Plaintiff's deposition was the first time that Plaintiff's counsel had instructed his client to maintain and produce documents relating to this case:

**Q:** [By Mr. Gore]  We had some conversation today, I can't recall whether it was on or off the record, maybe it was on the record, about you have some grocery receipts at – presently have some at home, correct?

**A:** Correct.

**Q:** And will you provide all of those receipts to me so I that [sic] can provide them to Mr. Goodman?

**A:** Yes.

**Q:** Will you keep all of your grocery receipts from today until the end of this litigation so that I can provide them to Mr. Goodman?

**A:** Yes.

\*\*\*\*\*\*\*\*\*\*\*\*\*

**Q:** [By Mr. Goodman] Has – before [Mr. Gore] just asked you that five minutes ago has he ever asked you to keep your receipts in this case?

**A:** No.

…

**Q:** He never told you to try to collect other receipts [other than those already produced]; is that correct?

**A:** That's correct.

**Q:** And he didn't tell you to collect other documents, is that correct?

**A:** That's correct. (*Id.* at 232:3-14, 234:7-10 and 234:22-235:2.)

No documents have been produced by Plaintiff since his deposition concluded and he promised to maintain and produce his grocery and other food purchase receipts. (Skaar Decl. at ¶12.) In early May 2015, BBUSA sent a meet and confer letter to Plaintiff's counsel regarding Plaintiff's destruction of relevant evidence. (Skaar Decl., Ex. I.) Thereafter, the parties attempted to engage in both written and telephonic meet and confer to address the issue. (Skaar Decl. at ¶¶14-15; *id.* at Ex. J.) During those meet and confer sessions, Plaintiff took the following positions: (1) Plaintiff's grocery receipts obtained since March 2013 are not relevant to any issue in this case; (2) Plaintiff "can't be found to have destroyed 'evidence' that [he] told [BBUSA that he was not] going to keep in the first place"; and (3) BBUSA should have raised this issue earlier. (Skaar Decl. at ¶15; *id.* at Ex. J.) Despite BBUSA's attempts to meet and confer, it became clear that no solution to this issue was going to be reached without assistance from the Court. (Skaar Decl. at ¶¶13-15.)

### III.   DISCUSSION

When a party violates his duty to preserve relevant evidence and destroys such evidence, he is subject to sanctions. *In re Napster, Inc. Copyright Litigation*, 462 F.Supp.2d 1060, 1066 (N.D. Cal. 2006) ("If a party breaches its duty to preserve evidence, the opposing party may move the court to sanction the party destroying evidence"). The moving party need only show that (1) the party with control over the evidence had a duty to preserve it at the time that it was destroyed, (2) documents were destroyed knowingly and (3) the evidence was relevant to claims or defenses at issue. *Apple, Inc. v. Samsung Electronics Co., Ltd.*, 881 F.Supp.2d 1132, 1138

(N.D. Cal. 2012) (citing *Zubulake v. UBS Warburg LLC,* 220 F.R.D. 212, 220 (S.D.N.Y. 2003)).

### A. Plaintiff Had A Duty To Preserve Evidence At Least Since March 2013

The duty to preserve evidence extends to the period before formal litigation, when a party knows or reasonably should know that information or documents may be relevant to a dispute. *In re Napster, Inc. Copyright Litig.*, 462 F.Supp.2d at 1067; *see RealNetworks, Inc. v. DVD Copy Control Ass'n, Inc.*, 264 F.R.D. 517, 524 (N.D. Cal. 2009) (duty to preserve evidence attaches when future litigation is "more than a possibility"); *see also Unigard Sec. Ins. Co. v. Lakewood Eng'g & Mfg. Corp.*, 982 F.2d 363, 369 (9th Cir. 1992) (excluding testimony based on evidence that plaintiff had destroyed two years before filing suit). An objective standard applies, asking not whether the party in fact foresaw litigation but whether a reasonable person in the same circumstances would have reasonably foreseen either litigation or the need to preserve evidence. *Apple Inc. v. Samsung Elecs. Co., Ltd.*, 888 F.Supp.2d 976, 990 (N.D. Cal. 2012).

