Pierce Gore (SBN 128515)
PRATT & ASSOCIATES
1871 The Alameda, Suite 425
San Jose, CA 95126
Telephone: (408) 369 0800
Fax:  (408) 369-0752
pgore@prattattorneys.com

Keith M. Fleischman (admitted *pro hac vice*)
Bradley F. Silverman (admitted *pro hac vice*)
THE FLEISCHMAN LAW FIRM, PLLC
565 Fifth Avenue, Seventh Floor
New York, New York 10017
Telephone: (212) 880-9571
Fax:  (917) 591-5245
keith@fleischmanlawfirm.com
bsilverman@fleischmanlawfirm.com

Brian K. Herrington (*admitted pro hac vice*)
BARRETT LAW GROUP
404 Court Square North
Lexington, MS 39095
662-834-2488
Fax: 662-834-2628
bherrington@barrettlawgroup.com

*Attorneys for Plaintiffs*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ALEX ANG and LYNNE STREIT, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>BIMBO BAKERIES USA, INC.,<br><br>Defendant. | Case No.  CV13-01196-HSG (NC)<br><br>**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION FOR SPOLIATION SANCTIONS**<br><br>Hearing Date:   August 20, 2015<br>Time:   2:00 p.m.<br>Location:   Courtroom 15, 18th Floor<br>Judge:   Hon. Haywood S. Gilliam, Jr |

## TABLE OF CONTENTS

TABLE OF AUTHORITIES.................................................................................................ii

INTRODUCTION ...........................................................................................................1

RELEVANT FACTS.........................................................................................................4

ARGUMENT...................................................................................................................9

    I.      DEFENDANT'S MOTION IS UNTIMELY ........................................................9

    II.     DEFENDANT HAS FAILED TO ESTABLISH ITS ENTITLEMENT TO ANY SANCTIONS .. 12

          A.     Mr. Ang Did Not Act With Bad Faith ........................................................13

          B.     The Discarded Documents Are Not Relevant and Would Not Support Defendant's Defenses.................................................................................15

          C.     Defendant Has Suffered No Prejudice ......................................................18

CONCLUSION ..............................................................................................................20

1

<u>**TABLE OF AUTHORITIES**</u>

2

<u>Cases</u>

3

4
*Ang v. Bimbo Bakeries USA, Inc.*,
    2013 WL 5407039 (N.D. Cal. Sept. 25, 2013) ....................................................... 5

5
*Ang v. Bimbo Bakeries USA, Inc.*,
    2014 WL 1024182 (N.D. Cal. Mar. 13, 2014) ....................................................... 5

6

7
*Apple*, *Inc. v. Samsung Electronics Co.*,
    888 F. Supp. 2d 976 (N.D. Cal. 2012) ................................................................. 13

8
*Arista Records, L.L.C. v. Tschirhart*,
    241 F.R.D. 462 (W.D. Tex. 2006) ....................................................................... 15

9

10
Brewer v. Quaker State Oil Refining Corp.,
    72 F.3d 326 (3d Cir. 1995)................................................................................... 14

11
Brookhaven Typesetting Services, Inc. v. Adobe Sys., Inc.,
    332 Fed. Appx. 387 (9th Cir. 2009) .................................................................... 12

12

13
*Bull v. United Parcel Serv., Inc.*,
    665 F.3d 68 (3d Cir. 2012)............................................................................. passim

14
*Chambers v. NASCO, Inc.*,
    501 U.S. 32 (1991) .............................................................................................. 14

15

16
Chin v. Port Auth. of New York & New Jersey,
    685 F.3d 135 (2d Cir. 2012)................................................................................ 12

17
*Columbia Pictures, Inc. v. Bunnell*,
    2007 WL 4877701 (C.D. Cal. Dec. 13, 2007) .................................................... 15

18

19
Compass Bank v. Morris Cerullo World Evangelism,
    2015 WL 2180436 (S.D. Cal. May 8, 2015) ....................................................... 12

20
*Cottle-Banks v. Cox Commc'ns, Inc.*,
    2013 WL 2244333 (S.D. Cal. May 21, 2013).................................... 10, 12, 18, 19

21

22
*Dicuio v. Brother Int'l Corp.*,
    2015 WL 3403144 (D.N.J. May 27, 2015) ..................................................... 14, 15

23
*Emery v. Harris*,
    2014 WL 710957 (E.D. Cal. Feb. 21, 2014) ................................................... 10, 14

24

25
*Hamilton v. Signature Flight Support Corp.*,
    2005 WL 3481423 (N.D. Cal. Dec. 20, 2005) ............................................... 18, 19

26
*Harris v. Wal-Mart Stores E., LP*,
    2013 WL 6795973 (N.D. Ga. Dec. 23)................................................................ 14

27

28
*Hynix Semiconductor Inc. v. Rambus Inc.*,
    897 F. Supp. 2d 939 (N.D. Cal. 2012) ................................................................. 15

*In re ConAgra Foods, Inc.*,
  2015 WL 1062756 (C.D. Cal. Feb. 23, 2015) ........................................................................ 18

*JOM, Inc. v. Adell Plastics, Inc.*,
  193 F.3d 47 (1st Cir. 1999) ......................................................................................... 10, 19

*Leon v. IDX Sys. Corp.*,
  464 F.3d 951 (9th Cir. 2006) ............................................................................................ 15

*Nursing Home Pension Fund v. Oracle Corp.*,
  254 F.R.D. 559 (N.D. Cal. 2008) ..................................................................................... 12

*O'Toole v. Sears Roebuck and Co.*,
  2014 WL 1388660 (N.D. Ill. Apr. 10, 2014) .................................................................... 16

*Perez v. Vezer Indus. Pros., Inc.*,
  2011 WL 5975854 (E.D. Cal. Nov. 29, 2011) .................................................................. 11

*PersonalWeb Technologies, LLC v. Google Inc.*,
  2014 WL 4088201 (N.D. Cal. Aug. 19, 2014) .................................................................. 11

*Rahman v. Mott's LLP*,
  2014 WL 5282106 (N.D. Cal. Oct. 15, 2014) ........................................................ 13, 14, 17

*Reinsdorf v. Skechers U.S.A., Inc.*,
  296 F.R.D. 604 (C.D. Cal. 2013) ...................................................................................... 19

*Ries v. Arizona Beverages USA LLC*,
  287 F.R.D. 523 (N.D. Cal. 2012) ................................................................................. 13, 18

*Rimkus Consulting Grp., Inc. v. Cammarata*,
  688 F. Supp. 2d 598 (S.D. Tex. 2010) .............................................................................. 15

*Ryan v. Editions Ltd. W., Inc.*,
  2015 WL 2365954 (9th Cir. May 19, 2015) ..................................................................... 15

Schmid v. Milwaukee Elec. Tool Corp.,
  13 F.3d 76 (3d Cir. 1994) ........................................................................................... 15, 16

Sherwin-Williams Co. v. JB Collision Servs., Inc.,
  2015 WL 1119406 (S.D. Cal. Mar. 11, 2015) .................................................................. 10

*Siam v. Potter*,
  2006 WL 1530155 (N.D. Cal. June 5, 2006) ......................................................... 10, 18, 19

*Siebert v. Gene Sec. Network, Inc*,
  2014 WL 5808755 (N.D. Cal. Nov. 6, 2014) .................................................................... 11

