**Pages 1 - 14**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE HAYWOOD S. GILLIAM, JUDGE

ALEX ANG AND LYNN STREIT,           )
                                    )
        Plaintiff,                  )
                                    )
  VS.                               )   **No. C 13-1196**
                                    )
BIMBO BAKERIES USA, INC.,           )
                                    )
        Defendant.                  )
_____)   San Francisco, California
                                        Thursday, August 20, 2015

**TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES**:

For Plaintiff:          PRATT & ASSOCIATES
                        1871 The Alameda, Suite 425
                        San Jose, California 95126
                    BY: **PIERCE GORE, ESQUIRE**

For Defendant:          HOGAN LOVELLS US LLP
                        3 Embarcadero Center, Suite 1500
                        San Francisco, California 94111
                    BY: **DAVID W. SKAAR, ESQUIRE**

**Reported By:  Katherine Powell Sullivan, CSR No. 5812, RMR, CRR**
               **Official Reporter**

1   **Thursday - August 20, 2015**                          **2:15 p.m.**

2                        **P R O C E E D I N G S**

3                              ---oOo---

4        **THE CLERK:**  We're calling C 13-1126, Ang, et al.

5   versus Bimbo Bakeries USA Inc.

6        Please, step forward and state your appearances for the

7   record.

8        **MR. GORE:**  Good afternoon, Your Honor.  Pierce Gore

9   for plaintiffs.

10       **THE COURT:**  Good afternoon, Mr. Gore.

11       **MR. SKAAR:**  Good afternoon, Your Honor.  David Skaar

12  for the defendant.

13       **THE COURT:**  Good afternoon, Mr. Skaar.

14       Okay.  We're here for a hearing on defendant's motion for

15  sanctions.  I think we also ought to talk about the case

16  schedule.  I saw the parties submitted a filing on that, which

17  I've looked at.  We'll do that at the end.

18       Okay.  So on the motion for sanctions, I've read your

19  papers.  I've read the cases carefully.  I don't need a

20  recounting of what's in the papers.  But I have a focused

21  question for each side.

22       So, first, for the defendant, Mr. Skaar, it does appear to

23  me that as of December 2013, when the meet-and-confer letters

24  go back and forth, the parties' positions were framed as to

25  whether plaintiffs were going to preserve food receipts in

1    perpetuity; in essence, going forward through the end of the
2    lawsuit.  And it looks to me they pretty clearly said that they
3    were not going to accept that obligation.
4         And it strikes me that at that point the better course
5    here would have been if there was a disagreement as to the
6    scope of their reasonable preservation obligation, it should
7    have been teed up either for the district court or the
8    magistrate judge so that that issue could be decided.  Instead,
9    we have now waited a year and a half, almost two years, and now
10   the argument is that prejudice has occurred in the interim.
11        So why shouldn't this issue have been raised, at the
12   latest, in December 2013?
13            **MR. SKAAR:**  So it wasn't raised at that time because
14   after they sent that letter saying that they weren't going to
15   preserve and produce receipts, they, in fact, agreed to produce
16   receipts.  They did produce receipts.  And they certified
17   under -- under penalty of perjury that they had produced all
18   receipts in their possession and control.
19        And so although they did take the position at a meet and
20   confer, they then acted contrary to that position and produced
21   documents, and certified that that was everything.
22        And they were under an ongoing duty to produce those
23   documents.  And so it seemed -- it seemed to us that we didn't
24   have an issue in the case until -- until this February, when
25   the plaintiff was deposed and he admitted under oath that he

1  had been discarding receipts during the course of this case.
2      And, also, I'd remind the Court that even -- even if we
3  had brought such a motion at that time, it wouldn't have
4  addressed the damage that had already been done from the time
5  the suit had been filed until the end of 2013.
6      **THE COURT:** Well, it would have raised the issue much
7  sooner, to the extent you're claiming that damage is two years.
8  We would have cut down on the amount of damage to a few months.
9      What in the record do you claim was the representation on
10 the plaintiff's part that they were changing their mind and
11 agreeing to preserve all food receipts in perpetuity through
12 the end of the case?  Where did they say that?
13     **MR. SKAAR:** Well, in their -- they served supplemental
14 responses to discovery after they sent that meet and confer
15 letter because we had raised the issue that they had not
16 produced any documents to that point, and that their responses
17 weren't clear that they were not withholding documents based on
18 any objections other than privilege.
19     So when they served their second supplemental responses
20 in -- let's see, the date was -- in April 2014 --
21     **THE COURT:** What exhibit is that in the papers?
22     **MR. SKAAR:** Exhibit G to my declaration attached to
23 the motion.
24     **THE COURT:** And what paragraph?
25     **MR. SKAAR:** Well, in response to requests, I think, 1

