UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| ALEX ANG, et al.,<br><br>        Plaintiffs,<br><br>v.<br><br>BIMBO BAKERIES USA, INC.,<br><br>        Defendant. | Case No.13-cv-01196-HSG<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR CLASS CERTIFICATION; DENYING MOTION FOR SANCTIONS**<br><br>Re: Dkt. No. 102, 138 |

      Pending before the Court are a motion for class certification filed by Plaintiffs Alex Ang and Lynne Streit, Dkt. No. 102, as well as a motion for sanctions filed by Defendant Bimbo Bakeries USA, Inc., Dkt. No. 138. For the reasons set forth below, the Court **GRANTS IN PART** and **DENIES IN PART** the motion for class certification, and **DENIES** the motion for sanctions.

## I. PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

### A. Background

#### 1. Class Allegations

      Plaintiffs seek to certify four classes of California consumers who purchased various food products manufactured by Defendant. Plaintiffs allege that certain labels on some of the food products do not comply with California's Sherman Food, Drug, and Cosmetic Law, Cal. Health & Safety Code §§ 109875, *et seq.* ("Sherman Law"). Based on these violations, Plaintiffs bring causes of action under California's consumer protection laws: the Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.* ("UCL"); the False Advertising Law, Cal. Bus. & Prof. Code §§ 17500, *et seq.* ("FAL"); and the Consumer Legal Remedies Act, Cal. Civ. Code §§ 1750 *et seq.* ("CLRA"). Plaintiffs seek certification under Federal Rules of Civil Procedure 23(b)(2) and

1  23(b)(3).

2  More specifically, Plaintiffs allege that they purchased food products manufactured and

3  sold by Defendant that improperly: (1) applied the American Heart Association's "Heart-Check

4  Mark" without acknowledging that the mark is a paid endorsement; (2) labeled products as a

5  "good" or "excellent source of whole grain"; (3) labeled products as "bread," even though they

6  contain added coloring; and (4) labeled products as "100% Whole Wheat," even though they were

7  made with non-whole wheat flour. *See* Dkt. No. 102 at 1. They accordingly seek to certify four

8  separate classes corresponding to these violations that include all California consumers who

9  bought the same products (or products substantially similar to the products) that they purchased at

10 any time from March 18, 2009 to the present. *Id.* at i-ii. The proposed class definitions are as

11 follows:

(1) **"Heart-Check Mark" Class**: All consumers in the State of California who, from March 18, 2009 to the present, purchased Thomas' Plain Bagel Thins, Thomas' 100% Whole Wheat Bagel Thins, Thomas' Everything Bagel Thins, Arnold 100% Whole Wheat Bread, Arnold 12 Grain Bread, or Arnold Healthy Multi Grain Bread bearing the American Heart Association Heart-Check Mark on the label.

**Purchased Product**: Plaintiff Ang purchased Thomas' Plain Bagel Thins.

**Substantially Similar Products**: Thomas' 100% Whole Wheat Bagel Thins, Thomas' Everything Bagel Thins, Arnold 100% Whole Wheat Bread, Arnold 12 Grain Bread, and Arnold Healthy Multi Grain Bread.

(2) **"Whole Grain" Class**: All consumers in the State of California who, from March 18, 2009 to the present, purchased Sara Lee Classic 100% Whole Wheat Bread, Sara Lee 100% Whole Wheat Bread, Sara Lee Soft & Smooth Whole Grain White Bread, or Sara Lee Soft & Smooth 100% Whole Wheat Bread with labels containing the phrases "excellent source of whole grain" or "good source of whole grain."

**Purchased Products**: Plaintiffs both purchased Sara Lee Classic 100% Whole Wheat Bread, and Plaintiff Streit also purchased Sara Lee 100% Whole Wheat Bread.

**Substantially Similar Products**: Sara Lee Soft & Smooth Whole Grain White Bread, Sara Lee Soft & Smooth 100% Whole Wheat Bread.

(3) **"Added Coloring" Class**: All consumers in the State of California who, from March 18, 2009 to the present, purchased Bimbo Original Toasted

Bread, Bimbo Double Fiber Toasted Bread, Arnold Marble Jewish Rye Bread, Arnold Pumpernickel Jewish Rye Bread, Oroweat Dark Rye Bread, Oroweat Sweet Hawaiian Bread, Stroehmann Deli Soft Rye – No Seeds, Stroehmann Deli Soft Rye – Seeds, Thomas' Cinnamon Raisin Swirl Toasting Bread, or Thomas' Cranberry Swirl Toasting Bread containing added coloring.

**Purchased Products**: Plaintiff Ang purchased Bimbo Original Toasted Bread.

**Substantially Similar Products**:  Bimbo Double Fiber Toasted Bread, Arnold Marble Jewish Rye Bread, Arnold Pumpernickel Jewish Rye Bread, Oroweat Dark Rye Bread, Oroweat Sweet Hawaiian Bread, Stroehmann Deli Soft Rye - No Seeds, Stroehmann Deli Soft Rye – Seeds, Thomas' Cinnamon Raisin Swirl Toasting Bread, or Thomas' Cranberry Swirl Toasting Bread

(4)   **"Whole Wheat Class"**: All consumers in the State of California who, from March 18, 2009 to the present, purchased Sara Lee 100% Whole Wheat Bread, Sara Lee Classic 100% Whole Wheat Bread, Arnold 100% Whole Wheat Pocket Thins Flatbread, Arnold Bakery Light - 100% Whole Wheat Bread, Bimbo 100% Whole Wheat Tortillas, Brownberry 100% Whole Wheat Pocket Thins Flatbread, Thomas' 100% Whole Wheat Bagels, Thomas' 100% Whole Wheat Bagel Thins Flatbread, Thomas' 100% Whole Wheat Mini Bagels, Thomas' Sahara 100% Whole Wheat Pita Pockets, Thomas' Sahara 100% Whole Wheat Pita Pockets Mini Size, Thomas' 100% Whole Wheat English Muffins, or Tia Rosa 100% Whole Wheat Tortillas.

**Purchased Products**: Plaintiff Ang purchased Sara Lee Soft & Smooth Whole Wheat White Bread and Sara Lee 100% Whole Wheat Bread; Plaintiff Streit purchased Sara Lee Classic 100% Whole Wheat Bread and Sara Lee 100% Whole Wheat Bread.

**Substantially Similar Products**: Arnold 100% Whole Wheat Pocket Thins Flatbread, Arnold Bakery Light – 100% Whole Wheat Bread, Bimbo 100% Whole Wheat Tortillas, Brownberry 100% Whole Wheat Pocket Thins Flatbread, Mrs. Baird's 100% Whole Wheat Bread, Mrs. Baird's 100% Whole Wheat Country Rolls, Thomas's 100% Whole Wheat Bagels, Thomas' 100% Whole Wheat Bagel Thins, Thomas' 100% Whole Wheat Mini Bagels, Thomas' Sahara 100% Whole Wheat Pita Pockets, Thomas' Sahara 100% Whole Wheat Pita Pockets Mini Size, Thomas' 100% Whole Wheat English Muffins, and Tia Rosa 100% Whole Wheat Tortillas.

*Id.*; Dkt. No. 40 ¶¶ 50-51.[1]

---

[1] Plaintiffs exclude from class membership: (1) Defendant and its subsidiaries and affiliates; (2) governmental entities; and (3) the Court to which this case is assigned and its staff.  Mot. at ii.

## 2. Procedural Posture

Plaintiffs filed the operative Second Amended Complaint on November 4, 2013.  Dkt. No. 40 ("SAC").[2]  On March 13, 2014, the Court granted in part Defendant's motion to dismiss the SAC, narrowing the claims for which Plaintiffs could seek relief.  *See* Dkt. No. 58.  Defendant answered the SAC on April 2, 2014.  Dkt. No. 64.

On February 18, 2015, Plaintiffs filed this motion for class certification.  Dkt. No. 102 ("Mot.").  Defendant filed its opposition on April 4, 2015, Dkt. No. 121 ("Opp."), and objected to some of the evidence Plaintiffs proffered in support of their motion, Dkt. Nos. 122, 123, 124.  On April 17, 2015, Plaintiffs replied.   Dkt. No. 130 ("Reply").  A week later, Defendant filed its objection to materials submitted by Plaintiffs in support of their reply.  Dkt. No. 132.  The Court heard argument on the class certification motion on May 6, 2015.  Dkt. No. 133.

