Ben F. Pierce Gore (Bar No. 128515)
PRATT & ASSOCIATES
1871 The Alameda, Suite 425
San Jose, CA 95126
Telephone: (408) 429-6506
Fax: (408) 369-0752
pgore@prattattorneys.com

Keith M. Fleischman (admitted *pro hac vice*)
Joshua D. Glatter (admitted *pro hac vice*)
FLEISCHMAN BONNER & ROCCO LLP
81 Main Street, Suite 515
White Plains, New York 10601
Tel: 914-278-51001
Fax: 917-591-5245
kfleischman@fbrllp.com
jglatter@fbrllp.com

*Attorneys for Plaintiffs*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| ALEX ANG and LYNN STREIT, individually and on behalf of all others similarly situated,<br><br>        Plaintiffs,<br><br>     v.<br><br>BIMBO BAKERIES USA, INC.,<br><br>        Defendant. | Case No. 4:13-CV-1196-HSG<br><br>**JOINT MOTION FOR PRELIMINARY APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT**<br><br>Judge: Hon. Haywood S. Gilliam, Jr.<br>Action Filed: March 18, 2013<br><br>Hearing: February 6, 2020, at 2:00 p.m. |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES……………………………………………………................ii

INTRODUCTION……………………………………………………………......….....1

FACTUAL BACKGROUND AND PROCEDURAL HISTORY………………………......…......3

THE TERMS OF THE PROPOSED SETTLEMENT AGREEMENT……………......…………4

   A.  The Settlement Class…………………………………………………......……………4

   B.  Injunctive Relief……………………………………………………......…………. 4

   C.  Class Representatives' Application for Incentive Award…………………......…………. 6

   D.  Attorneys' Fees and Litigation Costs…………………………………......……………7

   E.  Notice to the Settlement Class Members………………………………......……………....7

   F.  Scope of Release………………………………………………………......……………8

ARGUMENT…………………………………………………………………......……………....8

   I.       The Settlement is Fair, Reasonable, and Adequate…………………......………………....9

         A.  The Settlement Agreement Resulted From Serious, Informed, Non-Collusive, Arms-Length Negotiations………………………………………......…………… 9

         B.  The Settlement Agreement Does Not Provide Preferential Treatment……………. 10

         C.  The Settlement Falls Within the Range of Possible Approval……………………... 11

         D.  The Agreement Has No Deficiencies……………………………………………....12

   II.     The Risk, Expense, Complexity, and Duration of Further Litigation…………………. 13

   III.    Counsel's Experienced Judgment and Views……………………………………….. 14

CONCLUSION…………………………………………………………………………....15

**Cases**

*Austin v. Foodliner, Inc.,*
    2019 U.S. Dist. LEXIS 79638 (N.D. Cal. May 10, 2019) ..................................... 6

*Black v. T-Mobile USA, Inc.,*
    2019 U.S. Dist. LEXIS 123676 (N.D. Cal. Jul. 24, 2019) ................................. 7

*Boyd v. Bechtel Corp.,*
    485 F. Supp. 610 (N.D. Cal. 1979) ..................................................................... 14

*Bruno v. Quten Research Inst., LLC,*
    2013 U.S. Dist. LEXIS 35066 (C.D. Cal. Mar. 13, 2013 ............................... 11

*Bruton v. Gerber Prods. Co.,*
    2017 U.S. App. LEXIS 12833 (9th Cir. Jul. 17, 2017) .................................. 14

*Campbell v. Facebook, Inc.,*
    2017 U.S. Dist. LEXIS 132624 (N.D. Cal. Aug. 18, 2017) ........................... 11

*Carr v. Tadin, Inc.,*
    2014 U.S. Dist. LEXIS 179835 (S.D. Cal. Apt. 18, 2014) ............................. 12

*Carter v. Anderson Merch., LP,*
    2010 U.S. Dist. LEXIS 55581 (C.D. Cal. May 11, 2010) ............................... 14

*Dennis v. Kellogg Co.,*
    2013 U.S. Dist. LEXIS 64577 (S. D. Cal. May 3, 2013) ................................ 12

*Fontes v. Heritage Operating, L.P.,*
    2016 U.S. Dist. LEXIS 50502 (S.D. Cal. Apr. 14, 2016) ................................. 8

*Franklin v. Kaypro Corp.,*
    884 F.2d 1222 (9th Cir. 1989) ........................................................................... 8

*Grant v. Capital Mgmt. Servs., L.P.,*
    2013 U.S. Dist. LEXIS 174190 (S.D. Cal. Dec. 11, 2013) ........................... 7-8

