UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALEX ANG, et al.,<br><br>        Plaintiffs,<br><br>v.<br><br>BIMBO BAKERIES USA, INC.,<br><br>        Defendant. | Case No. 13-cv-01196-HSG<br><br>**ORDER GRANTING RENEWED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Re: Dkt. No. 235 |

Pending before the Court is the renewed motion for preliminary approval of class action settlement filed by Plaintiffs Alex Ang and Lynn Streit. Dkt. No. 235. The parties have reached a settlement regarding Plaintiffs' claims and now seek the required court approval. The Court finds this matter appropriate for disposition without oral argument and the matter is deemed submitted. *See* Civil L.R. 7-1(b). For the reasons detailed below, the Court **GRANTS** Plaintiffs' motion for preliminary approval of class action settlement.

## I. BACKGROUND

### A. Factual Background

Plaintiffs bring this consumer class action against Defendant Bimbo Bakeries, Inc. alleging that Defendant misbranded its baked goods. *See generally* Dkt. No. 40 ("SAC"). Plaintiffs allege that Defendant owns and has distributed products under various brands, including Arnold, Ball Park, Bimbo, Boboli, Brownberry, Earthgrains, Entenmann's, Francisco, Freihofer's, Marinela, Mrs. Baird's, Oroweat, Sara Lee, Stroehmann, Thomas', and Tia Rosa. *See id.* at ¶ 1. According to the complaint, many of Defendant's products are sold with false, misleading and deceptive labeling. Specifically, Plaintiffs allege that they purchased food products manufactured and sold by Defendant that improperly: (1) applied the American Heart Association's "Heart-Check Mark"

without acknowledging that the mark is a paid endorsement; (2) labeled products as a "good" or "excellent source of whole grain"; (3) labeled products as "bread," even though they contain added coloring; and (4) labeled products as "100% Whole Wheat," even though they were made with non-whole wheat flour. *See id.* at ¶ 4; *see also* Dkt. No. 58 (Order Granting in Part Motion to Dismiss Amended Complaint, narrowing products at issue).

Based on these allegations, Plaintiffs sought injunctive relief and statutory damages, alleging violations of California's Unfair Competition Law ("UCL), Cal. Bus. & Prof. Code §§ 17200 *et seq.*; the California False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500 *et seq.*; and the Consumers Legal Remedies Act ("CLRA"), Cal. Civil Code §§ 1750 *et seq.* *See* SAC at ¶¶ 32–40. Plaintiffs also sought to represent four separate classes corresponding to these violations that include all California consumers who bought the same products (or products substantially similar to the products) that they purchased at any time from March 18, 2009, to the present. *See* Dkt. No. 102.

### B. Procedural History

Plaintiffs initially filed this action on March 18, 2013. *See* Dkt. No. 1. Plaintiffs filed the operative second amended complaint on November 4, 2013. *See* Dkt. No. 40. On March 13, 2014, the Court granted in part Defendant's motion to dismiss the SAC, narrowing the claims for which Plaintiffs could seek relief. *See* Dkt. No. 58. Defendant answered the SAC on April 2, 2014. Dkt. No. 64. On March 31, 2016, the Court stayed this action pending the resolution of third-party appeals involving legal questions at issue in this case. Dkt. No. 164. On January 5, 2018, in response to an order to show cause, Dkt. No. 171, the parties jointly moved to lift the stay, Dkt. No. 172, and the Court granted the request, Dkt. No. 174. Following the stay, on August 31, 2018, the Court granted Plaintiffs' motion for class certification as to all four classes under Federal Rule of Civil Procedure 23(b)(2). *See* Dkt. No. 186 ("Class Certification Order"). However, the Court denied certification of a damages class under Rule 23(b)(3). *Id.* at 18, 28. The Court appointed named Plaintiffs as the Class Representatives and appointed Fleischman Law Firm, PLLC and Barrett Law Group, P.A. as co-lead counsel, and Pratt & Associates as local counsel (collectively, "Class Counsel"). *Id.* at 28–29.

On July 31, 2019, the parties engaged in an all-day mediation before the Hon. Philip M. Pro (Ret.), former Chief Judge for the United States District Court for the District of Nevada, now a professional mediator with JAMS. *See* Dkt. No. 217 at 4. Through these efforts, the parties reached settlement, formally executing the settlement agreement in December 2019. *Id.*; *see also* Dkt. No. 217-2, Ex. 1. Plaintiffs then filed an unopposed motion for preliminary settlement approval on December 13, 2019. *See* Dkt. No. 217.

