United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| ALEX ANG, et al.,<br><br>                    Plaintiffs,<br><br>        v.<br><br>BIMBO BAKERIES USA, INC.,<br><br>                    Defendant. | Case No.  13-cv-01196-HSG<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT, ATTORNEYS' FEES, AND INCENTIVE AWARDS**<br><br>Re: Dkt. No. 241 |

Pending before the Court is the parties' joint motion for final approval of class action settlement and for attorneys' fees, costs, and for an incentive award for the two named Plaintiffs. *See* Dkt. No. 241.  The Court held a final fairness hearing on August 27, 2020.  *See* Dkt. No. 248. For the reasons detailed below, the Court **GRANTS** final approval.  The Court also **GRANTS IN PART** and **DENIES IN PART** Plaintiffs' request for attorneys' fees, costs, and incentive awards.

## I.    BACKGROUND

### A.    Factual Background

Plaintiffs Alex Ang and Lynn Streit bring this consumer class action against Defendant Bimbo Bakeries, Inc. alleging that Defendant misbranded its baked goods.  *See generally* Dkt. No. 40 ("SAC").  Plaintiffs allege that Defendant owns and has distributed products under various brands, including Arnold, Ball Park, Bimbo, Boboli, Brownberry, Earthgrains, Entenmann's, Francisco, Freihofer's, Marinela, Mrs. Baird's, Oroweat, Sara Lee, Stroehmann, Thomas', and Tia Rosa.  *See id.* at ¶ 1.  According to the complaint, many of Defendant's products are sold with false, misleading, and deceptive labeling.  Specifically, Plaintiffs allege that they purchased food products manufactured and sold by Defendant that improperly:  (1) applied the American Heart

Association's "Heart-Check Mark" without acknowledging that the mark is a paid endorsement; (2) labeled products as a "good" or "excellent source of whole grain"; (3) labeled products as "bread," even though they contained added coloring; and (4) labeled products as "100% Whole Wheat," even though they were made with non-whole wheat flour. *See id.* at ¶ 4; *see also* Dkt. No. 58 (Order Granting in Part Motion to Dismiss Amended Complaint, narrowing products at issue).

Based on these allegations, Plaintiffs sought injunctive relief and statutory damages, alleging violations of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 *et seq.*; the California False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500 *et seq.*; and the Consumers Legal Remedies Act ("CLRA"), Cal. Civil Code §§ 1750 *et seq. See* SAC at ¶¶ 32–40. Plaintiffs also sought to represent four separate classes corresponding to these violations that include all California consumers who bought the same products (or products substantially similar to the products that they purchased) at any time from March 18, 2009, to the present. *See* Dkt. No. 102.

### B.    Procedural History

This case has a lengthy history. Plaintiffs initially filed this action on March 18, 2013. *See* Dkt. No. 1. Plaintiffs filed the operative second amended complaint on November 4, 2013. *See* Dkt. No. 40. On March 13, 2014, the Court granted in part Defendant's motion to dismiss the SAC, narrowing the claims for which Plaintiffs could seek relief. *See* Dkt. No. 58. On March 31, 2016, the Court stayed this action pending the resolution of third-party appeals involving legal questions at issue in this case. Dkt. No. 164. On January 5, 2018, in response to an order to show cause, Dkt. No. 171, the parties jointly moved to lift the stay, Dkt. No. 172, and the Court granted the request, Dkt. No. 174. On August 31, 2018, the Court granted Plaintiffs' motion for class certification as to all four classes under Federal Rule of Civil Procedure 23(b)(2). *See* Dkt. No. 186 ("Class Certification Order"). However, the Court denied certification of a damages class under Rule 23(b)(3). *Id.* at 18, 28. The Court appointed named Plaintiffs as the Class Representatives and appointed Fleischman Law Firm, PLLC and Barrett Law Group, P.A. as co-lead counsel, and Pratt & Associates as local counsel (collectively, "Class Counsel"). *Id.* at 28–

United States District Court
Northern District of California

29.

On July 31, 2019, the parties engaged in an all-day mediation.  *See* Dkt. No. 217 at 4.

Through these efforts, the parties reached settlement, formally executing the settlement agreement

in December 2019.  *Id.*; *see also* Dkt. No. 217-2, Ex. 1.  Plaintiffs then filed an unopposed motion

for preliminary settlement approval on December 13, 2019.  *See* Dkt. No. 217.

During the hearing on the motion for preliminary settlement approval, the Court raised

several concerns about the scope of the proposed release and the lack of notice to absent class

members.  *See* Dkt. No. 225.  As initially drafted, the release contained claims that the Court did

not certify in its Class Certification Order.  *See id.* at §§ 1.2, 8.2.  Moreover, although absent class

members would be giving up significant legal rights under the proposed settlement, the parties

argued that notice was not required because of the nature of the injunctive relief.  *See* Dkt. No. 217

at 7–8.  The Court provided the parties with several opportunities to address these concerns.  *See*

Dkt. Nos. 223, 227, 230.  However, the parties appeared reluctant to provide absent class members

with meaningful notice of the terms of the settlement, and the Court ultimately denied the motion

for preliminary approval on this basis.  *See* Dkt. No. 232.  On April 17, 2020, the parties filed a

renewed motion for preliminary approval, which included a revised settlement agreement and a

revised notice plan.  *See* Dkt. No. 235.  As discussed in more detail in Section II.A.ii.b.1 below,

the parties agreed to issue a press release about the settlement and provide further notice on Class

Counsel and Defendant's websites.  *Id.*  The Court granted the renewed motion on April 28, 2020.

*See* Dkt. No. 236.  Following the final fairness hearing, and at the Court's request, Defendant filed

a supplemental declaration attaching the press release.  *See* Dkt. No. 249.