As soon as Plaintiff and his counsel knew of his potential claims against BBUSA, they were both under a duty to "identify, locate, and maintain" evidence that they knew to be relevant to his claims. *In re Napster, Inc. Copyright Litigation*, 462 F.Supp.2d at 1067; *Apple Inc.*, 881 F.Supp.2d at 1137. *See also Zubulake*, 220 F.R.D. at 218 ("Once a party reasonably anticipates litigation, it must suspend its routine document retention/destruction policy and put in place a 'litigation hold' to ensure the preservation of relevant documents"). In this particular case, Plaintiff first sought Mr. Gore's counsel regarding another "case on food labeling" and Plaintiff's questions about "what can go on a food label" in early March 2013. (Skaar Decl., Ex. A at 147:16-148:11.) At the point that an individual meets with an attorney regarding potential claims, with knowledge that the attorney has been filing similar cases involving food labeling, a reasonable person would foresee litigation and would understand the types of documents that needed to be located and preserved. *See Apple Inc.*, 881 F.Supp.2d at 1136 (the relevant moment is when "litigation is reasonably anticipated"); *Rimkus Consulting Group, Inc. v. Cammarata*, 688 F.Supp.2d 598, 641 (S.D. Tex. 2010) (a duty to preserve evidence is triggered when a prospective plaintiff discussed filing suit and sought advice of counsel). Plaintiff in this case likely knew that he had an obligation to preserve such documents even earlier, as he was a plaintiff in another one

of Mr. Gore's food liability cases well before he became involved in this litigation. (Skaar Decl., Ex. A at 7:19-8:23.) In any event, it simply cannot be disputed that Plaintiff had a duty to preserve relevant evidence as of March 18, 2013, the date on which he filed the original complaint in this action, continuing to this present day.

### B. His Counsel Failed To Instruct Plaintiff To Preserve Evidence And Plaintiff Has Taken No Steps To Preserve Evidence

Plaintiff's sworn deposition testimony makes clear that his counsel failed to issue a preservation memorandum or otherwise instruct Plaintiff to preserve, search for and maintain relevant documents when this matter was first brought to his attention or at any subsequent time. (Skaar Decl., Ex. A at 130:8-14, 130:23-131:1, 146:1-21, 159:15-22, 161:7-12 and 233:24-235:2.) This is particularly concerning in light of the fact that BBUSA sent a "Preservation Notice" to Plaintiff's counsel in April 2013, which expressly demanded that counsel "and each of [his] clients preserve, maintain and do not discard or destroy any evidence … related to plaintiffs' claims in this lawsuit," specifically including "all receipts, proofs of purchase and other documentation" regarding Plaintiff's alleged purchase of BBUSA products or similar non-BBUSA products, and all "existing grocery receipts" for all purchases made during the "Class Period" and during the litigation. (Skaar Decl., Ex. B.) Plaintiff's counsel obviously did not consider this request worth either passing on to or enforcing with his client, because it is clear that Plaintiff has taken no steps to preserve any evidence in this case, which -- alarmingly -- is contrary to his repeated representations to BBUSA and the Court that he has "preserved evidence in [his] possession, custody, or control." (Dkt. 51 at 6:3-4 (2/13/14); Dkt. 74 at 6:20-21 (4/24/14).)

### C. Plaintiff Has Been Knowingly Destroying Evidence Since Filing This Case

While it is bad enough that Plaintiff failed to save (and then produce) the documents that he had that were relevant to the case before it was filed, it is perhaps more disturbing that Plaintiff has been routinely destroying receipts, labels and other relevant documents even after filing this suit and even after BBUSA specifically asked for such documents in discovery. Plaintiff testified that, at all times during the pendency of this litigation, he simply continued his usual practice of

destroying his grocery receipts every few months. (Skaar Decl., Ex. A at 129:14-130:7.)