*Toppan Photomasks, Inc. v. Park*,
  2014 WL 2567914 (N.D. Cal. May 29, 2014) .................................................................. 18

*U.S. v. Salad*,
  2012 WL 5894387 (E.D. Va. Nov. 23, 2012) ................................................................... 16

1

*Zeisel v. Diamond Foods, Inc.*,
   2011 WL 2221113 (N.D. Cal. June 7, 2011) ............................................................ 13, 16, 17

2

*Zubulake v. UBS Warburg LLC*,
   220 F.R.D. 212 (S.D.N.Y. 2003) ....................................................................................... 12

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**INTRODUCTION**

2      Plaintiffs Alex Ang and Lynne Streit (collectively, "Plaintiffs") respectfully submit this

3  memorandum in opposition to the motion of defendant Bimbo Bakeries USA, Inc. ("Defendant" or

4  "Bimbo") for spoliation sanctions.  This motion is entirely without merit.  It is nothing more than a

5  transparent effort to spring a (false) trap after a year and a half of discovery, and after a motion for

6  class certification has been fully submitted.  Defendant has been indisputably aware since

7  **December 2013** of the underlying issues pertaining to this motion - - the production of receipts,

8  packaging, and refuse from food purchases made subsequent to the commencement of this action.

9  Yet, Defendant has inexplicably waited eighteen months to raise this issue with the Court.

10 Tellingly, Defendant considered this evidence so insignificant to this action that it never bothered

11 to request that the Court compel production of such receipts, packaging, refuse, or other

12 documentation pertaining to post-complaint food purchases.

13      Instead, it waited until June 2015 to ask the Court to dismiss Mr. Ang's claims based on his

14 failure to produce receipts pertaining to food purchases made *years* after the relevant transactions

15 identified in the complaint.  Indeed, Mr. Ang has not purchased any of Defendant's products since

16 this action was commenced in March 2013.  Therefore, the receipts Defendant now insists are

17 vital, have nothing to do with any of the products at issue in this litigation, and have nothing to do

18 with any of the claims or defenses asserted in this action.  They are irrelevant.

19      Further, the time period for Defendant's document demands were expressly limited to the

20 period "**from March 18, 2009 through the date of YOUR response,**" which was in **March**

21 **2014.**  *See* Exhibit C to the Declaration of David W. Skaar ("Skaar Decl.")) at 2 (emphasis added).

22 Mr. Ang produced all receipts that were in his possession as of March 2014.  With respect to

23 documents pertaining to food purchases subsequent to this period, Defendant now complains that

24 Mr. Ang did not retain documents that Defendant has never sought in discovery.

25      Moreover, at all times, Plaintiffs maintained their position that there was no ongoing

26 obligation to produce documents pertaining to future post-complaint purchases of food products

27 other than of those products identified in the complaint.  That position was set forth in all

28 responses to document demands.  It was also explicitly made clear in a letter dated **December 23,**

**2013** (annexed as Skaar Decl. Ex. E) in which Plaintiffs stated:

> [W]e maintain our position that plaintiffs have no continuing obligation to produce documents relating to future purchases of food products throughout the course of this litigation.  Plaintiffs have no obligation to save and produce, *inter alia*, every food container, wrapper, receipt, and advertisement that happens to come into plaintiffs' possession for the duration of this action.  Nevertheless, plaintiffs will produce any such documents that specifically relate to the products identified in the second amended complaint.

Critically, Defendant never responded to that letter.  Nor did it seek relief from the Court or ask the Court to clarify or delineate the scope of Plaintiffs' production and preservation obligations.  Instead, Defendant waited low in the weeds for eighteen months in a blatant attempt to trap Plaintiffs and seek sanctions for failure to produce receipts, packaging, and refuse relating to after-the-fact food purchases of non-Bimbo products that are not relevant to the issues raised in this action.  The case law makes clear that a party cannot wait and allow the alleged discovery violation to continue, and only after it is too late, make a strategic spoliation motion.

Moreover, Defendant cannot reasonably claim it was shocked to discover that Mr. Ang actually purchased food in 2014 and 2015.  Despite not receiving a single food receipt for those years over the course of this litigation, Bimbo now remarkably claims that only after completing Mr. Ang's deposition on February 13, 2015  - - over four months ago - -  did it realize that Mr. Ang purchased food for those years for which he did not produce a receipt.  Defendant plainly knew or should have known of the issue long ago.  This further demonstrates the motion's fatal untimeliness.  Accordingly, this motion should be denied as untimely.

Even if the motion was timely, it should still be denied.   Defendant relies on little more than its *ipse dixit* assertion that Plaintiffs were obliged to comply with Bimbo's self-defined, overly-broad, and unreasonable preservation and production demands.  Defendant also relies on repeated conclusory assertions that the receipts at issue are relevant and "central," and that Defendant has suffered profound prejudice.  Defendant's motion is unable to stand on such baseless, conclusory assertions.

Defendant falsely depicts Mr. Ang as a rogue litigant that intentionally destroyed damaging evidence.   Putting aside the fact that Defendant only asked for documents from a limited time period, with respect to any failure to retain food receipts, at most, Mr. Ang innocently and

1  understandably misconstrued his counsel's direction to retain receipts as only pertaining to receipts

2  of purchases of Defendant's products.  Before his February 2015 deposition, Mr. Ang did not

3  retain receipts reflecting his food purchases simply because he did not purchase any of

4  Defendant's products.  There was no bad faith on Mr. Ang's part.  Indeed, at his deposition,

5  Defendant's counsel explicitly asked Mr. Ang to retain all grocery receipts he possessed at that

6  time, and Mr. Ang has done just that.  Those receipts have since been produced.

7       Further, the discarded receipts are not relevant.  Receipts documenting after-the-fact food

8  purchases of non-Bimbo products have nothing to do with Defendant's violations of the Sherman

9  Law, UCL, FAL, and CLRA pertaining to specific products Defendant manufactured, resulting in

10  Plaintiffs' injuries in early 2013.  While Defendant repeatedly makes conclusory assertions

11  regarding the relevance of those receipts, tellingly, Defendant fails to elaborate on those assertions

12  in its papers. For example, Defendant claims these receipts are relevant to the issue of whether Mr.

13  Ang actually purchased the products at issue.  However, receipts from 2014 and 2015 do not bear

14  upon whether Mr. Ang made specific purchases in early 2013.  Further, Mr. Ang has produced the

15  actual packaging of the products at issue that he purchased and has testified that he did, in fact,

16  purchase those products.

17       Defendant has also suffered no prejudice requiring any remedy, let alone the proposed

18  draconian terminating sanctions.  Mere speculation that one or more of the receipts from after-the-

19  fact purchases of non-Bimbo products might somehow support Defendant's defenses is

20  insufficient to establish prejudice.  Rather, Defendant must present concrete evidence that the

21  receipts would have constituted favorable evidence for Defendant. Nothing suggests that those

22  receipts would have contradicted Mr. Ang's testimony.

23       Because this motion is untimely, because there was no bad faith, because the receipts are not

24  relevant, and because Defendant has suffered no prejudice, we respectfully ask that the Court deny

25  the motion in its entirety.