1  through 6, all that relate to evidence of purchases, they say
2  that plaintiff has produced all responsive nonprivileged
3  documents in its possession, custody, and control.
4      Since then, Your Honor, as you know, in response to this
5  motion the plaintiff has produced additional receipts; albeit,
6  you know, we think incomplete.
7      It seems to me that, you know, they just, through the
8  course of their conduct in the case and what they've agreed to
9  produce and what they've actually produced, they seem to
10 acknowledge that the receipts are relevant.
11     **THE COURT:**  I don't -- I don't know that that's true.
12     **MR. SKAAR:**  Or at least discoverable.
13     **THE COURT:**  I also don't know that a representation
14 about production goes to the scope of preservation.
15     The problem here is there was a genuine dispute.  I think
16 it's disputable as to whether it would be reasonable to ask
17 someone to preserve every receipt for every time they go to the
18 store for a period of years because of the pendency of this
19 lawsuit.  And I'm not going to make a ruling on that now
20 because that's not being presented to me.
21     But the point is, it seems to me, if there was a real
22 dispute as to that point, then the time to bring it up was when
23 the issue was joined in December 2013.  And a magistrate judge
24 could have ruled on whether that was reasonable or not, and
25 then we would have known.

1    And if the Judge had said, yeah, I think you've got to
2 preserve every food receipt for the next several years, then
3 the parties would have known that.  If the magistrate judge --
4 as they might well have said -- concluded that that's
5 disproportionately burdensome and unreasonable given the scope
6 of the case and what's at issue and the balance between burden
7 and probative value, then the parties would have known that.
8    But I think that, in any event, it would have been by far
9 the better course for that to have been teed up for a direct
10 resolution rather than trying to divine what the parties
11 thought based on what they then later produced.
12    All right.  So for Mr. Gore, you can respond to that.
13 But, first, the question for you is, certainly a troubling
14 aspect of the record -- "troubling" might be too strong, but
15 certainly something that caught my attention is what seemed to
16 be a disconnect between the deposition testimony that Mr. Ang
17 gave on whether he had been given any instruction to preserve
18 and the declarations that were submitted in connection with
19 this motion that do seem significantly more detailed, if not
20 out and out inconsistent.
21    And I'd like to have an understanding of why those two
22 pieces of the record look the way they do.
23        **MR. GORE:**  Certainly.
24    First, I'll respond to what Mr. Skaar had to say.  And
25 what the Court is seeing today with respect to this late

1  purported imposition of a duty to save all grocery receipts
2  going forward for the life of the litigation is an emerging
3  defense tactic.
4      The law is clear in the Northern District.  Every judge
5  who has looked at the issue of whether receipts are a
6  prerequisite to a class rep being held adequate have said that
7  you don't need receipts.
8          **THE COURT:**  Different point though.
9          **MR. GORE:**  Certainly.
10         **THE COURT:**  I think those cases talk about whether
11 receipts are required to ascertain the scope of the class, for
12 example, and could be argued to go to the question of whether
13 they're necessary to make out a claim.  But that's a different
14 question than relevance.
15     I looked, and I didn't find any case in this district or
16 elsewhere that addressed the relevance question directly.  You
17 can gather from what I just said that I think of it as less of
18 a question of relevance and more a question of reasonableness
19 in terms of preservation scope.  Arguably anytime anything
20 other than every single document is kept in a case, there's the
21 chance that relevant evidence might be slipping out.  But
22 that's something that judges address in balancing the
23 reasonableness of a parties' preservation obligation.
24     So I'm not so much hung up on whether it's relevant or
25 not.  I think it's arguably potentially relevant, and maybe