On March 31, 2016, the Court stayed this action pending the resolution of third-party appeals involving legal questions at issue in this case.  Dkt. No. 164.  On January 5, 2018, in response to an order to show cause, Dkt. No. 171, the parties jointly moved to lift the stay, Dkt. No. 172, and the Court granted the request, Dkt. No. 174.  At a case management conference on February 6, 2018, the Court directed the parties to submit supplemental briefing regarding any relevant caselaw that had arisen during the stay.  Dkt. No. 176.  The parties submitted that briefing on March 23, 2018, Dkt. Nos. 180, 181, and the Court heard further argument on April 12, 2018, Dkt. No. 185.

## B. Legal Standard

Plaintiffs bear the burden of showing by a preponderance of the evidence that class certification is appropriate under Federal Rule of Civil Procedure 23.  *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350-51 (2011).  First, the plaintiffs must establish that each of the four requirements of Rule 23(a) are met: numerosity, commonality, typicality, and adequacy of representation.  *Id.* at 349.  Where the plaintiffs "succeed[] in establishing all four of the 23(a) elements, [they] must then satisfy one of the three requirements of Rule 23(b)."  *Civil Rights Educ.*

---

[2] Plaintiffs filed the initial complaint on March 18, 2013.  Dkt. No. 1.

& *Enforcement Ctr. v. Hospitality Props. Trust*, 867 F.3d 1093, 1103 (9th Cir. 2017).

As relevant here, Rule 23(b)(2) requires that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief . . . is appropriate respecting the class as a whole." Rule 23(b)(3), on the other hand, requires a finding "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." To determine whether a putative class action satisfies the requirements of Rule 23(b)(3), courts consider:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
>
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
>
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>
> (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3)(A)-(D).

While a court's "class-certification analysis must be rigorous and may entail some overlap with the merits of the plaintiff's underlying claim, Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage." *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 465-66 (2013) (internal citations and quotation marks omitted). "Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Id.* (citation omitted). A trial court's "broad discretion to certify a class . . . must be exercised within the framework of Rule 23." *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001), *reh'g denied*, 273 F.3d 1266 (9th Cir. 2001) (citation omitted).

### C. Discussion

Before considering whether Plaintiffs have satisfied the requirements of Rule 23, the Court turns to two threshold issues: Plaintiffs' standing and the parties' evidentiary objections.

#### 1. Standing

As is true in all cases, Plaintiffs must show they have standing to bring their claims in

order to represent the putative class. *See Lierboe v. State Farm Mut. Auto. Ins. Co.*, 350 F.3d 1018, 1022 (9th Cir. 2003). Defendant contends that Plaintiffs do not have standing to assert any of their claims because they have no documentary evidence to show that they purchased the products at issue. Opp. at 15. Alternatively, Defendant argues that even if Plaintiffs could show that they made those purchases, they neither relied upon nor were misled by the challenged labels, and therefore suffered no injury at all. *Id.* at 7-12.[3] While Defendant couches these arguments as challenges to whether Plaintiffs have satisfied Rule 23's predominance and typicality requirements, they ultimately amount to contentions that Plaintiffs were not injured within the meaning of Article III and, as a result, lack standing. The Court therefore considers them as such.

### a.    Legal Standard

The Ninth Circuit, recognizing that the concepts of standing and class certification are frequently (and easily) conflated, has emphasized that "[s]tanding is meant to ensure that the injury a plaintiff suffers defines the scope of the controversy he or she is entitled to litigate, while "[c]lass certification . . . is meant to ensure that named plaintiffs are adequate representatives of the unnamed class." *Melendres v. Arpaio*, 784 F.3d 1254, 1261 (9th Cir. 2015) (emphasis omitted). In *Melendres*, the court held that "once the named plaintiff demonstrates her individual standing to bring a claim, the standing inquiry is concluded, and the court proceeds to consider whether the Rule 23(a) prerequisites for class certification have been met." *Id.* at 1262-63 (citation omitted).

Controlling authority does not detail the evidentiary burden a putative class representative must satisfy in establishing her standing. *See Dukes*, 564 U.S. at 351 (holding that Rule 23 "does not set forth a mere pleading standard," and noting that the "rigorous analysis" required under the rule "will entail some overlap with the merits of the plaintiff's underlying claim," but not specifying whether that standard applies to the jurisdictional question of standing in the class certification context). Still, courts in this Circuit have concluded that putative class

---

[3] Defendant also contends that Plaintiffs do not have standing to seek injunctive relief. *See* Opp. at 24-25. Because that is relevant only to the question of certification under Rule 23(b)(2), the Court addresses it in that section below.

representatives "must demonstrate, not merely allege, that they have suffered an injury-in-fact to establish Article III standing to bring the claims asserted on behalf of the [class]." *Evans v. Linden Research, Inc.*, No. C 11-01078 DMR, 2012 WL 5877579, at *6 (N.D. Cal. Nov. 20, 2012) (citing *Nelsen v. King Cnty.*, 895 F.2d 1248, 1249-50 (9th Cir. 1990)); *see also Sethavanish v. ZonePerfect Nutrition Co.*, No. 12-2907-SC, 2014 WL 580696, at *3 (N.D. Cal. Feb. 13, 2014) (same); *Torres v. Air to Ground Servs., Inc.*, 300 F.R.D. 386, 393 (C.D. Cal. 2014) ("At the class certification stage . . . Plaintiff's [standing] case must be able to withstand a 'rigorous analysis [that] will entail some overlap with the merits of the . . . underlying claim.'") (quoting *Dukes*, 564 U.S. at 351). The Court finds this approach both persuasive and consistent with Rule 23's requirement that plaintiffs prove their entitlement to class certification by a preponderance of the evidence, and accordingly will require Plaintiffs to make some evidentiary showing that they have standing, rather than simply alleging as much.

To establish Article III standing, a plaintiff must show an injury-in-fact that is: (1) concrete and particularized, as well as actual or imminent; (2) fairly traceable to the challenged action of the defendant; and (3) redressable by a favorable ruling from the court. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). "A plaintiff must demonstrate standing for each claim he or she seeks to press and for each form of relief sought." *Wash. Envtl. Council v. Bellon*, 732 F.3d 1131, 1139 (9th Cir. 2013). "In food-labeling cases such as this one, a plaintiff can satisfy the Article III injury-in-fact requirement by showing that she either: (1) paid a price premium for a mislabeled product; or (2) would not have purchased the product had he or she known about the misbranding." *Nguyen v. Medora Holdings, LLC*, No. 5:14-cv-00618-PSG, 2015 WL 4932836, at *5 (N.D. Cal. Aug. 18, 2015) (citations omitted); *see also Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581, 595 (9th Cir. 2012) (stating that, in class action alleging UCL, FAL, and CLRA claims, "[t]o the extent that class members were relieved of their money by [Defendant's] deceptive conduct . . . they have suffered an 'injury in fact'") (citation omitted).

   b.   **There is sufficient evidence that Plaintiffs purchased the products at issue.**

Defendant first contends that "Plaintiffs have failed to produce any evidence that they

actually purchased [Defendant's] products." Opp. at 15. If this were true, it would preclude any argument that Plaintiffs have standing, as a food labeling plaintiff must prove, in part, that she purchased the product. *See Nguyen*, 2015 WL 4932836, at *5. Plaintiffs do not respond to Defendant's argument in the context of standing.

The Court rejects Defendant's argument that Plaintiffs failed to produce evidence showing that they bought Defendant's products, since Plaintiffs cite the record to show that they did:

- With respect to products relevant to the Heart-Check Mark Class, Plaintiff Ang testified that he purchased Thomas' Plain Bagel Thins. *See* Reply, Ex. M (Deposition of Alex Ang, or "Ang Depo.") at 225:4-17.[4]

- With respect to products relevant to the Whole Grain Class, Plaintiffs both purchased Sara Lee Classic 100% Whole Wheat Bread. *See* Ang Depo. at 172:9-14; Reply, Ex. J (Deposition of Lynne Streit, or "Streit Depo.") at 278:15-279:19. Plaintiff Ang also purchased Sara Lee Soft & Smooth Whole Grain White Bread. Ang Depo. at 178:24-179:4. And Plaintiff Streit also purchased Sara Lee 100% Whole Wheat Bread. Streit Depo. at 283:18-284:13.