*Harris v. Vector Mktg. Corp.,*

    2011 U.S. Dist. LEXIS 48878 (N.D. Cal. Apr. 29, 2011) ............................................. 10-11

*Hart v. Colvin,*

    2016 U.S. Dist. LEXIS 155799 (N.D. Cal. Nov. 9, 2016) ................................................ 10

*In re Ferrero Litig.,*

    2012 U.S. Dist. LEXIS 94900 (S. D. Cal. July 9, 2012) ................................................ 11-12

*In re Heritage Bond Litig.,*

    546 F.3d 667 (9th Cir. 2008) ...................................................................................... 9

*In re High-Tech Employee Antitrust Litig.,*

    2013 U.S. Dist. LEXIS 180530 (N.D. Cal. Oct. 30, 2013) ............................................. 9

*In re Synoc ERISA Litig.,*

    516 F.3d 1095 (9th Cir. 2008) .................................................................................. 8-9

*In re Tableware Antitrust Litig.,*

    484 F. Supp. 2d 1078 (N.D. Cal. 2007) ............................................................. 9, 11-12

*In re Wireless Facilities, Inc. Secs. Litig. II,*

    253 F.R.D. 607 (S.D. Cal. 2008) .......................................................................... 9-10

*Johnson v. Triple Leaf Tea, Inc.,*

    2015 U.S. Dist. LEXIS 170800 (N.D. Cal. Nov. 16, 2015) ........................................... 12

*Kirkorian v. Borelli,*

    695 F. Supp. 446 (N.D. Cal. 1988) ........................................................................... 14

*Kline v. Dymatize Enters., LLC,*

    2016 U.S. Dist. LEXIS 142774 (S.D. Cal. Oct. 13, 2016)(same) .......................... 8, 10, 13

*Knight v. Red Door Salons, Inc.,*

    2009 U.S. Dist. LEXIS 11149 (N.D. Cal. Feb. 2, 2009) ............................................... 14

*Lane v. Facebook, Inc.,*

    696 F.3d 811 (9th Cir. 2012) ...................................................................................... 9

*Lilly v. Jamba Juice Co.,*

    2015 U.S. Dist. LEXIS 34498 (N.D. Cal. Mar. 18, 2015) ................................................... 9

*Lilly v. Jamba Juice Co.,*

    2015 U.S. Dist. LEXIS 58451 (N.D. Cal. May 1, 2015) ................................................... 7

*McDonald v. CP OpCo, LLC,*

    2019 U.S. Dist. LEXIS 13376 (N.D. Cal. Jan. 28, 2019) ................................................... 9

*McDonald v. CP OpCo, LLC,*

    2019 U.S. Dist. LEXIS 80501 (N.D. Cal. May 13, 2019) ................................................... 7

*Oula Zakaria v. Gerber Prods. Co.,*

    2017 U.S. Dist. LEXIS 221124 (C.D. Cal. Aug. 9, 2017) ................................................... 14

*Rivera v. Agreserves, Inc.,*

    2016 U.S. Dist. LEXIS 131705 (E.D. Cal. Sept. 26, 2016) ................................................... 11

*Sciortino v. PepsiCo, Inc.,*

    2016 U.S. Dist. LEXIS 83937 (N.D. Cal. Jun. 28, 2016) ................................................... 7

*Stathakos v. Columbia Sportswear Co.,*

    2018 U.S. Dist. LEXIS 17138 (N.D. Cal. Jan. 25, 2018) ................................................... 12

*Utility Reform Project v. Bonneville Power Admin.,*

    869 F.2d 437 (9th Cir. 1989) ................................................... 8

*Vasquez v. Coast Valley Roofing, Inc.,*

    266 F.R.D. 482 (E.D. Cal. 2010) ................................................... 13

*Villegas v. J.P. Morgan Chase & Co.,*

    2012 U.S. Dist. LEXIS 166704 (N.D. Cal. Nov. 20, 2012) ................................................... 7, 11

*Weigele v. Fedex Ground Package Sys.,*

    2010 U.S. Dist. LEXIS 33305 (S.D. Cal. Apr. 5, 2010) ................................................... 14

*White v. Experian Info. Sols., Inc.,*

    2009 WL 10670553 (C.D. Cal. May 7, 2009) ................................................... 10

**Statutes / Rules**

Cal. Bus. & Prof. Code §§ 17200, et seq. ...................................................................... 3

Cal. Bus. & Prof. Code §§ 17500, et seq. ...................................................................... 3

Cal. Civil Code §§ 1750, et seq. ..................................................................................... 3

Fed. R. Civ. P. 23 ............................................................................................... Passim

Fed. R. Civ. P. 30 ............................................................................................................ 9

**Other**

*Newberg on Class Actions* § 13:15 (5th ed. 2014) ...................................................... 13

# INTRODUCTION

Plaintiffs Alex Ang and Lynne Streit (collectively, the "Plaintiffs") and Defendant Bimbo Bakeries USA, Inc. ("BBUSA") respectfully submit this joint motion for preliminary approval of proposed class action settlement (the "Settlement") of this lawsuit (the "Action"). The terms of the Settlement are set forth in the Settlement Agreement and Release (hereinafter the "Agreement" or "Agr.") attached as Exhibit 1 to the Declaration of Keith M. Fleischman ("Fleischman Decl."), filed herewith.

The Settlement was reached after a lengthy period of litigation, culminating in the Court's decision to certify a Fed. R. Civ. P. 23(b)(2) class and deny certification of a Rule 23(b)(3) class. *See* August 31, 2018 Order Granting in Part and Denying in Part Plaintiffs' Motion for Class Certification (Dkt. No. 186, the "Class Certification Order"). Following the Court's order, the Parties engaged in a mediation conducted by the Hon. Philip M. Pro (Ret.), former Chief Judge for the United States District Court for the District of Nevada, resulting in the Agreement.

As described in further detail below, there are no differences between the Settlement class and the Rule 23(b)(2) class certified under the Class Certification Order. There are also no differences between the claims to be released under the Agreement and those certified for class treatment. Lastly, as no Rule 23(b)(3) class has been certified, the only monetary component of the Agreement is a $325,000 cash payment (the "Settlement Payment") that must be used, pending Court approval, to compensate Class Counsel for their attorneys' fees and expenses, and to make modest incentive payments to the Class Representatives for their service in this case.