During the hearing on the motion for preliminary settlement approval, the Court raised several concerns about the scope of the proposed release and the lack of notice to absent class members. *See* Dkt. No. 225. As initially drafted, the release contained claims that the Court did not certify in its Class Certification Order. *See id.* at §§ 1.2, 8.2. Moreover, although absent class members would be giving up significant legal rights under the proposed settlement, the parties argued that notice was not required because of the nature of the injunctive relief. *See* Dkt. No. 217 at 7–8. The Court provided the parties with several opportunities to address these concerns. *See* Dkt. Nos. 223, 227, 230. However, the parties appeared reluctant to provide absent class members with meaningful notice of the terms of the settlement, and the Court ultimately denied the motion for preliminary approval on this basis. *See* Dkt. No. 232. On April 17, 2020, the parties filed a renewed motion for preliminary approval. *See* Dkt. No. 235.

### C. Revised Settlement Agreement

In support of their renewed motion, the parties have included a revised settlement agreement for the Court's consideration. *See* Dkt. No. 235-2, Ex. A ("SA"). The key terms of the parties' revised settlement are as follows:

Class Definition: The Settlement Class mirrors the Court's Class Certification Order, and is defined as such:

> All persons or entities who or that made purchases in California of any [Defendant] products identified in the Class Certification Order.

SA § 1.7

Settlement Benefits: The settlement agreement provides for injunctive relief altering the product labeling statements and formulations challenged in the SAC. *See* SA § 4.4. Specifically,

3

1  Defendant certifies that it has made the following changes:

| Product Name | Changes Made |
|---|---|
| Oroweat Dark Rye Bread | • Color removed |
| Oroweat Sweet Hawaiian Bread | • Color removed |
| Sara Lee 100% Whole Wheat Bread (Classic 100% Whole Wheat Bread) | • Soy flour removed from ingredients list<br>• "Good source of whole grain" claim removed<br>• Brand was divested and is no longer controlled by BBUSA in California |
| Sara Lee Soft & Smooth Whole Grain White Bread | • Good source of whole grain" claim removed<br>• Brand was divested and is no longer controlled by BBUSA in California |
| Sara Lee Soft & Smooth 100% Whole Wheat Bread | • "Good source of whole grain" claim removed<br>• Brand was divested and is no longer controlled by BBUSA in California |
| Thomas' Plain Bagel Thins | • American Heart Association ("AHA") Heart Check Mark removed |
| Thomas' 100% Whole Wheat Bagel Thins | • AHA Heart Check Mark removed<br>• Soy flour removed from ingredients list<br>• Product discontinued |
| Thomas' Everything Bagel Thins | • AHA Heart Check Mark removed |
| Bimbo Original Toasted Bread | • Color removed |
| Bimbo Double Fiber Toasted Bread | • Color removed |
| Bimbo 100% Whole Wheat Tortillas | • Discontinued |
| Thomas' Cinnamon Raisin Swirl Toasting Bread | • Color removed |
| Thomas' 100% Whole Wheat Bagels | • Soy flour removed from ingredients list |
| Thomas' 100% Whole Wheat Mini Bagels | • Soy flour removed from ingredients list<br>• Product discontinued |
| Sahara 100% Whole Wheat Pita Pockets | • Soy flour removed from ingredients list<br>• Product discontinued |

4

| | |
|---|---|
| Thomas' 100% Whole Wheat English Muffins | • Soy flour removed from ingredients list |

*Id.* Defendant further agrees that for a period of two years from the effective date of the settlement, Defendant will advise a designated representative of Class Counsel of any changes to these products' labels as soon as practicable as they relate to:

- For the "Whole Grain" Products:  Any labeling statement that a product is a "good source of whole grain" or an "excellent source of whole grain";
- For the "100% Whole Wheat" Products:  Any change to the product formulation to include "soy flour" as an ingredient;
- For the "Added Coloring" Products:  Any change to the product formulation to include "coloring" as an ingredient.

*See* SA at § 4.7.  Class Counsel will then have 15 days from the date of the notice to inform Defendant of any objection to that labeling change.  *Id.* at § 4.8.  The parties will work in good faith attempt to resolve all disputes.  *Id.*

> Release:  The parties agree to release:
>
>> any and all causes of action, suits, claims, liens, demands, judgments, indebtedness, costs, damages, obligations, attorneys' fees (except as provided for in this Agreement), losses, claims, controversies, liabilities, demands and all other legal responsibilities in any form or nature, whether known or unknown, asserted or unasserted, under or pursuant to any statute, regulation, common law or equity, which have been brought or could have been brought, are currently pending or were pending, or are ever brought in the future (1) on behalf of the Class, for injunctive, declaratory or other equitable relief that arise out of or in any way relate, directly or indirectly, to the Injunctive Relief Claims[1] prior to the Settlement Effective Date and/or (2) on behalf of Plaintiffs, that arise out of or in any way relate, directly or indirectly, to the Individual Claims[2] prior to the Settlement Effective Date.  Nothing in this Agreement will be considered a waiver of any claims by Plaintiffs or Class Members that arise entirely after the Effective Date.  Plaintiffs and Class Counsel expressly promise and warrant that they are not aware of any such claims at this time of this Settlement Agreement.