### C.   Revised Settlement Agreement

In response to concerns that the Court raised regarding the scope of the release, the parties

entered into a revised settlement agreement.  *See* Dkt. No. 235-2, Ex. A ("SA").  The key terms of

the parties' revised settlement are as follows:

Class Definition:  The Settlement Class mirrors the Court's Class Certification Order, and

is defined as:

All persons or entities who or that made purchases in California of

1           any [Defendant] products identified in the Class Certification Order.

2  SA § 1.7

3       <u>Settlement Benefits</u>:  The settlement agreement provides for injunctive relief, explaining

4  that Defendant has made the following changes to product labeling and formulations:

| Product Name | Changes Made |
|---|---|
| Oroweat Dark Rye Bread | • Color removed |
| Oroweat Sweet Hawaiian Bread | • Color removed |
| Bimbo Original Toasted Bread | • Color removed |
| Bimbo Double Fiber Toasted Bread | • Color removed |
| Thomas' Cinnamon Raisin Swirl Toasting Bread | • Color removed |
| Thomas' 100% Whole Wheat Bagels | • Soy flour removed from ingredients list |
| Thomas' 100% Whole Wheat English Muffins | • Soy flour removed from ingredients list |
| Thomas' Plain Bagel Thins | • American Heart Association ("AHA") Heart Check Mark removed |
| Thomas' Everything Bagel Thins | • AHA Heart Check Mark removed |
| Bimbo 100% Whole Wheat Tortillas | • Discontinued |
| Sahara 100% Whole Wheat Pita Pockets | • Soy flour removed from ingredients list<br>• Product discontinued |
| Thomas' 100% Whole Wheat Mini Bagels | • Soy flour removed from ingredients list<br>• Product discontinued |
| Thomas' 100% Whole Wheat Bagel Thins | • AHA Heart Check Mark removed<br>• Soy flour removed from ingredients list<br>• Product discontinued |
| Sara Lee 100% Whole Wheat Bread (Classic 100% Whole Wheat Bread) | • Soy flour removed from ingredients list<br>• "Good source of whole grain" claim removed<br>• Brand was divested and is no longer controlled by BBUSA in California |
| Sara Lee Soft & Smooth Whole Grain White Bread | • Good source of whole grain" claim removed<br>• Brand was divested and is no longer controlled by BBUSA in California |
| Sara Lee Soft & Smooth 100% Whole Wheat Bread | • "Good source of whole grain" claim removed<br>• Brand was divested and is no longer controlled by BBUSA in California |

27  *See id.* at § 4.4.  Defendant further agrees that for a period of two years from the effective date of

28  the settlement, Defendant will advise a designated representative of Class Counsel of any changes

United States District Court
Northern District of California

to these products' labels as soon as practicable as they relate to:

- For the "Whole Grain" Products:  Any labeling statement that a product is a "good source of whole grain" or an "excellent source of whole grain";

- For the "100% Whole Wheat" Products:  Any change to the product formulation to include "soy flour" as an ingredient;

- For the "Added Coloring" Products:  Any change to the product formulation to include "coloring" as an ingredient.

*See* SA at § 4.7.  Class Counsel will then have 15 days from the date of the notice to inform Defendant of any objection to that labeling change.  *Id.* at § 4.8.

> Release:  The parties agree to release:

> > any and all causes of action, suits, claims, liens, demands, judgments, indebtedness, costs, damages, obligations, attorneys' fees (except as provided for in this Agreement), losses, claims, controversies, liabilities, demands and all other legal responsibilities in any form or nature, whether known or unknown, asserted or unasserted, under or pursuant to any statute, regulation, common law or equity, which have been brought or could have been brought, are currently pending or were pending, or are ever brought in the future (1) on behalf of the Class, for injunctive, declaratory or other equitable relief that arise out of or in any way relate, directly or indirectly, to the Injunctive Relief Claims[1] prior to the Settlement Effective Date and/or (2) on behalf of Plaintiffs, that arise out of or in any way relate, directly or indirectly, to the Individual Claims[2] prior to the Settlement Effective Date.  Nothing in this Agreement will be considered a waiver of any claims by Plaintiffs or Class Members that arise entirely after the Effective Date.  Plaintiffs and Class Counsel expressly promise and warrant that they are not aware of any such claims at this time of this Settlement Agreement.

SA at § 8.1.  Following entry of final judgment, all class members:

> > shall release and forever discharge [Defendant] . . . from any and all manner of action, causes of action, claims, demands, rights, suits, obligations, debts, contracts, agreements, promises, liabilities, damages, charges, losses, costs, expenses and fees, of any nature whatsoever, known or unknown, in law or equity, fixed or contingent, for injunctive, declaratory or other equitable relief relating to or arising out of the Injunctive Relief Claims.

---

[1] "'Injunctive Relief Claims' means any Claims for injunctive, declaratory or other equitable relief that were certified for class treatment in the Class Certification Order."  SA at § 1.14.

[2] "'Individual Claims' means any Claims brought by or that could have been brought by Plaintiffs on their own behalves in their individual capacities."  SA at § 1.13.

5

United States District Court
Northern District of California

SA at § 8.2.  And following entry of final judgment, the named Plaintiffs:

> shall release and forever discharge [Defendant] . . . from any and all manner of action, causes of action, claims, demands, rights, suits, obligations, debts, contracts, agreements, promises, liabilities, damages, charges, losses, costs, expenses and fees, of any nature whatsoever, known or unknown, in law or equity, fixed or contingent, relating to or arising out of the Individual Claims.

SA at § 8.3.  In addition, the parties:

> expressly waive and relinquish, to the fullest extent permitted by law, the provisions, rights and benefits of section 1542 of the California Civil Code, and any other similar provision under federal or state law. Section 1542 provides:
>
>> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS, THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

*Id*. at § 8.4.

      <u>Settlement Payment</u>:  Defendant agrees that as part of the settlement, it shall make available $325,000 that must be used, pending Court approval, to compensate Class Counsel for attorneys' fees and costs, and for incentive payments to the Class Representatives for their service in this case.  SA at § 4.14.  No monetary relief is available to the class.