Plaintiff does not dispute the fact that he destroyed documents but contends that grocery receipts are irrelevant. This position cannot be well taken. Plaintiff's receipts, labels and other documents, had they not been destroyed, would certainly have some "tendency to make the existence of [a] fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence" (Fed. R. Evid. 401), including that: (1) Plaintiff actually bought the BBUSA products that he claims in this litigation to have bought with the labeling statements that he claims to have read; (2) Plaintiff stopped buying BBUSA products and other products making similar labeling claims in March 2013; (3) BBUSA's product labels were material to him when he purchased the products; and (4) Plaintiff incurred a certain amount of damages. Plaintiff agreed to produce and did produce such documents in discovery in this matter, even though those documents -- curiously, given the fact that Plaintiff keeps all of his receipts for "several months before destroying them -- were just a few receipts from three random months in 2013. Obviously, Plaintiff would not have produced such documents at all if they were truly irrelevant. Plaintiff's relevance argument is also contradicted by his counsel's instruction at his deposition that Plaintiff preserve and produce all of his grocery receipts going forward, which has not occurred. (Skaar Decl., Ex. A at *Id.* at 232:3-14, 234:7-10 and 234:22-235:2.) Plaintiff's counsel would have never issued such an instruction if he believed that Plaintiff's grocery receipts were irrelevant. Unfortunately, this belated instruction appears to have made no difference, as Plaintiff has produced no further documents, and does nothing to address the damage to BBUSA that has already been done.

### D. Plaintiff Acted In Bad Faith, Making Termination An Appropriate Sanction

Plaintiff and his counsel clearly violated the Federal Rules of Civil Procedure; the only issue is the severity of the sanctions to be imposed. *In re Napster, Inc.*, 462 F.Supp.2d at 1066 (district courts have inherent power "'to manage their own affairs so as to achieve the orderly and expeditious disposition of cases'") (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991)); *Glover v. BIC Corp.*, 6 F.3d 1318, 1329 (9th Cir. 1993) (trial courts have "inherent discretionary power to make appropriate evidentiary rulings in response to the destruction or spoliation of

relevant evidence."). BBUSA submits that the appropriate remedy here is an issue or terminating sanction. Any lesser sanction would be insufficient to mitigate the prejudice to BBUSA when it will be forced to present its case at trial without key documents that would at least bear on, if not entirely refute, Plaintiff's most significant allegations.

In determining whether and what type of sanction to impose, courts generally consider three factors: "(1) the degree of fault of the party who altered or destroyed the evidence; (2) the degree of prejudice suffered by the opposing party; and (3) whether there is a lesser sanction that will avoid substantial unfairness to the opposing party." *Hynix Semiconductor, Inc. v. Rambus, Inc.*, 897 F.Supp.2d 939, 985 (N.D. Cal. 2012) (citing *Schmid v. Milwaukee Elec. Tool Corp.*, 13 F.3d 76, 79 (3d Cir. 1994). A party's destruction of evidence need not be in bad faith to warrant the imposition of sanctions and district courts may impose sanctions against a party that merely had notice that destroyed evidence was potentially relevant to litigation. *Glover*, 6 F.3d at 1329. Nonetheless, a party's motive or degree of fault in destroying evidence is relevant to the sanction imposed. *In re Napster*, 462 F.Supp.2d at 1066-67.

Before imposing a terminating sanction, the Court should consider the following factors: "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its dockets; (3) the risk of prejudice to the party seeking sanctions; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions." *Leon*, 464 F.3d at 958. The Court need not make explicit findings for each factor but a finding of "willfulness, fault, or bad faith" is required for dismissal. *Id.* A party's destruction of evidence qualifies as willful spoliation if the party has "some notice that the documents were potentially relevant to the litigation before they were destroyed." *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 959 (9th Cir. 2006).