26

27

28

1

## RELEVANT FACTS

2

In February or March 2013, Mr. Ang purchased specific products manufactured by

3

Defendant that Plaintiffs allege are misbranded in violation of Food and Drug Administration

4

("FDA") regulations and the Sherman Law.  Transcript of deposition of Alex Ang ("Ang Depo.")[1]

5

at 67-78.  On March 13, 2013, Mr. Ang first met with attorney Pierce Gore regarding the

6

possibility of serving as a named plaintiff in a class action.  Declaration of Alex Ang dated June

7

26, 2015 ("Ang Decl.") ¶ 2.  Over the prior month, Mr. Ang had purchased certain products

8

manufactured by Defendant that are identified in the complaint.  *Id* at ¶ 3.  Mr. Ang still possessed

9

the packaging for those products and thereafter gave the packaging to Mr. Gore.  *Id* at ¶ 3,

10

Declaration of Pierce Gore dated June 29, 2015 ("Gore Decl."), at ¶ 6.  As of the date he met with

11

Mr. Gore, Mr. Ang had no longer retained receipts for the products at issue.  *Id* at ¶ 3.

12

During that meeting, Mr. Gore directed Mr. Ang to retain receipts from food purchases.  *See*

13

Gore Decl. ¶ 3.  However, Mr. Ang misunderstood the instruction, believing he only needed to

14

retain receipts for purchases of Defendant's products.  Ang Decl. ¶ 4.  Mr. Ang was never advised

15

by anyone to discard or destroy receipts of grocery purchases.  *Id* at ¶ 5.

16

Since the meeting with Mr. Gore, Mr. Ang has not purchased any of Defendant's products.

17

*Id* at ¶ 7; *see also* Ang Depo. at 71:14-20; 195:18-23; 213:5-7; 221:19-22.  Additionally, to his

18

knowledge, since he met with Mr. Gore, Mr. Ang has not purchased any products from any

19

manufacturer: with the American Heart Association Heart-Check Mark on the label; with the

20

phrase "good source of whole grain" or "excellent source of whole grain" on the label; with the

21

word "bread" on the label that contains added coloring; or with the phrase "100% whole wheat" on

22

the label that contains non-whole wheat flour.  Ang Decl. ¶ 8.

23

In general, Mr. Ang usually keeps grocery receipts long enough to balance his checking

24

account.  He then routinely discards them.  *Id* at ¶ 9.  Further, Mr. Ang has resided with his

25

girlfriend since August 2013.  *Id* at ¶ 10.  Since they moved in together, it is Mr. Ang's girlfriend

26

that has purchased the vast majority of groceries for their home.  *Id* at ¶ 11.  Therefore, during the

27

28

[1]    The Ang Depo. is attached as Exhibit A to the Declaration of Pierce Gore dated June 29, 2015 ("Gore Decl.")

course of this litigation, Mr. Ang has done little grocery shopping.  *Id* at ¶ 11.

The initial complaint in this action was filed on March 18, 2013.  Defendant then proceeded to make two largely unsuccessful motions to dismiss.[2]  On October 23, 2013, Defendant served document demands on Plaintiffs.[3]  *See* Skaar Decl. Ex. C.  Significantly, the document demands explicitly instruct:

> **The time period covered by these request unless otherwise indicated, extends from March 18, 2009 through the date of YOUR response.**

*Id* at 2 (emphasis added).

Those document demands, *inter alia*, sought "[a]ll documents, including receipts, labels and packaging" pertaining to purchases of defendant's products and of whole wheat bread, whole wheat white bread, toasted bread, bagels, and donuts.[4]  *Id* at Requests Nos. 1-7.  Significantly, with respect to purchases of any other food products, Request No. 9 explicitly sought receipts for food purchases "*during the period from March 18, 2009 through the date of production.*"  *Id* at Request No. 9 (emphasis added).  Even though the document demand had already made a point of limited the time period for all documents requests to extend only through "the date of YOUR response," this specific document request explicitly *excludes* receipts for *future* purchases of all other food products.  Yet, Defendant now asserts that this action should be dismissed because Mr. Ang failed to comply with a duty to retain documents pertaining to *all future food purchases*.

On or about December 11, 2013, Plaintiffs served responses and objections to Defendant's document demands.  *See* Skaar Decl. Ex. D.  Therein, Plaintiffs objected generally to the document

---

[2]  *See Ang v. Bimbo Bakeries USA, Inc.*, 2013 WL 5407039 (N.D. Cal. Sept. 25, 2013); *Ang v. Bimbo Bakeries USA, Inc.*, 2014 WL 1024182, at *8-9 (N.D. Cal. Mar. 13, 2014).

[3]  Defendant's motion makes much of fact that, in April 2013, it sent a "preservation notice" insisting that Plaintiffs maintain categories of evidence that Defendant unilaterally deemed relevant. But the preservation notice does not and did not establish the scope of what is relevant (nor, tellingly, does Defendant identify any precedent standing for that principle). Defendant's "preservation notice" is a red herring, which does nothing but document the fact that Defendant attempted to saddle Plaintiffs with burdensome and overly broad discovery obligations relating to irrelevant materials.

[4]  Defendants essentially requested the preservation and production of all of Mr. Ang's kitchen trash.

demand "*to the extent it seeks documents created after the filing and/or service of the initial pleading in the above-captioned action.*"  *Id* at 3 (emphasis added).  With respect to each of the specific document demand seeking "documents, including receipts, labels and packaging" pertaining to food purchases, Plaintiffs objected to the extent those document demands sought documents pertaining to products other than those identified in the second amended complaint.  *Id* at 4-7.

On December 17, 2013, the parties met and conferred regarding the aforementioned discovery responses.  In that meet-and-confer, Plaintiffs' counsel unambiguously communicated Plaintiffs' objection to any ongoing obligation to retain receipts, wrappers, or other refuse pertaining to future food purchases.  Gore Decl. ¶ 8.  However, Matthew Dolan, counsel for Defendant, sent Plaintiffs' counsel a letter dated December 18, 2013 that falsely stated that Plaintiffs had agreed to withdraw their objection regarding future food purchases.  *See* Skaar Decl. Ex. E. at 2.   On December 23, 2013, Plaintiffs responded in writing to Mr. Dolan's letter (Skaar Decl. Ex. F at 2), and made clear that his assertion was untrue:

> [W]e maintain our position that plaintiffs have no continuing obligation to produce documents relating to future purchases of food products throughout the course of this litigation.  Plaintiffs have no obligation to save and produce, *inter alia*, every food container, wrapper, receipt, and advertisement that happens to come into plaintiffs' possession for the duration of this action.  Nevertheless, plaintiffs will produce any such documents that specifically relate to the products identified in the second amended complaint.

Defendant never responded to this letter.[5]  Nor has Defendant ever raised this issue with the Court.

Three months later, on March 12, 2014, Defendant moved to compel production of responsive documents specifically pertaining to Plaintiffs' past purchases of non-Bimbo products.  *See* Dkt. # 56.  Defendant argued that "Plaintiffs' Food Purchasing *History* Is Relevant."  *Id* at 1 (emphasis added).  Pointedly, Defendant *did not* seek to compel production of documents pertaining to *future* food purchases.  Nor did Defendant raise with the Court Plaintiffs' objection to any continuing obligation to produce documents relating to future purchases of food products

---

[5]    Defendant tries to suggest it did respond to this letter, but in support of that assertion it cites to Mr. Dolan's December 18, 2013 letter, which was obviously issued *before* Plaintiffs' December 23, 2013 letter.  *See* Def. Mem. at 3.