1  marginally relevant.  I don't need to express a conclusive
2  decision on that right now.
3       But I think if you can get to my question about the
4  instruction that was given and why there's a difference between
5  the deposition record and the declarations -- or maybe you'll
6  tell me you don't think there is any difference.
7       **MR. GORE:**  May I -- may I briefly, very briefly,
8  address the first point, and then answer Your Honor's question
9  concerning the second?
10      We have this very issue teed up, the reasonableness of
11 retaining all grocery receipts and discarded food containers in
12 the Coke MDL pending before Judge Jeffrey White.  And we're
13 going to have, I believe, in that case a hearing before a
14 magistrate judge, the kind of hearing that we could have had in
15 this case, on whether that duty is reasonable.  And I think we
16 may have some case law on that issue soon.
17      With regard to the second question, I have more than 60
18 class reps.  I have more than 50 consumer class actions pending
19 in the Northern District.  Without fail, I tell each and every
20 one of these plaintiffs, Save all of your receipts, please.
21 Put them in a shoe box.  I don't care if it's fast food, a
22 restaurant, a birthday, a grocery purchase.  Save all of your
23 household receipts.
24      Sometimes these folks comply.  Sometimes they don't.
25 Sometimes they forget.  Sometimes it's unclear from a receipt

1  on a shared Safeway Club Card account who was actually doing
2  the shopping; whether it was a wife, a girlfriend, or another
3  family member.
4       Consumer class plaintiffs are not like corporate legal
5  departments.  They don't have sophisticated recordkeeping
6  procedures.  It literally becomes throwing receipts into a shoe
7  box.
8       I will tell the Court that I am certain that I instructed
9  Mr. Ang to keep all of his grocery receipts, because I tell all
10 of my clients to keep their receipts.  He misunderstood or he
11 simply didn't do it.  Either way, there is no evidence in the
12 record that I ever told him not to keep receipts or that he
13 decided on his own to destroy receipts.  That's not what
14 happened at all.
15      In fact, as Mr. Skaar points out, we have produced more
16 receipts to Bimbo than we believe we are obligated to from our
17 discovery responses.  We did this out of a good-faith gesture.
18 Maybe it was a mistake, but I don't believe that doing so
19 imposes a heightened duty upon us.
20      Mr. Ang was deposed for five hours.  He -- he discussed
21 openly all of his eating habits and grocery-purchasing habits.
22 He admitted to eating all sorts of unhealthy food.  He has more
23 than adequately fulfilled his duty as a class rep.
24      The inconsistency in his testimony at his deposition I
25 attribute to nervousness or forgetfulness.  Because his

1  deposition was taken, I think, more than two years after he
2  initially met with me.  So maybe he forgot or maybe he was
3  nervous.  But there's certainly no evidence that he
4  intentionally spoliated any evidence.
5         **THE COURT:**  The thing that struck me as interesting in
6  the deposition transcript -- or the portion that was attached
7  to the papers -- was that it did seem to me that he was
8  asked -- and I agree with you, his answer could have been
9  colored by nervousness or lots of other things.  But he was
10 asked this directly and gave a pretty conclusive-sounding
11 answer that's different than the one that you just gave.  And
12 there didn't seem to be any effort, at that time, to correct
13 the record.  And I'm wondering why not.
14        **MR. GORE:**  With the benefit of hindsight, I think that
15 was a mistake.  I should have had him correct that on the
16 record.  And I didn't.  I own up to that.
17        **THE COURT:**  When is the hearing in the case before
18 Judge White likely to occur on this question of the duty of
19 preservation?
20        **MR. GORE:**  We don't have a hearing date yet.  The
21 parties are presently meeting and conferring.  Given the
22 accelerated schedule that Judge White has ordered, I would
23 anticipate a hearing in September.
24        **THE COURT:**  All right.  Mr. Skaar, anything?
25        **MR. SKAAR:**  Yes, Your Honor.