- With respect to products relevant to the Added Coloring Class, Plaintiff Ang purchased Bimbo Original Toasted Bread. *See* Ang Depo. at 222:21-223:11.

- And, with respect to products relevant to the Whole Wheat Class, both Plaintiffs purchased Sara Lee Classic 100% Whole Wheat Bread. Ang Depo. at 172:9-14; Streit Depo. at 172:9-14. Plaintiff Streit also bought Sara Lee 100% Whole Wheat Bread. Streit Depo. at 283:18-284:13.

In light of the above, at this stage of the litigation, the Court finds that Plaintiffs have proffered sufficient evidence showing that they purchased the products at issue. The Court emphasizes that this conclusion is only for purposes of class certification, and is not a comment on the strength of Plaintiffs' case on the merits.[5]

---

[4] In their motion, Plaintiffs attached rough transcripts of the deposition transcripts. They later attached the final transcripts as exhibits to their reply brief. The Court cites to the latter.

[5] Defendant's contention that Plaintiffs should produce receipts also goes to their argument that the putative class is not ascertainable. But after the initial briefing in this case, the Ninth Circuit

**c.** **There is sufficient evidence that Plaintiffs read and relied upon the challenged labeling statements.**

Second, Defendant contends that Plaintiffs neither relied upon nor were misled by the challenged labeling statements. Again, the record indicates otherwise:

- With respect to products relevant to the Heart-Check Mark Class, Plaintiff Ang stated in his deposition that he "read and rel[ied] on" the "Heart Association" sticker affixed to the package of Thomas' Plain Bagel Thins he bought. Ang Depo. at 225:8-226:5.

- With respect to products relevant to the Whole Grain Class, Plaintiff Ang stated that Defendant's representation that the products were "whole grain" were a "substantial factor" in his "purchase decisions." *See* Ang Depo. at 221:3-18; *see also id.* at 115:2-6 ("I believe if I was comparing products and one said whole grain and the other one didn't I'd lean towards the whole grain."). Plaintiff Streit, in her deposition, affirmed that she "read and rel[ied] on" the portion of the label that claimed the product was "an excellent source of whole grain." *See* Streit Depo. at 285:12-286:8; *see also id.* at 286:9-11 (stating that the "whole grain" representation "affected greatly" her "purchase decision").

- With respect to the products relevant to the Added Coloring Class, Plaintiff Ang stated that he "read and rel[ied]" on the label's claim that the bread in the package was toasted—a belief that he says was bolstered by the bread's resemblance to "stacks of toast." *See* Ang Depo. at 223:17-226:20.

- And, with respect to the products relevant to the Whole Wheat Class, Plaintiff Ang stated that the representation that the products were "whole wheat" were a "substantial factor" in his "purchase decisions." *See* Ang Depo. at 221:3-18; *see id.* at 65:2-6 ("Q: When you go shopping do you look for a label that says 100 percent whole wheat

---

confirmed that there is no stand-alone ascertainability requirement. *See True Health Chiropractic, Inc. v. McKesson Corp.*, 896 F.3d 923, 929 (9th Cir. 2018) (citing *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1133 (9th Cir. 2017)) (holding that, with respect to class certification, "there is no freestanding requirement above and beyond the requirements specifically articulated in Rule 23"). And, in any event, courts have held that a lack of receipts or records indicating who is in the class does not, on its own, preclude certification. *See, e.g., Lanovaz v. Twinings N. Am., Inc.*, No. C-12-02646-RMW, 2014 WL 1652338, at *2 (N.D. Cal. Apr. 24, 2014) (citing cases).

1     bread or do you just look for wheat bread?  A: If the two were side by side I'd probably

2     pick the 100 percent whole wheat bread.").  Plaintiff Streit, for her part, stated that

3     "[d]efinitely" read and relied upon the representation that the product was "100 percent

4     whole wheat."  Streit Depo. at 280:16-22.

5   At this stage of the litigation, Plaintiffs have proffered sufficient evidence to support their

6   contention that they relied upon the challenged labeling statements and thus have standing.  Again,

7   the Court's conclusion is only for purposes of class certification, and has no bearing on the

8   strength of Plaintiffs' case on the merits (including the ultimate credibility of this testimony).

9              **d.      Defendant's arguments to the contrary are unpersuasive.**

10    Defendant asserts several arguments to the contrary, none of which are persuasive.

11    First, Defendant highlights various points in Plaintiff Streit's deposition which it contends

12  weaken her claim of reliance on Defendant's whole-grain representation—like her admission that

13  she does not know what a whole grain is, or that she does not know what constitutes an excellent

14  source of whole grain, or that she regularly buys other products that do not claim to be a source of

15  whole grains.  *See* Opp. at 8.  Setting aside the effect these statements may have on the

16  *persuasiveness* of Plaintiffs' case, Plaintiff Streit has still made a legally sufficient threshold

17  showing that she was deceived by the label—at least for purposes of class certification.[6]

18    Second, Defendant argues that the record demonstrates that Plaintiff Ang would have

19  bought certain products even if the labeling claim had not been true.  *See* Opp. at 9-10.  But

20  whether he would have purchased the product anyway is not dispositive of the question of whether

21  he was deceived.

22    Third, Defendant contends that the fact that Plaintiff Streit did not have a soy allergy or

23  avoid buying products with soy in them precludes causation.  Contrary to Defendant's position,

24  however, Plaintiff's Streit's admission that she did not risk physical injury based on the label's

25

---

26  [6] The same reasoning negates Defendant's argument regarding Plaintiff Ang's purportedly
    contradictory deposition testimony, and its claim that Plaintiff Streit ought to have known that
27  "'soy flour' is not the type of flour that could detract from the truthfulness of the '100% whole
    wheat' label."  *See* Opp. at 9.  While those contentions may impact the ultimate persuasiveness of
28  Plaintiffs' case, the Court at this stage looks only to whether Plaintiffs have proffered more than
    just allegations regarding their standing to sue on behalf of the putative class.

alleged misrepresentation is irrelevant to standing under the UCL, FAL, or CLRA. *See Chacanaca v. Quaker Oats Co.*, 752 F. Supp. 2d 1111, 1125 (N.D. Cal. 2010); *see also In re Tobacco II Cases*, 46 Cal. 4th 298, 314 (2009) (economic injury sufficient under the UCL and FAL); *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 326-27 (2011) (same for CLRA).

Last, Defendant argues that Plaintiff Ang was not deceived by the American Heart Association Heart-Check Mark because he testified that if the American Heart Association tested and certified the product, it would not be misbranded. Opp. at 11-12. As Plaintiffs point out, Plaintiff Ang's opinion about the underlying regulation that bars use of the Heart-Check Mark is irrelevant. What matters at this juncture is that he says he purchased the product at issue because its Heart-Check Mark label made him think that the product was healthier than other products. *See* Ang Depo. at 81:2-15.

Accordingly, the Court finds that Plaintiffs have demonstrated that they have standing for purposes of class certification.

## 2. Evidentiary Objections

The second threshold issue involves the parties' various evidentiary objections. The only objections which the Court need consider are Defendant's objections to the Rebuttal Declaration of Dr. Donald May, as the Court does not rely upon any other challenged evidence in resolving this motion. *See* Dkt. No. 130-17 (rebuttal); Dkt. No. 132 at 3-5 (Defendant's objections).

Defendant first contends that the rebuttal is "new evidence" on reply and should be stricken. *See Provenz v. Miller*, 102 F.3d 1478, 1483 (9th Cir. 1996). But this document is used exclusively to respond to Defendant's damages experts, which is a permissible use of expert evidence on reply. *See In re ConAgra Foods*, 90 F. Supp. 3d 919, 955 (C.D. Cal. 2014) (rebuttal evidence permissible on reply in support of class certification).

Defendant next contends that various statements in the rebuttal lack foundation because Dr. May does not explain the factual bases for several of his claims. Dkt. No. 132 at 3-5. That is not an appropriate objection at this stage of the case. Under Federal Rule of Evidence 705, "[u]nless the court orders otherwise, an expert may state an opinion—and give the reasons for it— without first testifying to the underlying facts or data."