The principal benefit of the Settlement is that it provides injunctive relief in the form of an agreement by BBUSA to certify changes to the labels or formulations of the products at issue in this Action.[1] In addition to those label or formulation changes, for a period of two (2) years, BBUSA has agreed to advise Class Counsel of any changes to the label statements or formulations of the products at issue to the extent the labeling claims relate to the following: (1) for the "Whole Grain" Class products, any labeling statement that the product is a "good source of whole grain" or "excellent

---

[1] A specific list of those products and the labeling changes is set forth at § 4.4 of the Agreement.

source of whole grain"; (2) for the "100% Whole Wheat" Class products, any change to the product formulation to include "soy flour"; and (3) for the "Added Coloring" Class products, any change to the product formulation to include "color". *See* Agr. § 4.7. After advisement, Class Counsel will have fifteen (15) days from the date of notice to inform BBUSA whether they object to the proposed labeling change. The parties will attempt to resolve any disputes that arise between themselves amicably and in good faith. As mentioned above, BBUSA also agrees to pay the total sum of $325,000 in full settlement of the lawsuit to be used for attorneys' fees, litigation costs, and incentive awards. As part of the Settlement, the parties will release each other from all claims and potential claims arising out of the same nucleus of operative fact as the Action.

Although Plaintiffs and Class Counsel are confident of a favorable determination on the merits, and neither admit nor concede any lack of merit of the claims, they have determined that the Settlement provides significant benefits to the Settlement Class and is in its members' best interests. Plaintiffs also believe that the Settlement is appropriate, as they recognize the expense and amount of time required to continue pursuing this Action through trial, and the uncertainty, risk, and difficulties of proof inherent in prosecuting such a case. Similarly, to avoid further costs, and as evidenced by the Agreement, BBUSA has determined that, despite its confidence that it would have prevailed in the Action, it is desirable to settle the Action. While BBUSA admits no fault or liability, and expressly denies any fault or liability in connection with the Claims, it has agreed to settle this matter to avoid the expense, inconvenience, and uncertainty of further litigation. Furthermore, and notwithstanding its denial of liability, as documented in the Settlement, BBUSA acknowledges that the Action was a factor that informed its decision to make the labeling changes and reformulations of the products as described in the Agreement.

Accordingly, the Parties jointly move the Court for an order preliminarily approving the proposed Settlement and scheduling a fairness hearing. A proposed order granting preliminary approval of the proposed class action settlement is attached to the Fleischman Declaration as Exhibit 2. As described in detail below, the Settlement satisfies all of the criteria for preliminary approval.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiffs allege that BBUSA is the largest bakery company in the United States. *See* Second Amended Complaint (Dkt. No. 40, the "SAC") at ¶1. According to the SAC, BBUSA owns and has distributed products under the following brands: Arnold, Ball Park, Bimbo, Boboli, Brownberry, Earthgrains, Entenmann's, Francisco, Freihofer's, Marinela, Mrs. Baird's, Oroweat, Sara Lee, Stroehmann, Thomas', and Tia Rosa. *Id.*

On March 18, 2013, Plaintiffs filed a putative class action against BBUSA in the United States District Court for the Northern District of California. *See* Dkt. No. 1. On November 4, 2013, Plaintiffs filed the operative Second Amended Complaint, alleging that BBUSA sold its products with false, misleading, and deceptive labeling in order to increase sales and profits. SAC at ¶172. Plaintiffs' SAC sought injunctive relief and statutory damages, alleging violations of California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.*, the California False Advertising Law, Cal. Bus. & Prof. Code §§ 17500, *et seq.*, and the Consumers Legal Remedies Act, Cal. Civil Code §§ 1750, *et seq.* SAC at ¶¶32-40. BBUSA has denied and continues to deny the allegations stated in the SAC, and denies all claims of wrongdoing or liability against it in the Action. The parties engaged in extensive motion practice—which significantly narrowed the scope of the claims alleged by Plaintiffs—and discovery, which included the exchange of documents, production of expert reports, and conducting of various depositions.

As noted above, on August 31, 2018, the Court issued the Class Certification Order. In that order, the Court ruled that Plaintiffs satisfied the requirements of Rule 23(a)—numerosity, commonality, typicality, and adequacy—and the requirements of Rule 23(b)(2), but not those for Rule 23(b)(3). *See* Class Certification Order at 17-18, 28. The order certified four California classes for injunctive relief under Rule 23(b)(2) but denied class certification for damages under Rule 23(b)(3). *Id.* at 18, 28. In addition to its certification rulings, the Court appointed named Plaintiffs as the Class Representatives and appointed Fleischman Law Firm, PLLC (now Fleischman Bonner & Rocco LLP) and Barrett Law Group, P.A. as co-lead counsel, and Pratt & Associates as local counsel (together, "Class Counsel"). *Id.* at 28-29.

On July 31, 2019, the Parties participated in a full-day mediation overseen by the Hon. Philip M. Pro (Ret.), former Chief Judge for the United States District Court for the District of Nevada and professional mediator with JAMS with substantial experience in mediating class actions. After arm's-length negotiations supervised by Judge Pro, the parties reached agreement and drafted and executed a term sheet. The terms of resolution were thereafter formally and comprehensively documented in the Agreement accompanying this joint motion, which the parties now respectfully submit for approval to finally to resolve this Action.