---

[1] "'Injunctive Relief Claims' means any Claims for injunctive, declaratory or other equitable relief that were certified for class treatment in the Class Certification Order."  SA at § 1.14.
[2] "'Individual Claims' means any Claims brought by or that could have been brought by Plaintiffs on their own behalves in their individual capacities."  SA at § 1.13.

5

SA at § 8.1.  Following entry of final judgment, all class members:

> shall release and forever discharge [Defendant] . . . from any and all manner of action, causes of action, claims, demands, rights, suits, obligations, debts, contracts, agreements, promises, liabilities, damages, charges, losses, costs, expenses and fees, of any nature whatsoever, known or unknown, in law or equity, fixed or contingent, for injunctive, declaratory or other equitable relief relating to or arising out of the Injunctive Relief Claims.

SA at § 8.2.  And following entry of final judgment, the named Plaintiffs:

> shall release and forever discharge [Defendant] . . . from any and all manner of action, causes of action, claims, demands, rights, suits, obligations, debts, contracts, agreements, promises, liabilities, damages, charges, losses, costs, expenses and fees, of any nature whatsoever, known or unknown, in law or equity, fixed or contingent, relating to or arising out of the Individual Claims.

SA at § 8.3.  In addition, the parties:

> expressly waive and relinquish, to the fullest extent permitted by law, the provisions, rights and benefits of section 1542 of the California Civil Code, and any other similar provision under federal or state law. Section 1542 provides:
>
>> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS, THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULDHAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

*Id*. at § 8.4.

<u>Settlement Payment</u>:  Defendant agrees that as part of the settlement, it shall make available $325,000 that must be used, pending Court approval, to compensate Class Counsel for attorneys' fees and costs, and for incentive payments to the Class Representatives for their service in this case.  SA at § 4.14.  No other monetary relief is available to the class.

<u>Incentive Award</u>:  Plaintiffs as Class Representatives may apply for incentive award of no more than $10,000 each.  SA at § 4.14.

<u>Attorneys' Fees and Costs</u>:  Class Counsel may file an application for attorneys' fees not to exceed $325,000.  SA at § 4.14.

## II. CLASS CERTIFICATION

Here, the settlement class is coextensive with the Class Certification Order, including "[a]ll persons or entities who or that made purchases in California of any [Defendant] products identified in the Class Certification Order." *See* SA § 1.7. Because no facts that would affect the Court's reasoning have changed since the Court's Class Certification Order, this order incorporates by reference its prior analysis under Rules 23(a) and (b) as set forth in the order certifying the class. *See* Dkt. No 186. In addition, the Court incorporates its previous analysis appointing Plaintiffs as Class Representatives and Fleischman Law Firm, PLLC, Barrett Law Group, P.A., and Pratt & Associates as Class Counsel. *Id.* at 28–29.

## III. PRELIMINARY SETTLEMENT APPROVAL

### A. Legal Standard

Federal Rule of Civil Procedure 23(e) provides that "[t]he claims, issues, or defenses of a certified class—or a class proposed to be certified for purposes of settlement—may be settled . . . only with the court's approval." Fed. R. Civ. P. 23(e). "The purpose of Rule 23(e) is to protect the unnamed members of the class from unjust or unfair settlements affecting their rights." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1100 (9th Cir. 2008). Accordingly, before a district court approves a class action settlement, it must conclude that the settlement is "fundamentally fair, adequate and reasonable." *In re Heritage Bond Litig.*, 546 F.3d 667, 674–75 (9th Cir. 2008).

Courts may preliminarily approve a settlement and notice plan to the class if the proposed settlement: (1) appears to be the product of serious, informed, non-collusive negotiations; (2) does not grant improper preferential treatment to class representatives or other segments of the class; (3) falls within the range of possible approval; and (4) has no obvious deficiencies. *In re Lenovo Adware Litig.*, No. 15-MD-02624-HSG, 2018 WL 6099948, at *7 (N.D. Cal. Nov. 21, 2018). Courts lack the authority, however, to "delete, modify or substitute certain provisions. The settlement must stand or fall in its entirety." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998).