      <u>Incentive Award</u>:  Plaintiffs as Class Representatives may apply for incentive awards of no more than $10,000 each, subject to Court approval.  SA at § 4.14.

      <u>Attorneys' Fees and Costs</u>:  Class Counsel may file an application for attorneys' fees not to exceed $325,000, subject to Court approval.  SA at § 4.14.

## II.    DISCUSSION

### A.    Final Settlement Approval

#### i.    Class Certification

      Here, the settlement class is coextensive with the Class Certification Order, including "[a]ll persons or entities who or that made purchases in California of any [Defendant] products identified in the Class Certification Order."  *See* SA § 1.7.  Because no facts that would affect the

1   Court's reasoning have changed since the Court's Class Certification Order and since the Court

2   preliminarily approved the settlement on April 28, 2020, this order incorporates by reference its

3   prior analysis under Rules 23(a) and (b) as set forth in the Class Certification Order.  *See* Dkt. No

4   186.

5             ii.     **The Settlement**

6                     a.  **Legal Standard**

7             "The claims, issues, or defenses of a certified class may be settled . . . only with the court's

8   approval."  Fed. R. Civ. P. 23(e).   The Court may finally approve a class settlement "only after a

9   hearing and on finding that it is fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2); *Officers*

10  *for Justice v. Civil Serv. Comm'n of the City and County of San Francisco*, 688 F.2d 615, 625 (9th

11  Cir. 1982) ("The district court's role in evaluating a proposed settlement must be tailored to fulfill

12  the objectives outlined above.  In other words, the court's intrusion upon what is otherwise a

13  private consensual agreement negotiated between the parties to a lawsuit must be limited to the

14  extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or

15  overreaching by, or collusion between, the negotiating parties . . . ").  To assess whether a

16  proposed settlement comports with Rule 23(e), the Court "may consider some or all" of the

17  following factors:  (1) the strength of plaintiff's case; (2) the risk, expense, complexity, and likely

18  duration of further litigation; (3) the risk of maintaining class action status throughout the trial;

19  (4) the amount offered in settlement; (5) the extent of discovery completed, and the stage of the

20  proceedings; (6) the experience and views of counsel; (7) the presence of a governmental

21  participant; and (8) the reaction of the class members to the proposed settlement.  *Rodriguez v.*

22  *West Publ'g Corp.*, 563 F.3d 948, 963 (9th Cir. 2009); *see also Hanlon*, 150 F.3d at 1026.  "The

23  relative degree of importance to be attached to any particular factor" is case specific.  *Officers for*

24  *Justice*, 688 F.2d at 625.

25          In addition, "[a]dequate notice is critical to court approval of a class settlement under Rule

26  23(e)."  *Hanlon*, 150 F.3d at 1025.  As discussed below, the Court finds that the proposed

27  settlement is fair, adequate, and reasonable, and that Class Members received adequate notice.

28  //

United States District Court
Northern District of California

### b.  Analysis

#### 1.  Adequacy of Notice

Under Federal Rule of Civil Procedure 23(e), the Court "must direct notice in a reasonable manner to all class members who would be bound by the proposal."  Fed. R. Civ. P. 23(e)(1).  The Court has "broad power and discretion vested in it by [Rule 23]" to determine the contours of appropriate class notice.  *See Reiter v. Sonotone Corp.*, 442 U.S. 330, 345 (1979).  Although Rule 23 requires that reasonable efforts be made to reach all class members, it does not require that each class member actually receive notice.  *See Silber v. Mabon*, 18 F.3d 1449, 1454 (9th Cir. 1994) (noting that the standard for class notice under Rule 23(c)(2)(B) is "best practicable" notice, not "actually received" notice).  Moreover, "[i]f the names and addresses of class members cannot be determined by reasonable efforts, notice by publication is sufficient to satisfy the requirements of the due process clause and Rule 23."  *Jermyn v. Best Buy Stores*, L.P., No. 08 CIV. 00214 CM, 2010 WL 5187746, at *3 (S.D.N.Y. Dec. 6, 2010) (citing *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 317–18 (1950)).

The Court finds that the notice and notice plan previously approved by the Court was implemented and complies with Rule 23.  *See* Dkt. No. 236 at 11–12.  The Court ordered the parties to:  (1) issue a joint press release regarding the settlement; (2) post the proposed notice and key case documents on Class Counsel's public websites; (3) post the proposed notice on the "Media Inquiries" section of Defendant's public website, where it generally posts product recall information, with links to key case documents; and (4) in accordance with the Class Action Fairness Act, notify the United States and California Attorneys General of the settlement.  *Id.*  The notice was published by the May 29, 2020, deadline, as anticipated.  *See* Dkt. No. 241 at 7–8; *see also* Dkt. No. 238.

The Court notes that Mr. Edward W. Orr objected to the motion for final settlement approval, and suggested that the parties failed to include the requisite notice on Defendant's website.  *See* Dkt. Nos. 244, 245.  However, the Court was able to confirm independently that Defendant included a working link to the notice on its website.  And during the hearing, defense counsel confirmed that the form and placement of this link had remained the same over the course

of the notice period.[3]  The Court acknowledges that the placement of the link could have been more conspicuous on Defendant's website.  And were this the only notice to absent Class Members, the Court likely would find it insufficient.  Nevertheless, the parties also issued a press release regarding the settlement on May 29, 2020, through GlobeNewswire, a global press release distribution service, for distribution in California.  *See* Dkt. No. 249 at ¶ 3, & Ex. A.  It provided the name of the lawsuit and case number; the nature of the parties' settlement, including how the settlement may affect Class Members' rights; an explanation that Class Members may object to the settlement and the date by which they may do so; the date of the final fairness hearing; and a direct link to Defendant's website, where people could go for more information, including case documents.  *See id.*, Ex. A.  The press release was distributed to various news outlets throughout California, and was even picked up by some out-of-state news outlets.  *See id.* at ¶¶ 4–6, & Exs. B–C.  The press release is also one of the first results when searching for "Bimbo Bakeries Settlement" on Google search.  *See id.* at ¶ 7.  Although the precise reach of the press release is unknown, GlobeNewswire estimated the potential reach of the press release as over 121 million people.  *See id.*, Ex. B.  In light of these facts, the Court finds that the parties have sufficiently provided the best practicable notice to the Class Members.