In this case, Plaintiff did know or certainly should have known (as a matter of common sense) that his grocery receipts and product labels would be relevant to his claims that depend on proof that he actually purchased products with the alleged labeling statements on them and relied on the product labels. He especially should have known this given his prior experience as a representative plaintiff in a food labeling class action. (Skaar Decl., Ex. A at 7:19-8:23.) But

even if Plaintiff had lacked this rudimentary foresight, his counsel should have at the very least advised Plaintiff of his obligation to preserve evidence. Plaintiff and his counsel received BBUSA's preservation notice and Plaintiff certainly was aware of BBUSA's written discovery requests and his responses to them, which promised that all documents had been preserved, located and produced. (Skaar Decl., Exs. C, D & G.) Despite all of this, Plaintiff continued to destroy documents relating to his food purchases and never looked for or did anything else to identify and preserve evidence in this case. Plaintiff's subsequent destruction of evidence in the face of express notice regarding the relevance of the evidence easily qualifies as "willful spoliation" under *Leon*. *See also Apple Inc.*, 888 F.Supp.2d at 991-92 (failure to cease routine destruction of emails after litigation was reasonably anticipated warranted adverse inference sanction).

Indeed, the five *Leon* factors that the Court must consider in deciding whether to award terminating sanctions all point to affording such relief in this case. First, the public interest in the expeditious resolution of litigation and the Court's need to manage its docket support terminating sanctions, as this dispute, which is entirely caused by the misconduct of Plaintiff and Plaintiff's counsel, and which could have been entirely avoided had they simply complied with their obligations, has already consumed considerable resources by forcing the parties to engage in a lengthy meet and confer and will now consume the Court's time. *See Columbia Pictures, Inc. v. Bunnell*, 2007 WL 4877701, at *6 (C.D. Cal. Dec. 13, 2007). Second, the prejudice caused by Plaintiff's spoliation of evidence weighs strongly in favor of terminating his claims. A party suffers prejudice if the opposing party's actions impair its ability to go to trial or threaten to interfere with the just resolution of the case. *See Adriana Int'l Corp. v. Thoeren*, 913 F.2d 1406, 1412 (9th Cir. 1990). As noted above, the evidence that Plaintiff has destroyed is central to several issues in this case and the inability to obtain that evidence has prejudiced BBUSA's ability to address Plaintiff's allegations. *See Arista Records, LLC v. Tschirhart*, 241 F.R.D. 462, 465 (W.D. Texas 2006). There is no other source for the type of information that Plaintiff's grocery receipts and food labels would contain. Thus, the destruction of these documents prejudices BBUSA's defense.

The most critical factor to be considered in case-dispositive sanctions is whether "a party's discovery violations make it impossible for a court to be confident that the parties will ever have access to the true facts." *Connecticut Gen. Life Ins. Co. v. New Images of Beverly Hills*, 482 F.3d 1091, 1097 (9th Cir. 2007). That is precisely the problem here: Neither BBUSA nor the Court has access to documents that are potentially central to Plaintiff's claims because Plaintiff has destroyed them. Without these documents, the Court will not have all the information necessary to support a sound result in this case. The Court and BBUSA should not be forced to take Plaintiff's unsubstantiated testimony at face value.

A number of lesser sanctions could be imposed but, unfortunately, would not cure the prejudice to BBUSA. Although lesser sanctions would potentially cost Plaintiff some money, affect Plaintiff's trial presentation or deter Plaintiff's counsel from future misconduct, none would cure the troubling lack of evidence that has been created here. A ruling excluding evidence would only compound the problem caused by Plaintiff and his attorneys and fashioning a jury instruction creating a presumption in favor of BBUSA would hinder BBUSA's ability to rebut any material that Plaintiff might use to try to overcome the presumption. *See Leon*, 464 F.3d at 960. The only suitable remedy is a terminating sanction.