1    during the course of this litigation.

2           Purely as a good faith effort to resolve the discovery dispute raised in Defendant's motion to

3    compel, notwithstanding their well-founded objections, Plaintiffs simply, voluntarily, produced all

4    grocery receipts that happened to be in Mr. Ang's possession at that time, regardless of whether

5    they related to purchases of Defendant's products.  *See* Skaar Decl. Ex. H; Ang Decl. ¶ 6.

6           On April 2, 2014, Plaintiffs also served supplemental responses to Defendant's earlier

7    document demands.  *See* Skaar Decl. Ex. G.  Although those supplemental responses maintained

8    all the same objections as Plaintiffs' prior responses (*see id* at 3-7), each specific supplemental

9    response included the language, "[n]otwithstanding all these objections and terms and conditions,

10   Plaintiff has produced all responsive, non-privileged documents in his possession, custody or

11   control." *Id* at 4-8.  Mr. Ang had, in fact, produced all responsive documents that were then in his

12   possession, custody or control.  Ang Decl. ¶ 6.  Indeed, the time period for all document demands

13   expressly concluded on the date of Plaintiffs' responses to those demands, which was in March

14   2014.  Skaar Decl. Ex. C.

15            Additionally, in interrogatory responses dated March 11, 2014, Mr. Ang made clear that

16   "he has no receipts for his purchases of Defendant's products. Plaintiff is unable to recall the dates

17   on which he purchased Defendant's products, or the exact prices that he paid for defendant's

18   products."  *See* Gore Decl. Ex. B at 6.

19          Defendant has not, since December 2013, requested the production of documents pertaining

20   to future food purchases.  Nor have Plaintiffs ever waived their objections regarding future food

21   purchases.  Consistent with that position (and the fact that none were requested in discovery), since

22   March 2014 – fifteen months ago – Plaintiffs had not produced any further receipts.  At no time

23   over the course of those fifteen months has Defendant requested production of additional receipts

24   or moved to compel their production. As a matter of common sense, Defendant must have known

25   that Mr. Ang had likely purchased some food over the prior fifteen months.  It certainly did not

26   need to depose Mr. Ang to first come to that conclusion.

27          On February 13, 2015, Defendant's counsel deposed Mr. Ang, questioning him at length

28   regarding his food purchases both before and after the initiation of this action.  *See, e.g.,* Ang

Depo. at 22-64.  Mr. Ang testified that he has not purchased any of Defendant's products since the initiation of this action.  *Id* at 71:14-20; 195:18-23; 213:5-7; 221:19-22.  Mr. Ang was forthcoming and fully answered all questions.  Indeed, he testified that, while he is very health conscious and tries to buy healthy foods, like most people, he occasionally buys unhealthy foods such as potato chips and M&Ms.  *Id* at 137:7-22.[6]

The deposition confirmed that receipts for purchases of non-Bimbo products are irrelevant. With regard to the receipts that were produced in March 2014, Mr. Ang was asked about purchases of bouillon cubes, cheese, potato chips, chicken wings, ice cream, and granola bars.  *Id* at 134:8-139:22.  None of those items bear on the issues in this case.[7]

During the deposition, Defendant's counsel also asked Mr. Ang to retain receipts he had at that time for all grocery purchases.[8]  *Id* at 131:11-18.  Mr. Ang has done just that.  Although Defendant only asked that Mr. Ang retain these receipts (and not to produce them), Plaintiffs have, in fact, produced those documents.[9]  *See* Gore Decl. Ex. C. Those receipts are equally irrelevant to the issues in this action as the receipts previously produced in March 2014.

On February 18, 2015, Plaintiffs moved for class certification.  Defendant filed its opposition papers on April 6, 2015.  Those opposition papers made no mention of any alleged

---

[6]    Notably, throughout this litigation, it is Defendant that the Court had repeatedly ordered to produce documents after substantial stonewalling.  *See* Dkt ## 80, 89.  In fact, despite being due nine months ago, Defendant still refuses to produce a privilege log.

[7]    Specifically, Mr. Ang's purchase of those items has *nothing* to do with Defendant's:(1) use of the American Heart Association Heart-Check Mark on labels without disclosure that it is a paid endorsement; (2) representations that products are a good or excellent source of whole grain when the FDA precludes the use of such representations; (3) sale of products purporting to be "bread," despite the fact that they do not conform to the FDA's mandated standard of identity for bread because they contain added coloring; or (4) representations that products are "100% whole wheat," when, in fact, they are made with non-whole wheat flour.

[8]    Defendant's motion misleadingly implies that it was Mr. Gore who first requested that Mr. Ang retain his receipts during the deposition.  Def. Mem. at 5.  In actuality, Mr. Gore merely reiterated the point that Defendant's counsel had previously stated at the course of the deposition. *See* Ang Depo. at 131:11-18.

[9]    Plaintiffs, however, maintain their objection to any ongoing obligation to retain and produce documents pertaining to future food purchases.

1  spoliation by Plaintiffs.  Presumably, it would have some bearing on Defendant's arguments in

2  opposition to class certification. Yet, Defendant determined that it was not worth mentioning.  On

3  May 6, 2015, a hearing was held before the Court on the class certification issue.  Again,

4  Defendant did not raise any spoliation issue at the hearing.

5      The hearing did not go as Defendant had hoped.  This became apparent because, *the day*

6  *after the class certification hearing*, Defendant first raised the spoliation issue that forms the basis

7  for the current motion.  Specifically, by letter dated May 7, 2015, Defendant demanded that Mr.

8  Ang dismiss his claims with prejudice, threatening sanctions, including all attorney fees and costs

9  incurred by Defendant litigating this action, if its demand was refused.  *See* Skaar Decl. Ex. I.

10     Defendant characterizes the May 7, 2015 letter as a "meet and confer letter."  Skaar Decl. ¶

11  13.  However, nowhere in this letter did Defendant demand production of receipts or seek to

12  resolve this dispute in any manner that would not include the dismissal of claims with prejudice.

13  Defendant's papers note that it "attempt[ed] to informally resolve this dispute," and faults

14  Plaintiffs for "not agree[ing] to any sanction."  *Id* at ¶ 15.  This was hardly a good faith effort to

15  "resolve this dispute."[10]

16                                  **ARGUMENT**

17  **I.     DEFENDANT'S MOTION IS UNTIMELY**

18     Defendant bided its time, waiting an inexplicable eighteen months to bring this spoliation

19  motion.  Notably, during that prolonged time period, Defendant did not even bother to file a

20  motion to compel in the face of Plaintiffs' continuing objections.  The timing is all the more

21  suspicious because Defendant first raised the alleged spoliation issue on May 7, 2015, the day after

22  the class certification hearing.