1    As Mr. Gore told the Court, how he instructs his clients
2 at the outset of every case -- I mean, I think what's troubling
3 about what's happened here is that he says, you know, sometimes
4 people do save receipts; sometimes they don't.
5    The trouble with that is that it's our job as attorneys to
6 follow up with our clients and to make sure that they're
7 fulfilling their preservation obligations.  And so it's not
8 good enough just to tell them at the outset, hey, save these
9 documents, and then leave it up to chance whether they will or
10 not.
11    The other issue I wanted to address is, although the Court
12 is not going to pass on the issue of reasonableness, I can tell
13 it's on your mind.
14    What I'll say to that is that, you know, this is a
15 plaintiff who has made very serious allegations against our
16 client in public documents, accusing them of fraud and all
17 sorts of illegal behavior, undoubtedly seeking millions of
18 dollars in damages.
19    And all we're asking is for this person to save grocery
20 receipts that he testified he was already doing anyway.  And
21 instead of throwing them away, just give them to your attorney.
22 That's all we're asking him to do.  Doesn't seem to me that
23 that is particularly burdensome.
24    I understand that's not a decisive issue here today.
25        **THE COURT:**  I will say that the testimony that then

1  was elicited on the receipts he did happen to produce seemed to
2  me to be borderline silly, to be discussing with him he bought
3  chicken wings or bought other foods.  It just, to me,
4  highlighted the tenuousness of the claim.  But, as I said, I
5  don't need to reach that to decide this motion.
6          All right.  Submitted?
7              **MR. GORE:**  Yes, Your Honor.
8              **MR. SKAAR:**  Submitted, Your Honor.
9              **THE COURT:**  All right.  So then on the question of the
10 schedule, I am in the process of working on an order on the
11 class certification motion.  You can trust I haven't forgotten
12 it.  But I did see the parties' proposed schedule and thought
13 it, overall, looked fine, with the exception of the end.
14         So you'll see what I just had my deputy clerk hand to you
15 tracks what you proposed through the dispositive motions
16 hearing date.  But to have that date, and then give the Court
17 enough time to issue a ruling early enough that you don't get
18 into the machinery of preparing pretrial filings and ramping
19 up, we would need to push the trial back somewhat.
20         So I'm fine with the schedule up through January 7th, that
21 you proposed.  But then that leads to a pretrial date of
22 April 5th and a trial date of April 18th.  If that's fine with
23 both parties, then I'll enter that order.
24             **MR. SKAAR:**  Do you mind if I check the calendar for a
25 moment?

1     **THE COURT:** Not at all.

2     **MR. SKAAR:** Thank you.

3     **MR. GORE:** Your Honor, depending on when we receive
4  the Court's order on class certification, the parties may need
5  a little more time after September 25. Once we know which
6  theories -- if we will be proceeding through class
7  certification -- which theories we'll be allowed to proceed on,
8  we may need a little more time to work with our experts and get
9  them disclosed.

10    **THE COURT:** That's fine.
11    What I would propose is we get something in place. And
12 this is what the parties asked for.

13    **MR. GORE:** Certainly.

14    **THE COURT:** And then if further adjustment is needed,
15 we can address that as needed.

16    **MR. GORE:** Thank you.

17    **MR. SKAAR:** I've checked the calendar. It's good on
18 my end, Your Honor.

19    **THE COURT:** All right. Why don't we go ahead and then
20 presume that we will issue a scheduling order formalizing it.
21 As I said, I'm endeavoring to get the class certification order
22 finished as quickly as I can.
23    What you likely gather from the fact that I'm talking
24 about a schedule is, I'm certain that no terminating sanction
25 will be issued in this case. But I will otherwise take the

1  motion under submission and give thought to whether any
2  sanction of any sort is warranted.  And we'll issue an order on
3  that.
4      **MR. GORE:**  Thank you, Your Honor.
5      **MR. SKAAR:**  Your Honor, the scheduling issue is set
6  for hearing on September 3rd.  Am I correct to assume that will
7  come off calendar?
8      **THE COURT:**  We should take that off.
9      **MR. GORE:**  Thank you.
10     **MR. SKAAR:**  Thank you, Your Honor.
11     **THE COURT:**  You're welcome.
12     (At 2:35 p.m. the proceedings were adjourned.)
13                         - - - -
14                  **CERTIFICATE OF REPORTER**
15     I certify that the foregoing is a correct transcript
16  from the record of proceedings in the above-entitled matter.
17  DATE:    Thursday, August 27, 2015

*Katherine Sullivan*

_____

         Katherine Powell Sullivan, CSR #5812, RMR, CRR
                      U.S. Court Reporter