Defendant also argues that the rebuttal contradicts Dr. May's deposition testimony. Dkt. No. 132 at 4-5. Even assuming that there are inconsistencies between his expert report and deposition testimony, these are not reasons to exclude his opinions unless they so defeat their reliability that they fail to meet the requirements of Federal Rule of Evidence 702. But Defendant does not contend that is the case. These issues are relevant to the plausibility of the damages models that Dr. May proposes, and the Court will consider them in that context.

Finally, Defendant argues that the rebuttal is inadmissible because Dr. May failed to run his proposed damages model in advance of class certification. At class certification, however, a plaintiff's damages expert need only propose a plausible model for calculating damages. *In re High-Tech Employee Antitrust Litig.*, 289 F.R.D. 555, 567 (N.D. Cal. 2013).

Defendant's objections are therefore overruled.

### 3. Rule 23(a)

Having resolved these threshold issues, the Court next considers whether Plaintiffs have satisfied the requirements of Rule 23(a).

#### a. Numerosity

Rule 23(a)(1) requires that the putative class be "so numerous that joinder of all members is impracticable." Plaintiffs contend that the numerosity requirement is satisfied because "Defendant sold many thousands of units of the products at issue." *See* Mot. at 10. Defendant disagrees, arguing in a footnote that Plaintiffs have failed to present evidence supporting their numerosity assertion. Opp. at 7 n.4. Plaintiffs do not mention numerosity in their reply brief.

"[C]ourts have routinely found the numerosity requirement satisfied when the class comprises 40 or more members." *Villalpando v. Exel Direct Inc.*, 303 F.R.D. 588, 605-06 (N.D. Cal. 2014) (citation omitted). Although Plaintiffs do not provide a clear estimate of how many proposed class members there are, Defendant's expert conducted a survey of more than 600 putative class members. Dkt. No. 121-11 (Declaration of Dr. Kent D. Van Liere) ¶¶ 9, 17. Moreover, the fact that *Defendant* did not maintain any records showing ultimate retail sales should not serve as a basis to preclude a showing of numerosity. *See* Opp. at 6 ("[T]here are no records in this case that could identify retail purchasers of [Defendant's] products.").

Accordingly, given the nature of the products at issue, the Court is satisfied that the putative class members are sufficiently numerous to make joinder impracticable within the meaning of Rule 23(a)(1).

### b. Commonality

Rule 23(a)(2) requires that "there are questions of law or fact common to the class." As relevant here, Plaintiffs contend that each of the four proposed classes asks whether the labels on the products at issue violate the applicable FDA regulations and California's Sherman Law. *See* Mot. at 11. Defendant does not meaningfully contest that these issues are susceptible to classwide determination.

The Court agrees that the legal issue highlighted by Plaintiffs is appropriate for class treatment. A contention is sufficiently common where "it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 564 U.S at 350. Commonality exists where "the circumstances of each particular class member vary but retain a common core of factual or legal issues with the rest of the class." *Parra v. Bashas', Inc.*, 536 F.3d 975, 978-79 (9th Cir. 2008). "What matters to class certification . . . is not the raising of common 'questions'—even in droves—but rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Dukes*, 564 U.S at 350 (citation omitted) (original emphasis).

Because the identified common issues are sufficient for purposes of commonality, the Court finds this requirement satisfied.

### c. Typicality

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Defendant contends that Plaintiffs fail to satisfy the typicality requirement because they "purchased fewer than 20% of the products named in the lawsuit." Opp. at 13.[7] The Court disagrees.

---

[7] The Court has already addressed the standing arguments that Defendant posited in the guise of typicality arguments.

"The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (internal quotation marks omitted). Under the "permissive standards" of Rule 23(a)(3), the claims need only be "reasonably co-extensive with those of absent class members," rather than "substantially identical." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998). In other words, "[t]ypicality is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the [defendant's] liability." *Hadley v. Kellogg Sales Co.*, No. 16-CV-04955-LHK, --- F. Supp. 3d ---, 2018 WL 3954587, at *23 (N.D. Cal. Aug. 17, 2018) (quoting *Rodriguez v. Hayes*, 591 F.3d 1105, 1122 (9th Cir. 2010)) (internal quotation marks omitted).

Here, Plaintiffs' claims are "reasonably co-extensive" with those of the proposed class because they are alleging the same injury based on their purchase of similar products. While Plaintiffs may not have purchased all of the challenged products, the class allegations all aver injury based on either Defendant's (1) application of the American Heart Association's "Heart-Check Mark" without acknowledging that it is a paid endorsement; (2) labeling products as a "good" or "excellent source of whole grain"; (3) labeling products as bread, despite the added coloring; or (4) labeling products as "100% Whole Wheat," despite their use of non-whole wheat flour. For typicality purposes, this is sufficient, even though Plaintiffs did not purchase all (or even most) of the challenged products. *See, e.g.*, *Todd v. Tempur-Sealy Int'l, Inc.*, No. 13-cv-04983-JST, 2016 WL 5746364, at *5 (N.D. Cal. Sept. 30, 2016) ("Plaintiffs' theory of the case is that Defendants falsely represented that all of their products are free of harmful chemicals when in fact, none of them are. Slight differences between the mattresses purchased by class members are not disqualifying, or even relevant."); *Lilly v. Jamba Juice Co.*, 308 F.R.D. 231, 240 (N.D. Cal. 2014) ("Named Plaintiffs Lilly and Cox clearly have a similar alleged injury as the rest of the proposed class, since they purchased products that are the same as, or very similar to, the products challenged by the rest of the proposed class."); *Ogden v. Bumble Bee Foods, LLC*, 292 F.R.D. 620, 626 (N.D. Cal. 2013) (finding that the plaintiff established typicality "as to products with

14

similar or identical claims about Omega-3 content, as those labels may have misled class members in the same way that they allegedly misled [the plaintiff] even if the products are not the same").

### d. Adequacy

Rule 23(a)(4) requires that the "representative parties will fairly and adequately represent the interests of the class."

On the question of adequacy, the Court must address two legal questions: (1) whether the named plaintiffs and their counsel have any conflicts of interest with other putative class members, and (2) whether the named plaintiffs and their counsel will prosecute the action vigorously on behalf of the proposed class. *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 462 (9th Cir. 2000). This inquiry "tend[s] to merge" with the commonality and typicality criteria. *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 158 n.13 (1982). In part, these requirements determine whether "the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Id.*

The Court is unaware of any conflicts among Plaintiffs and proposed class members, and finds that Plaintiffs have, to date, vigorously prosecuted the action on behalf of the alleged classes. Moreover, the Court has found that Plaintiffs satisfy the commonality and typicality requirements, and Defendant does not meaningfully object to named Plaintiffs' or counsel's adequacy per Rule 23(a)(4). The Court is therefore satisfied that Plaintiffs can adequately represent the various classes as pled.

### 4. Rule 23(b)(2)

In addition to satisfying the requirements of Rule 23(a), Plaintiffs seeking class certification must meet the requirements of one of the prongs of Rule 23(b). In this case, Plaintiffs seek certification under Rule 23(b)(2) and (b)(3). With respect to the question of certification under Rule 23(b)(2), the Court begins with the threshold question of standing.

### a. Standing

In both its opposition to the original motion and its supplemental briefing, Defendant contends that Plaintiffs lack standing to seek injunctive relief under Rule 23(b)(2). *See* Opp. at 25; Dkt. No. 181 at 2-5. The Court disagrees.

After Plaintiffs filed their motion, the Ninth Circuit clarified the standard for determining when a plaintiff has standing to seek injunctive relief in a mislabeling class action. It held that "a previously deceived consumer may have standing to seek an injunction against false advertising or labeling, even though the consumer now knows or suspects that the advertising was false at the time of the original purchase, because the consumer may suffer an actual and imminent, not conjectural or hypothetical threat of future harm." *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 969 (9th Cir. 2018) (citation and internal quotation marks omitted). But the court cautioned that mere knowledge of a label's falsity in the past "does not equate to knowledge that it will remain false in the future." *Id.* Instead, a plaintiff seeking injunctive relief may show, for example, that "she will be unable to rely on the product's advertising or labeling in the future, and so will not purchase the product although she would like to." *Id.* "In other cases, the threat of future harm may be the consumer's plausible allegations that she might purchase the product in the future, despite the fact it was once marred by false advertising or labeling, as she may reasonably, but incorrectly, assume the product was improved." *Id.* Importantly, the Ninth Circuit's conclusion is narrower than a blanket conclusion that plaintiffs seeking injunctive relief in mislabeling class actions always have standing. The principle set forth in *Davidson* is more accurately cast as the court's "not [being] persuaded that injunctive relief is *never* available for a consumer who learns after purchasing a product that the label is false." *Id.* (quoting *Duran v. Creek*, No. 3:15-cv-05497-LB, 2016 WL 1191685, at *7 (N.D. Cal. Mar. 28, 2016)) (original emphasis).