## THE TERMS OF THE PROPOSED SETTLEMENT AGREEMENT

### A. The Settlement Class

The "Class" or the "Settlement Class Members" means the persons in the following definition: All persons or entities who or that made purchases in California of any BBUSA products identified in the Class Certification Order. *See* Agr. ¶1.7; Class Certification Order at 1-3.

The "Class Period" is defined as the period during which BBUSA is alleged to have mislabeled the products identified in the Agreement, ranging from March 18, 2009 to the present. *See* Class Certification Order at 2.

Pursuant to the Court's Procedural Guidelines for Class Action Settlements, Plaintiffs state that the Settlement Class as defined by the Agreement does not differ from the class certified by the Class Certification Order. *See* Agr. ¶1.7.

### B. Injunctive Relief

The Agreement provides injunctive relief designed to ensure that the product labeling statements and formulations challenged in the SAC have been changed and are no longer used. BBUSA has altered, changed or otherwise modified either the labeling or the formulations of the products at issue. Specifically, BBUSA certifies in the Agreement that it has made the following changes to the labels and/or formulations of the following products:

| Product Name | Changes Made |
|---|---|
| Oroweat Dark Rye Bread | • Color removed |
| Oroweat Sweet Hawaiian Bread | • Color removed |

| | |
|---|---|
| Sara Lee 100% Whole Wheat Bread (Classic 100% Whole Wheat Bread) | • Soy flour removed from ingredients list<br>• "Good source of whole grain" claim removed<br>• Brand was divested and is no longer controlled by BBUSA in California |
| Sara Lee Soft & Smooth Whole Grain White Bread | • "Good source of whole grain" claim removed<br>• Brand was divested and is no longer controlled by BBUSA in California |
| Sara Lee Soft & Smooth 100% Whole Wheat Bread | • "Good source of whole grain" claim removed<br>• Brand was divested and is no longer controlled by BBUSA in California |
| Thomas' Plain Bagel Thins | • American Heart Association ("AHA") Heart Check Mark removed |
| Thomas' 100% Whole Wheat Bagel Thins | • AHA Heart Check Mark removed<br>• Soy flour removed from ingredients list<br>• Product discontinued |
| Thomas' Everything Bagel Thins | • AHA Heart Check Mark removed |
| Bimbo Original Toasted Bread | • Color removed |
| Bimbo Double Fiber Toasted Bread | • Color removed |
| Bimbo 100% Whole Wheat Tortillas | • Discontinued |
| Thomas' Cinnamon Raisin Swirl Toasting Bread | • Color removed |
| Thomas' 100% Whole Wheat Bagels | • Soy flour removed from ingredients list |
| Thomas' 100% Whole Wheat Mini Bagels | • Soy flour removed from ingredients list<br>• Product discontinued |
| Sahara 100% Whole Wheat Pita Pockets | • Soy flour removed from ingredients list<br>• Product discontinued |
| Thomas' 100% Whole Wheat English Muffins | • Soy flour removed from ingredients list[2] |

In addition to the specific changes listed in the preceding chart and in §4.4 of the Agreement, BBUSA agrees that, for a period of two (2) years from the Settlement Effective Date, and subject to

---

[2] This chart is set forth in § 4.4 of the Settlement Agreement.

a confidentiality order, BBUSA will advise a designated representative of Class Counsel[3] of any changes to the products' labels as soon as reasonably practicable (the "Notice") to the extent they relate to the products' labeling in California as follows:

> (a) For the "Whole Grain" Products: Any labeling statement that a product is a "good source of whole grain" or an "excellent source of whole grain";

> (b) For the "100% Whole Wheat" Products: Any change to the product formulation to include "soy flour" as an ingredient;

> (c) For the "Added Coloring" Products: Any change to the product formulation to include "coloring" as an ingredient.

*See* Agr. at §4.7. Class Counsel shall then have fifteen (15) days from the date of Notice to inform BBUSA of any objection to that labeling change. *Id.* at §4.7. The parties will amicably and in good faith attempt to resolve all disputes over labeling changes on an informal basis; that is, without litigation or Court intervention. *Id.*

### C. Class Representatives' Application for Incentive Award

The Settlement contemplates that Class Counsel will request an Incentive Award to be paid out of the Settlement Payment to Plaintiff Alex Ang and Plaintiff Lynn Streit for their efforts in litigating this Action, regularly communicating with Class Counsel, producing documents in discovery, sitting for depositions, and cooperating with Class Counsel to oppose BBUSA's motion for terminating sanctions based on spoliation of evidence. BBUSA does not oppose the requested incentive award payment to Plaintiffs. Class Counsel hereby requests the Court approve payment in the amount of $10,000 to each Plaintiff, payable solely from the Settlement Payment, and to be paid at the same time as the attorneys' fees and costs payments are made to Class Counsel. While a $5,000 incentive award is generally considered "presumptively reasonable"[4], courts within California and the

---

[3] The Agreement provides that such designated representatives will be Ben F. Pierce Gore of Pratt & Associates, and Keith M. Fleischman and Joshua D. Glatter of Fleischman Bonner & Rocco LLP. *See* Agr. at § 11.11.

[4] *Austin v. Foodliner, Inc.,* 2019 U.S. Dist. LEXIS 79638, *20 (N.D. Cal. May 10, 2019) (collecting cases).

Ninth Circuit have approved similar awards the size of that requested by Plaintiffs.[5] Given the service

that Plaintiffs have provided to the Class, the requested Incentive Awards should be approved.