//

//

### B. Analysis

#### i. Evidence of Conflicts and Signs of Collusion

The first factor the Court considers is whether there is evidence of collusion or other conflicts of interest. *See Roes*, 944 F.3d at 1049. The Ninth Circuit has directed district courts to look for "subtle signs of collusion," which include whether counsel will receive a disproportionate distribution of the settlement, whether the parties negotiate a "'clear sailing' arrangement (i.e., an arrangement where defendant will not object to a certain fee request by class counsel)," and whether the parties agree to a reverter that returns unclaimed funds to the defendant. *Id*.

As discussed above, the Settlement Agreement contains a clear sailing arrangement, which states that Defendant "agrees not to oppose any motion for attorneys' fees and costs to Class Counsel." SA at § 4.14.

#### a. Clear Sailing Provision

Clear sailing provisions are not prohibited, though they "'by [their] nature deprive[] the court of the advantages of the adversary process' in resolving fee determinations and are therefore disfavored." *Id.* at 1050 (quoting *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 949 (9th Cir. 2011)) (alterations in original). The Ninth Circuit has noted that clear sailing arrangements are "important warning signs of collusion," because "'[t]he very existence of a clear sailing provision increases the likelihood that class counsel will have bargained away something of value to the class.'" *Id*. at 1051 (quoting *In re Bluetooth*, 654 F.3d at 948). Accordingly, when confronted with a clear sailing provision, the district court has a heightened duty to "scrutinize closely the relationship between attorneys' fees and benefit to the class, being careful to avoid awarding 'unreasonably high' fees simply because they are uncontested." *Id.* (quotation omitted).

Here, counsel may request fees and costs of up to $325,000, and Defendant agrees not to oppose the motion. *See* SA at § 4.14. However, such fees and costs, even were the Court to award them in their entirety, do not diminish the recovery to the class members under the settlement. Rather, the relief to the class is wholly injunctive. The Court nevertheless recognizes that class counsel assumed substantial risk in litigating this action on a on a contingency fee basis, and incurring costs without the guarantee of payment for its litigation efforts. The proposed

settlement merely underscores this risk, as counsels' requested attorneys' fees represent just a fraction of the approximately $990,000 in fees and $86,000 in costs they say they have incurred in this case. *See* Dkt. No. 217 at 7. Under the circumstances, the Court does not find it unreasonable that counsel may request attorneys' fees of up to $325,000. The Court is cognizant of its obligations to review class fee awards with particular rigor, and at the final approval stage will carefully scrutinize the circumstances and determine what attorneys' fees award is appropriate in this case. Accordingly, given that any attorneys' fees will not diminish the class recovery, the Court does not find that the clear sailing provision weighs against preliminary approval.

### b. Preferential Treatment

The Court next considers whether the settlement agreement provides preferential treatment to any class member. The Ninth Circuit has instructed that district courts must be "particularly vigilant" for signs that counsel have allowed the "self-interests" of "certain class members to infect negotiations." *In re Bluetooth*, 654 F.3d at 947. For that reason, courts in this district have consistently stated that preliminary approval of a class action settlement is inappropriate where the proposed agreement "improperly grant[s] preferential treatment to class representatives." *Lenovo*, 2018 WL 6099948, at *8 (citation and quotations omitted).

Although the Settlement Agreement authorizes Plaintiffs to seek incentive awards of no more than $10,000 for their role in this lawsuit, *see* SA at § 4.14, the Court will ultimately determine whether they are entitled to such an award and the reasonableness of the amount requested. Incentive awards "are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action." *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 958–59 (9th Cir. 2009). Plaintiffs must provide sufficient evidence to allow the Court to evaluate the awards "individually, using 'relevant factors includ[ing] the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, . . . [and] the amount of time and effort the plaintiff expended in pursuing the litigation . . . .'" *Stanton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003). The Court will consider the evidence presented at the final fairness hearing and evaluate the reasonableness of any incentive award request. Nevertheless, because incentive

9

awards are not per se unreasonable, the Court finds that this factor weighs in favor of preliminary approval. *See Rodriguez*, 563 F.3d at 958 (finding that "[i]ncentive awards are fairly typical in class action cases" and "are discretionary" (emphasis omitted)).

### ii. Settlement within Range of Possible Approval

The third factor the Court considers is whether the settlement is within the range of possible approval. To evaluate whether the settlement amount is adequate, "courts primarily consider plaintiffs' expected recovery balanced against the value of the settlement offer." *Lenovo*, 2018 WL 6099948, at *8. This requires the Court to evaluate the strength of Plaintiffs' case.