## 2.   Fairness, Adequacy, and Reasonableness

Having found the notice procedures adequate under Rule 23(e), the Court next considers whether the entire settlement comports with Rule 23(e).

### a.   Strength of Plaintiffs' Case and Litigation Risk

Approval of a class settlement is appropriate when plaintiffs must overcome significant barriers to make their case.  *Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 851 (N.D. Cal. 2010).  Courts "may presume that through negotiation, the Parties, counsel, and mediator arrived at a reasonable range of settlement by considering Plaintiff's likelihood of recovery."  *Garner v. State Farm Mut. Auto. Ins. Co.*, No. 08-cv-1365-CW, 2010 WL 1687832, at *9 (N.D.

---

[3] Counsel also explained during the hearing that when they learned that Mr. Orr indicated that he had trouble accessing the case documents online, they sent him physical copies to review, and said they were available to answer any questions he might have.

United States District Court
Northern District of California

1     Cal. Apr. 22, 2010).  Additionally, difficulties and risks in litigating weigh in favor of approving a

2     class settlement.  *Rodriguez*, 563 F.3d at 966.  "Generally, unless the settlement is clearly

3     inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with

4     uncertain results." *Ching v. Siemens Indus., Inc.*, No. 11-cv-04838-MEJ, 2014 WL 2926210, at *4

5     (N.D. Cal. June 27, 2014) (quotations omitted).

6          The Court finds that the settlement is reasonable in light of the substantial risk Plaintiffs

7     would face in litigating the case given the nature of the asserted claims.  Plaintiffs allege that

8     certain of Defendants' products had misleading labels, intended to increase sales by implying that

9     they were healthier or of better quality than competing products.  However, Defendant disagrees

10    and intended to show that its labels were not misleading and class members did not suffer injury.

11    Additionally, Defendant intended to argue that Plaintiffs lack standing to pursue injunctive relief

12    because they did not purchase the products that contained the allegedly misleading labels.  *See*

13    Dkt. No. 241 at 13.  In reaching a settlement, however, Plaintiffs have ensured at least a

14    moderately favorable recovery for the class.  *See Rodriguez*, 563 F.3d at 966 (finding litigation

15    risks weigh in favor of approving class settlement).  Accordingly, these factors weigh in favor of

16    approving the settlement.  *See Ching*, 2014 WL 2926210, at *4 (favoring settlement to protracted

17    litigation).

18                              ***b.   Settlement Terms***

19         The terms of the settlement are another factor weighing in favor of approval.  In the Class

20    Certification Order, the Court did not certify any class for monetary damages, and were the case to

21    proceed to trial, the class could only recover injunctive relief.  The settlement here includes

22    changing the labels and, in some instances, the ingredients, of several of Defendant's baked goods.

23    *See* SA at §§ 4.4–4.8.  Class Counsel will also be notified any time within the next two years if

24    Defendant makes a relevant change to their labels.  *Id.*  Given the scope of the certified classes,

25    therefore, this settlement accomplishes much if not all of what Plaintiffs could have achieved at

26    trial.  This result falls within the range of reasonableness.  *See, e.g.*, *In re Ferrero Litig.*, No. 11-

27    CV-00205-H-KSC, 2012 WL 2802051, at *4 (S.D. Cal. July 9, 2012), *aff'd*, 583 F. App'x 665

28    (9th Cir. 2014) ("Defendant agreed to modify the product label to address the fundamental claim

United States District Court
Northern District of California

1    raised in Plaintiffs' complaint . . . .").

### c.   Reaction of Class Members

2

3           The reaction of the Class Members also supports final approval.  "[T]he absence of a large

4    number of objections to a proposed class action settlement raises a strong presumption that the

5    terms of a proposed class settlement action are favorable to the class members."  *Nat'l Rural*

6    *Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528–29 (C.D. Cal. 2004); *In re Linkedin*

7    *User Privacy Litig.*, 309 F.R.D. 573, 589 (N.D. Cal. 2015) ("A low number of opt-outs and

8    objections in comparison to class size is typically a factor that supports settlement approval.").

9           Here, the class notice, which was served in accordance with the method approved by the

10   Court, advised Class Members of the requirements to object to the settlement.  Class notice was

11   posted on the websites and the press release issued by May 29, 2020, and Class Members had until

12   July 31, 2020, to file any objections.  *See* Dkt. Nos. 236, 238.  As noted above, only Mr. Orr filed

13   an objection.  *See* Dkt. Nos. 244, 245.  The Court finds that the minimal objections in comparison

14   to the size of the class indicate overwhelming support among the Class Members and weigh in

15   favor of approval.  *See, e.g., Churchill Village LLC v. Gen. Elec.*, 361 F.3d 566, 577 (9th Cir.

16   2004) (affirming settlement where 45 of approximately 90,000 class members objected);

17   *Rodriguez v. West Publ. Corp.*, Case No. CV05–3222 R, 2007 WL 2827379, at *10 (C.D. Cal.