### E. This Motion Is Timely

Based on the parties' discussions during the meet and confer concerning this motion, Plaintiff will likely argue that BBUSA should have raised this issue with the Court after Plaintiff wrote in December 2013 that "plaintiffs have no continuing obligation to produce documents relating to future purchases of food products throughout the course of this litigation." (Skaar Decl., Ex. F.) This argument fails for several reasons.

First, Plaintiff's December 2013 letter does not admit to or explain Plaintiff's failure to preserve relevant evidence during the preceding nine months since the filing of the complaint in this action. *See Perez v. Vezer Indus. Professionals, Inc.*, 2011 WL 5975854 at *5 (E.D. Cal. Nov. 29, 2011) ("Vezer had an affirmative duty to preserve relevant documents and ESI, regardless of when the documents or ESI were formally requested in discovery or when a motion was filed"). In this case Plaintiff has been destroying receipts and other documents during the

entire litigation period, as evidenced by his very limited document production and his deposition testimony. (*See* Skaar Decl., Ex. A at 129:14-16, 129:22-130:7, 130:8-14, 130:23-131:1, 146:1-21, 159:15-22 and 161:7-12; *id.* at Ex. H.)

Second, taking a position in a meet and confer regarding the preservation and production of evidence does not excuse a party's fundamental duty to preserve evidence, does not allow a party to violate the Federal Rules and certainly does not permit a party to destroy the evidence that is the subject of the dispute and has been requested in discovery. *See, e.g., Perez*, 2011 WL 5975854 at *7 (questioning the relevance of documents "does not explain why minimal, if any, efforts were made to preserve relevant documents and ESI"); Fed. R. Civ. Proc. 26, cmt. notes re 2006 Amendment ("A party's identification of sources of electronically stored information as not reasonably accessible does not relieve the party of its common-law or statutory duties to preserve evidence").

Third, even if BBUSA had some earlier indication that Plaintiff's discovery responses were inadequate, the present issue was not ripe until Plaintiff testified in February 2015 that he had been destroying his receipts throughout this litigation:

> Vezer contends that plaintiffs' motion should be denied as untimely, because plaintiffs waited approximately 11 months after Vezer's document production in October 2010 before filing the motion. However, the depositions of Zarif and Mr. Vezer, which confirmed that ESI was lost, only took place on September 22, 2011 and October 11, 2011 respectively. While the court recognizes that plaintiffs had some control over the scheduling of these depositions, the court cannot conclude on the present record that the motion is untimely. (*Perez*, 2011 WL 5975854 at *5.)

Surely, the minimal delay between Plaintiff's deposition -- the first time that his misconduct was confirmed -- and the filing of this motion is excusable. During this short time period, Plaintiff has presumably been following his counsel's instruction to preserve his grocery receipts, even though none of those documents has been produced to BBUSA, so the parties are in the same position as they would have been had this motion been filed in March or April.

**IV.    CONCLUSION**

Plaintiff's repeated and abject failure to comply with the Federal Rules of Civil Procedure

has not only caused BBUSA to expend considerable resources that it never should have had to spend, it has prevented BBUSA from obtaining information directly relating to the claims and defenses in this litigation. Plaintiff's unwillingness to respect core principles of discovery -- including maintaining and not actively destroying documents -- should not go unpunished or undeterred. BBUSA therefore asks the Court to take the serious but justified step of awarding terminating sanctions by striking Plaintiff's claims against BBUSA. In the alternative, a monetary sanction should be imposed in an amount sufficient to allow BBUSA to recover the amounts that it spent only because of Plaintiff's failures to comply with his obligations and to deter any such conduct in the future by Plaintiff, his lawyers or any other litigants.

Dated: June 15, 2015                                HOGAN LOVELLS US LLP

                                                    By: /S/ Mark C. Goodman
                                                        Mark C. Goodman
                                                        Attorneys for Defendant
                                                        Bimbo Bakeries USA, Inc.