---

23  [10]     Unfortunately, Defendant has demonstrated a pattern of using bad faith threats of sanctions

24  as a means of litigation.  Notably, this is the third time in this litigation that Defendant has
    threatened sanctions.  Previously, shortly after this action was commenced, Defendant threatened

25  to seek sanctions if the action was not immediately dismissed.  *See* Dkt. # 22-5 at Ex. 24.
    Defendant clearly had no basis to describe Plaintiff's claims were frivolous and sanctionable,

26  given the fact that Plaintiffs' claims have now survived two motions to dismiss.  Defendant later
    threatened to seek sanctions if Plaintiff did not dismiss claims pertaining to certain products that

27  Defendant alleged were not sold in California.  After a responding letter replete with citations to
    relevant authority demonstrating that those claims were also not frivolous, Defendant backed

28  down.  Defendants now continue this pattern with the present motion

Even if Defendant had a good faith basis to bring this motion, it had an obligation to bring it in a timely manner. "Though there is no firm deadline imposed by statute to file a spoliation motion, courts hold that the motion must be filed in a reasonable time after the spoliation is discovered." *Emery v. Harris*, 2014 WL 710957, at *5 (E.D. Cal. Feb. 21, 2014).  Untimely motions should be denied.  *See Sherwin-Williams Co. v. JB Collision Servs., Inc.*, 2015 WL 1119406, at *10 (S.D. Cal. Mar. 11, 2015) (spoliation motion denied where defendants waited two months, "demonstrate[ing] a lack of due diligence"); *Cottle-Banks v. Cox Commc'ns, Inc.*, 2013 WL 2244333, at *13 (S.D. Cal. May 21, 2013) (denying spoliation motion as untimely after nine-month wait and listing cases similarly denying spoliation motions).

Here, Defendant's motion is not just untimely.  Defendant laid low in the weeds for *eighteen months* and is now desperately attempting to rid itself of this case after the class certification hearing did not go as it had hoped.  Defendant could have brought this issue to the Court's attention at any time, but, instead, stood by and allowed the alleged "spoliation" to happen.  That conduct alone warrants the denial of the motion.  Litigants on notice of a potential spoliation issue may not lay in wait to later trap an opponent with an untimely sanctions motion. *See JOM, Inc. v. Adell Plastics, Inc.,* 193 F.3d 47, 50 (1st Cir. 1999) (en banc) (affirming denial of motion where, "[i]n these circumstances the district court fairly could infer that [defendant] had bided its time in order to exploit the incurability of the alleged discovery violation by [plaintiff], rather than undertake its own chemical analysis of" products at issue); *Cottle-Banks,* 2013 WL 2244333, at *13 (denying spoliation motion where "Plaintiff knew as of May 24, 2011 when it deposed Mr. Wise that Defendant was still overwriting its call recordings.  However, Plaintiff failed to seek relief from the Court and did not file a motion for spoliation sanctions until February 2012, almost nine months later."); *Emery*, 2014 WL 710957, at *5 ("when evaluating the timeliness of a spoliation motion, the court must consider when the motion is made in relation to when the spoliation is discovered"); *Siam v. Potter*, 2006 WL 1530155, at *3-4 (N.D. Cal. June 5, 2006) (denying motion after plaintiff waited four months and "[i]t would be unfair to issue an adverse inference instruction under these circumstances, where the failure to obtain additional documents is at least in part attributable to plaintiff's own lack of diligence").

Long delays under circumstances such as those present here raise particular suspicions of courts as to whether a spoliation motion is being made for purely tactical purposes. *See, e.g., PersonalWeb Technologies, LLC v. Google Inc.*, 2014 WL 4088201, at *4 (N.D. Cal. Aug. 19, 2014) ("In the absence of an explanation for the year-long gap in PersonalWeb's discovery efforts towards Google's document retention policies, and the coincidence with the Court's finding that PersonalWeb committed spoliation by failing to timely institute its litigation hold, the Court cannot help but think that the motivation for its renewed interest is retaliatory in nature, as Google implies.").[11]

Further, the fact that the receipts at issue were so unimportant to Defendant that it never moved to compel further demonstrates the motion's illegitimacy. *See, e.g., Bull v. United Parcel Serv., Inc.*, 665 F.3d 68, 75 (3d Cir. 2012) ("[W]e would expect that—had UPS intended this letter to result in Bull turning over the original notes in question—it would have made at least some attempt to pursue their production when they did not materialize. Yet, UPS never raised the nonproduction of the originals in a motion to compel, or in any other communication.").[12]

Finally in these regards, Local Rule 7-8(c) requires that sanctions motions "must be made as soon as practicable after the filing party learns of the circumstances that it alleges make the motion appropriate." Violations of this rule require denial of motions. *See, e.g., Siebert v. Gene Sec. Network, Inc*, 2014 WL 5808755, at *2 (N.D. Cal. Nov. 6, 2014). That is plainly the case here. For all these reasons, Defendant's inexplicable eighteen-month delay in bringing this motion necessitates its denial.

---

[11]    Plaintiffs reserve all rights to seek all remedies available to them as a result of the filing of a motion in bad faith.

[12]    Defendant argues that its motion is not untimely because it only first discovered that Mr. Ang was not producing additional receipts for post-complaint food purchases during his deposition. However, Plaintiffs had made their position on the matter clear as of December 2013. Further, it was almost a full year between the production of Mr. Ang's receipts and his depositions. At no time over the course of that year, did Defendant bother to inquire as to production of additional receipts. Certainly, Defendant should have surmised that Mr. Ang must have purchased food over the course of that year. To that end, *Perez v. Vezer Indus. Pros., Inc*., 2011 WL 5975854, at *3 (E.D. Cal. Nov. 29, 2011), which is cited by Defendant, is distinguishable. There, plaintiffs could not have known of the extensive destruction of computer files by defendant until it was uncovered in the course of a deposition.

**II.    DEFENDANT HAS FAILED TO ESTABLISH ITS ENTITLEMENT TO ANY SANCTIONS**

Even if Defendant had brought this motion was made in a timely fashion, and even if the motion had not been made under suspicious circumstances, it should still be denied.  Based on discarded receipts of *after-the-fact* purchases of *non-Bimbo* food products, Defendant seeks the outright dismissal of Mr. Ang's claims.  However, "[t]he sanction of dismissal is not favored." *Brookhaven Typesetting Services, Inc. v. Adobe Sys., Inc.*, 332 Fed. Appx. 387, 389 (9th Cir. 2009).  It should be issued in only the most extreme circumstances.  *Id.*  Defendant does not come close to demonstrating such circumstances.[13]

The issuance of sanctions based on proven spoliation requires that three requirements be met:

> (1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed "with a culpable state of mind"; and (3) that the evidence was 'relevant' to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense.

*Cottle-Banks*, 2013 WL 2244333, at *13.

Defendant cannot satisfy any of these requirements.  Further, with respect to determining a specific appropriate sanction (if any), courts also consider: "(1) the degree of fault of the party who altered or destroyed the evidence; (2) the degree of prejudice suffered by the opposing party; and (3) whether there is a lesser sanction that will avoid substantial unfairness to the opposing party."

---

[13]    Defendants do not seek a lesser sanction such an adverse inference instruction, bit even if it did, such a "lesser" sanction would also be inappropriate. "That it is a comparatively less severe sanction, however, does not mean it should be imposed casually."  *Apple Inc. v. Samsung Electronics Co.*, 888 F. Supp. 2d 976, 993-94 (N.D. Cal. 2012).  "In practice, an adverse inference instruction often ends litigation—it is too difficult a hurdle for the spoliator to overcome. . . . Accordingly, the adverse inference instruction is an extreme sanction and should not be given lightly."  *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 219–20 (S.D.N.Y. 2003).  Accordingly, the Court has great discretion to decline to award such a sanction, even where the spoliating party acts with gross negligence (which Mr. Ang has not done).  *See Chin v. Port Auth. of New York & New Jersey*, 685 F.3d 135, 162 (2d Cir. 2012).  Where a motion is untimely, complains of lost documents with no relevance, and the moving party suffers no prejudice.  *See Compass Bank v. Morris Cerullo World Evangelism*, 2015 WL 2180436, at *9 (S.D. Cal. May 8, 2015) ("The Court's broad discretionary power includes permitting an adverse inference from the spoliation of relevant evidence against the spoliating party.") (citations omitted); *Nursing Home Pension Fund v. Oracle Corp.*, 254 F.R.D. 559, 567 (N.D. Cal. 2008) (party's alleged spoliation of evidence not shown to be relevant did not warrant adverse inference instruction sanctions).