In this case, Plaintiffs have demonstrated that they have standing to seek injunctive relief. Plaintiff Ang testified that, but for the alleged mislabeling, he would buy the products in the future. *See* Ang Depo. at 222:1-4 ("Q: How do you feel about resuming buying [Defendant's] products in the future? A: You know, I like the way they taste. I'd buy them if they were labeled properly."). Plaintiff Streit, for her part, stated that she would buy Defendant's products in the future "if the labels were corrected and [one] hundred percent truthful." Streit Depo. at 289:25-

290:3.  Under *Davidson*, this is a sufficient basis to find standing under Rule 23(b)(2).[8]

Defendant's arguments to the contrary are not persuasive.  Most pertinently, it contends that notwithstanding *Davidson*, "Plaintiffs lack standing to pursue injunctive relief against products as to which the allegedly false labeling has already been removed."  Dkt. No. 181 at 3.  But as Plaintiffs point out, Defendant proffers no "irrefutabl[e]" evidence that the challenged conduct has been "total[ly]" ceased, as would be required to moot claims for injunctive relief.  *See Polo Fashions, Inc. v. Dick Bruhn, Inc.*, 793 F.2d 1132, 1135 (9th Cir. 1986).  Instead, Defendant states only that "*many* of the challenged statements have already been removed from the labels of . . . [Defendant's] products," Opp. at 24 (emphasis added), and provides no update in its supplemental briefing.  That is an insufficient basis for the Court to find that Plaintiffs' lack standing.  Accordingly, the Court turns to whether Plaintiffs are entitled to certification under Rule 23(b)(2).

### b.    Discussion

"Rule 23(b)(2) applies only when a single injunction . . . would provide relief to each member of the class."  *Dukes*, 564 U.S. at 360.  The "key" to finding a class under Rule 23(b)(2) "is the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined . . . only as to *all* of the class members or as to *none* of them."  *Id.* (citation and internal quotation marks omitted) (emphasis added).  Rule 23(b)(2) "does not authorize class certification when each individual class member would be entitled to a *different* injunction . . . against the defendant," or "to an individualized award of monetary damages."  *Id.* at 360-61 (original emphasis).

Initially, Plaintiffs purported to seek (1) "declaratory relief that Defendant's labeling practices at issue are illegal"; (2) "injunctive relief barring Defendant from engaging in these labeling practices in the future"; and (3) "all available incidental monetary relief to which class members are entitled."  Mot. at 23.  In reply, however, they appear to abandon their claim to

---

[8] The Court acknowledges that Plaintiffs did not plead these facts in the SAC.  Given the unique posture of this case, however—namely, that *Davidson* was decided in the middle of this litigation—the Court finds that Plaintiffs' evidentiary showing is an adequate basis on which to find standing.

anything other than injunctive relief under Rule 23(b)(2), clarifying that "they do not seek a (b)(2) injunction class so that they can recover monetary relief," but rather, "to enjoin Defendant from continuing to mislabel the subject products." Reply at 12. Defendant contends that "plaintiffs' prayer for injunctive relief is clearly secondary to their damages claims," rendering certification under Rule 23(b)(2) inappropriate. Opp. at 24.

The Court disagrees with Defendant's reading of the caselaw on which it relies for this point. It cites to *Algarin v. Maybelline, LLC*, a case from the Southern District of California, for the proposition that "[c]lass certification under Rule 23(b)(2) is appropriate only where the primary relief sought is declaratory or injunctive." 300 F.R.D. 444, 458 (S.D. Cal. 2014) (quoting *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 986 (9th Cir. 2011)). Based on that statement, Defendant appears to argue that Plaintiffs' attempt to certify a damages class under Rule 23(b)(3) bars certification under Rule 23(b)(2). The Court, however, reads *Algarin* and *Ellis* to preclude Rule 23(b)(2) certification where the primary relief sought *under Rule 23(b)(2)* is monetary—not where a plaintiff seeks certification under both Rule 23(b)(2) and (b)(3). *Cf. Ellis*, 657 F.3d at 986 (noting that "in Rule 23(b)(2) cases, monetary damage requests are generally allowable only if they are merely incidental to the litigation") (citation and internal quotation marks omitted); *see also In re ConAgra Foods, Inc.*, 302 F.R.D. 537, 573 (C.D. Cal. 2014) ("Ninth Circuit precedent indicates that the court can separately certify an injunctive relief class and if appropriate, also certify a Rule 23(b)(3) damages class.")

The only remaining question, then, is whether "a single injunction . . . would provide relief to each member of the class." *Dukes*, 564 U.S. at 360. Based on the alleged mislabeling, the Court finds that it would, and grants certification of all four classes under Rule 23(b)(2). The Court remains mindful, however, that a showing of irrefutable and total cessation of the challenged conduct prior to a final judgment in this litigation may be grounds for a decertification motion. *See* Fed. R. Civ. P. 23(c)(1)(C) ("An order that grants or denies class certification may be altered or amended before final judgment.").

### 5. Rule 23(b)(3)

As indicated above, Plaintiffs also seek certification under Rule 23(b)(3), which requires

United States District Court
Northern District of California

Plaintiffs to show predominance and superiority.  As detailed below, because the Court finds that

Plaintiffs have failed to meet the predominance requirement, it need not reach the superiority

analysis.[9]

### a.    Legal Standard

"The predominance inquiry tests whether proposed classes are sufficiently cohesive to

warrant adjudication by representation."  *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045

(2016) (internal quotation marks omitted).  The Supreme Court has defined an individual question

as "one where members of a proposed class will need to present evidence that varies from member

to member, while a common question is one where the same evidence will suffice for each

member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide

proof."  *Id.* (citation and internal quotation marks omitted) (original brackets).  This "inquiry asks

whether the common, aggregation-enabling, issues in the case are more prevalent or important

than the non-common, aggregation-defeating, individual issues."  *Id.* (citation and internal

quotation marks omitted).

With respect to the monetary relief sought by a putative class, predominance requires that

"damages are capable of measurement on a classwide basis, in the sense that the whole class

suffered damages traceable to the same injurious course of conduct underlying the plaintiffs' legal

theory."  *Just Film, Inc. v. Buono*, 847 F.3d 1108, 1120 (9th Cir. 2017) (quoting *Comcast Corp. v.

Behrend*, 569 U.S. 27, 34 (2013)) (internal quotation marks omitted); *see also Bruton v. Gerber

Prods. Co.*, No. 12-CV-02412-LHK, 2018 WL 1009257, at *8-12 (N.D. Cal. Feb. 13, 2018)

(applying *Comcast*'s damages predominance requirement to proposed restitution calculation

---

[9] When the parties originally briefed this motion, the Ninth Circuit had not issued *Briseno* or *True Health*, which this Court reads to confirm that there is no implied ascertainability requirement for class certification.  Previously, courts applying this standard incorporated an administrative feasibility requirement, which rendered certification "inappropriate where ascertaining class membership would require unmanageable individualized inquiry."  *Xavier v. Philip Morris USA, Inc.*, 787 F. Supp. 2d 1075, 1089 (N.D. Cal. 2011).  In its supplemental brief, Defendant contends that *Briseno* does not wholly foreclose the Court from considering administrative feasibility.  *See* Dkt. No. 178 at 9-10.  That is true, insofar as the Court is required "to consider the likely difficulties in managing a class action" as part of the Rule 23(b)(3) analysis.  *See Briseno*, 844 F.3d at 1126 (quoting Fed. R. Civ. P. 23(b)(3)(D)).  Since the Court finds that Plaintiffs have failed to demonstrate predominance, however, it need not consider manageability (*i.e.*, the administrative feasibility of identifying proposed class members).