### D. Attorneys' Fees and Litigation Costs

"In a certified class action, the court may award reasonable attorney's fees and nontaxable

costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). As described

above, and to the extent approved by the Court, BBUSA has agreed to pay the total sum of $325,000

as consideration for the Settlement. After compensating the class representatives with an Incentive

Award, the remainder will be used as payment for attorneys' fees and the costs of litigation. The

parties and their counsel will bear all other fees and costs incurred in relation to the litigation or the

drafting, approval, and implementation of the Settlement and the Agreement. BBUSA has agreed not

to oppose any motion for attorneys' fees and costs that do not exceed the $325,000 Settlement

Payment. Class Counsel are seeking an award of attorneys' fees substantially less than Class Counsel's

lodestar, which, as of December 12, 2019, was around $987,531.73—covering 2,178 hours of work—

and an additional $86,456.65 in expenses. The Settlement Payment amount is fair and reasonable and

should be preliminarily approved. *See Grant v. Capital Mgmt. Servs., L.P.*, 2013 U.S. Dist. LEXIS 174190,

*3 (S.D. Cal. Dec. 11, 2013) (granting preliminary approval in an injunctive relief only class action

settlement where class counsel requested $475,000 in attorneys' fees and costs); *Lilly v. Jamba Juice Co.*,

2015 U.S. Dist. LEXIS 58451, *14-16 (N.D. Cal. May 1, 2015) (same, where requested amount was

$425,000); *Sciortino v. PepsiCo, Inc.*, 2016 U.S. Dist. LEXIS 83937, *21-22 (N.D. Cal. Jun. 28, 2016)

(same, where requested amount was $500,000 and was later approved in a separate order).

### E. Notice to the Settlement Class Members

"When a class is certified under Rule 23(b)(2) and only provides for injunctive relief, no notice

is required." *Grant*, 2013 U.S. Dist. LEXIS 174190, at *15 (citing to *Kim v. Space Pencil, Inc.*, 2012 U.S.

---

[5] *See Id.,* at *20-21; *Black v. T-Mobile USA, Inc.*, 2019 U.S. Dist. LEXIS 123676, *22 (N.D. Cal. Jul. 24, 2019) (approving $10,000 incentive award); *McDonald v. CP OpCo, LLC*, 2019 U.S. Dist. LEXIS 80501, *21-23 (N.D. Cal. May 13, 2019) (same); *Villegas v. J.P. Morgan Chase & Co.*, 2012 U.S. Dist. LEXIS 166704, *19-20 (N.D. Cal. Nov. 20, 2012) (same); *Gil v. Sf Peninsula Gme*, 2014 Cal. Super. LEXIS 9178, *5 (Sup. Ct., San Mateo Cnty. Jan. 27, 2014) (approving $10,000 incentive award in settlement for injunctive relief only).

Dist. LEXIS 169922, *4 (N.D. Cal. Nov. 28, 2012)); *Kline v. Dymatize Enters., LLC*, 2016 U.S. Dist. LEXIS 142774, *17 (S.D. Cal. Oct. 13, 2016) (same). Because the Class Certification Order only certified a class for injunctive relief pursuant to Rule 23(b)(2) and does not certify a class with respect to monetary remedies or other equitable relief by any Class Member, the parties agree that notice and opt-out rights do not apply and are therefore not necessary. *See* Fed. R. Civ. P. 23(c)(2)(A). The parties further agree that notice in this case would be cost prohibitive. Moreover, given that the challenged labels have already been removed or altered and/or the challenged products reformulated, burdening the parties with publishing or transmitting notice would be a somewhat moot act and, so, the burden of having to do so would far outweigh any benefit. If the Court determines that any type of notice to the Class Members is necessary, each party shall have the unilateral option to withdraw from the Settlement and the Agreement, without prejudice. The parties have agreed to meet and confer in good faith to discuss the matter in the unlikely event that the Court requires publishing notice of any type.

**F. Scope of Release**

Under the terms of the Agreement, the parties release each other from any and all causes of action or claims in any form that have been brought or could have been brought that arise out of or in any way relate to the Claims. The full release language is set forth in §8 of the Settlement Agreement.

## ARGUMENT

As a matter of public policy, settlement is a strongly favored method for resolving disputes. *See Utility Reform Project v. Bonneville Power Admin.*, 869 F.2d 437, 443 (9th Cir. 1989). This is particularly true with class actions, where, as here, "substantial resources can be conserved by avoiding the time, cost, and rigors of formal litigation." *Fontes v. Heritage Operating, L.P.*, 2016 U.S. Dist. LEXIS 50502, *7 (S.D. Cal. Apr. 14, 2016) (citation omitted); *see also In re Synoc ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008) (Public policy "strong[ly] … favors settlements, particularly where complex class action litigation is concerned."); *Franklin v. Kaypro Corp.*, 884 F.2d 1222, 1229 (9th Cir. 1989) ("[O]verriding public interest in settling and quieting litigation" is "particularly true in class action suits." (internal quotations omitted)).

Rule 23(e) requires Court approval before the claims, issues, or defenses of a certified class can be settled, voluntarily dismissed, or compromised. Fed. R. Civ. P. 23(e). The purpose of this rule "is to protect the unnamed members of the class from unjust or unfair settlements affecting their rights." *In re Synoc.*, 516 F.3d at 1100. Accordingly, if a settlement is "fundamentally fair, adequate, and reasonable," it must be approved. *In re Heritage Bond Litig.*, 546 F.3d 667, 674-675 (9th Cir. 2008); *see also In re Wireless Facilities, Inc. Secs. Litig. II*, 253 F.R.D. 607, 610 (S.D. Cal. 2008) ("Settlements that follow sufficient discovery and genuine arms-length negotiation are presumed fair.").