Here, the settlement includes changing the labels and, in some instances, the ingredients, of several of Defendant's baked goods. *See* SA at §§ 4.4–4.8. Class Counsel will also be notified any time within the next two years if Defendant makes a relevant change to their labels. *Id.* In the Class Certification Order, the Court only certified the classes under Federal Rule of Civil Procedure 23(b)(2), which provides that Defendant "has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." *See* Fed. R. Civ. P. 23. The Court did not certify any class for monetary damages, and were the case to proceed to trial, the class could only recover injunctive relief. Given the scope of the certified classes, therefore, this settlement accomplishes much if not all of what Plaintiffs could have achieved at trial. Plaintiffs also acknowledge that there is substantial risk if they were to continue to litigate this case through dispositive motions and to trial. Dkt. No. 217 at 11–14. The Court finds that the settlement benefits, given the scope of the case and its accompanying risks, weigh in favor of granting preliminary approval.

### iii. Obvious Deficiencies

The fourth and final factor that the Court considers is whether there are obvious deficiencies in the settlement agreement. The Court finds no obvious deficiencies, and therefore finds that this factor weighs in favor of preliminary approval.

\*     \*     \*

Having weighed the relevant factors, the Court preliminarily finds that the settlement agreement is fair, reasonable, and adequate, and **GRANTS** preliminary approval. The Court

**DIRECTS** the parties to include both a joint proposed order and a joint proposed judgment when submitting their motion for final approval.

### IV. CLASS NOTICE

Under Rule 23(c)(2), "any class certified under Rule 23(b)(1) or (b)(2), the court *may* direct appropriate notice to the class." *See* Fed. R. Civ. P. 23 (emphasis added). The Court has "broad power and discretion vested in it by [Rule 23]" to determine the contours of appropriate class notice. *See Reiter v. Sonotone Corp.*, 442 U.S. 330, 345 (1979).

Here, the parties have agreed that they will: (1) issue a joint press release; (2) post the proposed notice and key case documents on Class Counsel's public websites; (3) post the proposed notice on Defendant's public website, with links to key case documents on Class Counsel's websites. The notice will be posted in the "Media Inquiries" section of the website, where Defendant posts product recall information; and (4) in accordance with the Class Action Fairness Act, the parties will notify the United States and California Attorneys General of the settlement. *See* Dkt. No. 235 at 3–7. The Court notes that the notice plan does not provide direct notice to consumers. However, the Court understands from the parties that direct notice would be infeasible under the circumstances given the volume of products at issue in this settlement. *See, e.g.*, Dkt. No. 217 at 8. "If the names and addresses of class members cannot be determined by reasonable efforts, notice by publication is sufficient to satisfy the requirements of the due process clause and Rule 23." *Jermyn v. Best Buy Stores*, L.P., No. 08 CIV. 00214 CM, 2010 WL 5187746, at *3 (S.D.N.Y. Dec. 6, 2010) (citing *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 317–18 (1950)). District courts have "broad power and discretion vested in them by [Rule 23]" in determining the contours of appropriate class notice. *See Reiter v. Sonotone Corp.*, 442 U.S. 330, 345 (1979). The Court finds that the parties' proposed notice by publication is still reasonably calculated under the circumstances to apprise all class members of the proposed settlement, and finds in its discretion that the parties' proposed notice plan is appropriate in this case.

With respect to the content of the notice itself, the Court finds that the parties' proposal provides sufficient information about the case and proposed settlement. *See id.* at 4–7; *see also*

11

*Hyundai II*, 926 F.3d at 567 ("Notice is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard") (quotations omitted). It also will provide electronic access to key case documents, including the motion for preliminary approval, motion for final approval of class action settlement, motion for attorneys' fees, and motions for incentive awards, as well as instructions on how to access any other case document. *See* Dkt. No. 235 at 6.

## V. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Plaintiff's renewed motion for preliminary approval of class action settlement. The parties are **DIRECTED** to meet and confer and stipulate to a schedule of dates for each event listed below, which shall be submitted to the Court within seven days of the date of this Order:

| Event | Date |
|---|---|
| Deadline for posting class notice on websites and issuing press release | |
| Filing deadline for attorneys' fees and costs motion | |
| Filing deadline for incentive payment motion | |
| Filing deadline for final approval motion | |
| Deadline for class members to submit objections to motions | |
| Final fairness hearing and hearing on motions | |

**IT IS SO ORDERED.**

Dated: 4/28/2020

HAYWOOD S. GILLIAM, JR.
United States District Judge