18   Sept. 10, 2007) (finding favorable class reaction where 54 of 376,301 class members objected).

### d.   Objections to the Settlement

19

20          "In determining whether to finally approve a class action settlement, the Court considers

21   whether there are any objections to the proposed settlement and, if so, the nature of those

22   objections."  *Moore v. Verizon Commc'ns Inc.*, No. C 09-1823 SBA, 2013 WL 4610764, at *9

23   (N.D. Cal. Aug. 28, 2013).  "The mere fact that there are objections to the settlement does not

24   necessitate disapproval; instead, the Court must evaluate the objections to determine whether they

25   suggest serious reasons why the proposed settlement might be unfair."  *Nwabueze v. AT & T Inc.*,

26   No. C 09-01529 SI, 2013 WL 6199596, at *6 (N.D. Cal. Nov. 27, 2013).

27          As noted above, Mr. Orr first argued that notice was inadequate.  *See* Dkt. Nos. 244, 245.

28   But the Court finds that the notice in this case met the requirements of Rule 23(e)(1).  *See* Section

United States District Court
Northern District of California

United States District Court
Northern District of California

1    II.A.ii.b.1.  Rule 23 only requires all reasonable efforts to direct notice to absent class members, and

2    not all class members must receive notice for it to be found adequate.  *See, e.g.*, *Reiter*, 442 U.S. at

3    345; *Silber*, 18 F.3d at 1454.  Here, in addition to posting notice on Class Counsel's and Defendant's

4    website, the parties also issued a press release regarding the settlement that is estimated to have

5    reached approximately 121 million people.  *See* Dkt. No. 249 at ¶ 3, & Ex. A–B.  Counsel also

6    appears to have gone beyond what was required under Rule 23 and the Court's preliminary approval

7    order by sending Mr. Orr physical copies of the relevant case documents.

8        From what the Court can discern, Mr. Orr also raised concerns that under the settlement,

9    absent Class Members would release monetary claims.  However, the release in the amended

10   Settlement Agreement only includes injunctive relief claims.  *See* SA at § 8.1.  Absent class

11   members still retain their right to independently pursue claims for monetary relief.  Thus, having

12   considered Mr. Orr's objections in detail, the Court denies the objections and finds that they do not

13   require rejecting the settlement.

14                                         *        *        *

15       After considering and weighing the above factors, the Court finds that the settlement

16   agreement is fair, adequate, and reasonable, and that the settlement Class Members received

17   adequate notice.  Accordingly, the motion for final approval of the class action settlement is

18   **GRANTED**.

19       **B.    Attorneys' Fees and Costs**

20       In the same motion, Class Counsel asks the Court to approve an award of $325,000 in

21   attorneys' fees and costs.  *See* Dkt. No. 241 at 17–24.

22           **i.    Legal Standard**

23       "In a certified class action, the court may award reasonable attorney's fees and nontaxable

24   costs that are authorized by law or by the parties' agreement."  Fed. R. Civ. P. 23(h).  Here,

25   Plaintiffs brought claims under California law, including the UCL, FAL, and CLRA.  They

26   therefore also seek attorneys' fees under California law.  Under the CLRA, "the court shall award

27   court costs and attorney's fees to a prevailing plaintiff."  Cal. Civ. Code § 1780(e).  And under

28   California's Private Attorney General Statute, an award of attorneys' fees for "successful"

plaintiffs is proper if "(1) plaintiffs' action has resulted in the enforcement of an important right affecting the public interest; (2) a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons; and (3) the necessity and financial burden of private enforcement are such as to make the award appropriate." *Press v. Lucky Stores*, 34 Cal. 3d 311, 317–18 (1983) (quotations omitted); Cal. Code Civ. P. § 1021.5.

In a case like this one involving state law claims, state law also governs the calculation of attorneys' fees. *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002). The Court may also look to federal authority for guidance in awarding attorneys' fees. *See Apple Computer, Inc. v. Superior Court*, 126 Cal. App. 4th 1253, 1264 n.4 (2005) ("California courts may look to federal authority for guidance on matters involving class action procedures."). Courts generally apply the lodestar method in class actions governed by California law. *See Lealao v. Beneficial California, Inc.*, 82 Cal. App. 4th 19, 26 (Cal. Ct. App. 2000); *see Meister v. Regents of Univ. of California*, 67 Cal. App. 4th 437, 448–49 (Cal. Ct. App. 1998) ("[T]he California Supreme Court intended its lodestar method to apply to a statutory attorney's fee award unless the statutory authorization for the award provided for another method of calculation."). Similarly, under federal law, "in injunctive relief class actions, courts often use a lodestar calculation because there is no way to gauge the net value of the settlement or any percentage thereof." *Hanlon*, 150 F.3d at 1029. "Under the lodestar method, a court need not determine the 'value' of particular injunctive relief because fees are calculated through an assessment of time expended on the litigation, counsel's reasonable hourly rate and any multiplier factors such as contingent representation or quality of work." *In re Ferrero Litigation*, 583 Fed. App'x 665, 668 (9th Cir.2014). Courts may then reduce or enhance the lodestar by applying a multiplier to account for the complexity of the action, as well as other factors such as the quality of representation and the risk of nonpayment. *Hanlon*, 150 F.3d at 1029.

### ii.    Analysis

Class Counsel asserts that Plaintiffs are prevailing parties in this action because they achieved their objective of addressing what they considered Defendant's misleading labeling practices. Dkt. No. 241 at 18. Class Counsel further states that the full lodestar total for the work

United States District Court
Northern District of California

completed in this action would be $987,531.73, based on 2,178 hours spent by seventeen lawyers and paralegals in litigating this class action multiplied by counsel's proposed hourly rates, as of December 12, 2019, when they filed the motion for preliminary approval. *See id.* at 19–23; *see also* Dkt. No. 241-1 through 24-8, Exs. 1–8. They also explain that they have incurred $89,456.65 in expenses. *See* Dkt. No. 241 at 19. However, Class Counsel has agreed to accept a reduced lodestar of $325,000. *See id.* at 22. Class Counsel submitted declarations and provided charts that document their hourly rates, the number of hours claimed, and the total fee request for each attorney involved in the litigation. *See* Dkt. Nos. 24-2 through 24-8, Exs. 1–8. Their requested fees represent approximately 33% of their lodestar. *See* Dkt. No. 241 at 22.