1   *Apple*, 888 F. Supp. 2d at 992.  All these factors weigh in Plaintiffs' favor.

2           As an initial matter, Defendant does not cite to a single authority holding that a party has

3   an ongoing obligation to preserve documents pertaining to future purchases of products,

4   particularly where such food products are routinely disposed of after consumption.[14]  Scores of

5   food misbranding actions have been filed in this District and around the country in recent years.  In

6   none of those cases has a court held or even suggested that a plaintiff is obliged to preserve

7   documents such as receipts, wrappers, and other refuse pertaining to *future* post-complaint

8   purchases of food.  To the contrary, courts in this District have repeatedly held that plaintiffs in

9   food misbranding cases do not need to retain receipts and that the presence or absence of such

10  receipts should have no bearing on their claims.  *See Zeisel v. Diamond Foods, Inc.*, 2011 WL

11  2221113, at *3 (N.D. Cal. June 7, 2011) (rejecting argument that plaintiff failed to establish injury-

12  in-fact despite absence of physical proof that plaintiff purchased food product in question); *Ries v.*

13  *Arizona Beverages USA LLC*, 287 F.R.D. 523, 530 (N.D. Cal. 2012) ("Defendants maintain they

14  are entitled to judgment because plaintiffs' alleged purchases are undocumented by receipts, and

15  because neither plaintiff can recall the precise prices they paid, or the exact statements on the

16  bottling of the beverages they purchased. Such arguments do not establish the absence of a

17  disputed issue of material fact, but are instead about the relative weight of the evidence, and must

18  be presented to the jury."); *Rahman v. Mott's LLP*, 2014 WL 5282106, at *4 (N.D. Cal. Oct. 15,

19  2014) ("Testimony from the plaintiff as to how much he spent on the product is competent

20  evidence of damages; he need not furnish sales receipts or other extrinsic evidence.").

21          Accordingly, Mr. Ang was not obliged to retain future post-complaint receipts of food

22  purchases and any failure to do so cannot be the basis for sanctions.

23          **A.**      **Mr. Ang Did Not Act With Bad Faith**

24          Mr. Ang did not act with a culpable state of mind.  Assuming, *in arguendo*, that he was

25  obligated to preserve documents pertaining to his future food purchases, he did not discard those

26  documents with any intent to destroy relevant evidence.  At most, Mr. Ang made an innocent and

27  _____

28  [14]     Taken to a logical end, if there is an obligation to retain evidence pertaining to future food purchases, the mere consumption of such food products would effectively destroy evidence and constitute spoliation.

understandable mistake.  His attorney directed him to retain receipts.  Gore Decl. ¶ 3.  However, Mr. Ang misunderstood the instruction to include only receipts for products manufactured by Defendant.  Ang Decl. ¶ 4.  It would certainly be reasonable for Mr. Ang to assume that any other receipts would not be relevant to this action.  Because he did not purchase any of Defendant's products after first meeting with Mr. Gore, Mr. Ang did not retain any receipts.  *Id* at ¶ 7.

At his deposition, defense counsel specifically asked Mr. Ang to retain any grocery receipts that were then in his possession.  Ang Depo. at 131:11-18.  Demonstrating his good faith, Mr. Ang has done just that.  Ang Decl. ¶ 11.  Further, although Defendant did not actually ask Plaintiffs to produce those receipts (only retain them), Plaintiffs have, in fact, produced them.  Gore Decl. ¶ 13.  These facts demonstrate that Mr. Ang did not act with bad faith and most certainly did not act with any intent to destroy evidence (which was not relevant in the first place).

In general, putting aside the other factors (which also weigh in Plaintiffs' favor), "[w]hen the loss is caused by an accident or is the result of innocent action, the Court may reject a request for sanctions."  *Emery*, 2014 WL 710957, at *7.  "Indeed, the Court's authority to sanction must be exercised 'with restraint and discretion' and only as necessary to address the wrong that has occurred.'"  *Id* (quoting *Chambers v. NASCO, Inc.,* 501 U.S. 32, 45 (1991)).  Further, "a presumption or inference arises, however, only when the spoliation or destruction [of evidence] was intentional, and indicates fraud and a desire to suppress the truth, and it does not arise where the destruction was a matter of routine with no fraudulent intent."  *Bull v. United Parcel Serv., Inc.*, 665 F.3d 68, 79 (3d Cir. 2012) (quoting *Brewer v. Quaker State Oil Refining Corp*., 72 F.3d 326, 334 (3d Cir. 1995)).

Courts have not hesitated to decline issuing sanctions in comparable circumstances.  For example, in *Harris v. Wal-Mart Stores E., LP*, 2013 WL 6795973, at *11 (N.D. Ga. Dec. 23, 2013), no sanction was issued where the plaintiff admittedly destroyed Wal-Mart receipts, but those receipts did not specifically pertain to the transactions at issue.  Similarly, in *Dicuio v. Brother Int'l Corp.*, 2015 WL 3403144, at *14 (D.N.J. May 27, 2015), a case pertaining to defective printer toner cartridges, plaintiff failed to preserve his toner cartridges and precluded defendant from analyzing such cartridges to disprove plaintiffs' claims.  *Id*.  There, the plaintiff

had recycled his cartridges as a matter of routine and the court found that "[s]poliation does not

occur where 'the destruction was a matter of routine with no fraudulent intent.'"  *Id* (quoting *Bull*,

665 F.3d at 79).[15]

Here, Mr. Ang (like most people) discarded old food receipts as a matter of routine.  Ang

Decl. ¶ 9.  Nothing indicates fraud or "a desire to suppress the truth."  Accordingly, for this reason

alone, any sanctions are inappropriate – much less terminating sanctions.