United States District Court
Northern District of California

methods); *Jones v. ConAgra Foods, Inc.*, No. C 12-01633 CRB, 2014 WL 2702726, at *19-23 (N.D. Cal. June 13, 2014) (same). As such, "a model purporting to serve as evidence of damages in [a] class action must measure only those damages attributable" to the relevant theory of liability. *Comcast*, 569 U.S. at 35. While a proffered model "need not be exact" at the class certification stage, it "must be consistent with [the plaintiff's] liability case." *Id.* (citations and internal quotation marks omitted); *see also Cal. v. Infineon Techs. AG*, No. C 06-4333 PJH, 2008 WL 4155665, at *9 (N.D. Cal. Sept. 5, 2008) (stating that at class certification stage, court's role is to "discern only whether plaintiffs have advanced a *plausible* methodology to demonstrate that . . . injury can be proven on a class-wide basis") (emphasis added). Moreover, while predominance is not shown where "[q]uestions of individual damage calculations . . . inevitably overwhelm questions common to the class," *Comcast*, 569 U.S. at 34, the "presence of individualized damages" on its own is insufficient to defeat class certification, *Just Film*, 847 F.3d at 1120 (quoting *Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 514 (9th Cir. 2013)).

The Supreme Court has made clear that Rule 23(b)(3)'s predominance requirement is "even more demanding" than the commonality requirement of Rule 23(a). *See Comcast*, 569 U.S. at 34 (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623-24 (1997)). Accordingly, the Court will apply this rigorous standard in determining whether Plaintiffs have shown that restitution owed under the UCL, the FAL, and the CLRA is "capable of measurement on a classwide basis." *See Just Film*, 847 F.3d at 1120; *see also Colgan v. Leatherman Tool Grp., Inc.*, 135 Cal. App. 4th 663, 694 (2006) (authorizing "trial court[s] to grant restitution to private litigants asserting claims under those statutes"). "The difference between what the plaintiff paid and the value of what the plaintiff received is a proper measure of restitution." *In re Vioxx Class Cases*, 180 Cal. App. 4th 116, 131 (2009) (analyzing claims under the UCL, the FAL, and the CLRA). In addition to restitution, the CLRA contains a damages provision "to compensate for actual loss." *Colgan*, 135 Cal. App. 4th at 696.

### b. Discussion

Plaintiffs propose several models by which to calculate their economic injury, all of which they contend satisfy the predominance requirements of Rule 23(b)(3). The Court considers each

20

1   in turn.

2                           **i.      Full Refund Model**

3           Plaintiffs first contend that "monetary relief will be relatively easy to calculate because

4   class members are entitled to the full refund of their purchase price."  Mot. at 19 ("the Full Refund

5   Model").  The Court disagrees.  In this Circuit, courts have consistently declined to apply the full-

6   refund method of calculating restitution where a plaintiff cannot show that the product she

7   purchased or consumed was worthless.  *See, e.g.*, *Brazil v. Dole Packaged Foods, LLC*, 660 F.

8   App'x 531, 534 (9th Cir. 2016) (noting that under these statutes, "a plaintiff cannot be awarded a

9   full refund unless the product she purchased was worthless") (citing *In re Tobacco Cases II*, 240

10  Cal. App. 4th 779, 795 (2015))[10]; *Khasin v. R.C. Bigelow, Inc.*, No. 12-cv-02204-WHO, 2016 WL

11  1213767, at *3 (N.D. Cal. Mar. 29, 2016) (noting that this method of calculation "has been

12  repeatedly rejected in this district" and was rendered implausible in that case by its "assum[ption]

13  that consumers gained no benefit in the form of enjoyment, nutrition, caffeine intake, or hydration

14  from consuming the teas" at issue).

15          Plaintiffs' only response is to cite out-of-Circuit law for their contention that "[a]s a matter

16  of law, food products that violate [21 U.S.C. § 331] are worth zero."  Reply at 11 (citing *U.S. v.

17  Gonzalez-Alvarez*, 277 F.3d 73, 78 (1st Cir. 2002)).  Notwithstanding the fact that the Ninth

18  Circuit has not adopted this stance with respect to allegedly mislabeled food, *Gonzalez-Alvarez*

19  dealt with the value of adulterated milk in the context of "assessing loss" under the U.S.

20  Sentencing Guidelines, not a restitution determination.  *See* 277 F.3d at 78.  Further, Plaintiffs'

21  argument that the cases cited by Defendant "*presumed* that the products at issue had some positive

22  value," Reply at 11 (emphasis added), is unpersuasive, because it is well-settled that a full refund

23  is inappropriate where it would give class members "the full benefit of the bargain *and* the

24  monetary value of the defective" product, *see Huu Nguyen v. Nissan N. Am., Inc.*, No. 16-CV-

25  05591-LHK, 2018 WL 1831857, at *5 (N.D. Cal. Apr. 9, 2018) (original emphasis).

26          Accordingly, the Court finds that the Full Refund Model does not satisfy the predominance

27  _____

28  [10] While *Brazil* is unpublished and thus non-binding, the Court finds it to be on-point, persuasive
    authority.

21

requirement of Rule 23(b)(3) as set forth in *Comcast*, because Plaintiffs have not shown that it "measure[s] only those damages attributable" to their theory of liability.  *See* 569 U.S. at 35.

### ii.      Restitutionary Disgorgement Model

Alternatively, Plaintiffs contend they are "entitled to restitutionary disgorgement of the revenues received as a result of the sale of the products at issue to the class members."  Mot. at 20 ("the Restitutionary Disgorgement Model").  Plaintiffs reason that even if they are not entitled to a full refund, the Court can still use this method to "establish a 'floor' for the relief to which they are entitled," as "class members would actually receive less than the amount of their loss."  *Id.* Defendant counters that, as with the Full Refund Model, Plaintiffs' proposed Restitutionary Disgorgement Model "fails to take into account any value that the plaintiffs received from their consumption of [Defendant's] products."  Opp. at 20.  The Court agrees with Defendant.

Plaintiffs propose a calculation in which class members receive the revenues earned by Defendant for the offending products.  *See* Mot. at 20; Dkt. No. 104-5 (Declaration of Dr. Donald M. May, or "May Decl.") ¶¶ 21-24 (describing how to calculate restitutionary disgorgement without accounting for value received by class members).  As a threshold matter, Plaintiffs' proposed method of measuring restitution looks to Defendant's *gains*, rather than the putative class members' *loss*, and so is better described as *nonrestitutionary* disgorgement.  *See Hadley*, 2018 WL 3954587, at *19 (quoting *Tobacco II*, 240 Cal. App. 4th at 800).  But "it is well established that nonrestitutionary disgorgement . . . is unavailable in a class action under the FAL, CLRA, and UCL."  *Id.* (citations and internal quotation marks omitted).  As a matter of law, then, Plaintiffs' proposed calculation is improper.

Even if that were not true, Defendant correctly argues that the Restitutionary Disgorgement Model again assumes that the putative class members receive zero value from consumption of those products.  As with the Full Refund Model, this is not an appropriate method of calculating restitution.  *See Ogden v. Bumble Bee Foods, LLC*, No. 5:12-CV-01828-LHK, 2014 WL 27527, at *13 (N.D. Cal. Jan. 2, 2014) (rejecting proposed methodology for calculating disgorgement where plaintiff conceded that products at issue had "*some* value to [her] apart from the statement on the products' labels," but failed to account for that value); *Brazil v. Dole Packaged Foods, LLC*, No.

12-CV-01831-LHK, 2014 WL 2466559, at *15 n.6 (N.D. Cal. May 30, 2014) (rejecting proposed disgorgement model for calculating damages "for the same reasons as the Full Refund Model"), *decertified in part*, 2014 WL 5794873 (N.D. Cal. Nov. 5, 2014); *Werdebaugh v. Blue Diamond Growers*, No. 12-CV-2724-LHK, 2014 WL 2191901, at *22 n.9 (N.D. Cal. May 23, 2014) (same), *decertified*, 2014 WL 7148923 (N.D. Cal. Dec. 15, 2014).

Accordingly, the Court finds that the Restitutionary Disgorgement Model does not satisfy the requirements of Rule 23(b)(3) as set forth in *Comcast*.