## I. The Settlement is Fair, Reasonable, and Adequate

As indicated above, Rule 23(e) requires judicial approval of a proposed class action settlement based on a finding that the agreement is "fair, reasonable, and adequate." *Lane v. Facebook, Inc.*, 696 F.3d 811, 818 (9th Cir. 2012). The proposed settlement "need not be ideal, but it must be fair and free of collusion, consistent with a plaintiff's fiduciary obligations to the class." *Lilly v. Jamba Juice Co.*, 2015 U.S. Dist. LEXIS 34498, *18-19 (N.D. Cal. Mar. 18, 2015). Courts within this District have granted preliminary approval where the proposed settlement: "(1) appears to be the product of serious, informed, non-collusive negotiations; (2) does not grant improper preferential treatment to class representatives or other segments of the class; (3) falls within the range of possible approval; and (4) has no obvious deficiencies." *McDonald v. CP OpCo, LLC*, 2019 U.S. Dist. LEXIS 13376, *16 (N.D. Cal. Jan. 28, 2019) (citing *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007)).

### A. The Settlement Agreement Resulted From Serious, Informed, Non-Collusive, Arms-Length Negotiation

When settlement agreements are reached after hard-fought litigation and arms-length negotiations among experienced counsel they are "entitled to an initial presumption of fairness." *In re High-Tech Employee Antitrust Litig.*, 2013 U.S. Dist. LEXIS 180530, *6-7 (N.D. Cal. Oct. 30, 2013) (internal quotations and citations omitted). As previously discussed, this Action consisted of a lengthy litigation period involving the depositions of both Plaintiffs, production and review of thousands of documents, exchange of expert reports, deposing BBUSA's Rule 30(b)(6) designee, and extensive

briefing on motions seeking dismissal, spoliation sanctions, and class certification.  The parties have therefore had a genuine opportunity to consider various rulings of the Court, take meaningful discovery and gauge the feasibility and benefits of settlement versus continued litigation.  *See In re Wireless Facilities*, 253 F.R.D. at 610 (settlements that follow sufficient discovery and genuine arms-length negotiation are presumed fair); *White v. Experian Info. Sols., Inc.*, 2009 WL 10670553, *13 (C.D. Cal. May 7, 2009) (same).  Furthermore, the Settlement was reached only after a full day of hard-fought mediation before Judge Pro.  *Kline*, 2016 U.S. Dist. LEXIS 142774, *5 ("That the settlement was reached with the assistance of an experienced mediator further suggest that the settlement is fair and reasonable") (citation omitted).

As a result of the parties' efforts, the Court's rulings and the mediator's input, the claims have been substantially investigated and/or are substantially understood so that the parties and their counsel had a reasonable opportunity to candidly assess the merits and weaknesses of the claims and the defenses thereto.[6]  Combined with the mediation conducted by Judge Pro, ample evidence demonstrates that the Settlement reached by the parties was a result of serious, informed, non-collusive, and arms-length negotiation, and thus requires granting preliminary approval.

**B.      The Settlement Agreement Does Not Provide Preferential Treatment**

As the Court denied class certification of Plaintiffs' damages claims, the Agreement provides for no monetary distribution.  Thus, there is no preferential treatment given to any Class Member, nor to the Class Representatives.  Instead, all Class Members benefit from the labeling and/or formulation changes provided for by the Agreement.  *See Hart v. Colvin*, 2016 U.S. Dist. LEXIS 155799, *27 (N.D. Cal. Nov. 9, 2016) ("When … the settlement provides for only injunctive relief … there is no potential for the named plaintiffs to benefit at the expense of the rest of the class") (quotation and citation omitted).

While this motion does seek to authorize $10,000 incentive awards to Plaintiffs Ang and Streit for their role as Class Representatives in the Action, as discussed above, the "Ninth Circuit has

---

[6]  A full list of considerations taken into account by the parties in reaching the Settlement is provided at § 3.1 of the Agreement.

recognized that service awards to named plaintiffs in a class action are permissible and do not render a settlement unfair or unreasonable." *Harris v. Vector Mktg. Corp.*, 2011 U.S. Dist. LEXIS 48878, *28 (N.D. Cal. Apr. 29, 2011) (citing *Stanton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003)). While a monetary incentive award for the Plaintiffs may be "more valuable than the … injunctive relief received by the unnamed class members," "[i]ncentive payments to class representatives do not, by themselves, create an impermissible conflict between class members and their representatives." *Campbell v. Facebook, Inc.*, 2017 U.S. Dist. LEXIS 132624, *12 (N.D. Cal. Aug. 18, 2017) (quoting *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 943 (9th Cir. 2015)). As discussed above, Plaintiffs Ang and Streit sat for deposition, cooperated with Class Counsel in responding to a motion for alleged spoliation sanctions, were in constant contact with Class Counsel, and secured injunctive relief for the Class; their incentive award, if approved, would be indicative of the efforts they undertook to achieve relief for the Class.[7] Thus, the absence of any preferential treatment supports granting preliminary approval of the Agreement.