As an initial matter, the Court finds that Class Counsel's lodestar calculation is inflated and contains duplicative and unreasonable time. *See Jankey v. Poop Deck*, 537 F.3d 1122, 1132 (9th Cir. 2008) (directing courts to exclude from a fee request any hours that are "excessive, redundant, or otherwise unnecessary"). The Court notes that it has concerns that the case was overstaffed with seventeen lawyers billing time, and that this led to inefficient or duplicative work. Class Counsel's block billing, however, obscures the potential extent of any inefficiency. Still, the Court has found claims in the itemized billing records for significant time spent discussing the case via intraoffice and administrative meetings, emails, and phone calls with co-counsel. The Ninth Circuit has indicated that the Court has discretion to discount such time. *See Terry v. City of San Diego*, 583 Fed. Appx. 786, 790–91 (9th Cir. 2014) (permitting reductions for time counsel spent conferring among themselves and co-counsel editing each other's briefs because this time could be considered duplicative). The Court therefore finds that the lodestar should be reduced by ten percent to account for this duplication.

Moreover, having reviewed the billing records in detail, the Court finds substantial time was billed for clerical tasks such as "filing, transcript, and document organization time," which the Ninth Circuit has stated are not compensable, regardless of who completes them. *See Nadarajah v. Holder*, 569 F.3d 906, 921 (9th Cir. 2009). The Court details these entries below:

| Name | Date | Task | Rate | Hours | Total |
|------|------|------|------|-------|-------|

14

| | | | | | |
|---|---|---|---|---|---|
| Dawn Garrison | 7/4/2013 | Save and print motion to dismiss; calendar | $100 | .2 | $20 |
| Dawn Garrison | 8/14/2013 | Print and save statement of recent decision | $100 | .2 | $20 |
| Dawn Garrison | 8/15/2013 | Print and save statement of recent decision | $100 | .2 | $20 |
| Pierce F. Gore | 9/16/2013 | Ordered transcript; emailed with counsel regarding hearing transcript | $650 | .3 | $195 |
| Tyler Van Put | 2/6/2014 | Printed and compiled binder of filings | $350 | 3.00 | $1,050 |
| Tyler Van Put | 2/7/2014 | Printed discovery documents; saved to system | $350 | .6 | $210 |
| Tyler Van Put | 2/10/2014 | Updated binders with discovery materials; printed documents | $350 | .6 | $210 |
| Tyler Van Put | 2/25/2014 | Scanned and emailed proof of service; updated database | $350 | .2 | $70 |
| Tyler Van Put | 3/13/2014 | Filed and FedExed courtesy copy | $350 | .3 | $105 |
| Tyler Van Put | 3/17/2014 | Printed and prepared courtesy copy of recent filing; printed document report | $350 | .3 | $105 |
| Tyler Van Put | 3/27/2014 | Printed materials for review; arranged for court reporter | $350 | 1.3 | $455 |
| Michael Park | 4/15/2014 | Made binders for hearing | $350 | 3.5 | $1,225 |
| Tyler Van Put | 1/7/2015 | Traveled to appellate division and got certificate of service | $350 | 1.3 | $455 |
| Tyler Van Put | 1/8/2015 | Filed Pro Hac Vice Motion on ECF | $350 | .6 | $210 |
| Tyler Van Put | 1/30/2015 | Prepared FedEx Package; brought package to FedEx | $350 | .3 | $105 |

| | | | | | |
|---|---|---|---|---|---|
| Michael Park | 2/19/2015 | Put together filing for courtesy copies | $350 | 3.0 | $1,050 |
| Tyler Van Put | 4/1/2015 | Printed and prepared exhibits; compiled in folders and boxed for deposition | $350 | 2.9 | $1,015 |
| Tyler Van Put | 4/7/2015 | Downloaded and saved files | $350 | .1 | $35 |
| Nanci-Taylor Maddux | 4/8/2015 | Scheduled flights and hotel | $150 | 1 | $150 |
| Nanci-Taylor Maddux | 4/9/2015 | Downloaded, saved, and circulated deposition and exhibits | $150 | .3 | $45 |
| Michael Park | 4/14/2015 | Arranged for printing of latest production; loaded production onto server | $350 | .5 | $175 |
| Michael Park | 4/20/2015 | Pulled filing | $350 | .5 | $175 |
| Nanci-Taylor Maddux | 4/20/2015 | Sent unredacted documents to counsel | $150 | .4 | $60 |
| Nanci-Taylor Maddux | 4/20/2015 | Sent binders of courtesy copies to Judge | $150 | 7 | $1,050 |
| Nanci-Taylor Maddux | 4/21/2015 | Changed flight and hotel reservation | $150 | .3 | $45 |
| Nanci-Taylor Maddux | 4/21/2015 | Rescheduled hotel and flight | $150 | .7 | $105 |
| Nanci-Taylor Maddux | 4/22/2015 | Scheduled flight | $150 | .4 | $60 |
| Tyler Van Put | 7/25/2019 | Printed mediation materials and created binders; arranged to ship | $350 | 1.3 | $455 |
| Tyler Van Put | 7/29/2019 | Printed, copied, and organized materials for mediation | $350 | .4 | $140 |
| Tyler Van Put | 11/12/2019 | Searched for template for settlement agreement motion; updated database | $350 | .3 | $105 |
| Tyler Van Put | 11/14/2019 | Printed materials re class certification for review | $350 | .2 | $70 |

16

| | | | | TOTAL | $9,190 |
|---|---|---|---|---|---|

Because these represent purely clerical tasks, they should not be factored into Class Counsel's lodestar.