**B.      The Discarded Documents Are Not Relevant and**
**Would Not Support Defendant's Defenses**

Spoliation sanctions are not warranted absent a threshold showing of relevance.  *See Ryan*

*v. Editions Ltd. W., Inc.*, 2015 WL 2365954, at *9 (9th Cir. May 19, 2015).  The discarded food

receipts are not relevant.  They do not pertain to any of Defendant's products, including any of the

products at issue in this litigation.  They have no bearing on the issues in this litigation and would

not materially support Defendant's defenses.  Indeed, Defendant thought so little of post-complaint

food purchases that it expressly limited its document demands to documents from a period through

no later than the date of Plaintiffs' responses to those demands  This, alone, demonstrates their

irrelevance.  Moreover, the spoliation issue was never raised in Defendant's papers in opposition

to class certification.  If the lost receipts were truly relevant, presumably, there would have been

some mention of the spoliation issue, either in Defendant's briefs or at the class certification

hearing.  The fact that Defendant waited until *after* the class certification hearing speaks

volumes.[16]

---

[15]      Cases cited by Defendant are readily distinguishable.  For example, in *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 959 (9th Cir. 2006); *Columbia Pictures, Inc. v. Bunnell*, 2007 WL 4877701, at *1 (C.D. Cal. Dec. 13, 2007); *Rimkus Consulting Grp., Inc. v. Cammarata*, 688 F. Supp. 2d 598, 644 (S.D. Tex. 2010); and *Arista Records, L.L.C. v. Tschirhart*, 241 F.R.D. 462, 464 (W.D. Tex. 2006), parties intentionally destroyed computer files or wiped computer hard drives to specifically eliminate relevant evidence.  In *Hynix Semiconductor Inc. v. Rambus Inc.*, 897 F. Supp. 2d 939, 980 (N.D. Cal. 2012), defendant engaged in "massive destructions of records in what its CFO described as the 'Karp [an in house attorney] document retention purge' and Karp's 'scorched earth' theory of document retention."  In *Schmid v. Milwaukee Elec. Tool Corp.*, 13 F.3d 76, 81 (3d Cir. 1994), the Third Circuit actually reversed the decision of the district court to impose sanctions and, as a result, ordered a new trial.

[16]      Further, shortly after the commencement of this litigation, Mr. Ang moved in with his girlfriend.  Ang Decl. ¶ 10.  Since this time, he has done very little of the household grocery

Those receipts that have been produced are entirely irrelevant to this action.[17]  There is no reason to believe that any of the discarded receipts would be any more relevant, much less materially supportive of Defendant's defenses. Nevertheless, Defendant argues that the discarded receipts are potentially relevant for four reasons.  Significantly, Defendant has had the opportunity to question Mr. Ang extensively on each of these four points at his deposition.

*First*, Defendant asserts that the discarded receipts may be relevant to the issue of whether Mr. Ang actually purchased the products at issue.  In general, receipts are not required for a plaintiff to prove a purchase of a misbranded food product.  *See Zeisel*, 2011 WL 2221113, at *3 (rejecting argument that plaintiff failed to establish injury-in-fact despite absence of physical proof that plaintiff purchased food product in question).  Nevertheless, the discarded receipts at issue in this motion (which were all post-complaint), would not show whether Mr. Ang had previously purchased the products at issue.  Moreover, there is no genuine dispute as to whether Mr. Ang purchased the products at issue.  He has produced the actual packaging in which those products came.  *See* Dkt. ## 103-1 – 103-4.  He also testified that he purchased the products at issue.[18]

---

shopping.  *Id.* at ¶ 11.  Therefore, since the initiation of this litigation, there were relatively few receipts of Mr. Ang's grocery purchases in the first place that were discarded -- and none of them listed any of Defendant's products. Regardless, such receipts could only be relevant if they involved products that have labels with: 1) the American Heart Association Heart-Check Mark; 2) the phrase "good source of whole grain" or "excellent source of whole grain"; 3) the phrase "100% Whole Wheat," but also contained non-whole wheat flour; or 4) the term "bread," but also contained added coloring.  The odds that any of the products listed on the lost receipts contains these marks or phrases are exceedingly low, particularly where, to Mr. Ang's knowledge, he has not purchased any products with these marks or phrases since he first met with Mr. Gore before the initiation of this action.  *See* Ang Decl. ¶ 8.  Thus, any effort to obtain receipts of future food purchases is nothing but a classic fishing expedition.  *See O'Toole v. Sears Roebuck and Co.*, 2014 WL 1388660, at *3 (N.D. Ill. Apr. 10, 2014) ("The discovery rules are not an excursion ticket to an unlimited, never-ending exploration of every conceivable matter that captures an attorney's interest.") (citation omitted); *U.S. v. Salad*, 2012 WL 5894387, at *2 (E.D. Va. Nov. 23, 2012) ("The Defendants are not entitled to examine every piece of evidence that might conceivably assist their preparation. The law of discovery simply does not extend so far.").

[17]    The questioning of Mr. Ang at his deposition regarding his purchases of bouillon cubes, cheese, potato chips, chicken wings, ice cream, and granola bars demonstrate just how irrelevant they are.  *Id* at 134:8-139:22.  Moreover, despite Defendant's suggestion to the contrary, the fact that a document is produced is not an admission that it is relevant.

[18]    Additionally, as Defendant has been well-aware since the beginning of discovery, Mr. Ang did not have receipts pertaining to the purchases at issue (which took place in February or March

1    *Second*, Defendant argues that the discarded receipts may be relevant to the issue of whether

2    Mr. Ang actually stopped buying the products at issue.  Here, Defendant suggests that Plaintiffs

3    must prove a negative -- that despite testimony and evidence to the contrary, Mr. Ang has not

4    purchased the products at issue since the action commenced.  Setting aside the fact that Defendant

5    has no basis to suggest the discarded receipts would have listed Defendant's products, the absence

6    of subsequent purchases of Defendant's products is *not* an element of Plaintiffs' claims.  In other

7    words, if Mr. Ang had purchased Defendant's products, it would not entitle Defendant to summary

8    judgment.

9    *Third*, Defendant asserts that the discarded receipts may be relevant to the issue of whether

10   the labels on the products at issue were material to Mr. Ang, as well as how they were material to

11   Mr. Ang.  Notably, Defendant does not elaborate on this point.  Mr. Ang has testified that they the

12   unlawful representations on the labels were material to him at the time he purchased the products

13   at issue.  Further, to his knowledge, after his first meeting with Mr. Gore, Mr. Ang has not

14   purchased any products from *any* manufacturer with: the American Heart Association Heart-Check

15   Mark on the label; the phrase "good source of whole grain" or "excellent source of whole grain"

16   on the label; the term "bread" on the label that also contains added coloring; or the phrase "100%

17   whole wheat" on that label that also contains non-whole wheat flour.  Ang Decl. ¶ 8.  Defendant

18   cannot point to anything that indicates that one of the discarded receipts may have suggested

19   otherwise.

20   *Fourth*, Defendant claims the discarded receipts may be relevant to the issue of the amount

21   of Mr. Ang's damages.  This argument also fails. The discarded receipts were not for the

22   purchases at issue in this action, and thus have no bearing on the damages Mr. Ang incurred

23   purchasing the products at issue.  To that end, receipts are unnecessary to demonstrate damages in

24   food misbranding cases.[19]

25   _____

26   2013) even as of the time he first met with Mr. Gore.  Ang. Decl. ¶ 3; Gore Decl. Ex. B at 6.  In
     such consumer actions, failure to retain receipts is not relevant and does not preclude litigation.

27   *See Zeisel*, 2011 WL 2221113, at *3 (N.D. Cal. June 7, 2011).

28   [19]    *See Rahman*, 2014 WL 5282106, at *4 ("Testimony from the plaintiff as to how much he
     spent on the product is competent evidence of damages; he need not furnish sales receipts or other

1   For all these reasons, the discarded receipts have no relevance and would not support

2   Defendant's defenses.

3   **C.   Defendant Has Suffered No Prejudice**

4   In the absence of bad faith, a moving party must demonstrate the relevance of the lost

5   documents, that they would have materially supported the moving party's claims, and that the

6   moving party suffered prejudice.  *See Cottle-Banks,* 2013 WL 2244333, at *15.  Defendant has

7   suffered no prejudice. "The test for prejudice is whether there is a reasonable possibility, based on

8   *concrete evidence*, that access to the evidence which was destroyed or altered, and which was not

9   otherwise obtainable, would produce evidence favorable to the objecting party." *Hamilton v.*

10  *Signature Flight Support Corp.*, 2005 WL 3481423, at *8 (N.D. Cal. Dec. 20, 2005) (emphasis

11  added).  *See also Bull*, 665 F.3d at 83 (defendant's case must have been "crippled because it

12  lacked" the documents at issue).