### iii.    Product Labeling Characteristics Model

Plaintiffs' third proposed alternative focuses on the "value of product labeling characteristics," and looks to the "differences in prices and sales of products with and without the labeling claims at issue." Mot. at 20 ("the Product Labeling Characteristics Model").

The Court begins by noting that Plaintiffs do little in their brief to develop the damages analysis of their expert, Dr. Donald May, and instead simply refer the Court to large swaths of his declaration. *See* Mot. at 20 (citing May Decl. ¶¶ 25-55); Reply at 11 (summarily citing to Dr. May's rebuttal declaration with no pin cites). As described by Dr. May, this methodology assigns a dollar value to the "false labeling claim," and calculates restitution accordingly. *See* May Decl. ¶ 26. Using an "econometric or regression analysis," Plaintiffs propose to "isolate the consequence of the alleged misrepresentation by controlling for all other factors that may affect the price differentials, prices and/or volume sold of the challenged products." *Id.* ¶ 35. In this analysis, "the supposition is that individual food products are composed of various attributes," each of which can be assigned a price. *Id.* ¶ 37. "Simply put, controlling for other attributes in the regression analysis (e.g., brand, package size, seasonality of prices, year-to-year fluctuations in prices attributed to economic conditions), we may ascertain the impact of the labeling claim on prices of particular food products." *Id.* While Dr. May references the need to control for certain variables in the restitution calculation, *see id.* ¶¶ 44-45 48, he does not plausibly explain how he will be able to do so. In his rebuttal declaration, he states only his understanding that challenges to the analysis are more properly taken up once he has the appropriate data (if the class is certified). *See* Dkt. No. 130-17 (Rebuttal Declaration of Dr. Donald May, or "May Rebuttal") ¶¶

23

13, 20, 21.

The Court finds the analysis in *Bruton* instructive. *See* 2018 WL 1009257. There, the court found that a regression model proposed by the plaintiff's expert did "not satisfy *Comcast* because . . . [the plaintiff did] not explain how the proposed Regression Model will account for independent variables that might affect the products' prices or sales, such as advertising, brand recognition or loyalty, the prices of competing products, regional differences, consumers' income, and seasonality." *Id.* at *10. There too, the expert provided a "partial list of the variables that might distort the proposed Regression Model's analysis," but then "merely state[d] that subsequent analysis will be 'controlling for these factors' and decline[d] to elaborate further." *Id.* at *11. Acknowledging that "absolute precision is not required at the class certification stage," the court nonetheless concluded that the plaintiff had "failed to provide a meaningful explanation as to how the variables will be addressed." *Id.* at *12 ("That does not satisfy *Comcast*—real explanation is necessary.").

The same problems with the proposed model in *Bruton* preclude Dr. May's Product Labeling Characteristics Model from satisfying *Comcast*. Dr. May states that "from an economic standpoint," he does not "need to identify 'all' factors that might influence prices [and/or] volume sold in my analysis." Rebuttal Decl. ¶ 21. Rather, he "simply need[s] to control for factors that are significantly correlated with the labeling claim and might also influence price [and/or] volume sold depending on which is the dependent variable." *Id.* He further states that "it is unnecessary and unreasonable to include all such theoretical factors identified" in these circumstances. *Id.* But that misses the point. The Court is less concerned with whether Plaintiffs have attempted to account for every factor that might affect the restitution analysis, and more concerned with whether Plaintiffs have shown *how* they can control for other factors (*e.g.*, "brand, package size, seasonality of prices, year-to-year fluctuations in prices attributed to economic conditions") that may affect the value derived from the products—and which may be based on something other than Defendant's alleged misbranding. *See* May Decl. ¶ 37. As did the expert in *Bruton*, Dr. May has provided a partial list of variables that will need to be controlled for, and attempts to postpone his explanation of how he will account for them until after class certification. *See* 2018 WL 1009257,

24

at *11.  But the Rule 23(b)(3) analysis is more rigorous than the Rule 23(a) analysis, *see Comcast*, 569 U.S. at 34, and the Rule does not permit the Court to wait until after certification to assess whether Plaintiffs' Product Labeling Characteristics Model is capable of measuring economic injury attributable to the alleged misbranding on a classwide basis.

Accordingly, the Court finds that the Product Labeling Characteristics Model does not satisfy the requirements of Rule 23(b)(3) as set forth in *Comcast*.

### iv.        Incremental Sales Revenues Model

Plaintiffs' fourth proposed alternative focuses on "incremental sales revenues," and looks to the "differences in prices and sales of the products at issue *during* the time in which they have been labeled with the misrepresentations at issue and . . . *before* the misrepresentations were placed on the labels, or *after* they were removed."  Mot. at 20 (emphasis added) ("the Incremental Sales Revenues Model").

This approach uses the same regression model as the Product Labeling Characteristics Model, but uses "data on units sold before and after the labeling claim . . . to directly estimate incremental sales associated with each particular claim."  May Decl. ¶ 52.  Plaintiffs intend to gather "[h]istorical data on total sales before and after a particular labeling claim[]," and then use that data "to determine the trend in sales for the particular products of interest over a sufficient time period that includes periods when the labeling claims existed and did not exist."  *Id.* ¶ 53.  So, for example, "if the regression equation shows that the trend in sales has increased by 10% as a result of the particular labeling claim and total sales of that product are $100 million[,] then total damages under the incremental sales approach would be $10 million."  *Id.* ¶ 56.

As Defendant points out, this proposed model also fails to sufficiently "control for other changes that [Defendant] may have made to its labels during the class period and does not account for whether such changes had any impact on price."  Opp. at 22.  That alone is fatal to this model's ability to measure economic injury on a classwide basis.  Even if that were not an issue, however, Defendant contends that Plaintiffs have failed to account for the fact that "there are dozens of products at issue here," and that "most of the products' labels changed during the class period while others remained the same," resulting in an inability to "reliably determine which labels were

present in supermarkets in California at any given time." Dkt. No. 178 at 7. This is analogous to the situation in *Bruton*, where the court rejected a proposed regression model that "lack[ed] a reliable means for comparing the products with and without the challenged label statements." 2018 WL 1009257, at *10. This was especially true given the number of products and label statements at issue, as well as the "multiple label iterations": "some labels contained the challenged statements, some did not, and some had only one or different statements in different locations than on other variations of the same product label." *Id.* Another "more important flaw" was the plaintiff's inability to "determine precisely when consumers were buying [the products at issue] *with* the challenged label statements, and . . . *without* the challenged label statements." *Id.* at *11 (original emphasis). This left "no way to determine what label was on the product a consumer purchased in the retail transactions that are the foundation of the proposed Regression Model's analysis." *Id.* "Given the absence of a reliable means to compare products with and without the challenged labeling," the court concluded that the model failed to satisfy *Comcast*. *Id.*

So too here. In Dr. May's initial declaration, he makes no mention of how Plaintiffs might account for the problem of determining which labels were on which products at which time. His rebuttal does not add much: he acknowledges the issue, but only offers the conclusory assertion that "it would be possible to perform a hedonic regression with similar products and thus identify the value of the labeling claims independent of the labeling change dates." May Rebuttal ¶ 26. As with his Product Labeling Characteristics Model, he fails to proffer even a broad explanation as to *how* to do so in a manner that isolates any economic injury caused by the alleged misbranding— and as with his Product Labeling Characteristics Model, this is insufficient.

Accordingly, the Court finds that the Incremental Sales Revenues Model does not satisfy the requirements of Rule 23(b)(3) as set forth in *Comcast*.

### v. Statutory Damages Model (CLRA Claims Only)

Plaintiffs' next proposed model applies only to their claims under the CLRA: they propose that "if Defendant is found liable for violations of the CLRA, at a minimum, the classes would be entitled to [the statutory minimum of] $1,000 for each violation." Mot. at 21 (citation omitted) ("the Statutory Damages Model"). Defendant contends, however, that such an award would

require the Court to engage in individualized questions of proof. Opp. at 23.