### C. The Settlement Falls Within the Range of Possible Approval

"To determine whether a settlement 'falls within the range of possible approval,' a court must focus on 'substantive fairness and adequacy,' and 'consider plaintiffs' expected recovery balanced against the value of the settlement offer.'" *Villegas*, 2012 U.S. Dist. LEXIS 166704, *20 (citing *In re Tableware*, 484 F. Supp. 2d at 1080). Here, BBUSA has altered, changed, or otherwise modified either the labeling of the products at issue or the formulations of those products. Further, BBUSA has agreed—for a period of two (2) years—to notify Class Counsel of any changes to the label statements or formulations of the products at issue, to the extent they relate to those claims referenced in the SAC and listed at § 4.7 of the Agreement, and provide them with an opportunity to object to those changes. In similar circumstances, courts have found such settlements worthy of preliminary approval. *See In re Ferrero Litig.*, 2012 U.S. Dist. LEXIS 94900, *12 (S. D. Cal. July 9, 2012) ("Defendant

---

[7] *See Rivera v. Agreserves, Inc.*, 2016 U.S. Dist. LEXIS 131705, *21 (E.D. Cal. Sept. 26, 2016) (affirming $7,500 award where plaintiff "spent a substantial amount of time assisting counsel and participating in the litigation" including sitting for deposition and being present at mediation); *Bruno v. Quten Research Inst., LLC*, 2013 U.S. Dist. LEXIS 35066, *8 (C.D. Cal. Mar. 13, 2013 (affirming $8,000 award where plaintiff "submitted to depositions, investigations, and an involved litigation schedule").

1  agreed to modify the product label to address the fundamental claim raised in Plaintiffs' complaint …

2  The Court concludes that the proposed settlement provides an appropriate remedy to class members.

3  It both takes into account the strength of Defendant's defenses and obstacles to class-wide recovery,

4  while also addressing the concerns in Plaintiff's complaint"), *aff'd* 583 Fed. Appx. 665 (9th Cir. 2014).[8]

5      The agreed-upon relief negotiated with Judge Pro's assistance in this case was the product of

6  arms-length negotiations, conducted after considerable litigation and discovery, resulting in significant

7  injunctive relief that reflects tangible value to the Class Members.  When comparing this relief to

8  Plaintiffs' expected recovery—taking into account that no Rule 23(b)(3) class was certified and that

9  BBUSA intended to bring a motion for summary judgment on the merits of the Plaintiffs' claims—

10 the Agreement clearly provides substantial value to the Class.  The above showing is enough to

11 determine that the Settlement falls within the range of possible approval.[9]

12     **D.     The Agreement Has No Deficiencies**

13     A court will likely find a settlement agreement free from obvious deficiencies when it provides

14 immediate injunctive relief while at the same time mitigates the potential uncertainties in continuing

15 litigation.[10]  Here, while the Court denied certification of Plaintiffs' proposed Rule 23(b)(3) class, it

16 certified a Rule 23(b)(2) Class, and the injunctive relief provided for in the Agreement is significant.

17 Under the terms of the Settlement, the products alleged in the SAC to be mislabeled have either been

18

19  [8]  *See also Carr v. Tadin, Inc.*, 2014 U.S. Dist. LEXIS 179835, *15-16 (S.D. Cal. Apt. 18, 2014) (granting
20  preliminary approval of settlement with no monetary relief, but where "the injunctive relief offered
    will provide the Settlement Class with the relief they most desire—a change in product labeling.");
21  *Johnson v. Triple Leaf Tea, Inc.*, 2015 U.S. Dist. LEXIS 170800, *12-13 (N.D. Cal. Nov. 16, 2015)
    (granting final approval, noting "[t]he Settlement affords meaningful injunctive relief" where "the
22  labeling of the Products shall be substantially revised").

23  [9]  *See Dennis v. Kellogg Co.*, 2013 U.S. Dist. LEXIS 64577, *13 (S. D. Cal. May 3, 2013) ("[P]roposed
    settlement appears to fall within the range of possible approval" where "it appears to be the product
24  of arms-length negotiations by experienced counsel, was reached after considerable litigation and
    discovery into the asserted claims, and provides … relief").
25

26  [10]  *See Stathakos v. Columbia Sportswear Co.*, 2018 U.S. Dist. LEXIS 17138, *13-14 (N.D. Cal. Jan. 25,
    2018) (approving settlement where "continued litigation could not result in any greater injunctive
27  relief to the class and would only deprive the class of immediate relief"); *In re Tableware*, 484 F. Supp.
    2d at 1080 ("Based on th[e] risk and the anticipated expense and complexity of further litigation, the
28  court cannot say that the proposed settlement is obviously deficient").

reformulated or their labels have been changed, providing an immediate benefit to the entire Class. The Agreement also provides for mechanisms and procedures to address any future label changes, including providing notice to Class Counsel and an objection process. Moreover, the Agreement has no "obvious substantive defects such as … overly broad releases of liability." *Newberg on Class Actions* § 13:15 (5th ed. 2014). Consequently, the absence of any deficiencies supports approving the Settlement.

## II.   The Risk, Expense, Complexity, and Duration of Further Litigation

The parties agree that the likely expense, complexity, duration, and risk involved in further litigation strongly favor resolution through the Agreement, resulting in prompt injunctive relief and an all-inclusive payment. *See Kline*, 2016 U.S. Dist. LEXIS 142774, *13-14 ("[W]hile confident in the merits of their case, Plaintiffs are cognizant of the inherent risks of lengthy litigation … The proposed settlement adequately accounts for these risks"); *Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 489 (E.D. Cal. 2010) (in weighing the risk of future litigation, "a court may consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation") (internal quotation marks omitted).