Class Counsel has also block billed substantial time for travel. Courts in this district have frequently reduced travel time by half to create a reasonable rate. *See, e.g.*, *In re Washington Public Power Supply Sys. Sec. Lit.*, 19 F.3d 1291, 1298–99 (9th Cir. 1994) (finding the district court did not err in reducing attorney travel time by half where the "attorneys generally billed the entire duration of the time spent in transit"); *see also In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*, No. 6903, 2020 WL 2086368, at *8 (N.D. Cal. Apr. 30, 2020). Here, Class Counsel often block billed for travel to and participation in a hearing or deposition, without differentiating between the travel and substantive components. In the absence of an explanation regarding what time was spent traveling versus attending the hearing, the Court finds that a reduction in this time of fifty percent is appropriate under the circumstances.

| Name | Date | Task | Rate | Hours | Total |
|---|---|---|---|---|---|
| Brad Silverman | 9/9/2013 | Prepared for hearing; traveled to California | $550 | 11.50 | $6,325 |
| Brad Silverman | 9/11/2013 | Prepared for hearing; legal research; travel | $550 | 11 | $6,050 |
| Pierce F. Gore | 9/11/2013 | Met with B. Silverman re preparation for motion to dismiss hearing and case management conference; attended motion to dismiss hearing and case management conference; travel between | $650 | 5.80 | $3,770 |

United States District Court
Northern District of California

| | | | | | |
|---|---|---|---|---|---|
| | | San Jose and San Francisco; email and phone calls | | | |
| Brad Silverman | 9/12/2013 | Traveled to New York | $550 | 8 | $4,400 |
| Pierce F. Gore | 2/12/2014 | Attended hearing on Defendant's second motion to dismiss; meeting with B. Silverman; travel between San Jose and San Francisco | $850 | 5.80 | $3,770 |
| Pierce F. Gore | 4/16/2014 | Prepared for hearing on discovery dispute joint report; travel between San Jose and San Francisco | $850 | 5.80 | $4,930 |
| Pierce F. Gore | 5/1/2014 | Prepared for case management conference; attended case management conference; travel between San Jose and San Francisco | $850 | 3.80 | $3,230 |
| Brian Herrington | 3/20/2015 | Traveled to DC; defended deposition; traveled home | $475 | 9.6 | $4,560 |
| Brian Herrington | 3/31/2015 | Traveled to Boston for deposition | $475 | 6.8 | $3,230 |
| Brian Herrington | 4/1/2015 | Defended deposition and traveled to Jackson | $475 | 12.2 | $5,795 |
| Brad Silverman | 4/2/2015 | Deposition and related travel | $550 | 10.5 | $5,775 |
| Brian | 5/5/2015 | Traveled to San | $475 | 13.4 | $6,365 |

| | | | | | |
|---|---|---|---|---|---|
| Herrington | | Francisco for class certification hearing; prepared for same | | | |
| Pierce F. Gore | 5/6/2015 | Met with co-counsel regarding prep for hearing; attended class certification motion; email with co-counsel regarding hearing; travel between San Jose and San Francisco | $850 | 8.5 | $7,225 |
| Pierce F. Gore | 8/20/2015 | Prepared for hearing on defendant's spoliation; attended motion hearing; travel between Corte Madera and San Francisco; emailed and phone call with co-counsel regarding hearing | $850 | 3.8 | $3,230 |
| Pierce F. Gore | 2/6/2018 | Attended case management conference; travel between Corte Madera and Oakland | $850 | 2.8 | $2,380 |
| Pierce F. Gore | 4/12/2018 | Attended class certification hearing; travel between Corte Madera and Oakland | $850 | 2.8 | $2,380 |
| Pierce F. Gore | 10/2/2018 | Attended class certification hearing; travel | $850 | 3.8 | $3,230 |

| | | | | | |
|---|---|---|---|---|---|
| | | between Corte Madera and Oakland | | | |
| Joshua Glatter | 7/29/2019 | Traveled to San Francisco re mediation and reviewed mediation papers | $550 | 3.00 | $1,650 |
| | | | | **TOTAL** | **$78,295** |
| | | | | **Reduced by 50%** | **$39,147.50** |

The Court further notes that there were some entries for time reviewing court filings after the Court granted a stay in this case, at which point there were no new filings.  To the extent Class Counsel had new counsel who needed to get up to speed join the case, this underscores the Court's concern that having so many attorneys working on this case led to duplicative efforts.

| Name | Date | Task | Rate | Hours | Total |
|---|---|---|---|---|---|
| Julia Sandler | 4/20/2016 | Reviewed court filings and motion papers | $400 | 2.10 | $840 |
| Julia Sandler | 4/21/2016 | Reviewed court filings | $400 | 21.40 | $560 |
| | | | | **TOTAL** | **$1,400** |

The Court therefore reduces Class Counsel's lodestar by $148,490.67, and calculates Class Counsel's lodestar as $839,041.06.

The Court understands that Class Counsel is not seeking to recover the full lodestar amount.  Still, the Court has concerns about Class Counsel's requested fees in light of Class Counsel's role in protecting the interests of absent Class Members and the results actually achieved in this settlement.  As the Ninth Circuit has explained, "[t]hough the lodestar figure is presumptively reasonable, the court may adjust it upward or downward by an appropriate positive or negative multiplier reflecting a host of reasonableness factors, including the quality of representation, the benefit obtained for the class, the complexity and novelty of the issues

1    presented, and the risk of nonpayment.  *In re Bluetooth Headset Prod. Liab. Litig*, 654 F.3d 935,

2    941–42 (9th Cir. 2011) (quotations and internal citations omitted).  "Foremost among these

3    considerations . . . is the benefit obtained for the class."  *Id.*  "Thus, where the plaintiff has

4    achieved 'only limited success,' counting all hours expended on the litigation—even those

5    reasonably spent—may produce an excessive amount, and the Supreme Court has instructed

6    district courts to instead 'award only that amount of fees that is reasonable in relation to the results

7    obtained.'"  *Id. (*quoting *Hensley v. Eckerhart*, 461 U.S. 424, 440 (1983)).