13  The moving party must set forth "some type of extrinsic evidence as to the content of the

14  missing materials which demonstrates the extent to which such materials would have been harmful

15  to the spoliator." *Toppan Photomasks, Inc. v. Park*, 2014 WL 2567914, at *9 (N.D. Cal. May 29,

16  2014) (quoting *Hamilton*, 2005 WL 3481423, at *8). "This corroboration is especially important

17  where the destruction is merely negligent since there is no bad faith in such cases from which to

18  infer the evidence would have been detrimental to the spoliator." *Id*; *see also Siam v. Potter*, 2006

19  WL 1530155, at *3-4 (N.D. Cal. June 5, 2006) ("Absent some indication that the evidence not

20  produced would have been favorable to the moving party, courts are reluctant to issue an adverse

21  inference instruction.").

22  "Thus, where the moving party fails 'to provide any extrinsic evidence that the subject

23  matter of the lost or destroyed materials would have been unfavorable to [the spoliator] or would

24

25  extrinsic evidence."); *Ries*, 287 F.R.D. at 530 ("Defendants maintain they are entitled to judgment because plaintiffs' alleged purchases are undocumented by receipts, and because neither plaintiff

26  can recall the precise prices they paid, or the exact statements on the bottling of the beverages they purchased. Such arguments do not establish the absence of a disputed issue of material fact, but are

27  instead about the relative weight of the evidence, and must be presented to the jury."); *In re*

28  *ConAgra Foods, Inc.*, 2015 WL 1062756, at *22 (C.D. Cal. Feb. 23, 2015) (rejecting the argument that receipts are necessary in food misbranding actions).

PLAINTIFFS' MEMO OF LAW IN OPPOSITION TO  MOTION FOR SPOLIATION SANCTIONS          18
CASE NO. CV13-01196-HSG (NC)

1    have been relevant to the issues of this lawsuit,' spoliation sanctions are not warranted because the

2    moving party relies on 'pure speculation as to the content of these materials." *Hamilton*, 2005 WL

3    3481423, at *8 (citation omitted).  Such speculation is wholly insufficient to demonstrate

4    prejudice.  *See Cottle-Banks,* 2013 WL 2244333, at *15; *Reinsdorf v. Skechers U.S.A., Inc.*, 296

5    F.R.D. 604, 631 (C.D. Cal. 2013).

6         Here Defendant relies on nothing but rank speculation that the lost receipts *might* have

7    supported its defenses.  That is not close to the "concrete evidence" necessary to demonstrate

8    prejudice.  Combined with the fact that the complained-of spoliation largely centers on irrelevant

9    materials concerning products that are not at issue, the absence of prejudice is glaring.[20]

10        Finally, with respect to the factor pertaining to Mr. Ang's degree of fault, at most, Mr. Ang

11   made an innocent and understandable mistake when he discarded post-complaint receipts (even

12   though those receipts would have no relevance).  Yet, at the same time, Defendant intentionally

13   waited and allowed the alleged spoliation to continue until it was too late, launching this motion

14   only after the class certification motion was fully submitted.  It is Defendant that bears the greater

15   degree of fault, and under such circumstances, sanctions are inappropriate.  *See JOM,* 193 F.3d at

16   50 ("In these circumstances the district court fairly could infer that [defendant] had bided its time

17   in order to exploit the incurability of the alleged discovery violation by [plaintiff], rather than

18   undertake its own chemical analysis of" products at issue); *Cottle-Banks,* 2013 WL 2244333, at

19   *13 ("Plaintiff knew as of May 24, 2011 when it deposed Mr. Wise that Defendant was still

20   overwriting its call recordings. However, Plaintiff failed to seek relief from the Court and did not

21   file a motion for spoliation sanctions until February 2012, almost nine months later."); *Siam*, 2006

22   WL 1530155, at *3-4 ("It would be unfair to issue an adverse inference instruction under these

23   circumstances, where the failure to obtain additional documents is at least in part attributable to

24   plaintiff's own lack of diligence").  Additionally, with respect to food purchases subsequent to

25   _____

26   [20]      Any minimal prejudice that Defendant may have suffered was rectified by its ability to
     question Mr. Ang at great length regarding his food purchases, both before and after the initiation

27   of this litigation.  Further, to the extent Defendant suggests that the lost receipts might show that
     Mr. Ang occasionally purchased unhealthy products, Mr. Ang readily admits this fact.  *See* Ang

28   Depo. at 59:19-60:14; 137:7-22. Therefore, Defendant has also not suffered any prejudice in this
     respect.

1   March 2014, Defendant has never even sought the production of any documents. Defendant cannot

2   complain that Mr. Ang failed to retain documents for which it never even asked.

3         In sum, no sanction is warranted here, and terminating sanctions are absolutely

4   inappropriate.[21]  Mr. Ang did not act with bad faith.  Further, the lost documents are not relevant,

5   and Defendant has suffered no prejudice.  Moreover, this motion is untimely and appears to have

6   been brought for purely strategic purposes.

7                                          **CONCLUSION**

8         For all these reasons, Plaintiffs respectfully request that the Court deny Defendant's motion

9   in its entirety, and grant such other and further relief as the Court deems just and proper.

10  Dated:  June 29, 2015                          Respectfully submitted,

11                                          */s/ Ben F. Pierce Gore*
                                           Ben F. Pierce Gore (SBN 128515)
12                                         PRATT & ASSOCIATES
                                           1871 The Alameda, Suite 425
13                                         San Jose, CA  95126
                                           Telephone:  (408) 429-6506
14                                         Fax:  (408) 369-0752
                                           pgore@prattattorneys.com
15

16                                         Keith M. Fleischman (*admitted pro hac vice*)
                                           Bradley F. Silverman (*admitted pro hac vice*)
17                                         THE FLEISCHMAN LAW FIRM, PLLC
                                           565 Fifth Avenue, Seventh Floor
18                                         New York, New York 10017
                                           Telephone: (212) 880-9571
19                                         Fax:  (917) 591-5245
                                           keith@fleischmanlawfirm.com
20                                         bsilverman@fleischmanlawfirm.com
21

22

23

24

25

26  ---
    [21]      Any lesser sanctions are also not appropriate, including the monetary sanctions that
27  Defendant seeks in the alternative.  Defendant vaguely asks for monetary sanctions in an amount
    sufficient to account for Plaintiffs' "failure to comply with the Federal Rules of Civil Procedure,
28  which failure has prejudiced BBUSA in this litigation."  Defendant does not elaborate or explain
    how such an amount would be calculated.

Brian K. Herrington (*admitted pro hac vice*)
BARRETT LAW GROUP
404 Court Square North
Lexington, MS 39095
662-834-2488
Fax: 662-834-2628
bherrington@barrettlawgroup.com

*Attorneys for Plaintiffs*