In the class action context, the CLRA provides for "[a]ctual damages" of at least $1,000 per violation. Cal. Civ. Code § 1780(a)(1). It does not, however, "provide for an automatic award of $1,000 per individual class member." *Jones*, 2014 WL 2702726, at *23. Rather, "[r]elief under the CLRA is specifically limited to those who suffer damage, making causation a necessary element of proof." *Id.* (quoting *Wilens v. TD Waterhouse Grp., Inc.*, 120 Cal. App. 4th 746, 754 (2003)). In their motion, Plaintiffs cite only one case in support of their argument that section 1780 provides a measure of damages: *Pickman v. Am. Express Co.*, No. C 11-05326 WHA, 2012 WL 258842 (N.D. Cal. Jan. 27, 2012). But *Pickman* is distinguishable, because there, the district court found that the defendants had satisfied the amount in controversy requirement upon removal "by multiplying the minimum amount of damages to be sought under the CLRA ($1,000) by the number of alleged violations (5,001)." 2012 WL 258842, at *2. While Plaintiffs could perhaps use *Pickman* as a guide in calculating their CLRA damages, the case does not negate the need for a showing of causation.

Accordingly, the Court finds that the Statutory Damages Model does not satisfy the requirements of Rule 23(b)(3) as set forth in *Comcast*.

### vi. Nominal Damages Model

Last, Plaintiffs contend that "with respect to all claims of the classes," they may be entitled to nominal damages, which can be calculated on a classwide basis. Mot. at 21 ("the Nominal Damages Model").

"When a breach of duty has caused no appreciable detriment to the party affected, he may yet recover nominal damages." Cal. Civ. Code § 3360. In reply, Plaintiffs argue that "[t]he Sherman Law imposes a duty on Defendant to comply with federal food labeling laws," which Defendant has breached. Reply at 12 n.18. It is true that California's Sherman Law imposes a "duty to avoid false or misleading labeling." *See Ebner v. Fresh, Inc.*, 838 F.3d 958, 965 (9th Cir. 2016). Still, Plaintiffs cite no case in which a court looked to nominal damages to satisfy the predominance requirement under Rule 23(b)(3), and courts in this district have not been inclined to do so. *See Jones*, 2014 WL 2702726, at *23 (finding that plaintiffs failed to "point to any

CLRA case permitting nominal damages, let alone a CLRA class action"); *Brazil v. Dole Packaged Foods, LLC*, No. 12-CV-01831-LHK, 2014 WL 5794873, at *14 (N.D. Cal. Nov. 6, 2014) (citing *Jones* and noting that the plaintiff "cites no authority to suggest that a damages class should remain certified solely because nominal damages may be available, even though the class would otherwise be properly decertified"); *Khasin*, 2016 WL 1213767, at *4 (noting plaintiff's failure to "cite[] a single case demonstrating that nominal damages are available under his causes of action").

Given the lack of support for this argument, the Court finds that the Nominal Damages Model does not satisfy the requirements of Rule 23(b)(3) as set forth in *Comcast*.

### vii.  Conclusion

Because Plaintiffs have not shown that the economic harm they allegedly sustained as a result of the alleged misbranding is capable of measurement on a classwide basis, the Court denies class certification under Rule 23(b)(3).

### D.  Appointment of Class Representatives and Class Counsel

Because the Court finds that Plaintiffs meet the commonality, typicality, and adequacy requirements of Rule 23(a), the Court appoints Plaintiffs as class representatives. Specifically, the Court appoints Plaintiff Ang to be a class representative for all four classes, and appoints Plaintiff Streit to be a class representative for the Whole Grain Class and the Whole Wheat Class.

When a court certifies a class, it must also appoint class counsel, giving due consideration to: (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class. Fed. R. Civ. P. 23(g)(1)(A). A court may also consider "any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B). The Court is satisfied that Plaintiff's counsel has sufficient experience litigating food labeling claims. *See* Dkt. Nos. 102-2, 102-5. Given their diligence in prosecuting this action to date, the Court appoints the Fleischman Law Firm, PLLC and Barrett Law Group, P.A. as co-lead counsel, and Pratt & Associates as local counsel, as

1     requested. *See* Mot. at 24.

2     **E.**     **Disposition**

3     In sum, the Court grants in part and denies in part Plaintiffs' class certification motion as

4 follows: Plaintiffs' motion is granted under Rule 23(b)(2) as to all four classes, and denied under

5 Rule 23(b)(3).

6     **II.**     **DEFENDANT'S MOTION FOR SANCTIONS**

7     Next, the Court turns to Defendant's motion for terminating sanctions against Plaintiff Ang

8 and his counsel for spoliation. The motion is denied.

9     The following facts are material to deciding the sanctions motion. In early April 2013,

10 Defendant sent Plaintiffs' counsel a preservation notice, demanding that they and Plaintiff Ang

11 maintain certain evidence relating to the lawsuit, including: (1) all receipts for purchases of

12 products directly at issue in the complaint; (2) all receipts relating to any purchase of bagels,

13 whole wheat bread, sweet bakery goods, or pizza crust not sold by Defendant; and (3) all existing

14 receipts for all food purchased during the class period. Dkt. No. 138-1 (Declaration of David W.

15 Skaar, or "Skaar Decl."), Ex. B.[11] In October 2013, during discovery, Plaintiffs took the position

16 that they did not have a "continuing obligation to produce documents relating to future purchases

17 of food products throughout the course of this litigation," but agreed to produce all documents

18 relating to the products named in the complaint. *Id.*, Ex. F. Defendant disagreed on the basis that

19 those documents would be relevant to causation, reliance, and damages. *Id.*, Ex. E. In February

20 2015, during Plaintiff Ang's deposition, he testified that he had not been saving his food purchase

21 receipts since the litigation started. In early May 2015, Defendant sent Plaintiffs' counsel a letter

22 regarding this "destruction of relevant evidence." *Id.*, Ex. I. Plaintiffs' counsel again took the

23 position that they did not have any obligation to maintain grocery receipts from the pendency of

24 the litigation. *Id.*, Ex. J. In August 2015, Defendant filed this motion.

25     A party who violates its duty to preserve relevant evidence, and destroys such evidence, is

26

27     ―――――――――

28 [11] Defendant also demanded that Plaintiff Ang keep "[a]ll packaging relating to the products (and any products remaining in such packaging)," which effectively amounted to a request for him to indefinitely maintain some of his household trash. *See* Skaar Decl., Ex. B.

subject to sanctions. *In re Napster, Inc. Copyright Litig.*, 462 F. Supp. 2d 1060, 1066 (N.D. Cal. 2006) ("If a party breaches its duty to preserve evidence, the opposing party may move the court to sanction the party destroying evidence."). The moving party must show that: (1) the party with control over the evidence had a duty to preserve it at the time that it was destroyed, (2) documents were destroyed knowingly, and (3) the evidence was relevant to claims or defenses at issue. *Apple, Inc. v. Samsung Elecs. Co., Ltd.*, 881 F. Supp. 2d 1132, 1138 (N.D. Cal. 2012).

Defendant's sanctions motion is not well-taken. All discovery disputes in this matter were referred to Magistrate Judge Cousins on March 17, 2014. Dkt. No. 60. If Defendant disputed Plaintiff's explicit discovery position, it should have timely raised the issue with Judge Cousins. Plaintiffs told Defendant that they were not going to produce any documents created during the pendency of the litigation. Defense counsel then did not act for nearly two years. Now, Defendant does not cite a single case holding that Plaintiffs had any continuing duty to maintain these purchase receipts. Instead, Defendant cites to Federal Rule of Evidence 401 for the definition of relevance. The Court does not find this argument persuasive.[12] Defendant's motion is denied.

//
//
//
//
//
//
//
//
//
//

---

[12] As the Court noted at the August 20, 2015 hearing on this motion, it is not at all clear that requiring Plaintiffs to preserve all of their grocery receipts going forward was a reasonable, proportionate request in the first instance. *See* Dkt. No. 148 (hearing transcript) at 5:15-8:6.

### III. CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Plaintiffs' motion for class certification: Plaintiffs' motion is **GRANTED** under Rule 23(b)(2) as to all four classes, and **DENIED** under Rule 23(b)(3). The Court also **DENIES** Defendant's motion for sanctions. Last, the Court **SETS** a case management conference for September 25, 2018 at 2:00 p.m. The parties shall submit their joint case management statement by September 18, 2018.

**IT IS SO ORDERED.**

Dated: 8/31/2018

_Haywood S. Gilliam Jr._
HAYWOOD S. GILLIAM, JR.
United States District Judge