As discussed above, Plaintiffs alleged in the SAC that BBUSA violated the Food, Drug and Cosmetic Act, Food and Drug Administration regulations, and California's Sherman Law by intentionally labeling certain of its products with misrepresentations to increase sales by implying that its products are healthier or of better quality than competing products. BBUSA has denied these allegations, arguing that Plaintiffs cannot show the product labels in question were misleading or violated any laws or regulations, and that Plaintiffs lack standing to pursue injunctive relief claims as they failed to produce evidence that they purchased products containing the labeling statements and therefore have not suffered any injury causally connected to the alleged mislabeling of products. The parties' experts have prepared reports on the purchasing decisions of consumers and what affect—if any—this labeling would have, and plan to offer similar testimony should the litigation continue.

The attendant costs associated with paying dueling experts, continuing motion practice and

discovery, and proceeding through litigation are not preferable to the prompt injunctive relief and all-inclusive payment the Settlement provides. The failure to reach settlement—in addition to the cost associated with further litigation—would raise considerable risks associated with the parties' positions, including the risk that the Rule 23(b)(2) class would be de-certified, that a motion for summary judgment on the merits would be granted, that the Court or a jury would disagree on materiality or that, after resolution, the Action would be appealed.[11] Because of these factors and the parties' joint desire to resolve this matter by the terms outlined in the Agreement, the Court should preliminarily approve the Settlement.

## III. Counsel's Experienced Judgment and Views

"The recommendations of plaintiff['s] counsel should be given a presumption of reasonableness" when contemplating the preliminary approval of a proposed settlement. *Knight v. Red Door Salons, Inc.*, 2009 U.S. Dist. LEXIS 11149, *11 (N.D. Cal. Feb. 2, 2009) (citation omitted). Here, Class Counsel has substantial experience in class action litigation and, in particular, with class action litigation specific to California's consumer protection statutes and false labeling laws. The opinion of experienced counsel supporting the settlement is entitled to considerable weight.[12] With regard to the terms and conditions of the Agreement, Class Counsel's experienced judgment and views, which guided their decision in drafting and negotiating the relief contained within, and which were informed by the guidance and perspective of mediator Judge Pro, should be taken into account in the Court's consideration of this joint motion.

---

[11] *See Oula Zakaria v. Gerber Prods. Co.*, 2017 U.S. Dist. LEXIS 221124, *62 (C.D. Cal. Aug. 9, 2017) (decertifying class after finding plaintiff failed to provide an adequate basis to calculate restitution and actual damages), *aff'd* 2018 U.S. App. LEXIS 32240 (9th Cir. Nov. 14, 2018); *Weigele v. Fedex Ground Package Sys.*, 2010 U.S. Dist. LEXIS 33305, *32 (S.D. Cal. Apr. 5, 2010) (decertifying class after concluding predominance was lacking); *Bruton v. Gerber Prods. Co.*, 2017 U.S. App. LEXIS 12833, *1 (9th Cir. Jul. 17, 2017) (reversing dismissal of plaintiffs' unjust enrichment/quasi-contract claim, reversing denial of class certification, and, *inter alia*, reversing decision to grant defendant summary judgment on plaintiffs' claims that the product labels were unlawful under the UCL).

[12] *See Kirkorian v. Borelli*, 695 F. Supp. 446 (N.D. Cal. 1988); *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal. 1979) (recommendations of plaintiffs' counsel should be given a presumption of reasonableness); *Carter v. Anderson Merch., LP*, 2010 U.S. Dist. LEXIS 55581, *8 (C.D. Cal. May 11, 2010) ("Counsel's opinion is accorded considerable weight").

## CONCLUSION

The parties agree that the Agreement is in their mutual best interests and will conserve resources and promote judicial efficiency and economy, while at the same time providing meaningful benefits to the Class. Furthermore, each party has taken into account the investigation of the claims, the orders of the Court and the uncertainties, delays, expenses, and exigencies of the litigation process in reaching this conclusion. For the reasons set forth in this joint motion, the parties respectfully request the Court: (1) grant preliminary approval of the Settlement; (2) waive notice requirements; (3) schedule the final approval hearing; and (4) grant such other relief as the Court deems just and proper.

Dated: December 13, 2019                              Respectfully submitted,

  /s/ Keith M. Fleischman                               /s/ Mark C. Goodman

Keith M. Fleischman (admitted pro hac vice)            Mark C. Goodman (Bar No. 154692)

Joshua D. Glatter (admitted pro hac vice)              Anne. Kelts Assayag (Bar No. 298710)

FLEISCHMAN BONNER & ROCCO LLP                          BAKER & MCKENZIE LLP

81 Main Street, Suite 515                              Two Embarcadero Center, Suite 1100

White Plains, New York 10601                           San Francisco, California 94111

Tel: 914.278.5100                                      Tel: 415.576.3080

Fax: 917.591.5245                                      Fax: 415.374.2499

kfleischman@fbrllp.com                                 mark.goodman@bakermckenzie.com

jglatter@fbrllp.com                                    anne.assayag@bakermckenzie.com

Ben F. Pierce Gore (Bar No. 128515)                    *Attorneys for Defendant*

PRATT & ASSOCIATES

1871 The Alameda, Suite 425

San Jose, California 95126

Tel: 408.429.6506

pgore@prattattorneys.com

*Attorneys for Plaintiffs*