8           *First*, the Court repeatedly had to intervene to ensure that the rights of absent Class

9    Members were protected in this settlement.  In the initial settlement agreement that Class Counsel

10   entered into, the release contained claims, including monetary relief claims, that the Court did not

11   certify in its Class Certification Order.  *See* Dkt. No. 225 at §§ 1.2, 8.2 (releasing Defendant from

12   all claims, known or unknown, relating to and arising out of "all allegations, demands and

13   assertions in the SAC and any other filings or documents in the Class Action regarding the alleged

14   improper labeling of any of the Products").  Class Counsel also agreed with Defendant that notice

15   to absent Class Members was not required.  *See* Dkt. No. 217 at 7–8.  In other words, Class

16   Counsel approved a settlement in which absent Class Members would be giving up significant

17   legal rights without any notice.  Only at the Court's urging did the parties revise the settlement

18   agreement.  *See* Dkt. No. 222-1, Ex. A.  Class Counsel also continued to urge that notice was not

19   required to absent Class Members because the settlement only provided injunctive relief, and

20   Class Members would not be able to "opt out."  *See* Dkt. Nos. 222, 226.  Yet as the Court

21   repeatedly explained, notice in this case was about giving absent Class Members the opportunity

22   to understand how their rights would be affected by the proposed settlement; object to the

23   settlement if they believed it insufficient; and weigh in on the anticipated motions for attorneys'

24   fees and incentive awards for the named Plaintiffs.  *See* Dkt. No. 232; *see also* Fed. R. Civ. P.

25   23(h)(1).  The Court thus initially denied the motion for preliminary approval on this basis.  *See*

26   Dkt. No. 232.  Of course, part of the Court's role is to protect the rights of absent Class Members,

27   but Class Counsel obviously has a similar obligation.  And yet Class Counsel failed to adequately

28   account for those rights without the Court's repeated urging.

United States District Court
Northern District of California

21

*Second*, it is unclear how much of the results achieved here were actually motivated by this litigation.  Of the sixteen different products whose labels purportedly changed as part of the settlement, Defendant either discontinued or divested seven of the products.  *See* SA at § 4.4.  Any "change" in these labels thus has illusory value, as the products are no longer available or within Defendant's control.  The labels actually only changed for four of the nine products still owned by Defendant, by removing soy flour from the ingredients list for two products and by removing the AHA Heart Check Mark from two others.  *Id.*  And added color was removed as an ingredient from five products, although the label did not change.  *Id.*  During the final fairness hearing, however, Defense counsel confirmed that some of the decisions to alter the ingredients and labels on their products were based in part on Defendant's independent business decisions, rather than on this litigation.  It is thus difficult for the Court to adequately assess how much of the relief owed to Plaintiffs' efforts in this case and what the actual value of the relief is to the class.  *See In re Bluetooth*, 654 F.3d at 945, & n.8 (raising concerns about the disproportionate fees where injunctive relief was sought but the value of that relief was unclear, and defendant had made several voluntary changes).

Even assuming that Defendant made all these changes based on this litigation, these nine products represent less than one-third of the products that Plaintiffs identified in the operative complaint.  *See* SAC at ¶¶ 193–194, 197–198, 202–203, 225–226.

For all of these reasons, the Court concludes that a reduction in attorneys' fees is appropriate in light of Class Counsel's performance and the results achieved in this case.  The Court reduces Class Counsel attorneys' fees to approximately one-third of the revised lodestar calculated above, and thus **GRANTS IN PART** attorneys' fees and costs in the amount of $225,000.

## C.     Incentive Awards

Lastly, Class Counsel also requests an incentive award of $5,000 for each of the Named Plaintiffs.  Dkt. No. 241 at 24–25.  District courts have discretion to award incentive fees to named class representatives.  *See In re Mego Fin. Corp. Secs. Litig.*, 213 F.3d 454, 463 (9th Cir. 2000).  However, the Court shares the Ninth Circuit's concern that "if class representatives expect

routinely to receive special awards in addition to their share of the recovery, they may be tempted to accept suboptimal settlements at the expense of the class members whose interests they are appointed to guard."  *See Staton v. Boeing Co.*, 327 F.3d 938, 975 (9th Cir. 2003); *Radcliffe v. Experian Information Sols. Inc.*, 715 F.3d 1157, 1163–64 (9th Cir. 2013) (noting that the Ninth Circuit has "expressed disapproval of these incentive agreements" and that "in some cases incentive awards may be proper but . . . awarding them should not become routine practice").  Indeed, the Ninth Circuit has cautioned that "district courts must be vigilant in scrutinizing all incentive awards to determine whether they destroy the adequacy of the class representatives . . . ." *Radcliffe*, 715 F.3d at 1165 (quotations omitted).  This is particularly true where "the proposed service fees greatly exceed the payments to absent class members."  *Id.*

The Court has concerns about the requested incentive awards in a case in which absent Class Members are receiving no monetary awards at all, and where the actual value of the injunctive relief is questionable.  Thus, if the Court were to grant the named Plaintiffs' request for incentive awards, Plaintiffs Alex Ang and Lynn Streit would be receiving drastically preferential treatment as compared to the other Class Members.  And as the Court noted above, the Court repeatedly had to intervene to ensure that absent Class Members' rights were protected.  The Court has some questions as to whether named Plaintiffs took seriously their charge to protect the interests of absent Class Members, and the Court cannot sanction this grossly disproportionate request, especially where the results obtained were so modest.  The Court accordingly **DENIES** the request for incentive awards in its entirety.

## III.     CONCLUSION

Overall, the Court is left with the firm conviction that by far the main beneficiaries of this long-running yet underwhelming case were the attorneys.  From the outset, the theory of the case, and the named Plaintiffs' ability to credibly articulate it, were far from impressive.  And the resulting relief obtained for the class is similarly unimpressive.  Nevertheless, controlling precedent requires approval of this settlement, and the Court accordingly **GRANTS** final approval.  For the reasons set out above, the Court further **GRANTS IN PART** Class Counsel's request for attorneys' fees and costs in the amount of $225,000 and **DENIES** the request for

incentive awards for named Plaintiffs.  The parties are directed to implement this Final Order and the settlement agreement in accordance with the terms of the settlement agreement.  The parties are further directed to file a stipulated final judgment within 21 days from the date of this order.

        **IT IS SO ORDERED.**

Dated:  9/29/2020

HAYWOOD S. GILLIAM, JR.
United States District Judge